QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice* forthcoming)
alexspiro@quinnemanuel.com
51 Madison Ave 22nd floor
New York, NY 10010
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

*Attorneys for Defendant Elon Musk*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**DEFENDANT ELON MUSK'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Judge:      Hon. Charles R. Breyer<br>Courtroom: 6, 17th Floor<br><br>Hearing Date: September 22, 2023<br>Time:        10 a.m. |

1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

2

3 SUMMARY OF ARGUMENT ........................................................................................ vi

4 ARGUMENT ...................................................................................................................1

5 I.     THE FAC FAILS TO STATE A RULE 10B-5 CLAIM .........................................1

6      A.    The FAC Does Not Adequately Plead Falsity .........................................1

7           1.    The FAC Does Not Plead Facts Why The Statements Are Misleading...............................................................................2

8

9           2.    The FAC Does Not Specify That Each Alleged Misstatement Is False ..................................................................6

10      B.    The FAC Fails To Plead Materiality ........................................................8

11      C.    The FAC's Empty Conclusions Do Not Plead Scienter.............................9

12      D.    The FAC's "Corrective Disclosure" Revealed No Fraud .......................10

13 II.    MR. MUSK IS ENTITLED TO *NOERR-PENNINGTON* IMMUNITY ...........................12

14      A.    There Is No Securities Fraud "Exception" to *Noerr-Pennington*............................12

15      B.    Plaintiff's Lawsuit Axiomatically Burdens Petitioning Rights..............................13

16      C.    Mr. Musk's Statements Relating to His Legal Rights Are Petitioning Activity...............................................................................13

17

18      D.    The FAC Did Not Plead That Mr. Musk Engaged In Sham Litigation. ..................14

CONCLUSION ..............................................................................................................15

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

### **Cases**

4

5   *AirHawk Int'l, LLC v. TheRealCraigJ, LLC*,
       2017 WL 3891214 (C.D. Cal. Jan. 19, 2017)...................................................................... 13, 14

6   *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*,
7       794 F. Supp. 1424 (D. Ariz. 1992) ...................................................................................... 12

8   *In re Bank of Am. AIG Disclosure Sec. Litig.*
        980 F. Supp. 2d 564 (S.D.N.Y. 2013) .................................................................................... 5
9
    *Boone v. Redevelopment Agency of City of San Jose*,
10      841 F.2d 886 (9th Cir. 1988) ........................................................................................ vii, 15

11  *Brody v. Transitional Hosps. Corp.*,
12      280 F.3d 997 (9th Cir. 2002) .................................................................................................. 5

13  *Catch Curve, Inc. v. Venali, Inc.*,
        2008 WL 11334024 (C.D. Cal. Nov. 3, 2008) ............................................................... vii, 15
14
    *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
15      856 F.3d 605 (9th Cir. 2017)............................................................................................... 7, 8

16  *In re Credit Suisse First Boston Corp.*,
17      431 F.3d 36 (1st Cir. 2005) .................................................................................................... 9

18  *In re Cutera Sec. Litig.*,
        610 F.3d 1103 (9th Cir. 2010).................................................................................................. 8
19
    *Dairy, LLC v. Milk Moovement, Inc.*,
20      2022 WL 4387981 (E.D. Cal. Sept. 22, 2022) ..................................................................... 15

21  *E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
        365 U.S. 127 (1961) ............................................................................................................. 12
22
    *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
23      711 F. Supp. 2d 1074, 1082 (C.D. Cal. 2010)..................................................................... 14

24  *Evanston Police Pension Fund v. McKesson Corp.*,
25      411 F. Supp. 3d 580 (N.D. Cal. 2019) ................................................................................. 11

26  *In re Facebook, Inc. Sec. Litig.*,
        477 F. Supp. 3d 980 (N.D. Cal. 2020) ................................................................................. 12
27
    *Falkowski v. Imation Corp.*,
28      309 F.3d 1123 (9th Cir. 2002).......................................................................................... 2, 7

*Fitbit, Inc. v. Laguna 2, LLC*,
   2018 WL 306724 (N.D. Cal. Jan. 5, 2018) ........................................................... 14

*Gen-Probe, Inc. v. Amoco Corp.*,
   926 F. Supp. 948 (S.D. Cal. 1996) ..................................................................... 15

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
   63 F.4th 747 (9th Cir. 2023) ............................................................................. 6, 9

*Hard2Find Accessories, Inc. v. Amazon.com, Inc.*,
   691 F. App'x 406 (9th Cir. 2017) ................................................................... 13, 14

*Heresniak v. Musk*,
   2023 WL 3605978 (N.D. Cal. May 22, 2023) ......................................................... 2

*In re HP Sec. Litig.*,
   2013 WL 6185529 (N.D. Cal. Nov. 26, 2013) ...................................................... 3, 4

*In re Intuitive Surgical Sec. Litig.*,
   2017 WL 4355072 (N.D. Cal. Sept. 29, 2017) ........................................................ 7

*Kang v. PayPal Holdings, Inc.*,
   620 F. Supp. 3d 884 (N.D. Cal. 2022) ...................................................... 3, 10, 15

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) ............................................................................ 11

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) ...................................................................... vii, 11

*Lynn v. Friedenthal*,
   2011 WL 6960823 (C.D. Cal. Dec. 2, 2011) ........................................................ 13

*Manistee Town Ctr. v. City of Glendale*,
   227 F.3d 1090 (9th Cir. 2000) ........................................................................... 14

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) ............................................................................................. 8

*Mehedi v. View, Inc.*,
   2023 WL 3592098 (N.D. Cal. May 22, 2023) ....................................................... 11

*Metzler Inv. GmbH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) .............................................. vi, vii, 1, 4, 5, 9, 11, 12

*Mohebbi v. Khazen*,
   50 F. Supp. 3d 1234 (N.D. Cal. 2014) ............................................................. 9, 10

*Nazir v. United Air Lines*,
   2009 WL 2912518 (N.D. Cal. Sept. 9, 2009) ....................................................... 14

*In re Nektar Therapeutics Sec. Litig.*,
  34 F.4th 828 (9th Cir. 2022) ........................................................................ 3, 11

*In re Netflix, Inc. Sec. Litig.*,
  647 F. App'x 813 (9th Cir. 2016) ......................................................................... 6

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
  2016 WL 7475555 (N.D. Cal. Dec. 29, 2016) ................................................... 4, 9

*In re Nuverra Env't Sols. Sec. Litig.*,
  2015 WL 3887235 (D. Ariz. June 24, 2015) ........................................................ 1

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015) ........................................................................................ 7, 8

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) .................................................................. vii, 10, 11

*Pick v. Kay*,
  2022 WL 193197 (9th Cir. Jan. 21, 2022) ......................................................... 12

*Proctor v. Vishay Intertechnology Inc.*,
  584 F.3d 1208 (9th Cir. 2009) ........................................................................... 2

*Prodanova v. H.C. Wainwright & Co., LLC*,
  993 F.3d 1097 (9th Cir. 2021) .......................................................................... 10

*Rosenbaum Capital LLC v. Boston Communs. Group, Inc.*,
  445 F. Supp. 2d 170 (D. Mass. 2006) .............................................................. 8, 9

*Rupert v. Bond*,
  68 F. Supp. 3d 1142 (N.D. Cal. 2014) .............................................................. 13

*Santana Prods., Inc. v. Bobrick Washroom Equipment, Inc.*,
  249 F.Supp.2d 463 (M.D. Pa. 2003) ................................................................ 12

*Sliding Door Co. v. KLS Doors, LLC*,
  2013 WL 2090298 (C.D. Cal. May 1, 2013) ...................................................... 13

*In re Solarcity Corp. Sec. Litig.*,
  274 F. Supp. 3d 972 (N.D. Cal. 2017) ................................................................ 3

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006) .................................................................. vii, 12, 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ........................................................................................... 9

*In re Tesla Inc., Sec. Litig.*,
  2023 WL 4032010 (N.D. Cal. June 14, 2023) ..................................................... 8

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
  546 F.3d 991 (9th Cir. 2008) ........................................................................ vii, 13

*Tritz v. U.S. Postal Serv.*,
  721 F.3d 1133 (9th Cir. 2013) ................................................................................ 3

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976) ................................................................................................ 8

*Tuosto v. Philip Morris USA Inc.*,
  2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) ...................................................... 12

*UCP Int'l Co. Ltd. v. Balsam Brands Inc.*,
  420 F. Supp. 3d 966 (N.D. Cal. 2019) ............................................................ 13, 14

*Veal v. LendingClub Corp.*,
  423 F. Supp. 3d 785 (N.D. Cal. 2019) .................................................................... 1

*Webb v. Solarcity Corp.*,
  884 F.3d 844 (9th Cir. 2018) .................................................................................. 9

*Wonderful Real Est. Dev. v. Laborers Int'l Union of N. Am.*,
  2020 WL 91998 (E.D. Cal. 2020) ........................................................................ 14

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ....................................................................... vi, 9, 10

## **Statutes**

15 U.S.C. § 78u–4(b)(1) ................................................................................... 1, 2, 4, 6

15 U.S.C. §§ 1051, et seq. ........................................................................................ 13

18 U.S.C. §§ 1961-1968 ..................................................................................... vii, 13

## **Regulations**

17 C.F.R. § 240.10b-5 ...................................................................................... 1, 3, 5, 6

1

## SUMMARY OF ARGUMENT

2      Plaintiff's Opposition to Mr. Musk's Motion to Dismiss cannot correct—and instead

3 *confirms*—the fundamental and fatal defects in the First Amended Complaint.  Because the

4 Opposition offers no potential cure for these deficiencies or even seeks leave to amend, the FAC

5 should be dismissed with prejudice.

6      The Opposition has no answer to the fact that Plaintiff fails to plead a "*particularized*

7 *explanation stating why*" each of the "alleged statements or omissions are deceitful," as required

8 by the PSLRA.  *Metzler Inv. GmbH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir.

9 2008) (emphasis added).  The Opposition does not even attempt to carry the PSLRA's specificity

10 burden.  Instead, it simply doubles down on the FAC's failings.  The Opposition argues generally

11 that Mr. Musk made false statements about the number of spam accounts, but it cites no actual

12 facts explaining how any such statement was false.  Likewise, it claims that Mr. Musk made false

13 representations about his rights under the Merger Agreement, but then ignores the actual terms of

14 that Agreement.  Dkt. 37.  And then it argues that Mr. Musk's legal arguments that Twitter

15 breached the Merger Agreement were "baseless," but it does not bother to identify *which specific*

16 *arguments* were fraudulent or to explain why.  Indeed, Plaintiff's entire explanation of falsity

17 effectively rests on a single, conclusory paragraph in the FAC.  FAC ⁋ 149.  The PSLRA's

18 specificity requirement cannot be satisfied by these vague allegations of general fraud.  *Metzler*

19 *Inv. GmbH*, 540 F.3d at 1070.  The PSLRA requires a plaintiff do more than identify a statement

20 and simply label it false.  The FAC should be dismissed for this reason alone.

21      For the element of scienter, the Opposition mistakes quantity for quality and insists that its

22 sheer volume of conclusory allegations is enough to satisfy its burden to plead a "compelling" and

23 "cogent" theory that Mr. Musk knew his statements were untrue or recklessly disregarded their

24 falsity.  Not so.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1008 (9th Cir. 2009).

25 Neither the FAC nor the Opposition identify particularized facts showing that Mr. Musk knew his

26 statements were false when made; again, both rely almost entirely on Plaintiff's general and

27 unsupported conclusions in the FAC's catchall falsity paragraph. Opp. at 15 *citing* FAC ⁋ 149.

28 Plaintiff's only other argument—that in the Delaware Action, Mr. Musk lost a motion to compel, a

1   third party lost a motion to quash, and Mr. Musk eventually settled—does not demonstrate that

2   Mr. Musk made knowingly false statements or legal arguments either.

3       The FAC does not plead loss causation.  Plaintiff concedes that he is required to plead that

4   the purported class's loss "was proximately caused by a ***revelation of fraudulent activity***," rather

5   than other factors.  Opp. at 18 *citing Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014)

6   (holding announcement of investigation could not establish loss causation).  But the Opposition

7   cannot change the fact that Plaintiff's so-called "corrective disclosure"—Mr. Musk's October 4

8   Announcement—did not reveal any fraud at all.  Tellingly, the Opposition (like the FAC before it)

9   does not quote from the Announcement or link its text to any of Mr. Musk's alleged

10  misstatements, as it must to demonstrate loss causation.  *Metzler Inv. GmbH*, 540 F.3d at 1064;

11  *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 608 (9th Cir. 2014) (plaintiff

12  failed to "specify which of Defendants' statements were made untrue" by purported corrective

13  disclosure).  All the Opposition offers is that the Announcement "essentially acknowledged" that

14  Mr. Musk was "bluffing all along."  Opp. at 18.  But Plaintiff cannot "plead loss causation through

15  'euphemism.'" *Metzler Inv. GmbH*, 540 F.3d at 1064.  Accordingly, the claim must fail.

16      Finally, the Opposition's attempt to avoid dismissal under the *Noerr-Pennington* doctrine

17  is unavailing.  ***First***, contrary to Plaintiff's contention, it is well-established that there is no

18  "fraud" exception to *Noerr/Pennington* immunity.  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934-35

19  (9th Cir. 2006) (*Noerr-Pennington* applied to RICO action alleging mail fraud predicate).  ***Second***,

20  *Noerr-Pennington* plainly applies here because the FAC seeks to impose liability based on Mr.

21  Musk's positions in litigation and related pre-suit communications.  *Theme Promotions, Inc. v.

22  News Am. Mktg. FSI*, 546 F.3d 991, 1006-07 (9th Cir. 2008).  ***Third***, the FAC fails to meet the

23  Ninth Circuit's heightened pleading requirements to establish that Mr. Musk engaged in sham

24  litigation.  The FAC's conclusory allegations of baselessness and post-hoc reasoning alone are

25  insufficient.  *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 894 (9th Cir.

26  1988); *Catch Curve, Inc. v. Venali, Inc.*, 2008 WL 11334024, at *3 (C.D. Cal. Nov. 3, 2008).

27

28

1

**ARGUMENT**

2

**I.      THE FAC FAILS TO STATE A RULE 10B-5 CLAIM**

3

**A.      The FAC Does Not Adequately Plead Falsity**

4

At the outset, Plaintiff's 10b-5 claim should be dismissed because the FAC fails to comply

5

with the PSLRA's basic—but exacting—requirement that a "complaint specify each statement

6

alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15

7

U.S.C. § 78u–4(b)(1).   Vague and general catchall allegations are insufficient; specificity is

8

required.  *Metzler Inv. GmbH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

9

Fundamentally, the PSLRA "prevents a plaintiff from skirting dismissal by filing a complaint

10

laden with vague allegations of deception unaccompanied by a particularized explanation stating

11

***why*** the defendant's alleged statements or omissions are deceitful." *Id.*  (emphasis in original).

12

As the Opposition illustrates, "skirting dismissal" through vague allegations is exactly

13

what Plaintiff is attempting here.  Like the FAC, the Opposition does not systematically identify

14

the alleged false statements and fails to "cogently connect" any of them with specific facts

15

showing that they are false, as required to avoid dismissal. *See In re Nuverra Env't Sols. Sec.*

16

*Litig.*, 2015 WL 3887235, at *5–6 (D. Ariz. June 24, 2015); *Veal v. LendingClub Corp.*, 423 F.

17

Supp. 3d 785, 807 (N.D. Cal. 2019) (dismissing claim where complaint failed to connect

18

statements to explanation why they are false).   Instead, the Opposition generally contends—

19

without citing facts from the FAC in support—that "several" of Mr. Musk's statements "were all

20

false and misleading" because they made false representations about the number of spam accounts

21

on Twitter's platform, falsely claimed the Merger was on hold (even though it was), incorrectly

22

described the terms under the Merger Agreement and Twitter's compliance with it, and purported

23

to claim a false entitlement to due diligence.  Opp. at 3.  This approach is nothing more than

24

listing a "litany of alleged false statements, unaccompanied by the pleading of specific facts

25

indicating why those statements were false."  *Metzler Inv. GmbH*, 540 F.3d at 1070.

26

Whether analyzed categorically as the Opposition attempts, or on a statement-by-statement

27

basis which the PSLRA requires, the FAC's allegations of falsity "consist of vague claims about

28

what statements were false or misleading, how they were false, and why we can infer intent to

mislead," and although "voluminous, they do not rise to the level of specificity required under the PSLRA." *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1133 (9th Cir. 2002) *abrogated on other grounds in Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1228 (9th Cir. 2009).

       1.    <u>The FAC Does Not Plead Facts Why The Statements Are Misleading</u>

The Opposition's use of a categorical approach to falsity—rather than setting forth with particularity why each specific misstatement is allegedly false—is reason alone to dismiss the FAC outright under the PSLRA.  15 U.S.C. § 78u–4(b)(1).  But even considered generally, the FAC does not plead sufficient facts to plausibly allege falsity for any of the categories identified.

***First***, the FAC does not plausibly allege falsity as to Mr. Musk's statement that the Merger was "on hold pending details supporting calculation that spam/fake accounts do indeed represent less than 5% of users." Opp. at 4.  As an initial matter, Mr. Musk's statement ***was true*** because as the FAC recognizes (FAC ⁋ 167), and as noted in *Heresniak v. Musk*, 2023 WL 3605978, at *1 (N.D. Cal. May 22, 2023), the closing ***was*** delayed as a result of his dispute with Twitter regarding the number of spam accounts on the platform.  Even if Plaintiff could get beyond this simple fact (which he cannot), both the Opposition and FAC contend this statement was false because Mr. Musk allegedly had no contractual right to slow or pause the Merger because closing "was only conditioned on the approval of Twitter's shareholders at a shareholder meeting, regulatory approval, and closing of the Buyout by October 24, 2022."  *Id.* citing FAC ⁋ 21.  But this bare legal conclusion is not supported by any citation to the Merger Agreement itself.  And it could not be because the Merger Agreement specifically provided that the Holding Companies' "obligations . . . to consummate the Merger" were subject to their "satisfaction" that Twitter "performed or complied, in all material respects, with its obligations required under this Agreement" and that "each of the representations and warranties of [Twitter] contained in this Agreement . . . shall be true and correct."  Dkt. 34-1 Declaration of Alex Bergjans ("Bergjans") Ex. 1 ("Merger Agreement") § 7.2.  One of those warranties was that Twitter's representations to the SEC— including the number of spam accounts on its platform (FAC ⁋ 118, Ex. A at 6)—did not contain "any untrue statement of a material fact" (Merger Agreement § 4.6).  The Opposition does not address the actual language of the Merger Agreement. Instead, Plaintiff simply asks the Court to

ignore it in favor of his incomplete and inaccurate characterization of its terms.  Dkt. 37 at 5.  But the Court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint."  *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1135 n.1 (9th Cir. 2013).  Plaintiff's allegation of falsity is contradicted by the Merger Agreement itself and therefore does not plausibly support his claim.  *See Kang v. PayPal Holdings, Inc*., 620 F. Supp. 3d 884, 898 (N.D. Cal. 2022) (Breyer) (dismissing 10b-5 claim where allegation of falsity was undermined by document subject to judicial notice).

**Second**, although Plaintiff contends that Mr. Musk's statements about the true number of spam accounts on Twitter's platform were false, the FAC pleads **no facts** supporting that contention.  Allegations that a defendant committed securities fraud by misrepresenting data must be accompanied by specific facts showing how and why the statements about the data were false.  *In re Nektar Therapeutics Sec. Litig*., 34 F.4th 828, 837 (9th Cir. 2022) (affirming dismissal where complaint failed to plead specific facts showing representations about scientific data were false beyond "questionable assumptions and unexplained reasoning"); *In re Solarcity Corp. Sec. Litig*., 274 F. Supp. 3d 972, 998 (N.D. Cal. 2017) (dismissing claim where plaintiffs failed to "allege specific facts that show" how the "key operating metrics were false.").  Neither the FAC nor the Opposition identify any facts or conduct any analysis showing that Mr. Musk's estimate that spam accounts made up at least 20% of Twitter's users was false; indeed, the FAC affirmatively alleges that Twitter's user numbers **were inaccurate** (FAC ¶¶ 117, 119.)  The closest the FAC comes to supporting its falsity allegation is the bare conclusion—supported by no facts—that the analyses performed by Mr. Musk's Data Scientists "did not support his false claims."  FAC ¶ 159.  These "conclusory adjectives do not meet the PSLRA's heightened pleading requirements." *See In re Nektar Therapeutics*, 34 F.4th at 837.

Aware of these defects, the Opposition changes tack to claim that Mr. Musk "did not have any evidence that the number of fake/spam accounts at Twitter was greater than 5%."  Opp. at 5.  But again, the FAC offers no factual support for this conclusion.  Plaintiff's reliance on *In re HP Sec. Litig*. is inapposite.  In *In re HP*, the complaint alleged both that HP's CEO learned of a whistleblower's allegation of accounting improprieties and that after learning the information she

1   was required to disclose it when answering a question.  2013 WL 6185529, at *9 (N.D. Cal. Nov.

2   26, 2013).  By contrast, the FAC does not allege that Mr. Musk ever possessed any information

3   contradicting his statement, let alone at the time.  *See Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,

4   2016 WL 7475555, at *3 (N.D. Cal. Dec. 29, 2016) ("Plaintiffs . . . consistently fail to allege that

5   the facts existed and were known to Defendants *at the time the statements were made*.").

6        ***Third***, neither the FAC nor the Opposition identify sufficient facts to support their

7   allegations that Mr. Musk's legal arguments that Twitter breached the Merger Agreement were

8   "false."  Each of the Notices of Termination identified specific Merger Agreement provisions they

9   contended Twitter breached and made arguments supporting those contentions.  FAC Exs. A-C.

10  The provisions and arguments were public; the market could assess their merit.  The FAC does not

11  identify which of the legal arguments the Notices of Termination made were "false" or why they

12  were false, nor does it allege which (if any) of the factual representations were false, or why.  *See*

13  15 U.S.C. § 78u–4(b)(1).  The Opposition offers only two assertions: "Twitter's SEC filings were

14  not false" and Twitter was only obligated to share information to "facilitat[e] the closing of the

15  transaction."  Opp. at 6.  The blanket assertion about Twitter's SEC filings is insufficient; the

16  Notices made specific arguments and representations about Twitter's disclosures and the FAC

17  does not respond (as it must) to those specific statements.  *See* FAC ¶ 149.  Nor does it allege any

18  facts showing that Twitter's obligation to share information to "facilitate" the Merger's closing

19  was somehow inconsistent with Mr. Musk's argument that Twitter was withholding information

20  "necessary to consummate the transactions contemplated by the Merger Agreement."  *Compare*

21  Opp. at 6 *with* FAC Ex. A, at 2.  The FAC also does not plead any facts showing why Mr. Musk

22  was not entitled to the information identified in the July 8 Notice of Termination, or any facts

23  contradicting the positions taken in the August and September Notices.  FAC ¶¶ 144-47.  At best,

24  the FAC pleads a legal disagreement over the scope of the Merger Agreement, which is not

25  sufficient to state a claim for securities fraud.  *See Metzler Inv. GmbH*, 540 F.3d at 1069

26  ("Although the TAC does draw its own legal conclusion that the practice was improper...the

27  TAC's factual allegations point only to disagreement").

28

1       **Finally,** the FAC fails to state a 10b-5 claim based on the contention that Mr. Musk made

2  any false statements about a right to due diligence or his motivations.  There are no allegations that

3  Mr. Musk made any representations that he was owed due diligence information rights, as

4  opposed to other information rights guaranteed under the Merger Agreement.  *See, e.g.*, Merger

5  Agreement § 6.4.  The very statements the Opposition contends "falsely assert[]" a right to due

6  diligence—like Mr. Musk's statement that the Merger was contingent on "Twitter's SEC's filings

7  being accurate" and that he was entitled to information "necessary to consummate the transaction"

8  (Opp. at 6-7)—are direct references to the provisions of the publicly available Merger Agreement,

9  (Merger Agreement §§ 4.6, 6.4).  Thus, the Opposition's attempt to distinguish *In re Bank of Am.*

10  *AIG Disclosure Sec. Litig.* falls flat because these statements are consistent with "the information

11  that was already publicly disclosed."  980 F. Supp. 2d 564, 576 (S.D.N.Y. 2013).

12      And Plaintiff's contention that Mr. Musk fraudulently failed to disclose his motivation to

13  renegotiate the price of the transaction fails on multiple counts.  Mr. Musk never made any

14  references to his motivations and thus was under no duty to disclose them.  *See Brody v.*

15  *Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (no obligation to disclose a

16  possible merger in press release because the statement "neither stated nor implied anything

17  regarding a merger").  Indeed, the FAC does not identify **which** specific statements triggered Mr.

18  Musk's duty to disclose, or **which** specific statements were rendered misleading by this apparent

19  omission.  Moreover, Plaintiff cannot argue that a price reduction motivation was unknown to the

20  market before the October 4 Announcement, because the FAC itself alleges that Mr. Musk

21  publicly stated his opinion that he should receive a price reduction proportionate to Twitter's

22  misrepresentations in May 2022.  FAC ¶ 128.

23      In lieu of pleading specific facts showing falsity, the FAC ultimately rests on the

24  contention that Mr. Musk's dispute with Twitter was fraudulent, thus rendering all of his

25  statements false.  FAC ¶ 149 (catchall falsity allegation).  But "the PSLRA's falsity requirement is

26  not satisfied by conclusory allegations that" a defendant's class-period statements are "per se false

27  based on the plaintiff's allegations of fraud generally."  *See Metzler Inv. GmbH*, 540 F.3d at 1070.

28  The FAC's general allegations of falsity are insufficient; the claim should be dismissed.

1

2.      The FAC Does Not Specify That Each Alleged Misstatement Is False

2        Although the Opposition makes no attempt to argue falsity on a per-statement basis,

3   ultimately, the Court is required to analyze each alleged false statement individually.  15 U.S.C. §

4   78u–4(b)(1).  Under that framework, it is even clearer that the FAC fails to state a 10b-5 claim.

5        *The First Alleged Misstatement—May 13, 2022 Tweet (FAC ¶ 111)*:  As discussed in Mr.

6   Musk's Motion and *supra* pp. 2-3, Mr. Musk's statement that the "Twitter deal temporarily on

7   hold pending details supporting calculation that spam/fake accounts do indeed represent less than

8   5% of users" was an accurate description of the fact that Mr. Musk requested this data as permitted

9   under the Merger Agreement in order to satisfy a condition necessary to closing, Ex. A at 2, and

10  thus was consistent with the true state of affairs.  *See* Mot. at 11; *In re Netflix, Inc. Sec. Litig.*, 647

11  F. App'x 813, 815 (9th Cir. 2016).  For these same reasons, Plaintiff's reliance on *Glazer Cap.*

12  *Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 779 (9th Cir. 2023) is inapt.  In *Glazer*, the

13  Ninth Circuit found that the complaint plausibly alleged falsity because defendant's statement that

14  it "expected the merger to close" **contradicted** the then-status of the closing process.  *Id.*  By

15  contrast, Mr. Musk's Tweet accurately reflected his then-position.  *See* FAC Ex. A.

16       *The Second Alleged Misstatement—May 14, 2022 Tweet (FAC ¶ 115):* The Opposition

17  makes no argument that this statement was false.  Any claim based on it should be dismissed.

18       *The Third Alleged Misstatement—May 16, 2022 Tweets and Statement (FAC ¶¶ 120-*

19  *23)*: As discussed *supra* pp. 3-4, the FAC does not allege any specific facts showing that Mr.

20  Musk's alleged statement that "fake and spam accounts make up at least 20% of Twitter's users"

21  was false, let alone that Mr. Musk knew that when he made it.  Nor do the FAC or Opposition

22  allege that the statement that having an accurate number of real, as opposed to bot, users was

23  "fundamental to the financial health of Twitter" is false.

24       *The Fourth Alleged Misstatement—May 17, 2022 Tweet (FAC ¶ 125):* The FAC fails to

25  allege falsity of the tweet, "20% fake/spam accounts, while 4 times what Twitter claims, could be

26  much higher. My offer was based on Twitter's SEC filings being accurate. Yesterday, Twitter's

27  CEO publicly refused to show proof of <5%. This deal cannot move forward until he does."  The

28  FAC alleges no facts showing any statement that spam accounts constitute 20 percent of Twitter's

1    users was false.  *Supra*, pp. 3-4.  Nor does it allege that the statement that Twitter's CEO refused

2    to show proof was false.  And the statement that "the offer was based on Twitter's SEC filings

3    being accurate" fairly describes the Merger Agreement.  Merger Agreement § 4.6(b).

4         The remaining statements—that the number of spam accounts could be higher and whether

5    the merger could close absent the requested information—are opinions.  Neither the FAC nor the

6    Opposition specify whether Plaintiff contends these opinions are misleading misstatements or

7    omissions, but neither theory is plausible because the FAC does not adequately allege that Mr.

8    Musk "did not hold the belief [he] professed" or "that the belief is objectively untrue."  *City of*

9    *Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc*., 856 F.3d 605, 615–16 (9th

10    Cir. 2017) (affirming dismissal because complaint did not plead "subjective falsity").  The FAC

11    pleads no facts at all about the first statement, and the Opposition ignores it.  As to the second,

12    Plaintiff argues the FAC alleges that "Musk did not believe he had any legally justifiable reasons

13    to terminate the Merger," citing paragraph 149.  *See* Opp. at 11.  But paragraph 149 is simply a list

14    of conclusions unsupported by any factual allegations, insufficient to establish falsity.  *See*

15    *Falkowski*, 309 F.3d at 1133.  Furthermore, the FAC does not and cannot plead that Mr. Musk's

16    opinion about his rights under the Merger Agreement was objectively untrue; the statement was

17    supported by language of the Agreement itself.  Merger Agreement §§ 7.1, 4.6(b), 6.4.

18         The FAC cannot plead a false opinion under an omissions theory either.  There are no

19    allegations that Mr. Musk formed this opinion without consulting an attorney, *Omnicare, Inc. v.*

20    *Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 188 (2015), and the FAC does

21    not allege any specific material facts—as opposed to the hodgepodge of legal conclusions asserted

22    in paragraph 149—whose omission rendered it misleading.  Thus, the FAC fails to plead what the

23    court found sufficient in *In re Intuitive Surgical Sec. Litig*., 2017 WL 4355072, at *3 (N.D. Cal.

24    Sept. 29, 2017) (complaint alleged that defendant misclassified serious injuries).

25         ***Fifth Alleged Misstatement—May 21, 2022 Tweets (FAC ¶¶ 128-130):***  The FAC does not

26    allege any specific facts showing why Mr. Musk's opinion statement was untrue or contradicting

27    his factual representation that Twitter had not—to that point—explained how it calculates spam.

28

1      ***Final Alleged Misstatements—Notices of Termination (Exs. A-C)***:   As discussed *supra*

2  pp. 3-4, the FAC fails to plead why the legal arguments and factual representations made in the

3  Notices of Termination are false and, for the most part, fails to even identify which particular

4  contentions it seeks to challenge.   The FAC also fails to allege subjective falsity by the authors of

5  the Notices or that the opinions offered were objectively untrue.   *City of Dearborn Heights*, 856

6  F.3d at 616.   Plaintiff's reliance on *Rosenbaum Capital LLC v. Boston Communs. Group, Inc.*, 445

7  F. Supp. 2d 170 (D. Mass. 2006)—an out-of-circuit case decided pre-*Omnicare*—is misplaced

8  because there are no specific allegations of subjective falsity.   *Id.* at 173 (complaint alleged that

9  makers did not believe statements about litigation when they were made).   The FAC fails to plead

10  an omissions theory either as it identifies no material facts that were required to be disclosed but

11  were omitted.   *See Omnicare*, 575 U.S. at 189 ("An opinion statement . . . is not necessarily

12  misleading when an issuer knows, but fails to disclose, some fact cutting the other way.").

13      **B.      The FAC Fails To Plead Materiality**

14      The Opposition's response to the Motion's materiality argument largely misses the point.

15  Materiality is a context specific inquiry.   *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 43

16  (2011).   It requires Plaintiff to show that the "disclosure of the omitted fact [or correction of the

17  misstated fact] would have been viewed by the reasonable investor as having significantly altered

18  the 'total mix' of information made available."   *In re Tesla Inc., Sec. Litig.*, 2023 WL 4032010, at

19  *7 (N.D. Cal. June 14, 2023) (*citing TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 445

20  (1976)).   Here, *contra* Opp. at 10, Mr. Musk is not arguing that the market reacted to "some

21  random analyst," but rather that the FAC fails to plead the market was reacting to the alleged

22  misstatements, as opposed to the ***fact*** that Mr. Musk announced his intention to place the Merger

23  on hold, the ***fact*** that Mr. Musk issued a Notice of Termination, and the ***fact*** that litigation ensued.

24  Having failed to adequately allege that, in this context, the misrepresentations themselves were

25  material, the FAC fails to plead materiality.   *See id.*; *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108

26  (9th Cir. 2010) ("conclusory allegations of law and unwarranted inferences are insufficient" to

27  show materiality).   Finally, the Opposition mistakes the Motion's argument that the FAC failed to

28  plead that the opinions were false for a materiality argument.   Opp. at 11-13.   As discussed, *supra*

p. 7, the alleged misstatements of opinion claims fail for failure to plead subjective and objective falsity and the failure to identify specific omissions that should have been disclosed.

### C.    The FAC's Empty Conclusions Do Not Plead Scienter

The Motion to Dismiss argued that, absent compelling allegations showing that Mr. Musk (and his lawyers) knew, or had access to facts showing, that their statements were false at the time they were made, the FAC could not plead scienter simply by compiling a "a large quantity of otherwise questionable allegations." *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1008 (9th Cir. 2009). In response, the Opposition largely repeats those same "voluminous" and "questionable allegations." *Compare* Mot. at 17-19 *with* Opp. at 12-18. The Opposition "mistakes quantity for quality" and does not plead scienter. *Metzler*, 540 F.3d at 1070.

The Opposition cannot overcome the FAC's utter lack of specific and particularized allegations that Mr. Musk knew or had reason to know that any of the statements were false at the time they were made. *See Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018); *Norfolk Cnty. Ret. Sys.*, 2016 WL 7475555, at *3. In support of its contention that the FAC "contains detailed allegations" that Mr. Musk did not believe that his statements were true, the Opposition points only to FAC's catchall paragraph 149. Opp. at 14. But that paragraph's general, unsupported conclusions cannot establish scienter. FAC ¶ 149; *Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1252 (N.D. Cal. 2014) ("Conclusory statements about Defendants' scienter, without corroborating factual allegations, are usually insufficient, standing alone, to adequately allege scienter"). Because Plaintiff has not alleged sufficient facts to establish subjective falsity, they cannot establish scienter, *see In re Credit Suisse First Boston Corp.*, 431 F.3d 36, 48 (1st Cir. 2005) (cited in Opp. at 16) *overruled by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), and their reliance on *Rosenbaum* and *Glazer* cannot save them. *Rosenbaum*, 445 F. Supp. 2d at 175 (complaint pleaded sufficient facts of subjective falsity); *Glazer*, 63 F.4th at 780 (same).

The Opposition's other attempts to cobble together the required "compelling" theory of scienter fare no better. The FAC does not allege that Mr. Musk's legal positions in the Delaware Action "were totally baseless and unsupported by any facts or evidence." Opp. at 14. The only "facts" about the Delaware Action the FAC alleges are that Mr. Musk lost a motion to compel, a

third party lost a motion to quash, and Mr. Musk ultimately settled.  FAC ¶¶ 158, 160-61, 166.  These allegations do not establish baselessness or the absence of evidence—Plaintiff pleads no facts for his conclusion that the Data Scientists' Analyses did not support Mr. Musk's claims (*Id.* ¶ 159).  Nor do they plausibly support such an inference.  *See Mohebbi*, 50 F. Supp. 3d at 1252.  The fact that Mr. Musk did not have, for one week in June 2022, a point person designated for financing (Opp. at 15) does not allege or suggest scienter.  The FAC pleads no tangible connection between a minor personnel issue and the truth or falsity of Mr. Musk's statements (nor could there be).  And absent facts sufficient to establish knowledge or deliberate recklessness, the FAC cannot rely on its general allegations of "motive and opportunity" to establish scienter.  *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021).  Plaintiff's parade of conclusions, unwarranted inferences, and otherwise questionable allegations are insufficient to plead scienter as a matter of law.  *See Zucco*, 552 F.3d at 1008.

### D. The FAC's "Corrective Disclosure" Revealed No Fraud

On top of everything else, Plaintiff's claim fails because the October 4 Announcement— the FAC's alleged corrective disclosure—did not reveal that any of Mr. Musk's alleged misstatements were fraudulent, thus defeating any showing of loss causation.  *See Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 608 (9th Cir. 2014) (plaintiff failed to "specify which of the Defendants' statements were made untrue" by purported corrective disclosure).

Neither the FAC nor the Opposition quote the October 4 Announcement, let alone "specify which of" Mr. Musk's "statements were made untrue," *id.*, by the message that he "intend[s] to proceed to closing of the transaction contemplated by the April 25, 2022 Merger Agreement, on the terms and subject to the conditions set forth therein."  Bergjans Ex. 6 at 3.  Instead, Plaintiff improperly seeks to prevent the Court from *even considering* the actual text of his purported corrective disclosure in connection with this motion.  Dkt. 37 at 3-5; *see Kang*, 620 F. Supp. 3d at 896.  Plaintiff has good reason to do so: the text is fatal to his claim.  The statement does not reveal that the deal had *not* been placed on hold, that Mr. Musk's estimate of the prevalence of spam accounts on Twitter was false, or that any of Mr. Musk's legal arguments were fraudulent.

1   *See Oregon Pub. Emps. Ret. Fund,* 774 F.3d at 608; *In re Nektar*, 34 F. 4th at 838-39 (no loss

2   causation where purported revelation of fraud "did not correct or revise previous patient data").

3       The FAC's bare characterization that the October 4 Announcement "essentially

4   acknowledged that [Mr. Musk] had been bluffing all along" (FAC ⁋ 167) is not sufficient to plead

5   loss causation.  Plaintiff cannot "plead loss causation through 'euphemism,'" *Metzler Inv. GmBH*,

6   540 F.3d at 1064, but must show a "causal connection between the fraud and the loss by tracing

7   the loss back to the very facts about which the defendant lied." *In re Nektar*, 34 F. 4th at 838-39

8   The FAC does not meet that burden as it fails to connect any of the specific alleged

9   misrepresentations to any language in the October 4 Announcement.  And the Opposition cites no

10  authority supporting its contention that purportedly acknowledging a "bluff"—without

11  contradicting any alleged misstatement—somehow establishes loss causation.  To the contrary, in

12  both cases Plaintiff cites, the corrective disclosures at issue explicitly invalidated the alleged

13  misstatements.  *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 604–05

14  (N.D. Cal. 2019) (corrective disclosure "explicitly tied increased scrutiny of generic drug pricing

15  to McKesson's financial results"); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1205 (9th Cir. 2016)

16  (announcing write off of specific loan following disclosure of investigation into false statements).

17      Moreover, Plaintiff cannot save a defective theory of loss causation by relying on post-

18  class period news reports or Mr. Musk's April 2023 BBC interview.  Opp. at 18-19.  First, and

19  fundamentally, none of the statements in the news articles or interview invalidate or reveal Mr.

20  Musk's alleged misstatements to be untrue.  *Oregon Pub. Emps. Ret. Fund,* 774 F.3d at 608; FAC

21  ⁋⁋ 169-71.  And second, the FAC does not allege that the articles or interview had any impact on

22  Twitter's stock price and, accordingly, caused any loss.  *Loos v. Immersion Corp.*, 762 F.3d 880,

23  890 (9th Cir. 2014) (post-class period statements could not establish loss causation); *Mehedi v.

24  View, Inc.*, 2023 WL 3592098, at *21 (N.D. Cal. May 22, 2023) (same).

25      As in *Metzler* and *Oregon Pub. Emps. Ret. Fund*, there simply is no language in the

26  alleged corrective disclosure that invalidates any of the alleged misstatements.  *See Metzler Inv.

27  GmBH,* 540 F.3d at 1063*; Oregon Pub. Emps. Ret. Fund,* 774 F.3d at 608.  Tellingly, the

28  Opposition makes no effort to respond to or distinguish this binding and controlling authority.

1   Because the FAC does not plead a revelation of fraud and because there are more plausible

2   explanations for the stock movement, *see Metzler Inv. GmbH,* 540 F.3d at 1065—like the market

3   reacting to the announcement of a settlement itself—Plaintiff has failed to plead that

4   "misstatement[s], as opposed to some other fact, foreseeably caused [their] loss," *see In re*

5   *Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1034 (N.D. Cal. 2020) (granting motion to

6   dismiss where loss was also attributable to other non-fraud events).

7   **II.     MR. MUSK IS ENTITLED TO *NOERR-PENNINGTON* IMMUNITY**

8          Mr. Musk is entitled to *Noerr-Pennington* immunity if "(1) the lawsuit at issue imposes a

9   burden on [his] petitioning rights; (2) the alleged conduct forming the basis of the lawsuit

10  constitutes [non-sham] petitioning activity; and (3) the relevant statute can be construed to

11  preclude the burden on protected activity." *Pick v. Kay*, 2022 WL 193197, at *1 (9th Cir. Jan. 21,

12  2022). All three prongs are satisfied here.

13         **A.     There Is No Securities Fraud "Exception" to *Noerr-Pennington***

14         Despite Plaintiff's claim (Opp. at 20), "there is no 'fraud' exception to *Noerr/Pennington*

15  immunity." *Santana Prods., Inc. v. Bobrick Washroom Equipment, Inc.*, 249 F.Supp.2d 463, 491

16  (M.D. Pa. 2003), *aff'd in part vacated in part, remanded* 401 F.3d 123 (3d Cir. 2005); *Tuosto v.*

17  *Philip Morris USA Inc.*, 2007 WL 2398507, at *5 (S.D.N.Y. Aug. 21, 2007). *Noerr* itself

18  recognized immunity applies even if defendants were alleged to have employed deceptive means.

19  *E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 145 (1961).

20         Plaintiff's argument to the contrary rests entirely on an out-of-context quote from a thirty-

21  year old District of Arizona case, *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 794 F.

22  Supp. 1424 (D. Ariz. 1992), and holds no water. The court in *In re Am. Cont'l Corp.* did not hold

23  that *Noerr-Pennington* was inapplicable because plaintiff brought a claim for securities fraud, but

24  rather, that defendants' statements were not protected petitioning activity under *Noerr-Pennington*.

25  *Id.* at 1448. Although the court mused without citation that *Noerr-Pennington* is "not a shield for

26  fraud," *id.*, this clear dicta has been expressly rejected. *Santana Prods.*, 249 F.Supp.2d at 491.

27  The Ninth Circuit and its district courts have routinely held, *contra In re Am. Cont'l Corp.*, that

28  *Noerr-Pennington **does extend*** to actions asserting fraud and misrepresentation claims. *Sosa*, 437

F.3d at 942 (affirming application of *Noerr–Pennington* to claims asserting violations of RICO and alleging, inter alia, extortion and mail and wire fraud as predicate acts); *see UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 984 (N.D. Cal. 2019) (false advertising claims); *see Sliding Door Co. v. KLS Doors, LLC*, 2013 WL 2090298, at *6 (C.D. Cal. May 1, 2013) (Lanham Act); *AirHawk Int'l, LLC v. TheRealCraigJ, LLC*, 2017 WL 3891214, at *3 (C.D. Cal. Jan. 19, 2017) (same). Here, *Noerr–Pennington* "'obviously . . . [should be applied] regardless of the underlying cause of action asserted by the plaintiffs.'" *Lynn v. Friedenthal*, 2011 WL 6960823, at *7 (C.D. Cal. Dec. 2, 2011) (citation omitted).

### B.    Plaintiff's Lawsuit Axiomatically Burdens Petitioning Rights

This shareholder action attempts a reboot of the Delaware Action by asserting new claims based on Mr. Musk's prior petitioning activity — precisely what *Noerr–Pennington* is designed to prevent — and "quite plainly burden[ing] [Mr. Musk's] ability to [deal with similar] legal claims short of filing a lawsuit" in the future. *Sosa*, 437 F.3d at 933. The Opposition does not address this burden, instead, erroneously asserts there is no petitioning activity at issue.

### C.    Mr. Musk's Statements Relating to His Legal Rights Are Petitioning Activity

The Opposition's contention that the statements at issue here are not "petitioning activity" under *Noerr–Pennington* confuse the scope of the doctrine and should be rejected. Plaintiff argues the statements must be "directed to the government" (Opp. at 21) to qualify as petitioning activity, but this has been repeatedly rejected. *Noerr–Pennington* gives "'breathing space' to the right of petition" to include statements beyond those made "directly to the court in the course of litigation," including **pre-suit** communication. *Sosa*, 437 F.3d at 934; *see also Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1006-07 (9th Cir. 2008). The Opposition's argument that *Noerr–Pennington's* protection does not apply because Mr. Musk did not file the initial lawsuit in the Delaware Action is similarly unsupported. Opp. at 21. *Noerr–Pennington* plainly applies to persons "either . . . bringing suit **or defending against** a suit." *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1156 (N.D. Cal. 2014). There is no requirement that a pre-suit communication explicitly threaten litigation—to qualify as protected conduct, the communication only needs to be "sufficiently related," *Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 F. App'x 406, 407

(9th Cir. 2017), or "incidental" to the judicial petitions.  *Theme Promotions, Inc.* 546 F.3d at 1006-07.  Mr. Musk's statements articulating his position in his contractual dispute and providing notice that he is exercising his termination rights fall within this broad definition.  Mot. at 22-23.  Finally, the fact that Mr. Musk's statements were made publicly are of no moment; public statements can likewise be protected.  *UCP*, 420 F. Supp. 3d at 983 (N.D. Cal. 2019) (online posts protected by *Noerr-Pennington*); *see AirHawk*, 2017 WL 3891214, at *3 (same); *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1082 (C.D. Cal. 2010) (same).

**D.      The FAC Did Not Plead That Mr. Musk Engaged In Sham Litigation.**

The Opposition's final attempt to avoid dismissal under *Noerr-Pennington* by invoking the "sham litigation" exception fails because the FAC did not meet the heightened pleading requirements to establish that (1) Mr. Musk's merits arguments in the Delaware Action were "objectively baseless," and (2) his subjective motivation was to "interfere . . .  with . . . business relationships."  *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1094 (9th Cir. 2000); *Fitbit, Inc. v. Laguna 2, LLC*, 2018 WL 306724, at *10 (N.D. Cal. Jan. 5, 2018) ("[t]he Ninth Circuit has established a heightened pleading requirement" for the "sham litigation exception").

To start, Plaintiff's suggestion that the sham litigation exception cannot be resolved on a motion to dismiss (Opp. at 25) is incorrect.  "There is nothing novel about analyzing the sham exception at the motion to dismiss phase."  *Nazir v. United Air Lines*, 2009 WL 2912518, at *5 n.7 (N.D. Cal. Sept. 9, 2009) (granting motion to dismiss on *Noerr-Pennington* grounds); *see Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 F. App'x 406, 407 (9th Cir. 2017) (affirming dismissal based on analysis of sham exception).  Moreover, in light of the chilling effect of lawsuits aimed at petitioning conduct, the heightened pleading requirement, and the Court's mandate "to be critical in reviewing claims to determine whether the sham exception is properly invoked," *Wonderful Real Est. Dev. v. Laborers Int'l Union of N. Am.*, 2020 WL 91998, at *10–11 (E.D. Cal. 2020), dismissal at the pleadings is particularly appropriate here.

The FAC does not sufficiently plead that Mr. Musk's positions were baseless, and the Opposition's arguments to the contrary fail.  First, the Opposition argues Mr. Musk claimed he was entitled to due diligence and sought termination because of general issues with spam accounts

1   that he was aware of before he made his offer to purchase Twitter.  But this mischaracterizes Mr.

2   Musk's legal position as stated in Exhibit A to the FAC, that he was exercising his information

3   rights under the Merger and terminating based on an understanding that Twitter's representations

4   to the SEC were inaccurate (*see* FAC Ex. A).  The Court is not required to accept the FAC's

5   mischaracterizations as true.  *See Kang*, 620 F. Supp. 3d at 896.  The Opposition then argues that

6   Mr. Musk's position was not supported by his Data Scientists' Analyses, but offers no facts to

7   support that conclusion.  *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 894

8   (9th Cir. 1988) ("Conclusory allegations are insufficient" to plead the sham litigation exception).

9   Next, the Opposition contends that Mr. Musk's original position was baseless because he later

10  identified additional grounds for termination after learning new facts to support them.  Opp. at 24,

11  Exs. B-C.  But noting new arguments were added does not plausibly suggest that the original

12  arguments are "baseless."   The Opposition also repeats a number of the FAC's

13  mischaracterizations of the Merger Agreement's terms and cites an argument asserted by Twitter

14  regarding the scope of Mr. Musk's information rights.  Opp. at 24.  At best this "simply recast

15  disputed issues from the underlying litigation," which is insufficient under the exceptions

16  heightened pleading standards. *Dairy, LLC v. Milk Moovement, Inc.*, 2022 WL 4387981, at *3

17  (E.D. Cal. Sept. 22, 2022).

18         Finally, Plaintiff cannot establish objective baselessness by noting that Mr. Musk

19  ultimately settled.  *Catch Curve, Inc. v. Venali, Inc.*, 2008 WL 11334024, at *3 (C.D. Cal. Nov. 3,

20  2008) (courts should not "engage in post hoc reasoning by concluding that an ultimately

21  unsuccessful action must have been unreasonable or without foundation.").  And the FAC does not

22  satisfy the second "sham litigation" element either.  According to the Opposition, Mr. Musk's

23  subjective motivation underlying the Delaware Action "was . . . to terminate the Merger" (Opp. at

24  25)—the precise relief he sought.  *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 958 (S.D.

25  Cal. 1996) (there is no "[sham] proceedings [where what is] aimed at securing, through the very

26  process of litigation, [is the same] benefit [as] the prayed-for relief.")

## CONCLUSION

28         For the reasons stated herein, the Court should dismiss the FAC without leave to amend.

1

DATED:  August 23, 2023

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

2

3

4

By _/s/ Michael T. Lifrak_____
Alex Spiro
Michael T. Lifrak
Joseph C. Sarles
Alex Bergjans

5

6

7

*Attorneys for Elon Musk*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2   I hereby certify that the foregoing document was served on all counsel of record electronically or

3   by another manner authorized under FED. R. CIV. P. 5(b) on this the 23rd day of August, 2023.

4

QUINN EMANUEL URQUHART &
5   SULLIVAN, LLP

6

7
By  */s/ Alex Bergjans*
8   Alex Spiro
Michael T. Lifrak
9   Joseph C. Sarles
Alex Bergjans
10

11   *Attorneys for Elon Musk*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **ATTESTATION**

2
3

Pursuant to Civil L.R. 5-1,  I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatory herein.

4
5

By */s/ Alex Bergjans*
Alex Spiro

6

Michael T. Lifrak

7

Joseph C. Sarles
Alex Bergjans

8

*Attorneys for Defendant Elon Musk*

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28