IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ELON MUSK,<br><br>    Defendant. | Case No. 22-cv-05937-CRB<br><br>**ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION TO LIFT STAY** |

In December 2023, this Court ruled that Plaintiffs plausibly allege a securities violation as to three statements made by Defendant Elon Musk ("Musk") after he entered into a deal to acquire Twitter, Inc. ("Twitter"). MTD Order (dkt. 48). Musk now moves for judgment on the pleadings, largely making the exact same arguments that he made at the motion to dismiss stage and which this Court explicitly considered and rejected.

Just as Musk was allegedly bound by his waiver of due diligence after entering into the Merger Agreement, Musk is bound by this Court's decision that Plaintiffs' case can move past the pleadings stage. The Court DENIES Musk's motion, and in turn, DENIES Plaintiffs' motion to lift the discovery stay as moot.

I.     **BACKGROUND**

    A.     **Relevant Factual Background[1]**

On April 25, 2022, Twitter entered into a Merger Agreement to be acquired by an entity wholly-owned by Musk. See FAC (dkt. 31) ¶ 85. Musk's offer to acquire Twitter

---

[1] The Court provides an overview of the facts directly relevant to the motion at issue. A complete background of the case can be found in the Court's motion to dismiss order. See MTD Order at 2–11.

was not conditioned on financing, nor subject to business due diligence; he waived those conditions in an amended offer a few days prior. Id. ¶ 82. Musk intended to finance the acquisition, in large part, with his Tesla shares. But in the days after the announcement of the deal, Tesla's stock declined by about $1,000. Id. ¶¶ 92–93, 134.

As the price of Tesla declined, Musk tweeted about the deal. On May 13, 2022, he tweeted that the Twitter deal was "temporarily on hold pending details supporting calculation that spam/fake accounts do indeed represent less than 5% of users." Id. ¶ 111. On May 16, 2022, he stated that fake and spam accounts make up at least 20% of Twitter's users. Id. ¶ 120. On May 17, 2022, Musk tweeted that the actual number of fake accounts at Twitter "could be *much* higher" than 20%, and that the deal could not go forward until the Twitter CEO showed proof that "fake/spam accounts" accounted for less than 5% of Twitter accounts. Id. ¶ 125.

### B. Procedural History

Plaintiffs sued Musk, on behalf of all persons and entities who sold Twitter stock from May 13, 2022 to October 4, 2022, alleging that he violated Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, by making misstatements to artificially depress the price of Twitter stock and to pressure Twitter to lower the price Musk would have to pay to acquire it. See FAC. Musk moved to dismiss Plaintiffs' entire suit. See MTD (dkt. 34).

In December 2023, this Court granted Musk's motion to dismiss in part and denied it in part. See Order. The Court held that "Plaintiffs plausibly allege their Section 10(b) claim as to the May 13 tweet that the deal was 'temporarily on hold,' the May 16 statement that fake and spam accounts make up at least 20% of Twitter's users, and the May 17 tweet." Id. at 1. The Court dismissed Plaintiffs' claims to the extent they relied on other alleged misstatements. Id.

On March 26, 2024, Musk filed the present motion for judgment on the pleadings. See Mot. (dkt. 59). That motion reinstated the PSLRA discovery stay, which Plaintiffs moved to lift on April 5, 2025. See Mot. to Lift Stay (dkt. 61).

2

## II. LEGAL STANDARD

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is proper "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990) (citation omitted). "The legal standards governing Rules 12(c) and 12(b)(6) are 'functionally identical,' as both permit challenges directed at the legal sufficiency of the parties' allegations." See Jackson v. Fischer, 2015 WL 1143582, at 8–9 (N.D. Cal. Mar. 13, 2015) (citing Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989), and Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012)). A court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of L.A., 828 F.2d 556, 561 (9th Cir. 1987).

Plaintiffs alleging securities fraud under Section 10(b) must plead the following elements: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misrepresentation; (5) economic loss; and (6) loss causation (a causal connection between the material misrepresentation and the economic loss). See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341–42 (2005); Loos v. Immersion Corp., 762 F.3d 880, 886–87 (9th Cir. 2014).

## III. DISCUSSION

Musk argues that he is entitled to judgment on the pleadings because his statements were not materially misleading to a reasonable investor in light of countervailing, contemporaneous statements—specifically, provisions in the Merger Agreement. He also argues that Plaintiffs have not sufficiently alleged loss causation for any of the statements at issue.

But despite Musk's claim to the contrary, the Court explicitly considered and rejected these arguments in its motion to dismiss order. The Court therefore denies his motion based on the law of the case doctrine. As a result, the PSLRA stay is lifted, and

3

Plaintiffs' motion to lift the stay is denied as moot.

### A. Law of the Case Doctrine

"A Rule 12(c) motion for judgment on the pleadings that raises issues already decided on a prior Rule 12(b)(6) motion to dismiss is subject to the 'law of the case' doctrine." See Marble Voip Partners LLC v. Zoom Video Commc'ns, Inc., 2024 WL 86859, at 5–6 (N.D. Cal. Jan. 8, 2024) (citing Strigliabotti v. Franklin Res., Inc., 398 F. Supp. 2d 1094, 1098 (N.D. Cal. 2005)). "Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'" United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997) (quoting Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993)).

Musk tries to frame the arguments in his motion as brand new. Reply (dkt. 68) at 3. But this Court considered and explicitly decided the main issue that Musk now raises about "countervailing statements" in the Merger Agreement. The following is an excerpt from the motion to dismiss hearing:

> **MR. BERNSTEIN**: Your Honor, if I may respond to the false premise notion, once again, the merger agreement is culpable. If the marketplace interprets the information rights provisions in the manner that I understand people on this call do, then the market would know Mr. Musk doesn't have the right to terminate just because he is not getting the information. The merger agreement is public.
>
> . . .
>
> **THE COURT**: Your point I think is: Wait a minute, Musk is there saying "I want documents from Twitter" and anybody who reads [the] merger agreement knows [he] can't get documents from Twitter, legally can't compel it. And, therefore, they would know that what he says "I want documents from Twitter," that may be an expression of a hope but it's not a legally enforceable term.
>
> . . .
>
> **MR. BERNSTEIN:** Your Honor, that's correct.

MTD Tr. (dkt. 46) at 46:9–47:25.

That exchange is identical to what Musk now argues—that is, investors knew he was not entitled to the bot data because the Merger Agreement was publicly available, and so his statements were not materially misleading. Indeed, Musk admitted at the hearing on this motion that his argument "was presented" during the motion to dismiss hearing. Tr. (dkt. 86) at 8:3–9:3. And the Court addressed the argument directly in its motion to dismiss order:

> At the motion hearing, Defendant argued that because the Merger Agreement was publicly filed with the SEC, Defendant's tweets could not have been misleading as to Twitter's obligation under the Merger Agreement. However, Defendant does not point to a specific disclosure in the Merger Agreement that would prevent a reasonable investor from being misled by Defendant's tweet—i.e., a countervailing statement that the deal will close even if Twitter fails to provide him with the bot data he requests. See, e.g. In re eHealth, Inc. Sec. Litig., No. 20-CV02395-JST, 2023 WL 6390593, at *5 (N.D. Cal. Sept. 28, 2023) (finding that although the defendants referenced SEC filings on the calls in which the alleged misstatements were made, nothing in the filings directly addressed the specific issue about which reasonable investors would be misled).

See Order at 20 n.8.

Musk argues that this doctrine is not a bar to his motion because this issue was not briefed in his motion to dismiss. Reply (dkt. 68) at 3. But full briefing is not the requirement. The law of the case doctrine acts as a bar "when the issue in question was actually considered and decided by the first court.'" See Brown v. Alexander, 2016 WL 829071, *7 (N.D. Cal. Mar. 3, 2016 (quoting U.S. v. Cote, 51 F.3d 178, 181 (9th Cir. 1995)) (emphasis added). After hearing argument, the Court considered the issue and decided it against Musk. See Order at 20 n.8. At that time, the Court was fully aware of the provisions of the Merger Agreement that Musk now points to, and the Court determined that those provisions were not sufficient countervailing statements. See id. Additionally, the Court thoroughly considered whether Plaintiffs plausibly alleged loss causation for Musk's material misstatements and decided they did so. Id. at 35–37.

A court may exercise its discretion to reconsider an issue in certain circumstances—

such as when the first decision was clearly erroneous or an intervening change in the law has occurred—but Musk does not contend that these circumstances exist. See Alexander, 106 F.3d at 876; see also Tr. 5:7–6:7. Accordingly, the Court DENIES Musk's motion based on the law of the case doctrine.

### B. Motion to Lift Stay

When Musk filed his motion for judgment on the pleadings, the PSLRA discovery stay was reinstated. Plaintiffs move to lift that discovery stay. See Mot. to Lift Stay. Because the Court denies the motion for judgment on the pleadings, the stay is lifted and discovery can go forward. See Tr. (dkt. 86) ("The Court: And if I deny the motion for judgment on the pleadings, discovery can go forward. So, you know, I don't need to address that right now. I just need to address the motion for judgment on the pleadings. . . . MR. CHANG: Absolutely, Your Honor."). Accordingly, the Court DENIES this motion as moot.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Musk's motion for judgment on the pleadings. In turn, the PSLRA stay is lifted. The Court therefore DENIES Plaintiffs' motion to lift the stay as moot.

**IT IS SO ORDERED.**

Dated: August 5, 2024

CHARLES R. BREYER
United States District Judge