| | |
|---|---|
| 1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | Alex Spiro (*pro hac vice*) |
| 2 | alexspiro@quinnemanuel.com |
| | Jesse A. Bernstein (*pro hac vice*) |
| 3 | Jessebernstein@quinnemanuel.com |
| | Jonathan E. Feder (*pro hac vice*) |
| 4 | jonathanfeder@quinnemanuel.com |
| | 295 5th Avenue, 9th Floor |
| 5 | New York, NY 10016 |
| | Telephone:   (212) 849-7000 |
| 6 | Facsimile:   (212) 849-7100 |
| 7 | Michael T. Lifrak (Bar No. 210846) |
| | michaellifrak@quinnemanuel.com |
| 8 | Joseph C. Sarles (Bar No. 254750) |
| | josephsarles@quinnemanuel.com |
| 9 | Stephen A. Broome (Bar No. 314605) |
| | stephenbroome@quinnemanuel.com |
| 10 | Alex Bergjans (Bar No. 302830) |
| | alexbergjans@quinnemanuel.com |
| 11 | 865 S. Figueroa Street, 10th Floor |
| | Los Angeles, California 90017 |
| 12 | Telephone:   (213) 443-3000 |
| | Facsimile:   (213) 443-3100 |
| 13 | |
| 14 | Nathan Archibald (*pro hac vice*) |
| | nathanarchibald@quinnemanuel.com |
| 15 | 2755 E. Cottonwood Parkway, Suite 430 |
| | Salt Lake City, Utah 84121 |
| 16 | Telephone:   (801) 515-7300 |
| | Facsimile:   (801) 515-7400 |
| 17 | *Attorneys for Defendant Elon Musk* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**LEAD TRIAL COUNSEL ALEX SPIRO'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER**<br><br>Judge: Hon. Charles R. Breyer<br><br>Magistrate Judge: Hon. Donna M. Ryu |

PLEASE TAKE NOTICE THAT, Alex Spiro, lead trial counsel for Defendant Elon Musk, hereby moves the above-entitled Court to quash the deposition subpoena served on him (the "Subpoena"). Mr. Spiro respectfully requests an Order under Fed. R. Civ. P. 45(d)(3)(A) that the Subpoena be quashed and a Protective Order prohibiting the deposition be issued under Fed. R. Civ. P. 26(c). This motion is based upon this notice, the memorandum of points and authorities, and the Declarations of Mr. Spiro ("Spiro") and Alex Bergjans ("Bergjans") filed in support hereof.

**STATEMENT OF THE ISSUES TO BE DECIDED**

1. Should the Court quash the Subpoena and prohibit the deposition of Spiro, Defendant's lead trial counsel, because, among other reasons: (1) Spiro does not possess "unique knowledge" of the issues; (2) Plaintiffs did not exhaust, or reasonably attempt, to obtain evidence from other available sources; and (3) the information is not crucial or central to the case?

**SUMMARY OF THE ARGUMENT**

Alex Spiro is Defendant's long-time lawyer and lead trial counsel in this case. Plaintiffs seek to undermine Defendant's attorney-client relationship—and ultimately to disqualify Spiro—by having this Court compel Spiro to act as a witness against his own client. But the information Plaintiffs seek from Spiro—much of which he does not know—could be obtained from Mr. Musk himself, or other witnesses they did not bother to depose. The only relevant information they seek, Spiro's confidential legal advice to Mr. Musk regarding his May 13 Tweet, is plainly privileged.

Most litigants would not even make such an outrageous request on a record like this. Plaintiffs apparently are banking that the notoriety of client and counsel will cause the Court to overlook the "strong presumption" against deposing trial counsel; the fact that Spiro does not have unique knowledge; Plaintiffs' failure to exhaust other sources of the same information; and the irrelevance of the information. All parties are entitled to equal protection under the law. The Court should not entertain this effort to "disrupt[] the adversarial system and lower[] the standards of the [legal] profession." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).

Depositions of trial counsel are strongly disfavored and Plaintiffs bear a heavy burden to overcome the "strong presumption" in favor of quashing the Subpoena. *Fed. Trade Comm'n v. Directv, Inc.*, 2016 WL 1741137, at *2 (N.D. Cal. May 3, 2016). Under either of the tests set forth

in *Shelton*, "[t]he seminal case on" attorney depositions followed by this Court, *ATS Prods., Inc v. Champion Fiberglass, Inc.*, 2015 WL 3561611, at *3-4 (N.D. Cal. June 8, 2015) (Ryu, J.), or *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 731 (8th Cir. 2002), Plaintiffs must prove, at a minimum, that Spiro possesses unique knowledge of non-privileged information that Plaintiffs sought but were unable to obtain elsewhere, and that the information is crucial to the case. They do not come close. Plaintiffs exclusively seek information regarding Spiro's purported communications and interactions *with others*, which, by definition, cannot be uniquely known by him. Yet, Plaintiffs did not attempt to depose the others with whom Spiro purportedly interacted. To the contrary, the degree to which they have dragged their feet through deposition discovery is stunning. The parties agreed Plaintiffs could take 20 depositions; **but they have taken only five**. In addition, they voluntarily waived or abandoned their ability to obtain discovery from several of the individuals who could provide the information they now claim is vital. And Plaintiffs' plea that Spiro's non-privileged testimony is central—or even relevant—to their 10b-5 claim is disingenuous. With the exception of one, plainly privileged, communication, Plaintiffs' topics are not remotely probative of the issues in this case—*i.e.*, whether Mr. Musk's statements on May 13, 16, and 17, 2022 were materially misleading, made with scienter, and caused class members to suffer losses.

This is not a close call. The Court should quash the Subpoena and issue a protective order.

## BACKGROUND

***Plaintiffs' Claims and Purported Bases For Deposing Spiro***: Plaintiffs assert claims for violation of Section 10 of the Securities and Exchange Act and Rule 10b-5 arising from three alleged misstatements Defendant made relating to his acquisition of Twitter (the "Alleged Misstatements").[1]

The action thus turns on three issues: (1) whether the Alleged Misstatements were

---

[1] They are: (1) a May 13, 2022 Tweet stating "Twitter deal temporarily on hold pending details supporting calculation that spam/fake accounts do indeed represent less than 5% of users" ("May 13 Tweet"); (2) statements made at the May 16, 2022 "All In Summit" that, although Twitter told him "there's just no way to know the number of bots," he believed that "probably 20 percent" of Twitter's users were fake, based on "a bunch of quite smart outside firms" who concluded "it's about 20 percent;" ("May 16 Statement") and (3) a May 17, 2022 Tweet stating "20% fake/spam accounts, while 4 times what Twitter claims, could be *much* higher. My offer was based on Twitter's SEC filings being accurate. Yesterday, Twitter's CEO publicly refused to show proof of <5%. This deal cannot move forward until he does." ("May 17 Tweet"). Dkt. 48; Bergjans Ex. 16.

misleading, (2) Defendant's state of mind on when they were made, and (3) what information the market had available to it to assess their accuracy before October 4, 2022.

Lead trial counsel Spiro possesses no unique, non-privileged information relevant to these issues. Spiro has represented Mr. Musk since 2019, serving as lead trial counsel for Mr. Musk personally on many cases. Spiro ¶ 2. As part of this long-standing attorney-client relationship, Spiro has provided Mr. Musk with legal advice on several non-litigation matters, including his acquisition of Twitter. He also served Mr. Musk as counsel in *Twitter v. Musk* ("Delaware Action"). *Id.* ¶ 4. Spiro was just one member of a large team that advised Mr. Musk in connection with the Twitter Merger. Others advising Mr. Musk included Jared Birchall (the head of Mr. Musk's home office), investment bankers from Morgan Stanley, lawyers from McDermott Will & Emery (who handled Mr. Musk's various disclosures to the SEC in March through April 13, 2022), lawyers from Skadden (who served as deal counsel, drafted and negotiated the Merger Agreement, handled—with Morgan Stanley—post-signing due diligence, and authored letters to Twitter concerning the Merger, including the various termination letters), and various data science experts. *Id.* ¶ 5.

Plaintiffs first identified Spiro as a witness in a list of 47 potential witnesses at the end of January 2025. Bergjans Ex. 8. They refused to identify with specificity why they needed to depose Spiro and did not provide a list of topics until they filed a letter brief with this Court on March 20, 2025. *Id.* ¶ 27. In their letter, Plaintiffs claim they seek Spiro's testimony regarding "(i) Musk's pre-acquisition of Twitter shares and SEC disclosures; (ii) negotiations relating to the merger agreement; (iii) recruitment of investors and syndication documents; (iv) Morgan Stanley's role as Musk's lead banker on the deal; (v) meetings and communications with Twitter on outstanding deal issues; (vi) retaining third-party data experts to review Twitter's information; and (vii) Musk's communications with Twitter to terminate the deal." Dkt. 146 at 1. They also seek information concerning "post-termination efforts to renegotiate the purchase price" of Twitter, including statements purportedly made during those negotiations, Mr. Musk's post-closing and ***post-Class Period*** management of Twitter, and Spiro's alleged (and privileged) communications with his client concerning the May 13 Tweet. *Id.* at 1-2.

***Spiro Has No "Unique" Knowledge On Any Matters Raised By Plaintiffs***: Plaintiffs'

topics list does not identify a single category of information about which Spiro possesses any unique knowledge. To start, Spiro had nothing to do with Mr. Musk's acquisition of Twitter shares pre-Merger. Nor did he author or file any related SEC disclosures—McDermott Will & Emery did. Spiro Ex. 1. Spiro is not a transactional lawyer and did not draft or negotiate the Merger Agreement. *Id.* ¶ 11(b). Skadden prepared the initial draft and negotiated the Merger Agreement with Twitter's counsel from Wilson Sonsini and Simpson Thacher. Bergjans Ex. 11, Ringler Dep. 26:20-22, 50:15-19, 55:17-21. Skadden, along with lawyers from Davis Polk, prepared debt syndication and other financial documents related to the Merger. Spiro ¶ 11(c). Spiro did not hire Morgan Stanley; Mr. Musk has a longstanding relationship with the bank. *Id.* ¶ 11(d). And Spiro did not retain or oversee the data scientists either—Skadden engaged them and other Quinn Emanuel lawyers supervised their work (and they were retained *after* the Alleged Misstatements were made). *Id.* ¶ 11(f).

Moreover, there are numerous other parties and potential witnesses that can offer testimony on the other topics Plaintiffs identified. To the extent Spiro was involved in "recruiting" any potential investors, those investors could testify about their communications. Morgan Stanley personnel can testify about "Morgan Stanley's role as Musk's lead banker." Indeed, four separate Morgan Stanley bankers testified to exactly that in the Delaware Action, and Defendant produced the transcripts to Plaintiffs long ago. Bergjans ¶ 9. Twitter personnel, and other members of Mr. Musk's team—including Morgan Stanley bankers and Skadden lawyers—can provide (and have provided) testimony about communications with Twitter to which Spiro may also have been privy. Representatives from data scientists Cyabra, Halo, and CounterAction could speak to their retention.

Mike Ringler, Mr. Musk's lead deal lawyer from Skadden and the author of Mr. Musk's "communications with Twitter to terminate the deal," already testified about Mr. Musk's termination letter. Bergjans Ex. 11, Ringler Dep. 200:18-202:2. He also testified about the post-termination settlement negotiations with Twitter. *Id.* at 206:16-210:4. Later this month, Plaintiffs will depose Twitter's lead trial counsel, William Savitt, who can also testify about post-termination price negotiations (as could other Twitter personnel involved in those discussions). Indeed, Plaintiffs' allegations about these negotiations is based on allegations made in a Complaint filed by former Twitter executives Parag Agrawal, Ned Segal, Sean Edgett, and Vijaya Gadde. *Id.* Ex. 13.

Plaintiffs could have sought to depose the executives about those discussions. *Id.* ¶ 22. As for Mr. Musk's post-Class Period management decisions at Twitter, numerous other witnesses—including Mr. Musk and other Twitter personnel—can provide that testimony. Spiro ¶ 11(j). In fact, Twitter's former head of Trust and Safety, Yoel Roth, already testified about Twitter's post-acquisition efforts to reduce spam. Bergjans Ex. 12, Roth Dep. 152:11-157:9. If Spiro interacted with third parties about issues relevant to this action, Plaintiffs were free to seek discovery from those third parties.

That leaves one remaining topic: "Spiro's conversations with Musk about the May 13, 2022 tweets at issue in this case." To the extent any such conversations occurred, they were confidential communications between Mr. Musk and his lawyer and are privileged. Spiro ¶ 11(i). And, of course, there was another party to those communications: Mr. Musk himself.

***Plaintiffs Have Obtained Or Waived Discovery From Relevant Witnesses***: Fact discovery opened in August 2024. Dkt. 89. Plaintiffs had eight months to obtain discovery on the topics they seek to ask Spiro about. Plaintiffs either already possess such discovery, voluntarily waived their ability to take follow-up discovery from those individuals, or simply decided not to depose them.

Pursuant to the parties' Discovery Agreement, Defendant produced to Plaintiffs all fact discovery exchanged in the Delaware Action, including every document and every deposition transcript. Bergjans ¶ 3. In exchange, Plaintiffs agreed to waive their rights to depose any non-Twitter employee who provided discovery in that case, including Morgan Stanley, Mr. Birchall, a data scientist from Cyabra, and other members of Mr. Musk's deal team. Dkt. 116 at 10; Bergjans ¶¶ 4, 10. They also waived more discovery from Twitter's deal lawyers at Wilson Sonsini. *Id.* ¶ 10.

The Delaware Action discovery belies Plaintiffs' claim that Spiro is "perhaps the most important witness in the case." Dkt. 146 at 1. By Plaintiffs' own count, Spiro's name appears on less than 3% of the documents produced in the Delaware Action and his email correspondence accounts for only 1% of the document discovery. Bergjans ¶ 13. Spiro was hardly a central figure in the deposition testimony either. The parties took 47 depositions, totaling 11,033 pages of transcript. *Id.* ¶ 11. Excluding the depositions that Spiro took or defended, his name appears in only 11 of the 47 depositions and he is discussed, in passing, on only 90 pages—less than 1%. *Id.*

Plaintiffs also failed to seek discovery on their own regarding the identified topics. Although

fact discovery opened in August, Plaintiffs did not begin taking depositions until the end of January, six months into the eight month fact discovery period. *Id.* ¶ 15. The parties agreed that Plaintiffs could take 20 depositions. Dkt. 127. But they have taken only *five*: Mr. Roth, Twitter founder Jack Dorsey, Mr. Ringler, and 30(b)(6) depositions of PricewaterhouseCoopers and Wedbush Securities.[2] Bergjans ¶ 15. Plaintiffs could have, but chose not to, depose Twitter CEO Agrawal, CFO Segal, General Counsel Edgett, or Chief Legal Officer Gadde, despite citing their Complaint against Defendant, their purported communications with Spiro, and their terminations, as a basis to depose Spiro. *Id.* ¶ 22. Despite their apparent interest in Mr. Musk's SEC disclosures concerning his purchase of Twitter stock, Plaintiffs did not seek to depose anyone from McDermott—the firm that prepared those disclosures. *Id.* ¶ 25. Plaintiffs did not seek to depose any of the purported "investors" that Spiro allegedly recruited either. *Id.* Nor did Plaintiffs depose any of the data scientists from Halo or CounterAction. *Id.* ¶¶ 23, 25. In fact, Plaintiffs served a subpoena on CounterAction, who agreed to produce a witness for deposition, but Plaintiffs *withdrew* the subpoena without explanation shortly before the deposition was to occur. *Id.* Ex. 6. They could have, but chose not to, subpoena Halo. *Id.* ¶ 25. Thus, Plaintiffs' claim that Spiro's testimony on the foregoing topics is essential rings hollow given their failure to pursue it from other sources.

## ARGUMENT

### I.  Plaintiffs Cannot Overcome The "Strong Presumption" Against Deposing Mr. Spiro

The attorney-client relationship is the bedrock of our adversarial system of justice and cannot be shattered in discovery without a compelling justification and need. Following the Supreme Court's guidance, this Court has long recognized that there is a "strong presumption," *Directv, Inc.*, 2016 WL 1741137, at *2, "that trial counsel should not be forced to testify because doing so compromises the standards of the legal profession." *Nocal, Inc. v. Sabercat Ventures, Inc.*, 2004 WL 3174427, at *2 (N.D. Cal. Nov. 15, 2004) (citing *Hickman v. Taylor*, 329 U.S. 495, 513 (1947)).

To overcome that presumption, a litigant seeking to depose trial counsel must establish that

---

[2]  Two are pending. Mr. Musk was unable to attend his scheduled deposition but has offered to reschedule for the earliest mutually agreeable date. Spiro ¶ 12. Savitt's deposition is scheduled this month. Dkt. 156. Bret Taylor and Egon Durban's depositions are the subject of unresolved motions to quash. Dkt. 133.

"(1) no other means exist to obtain the information, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case." *Directv, Inc.*, 2016 WL 1741137, at *2 (citing *Shelton*, 805 F.2d at 1327). As explained in *Shelton*, the leading authority on attorney depositions, *e.g.*, *Chao v. Aurora Loan Servs., LLC*, 2012 WL 5988617, at *3 (N.D. Cal. Nov. 26, 2012); *S.E.C. v. Jasper*, 2009 WL 1457755, at *3 (N.D. Cal. May 26, 2009), "[t]aking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also . . . detracts from the quality of client representation" because "[c]ounsel should be free to devote his . . . time and efforts to preparing the client's case without fear of being interrogated by his . . . opponent." 805 F.2d at 1327. Given its "obvious" chilling effect, taking an opposing counsel's deposition "should be employed only in limited circumstances." *Id.*

Even under *Pamida*'s more permissive standard for deposing counsel about prior litigation, 281 F.3d at 731, a party must show it seeks "relevant information ***uniquely known*** by the attorneys about prior terminated litigation, the substance of which is central to the pending case.'" *Zhu v. Li*, 2021 WL 3910720, at *2 (N.D. Cal. Sept. 1, 2021) (emphasis in original) (quashing subpoena as lawyer did not have unique knowledge); *ATS Prods*, 2015 WL 3561611, at *6 (barring deposition where party "can first attempt to obtain that information from other sources more convenient and less burdensome than through the disfavored practice of deposing opposing counsel.").

Plaintiffs' subpoena fails both tests. Plaintiffs do not seek any non-privileged information "uniquely known" by Spiro; they cannot show they exhausted their ability to obtain information from other sources; and they cannot show that the information is "central to the pending case."

### A. The Information Is Not Uniquely Known To Spiro

Plaintiffs' own purported justifications for deposing Spiro dooms their subpoena. As the following table make clear, for each of Plaintiffs' topics, there is at least one other witness who could provide the same information. And for many of the topics, Spiro has no personal knowledge.

| **Topic** | **Spiro's Knowledge Or Involvement** | **Other Witnesses With The Same, or More Knowledge** | **Was The Other Witness Deposed**[3] |
|---|---|---|---|
| Musk's pre- | Spiro did not purchase the | Mr. Musk | Pending |

---

[3]  * indicates witness was deposed only in the Delaware Action. For Twitter employees, Plaintiffs could depose them, but declined. Dkt. 116 at 10. For others, Plaintiffs waived discovery. *Id.*

| | | | |
|---|---|---|---|
| acquisition of Twitter shares and SEC disclosures. | shares or author or file the disclosures. Spiro ¶ 11(a). | Birchall | Yes* |
| | | McDermott Will & Emery | No |
| Negotiations relating to the Merger Agreement | Spiro did not draft or negotiate the Merger Agreement. Spiro ¶ 11(b). | Ringler and Skadden | Yes |
| | | Wilson Sonsini | Yes* |
| | | Simpson Thacher | No |
| Recruitment of investors and syndication documents | Spiro introduced certain potential investors to Morgan Stanley; did not draft syndication documents. Spiro ¶ 11(c). | Mr. Musk | Pending |
| | | The "recruited" investors | No |
| | | Morgan Stanley | Yes* |
| | | Davis Polk | No |
| Morgan Stanley's role as Musk's lead banker. | Spiro did not hire Morgan Stanley as Mr. Musk's banker. Spiro ¶ 11(d). | Mr. Musk | Pending |
| | | Birchall | Yes* |
| | | Morgan Stanley | Yes* |
| Meetings and communications with Twitter on outstanding deal issues. | Spiro was involved in some meetings and communications with Twitter. Spiro ¶ 11(e). | Mr. Musk | Pending |
| | | Other Musk team members who participated. | Ringler: Yes<br><br>Morgan Stanley: Yes*<br><br>Bob Swan: Yes* |
| | | Twitter personnel with whom Spiro communicated | No |
| Retaining third-party data experts to review Twitter's information. | Spiro did not personally supervise the work performed by these firms; Skadden retained them. Spiro ¶ 11(f). | CounterAction | No |
| | | Cyabra | Yes* |
| | | Halo | No |
| | | Other Quinn Emanuel attorneys | No |
| | | Skadden attorneys | Ringler: Yes; others: No |
| | | Mr. Musk | Pending |
| Mr. Musk's communications with Twitter to terminate the deal | Spiro did not author, sign, or send the termination letters; Ringler did. Spiro ¶ 11(g). | Mr. Musk | Pending |
| | | Ringler | Yes |
| | | Wilson Sonsini | Yes* |
| | | Simpson Thacher | No |
| | | Vijaya Gadde | No |
| Post-termination efforts to renegotiate the purchase price of Twitter | Spiro participated in settlement negotiations with Twitter's counsel. Spiro ¶ 11(h). | Ringler | Yes |
| | | Wilson Sonsini | Yes* |
| | | Simpson Thacher | No |
| | | William Savitt | Pending |
| | | Gadde | No |
| | | Parag Agrawal | Yes*, |
| | | Sean Edgett | Yes*, |
| | | Ned Segal | Yes*, |
| Mr. Spiro's alleged communications with Mr. Musk concerning the May 13 Tweet | Any such conversations were confidential attorney-client communications. Spiro ¶ 11(i). | Mr. Musk | Pending |
| Events at Twitter following close of Merger. | Spiro served as counsel to Mr. Musk and Twitter after closing. Spiro ¶ 11(j). | Mr. Musk | Pending |
| | | Birchall | Yes* |
| | | Yoel Roth | Yes* and by Plaintiffs |

|  |  | Other Twitter personnel | No |
|---|---|---|---|

Further, the fact that Plaintiffs deposed witnesses on *certain* topics is not enough. To overcome the presumption, they still must prove that the witness was unable to provide information and only Spiro could fill the gaps. They have never even ***attempted*** to make such a showing. Accordingly, the subpoena may be quashed on this basis alone. *Graff v. Hunt & Henriques*, 2008 WL 2854517, at *2 (N.D. Cal. July 23, 2008) (entering protective order because plaintiffs "failed to identify any relevant information which they can only obtain by deposing [Defendant]'s counsel"); *GSI Tech., Inc. v. United Memories, Inc.*, 2015 WL 12942202, at *1 (N.D. Cal. Oct. 23, 2015) (quashing subpoena of counsel where "other means of obtaining this information plainly exist").

**B.    Plaintiffs Failed To Obtain Information From Other Sources**

Plaintiffs also made no effort to obtain this information from other available sources. *See ATS Prods.*, 2015 WL 3561611, at *6. The issues identified and Spiro's alleged involvement were known to Plaintiffs before discovery began. Plaintiffs' principal sources—the Agrawal Complaint and Walter Isaacson's *Elon Musk*—were published in June 2024 and September 2023 respectively. Bergjans Exs. 13, 17. Plaintiffs had all relevant Delaware Action Discovery by November 26, 2024. Bergjans ¶ 9. They could have sought this information from other sources over the last eight months and taken advantage of their 20 deposition allotment; instead, they did close to nothing.[4] They did not depose Twitter's former executives, McDermott, or any investors and they abandoned the scheduled deposition of a data scientist for no apparent reason. *Id.* ¶¶ 23, 25. Plaintiffs voluntarily waived additional discovery from other potential sources, including Birchall, Morgan Stanley, and Wilson Sonsini. *Id.* ¶ 10. They "cannot demonstrate that no other means exist to obtain the discovery because Plaintiff[s] ha[ve] yet to attempt to depose other parties." *Nocal Inc.*, 2004 WL 3174427, at *2.

---

[4] Plaintiffs tried a similar tactic with Mr. Isaacson, attempting to shortcut discovery by deposing him in violation of the reporter's privilege and the First Amendment's protection of the freedom of the press. The S.D.N.Y. quashed the subpoena in its entirety because: "the information has to be not only necessary or critical to the maintenance of the claim, but it has to not be obtainable from other available sources. And it appears that there are other available sources." Bergjans Ex. 4 (Hr'g Tr.) at 27:23-28:15.

### C. The Non-Privileged Information Sought Is Not Central To The Case

Nor can Plaintiffs show that Spiro's testimony is "crucial" to their case. *See Zhu*, 2021 WL 3910720, at *2. Indeed, Plaintiffs' topics are largely irrelevant. *See Villaflor v. Equifax Info.*, 2010 WL 2891627, at *3 (N.D. Cal. July 22, 2010) ("[G]iven the focus of the complaint on Defendant's conduct, there has been no showing that the information is crucial to the preparation of this case.").

As the Court noted, Plaintiffs suffered no harm from Mr. Musk's stock disclosures—which predate the Class Period—rendering them irrelevant to the claim. Dkt. 48, at 2 n. 1. On the other end, Mr. Musk's management decisions at Twitter in late October 2022 are "post-class period events" that "bear no relevance to Defendant's knowledge at the time of the alleged misstatements." *E.g., Wade v. WellPoint, Inc.*, 892 F. Supp. 2d 1102, 1134 n.2 (S.D. Ind. 2012). The Merger Agreement negotiations are not central to Plaintiffs' claim either because: (1) the Agreement contains a broad integration clause (at § 9.6), and (2) Plaintiffs contend the Agreement is unambiguous. Dkt. 137-5 at 14; *see Alliance Data Sys. Corp. v. Blackstone Cap. Partners V L.P.*, 963 A.2d 746, 760 (Del. Ch. 2009), *aff'd*, 976 A.2d 170 (Del. 2009) (merger agreement negotiations irrelevant where agreement was unambiguous and contained integration clause). Similarly, the retention of data scientists, Mr. Musk's termination of the Agreement, deal communications with Twitter, and settlement discussions, cannot credibly be described as "central" to issues concerning the alleged falsity of the Alleged Misstatements or Mr. Musk's state of mind when he made them since all these events **post-date** the May 17 Tweet. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 389 (9th Cir. 2010) (discovery of new information does not retroactively make a prior statement an actionable misrepresentation). And Plaintiffs offer no explanation as to how Morgan Stanley's role as banker or the recruitment of investors could be "crucial" to their claims.

Finally, although Spiro's alleged communications with Mr. Musk concerning the May 13 Tweet may be relevant, they are clearly privileged and protected from disclosure. *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997); *Jasper*, 2009 WL 1457755, at *3.

### CONCLUSION

For the foregoing reasons, the Motion should be granted, the Subpoena quashed, and the protective order issued.

DATED: April 3, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Alex Spiro
Alex Spiro
Jesse A. Bernstein
Jonathan E. Feder
Michael T. Lifrak
Joseph C. Sarles
Stephen A. Broome
Alex Bergjans
Nathan Archibald

*Attorneys for Defendant Elon Musk and Lead Trial Counsel Alex Spiro*

-11-   Case No. 3:22-CV-05937-CRB
LEAD TRIAL COUNSEL ALEX SPIRO'S MOTION TO QUASH SUBPOENA

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on this Thursday, April 3, 2025.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ Alex Bergjans
Alex Spiro
Jesse A. Bernstein
Jonathan E. Feder
Michael T. Lifrak
Joseph C. Sarles
Stephen A. Broome
Alex Bergjans
Nathan Archibald

*Attorneys for Defendant Elon Musk and Lead Trial Counsel Alex Spiro*

# ATTESTATION

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatory herein.

By /s/ Alex Bergjans
Alex Bergjans

*Attorneys for Defendant Elon Musk*