April 7, 2025 <u>Via ECF</u>

Hon. Donna M. Ryu
U.S. District Court, Northern District of California
Ronald V. Dellums Fed. Bldg. & U.S. Courthouse
1301 Clay Street
Oakland, California 94612

RE: *Pampena v. Musk*, No. 3:22-cv-05937-CRB (N.D. Cal.)

Dear Judge Ryu:

Plaintiffs Brian Belgrave, John Garrett, and Nancy Price ("Plaintiffs") and Defendant Elon Musk ("Defendant") respectfully submit this letter regarding Plaintiffs belief that fact discovery should be extended for a sufficient period of time to seek the deposition of Walter Isaacson. Defendant disagrees. Counsel have conferred by email and phone but reached an impasse on March 31, 2025. Fact discovery cutoff is March 31, 2025; expert discovery cutoff is June 30, 2025; and the last day to file dispositive motions is July 11, 2025. No trial date has been set.

## I.     **Plaintiffs' Statement**

Plaintiffs continue to seek the deposition of Walter Isaacson. Mr. Isaacson wrote a biography of Defendant Elon Musk that was published in 2023. *See* Walter Isaacson, Elon Musk (Simon & Schuster, 2023). In preparing to write this book, Mr. Isaacson "shadowed Musk, attended his meetings, walked his factories with him, and spent hours interviewing him, his family, friends, coworkers, and adversaries. The result is the revealing inside story, filled with amazing tales of triumphs and turmoil …" *Id.* at jacket cover. Mr. Isaacson extensively covered the topic at the center of this case – Musk's 2022 takeover of Twitter – in several chapters of the biography: Chapter 72. Active Investor: Twitter, January -April 2022; Chapter 73: "I made an offer": Twitter, April 2022; Chapter 74: Hot and Cold: Twitter, April-June 2022; Chapter 78. Uncertainty: Twitter, July-September 2022; Chapter 81: Let that sink in": Twitter, October 26-27, 2022, and Chapter 82. The Takeover: Twitter, Thursday, October 27, 2022. *Id.*, *passim*. The book includes additional chapters about Musk's struggle to impose his manic management style on a Bay Area company that took legal compliance and online safety seriously, which are not Musk hallmarks.

Mr. Isaacson is, of course, a journalist, and may rely on the journalist's privilege. This privilege shields some information in the possession of journalists from discovery under certain circumstances, but does not provide blanket protection. In the Second Circuit (Mr. Isaacson resides in New York City), Mr. Isaacson is subject to discovery concerning non-confidential newsgathering information if Plaintiffs are able to "[1] show that the materials at issue are of likely relevance to a significant issue in the case, and [2] are not reasonably obtainable from other available sources." *Gonzales v. Nat'l Broad. Co., Inc.*, 194 F.3d 29, 36 (2nd Cir. 1999). Plaintiffs meet the relevance prong, and will have met the exhaustion prong by the time of Mr. Isaacson's deposition.

The chapters of Mr. Isaacson's book cited above are exceptionally relevant here given that they concern all phases of Musk's takeover of Twitter – from Musk's secret acquisition of almost 10% of Twitter's stock, his waiver of due diligence, and his bare knuckles negotiation and execution of the merger agreement, to his getting cold feet about the deal, attending a June meeting with Twitter with "a desire to lay the ground for either getting out of the deal or repricing it" (Musk, at 463), Musk's use of information that Twitter provided "as a ***pretext for trying to withdraw from the deal***" (*id.* at 490 (emphasis added)), and warnings by Musk's attorneys of his imminent failure at trial in Delaware: "***His [Musk's] lawyers finally convinced him at the end of September that he would lose the case if they took it to trial***." *Id.* at 493 (emphasis added). These events trace the same lines as those etched in Plaintiffs' First Amended Complaint.

Musk's insistence on rescheduling – and his recent decision to skip – his deposition has muddied the issue of exhaustion. To address exhaustion concerns, Plaintiffs noticed Mr. Isaacson's deposition for March 28, 2025, *i.e.*, just before the end of fact discovery. Plaintiffs intended to depose Musk before Isaacson, but Musk continually made scheduling difficult. Plaintiffs first noticed the deposition for March 11, but Musk claimed he was unavailable. The parties then negotiated extensively about logistics surrounding the deposition, and Plaintiffs sought and obtained a Court order setting the deposition date –April 3, 2025 – so that Musk would not skip the deposition at the last minute, as he has done in other recent cases. *See* ECF 134.[1]

Meanwhile, Mr. Isaacson moved to quash the subpoena for his deposition in the Southern District of New York. *Isaacson v. Pamena*, SDNY Case No. 1:25-mc-00126-AS. Before Plaintiffs could file an opposition brief, the Court short set a hearing and granted the motion to quash because Plaintiffs had not exhausted other potential sources of discovery (primarily by deposing Musk and Alex Spiro) before taking Isaacson's deposition. *Id.*, ECF 11. The Court confirmed that its order was not intended to preclude Plaintiffs from seeking Mr. Isaacson's deposition after taking the deposition of Musk. ECF 162-6 at 30:5-9 ("MR. ARNZEN: [Y]ou're not putting out of the realm of possibility a scenario where we depose Mr. Musk and then seek Mr. Isaacson's deposition if the Northern District allows us to. THE COURT: That's correct."). Plaintiffs continue to seek the deposition of Musk and Mr. Spiro (Musk skipped his deposition, and Spiro has moved to quash the subpoena for his), and seek to depose Mr. Isaacson afterwards.

Plaintiffs therefore seek an order from this Court extending discovery to the extent necessary to take the depositions of Mr. Spiro and Musk and then to depose Mr. Isaacson thereafter. The precise timing of a deposition of Mr. Isaacson is uncertain because there is a pending dispute surrounding Plaintiffs' deposition of Mr. Spiro (ECF 161), and Musk has not yet rescheduled his deposition, despite Plaintiffs' request on April 4 that he provide a deposition date between April 7 and April 18. Further, Plaintiffs believe that Mr. Isaacson will file a renewed motion to quash the subpoena, which will require a brief period of time to brief and argue.

---

[1] This was all for naught – after Plaintiffs' counsel travelled across the country to depose Musk on April 3, Musk's counsel informed Plaintiffs 20 minutes after the designated start time that he would not be attending his deposition.

Musk asserts below that "[a]lthough Plaintiffs knew the contents of Mr. Isaacson's book for nearly a year before discovery opened, they waited until the very end of discovery to depose him and litigate his motion to quash." This entirely ignores the exhaustion requirement – Plaintiffs need to depose Musk and Mr. Spiro before seeking Isaacson's deposition, but they both continue to resist their depositions (Musk by skipping his testimony, and Spiro by filing a motion to quash). Musk also imagines that the number of depositions taken here means that Plaintiffs were not diligent in prosecuting their case. Nothing could be further from the truth. Plaintiffs have in hand the transcripts of the more than 40 depositions taken in the Delaware case, which Defendant agrees "shall be deemed to have been taken in this action," have taken additional depositions, and continue to vigorously seek the depositions of Musk, Spiro, Truist, and Isaacson. Musk's criticism of Plaintiffs for not indiscriminately re-taking depositions here is meritless.

## II.     Defendant's Statement

In September 2023, Walter Isaacson published *Elon Musk*, a biography of Defendant. Nearly a year later, in August 2024, fact discovery opened in this case.[2] Plaintiffs waited another six months to serve a deposition subpoena on Mr. Isaacson in February 2025 and set his deposition for March 28, 2025, the last business day before the close of fact discovery on March 31. All the while, Plaintiffs knew that Mr. Isaacson intended to move to quash on the grounds that the testimony Plaintiffs seek—regarding his newsgathering methods, mental impressions, and sources for his book—are protected from disclosure under the Reporter's Privilege and that Plaintiffs did not exhaust their attempts to obtain that information from other available sources.

On March 25, 2025, Mr. Isaacson filed a motion to quash Plaintiffs' subpoena in the United States District Court for the Southern District of New York ("Motion to Quash"), which was granted two days later. In granting the Motion, the court held that Plaintiffs failed the threshold requirement to seek information from other sources (including but certainly not limited to Mr. Musk) but noted that *even if* Plaintiffs had deposed "Mr. Musk and his agents," the court remained skeptical that Plaintiffs could show the information was "not [] obtainable from other available sources" or "necessary or critical to the maintenance of the claim." Dkt. 162-6 ("Isaacson Hr'ing Tr.") at 27:5-28:16. Thus, even if Plaintiffs were permitted to serve Mr. Isaacson with a second subpoena after deposing Mr. Musk, they are unlikely to overcome his Reporter's Privilege objections.

Plaintiffs now ask the Court for a second extension of the fact discovery cut-off to serve a second subpoena on Mr. Isaacson that will be met with a second motion to quash. This is not a request seeking the Court's leave to obtain additional discovery, it is a request for permission to harass a third party by forcing Mr. Isaacson to spend thousands more in fees litigating a second motion to quash. All because Plaintiffs failed to exercise necessary diligence during the eight-month fact discovery period. No good cause supports Plaintiff's request. The Court should deny it.

This Court's discovery schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the

---

[2] Over Defendant's objection, the Court granted Plaintiffs' request for an aggressive discovery schedule, closing fact discovery on January 31, 2025. In December 2024, having taken no depositions, Plaintiffs requested a two month extension and Defendant agreed. Dkt. 120.

3

diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "If the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted." *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). Additionally, there is no good cause if the requested extension would be futile as the moving party cannot establish that it will obtain the discovery it seeks with the additional time without court intervention. *See Rodriguez v. Google LLC*, 2022 WL 17905108, at *1 (N.D. Cal. Dec. 22, 2022) (denying extension where party offered "no explanation of how prolonging the discovery period would address the root problem identified; indeed, this would only ***highlight the necessity of court intervention*** . . . ***and reinforce the futility of an extension***." (emphasis added)).

Plaintiffs' lack of diligence and the futility of their extension doom their request. Although Plaintiffs knew the contents of Mr. Isaacson's book for nearly ***a year*** before discovery opened, they waited until the very end of discovery to depose him and litigate his motion to quash. In the meantime, as the Southern District of New York noted, Plaintiffs did not "canvas all those other people" who were potential sources, "shown them the book" and "figured out what statements they made and in what context." "Isaacson Hr'ing Tr. at 27:5-28:16. They have asked ***two*** witnesses about the book. One, Yoel Roth, did not interact with Mr. Musk until after the end of the Class Period in this case (and disputed the accuracy of Mr. Isaacson's characterization of certain events). The other, Jack Dorsey, never interacted with Mr. Isaacson (but nevertheless testified that Mr. Isaacson's characterization of events was inaccurate).

Plaintiffs knew there were other potential sources, including various members of Mr. Musk's team (bankers, deal lawyers, Jared Birchall) and Twitter personnel, but chose not to depose or otherwise seek discovery from them about the book. Plaintiffs knew the basis of Mr. Isaacson's objection to his subpoena for weeks and failed to scratch the surface of, let alone exhaust, other potential sources of information relating to events described in his book. Plaintiffs cannot credibly blame their lack of diligence on the fact that Mr. Musk's deposition was scheduled for after the close of fact discovery. They knew this for weeks and did not seek any extension of Mr. Isaacson's deposition then, only making the request ***after*** the subpoena was quashed. They waited until the last minute to conduct discovery and must live with the consequences of their lack of diligence.

Even if Plaintiffs had exercised reasonable diligence, the extension would be barred under Rule 16 as futile. As Mr. Isaacson argues in his Motion to Quash, Plaintiffs waived their ability to take discovery from other sources and thus cannot overcome the Reporter Privilege's exhaustion requirement. Motion to Quash at 17-18. Nor can they show, as they must, that Mr. Isaacson's testimony is "highly material" or "necessary or critical to the maintenance of" their claims. *Id.* at 10-14. Plaintiffs do not event attempt to argue they can meet this exacting standard. Instead, they claim that they are seeking only "non-confidential newsgathering information" and are only required to establish "relevance" and exhaustion. This is a stunning misrepresentation. As Mr. Isaacson noted in his Motion to Quash, the passages of the book about which Plaintiffs seek discovery are "based on confidential sources and information" and are subject to the heightened protection of the Reporter's Privilege, including the requirement that Plaintiffs show the information sought is "[1] highly material and relevant, [2] necessary or critical to the maintenance

4

of the claim, and [3] not obtainable from other available sources." *Id.* at 9, 16; *see also* Isaacson Hr'ing Tr. at 22:5-20.[3] The Southern District of New York agreed. Isaacson Hr'ing Tr. at 27:5-28:16. Plaintiffs cannot carry their burden on this standard—or even the more permissive analysis they erroneously contend applies—to overcome Mr. Isaacson's objections.

As Mr. Isaacson points out, Plaintiffs are primarily interested in having Mr. Isaacson give "*speculative* testimony" to "validate their *hunch*" that Mr. Musk had some personal vendetta against Twitter executives (weeks **after** the close of the Class Period) and that his concerns about the prevalence of bots were pretextual (but not false). *Id.* at 11-12. Mr. Isaacson's speculation and theories are not evidence of anything and these issues, which at most go to Mr. Musk's "motive and opportunity," are not central to Plaintiffs' claims. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 998 (9th Cir. 2009) (allegations of "motive and opportunity," without more, is "not enough to establish a cogent and compelling inference of scienter"). The Southern District of New York is in accord, noting that Plaintiffs would likely fail the exhaustion prong even after deposing Mr. Musk and explaining that it was "skeptical" that any of Mr. Isaacson's testimony "would be necessary or critical to the maintenance of" Plaintiffs' claim. Isaacson Hr'ing Tr. at 27:5-28:16. The extension would not lead to any discovery, only more litigation. It would unfairly burden Mr. Isaacson and subject him to the expense and annoyance of **additional** motion practice simply because he engaged in protected newsgathering activities and Plaintiffs could not get their act together in the 18 months since he published his book.

The Court should deny this request for lack of good cause.

---

[3] Mr. Isaacson's Motion to Quash and the hearing transcript are of obvious importance to this dispute, but Plaintiffs have objected to their submission. Defendant has therefore filed an Administrative Motion to include them.

DATED: April 7, 2025

| | |
|---|---|
| /s/ Tyson C. Redenbarger<br>COTCHETT, PITRE & MCCARTHY, LLP<br>Joseph W. Cotchett (SBN 36324)<br>jcotchett@cpmlegal.com<br>Mark C. Molumphy (SBN 168009)<br>mmolumphy@cpmlegal.com<br>Tyson C. Redenbarger (SBN 294424)<br>tredenbarger@cpmlegal.com<br>Gia Jung (SBN 340160)<br>gjung@cpmlegal.com<br>Caroline Yuen (SBN 354388)<br>cyuen@cpmlegal.com<br>San Francisco Airport Office Center<br>840 Malcolm Road, Suite 200<br>Burlingame, California 94010<br>Telephone: (650) 697-6000<br><br>/s/ Aaron P. Arnzen<br>BOTTINI & BOTTINI, INC.<br>Francis A. Bottini, Jr. (SBN: 175783)<br>fbottini@bottinilaw.com<br>Albert Y. Chang (SBN 296065)<br>achang@bottinilaw.com<br>Aaron Arnzen (SBN 218272)<br>aarnzen@bottinilaw.com<br>7817 Ivanhoe Avenue, Suite 102<br>La Jolla, California 92037<br>Telephone: (858) 914-2001<br><br>*Lead Counsel for Plaintiffs and the Class* | /s/ Alex Spiro<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>Alex Spiro (*pro hac vice*)<br>alexspiro@quinnemanuel.com<br>Jesse A. Bernstein (*pro hac vice*)<br>jessebernstein@quinnemanuel.com<br>Jonathan E. Feder (*pro hac vice*)<br>jonathanfeder@quinnemanuel.com<br>295 Fifth Ave<br>New York, NY 10016<br>Telephone: (212) 849-7000<br>Facsimile: (212) 849-7100<br><br>Michael T. Lifrak (Bar No. 210846)<br>michaellifrak@quinnemanuel.com<br>Joseph C. Sarles (Bar No. 254750)<br>josephsarles@quinnemanuel.com<br>Stephen Broome (Bar No. 314605)<br>stephenbroome@quinnemanuel.com<br>Alex Bergjans (Bar No. 302830)<br>alexbergjans@quinnemanuel.com<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100<br><br>Nathan Archibald (*pro hac vice*)<br>nathanarchibald@quinnemanuel.com<br>2755 E. Cottonwood Parkway, Suite 430<br>Salt Lake City, UT 84121<br>Telephone: (801) 515-7300<br>Facsimile: (801) 515-7400<br><br>*Attorneys for Defendant Elon Musk* |