QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
Jessebernstein@quinnemanuel.com
Jonathan E. Feder (*pro hac vice*)
jonathanfeder@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

Nathan Archibald (*pro hac vice*)
nathanarchibald@quinnemanuel.com
2755 E. Cottonwood Parkway, Suite 430
Salt Lake City, Utah 84121
Telephone:     (801) 515-7300
Facsimile:     (801) 515-7400

*Attorneys for Defendant Elon Musk*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**LEAD TRIAL COUNSEL ALEX SPIRO'S REPLY IN SUPPORT OF HIS MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER**<br><br>Judge:  Hon. Charles R. Breyer<br><br>Magistrate Judge:  Hon. Donna M. Ryu |

**SUMMARY OF THE ARGUMENT**

Knowing that Mr. Musk's lead trial counsel—Alex Spiro—has succeeded in obtaining defense verdicts for Mr. Musk in many high-profile jury trials, Plaintiffs have announced they intend to call him in this trial as a witness against his client to disqualify him under the advocate-witness rule. Opp. at 10. Plaintiffs now admit they do not need Spiro's testimony on the 10 "critical" topics identified in their discovery letter brief—after Spiro moved to quash, Plaintiffs dropped six topics. If they genuinely believed they needed testimony on the remaining four, they could have used one of the 14 depositions they have remaining in their 20-deposition allotment to depose the many other witnesses knowledgeable about the topics. That they did not do so confirms the information is not necessary and that they seek to depose Spiro solely to gain a tactical advantage and harass.

This case concerns alleged misstatements issued by one of the world's most public figures in the midst of a $44 billion acquisition of a widely used social media platform. There were dozens of lawyers, bankers, consultants, executives, data scientists, and Twitter employees involved in the process and witness to the underlying events. By Plaintiffs' own admission, they already "have the deposition testimony of *over 40 witnesses* (including virtually every other lawyer who worked on the deal . . .)." Opp. at 4 (emphasis added). And while Plaintiffs take issue with the fact that Spiro alone objected to being deposed, that is because Spiro alone is Mr. Musk's lead trial lawyer.

Against this backdrop, the notion that Spiro has critical, non-privileged information of which even Mr. Musk himself is not aware, is meritless. Certainly Plaintiffs have not shown this to be the case. Because Mr. Musk has no intention of calling Spiro at trial, and Spiro does not have unique, non-privileged information justifying the extraordinary and disfavored step of deposing an adversary's lead trial lawyer, the motion should be granted and a protective order entered.

**ARGUMENT**

**I.   Plaintiffs Fail to Show that a Deposition of Spiro Is Warranted Under Any Standard**

As recognized in the "seminal" case on the issue of attorney depositions, *see ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 2015 WL 3561611, at *3 (N.D. Cal. Jun. 8, 2015), principal concerns regarding taking Spiro's deposition are that it would "disrupt[] the adversarial system and lower[] the standards of the [legal] profession" and "detract[] from the quality of [Mr. Musk's]

representation." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). These concerns are just as present here. Plaintiffs seek to turn Spiro into a trial witness to rig his disqualification under the advocate witness rule. Opp. at 10 ("[H]e will called [*sic*] as a witness by Plaintiffs"). The Court should thus apply "particularly strict judicial scrutiny" to Plaintiffs' demand and their pretextual reasons for seeking it given the "potential for abuse" inherent in their tactic. *Legacy Villas at La Quinta Homeowners Ass'n v. Centex Homes*, 626 F. App'x 679, 682 (9th Cir. 2015).

Even applying the *Pamida* standard, as interpreted by this Court in *ATS*, Plaintiffs would need to show that they "attempt[ed] to obtain th[e] information from other sources more convenient and less burdensome than through the disfavored practice of deposing opposing counsel." *See ATS*, 2015 WL 3561611, at *6. They indisputably did not. *See* Mot. at 9. Tellingly, Plaintiffs fail to identify a single case from within this Circuit that has allowed a deposition of trial counsel under similar circumstances.[1] The cases Plaintiffs cite either: (1) denied the deposition;[2] (2) allowed the deposition of a lawyer who was not serving as trial counsel in the pending case;[3] or (3) allowed the deposition only on limited topics regarding events where the lawyer did not serve as counsel at the time.[4] Plaintiffs' remaining, 35-year old case from New Jersey is likewise unhelpful.[5]

**II.    Spiro Does Not Have Unique, Relevant, Non-Privileged Information**

Plaintiffs identified 10 topics but their brief addresses only four, waiving the others.

***The May 13 Tweets:*** Plaintiffs seek testimony regarding: (1) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ tweet stating that the deal was "temporarily on hold"; and (2) Spiro's alleged legal advice to Mr. Musk to "walk back" the tweet. Opp. at 4–5. Neither warrants Spiro's deposition.

---

[1] In *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, the disputed discovery was a **document** subpoena, not deposition subpoena. 2018 WL 3845984, at *1 (N.D. Cal. Aug. 13, 2018).
[2] In both *ATS* and *Zhu v. Li*, this Court found that the party was **not entitled** to depose opposing counsel. 2015 WL 3561611, at *7; 2021 WL 3910720, at *2 (N.D. Cal., Sept. 1, 2021).
[3] In *Younger Mfg. Co. v. Kaenon, Inc.*, the court denied a protective order for the deposition of a party's general counsel—not litigation counsel, let alone lead trial counsel. 247 F.R.D. 586, 587.
[4] *Andre v. Ricoh USA, Inc.* is an unpublished, heavily redacted decision. 2019 WL 6699958, at *1-2 (N.D. Cal. Dec. 9, 2019). It is hardly persuasive, let alone controlling. Moreover, the court **granted** the motion to quash several deposition topics for reasons that apply equally here. *Id.* at *4.
[5] *Johnston Dev. Grp., Inc. v. Carpenters Local Union No. 1578*, allowed a limited deposition to go forward over topics that were central to the issues in the case because of "sharply conflicting details" witnesses gave on the topics. 130 F.R.D. 348, 354 (D.N.J. 1990).

*First*, ███████████████████████████████████████ would have come from Spiro's clients—Mr. Musk and/or Jared Birchall. Spiro Decl. ¶ 3. Indeed, while Plaintiffs selectively quote from the deposition of Morgan Stanley's Anthony Armstrong to suggest that ███ ████████████████████████████████, they omit Armstrong's testimony, just a few pages earlier, that ████████████████████████████████████████████████████████. Bergjans Decl., Ex. 18 (███████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████). Both Mr. Birchall and Mike Ringler could explain t███████████████████████████████████████████ ██████. But Plaintiffs' waived their right to depose Mr. Birchall and chose not to ask Mr. Ringler about it, despite having already identified this topic to the Court as a basis to depose Mr. Spiro. Dkt. 146. Mr. Musk, who Plaintiffs acknowledge "could testify about some of the matters on this topic," Opp. at 6, will be deposed on May 7 and can also explain why Morgan Stanley proceeded.

Plaintiffs speculate that Mr. Musk "may not know what Spiro said to others." *Id.* But the precise words Spiro allegedly used are not relevant. Besides, they can get that information from the "others" Spiro purportedly spoke to, including "Armstrong, Grimes, and other witnesses [who] were deposed" on this exact topic far closer in time to the conversations. *Id.*

Plaintiffs' contention that "Spiro's ████████████████████████ . . . goes to the falsity of Musk's tweets," *id.* at 5, is not a basis for deposing him either. It is a matter of public record that numerous merger-related workstreams continued after May 13 (and that the market knew this well before the alleged October "corrective disclosure"). Bergjans Decl., Exs. 19–25. That these workstreams continued does not mean Mr. Musk would close the deal if he did not get the bot/spam information he requested. But if Plaintiffs want to argue that Mr. Musk's "on hold" characterization was false, they have everything they need to make that argument without Spiro's testimony.

*Second*, Plaintiffs cite Mr. Isaacson's book to argue that Spiro instructed Mr. Musk to "walk back" his May 13 Tweet and waived privilege by telling Mr. Isaacson about it. Opp. at 5 (citing Yuen Decl. ¶ 29; *id.* Ex. 28). Mr. Isaacson did not take part in any May 13 conversation between Mr. Musk and Spiro, and Spiro was not Mr. Isaacson's source for this passage. Spiro Decl. ¶ 4.

Plaintiffs cannot create a privilege waiver through hearsay from unnamed sources.[6]  Moreover, Mr. Musk is the best source for why he tweeted and can answer non-privileged questions on this topic.

***The Third-Party Data Analysts:***  Plaintiffs could have deposed the data analysts themselves.  They subpoenaed one, arranged for its deposition, and then cancelled.  Their purported need to ask Spiro about "the timing and process by which Musk retained outside firms, why they were selected, and what and when they told Musk," Opp. at 7, thus rings hollow.  The topic also has nothing to do with whether Mr. Musk based his May 16 and 17 estimates that 20% of Twitter's users were fake/spam "on[] bot user data from Twitter," the only bot-based falsity theory Plaintiffs may pursue.  Dkt. 48 at 23.  The July 8 termination letter is not actionable.  *Id.* at 26–28.

In addition, Plaintiffs possess all pre-Delaware Action communications between Mr. Musk's team and the data scientists (including their reports and analyses) and had the opportunity to ask the data scientists about them.  Their contention that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬, Opp. at 7, is either demonstrably untrue or unsupported.  Cyabra, for instance, pitched its services directly to Mr. Ringler days before Spiro contacted it.  Dkt. 162-17.  Other attorneys at Quinn Emanuel and Skadden, not Spiro, were responsible for the data scientists.  Spiro Decl. ¶ 2.  If Plaintiffs really believed that they needed to ask a QE attorney how it identified these firms, less burdensome avenues were available (*e.g.*, serving QE a Rule 30(b)(6) notice).  Moreover, Plaintiffs assert that Mr. Musk hired these experts "as a pretext . . . to withdraw from the deal" and litigate.  Opp. at 8.  Under this theory, Spiro's "selection criteria and process," *id.*, for picking experts is privileged work product.  *Adams v. United States*, 2009 WL 804718, at *1 (D. Idaho Mar. 27, 2009).

***The "Incendiary" Data Requests:***  Plaintiffs also seek to depose Spiro about certain *draft* information requests—which are privileged, *see* Yuen Ex. 5 (redacting email with requests for privilege)—and his thought process when he purportedly drafted them (also privileged, *United States v. Nobles*, 422 U.S. 225, 238 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney")).  The only non-privileged information about the requests—"[t]he

---

[6] Notably, Mr. Isaacson did not attribute his reporting of this alleged conversation to either Messrs. Birchall, Musk, or Spiro.  In fact, Plaintiffs cannot identify the source of ***any information*** contained in the excerpts of *Elon Musk* they attach.  Yuen Ex. 28.  Unlike the Rules of Evidence, publishers of pop-biographies do not require that their sources have personal knowledge of the events they describe.  The information could have come from anyone.

fact of preparing and sending" them—can be established with the document itself.  Spiro would have little to add; he did not draft them.  Spiro Decl. ¶ 6.  The Court should end its inquiry here.

Worse, Plaintiffs distort the record to manufacture relevance.  ███████████████ ███████████████ False. ███████████████ ███████████████████████████████████  Moreover, the actual, non-privileged, information requests that Mr. Musk's team sent Twitter were produced and filed with the SEC.  Plaintiffs could have deposed dozens of witnesses about them and can ask Mr. Musk.[7]

All Plaintiffs have is a privileged and fully redacted email from Spiro.  Despite their efforts to create a thin reed of relevance, they cannot show the information is non-privileged, "uniquely known" by Spiro, or "central to the pending case."  *See Zhu*, 2021 WL 3910720, at *2.

***Spiro's Alleged Actions Against Officers and Directors:***  Plaintiffs seek to depose Spiro regarding ***post-Class Period*** actions surrounding the termination of former Twitter executives.  Opp. at 9.  These events are not remotely relevant, let alone "central," *Zhu*, 2021 WL 3910720 at *2, to their claims (either the ones actually pleaded or their imaginary "scheme liability" theory).  *See* Dkt. 48.  Mr. Musk's actions after the Class Period cannot have caused Plaintiffs any damage or be evidence of his scienter five months earlier.  Plaintiffs cite no authority holding otherwise.

Even if this topic had any probative relevance to their claims, the very sources Plaintiffs cite show that other, less burdensome, witnesses have personal knowledge of these events.  Mr. Isaacson reported that Mr. Birchall, Antonio Gracias, "and a few others" planned the termination of Twitter's executives.  Yuen Ex. 28 at 5.  Plaintiffs expressly waived taking their depositions more than a year after the book was published.  Dkt. 116.  Plaintiffs also lean on allegations from Agrawal, Gadde, Edgett, and Segal's 2024 complaint against Mr. Musk.  They could have deposed any—or all—of these former executives about their allegations; they deposed none.  And again, Plaintiffs can ask Mr. Musk about these events.  It is ***his*** state of mind, not Spiro's, that Plaintiffs claim they elucidate.

## CONCLUSION

For the foregoing reasons, the Motion should be granted and the subpoena quashed.

---

[7] Plaintiffs' brief and the supporting declaration take numerous liberties with the facts.  The inaccuracies are too voluminous to detail in this brief, but are identified in the Bergjans Declaration.

1
2    DATED: April 24, 2025           QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP
3
4
5                                    By /s/ Alex Spiro
                                        Alex Spiro
6                                       Michael T. Lifrak
                                        Joseph C. Sarles
7                                       Stephen A. Broome
                                        Jesse A. Bernstein
8
9                                       *Attorneys for Defendant Elon Musk
                                        and Lead Trial Counsel Alex Spiro*
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on this Thursday, April 24, 2025.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Alex Bergjans*
Alex Spiro
Michael T. Lifrak
Joseph C. Sarles
Stephen A. Broome
Jesse A. Bernstein
Alex Bergjans
Jonathan E. Feder

*Attorneys for Defendant Elon Musk*

## ATTESTATION

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatory herein.

By /s/ Alex Bergjans
Alex Bergjans

*Attorneys for Defendant Elon Musk*