UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, et al.,<br>   Plaintiffs,<br>  v.<br>ELON MUSK,<br>   Defendant. | Case No. 22-cv-05937-CRB (DMR)<br><br>**ORDER ON DISCOVERY OF THIRD PARTY EXPERT REPORTS**<br>Re: Dkt. No. 160 |

The parties filed a joint discovery letter regarding Plaintiffs' demand for expert reports disclosed in *Twitter, Inc. v. Elon R. Musk, et al.* C.A. No. 2022-0613-KSJM (the "Delaware Action"). [Docket No. 160 (JDL).] This matter is suitable for determination without oral argument. Civil L.R. 7-1(b). For the reasons stated below, Plaintiffs' motion to compel is granted.

**I. BACKGROUND**

In this securities class action, Plaintiffs allege that in April 2022, Defendant Elon Musk offered to purchase Twitter through what he called a "seller friendly" merger agreement, and Twitter accepted. [Docket No. 48 (Order on Motion to Dismiss) at 3-4]. According to Plaintiffs, Musk then made several misrepresentations to "artificially depress the price of Twitter stock and to pressure Twitter to lower the price Defendant would have to pay to acquire it." *Id.* at 1.

The Delaware Action is a previous case brought by Twitter against Musk seeking specific performance of the April 2022 merger agreement. The Delaware Action settled, and Musk agreed to purchase Twitter at the original merger price. Order on Motion to Dismiss 33. A significant amount of discovery was exchanged over the course of the Delaware Action, much of which is relevant to the current case. On October 8, 2024, Plaintiffs served a request for production of all discovery materials that Musk received in the Delaware Action. [Docket No. 116 (Stip.) 3.] On

October 29, 2024, Musk objected to the production of the discovery materials that were produced and marked confidential by third parties in the Delaware Action. *Id.* On November 13, 2024, Plaintiffs and Musk entered into and the court signed a stipulation governing Musk's production of discovery exchanged in the Delaware Action (the "Delaware Discovery Stipulation" or "Stipulation"). *Id.*

The present dispute concerns expert reports produced by Twitter to Musk in the Delaware Action. Twitter disclosed reports by three experts from Cornerstone Research: Professor John Coates, Professor Justin McCrary, and James Boland. JDL 1. Plaintiffs seek an order compelling Musk to produce these expert reports for use in this case. Musk argues that Plaintiffs cannot seek the Twitter expert reports from Musk because their production is barred by the Delaware Discovery Stipulation.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 29 permits the parties to modify "procedures governing or limiting discovery" by stipulation, unless the stipulation would "interfere with the time set for completing discovery, for hearing a motion, or for trial," or "[u]nless the court orders otherwise." Fed. R. Civ. P. 29. "The test regarding the validity of a stipulation is voluntariness." *United States v. Molina*, 596 F.3d 1166, 1168-69 (9th Cir. 2010). "Because stipulations serve both judicial economy and the convenience of the parties, courts will enforce them absent indications of involuntary or uninformed consent." *CDN Inc. v. Kapes,* 197 F.3d 1256, 1258 (9th Cir. 1999); *but see Food & Water Watch, Inc. v. United States EPA*, No. 17-cv-02162-EMC, 2021 U.S. Dist. LEXIS 90068, at \*14 (N.D. Cal. May 11, 2021) (quoting *United States v. Kanu*, 695 F.3d 74, 78 (D.C. Cir. 2012)) ("Stipulations entered into by the parties 'in the course of legal proceedings are not as irrevocable as other contracts,' and the '[t]rial court[ ] may, in the exercise of sound judicial discretion and in furtherance of justice, relieve parties from stipulations into which they have entered."). "[T]he party asserting an applicable protection, even one specified by stipulation, bears the initial burden of showing that the protection applies." *In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. C-07-05634 CRB (DMR), 2014 WL 709555, at \*17 (N.D. Cal. Feb. 24, 2014).

### III. DISCUSSION

Musk argues that the Delaware Discovery Stipulation forecloses Plaintiffs from seeking Twitter's expert reports from Musk. Plaintiffs respond that the language of the Stipulation should not be so interpreted.

In the Stipulation, Musk agreed to produce discovery from the Delaware Action in accordance with the terms of the Stipulation, and both sides agreed they could not seek additional discovery from the Delaware Action other than as allowed by the Stipulation. Stip. 4. Relevant to the current dispute, the Stipulation lays out a process for the production of documents received by Musk from third parties:

> Mr. Musk represents and warrants that, since receiving Plaintiff's first document request in the present action, he has preserved all discovery, declarations and/or affidavits received by the Delaware Defendants in the Delaware Action from any other party or third party to that action. To facilitate an orderly process for providing notice to the other parties and third parties which produced discovery materials in the Delaware Action, to the extent required by any confidentiality obligations or order, Mr. Musk will provide notice to any affected persons or entities that produced documents or were deposed in the Delaware Action within three days of the date of the signing of this agreement that Plaintiffs have issued a document request asking Mr. Musk to produce the discovery produced by such persons and/or entities, and the transcripts of the depositions of such persons and/or entities, in the Delaware Action. If no objection is received, Mr. Musk will produce to Plaintiffs (a) all discovery materials in his possession, custody, or control that all other parties and third parties produced in response to discovery requests and subpoenas from any party to the Delaware Action, and (b) the transcripts of and exhibits used during the depositions of such parties and third parties. If no objection is received, Mr. Musk shall produce these materials within 45 days of the date of this agreement, provided that Plaintiff provides Mr. Musk with a request for production of documents within three days of the date of this Agreement. The defense will inform Plaintiffs forthwith of any parties or third parties that are challenging (or have challenged) production of such materials.

Stip. Ex. 1. The Stipulation also provides that the parties reserve the right to "[s]eek additional third-party discovery from individuals or entities that were not subject to party or third-party discovery in the Delaware action," and to "[t]ake expert discovery." *Id.*

Plaintiffs initially sought the Twitter expert reports from Cornerstone Research and from Coates. JDL 3. They issued a subpoena to Coates on February 27, 2025. Coates filed a motion to quash on March 19, 2025, which the court denied without prejudice as the issue was not ripe.

3

1  [Docket Nos. 141, 152.] Cornerstone Research indicated it may seek a protective order and has
2  not otherwise responded to Plaintiffs' subpoena. JDL 3. According to Plaintiffs, they did not
3  learn until March 21, 2025 that the Twitter expert reports had been finalized and produced to
4  Musk, after which point Plaintiffs sought the expert reports directly from Musk. [Docket No. 149-
5  1 (Decl. Aaron P. Arnzen, March 21, 2025).] Musk, on the other hand, claims that Plaintiffs had
6  access to information since March 2023 indicating that the Twitter experts submitted reports in the
7  Delaware Action, and Plaintiffs had opportunities to seek the reports from Musk earlier but failed
8  to do so. JDL 5 n.2. Musk contends that Plaintiffs know they are not entitled to the expert reports
9  under the Delaware Discovery Stipulation, that they only moved to compel the reports from Musk
10 after they experienced pushback from the Twitter experts, and that Plaintiffs want to use the
11 experts' opinions for their own purposes while avoiding compensating the experts for their work.
12 *Id.* at 5.
13    The court begins by examining the language of the Stipulation. Musk focuses on this line:
14 "Musk will produce to Plaintiffs [] all discovery materials in his possession, custody, or control
15 that all other parties and third parties produced *in response to discovery requests and subpoenas*
16 from any party to the Delaware Action." Stip. Ex. 1 (emphasis added). According to Musk, the
17 Twitter expert reports were not produced "in response to discovery requests and subpoenas,"
18 because they were exchanged in the ordinary course of expert disclosures pursuant to the
19 Delaware court's Scheduling Order. JDL 4. Plaintiffs respond that the "clear intent" of the
20 Stipulation is to cover all exchanged discovery in the Delaware Action, not just discovery
21 responsive to formal discovery requests. JDL 3.
22    The court finds that the Delaware Discovery Stipulation does not clearly exclude the
23 production of Twitter's expert reports. On the one hand, Musk is correct that expert reports are
24 typically disclosed pursuant to Rule 26(a)(2) rather than produced "in response to discovery
25 requests and subpoenas." On the other hand, the rest of the paragraph in the Stipulation is more
26 broadly worded and is in some ways inconsistent with Musk's interpretation. For example, the
27 Stipulation provides that Musk will "provide notice to any affected persons or entities that
28 produced documents or were deposed in the Delaware Action," informing them that Plaintiffs

4

"have issued a document request asking Mr. Musk to produce the discovery produced by such persons and/or entities." Stip. Ex. 1. The notice requirement is not limited to materials "in response to discovery requests and subpoenas," and requires Musk to provide notice to the Twitter experts. It makes no sense that the Stipulation mandates Musk to provide notice to the Twitter experts but does not require him to produce the reports he received from the Twitter experts. A further inconsistency: if any of the Twitter experts sat for a deposition or responded to a request for documents about their expert opinion, then Musk would be required to produce that deposition testimony and requested material. Yet under Musk's interpretation, Musk would not have to produce the expert reports themselves.

The party asserting a protection specified by stipulation bears the initial burden of showing that the protection applies. *In re Transpacific Passenger Air Transportation*, 2014 WL 709555, at *17. As Musk seeks to bar Plaintiffs' discovery under the Stipulation, Musk bears the burden of establishing that Plaintiffs voluntarily, rather than inadvertently, gave up their right to seek the Twitter expert reports from Musk. He has not done so.

Musk also argues that allowing Plaintiffs to procure the expert reports without compensating the experts would amount to an end run around Federal Rule of Civil Procedure 45. Rule 45 states that the court has discretion to quash or modify a subpoena if it would require "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45(d)(3)(B)(ii). This rule was promulgated to curb the "growing problem" of "the use of subpoenas to compel the giving of evidence and information by unretained experts," which "may threaten the intellectual property of experts denied the opportunity to bargain for the value of their services." Fed. R. Civ. P. 45, Notes of Advisory Committee on Rules—1991 Amendment. The court is skeptical that Rule 45 applies to the Twitter expert reports. This is not a Rule 45 subpoena on a third party; it is a discovery request governed by Rule 26 to Musk for documents in his possession, custody or control. Moreover, the expert reports are not uncompensated intellectual property—Twitter retained the experts in the Delaware Action after appropriately compensating them for the value of their work and the opinions contained in their reports. The

5

reports were thereafter disclosed to the opposing party, Musk. "This is not the same as a 'stranger' to the lawsuit being subpoenaed to produce the product of independent and unrelated research for which the third party has not been and will not be compensated." *Seegert v. Rexall Sundown, Inc.*, No. 17-cv-01243-JAH (JLB), 2019 U.S. Dist. LEXIS 135759, at *20 (S.D. Cal. Aug. 9, 2019) (denying third party's motion for a protective order over research that was used by defendant in the conduct of defendant's business). The Twitter experts were compensated for their work and the opinions expressed in their reports in the Delaware Action. Their opinions were made available to parties outside of Twitter. Of course, if Plaintiffs seek their testimony in deposition or trial, or if they retain them to render additional opinions in this case, Plaintiffs must then compensate them for that work.

Plaintiffs have demonstrated that the expert reports are relevant, and Musk has not demonstrated that production is barred by the Delaware Discovery Stipulation or that the burden of producing the reports outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1). The court grants Plaintiffs' motion to compel. Musk shall produce the Coates, McCrary and Boland expert reports from the Delaware Action by May 16, 2025.

**IT IS SO ORDERED.**

Dated: May 13, 2025

_____
Donna M. Ryu
Chief Magistrate Judge