May 23, 2025 <u>Via ECF</u>
Hon. Donna M. Ryu
U.S. District Court, Northern District of California
Ronald V. Dellums Fed. Bldg. & U.S. Courthouse
1301 Clay Street
Oakland, California 94612

RE: *Pampena v. Musk*, No. 3:22-cv-05937-CRB (N.D. Cal.)

Dear Judge Ryu:

Elon Musk ("Defendant") and Brian Belgrave, John Garrett, and Nancy Price ("Plaintiffs") respectfully submit this letter, which follows their first joint letter (ECF 202) submitted after Defendant's partial deposition on May 7, in response to the Court's Orders (ECF 201 and 206) directing the parties to submit a two-page joint letter stating whether their positions in Alex Spiro's Motion to Quash have changed following Musk's deposition. Attached as Exhibit 1 are excerpts from the May 19, 2025 deposition.[1]

---

[1] Portions of Defendant Elon Musk's deposition is described herein and included in Exhibit 1. Defendant does not waive the Confidential designation of other portions of the deposition not disclosed in this letter or Exhibit 1.

**Plaintiffs' summary.** The gaps and contradictions in the current record require Spiro's deposition. Musk's trusted confidant, Spiro worked with Musk's attorneys, bankers, and data scientists, consulted on his tweets, and even drafted the May 17th "incendiary" requests later used as pretext to back out of the deal. When Twitter called his bluff and sued Musk, Musk used Spiro to threaten Twitter's directors and orchestrate a closing-night vendetta to fire its officers. Despite this role, Spiro sought a special exception from deposition merely because Musk retained him in this case. But Spiro's future eligibility is not at issue. Like every other attorney on the deal deposed without objection, Spiro has relevant (indeed, necessary), non-privileged information. Further, while Spiro asked to defer ruling until Musk testified, Musk recalled little about Spiro's role on the deal.

**May 13 Tweets.** Musk issued 2 tweets on May 13, the first claiming the "deal [was] on hold," the second that he was still "committed." Musk testified he didn't run his first tweet by anyone, Ex. 1, 217:2-4, contradicting SEC testimony. Spiro, defending Musk, objected to further testimony as "double privileged." *Id.*, 221:15-222:11. Musk could not recall if he spoke with advisors like Spiro before sending the second tweet, *id.,* 229:4-10, contradicting his biographer who wrote that Spiro urged Musk to walk back his first tweet, and bankers who confirmed Spiro spoke with Musk and then reassured them "nothing had changed." *Id.*, 229:11-230:25; Ex. 34 to ECF 193-1 at 5:3-13.

**May 17 "incendiary" data requests.** On May 17, Musk tweeted the deal could not move forward until Twitter provided spam data. That same day, Spiro sent onerous requests for 6 years of user data, a major turning point. Ex. 6 to ECF 193-1. Musk's own counsel called Spiro's requests "incendiary," Ex. 5 to ECF 193-1, and Musk used Twitter's response as pretext for terminating. Yet, Musk could not recall the requests nor explain why Spiro sent them. Ex. 1, 277:19-282:23.

**May 25 vetting of data scientists**. While Musk hired data scientists and relied on their conclusions to terminate, he could not recall the firms, compensation or methodologies. Ex. 1, 288:5-9, 298:21-301:3. Moreover, while documents show Spiro's role in vetting the scientists (Ex. 7-9 to ECF 193-1), Musk could not recall Spiro's role. *Id.*, 287:3-21. Musk also could not recall Spiro relaying Twitter's offer, sent to Spiro, to have its scientists meet with Musk's scientists. *Id.* at 302:5-304:2.

**May/June – Spiro/QE's Unclear Role.** Spiro and other attorneys at Quinn Emanuel were engaged in early May 2022 (soon after the agreement was signed). On May 9, Musk's advisors asked that internal discussions be conducted orally, with counsel involved. Ex. 2 to ECF 193-1. While Spiro was copied on the request, Musk could not explain why he was involved. Ex. 1 at 203:5-208:20. Musk also did not recall receiving internal Twitter data forwarded to Spiro and other QE attorneys. *Id.,* 280:23-283:24, 287:12-21, 301:4-302:2, 304:12-19.

**September 2022 threats to Twitter's Board**. Twitter directors and outside counsel confirmed Spiro's repeated threats that Musk would pursue the Board until the "end of time" if Twitter didn't renegotiate. While Musk accepted that "colorful language" was likely used, he couldn't confirm that Spiro made these threats or if he acted on his behalf in doing so. *Id.* at 319:14-323:12

**October 27 termination of Twitter officers**. Musk's biographer, present on closing day, detailed Spiro's orchestration of "the Thursday night surprise closing," where Musk turned off Twitter's officers' email accounts, preventing them from resigning, and then terminated them with cause to avoid severance payments. Musk testified that Spiro was "probably" there that evening, but could not recall if Spiro orchestrated the firings. *Id.* at 333:11-337:3.

**Relief**. Musk said "I don't recall" 301 times at his deposition, leaving gaps only Spiro can fill.

**Defendant's Statement:** Plaintiffs' attempt to depose and disqualify Mr. Musk's lead trial counsel, Alex Spiro, should be rejected for the reasons explained in Spiro's prior briefing and declarations (Dkt. Nos. 162, 198): (1) he does not have unique knowledge on any relevant issues; (2) Plaintiffs did not first seek to exhaust less burdensome sources despite ample opportunity; and (3) the information they seek is privileged and/or irrelevant. Musk's deposition only confirmed Spiro's deposition is not necessary because his role was tangential, limited to providing legal advice, and he has no unique knowledge on any relevant issue.

*1. May 13 Tweets.* Plaintiffs claim they need Spiro to explain why Morgan Stanley continued to work on the acquisition after Musk tweeted the deal was "temporarily on hold" but "still committed to acquisition." Musk addressed this at length, explaining that he simply meant he would not close until he got the bot information he requested, not that all acquisition-related work should halt. Ex. 1 at 216:14-234:16. Musk also confirmed that he could not recall running his tweets by anyone (*e.g.*, Spiro) before sending them in the middle of the night. *Id.* at 217:2-4. Even if Spiro *had* "advised Musk on the tweets," as Plaintiffs claim, such advice would be both privileged and irrelevant because Musk is not asserting an advice of counsel defense. *Id.* at 220:20-222:21.

*2. The Data Analysts.* Plaintiffs argue that "the timing and process by which Musk retained outside firms, why they were selected, and what and when they told Musk, are important questions that Spiro can and should answer." Dkt. 192, at 7. But Skadden retained the firms; there are engagement letters confirming the dates of retention; and the analysts produced dated reports that show what and when they told Musk. Dkt. 162-1 ¶ 11(f). Plaintiffs initiated and then abandoned their effort to depose the data analysts. And to the extent Quinn Emanuel had any role, Plaintiffs could have deposed someone involved who is not Musk's lead trial counsel. Spiro affirmed he did not oversee or supervise the analysts' work. *Id.* Musk's deposition does not undermine any of these points. Musk testified that Jared Birchall and Skadden coordinated the data analysts and he did not think Spiro was involved. Ex. 1 at 288:10-15, 298:13-20.

*3. Data Requests.* Plaintiffs "seek testimony from Spiro about why he drafted the requests [to Twitter] and at whose direction, as well as what they said and whether they were a basis to terminate." Dkt. 192, at 9. The *draft* requests are privileged and irrelevant. Skadden sent the *final* requests to Twitter and filed them with the SEC, where they remain publicly available on EDGAR. Plaintiffs have already deposed Skadden's Mike Ringler about the requests, who confirmed that Twitter's failure to comply with them was a basis to terminate. Musk's testimony provides no basis for concluding that Spiro's role in this issue warrants a deposition. *See* Ex. 1 at 278:1-3.

*4. Musk's Post-Acquisition Firing of Twitter Executives.* This issue is not remotely relevant to any issue in the case and certainly is not a basis for deposing Spiro. In any event, Plaintiffs could have deposed the Twitter executives themselves and chose not to do so. They also deposed Musk about his decision to fire the executives and he testified about it at length. *Id.* at 333:1-335:18. He explained that he fired them because they committed securities fraud and had deceived him. *Id.* at 130:20-131:19, 333:2-5. He did not implicate Spiro in his decision. *Id.* at 335:12-18. Even if he had, Spiro's role would be irrelevant because it is Musk's scienter that is at issue, not Spiro's.

DATED: May 23, 2025

*/s/ Caroline Yuen*

COTCHETT, PITRE & MCCARTHY, LLP
Joseph W. Cotchett (SBN 36324)
jcotchett@cpmlegal.com
Mark C. Molumphy (SBN 168009)
mmolumphy@cpmlegal.com
Tyson C. Redenbarger (SBN 294424)
tredenbarger@cpmlegal.com
Gia Jung (SBN 340160)
gjung@cpmlegal.com
Caroline Yuen (SBN 354388)
cyuen@cpmlegal.com
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

*/s/ Aaron Arnzen*

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN: 175783)
fbottini@bottinilaw.com
Albert Y. Chang (SBN 296065)
achang@bottinilaw.com
Aaron Arnzen (SBN 218272)
aarnzen@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

*/s/ Stephen A. Broome*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (pro hac vice )
alexspiro@quinnemanuel.com
Jesse A. Bernstein (pro hac vice)
Jessebernstein@quinnemanuel.com
Jonathan E. Feder (pro hac vice)
jonathanfeder@quinnemanuel.com
Stephanie Kelemen (pro hac vice)
stephaniekelemen@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

Nathan Archibald (pro hac vice)
nathanarchibald@quinnemanuel.com
2755 E. Cottonwood Parkway, Suite 430
Salt Lake City, Utah 84121
Telephone:     (801) 515-7300
Facsimile:     (801) 515-7400

Emily Couture (pro hac vice)
emilycouture@quinnemanuel.com
300 West 6th St., Suite 2010
Austin, Texas 78701
Telephone:     (737) 667-6100
Facsimile:     (737) 667-6110

*Attorneys for Defendant Elon Musk*

4

**ATTESTATION**

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories herein.

By /s/ Stephanie Kelemen
Alex Spiro
Michael T. Lifrak
Joseph C. Sarles
Stephen A. Broome
Jesse A. Bernstein
Alex Bergjans
Jonathan E. Feder
Nathan Archibald
Stephanie Kelemen
Emily Couture

*Attorneys for Defendant Elon Musk*