UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ELON MUSK, <br><br> Defendant. | Case No. 22-cv-05937-CRB   (DMR) <br><br> **ORDER ON INTERROGATORIES AND RELATED SEALING MOTIONS** <br><br> Re: Dkt. Nos. 168, 173, 174, 175, 221 |

In this securities class action, Plaintiffs move to compel responses to six interrogatories (Plf. ROGs). [Docket No. 168 (Plf. JDL).] Defendant Elon Musk moves to compel Plaintiffs to amend their responses to seventeen interrogatories (Def. ROGs). [Docket Nos. 174 (Def. First JDL), 175 (Def. Second JDL).]

On June 26, 2025, the court ordered supplemental briefing on certain topics raised by the parties' discovery issues. [Docket No. 217 (Order for Supp. Briefing).] With respect to the disputes addressed in this order, the parties filed a supplemental joint letter on Plaintiffs' relevance theory for Plaintiffs' ROG 22. [Docket No. 220 (Supp. JDL).] Musk and his attorney Alex Spiro submitted supplemental declarations to support their assertions of privilege. [Docket Nos. 222 (Supp. Alex Spiro Decl., July 8, 2025); 223 (Elon R. Musk Decl., July 8, 2025).]

This matter may be determined without oral argument. Civ. L.R. 7-1(b). For the following reasons, Plaintiffs' motion to compel responses is granted in part and held in abeyance in part. Defendant's motion to compel the amendment of responses is granted in part and denied in part.

Musk also filed two administrative motions to consider whether his own and certain non-parties' materials should be sealed pursuant to Civil Local Rules 79-5(c) and 79-5(f). [Docket Nos. 173; 221.] The non-parties were served with the motions to seal, but none filed a statement

or declaration supporting the sealing as required by Civil Local Rule 79-5(f)(3). Accordingly, the motion to seal the non-party material is denied. As to Musk's own material, he seeks to seal five lines from Spiro's declaration describing the general subjects covered in an attorney-client communication. [Docket No. 221.] He argues the information should be sealed because otherwise the "topics of Defendant's confidential communications with counsel will be made publicly available." *Id.* Upon review, the five lines describe the topics at the level of generality one would expect to find in a privilege log to assist opposing counsel and the court in assessing whether an assertion of privilege is proper. In other words, Spiro's declaration does not reveal privileged content. Spiro Supp. Decl. ¶ 10.

In assessing whether documents may be filed under seal, there is "a strong presumption in favor of access." *Foltz v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1135 (9th Cir. 2003). In accordance with the strong public policy favoring access to court records, "[a] party seeking to seal a judicial record . . . bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). "Under this stringent standard, a court may seal records only when it finds 'a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Ctr. for Auto Safety v. Chrysler Grp.*, LLC, 809 F.3d 1092, 1096–97 (9th Cir. 2016) (quoting *Kamakana*, 447 F.3d at 1179). Those reasons must "outweigh the general history of access and the public policies favoring disclosure, such as the 'public interest in understanding the judicial process.'" *Kamakana*, 447 F.3d at 1178-79 (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)).

The Ninth Circuit has "carved out an exception to the presumption of access to judicial records" for "court records attached only to non-dispositive motions." *Id.* (quoting *Foltz*, 331 F.3d at 1135). The court reasoned that "the public has less of a need for access to court records attached only to non-dispositive motions because those documents are often 'unrelated, or only tangentially related, to the underlying cause of action.'" *Id.* (quoting *Foltz*, 331 F.3d at 1135). "A 'good cause' showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions." *Id.* at 1180 (citing *Foltz*, 331 F.3d at 1135).

United States District Court
Northern District of California

This discovery dispute involves a non-dispositive motion that is tangentially related to the underlying merits. Therefore, Musk must demonstrate good cause to seal the five lines from the Spiro declaration. He fails to do so here. Musk cites no authority supporting his position that the information should be sealed, nor does he describe any injury that would result if the material was made publicly available. The court denies both administrative motions. Musk shall re-file the unsealed materials by **August 12, 2025**.

## I.   BACKGROUND

The case background is summarized in prior orders. *See, e.g.,* [Docket No. 218 (Order on Requests for Admission)]. In a nutshell, Plaintiffs allege that on April 25, 2022, Twitter and an entity wholly-owned by Defendant Elon Musk entered into an agreement (the "Merger Agreement") for the acquisition of Twitter at $54.20 per share. [Docket No. 48 (Order on MTD) at 2]. According to Plaintiffs, Musk then made several misrepresentations in mid-May 2022 to "artificially depress the price of Twitter stock and to pressure Twitter to lower the price Defendant would have to pay to acquire it." *Id.* at 1.

For purposes of this order, the court briefly notes the relevant rulings made by the Honorable Charles R. Breyer, the presiding judge in this case. In the December 11, 2023 order granting in part and denying in part Musk's motion to dismiss, Judge Breyer held that Plaintiffs sufficiently pleaded securities fraud as to statements made by Musk on May 13, 16, and 17, 2022. Order on MTD 20, 23-25. Judge Breyer held that Plaintiffs plausibly alleged the statements misrepresented Musk's rights under the Merger Agreement and also misrepresented that Musk had received information from Twitter about the percentage of spam accounts on Twitter. *Id.* Judge Breyer held that Plaintiffs had not pleaded a securities fraud claim with respect to letters Musk sent to Twitter on July 8, August 29, and September 9, 2022 terminating the Merger Agreement because Plaintiffs had not sufficiently pleaded that the letters were false. *Id.* at 27.

## II.   LEGAL STANDARDS

### A.   Legal Standards for Securities Fraud

Section 10(b) of the Exchange Act as implemented by Rule 10b-5, makes it unlawful:
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state

> a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

*In re Alphabet, Inc. Sec. Litig.,* 1 F.4th 687, 699 (9th Cir. 2021) (citing 17 C.F.R. § 240.10b-5).

"'In a typical § 10(b) private action' based on material misrepresentations or omissions, a plaintiff must prove '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Id.* (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008)). Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." Order on MTD 28. "To demonstrate scienter, the defendant must have contemporaneously made 'false or misleading statements either intentionally or with deliberate recklessness.'" *Id.* at 29 (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009)).

Courts distinguish between claims brought under Rule 10b-5(b), which concern material misrepresentations or omissions made by the defendant, and claims under Rule 10b-5(a) and (c), which are also known as "scheme liability claims" and encompass a broader range of fraudulent conduct. *Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 78-79 (2019). The Ninth Circuit has held it is reversible error for a district court to dismiss a scheme liability claim *sua sponte* simply because the plaintiff fails to make a Rule 10b-5(b) claim. *In re Alphabet, Inc. Sec. Litig.,* 1 F.4th at 709.

## B.    Legal Standards Governing Discovery

Federal Rule of Civil Procedure 26 provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "Relevancy, for the purposes of discovery, is defined broadly,

4

although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006). "While the party seeking to compel discovery has the burden of establishing that its request satisfies relevancy requirements, the party opposing discovery bears the burden of showing that discovery should not be allowed, and of clarifying, explaining, and supporting its objections with competent evidence." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015) (citing *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012)).

Federal Rule of Civil Procedure 33 provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "[A]n answer to an interrogatory must be responsive to the question. It should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers." *Lawman v. City & Cnty. of San Francisco*, 159 F. Supp. 3d 1130, 1140 (N.D. Cal. 2016) (quoting *Scaife v. Boenne*, 191 F.R.D. 590, 594 (N.D. Ind. 2000)).

## III.   PLAINTIFFS' INTERROGATORIES (JDL 168)

Musk declined to answer Plaintiffs' ROGs 5, 7, 9, 20, 21, and 22. Plaintiffs move to compel responses.

### A.   July 8, 2022 Termination Letter (Plf. ROGs 5, 7, 9)

ROGs 5, 7, and 9 request information about Musk's conduct after he sent a July 8, 2022 letter to Twitter terminating the Merger Agreement ("Termination Letter"). For example, ROG 5 states: "After July 8, 2022, explain whether You instructed anyone on Your Team to stop working on the Deal, and Identify who You told, when that message was delivered, by what means, and what was communicated." Plf. JDL Ex. A.

Plaintiffs argue information about the Termination Letter is relevant because "Plaintiffs' scheme liability allegations under Rule 10b-5(a) and (c), which span the entire class period, have not been dismissed." Plf. JDL 1. According to Plaintiffs, the Termination Letter was "merely pretextual" because Musk in fact continued working to complete the merger after July 8, 2022. *Id.*

United States District Court
Northern District of California

at 1-2.  Plaintiffs seek to explore whether Musk used the Termination Letter as part of his scheme to manipulate Twitter's stock price and renegotiate the price of the deal.  *Id*.  Musk opposes, arguing that Judge Breyer already ruled that the Termination Letter is not actionable for securities fraud and that events after July 8, 2022 are not relevant to the issue of whether his May 13, 16, and 17 statements violated securities law.  *Id.* at 3-4.

Whether a scheme liability theory remains in the case presents a merits question more appropriately addressed in pretrial proceedings than through a discovery dispute.  In any event, a ruling on scheme liability is not required to adjudicate the disputes regarding ROGs 5, 7, and 9.

The court finds that the information sought by ROGs 5, 7 and 9 is relevant and discoverable.  Judge Breyer certified a class period from May 13, 2022 through October 4, 2022.  [Docket No. 106 (Order Certifying Class) at 12.]  Musk contends the deal was terminated on July 8, 2022, creating an "entirely new state of affairs," such that the market was no longer being misled by the May statements after that point.  Plf. JDL 3-4.  Plaintiffs assert Musk continued working on the deal after July 8, suggesting that the deal was not terminated and that the market continued to be misled throughout the class period.  *Id.* at 1-2.  Whether the deal was actually terminated on July 8, 2022 is a disputed fact relevant to Plaintiffs' Rule 10b-5(b) claims.[1] Plaintiffs are entitled to test Musk's assertions on this issue and to discover facts that could support their theory that the Termination Letter was pretextual.  Musk must respond to ROGs 5, 7, and 9.

**B.    Attorney-Client Privilege (Plf. ROGs 20-21)**

ROG 20 states: "Explain whether You were advised not to make public comments (including tweets) concerning the Deal, and Identify who advised You, when the communications took place, and explain the contents of the communication."  Plf. JDL Ex. A.  ROG 21 states: "Explain whether You were advised to clarify any public comments (including tweets) concerning

---

[1] Musk argues that the Order on MTD forecloses Plaintiffs' argument that Musk did not terminate the Merger Agreement on July 8, 2022.  Plf. JDL 3.  Not so.  The Order on MTD simply held that Plaintiffs failed to "sufficiently plead falsity as to the requests for information or the legal claims advanced in the termination letters."  Order on MTD 27.  Even if Plaintiffs did not sufficiently plead a Rule 10b-5(b) claim that the Termination Letter was a false statement, discovery about the Merger Agreement's termination is still relevant to Plaintiffs' Rule 10b-5(b) claims regarding the May 13, 16, and 17 statements.

United States District Court
Northern District of California

United States District Court
Northern District of California

the Deal, and Identify who advised You, when the communications took place, and explain the contents of the communication." *Id.*

Musk first objects to these ROGs as "overbroad, vague, and ambiguous" because they seek "any advice Mr. Musk received about making any public comment—not limited to the Alleged Misstatements—from any person." Plf. JDL 5.  Musk suggests without explanation that only advice about the specific alleged misstatements is relevant, and that any non-privileged advice he received is irrelevant.  *Id.*  The court disagrees with both positions.  Whether Musk received advice about not making or clarifying public comments regarding the Merger Agreement is relevant to scienter.  Therefore, the ROGs should not be limited to advice about the alleged misstatements.  Additionally, it is relevant to scienter whether Musk received advice from people in a position to advise him, not just from lawyers.  This includes legal, financial, business, and public relations advisors; members of his deal team; and other confidantes.  By contrast, the ROGs are overbroad to the extent they seek irrelevant information about suggestions Musk received from people who were not in a position to advise him, such as members of the public.

Musk also complains that the ROGs seek "irrelevant information to the extent that any communication occurred after the Alleged Misstatements were made." Plf. JDL 5.  Plaintiffs have already agreed to restrict their requests to the time prior to when the alleged misstatements were made.  *Id*. at 2.  The court understands this to mean that ROGs 20-21 are limited to advice Musk received before his May 17 tweet, which is the last alleged misstatement found to be actionable in the Order on MTD.

With the above limitations, the ROGS are not overbroad, vague, or ambiguous.  Plaintiffs are entitled to seek information regarding advice Musk received from any person in a position to advise him about his public comments concerning the Merger Agreement in the time prior to the May 17 tweet.  At a minimum, this discovery is relevant to Musk's scienter at the time he made the alleged misstatements.

To the extent that the ROGs seek information about legal advice, Musk initially argued that the ROGs seek information "squarely" protected by the attorney-client privilege, and therefore, no further response is required.  Plf. JDL 4.  Musk incorrectly cited *United States v.*

7

1    *Bauer*, 132 F.3d 504 (9th Cir. 1997) as holding that the attorney-client privilege "protects both the

2    fact of legal consultation and the legal advice itself." Plf. JDL 4. *Bauer* simply holds that the

3    contents of legal advice are privileged, not the fact that a legal consultation took place. *See Bauer*,

4    132 F.3d at 507. Indeed, *Bauer* states that "not all communications between attorney and client

5    are privileged, including . . . the general purpose of the work performed." *Id.* at 509. The fact that

6    a legal conversation with counsel occurred is not itself privileged. *See Rodriguez v. Seabreeze*

7    *Jetlev LLC*, 620 F. Supp. 3d 1009, 1018 (N.D. Cal. 2022) (citation omitted) ("material concerning

8    the dates and duration of meetings with attorneys is not attorney-client privileged").

9         Musk's initial bare assertion of privilege was insufficient. The court ordered supplemental

10    briefing in the form of "a detailed declaration to enable the court to assess [Musk's] assertion of

11    privilege." Order for Supp. Briefing 6. The court warned Musk that further failure to adequately

12    support an assertion of privilege may be viewed as a failure to establish privilege or as waiver of

13    the privilege. Order for Supp. Briefing 7 (citing *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist.*

14    *Court for Dist. of Mont.*, 408 F.3d 1142, 1147 (9th Cir. 2005)).

15         Musk and his counsel Alex Spiro subsequently submitted declarations supporting the

16    assertion of privilege. Musk's declaration is short. He testifies that he does not recall having a

17    May 13, 2022 call with Spiro. Musk Decl. ¶ 3. He further testifies, "I do not recall having any

18    other communications with counsel before May 17, 2022 in which I was advised to clarify or not

19    make public statements concerning the Twitter Merger." *Id.* ¶ 4. Notably, Musk did not address

20    whether he received responsive advice from anyone other than counsel. Spiro's declaration

21    explains that he had a confidential call with Musk on May 13, 2022 for the purpose of giving

22    Musk legal advice related to Musk's tweets that day. Supp. Spiro Decl. ¶¶ 7-10. The

23    supplemental evidence is sufficient to establish that the May 13, 2022 call between Musk and

24    Spiro was privileged in the first instance.

25         The court now turns to whether the May 13, 2022 privileged communication was waived.

26    "An express waiver occurs when a party discloses privileged information to a third party who is

27    not bound by the privilege, or otherwise shows disregard for the privilege by making the

28    information public." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003). "[I]t is the burden

United States District Court
Northern District of California

1    of the party who asserts privilege to show that the privilege has not been waived." *Wadler v. Bio-*

2    *Rad Lab'ys, Inc.*, 212 F. Supp. 3d 829, 851 (N.D. Cal. 2016) (citing *United States v. Martin*, 278

3    F.3d 988, 999 (9th Cir. 2002)).  Spiro explains in his declaration that although he mentioned to

4    third parties that he had spoken to Musk on May 13, he never disclosed the contents of that

5    privileged communication to any third party.  Supp. Spiro Decl. ¶¶ 11-18.  Spiro also states that he

6    told Jared Birchall about his May 13 conversation with Musk, but he does not remember the

7    details of what he told Birchall.  *Id.* ¶ 17.  Birchall was Musk's employee and "head of [Musk's]

8    family office," serving as Musk's representative in connection with the Merger and as his agent

9    when Musk was not handling the matter personally.  *Id.*  In that capacity, Spiro asserts Birchall

10   also had an attorney-client relationship with Spiro.  *Id.*  The record does not refute this, and

11   Plaintiffs have not argued otherwise.  The court finds that Birchall was not a third party for

12   purposes of waiver regarding the May 13 call.

13          Although Spiro's evidence establishes that he has not waived privilege over the May 13

14   call, it is still unclear if Musk or Birchall waived it.  Elsewhere in the record, Plaintiffs reference a

15   page in a published biography by Walter Isaacson that describes the contents of Spiro's May 13

16   communication with Musk.  [Docket Nos. 192-1 (Caroline A. Yuen Decl., April 17, 2025) ¶ 29;

17   192-29 (Exhibits from Musk Biography) 464.]  In his deposition, Musk did not definitively testify

18   that he had no conversations with Isaacson or others about his May 13 call with Spiro.  Instead, he

19   testified that he did not "recall" telling Isaacson about the May 13 call.  [Docket No. 223-1 (Elon

20   Musk Dep., May 19, 2025) 229-231.]  Therefore, it is not clear whether Musk told Isaacson or

21   anyone else about the contents of the May 13 call that would result in a waiver.  The record is also

22   silent about whether Birchall waived the privilege by telling someone what he learned from Spiro

23   about the contents of the May 13 call.  Because Musk bears the burden of establishing that the

24   privilege has not been waived, and given the lingering ambiguity in the record, the court grants

25   Musk a final opportunity to establish non-waiver with respect to the May 13 call.  After engaging

26   in reasonable investigation, Musk shall file a supplemental sworn declaration addressing the topic

27   of whether he disclosed information from his May 13 call with Spiro to anyone.  Birchall shall file

28   a declaration on the same topic.  The declarations must be filed by **August 12, 2025**.

United States District Court
Northern District of California

United States District Court
Northern District of California

Putting aside the May 13, 2022 call between Musk and Spiro, Musk must fully answer Plaintiffs' ROGS 20-21 to the extent that he was advised by any person in a position to advise him to not make, or to clarify, public comments concerning the Merger Agreement before the May 17 alleged misstatement. He cannot rely on his faulty memory[2] to assert that nobody advised him about public comments other than Spiro in the May 13, 2022 call. Musk and his counsel must investigate and determine whether other responsive communications occurred with any advisor, even if Musk cannot recall them, and Musk must fully respond to ROGs 20-21 accordingly. If Musk had responsive communications with counsel other than the May 13 call he had with Spiro, Musk must make a full response at this juncture. The court warned Musk that further failure to support his assertion of privilege may result in a determination that he failed to meet his burden to establish privilege. Order for Supp. Briefing 7. For purposes of these ROGs, and excluding the May 13, 2022 call with Spiro, the court finds that Musk has failed to establish privilege over legal advice he received (if any) that is responsive to ROGs 20-21.

### C.    Post-Class Period Conduct (Plf. ROG 22)

Plaintiffs' ROG 22 states: "Explain why You terminated Parag Agarwal, Ned Segal, Vijaya Gadde, and Sean Edgett, and Identify all factual bases for the termination, who advised You on their termination, when the communications took place, and explain the contents of the communication." Plf. JDL Ex. A. Musk objects to ROG 22 as irrelevant. The individuals named in ROG 22 are former Twitter executives who were terminated by Musk after the end of the class period, once he had acquired Twitter. The court found that Plaintiffs' relevance theory as stated in the JDL was too vague, and offered Plaintiffs a final opportunity to succinctly articulate the relevance of the termination of the Twitter executives in a supplemental joint letter. Order for Supp. Briefing 6-7. The parties filed the supplemental joint letter on July 8, 2025. Supp. JDL.

On July 15, 2025, Spiro agreed to give testimony in deposition about his purported involvement in the termination of the Twitter executives, among other topics. [Docket No. 225.]

---

[2] For example, Defendant testifies that he has no memory of the May 13, 2022 call with Spiro, despite Spiro confirming that it happened. Musk Decl. ¶ 3.

Spiro's deposition is scheduled for August 21, 2025.  [Docket No. 234.]  Thus, it appears the parties may have changed their positions on ROG 22.  The court holds this issue in abeyance. After Spiro's deposition, if the parties still have a dispute over the relevance of the information sought in ROG 22, they may file a stand-alone, one-page joint discovery letter **by September 11, 2025**.

## IV.    DEFENDANT'S INTERROGATORIES (JDLS 174, 175)

Musk seeks an order requiring Plaintiffs to amend their responses to ROGs 1-2, 4, 6-14, 18-19, and 21-23.

### A.    Interpretation of the Merger Agreement

Six of the disputed ROGs pertain to Plaintiffs' positions regarding interpretation of the Merger Agreement.

#### 1.    Def. ROGs 1-2

ROG 1 states: "Describe in detail—including by identifying specific provisions of the Merger Agreement and any other public documents—all reasons why the Merger Agreement did not give Defendant the right to the Bot Data as a condition to closing the Merger."  [Docket No. 174-1 (Def. First Set of ROGS).]  ROG 2 states: "Identify all provisions of the Merger Agreement—and any other public SEC filings available as of May 13, 2022—that Defendant could have reviewed that would have revealed that Twitter did not have a contractual obligation to provide Bot Data to Defendant."  *Id.*  Plaintiffs provided a response and a supplemental response to both ROGs but qualified them by using the phrase "among other things."  *Id.*

Musk objects that "among other things" is conditional language that renders the responses evasive.  Def. First JDL 1.  He requests that Plaintiffs be ordered to amend their responses to remove conditional language, or in the alternative, for Plaintiffs' evidence and arguments at summary judgment and trial to be limited to the facts disclosed.  *Id.* at 1-2.  Plaintiffs assert that their responses are complete.  *Id.* at 4.  They do not suggest there are any undisclosed facts or arguments responsive to the ROGs.  As such, the court orders Plaintiffs to amend their responses to ROGs 1 and 2 to delete the phrase "among other things."

### 2.    Def. ROG 4

ROG 4 states: "If you contend that any provision in the Merger Agreement is ambiguous, identify each such provision and state all facts and reasons in support of that contention."  Def. First Set of ROGS.  Plaintiffs responded that, "while they do not believe that any provisions in the Merger Agreement were ambiguous, Defendants' false and misleading statements and fraudulent scheme misled investors and the market regarding the portions of the Merger Agreement referenced in the responses to Interrogatories 1 and 2, for the reasons set forth in response to Interrogatory 3."  *Id.*

Musk argues that because Plaintiffs admit the provisions in the Merger Agreement are not ambiguous on their own, their response should have stopped there.  Def. First JDL 2.  He seeks to strike everything in Plaintiffs' response after the first clause as non-responsive.  *Id.*  Plaintiffs object that they have "clearly stated that the provisions of the Merger Agreement were not ambiguous on their own but were made so by Musk."  *Id.* at 4.  The court finds that Plaintiffs' answer is appropriate and responsive to ROG 4.  They did not evade the question; they answered the interrogatory and included an explanation of the surrounding context.

### 3.    Def. ROGs 18-19

ROG 18 states: "Identify all information Defendant was entitled to under Section 6.4 of the Merger Agreement and state all facts and reasons in support, including when and how you contend class members become aware of each fact identified."  [Docket No. 175-1 (Def. Second and Third Sets of ROGs).]  ROG 19 states: "Identify all information Defendant was entitled to under Section 6.11 of the Merger Agreement and state all facts and reasons in support, including when and how You contend class members become aware of each fact identified."  *Id.*  These ROGs can be separated into a first half ("Identify all information Defendant was entitled to . . . and state all facts and reasons in support") and a second half ("when and how You contend class members become aware of each fact identified").[3]  With respect to the first half, Plaintiffs responded by stating

---

[3] Plaintiffs object that ROGs 18-19 are compound.  The court finds that the two parts of the ROGs are "logically or factually subsumed within and necessarily related to" each other, so they should be counted as one interrogatory.  *See Synopsys, Inc. v. ATopTech, Inc.*, 319 F.R.D. 293, 294 (N.D. Cal. 2016) (quoting *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998)).

generally that Sections 6.4 and 6.11 entitled Musk to "reasonable access to information necessary to consummate the merger and required Twitter to reasonably cooperate with Musk's financial backers."  Def. Second JDL 4.  Regarding the second half, Plaintiffs gave examples of analyst reports related to market confusion about Musk's informational rights.  Plaintiffs further responded that ROGs 18-19 are duplicative of ROGs 11-13 and incorporated their responses to ROGs 11-13 into their answers.

Starting with the first half of ROGS 18-19, the court determines that Plaintiffs must amend their responses.  Plaintiffs' claims are based in part on their allegations that the Merger Agreement did not entitle Musk to information concerning Twitter's bot or spam data.  Musk may test that assertion by asking Plaintiffs, in a non-burdensome way, what information he *was* entitled to receive.  Plaintiffs contend they do not have to respond to these ROGs because information about the Merger Agreement is also available to Musk.  Def. Second JDL 4.  This is not a valid objection in this instance.  *See Alcon v. Bright*, No. 14-CV-01927-SI, 2015 WL 5559896, at *1 (N.D. Cal. Sept. 18, 2015) (stating that generally, an objection "based on the ground that it seeks information and documents . . . from records which are equally available to the propounding parties" is "insufficient to resist a discovery request") (internal citation omitted).  Plaintiffs' current responses are at such a high level of generality that they fail to adequately set forth Plaintiffs' position on the kinds of information Musk was entitled to receive under the Merger Agreement.  Plaintiffs must amend their responses to provide meaningful answers.

At the same time, the court finds that it would be unduly burdensome to require Plaintiffs to identify each and every piece of information to which Musk was entitled under Sections 6.4 and 6.11 of the Merger Agreement.  "In making a decision regarding burdensomeness, a court must balance the burden on the interrogated party against the benefit to the discovering party of having the information. . . . Discovery should be allowed unless the hardship is unreasonable in the light of the benefits to be secured from the discovery."  *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1032 (E.D. Cal. 2010), *order clarified*, No. 1:05CV01198LJOJMDHC, 2010 WL 797019 (E.D. Cal. Mar. 5, 2010) (citations omitted).  The dispute over interpretation of the Merger Agreement centers on a specific question: whether Musk was or was not entitled to receive Twitter's bot or

1    spam data.  The burden of requiring Plaintiffs to list in exacting detail all the information Musk

2    was entitled to receive under the Merger Agreement outweighs its likely benefit, especially

3    because Plaintiffs were not even parties to that agreement.

4         Accordingly, the court orders Plaintiffs to amend their responses to these ROGs to identify

5    the categories and types of information Musk was entitled to receive under the Merger Agreement,

6    using illustrative examples to provide a meaningful response.  Plaintiffs are not required to

7    provide an exhaustive list of every piece of information Musk had a contractual right to receive.[4]

8         Turning to the second half of the ROGs, Musk complains that Plaintiffs used conditional

9    language such as "for example" in their discussion of analyst reports.  Def. Second JDL 2.  The

10   court agrees that Plaintiffs' answers do not make clear whether they have identified all facts

11   responsive to the ROGs.  Plaintiffs shall amend their responses to ROGs 18-19 by omitting the

12   conditional language and adding additional responsive facts to the extent they exist.

13        The court also holds that it is improper for Plaintiffs to incorporate their responses to

14   ROGs 11-13 into their answers to ROGs 18-19.  ROGs 11-13 ask broadly about all materials

15   available to Musk and the public which revealed the asserted falsity of his alleged

16   misrepresentations.  In contrast, ROGs 18-19 seek a specific response about Musk's informational

17   rights under Sections 6.4 and 6.11 of the Merger Agreement.  The topics may overlap, but the

18   interrogatories are not fully duplicative.  It is improper to answer an interrogatory through

19   references to other interrogatories where it is "impossible to determine whether an adequate

20   answer has been given without an elaborate comparison of answers."  *See Lawman*, 159 F. Supp.

21   3d at 1140.  Plaintiffs must amend their responses to remove the references to ROGs 11-13 and

22   answer ROGs 18-19 directly.

23            **4.    Def. ROG 23**

24        ROG 23 states: "Identify all rights that You contend Defendant forfeited by waiving

25   financing and business due diligence, as alleged in Paragraph 82 of the FAC."  Def. Second and

26

27   _____

     [4] Expert discovery closed on July 30, 2025.  [Docket No. 230.]  To the extent expert work is
28   needed to answer ROGs 18-19, Plaintiffs should now have sufficient information to provide
     meaningful responses.

                                          14

1    Third Sets of ROGs.  Plaintiffs responded that Musk waived his rights to obtain information from

2    Twitter "other than the limited information called for in the merger agreement that was reasonably

3    necessary to consummate the merger."  *Id.*  Plaintiffs also responded that because of the waiver,

4    "Musk was obligated to consummate the merger whether or not he obtained any financing."  *Id.*

5        Musk complains that Plaintiffs' response is a "tautology, not a proper response."  Def.

6    Second JDL 3.  For the same reasons as stated above with respect to ROGs 18-19, the court finds

7    that Plaintiffs' response is at such a high level of generality it falls short of a complete answer to

8    ROG 23.  The court determines that requiring an exhaustive list would be unduly burdensome, but

9    Plaintiffs must identify the categories and types of rights they assert Musk forfeited, using

10   illustrative examples to provide a meaningful response.

11       **B.      Scope of the Pleadings (Def. ROGs 6-12)**

12       ROGS 6-12 ask Plaintiffs to identify Musk's alleged misstatements and the facts

13   supporting their falsity.  For example, ROG 6 states: "Identify every statement made by Defendant

14   you contend is false and/or misleading or contains a false and/or misleading omission of material

15   fact, that you contend is actionable under the federal securities law following the Court's Motion

16   to Dismiss Order, ECF No. 48."  Def. First Sets of ROGs.  Plaintiffs responded with a 120-page

17   chart that identifies 31 alleged misstatements, the majority of which are statements that were not

18   pleaded in the FAC or that were dismissed by Judge Breyer as not actionable.  Def. First JDL 2-3.

19   Musk argues that Plaintiffs are improperly trying to expand the scope of the FAC through

20   discovery.  *Id.*  He moves to strike everything beyond rows 1-3 of the chart (in other words,

21   everything in the chart that references misstatements other than the May 13, 16, and 17

22   misstatements that Judge Breyer found were sufficiently pleaded).  *Id.*  Plaintiffs cite their scheme

23   liability theory, arguing that all 31 of the alleged misstatements are relevant to Musk's alleged

24   scheme to manipulate the market.  *Id.* at 5.

25       The court denies Musk's motion to strike because it implicates the merits of the case.  As

26   such, it is appropriate for adjudication in pretrial proceedings regarding the scope of the case

27   rather than as a discovery dispute.

28       Musk also makes a specific complaint about Plaintiffs' response to ROG 6.  In that

United States District Court
Northern District of California

United States District Court
Northern District of California

response (row 2, second column of the chart), Plaintiffs state generally that Musk's statements during the "All In Summit" were false and misleading.  The "All In Summit" is an hour-long podcast; Musk requests that Plaintiffs specify from the transcript which statements from the podcast they contend were false and misleading.  Def. First JDL 3.  Plaintiffs respond that the entire podcast is misleading, and that they provided Musk with time stamps from the podcast where they assert he made false and misleading statements.  *Id.* at 5.  The time stamps were not included in their response to the ROG.

Plaintiffs cite *Berson v. Applied Signal Tech., Inc*., 527 F.3d 982 (9th Cir. 2008), which held that a statement can be misleading if it gives the "impression of a state of affairs that differs in a material way from the one that actually exists."  *Id.* at 985 (citing *Brody v. Transitional Hospitals Corp.,* 280 F.3d 997, 1006 (9th Cir. 2002)).  Plaintiffs argue that *Berson* found that an entire conference call was misleading, so Plaintiffs are not required to identify which parts of the hour-long "All In Summit" podcast were misleading.  *Berson* is distinguishable.  *Berson* singled out a four-line exchange in a conference call that created a misleading impression, not the entirety of the conference call.  *Id.* at 986-987.  Plaintiffs fail to explain what makes the entire "All In Summit" podcast misleading and why they cannot more specifically identify misstatements from it.

Plaintiffs are ordered to amend their response to ROG 6 to more specifically identify what they contend is misleading in the "All In Summit" podcast.  If specific statements or exchanges made a misleading impression, then Plaintiffs must amend their response to identify those statements or exchanges.

### C.    ROGs Plaintiffs Claim are Duplicative of Others

Musk argues that Plaintiffs' responses to ROGs 13, 14 and 21 inappropriately incorporate answers to other ROGs.  Plaintiffs contend that incorporation of other responses is proper because the ROGs call for duplicative information.

#### 1.    Def. ROG 13

ROG 13 states: "Other than the documents listed in Your response to Interrogatory No. 2, attached hereto as Exhibit 1, identify with specificity any facts or information known or available

1   to Defendant that would have revealed that the Alleged Misstatements were false or misleading at

2   the time they were made." Def. Second and Third Sets of ROGs.  Plaintiffs objected that ROG 13

3   is duplicative of ROGs 2 and 7-10.  *Id.*  Their response to ROG 13 referred Musk to Plaintiffs'

4   answers to ROGs 2 and 7-10, without specifying which documents or parts are responsive.  *Id.*

5          The court first examines ROG 2.  It only asks about facts related to the Merger Agreement

6   and public SEC filings as of May 13, 2022.  ROG 13 calls for facts supporting falsity "other than"

7   the Merger Agreement and public SEC filings as of May 13, 2022.  Therefore, ROG 2 and ROG

8   13 by their own terms are not duplicative.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No.

9   3:07-CV-05944SC, 2015 WL 13756255, at *5 (N.D. Cal. Oct. 22, 2015) (finding that

10  interrogatories were not duplicative where they did not call for information that was coextensive).

11  Plaintiffs' incorporation of their response to ROG 2 is nonsensical and improper.

12         ROGs 7-9 generally ask Plaintiffs to identify facts supporting their claims that each alleged

13  misstatement is false, as well as when and how Plaintiffs became aware of each fact.  ROGs 7-9

14  may overlap with ROG 13, but they are not wholly duplicative because ROGs 7-9 ask about facts

15  known to Plaintiffs while ROG 13 asks about facts available to Defendant.  As such, it is

16  "impossible to determine whether an adequate answer has been given without an elaborate

17  comparison of answers."  *See Lawman*, 159 F. Supp. 3d at 1140.  Plaintiffs must amend their

18  answer to ROG 13 to specify which portions of their responses to ROGs 7-9 also respond to ROG

19  13.

20         Finally, ROG 10 asks Plaintiffs to identify facts supporting their claims that Musk made

21  each allegedly false statement with scienter.  ROG 10 is potentially wholly duplicative of ROG 13.

22  Both ROGs ask for information about Musk's knowledge of falsity at the time he made the

23  allegedly false statements.  Plaintiffs shall amend ROG 13 to either make clear that their answer to

24  ROG 10 is wholly responsive to ROG 13, or to specify which portions of their ROG 10 response

25  also answer ROG 13.

26         In summary, Plaintiffs must amend their response to ROG 13 to be "complete in itself."

27  *See Lawman*, 159 F. Supp. 3d at 1140.  If the amendment continues to reference other

28  interrogatory responses in whole or in part, Plaintiffs must provide specific references to enable

United States District Court
Northern District of California

17

1   Musk to identify exactly what information Plaintiffs contend is responsive to ROG 13.

2   **2.    Def. ROG 14**

3   ROG 14 says: "State all bases and facts that support Your contention that Defendant

4   violated 17 CFR § 240.10b-5(a) and (c)." Def. Second and Third Sets of ROGs. These cited

5   regulations codify Rules 10b-5(a) and (c), also known as scheme liability.[5] The definition of

6   scheme liability is discussed above. Plaintiffs object to ROG 14 as an unduly burdensome

7   contention interrogatory. Def. Second JDL 4. Plaintiffs also argue it is duplicative of ROGs 6-10.

8   *Id.*

9   Contention interrogatories "are often overly broad and unduly burdensome when they

10  require a party to state 'every fact' or 'all facts' supporting identified allegations or defenses."

11  *Former S'holders of Cardiospectra, Inc. v. Volcano Corp.*, No. 12-CV-01535-WHO, 2013 WL

12  5513275, at *2 (N.D. Cal. Oct. 4, 2013) (quoting *Haggarty v. Wells Fargo Bank, N.A.,* 10–2416

13  CRB JSC, 2012 WL 4113341, *2 (N.D. Cal. Sept. 18, 2012)). Nevertheless, at this late stage in

14  the discovery process, it is generally appropriate for the defendant to request "the *material* facts in

15  support of the plaintiffs' contentions." *Id.* (emphasis in original); *see also In re eBay Seller

16  Antitrust Litig.*, No. C 07-1882 JF (RS), 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008)

17  ("courts tend to deny contention interrogatories filed before substantial discovery has taken place,

18  but grant them if discovery almost is complete"); *In re Convergent Techs. Sec. Litig.*, 108 F.R.D.

19  328, 333-34 (N.D. Cal. 1985). Plaintiffs do not have to provide the equivalent of a narrative

20  account of their case, but it would not be unduly burdensome for them to provide the material facts

21  in support of their scheme liability claim. At this juncture of the case, Musk is entitled to a

22  response to ROG 14.

23  Plaintiffs also argue that ROG 14 is duplicative of ROGs 6-10. Def. Second JDL 4. ROGs

24  6-10 ask Plaintiffs to identify all allegedly false statements made by Musk, the facts supporting

25  Plaintiffs' claims that the statements were false (including when and how Plaintiffs became aware

26  of each fact), and the facts supporting their claims that Musk made each allegedly false statement

27

28  _____

[5] The court notes that Musk directs this interrogatory to Plaintiffs' scheme liability theory, even though he argues elsewhere that scheme liability has either been dismissed or was never pleaded.

with scienter. Plaintiffs' scheme liability claim appears to include all facts and false statements identified by Plaintiffs in their answers to ROGs 6-10. If this is correct, it may be appropriate for Plaintiffs to respond to ROG 14 by incorporating their responses to ROGs 6-10. Plaintiffs are ordered to amend their response either to make clear that their answers to ROGs 6-10 are entirely coextensive with the information requested in ROG 14, or to provide specific references to enable Musk to identify exactly what information Plaintiffs contend is responsive to ROG 14. If Plaintiffs seek to rely on additional material facts beyond those identified in their answers to ROGs 6-10 for their scheme liability claim, Plaintiffs must amend their response to provide those facts.

### 3. Def. ROG 21

Musk moves to compel a further response to ROG 21. Plaintiffs complain that ROG 21 is duplicative of ROGs 6-9. ROG 21 states: "If You contend that the Closing of the Merger was not on hold or otherwise delayed after May 13, 2022, state all facts and reasons in support of that contention, including when and how You contend class members become aware of each fact supporting that contention." Def. Second and Third Sets of ROGs. After providing a response, Plaintiffs also incorporated other discovery, including their responses to ROGs 6-9 and the deposition of Michael Ringler, without specifying which parts are responsive to ROG 21. *Id.*

The court finds there is overlap between ROG 21 and ROGs 6-9. But as discussed above, ROGs 6-9 are broadly directed toward facts supporting the falsity of all the alleged misstatements. ROG 21 is specifically about Plaintiffs' contention that the Merger Agreement was not on hold after May 13, 2022. Plaintiffs' responses to ROGs 6-9 appear to contain information that is nonresponsive to ROG 21. For reasons already explained above, it is improper for Plaintiffs to incorporate the entirety of their responses to ROGs 6-9. *See Lawman*, 159 F. Supp. 3d at 1140. It is also improper for Plaintiffs to incorporate an entire deposition, where Musk would have to "scour the deposition transcript[]" to determine which portions of the transcript are responsive to ROG 21 and whether Plaintiffs' answer is complete. *See Landon v. Ernst & Young LLP,* No. C08-02853 JF (HRL), 2009 WL 4723708, at *3 (N.D. Cal. Dec. 2, 2009).

In sum, Plaintiffs must amend their response to ROG 21 to be "complete in itself." *See*

United States District Court
Northern District of California

19

*Lawman*, 159 F. Supp. 3d at 1140.  If the amendment continues to reference other interrogatory responses in whole or in part, Plaintiffs must provide specific references to enable Musk to identify exactly what information Plaintiffs contend is responsive to ROG 21.

### D.     Identifying Class Members (Def. ROG 22)

ROG 22 states: "If You contend that any investors (including named Plaintiffs) believed that Defendant based his May 16, 2022 Statement (identified at paragraph 120 of the FAC), and the May 17, 2022 Tweet (identified at paragraph 125 of the FAC) regarding the number of bots/spam on Twitter's platform on data he obtained from Twitter, identify all facts in support of that contention, including the identities of any investors who held that belief."  Def. Second and Third Sets of ROGs.  Plaintiffs responded with general assertions about "the public," the "reasonable investor," and "analysts who closely followed Twitter and issued reports during the Class Period."  *Id.*

As Judge Breyer explained in the Order on MTD, Plaintiffs allege falsity with respect to Musk's May 16 and 17 statements because they suggest that Musk received data from Twitter showing that the percentage of Twitter's spam accounts was 20% or higher.  Order on MTD 23-25.  ROG 22 tests these allegations by asking whether anyone actually believed that Musk based his statements on information he obtained from Twitter.  Plaintiffs' sole argument is that ROG 22 improperly requires them to identify unnamed class members, but Musk clarifies that he is not seeking information about those class members.  Def. Second JDL at 3, 5.  Plaintiffs shall answer ROG 22 as to the named Plaintiffs and investors who are not in the class.

## V.     CONCLUSION

Plaintiffs' JDL [Docket No. 168] is granted in part and held in abeyance in part:

- Musk shall respond in full to ROGs 5, 7, and 9 by **August 12, 2025**.
- With respect to ROGs 20-21:
  - Plaintiffs may seek information about Musk being advised by any person in a position to give him advice to not make or to clarify his public comments concerning the Merger Agreement before Musk's May 17 alleged misstatement.

- Musk and Birchall shall file declarations to establish that the privileged communication between Musk and Spiro on May 13, 2022 has not been waived.  The declarations must be filed by **August 12, 2025**.
- Other than with respect to the May 13, 2022 call between Musk and Spiro, Musk has waived privilege over any other legal advice responsive to ROGs 20-21.
- Musk must investigate beyond a lack of memory and shall respond in full to ROGs 20-21 by **August 12, 2025.**

- Plaintiffs' motion to compel a response to ROG 22 is held in abeyance.  The parties may raise it again by filing a stand-alone, one-page joint discovery letter by **September 11, 2025**.

Defendant's JDLs [Docket Nos. 174, 175] are granted in part and denied in part:

- Plaintiffs shall amend their responses to ROGs 1 and 2 to delete the phrase "among other things" by **August 12, 2025.**
- Defendant's motion to compel is denied as to ROG 4.
- Plaintiffs shall amend their responses to ROGs 18-19 and 23 as set forth above by **August 12, 2025.**
- Defendant's motion to strike is denied as to ROGs 6-10 for the purposes of discovery.
- Plaintiffs shall amend their response to ROG 6 as set forth above by **August 12, 2025.**
- Plaintiffs shall amend their responses to ROGs 13-14 and 21 as set forth above by **August 12, 2025.**

//

//

//

//

//

1    • Plaintiffs shall answer ROG 22 as to the named Plaintiffs and investors who are not

2    in the class by **August 12, 2025.**

3

4    **IT IS SO ORDERED.**

5    Dated: August 5, 2025

6    _____

7    Donna M. Ryu

Chief Magistrate Judge