**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
*jcotchett@cpmlegal.com*
Mark C. Molumphy (SBN 168009)
*mmolumphy@cpmlegal.com*
Tyson C. Redenbarger (SBN 294424)
*tredenbarger@cpmlegal.com*
Elle D. Lewis (SBN 238329)
*elewis@cpmlegal.com*
Gia Jung (SBN 340160)
*gjung@cpmlegal.com*
Caroline A. Yuen (SBN 354388)
*cyuen@cpmlegal.com*
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
*fbottini@bottinilaw.com*
Albert Y. Chang (SBN 296065)
*achang@bottinilaw.com*
Aaron P. Arnzen (SBN 218272)
*aarnzen@bottinilaw.com*
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | Case No. 22-cv-5937-CRB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF OPINION OF KENNETH M. LEHN**<br><br>Date:        October 31, 2025<br>Time:        10:00 a.m.<br>Courtroom:   6, 17th Floor<br>Judge:       Hon. Charles R. Breyer |

Case No. 22-cv-5937-CRB

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on October 31, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Charles R. Breyer, United States District Judge, located at 450 Golden Gate Avenue, Courtroom 6, 17th Floor, San Francisco, California 94102, Lead Plaintiffs Nancy Price, John Garrett, and Brian Belgrave ("Plaintiffs") will and hereby do move the Court to exclude portions of Defendant Elon Musk's expert opinions contained in the report of Kenneth M. Lehn ("Dr. Lehn"), dated July 2, 2025 (the "Lehn Report") pursuant to Federal Rules of Civil Procedure 26(a)(2)(D)(ii) and 37(c)(1), Federal Rule of Evidence 702 ("Rule 702"), and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ("*Daubert I*"). This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, Plaintiffs' expert David Tabak, Ph.D.'s reports, Dr. Lehn's report, and all other papers and proceedings in this action.

For the reasons stated in the Memorandum of Points and Authorities, Plaintiffs respectfully request that the Court exclude certain opinions set forth in the Lehn Report.

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

# TABLE OF CONTENTS

**Page**

ISSUE PRESENTED ...........................................................................................................................1

SUMMARY OF ARGUMENT .........................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND........................................................................2

I.      The Claims .............................................................................................................................2

II.     Dr. Lehn's Expert Rebuttal Report ........................................................................................4

LEGAL STANDARD........................................................................................................................5

ARGUMENT .....................................................................................................................................6

I.      Dr. Lehn Did Not Employ a Reliable Methodology to Form His Opinions About
        What Securities Analysts Focused on at Relevant Times.......................................................6

II.     Dr. Lehn's Inferences-Only Approach Is Groundless and Contrary to the Law ....................9

III.    Dr. Lehn's Inferences-Only Approach Is Irrelevant Because It Ignores Plaintiffs'
        Falsity Allegations ...............................................................................................................12

IV.     Dr. Lehn Purports to Opine on Falsity, an Issue Reserved for the Jury or the Court ............14

V.      The Specific Portions of Dr. Lehn's Opinions That Should Be Excluded Based on
        the Arguments Herein ..........................................................................................................15

CONCLUSION................................................................................................................................15

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beech Aircraft Corp. v. U.S.*,
51 F.3d 834 (9th Cir. 1995)................................................................................................14

*Blue Bottle Coffee, LLC v. Liao*,
2023 WL 6850573 (N.D. Cal. Oct. 16, 2023)......................................................................6

*Bourjaily v. U.S.*,
483 U.S. 171 (1987)..............................................................................................................6

*Brown v. Google, LLC*,
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022)..................................................................14

*Daubert v. Merrell Dow Pharm., Inc.*,
43 F.3d 1311 (9th Cir. 1995).....................................................................................2, 12, 13

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993).....................................................................................................1, 6, 8

*EEOC v. Freeman*,
778 F.3d 463 (4th Cir. 2015)................................................................................................7

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011)................................................................................................6

*Engilis v. Monsanto Co.*,
2025 WL 2315898 (9th Cir. Aug. 12, 2025)......................................................................13

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012)............................................................................................10

*In re Apple Inc. Sec. Litig.*,
2023 WL 4556765 (N.D. Cal. July 17, 2023)........................................................1, 8, 9, 13

*In re ChinaCast Educ. Corp. Sec. Litig.*,
809 F.3d 471 (9th Cir. 2015)..............................................................................................12

*In re REMEC Inc. Sec. Litig.*,
702 F. Supp. 2d 1202 (S.D. Cal. 2010)..............................................................................10

*In re Sci. Atlanta, Inc. Sec. Litig.*,
754 F. Supp. 2d 1339 (N.D. Ga. 2010)...............................................................................10

*In re Stratosphere Corp. Sec. Litig.*,
66 F. Supp. 2d 1182 (D. Nev. 1999).....................................................................................9

*In re Tesla, Inc. Sec. Litig.*,
2022 WL 7374936 (N.D. Cal. Oct. 13, 2022).....................................................................10

iii

Case No. 22-cv-5937-CRB

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

*Janus Capital Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011) ............................................................................................................ 12

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) .............................................................................................................. 6

*McHugh v. United Serv. Auto. Ass'n*,
  164 F.3d 451 (9th Cir. 1999) .............................................................................................. 14

*Menorah Mivtachim Ins. Ltd. v. Sheehan*,
  2024 WL 1613907 (2d Cir. Apr. 15, 2024) ....................................................................... 10

*Nash-Perry v. City of Bakersfield*,
  2022 WL 3357516 (E.D. Cal. Aug. 15, 2022) .............................................................. 14, 15

*S.E.C. v. Todd*,
  642 F.3d 1207 (9th Cir. 2011) ............................................................................................ 15

*Siqueiros v. GM LLC*,
  2022 WL 74182 (N.D. Cal. Jan. 7, 2022) ............................................................................ 7

*Sterling Sav. Bank v. Poulsen*,
  2013 WL 3945989 (N.D. Cal. July 29, 2013) .................................................................... 14

*U.S. v. Langford*,
  946 F.2d 798 (11th Cir. 1991) ............................................................................................ 12

*U.S. v. Valencia-Lopez*,
  971 F.3d 891 (9th Cir. 2020) ................................................................................................ 6

*Walker v. Conagra Brands, Inc.*,
  2023 WL 8885148 (C.D. Cal. Sept. 21, 2023) ..................................................................... 7

**Rules**

17 CFR 240.10b-5 ................................................................................................................... 12

FED. R. CIV. P. 26(a)(2)(D)(ii) ................................................................................................... 1

FED. R. CIV. P. 37(c)(1) ............................................................................................................. 1

FED. R. EVID. 403 ...................................................................................................................... 6

FED. R. EVID. 702 ................................................................................................................... 1, 6

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

## ISSUE PRESENTED

Whether the Court should exclude portions of the Lehn Report and certain opinions of Dr. Lehn from use in this case under Federal Rules of Civil Procedure 26(a)(2)(D)(ii) and 37(c)(1), Federal Rule of Evidence 702, and *Daubert I.*

## SUMMARY OF ARGUMENT

Plaintiffs move to exclude certain opinions outlined in the Expert Rebuttal Report of Kenneth M. Lehn, Musk's damages and loss causation rebuttal expert. In the challenged portions of his report, Lehn draws sweeping conclusions based on his review of securities analyst reports discussing Twitter during a portion of 2022. While Plaintiffs are fully cognizant of the judicial preference for exposing frailties in an expert's opinion through cross-examination, several aspects of Dr. Lehn's report are so irrelevant, unhelpful, unreliable, and ungrounded in the law that they should be excluded pursuant to the Court's evidentiary gatekeeping function. This is so for four reasons.

*First*, Dr. Lehn had 183 analyst reports available to him for purposes of his analysis. But he reviewed just 30 of those reports, and has not described his basis for selection or invoked any statistical principles to defend his partial review. Despite this, Dr. Lehn purports to divine what was important to the market for Twitter stock as a whole. Worse still, Dr. Lehn purports to know what does *not* appear in analyst reports from the relevant period, which is impossible given that he did not even look at 153 of the 183 analyst reports that his assistants pulled for the engagement. Courts regularly exclude such testimony. *E.g.*, *In re Apple Inc. Sec. Litig.*, 2023 WL 4556765, at *1 (N.D. Cal. July 17, 2023).

*Second*, in making his suspect determinations about what was and was not important to stock market participants, Dr. Lehn casts aside the actual language Musk used in the only tweet at issue in his report—Musk's May 13, 2022 deal-on-hold tweet. Instead, Dr. Lehn made up various inferences that he thinks the market might have assumed from the tweet, and then attributes Twitter's corresponding stock decline to a subset of inferences that (in Dr. Lehn's view) Plaintiffs do not allege to be false. The portions of Dr. Lehn's report reflecting this "inferences-only" approach should be stricken because it is groundless, has no basis under the securities law's anti-fraud

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

provisions (which prohibit "false statements of material fact" and "material misrepresentations," as opposed to false inferences) and is therefore irrelevant.

*Third*, for purposes of his analysis, Dr. Lehn compares his manufactured inferences to what he apparently believes are the only two bases upon which Plaintiffs can prove that Musk's May 13 tweet was false. He then concludes that there is "no reliable basis to attribute any, let alone all, of the residual decline in Twitter's stock price on May 13, 2022 and May 16, 2022 to the alleged misrepresentation." But Dr. Lehn completely ignores six of the seven reasons that Plaintiffs allege the tweet was false. Because this portion of Dr. Lehn's opinion does not "logically advance[] a material aspect" of the case, it is irrelevant, likely to cause confusion, and should be excluded. *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*").

*Finally*, Dr. Lehn revealed during his deposition the real message he hopes to deliver through his inferences-only opinions, *i.e.*, that Musk's tweet was not false. Dr. Lehn went out of his way to testify that "there's no evidence, based on the analyst commentary, that the analysts were somehow fooled by the alleged misrepresentation," and he views the tweet as having "conveyed information to the market that, if anything, enhances the integrity of the price." This goes directly to falsity—an essential element of securities fraud—and therefore invades the province of the jury.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.     The Claims**

The First Amended Complaint ("FAC") alleges that, on April 13, 2022,[1] Musk made an offer to buy Twitter at $54.20 per share. FAC ¶ 76.[2] A week later, Musk sweetened the deal by making his offer more "seller friendly." Musk then filed an Amended Schedule 13D with the SEC confirming that his acquisition proposal was no longer subject to the completion of financing and business due diligence. FAC ¶ 82.

On April 25, Twitter and Musk signed a merger agreement in a transaction valued at approximately $44 billion. FAC ¶ 85. However, soon thereafter, faced with financial risks, Musk

---

[1] Unless otherwise noted, all dates noted herein refer to calendar year 2022.

[2] All "FAC ¶ _" citations refer to Plaintiffs' June 8, 2023 First Amended Complaint, ECF 31.

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

proceeded to make false statements, send misleading tweets, and engage in conduct designed to create unfounded uncertainty and drive Twitter's stock down. FAC ¶ 26. Musk did this to create leverage to either back out of the purchase or renegotiate the buyout price. FAC ¶ 26.

Specifically, on May 13, Musk tweeted a statement that the buyout was "temporarily on hold pending details supporting calculation that spam/fake accounts do indeed represent less than 5% of users." FAC ¶ 111. This statement was false and misleading as there was no legal or factual basis to put the deal on hold, the deal wasn't on hold, and Musk had already decided to perform his own independent analysis of spam/fake accounts. FAC ¶ 112. In response to this tweet, Twitter's stock price dropped substantially, falling 9.67% from the previous day's close of $45.08 on an extraordinarily high volume of 101.62 million shares to close at $40.72. On the next trading day, the stock declined another 8.18%, resulting in a combined decline of 17.85% over two trading days. FAC ¶ 113.

On May 16, to create further doubt about the Merger, Musk stated that fake and spam accounts make up at least 20% of Twitter's users. FAC ¶ 120. The statements caused Twitter's stock to decline 8.18% to close at $37.39 on volume of 52.2 million shares. FAC ¶ 124. Similarly, on May 17, Musk tweeted that the actual number of fake accounts at Twitter could be "much higher" than 20% and that the deal "cannot go forward." FAC ¶ 125.

On July 8, Musk issued a statement that he was purportedly terminating the Merger. FAC ¶ 140. In his announcement, Musk falsely and baselessly stated that Twitter had breached several provisions of the Merger Agreement, that "Twitter has not complied with its contractual obligations," and that the information "is necessary to consummate the transactions contemplated by the Merger Agreement because it is needed to ensure Twitter's satisfaction of the conditions to closing." FAC ¶ 140. The announcement caused Twitter stock to drop 11.3% from $38.79 on Friday, July 7 to $32.65 on Monday, July 11, on heavy volume of over 67 million shares traded. FAC ¶ 142.

On July 12, Twitter sued Musk in the Delaware Court of Chancery, seeking specific performance. FAC ¶ 143. On October 4, two weeks before the Delaware trial was set to begin,

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

Musk shocked the market by announcing that he intended to go through with the Merger at the initial price of $54.20.  FAC ¶ 151.  In an April 12, 2023 interview with the BBC, Musk admitted to the motive behind his false statements, *i.e.*, that he did not want to pay the price he had agreed to (FAC ¶ 10) and that he completed the buyout at the full $54.20 price in order to avoid the trial in Delaware because he knew he was going to lose.  FAC ¶ 166.

## II.     Dr. Lehn's Expert Rebuttal Report

Plaintiffs engaged economist Dr. David Tabak to calculate the deflation in Twitter's stock and call options and the inflation in Twitter's put options over the Class Period, and produced Dr. Tabak's related report to Musk on May 28, 2025.[3]  Musk responded on July 2, 2025 with the Expert Rebuttal Report of Kenneth M. Lehn.  *See* Declaration of Aaron P. Arnzen ("Decl."), ¶ 2, Ex. 1 (the "Lehn Report").[4]

In the challenged portions of Dr. Lehn's rebuttal report, he attacks Plaintiffs' ability to establish that Musk's May 13 tweet caused stock market losses through two broad assertions. Specifically, Dr. Lehn asserts that (1) Dr. Tabak failed to "disaggregate" the market impact of Musk's May 13 deal-on-hold tweet from the impact caused by other information disclosed to the market on May 13 and May 16,[5] and (2) the market did not react to information that Plaintiffs allege is false, while it did react to information that Plaintiffs acknowledge as true.  Lehn Report, at 18-28. Dr. Lehn reviewed a smattering of analyst reports to find this other information—*i.e.*, information not found within the four corners of the May 13 tweet—to support his conclusions.  *Id.* at 18-28, Appx. B at 2-3.

This brand of defense argument is *de rigueur* in federal securities fraud cases.  But the purported basis underlying Dr. Lehn's arguments here is extraordinary.  ***Dr. Lehn incredibly casts aside the actual May 13 tweet, and ignores the express wording of the tweet, for purposes of opining on the tweet's impact on the market.***  *See* Ex. 2, at 41:22–43:17.  In fact, Dr. Lehn testified

[3] Plaintiffs also previously produced a market efficiency report by Dr. Tabak in support of class certification.  ECF 76-1.

[4] "Ex." refers to exhibits to the Declaration of Aaron P. Arnzen, submitted herewith.

[5] Dr. Tabak found that Musk's May 13 deal-on-hold tweet impacted the market on both May 13 (a Friday) and May 16 (the following Monday).

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

that the language of the tweet is "irrelevant" for purposes of determining how the market reacted to it. Ex. 2, 43:25-44:13 (asserting that "all the questions you asked" about the May 13 tweet's express language are "irrelevant"). Nor, for that matter, does Dr. Lehn assert that Dr. Tabak failed to disaggregate the impact of the May 13 tweet, on the one hand, from unrelated news that entered the market (*e.g.*, news about how Musk intended to fund his acquisition of Twitter, or other tweets by Musk or Twitter), on the other hand.

Instead of relying on a fair reading—or any reading—of the only statement at issue in his analysis (Dr. Lehn did not analyze the market impact of the May 16 or May 17 misstatements alleged in the FAC, *see* Ex. 2, 37:1–17), Dr. Lehn simply makes up various "***inferences***" that he claims securities analysts drew from Musk's May 13 tweet, and asserts that Dr. Tabak failed to take these inferences into account in estimating damages. Lehn Report, at 18-28. Dr. Lehn then claims that some of these supposed inferences drove down the market for Twitter stock on May 13 and May 16 and, as luck would have it, these particular inferences that purportedly caused a market impact are supposedly not what Plaintiffs claim was false about the May 13 tweet. *Id.*

More specifically, based on his review of a small subset of analyst reports issued during the relevant period, Dr. Lehn concludes, for example, that (1) "analysts did not infer that Mr. Musk has a right to information on bots under the Merger Agreement;" (2) "analysts did not infer that Mr. Musk instructed his team to stop work on the deal;" (3) "analysts inferred that Mr. Musk was getting apprehensive about the deal;" (4) "disclosures related to Mr. Musk's rights to bot/spam information did not elicit a stock price reaction while information related to deal termination did;" and (5) "disclosures related to the progress of the merger did not elicit a stock price reaction while information related to deal termination did." Lehn Report, at 19-27 (capitalization adjusted).

The Court should exclude portions of Dr. Lehn's opinions founded on this baseless "inferences-only" approach for the reasons set forth below.

## LEGAL STANDARD

Expert testimony is admissible only if: (1) the witness is "qualified as an expert;" (2) "scientific, technical, or other specialized knowledge will help the trier of fact to understand the

evidence or to determine a fact in issue;" (3) "the testimony is based on sufficient facts or data;" (4) "the testimony is the product of reliable principles and methods;" and (5) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." FED. R. EVID. 702.

Expert testimony must be excluded under Rule 702 if it is unreliable or irrelevant. *See Daubert I*, 509 U.S. at 589. The Court must "exclude proffered scientific evidence under Rules 702 and 403 unless [the Court is] convinced that it speaks clearly and directly to an issue in dispute in the case." *Daubert II*, 43 F.3d at 1321 n.17. Further, the Court "must act as a 'gatekeeper' to exclude junk science that does not meet [Rule 702's] reliability standards." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (*citing Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145, 147–49 (1999); *see also U.S. v. Valencia-Lopez*, 971 F.3d 891, 897–98 (9th Cir. 2020) ("[B]efore admitting expert testimony, the district court must perform a gatekeeping role to ensure that the testimony is both relevant and reliable.") (cleaned up; citations, internal quotations omitted).

As the party offering Dr. Lehn's opinions, Musk bears the burden of establishing by a preponderance of the evidence that those opinions meet the admissibility standards of Rule 702. *Id.* at *6; *see also Blue Bottle Coffee, LLC v. Liao*, 2023 WL 6850573, at *4 (N.D. Cal. Oct. 16, 2023) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). As explained below, Musk falls far short of meeting this burden.

## ARGUMENT

### I.    Dr. Lehn Did Not Employ a Reliable Methodology to Form His Opinions About What Securities Analysts Focused on at Relevant Times

Dr. Lehn's methodology to determine what impacted the market for Twitter stock amounts to transparent cherry-picking—he did nothing more than quote from carefully selected snippets of analyst reports that he believes favor Musk.

Dr. Lehn's assistants obtained 183 Twitter analyst reports from April 25, 2022 to October 10, 2022. Lehn Report, p.19 n.80; Decl., ¶ 4, Ex. 3. Dr. Lehn's rebuttal report provides no indication that these 183 reports represent all reports published during the relevant period, and he doesn't know

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

whether his assistants reviewed all 183 reports that they did obtain. *Id.*; *see also* Ex. 2, 14:9–18 ("I think that's their protocol, but I don't have firsthand knowledge of precisely whether or not they read all the reports in their entirety."). ***Dr. Lehn read and relied on just 30 of these 183 reports—fewer than one out of six reports that his assistants obtained for this engagement—in forming his opinions***. Lehn Report, Appx. B, at 2-3. ***Dr. Lehn's report provides no explanation whatsoever about how or why Dr. Lehn made his selection of 30 reports to rely upon***. There is no mention of a sampling or other statistical technique that would allow Dr. Lehn to draw reasonable conclusions about the entire population of analyst reports from his limited review.

While absent from his rebuttal report, Dr. Lehn asserted during his deposition that his assistants picked the 30 relied-upon reports because he made requests for reports that were released close in time to the "key dates" at issue here. Ex. 2, 15:10-21. But this doesn't add up either. Of the 183 analyst reports that Dr. Lehn's assistants obtained, 48 of them were published from May 13 to May 21, July 8 to July 14, and October 4 to October 8 (that these are "key" dates in the case should not be subject to dispute).[6] Yet Dr. Lehn read and relied on just 23—less than half—of these reports. Decl., ¶¶ 5, 6. Once again, Dr. Lehn offers no explanation for his selection.

Furthermore, Dr. Lehn did not make a random selection or apply any statistical tools to ensure his sample was representative of all reports, which weighs strongly in favor of exclusion. *See EEOC v. Freeman*, 778 F.3d 463, 469 n.1 (4th Cir. 2015) (excluding portion of expert opinion: "Experts may use appropriate sampling methods to draw conclusions. But determining an appropriate sample size can be a tricky question in statistics, and Murphy never engaged with it.") (internal citation, quotation omitted); *Walker v. Conagra Brands, Inc.*, 2023 WL 8885148, at *8 (C.D. Cal. Sept. 21, 2023) (excluding expert who "has not demonstrated that he applied a reliable methodology" on a sample and "does not adequately demonstrate what data he used to reach these conclusions, what methodology he applied to the data, or how the methodology resulted in these opinions"); *Siqueiros v. GM LLC*, 2022 WL 74182, at *8 (N.D. Cal. Jan. 7, 2022) (excluding opinion

---

[6] These ranges include the days on which Musk made his misstatements on May 13, 16, and 17, the date of Musk's July 8 termination letter, and the date of Musk's corrective statement on October 4, plus four market days after each of those dates.

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

from trial where expert "summarizes the testimony of defects in the vehicles owned by named Plaintiffs, but provides no showing that the select testimony of Plaintiffs is a representative sample of all owners of the Class Vehicles").

All of these failures are especially alarming because Dr. Lehn purports to opine, based on his very limited review, about what the entire Twitter analyst community was focused on, and uses that as a proxy for assessing what was important to market participants across the board. Dr. Lehn also repeatedly opines about *what analysts did __not__ infer* from Musk's tweet. To risk stating the obvious, ***Dr. Lehn is in no position to tell this Court or the jury what was __not__ in analyst reports when he has reviewed less than one sixth of the reports available to him and less than one half of reports surrounding key dates, and he has no idea what is contained in the 153 reports he did not review***.[7]

There are several additional problems with Dr. Lehn's methodology. For example, Dr. Lehn ascribes meaning to reports of an interview in which Musk stated that "three issues need resolving before Twitter deal is finalized" (Lehn Report, ¶ 90), but Dr. Lehn's testimony established that he does not know what those three issues were, whether they represented new or existing information in the marketplace, and he did not listen to the actual, publicly-available interview. *See* Ex. 2, 187:6–

---

[7] Dr. Lehn's methodology is also fundamentally flawed because he fails to consider portions of analyst reports (several of which he selectively quotes) that indisputably discuss the very issues he claims the market "was not reacting to." Lehn Report, ¶ 54. For example, as to Musk's May 13 tweet, Lehn claims that "analyst commentary indicates that the market was not reacting to a belief or a concern that the May 13 Tweet suggested Mr. Musk had contractual rights to walk away from the deal if Twitter did not provide the information on bots/spam accounts." *Id.* Lehn's assertion is demonstrably false—he simply ignores, and fails to analyze, the portion of a May 13 Truist analyst report that explicitly states that the analyst was reacting to Musk's May 13 tweet: "Musk tweeted this morning that the deal is temporarily on hold, pending an analysis supporting calculation that spam/fake accounts do indeed represent less than 5% of users." Ex. 8; *see also* Ex. 9 (Wedbush report issued on May 13 in response to "a bizarre tweet this morning [in which] Elon Musk said the Twitter deal temporarily is on hold pending details supporting calculation that spam/fake accounts do indeed represent less than 5% of users"). Lehn also ignores a May 17 Wedbush analyst report that was issued in direct response to Musk's May 13 and May 16 tweets and references concerns that the deal is on hold and cannot move forward until Twitter provides Musk with the requested bot/spam info: "Now the ball is in the court of Twitter and the Board to prove the fake account issue to Musk and ultimately more diligence will be needed before going forward. Twitter shares will be under pressure this morning again as the chances of a deal ultimately getting done is not looking good now." Ex. 10. Thus, Lehn's report lacks a reliable foundation and should be excluded under *Daubert I. Apple Sec. Litig.*, 2023 WL 4556765, at *5.

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

188:17.[8]  Similarly, Dr. Lehn's report highlights a Wells Fargo report that briefly summarizes its analysts' discussion with a law professor about the Delaware litigation between Musk and Twitter. Lehn Report, ¶ 70.  However, Dr. Lehn did not listen to the actual discussion—which was available through a link prominently embedded in the article and to which all market participants had access— and does not know if his assistants listened to the discussion.  Ex. 2, 132:6–133:5; Ex. 6 (analyst report).

Another court in this District recently excluded the portion of an expert's opinion that similarly cherry-picked from analyst reports without employing any reasonable methodology:

> Here, Gauna purports to summarize 'other professional equity analysts' reports in response to the November 1, 2018, earnings call' (paragraph 59) and quotes past earnings calls to provide context regarding how Apple has handled such calls in the past. ***He does not explain how he chose which reports or calls to consider or how they are representative of reports on the call generally. As such, they do not appear to provide any reliable context for a jury and appear to substitute his own judgment for theirs.*** Further, these opinions do not address technical statements in the calls or reports or otherwise require expert opinion. "***It . . . does not take any special competence***, for example, to read pertinent public documents (*e.g.*, prospectuses, press releases, and recorded statements) ***to determine whether certain risks were conveyed to the public***."

*Apple Sec. Litig.*, 2023 WL 4556765, at *5 (emphasis added, ellipses in original) (quoting *In re Stratosphere Corp. Sec. Litig.*, 66 F. Supp. 2d 1182, 1188 (D. Nev. 1999)).  Dr. Lehn's selection of, and selective quotations from, analyst reports is strikingly similar to the situation in *Apple*.  His opinions based thereon should be excluded for the same reasons.[9]

## II.    Dr. Lehn's Inferences-Only Approach Is Groundless and Contrary to the Law

It is commonplace for the defense to claim that a plaintiff's damages and loss causation expert failed to account for the market impact caused by disclosures or events that were not part of the alleged fraud.  For example, in Dr. Lehn's most recent publicly available report, in which he made a disaggregation argument, he opined on plaintiffs' assertion that the company's stock price

---

[8] *See also* https://www.bloomberg.com/news/videos/2022-06-21/tesla-ceo-musk-at-qatar-economic-forum-full-interview, at 0:30-2:50.

[9] This case is not the first time that Dr. Lehn has attempted to opine on what the market "knew"; he previously has been precluded from offering a similar type of opinion under much more innocuous circumstances.  *See* Ex. 7 (precluding Dr. Lehn from testifying at trial regarding "what investors would understand" from reading certain SEC filings in *SEC v. Perry*, No. 2:11-cv-01309-R-JC (C.D. Cal. July 12, 2012)).

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

declined in response to a recent investor presentation by the Company's "Rice" team. Ex. 4, at 18, ¶ 29. Dr. Lehn wrote that he "identified twelve analyst reports issued by nine firms … Only one report even mentions the 6/17/19 Rice Presentation and it did not even discuss the allegedly corrective information." *Id.* Dr. Lehn's report in that case makes no mention of inferences. Decl., ¶ 7. Similarly, in what appears to be his next-most recent report containing a failure-to-disaggregate argument, Dr. Lehn criticized plaintiff's expert for not parsing the market's reaction to allegedly false statements about the integration of a newly-acquired Cordis subsidiary, on the one hand, from the market's reaction to ***non-fraud*** developments, including increased revenues and operating profit, and the integration of teams other than Cordis, on the other hand. Ex. 5, p. 77 (Dr. Lehn: "Analyst commentary on these disclosures focused on the information that was ***distinct from the alleged misrepresentation***.") (emphasis added). There is no mention of inferences in this report by Dr. Lehn either. Decl., ¶ 8.

Disaggregation arguments surrounding the market's reaction to information ***distinct from*** alleged misrepresentations, such as the arguments Dr. Lehn made in the cases referenced above, are routinely handled (and often rejected) by the courts. *See, e.g., Menorah Mivtachim Ins. Ltd. v. Sheehan*, 2024 WL 1613907, at *2  (2d Cir. Apr. 15, 2024) (expert challenged for failing to "disaggregate the losses caused by Mylan's alleged agreements to allocate markets and fix prices of specific generic drugs from losses caused by negative news relating to Mylan, generic drugs, and antitrust generally"); *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 726-29 (11th Cir. 2012) (expert challenged for failing to parse out effects of "the poor credit quality of BankAtlantic's commercial real estate portfolio," as alleged in complaint, from "the effects of the collapse of the Florida real estate market"); *In re Tesla, Inc. Sec. Litig.*, 2022 WL 7374936, at *12 (N.D. Cal. Oct. 13, 2022) (expert unsuccessfully challenged for failing to disaggregate impact of Musk's false statement that funding to take Tesla private was "secured" from impact of Musk's true statement that he was "considering taking Tesla private at $420"); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1274 (S.D. Cal. 2010) (expert challenged for failing to disaggregate the impact of false statements about goodwill, inflated revenues, and internal control failures from impact of other

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

information, including lower gross margins and diminished liquidity); *In re Sci. Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379 (N.D. Ga. 2010) (expert challenged for failing to separate market reaction to allegedly false statements about inventory levels from "the adverse effect of the economy and other industry-wide factors").

The foregoing cases, however, involved legally grounded arguments that stand a world apart from Dr. Lehn's baseless approach here. As discussed above, instead of arguing that the market reacted to news or events other than Musk's statement, Dr. Lehn argues that Musk's actual misstatements should be ignored, that the only proper focus is on *inferences* that Lehn simply made up himself, and that based on a few cherry-picked analyst reports selected with no scientific sampling method, the market purportedly reacted to inferences and subtexts that are supposedly evident in the single May 13th tweet analyzed in Lehn's report.[10] It bears emphasis that these claimed inferences would not exist without the false statements in the May 13 tweet. Plaintiffs have been unable to identify any cases brought under the federal securities laws that address (much less approve of) an "inferences-only" disaggregation approach similar to Dr. Lehn's. What's more, the two prior expert reports by Dr. Lehn described above are not exceptions—none of Dr. Lehn's publicly-available expert reports in shareholder class actions over the past decade attempt to tease out "inferences" from analyst reports and claim that plaintiffs' expert should have accounted for those inferences instead of the actual underlying false statement(s). During his deposition, Dr. Lehn asserted that he had made similar arguments about inferences in the past, but could not identify any specific cases in which he had done so. *See* Ex. 2, 44:17–47:22.[11]

---

[10] This limitation leads to the inexplicable situation in which the Lehn Report characterizes an analyst that it quotes as stating "Musk has placed the deal on hold…" as *not* supporting a conclusion that the May 13 tweet misled the market about the deal being on hold. *See* Lehn Report, ¶ 66. This is emblematic of why Dr. Lehn's cherry-picking of analyst reports differs from what other experts do when they use analyst reports properly—Dr. Lehn does not feel the need to compare the details of analyst reports to the question of what was actually stated in the alleged misrepresentations. Instead, he makes up the inferences that he wants to examine, and then, unsurprisingly, finds analyst reports that purport to match the inferences that he decided to look for.

[11] This is not the first time that Defendants have attempted to ignore the actual language of the May 13 tweet in favor of some unsupported inference. *See, e.g.,* ECF 106 (order granting class certification and rejecting Musk's argument that "decrease in value is due to the 'uncertainty' created by his statement" as "a distinction without a difference").

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

In addition to the lack of reliability or precedent, admitting Dr. Lehn's inferences-only opinion would tempt defendants in securities fraud cases to engage in endless mischief. Experts and counsel could dream up inferences that can be drawn from even the most straightforward misstatement and blame plaintiff's expert for not disaggregating them. Ignoring a defendant's actual statement has no grounding in Rule 10b-5(b), which makes it unlawful to "make any untrue *statement* of a material fact." *See*, *e.g.*, *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 474 n.2 (9th Cir. 2015) (the first element of "a private action under Rule 10b-5" is "a material *misrepresentation* or omission by the defendant") (quoting *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 140 n.3 (2011)) (emphasis added); *United States v. Langford*, 946 F.2d 798, 803 (11th Cir. 1991) ("allowable unit[s] of prosecution under section 78j(b) [*i.e.*, Section 10(b) of the 1934 Act]" include "any false *statement* of material fact") (emphasis added). Straying from the law would doom meritorious securities fraud cases, and saddle courts with the burden of digging through analyst reports to separate sophistry, subtext, and supposed inferences (like those featured in Dr. Lehn's report) from legitimate disaggregation analyses.

## III. Dr. Lehn's Inferences-Only Approach Is Irrelevant Because It Ignores Plaintiffs' Falsity Allegations

Dr. Lehn's next error is equally fatal. He opines that the market did not make inferences consistent with Plaintiffs' allegations about why Musk's May 13 tweet was false, but his analysis ignores Plaintiffs' falsity allegations. Dr. Lehn's opinion on this topic is therefore unhelpful, irrelevant, and poses a grave risk of confusing the jury. *See Daubert II*, 43 F.3d at 1315 (expert's testimony must "logically advance[] a material aspect of the proposing party's case" to qualify as relevant).

Dr. Lehn asserts that Dr. Tabak has "no reliable basis to attribute any, let alone all, of the residual decline in Twitter's stock price on May 13, 2022 and May 16, 2022 to the alleged misrepresentation" in Musk's May 13 tweet. Lehn Report, ¶ 80. This assertion is based on Dr. Lehn's dubious (*see supra*) conclusion that the market did not care about the two concepts that, in Dr. Lehn's view, allegedly made the tweet false (*i.e.*, the market did not infer that "Mr. Musk has a

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

right to information on bots under the Merger Agreement," or "that Mr. Musk instructed his team to stop work on the deal"). Lehn Report, at 19-20 (capitalization adjusted). At bottom, this is simply a surreptitious attempt to move the goalposts—***Plaintiffs do not allege that the May 13 tweet was false for only these two reasons.***

Instead, Plaintiffs allege that the May 13 tweet was false because, *inter alia*: (1) "the Merger was not on hold;" (2) "Twitter had not agreed to any deferral of the Buyout;" (3) "nothing in the merger agreement allowed Musk to put the Buyout on hold;" (4) Musk "had already agreed to buy Twitter without conducting due diligence;" (5) Musk "agreed to a 'seller friendly' merger agreement that did not make any due diligence a condition of the Merger;" (6) the tweet "constituted an effort to depress the price of Twitter shares since he already knew all about the fake accounts;" and (7) the tweet falsely "stated or implied that Musk's obligation to consummate the Buyout was conditioned on his satisfaction with due diligence to determine whether 'spam/fake accounts do indeed represent less than 5% of users.'" FAC ¶¶ 4, 29.

But Dr. Lehn's report addresses only one of these bases for falsity[12]—whether the market reacted to its supposed perception of Musk's rights to information under the Merger Agreement. *See* Lehn Report, at 19. Indeed, Dr. Lehn admitted that he did not analyze whether the market reacted to any of the six additional ways (at least) in which Plaintiffs allege that Musk's May 13 tweet was false. Dr. Lehn therefore has no legitimate basis to opine on whether Plaintiffs could "attribute any, let alone all, of the residual decline in Twitter's stock price on May 13, 2022 and May 16, 2022 to the alleged misrepresentation." Lehn Report, ¶ 80. The Court should not permit Dr. Lehn to address just one of many aspects of the May 13 tweet's falsity and make such a sweeping conclusion. This would confuse the jury, is not based on any articulable methodology, lacks relevance to Plaintiffs' allegations, and should be excluded. *See Daubert II*, 43 F.3d at 1315; *Apple Sec. Litig.*, 2023 WL 4556765, at *9 (excluding portion of expert opinion because it depended on an inaccurate "description of plaintiff's theory. Accordingly, the opinion offers no helpful guidance and is likely

---

[12] Lehn also posits that the market did not infer that Musk instructed his team to stop work on the deal, but Plaintiffs do not assert that this is ***why the statement is false***, but rather averred in response to a defense interrogatory that the lack of such an instruction is ***evidence of falsity***.

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

to confuse the jury"); *see also Engilis v. Monsanto Co.*, 2025 WL 2315898, at *7 (9th Cir. Aug. 12, 2025) (district court properly excluded opinion based on insufficient facts and data).

## IV.    Dr. Lehn Purports to Opine on Falsity, an Issue Reserved for the Jury or the Court

Based on his answers during deposition, ***Dr. Lehn clearly intends to testify that Musk's May 13 tweet was not false***.  In response to questions about whether Musk's tweet disrupted the market, Dr. Lehn offered the following testimony:

> I mean, ***true statements in an efficient market will cause prices to reflect more information***, which enhances the integrity of the prices. And from everything I've seen here, ***that's what was going on with the May 13th tweet***, when you look at the analyst commentary. It wasn't – ***there's no evidence, based on the analyst commentary, that the analysts were somehow fooled by the alleged misrepresentation.*** The very strong theme that comes from a review of the analyst commentary is that the market was reacting to concerns about apprehensions Mr. Musk was developing about proceeding with the deal at $54.20. And, again, I don't view that as disruptive. ***I view that as conveyed information to the market that, if anything, enhances the integrity of the price.***

Ex. 2, 24:10–25:6 (emphasis added); *see also id.* at 24:4–8 ("So, you know, ***I wouldn't want to leave any impression that there was something nefarious about tweeting something*** that the market inferred -- ***from which the market inferred a truthful state of affairs***.") (emphasis added).

As an expert, Lehn is not permitted to testify as to the falsity of the alleged misrepresentations.  Admitting such testimony would permit Dr. Lehn to invade the province of the jury and/or the Court.  "In general, an expert may only testify as to scientific, technical, or other specialized knowledge that will assist the trier of fact to understand the evidence or determine a fact in issue and may not testify as to legal conclusions."  *Brown v. Google, LLC*, 2022 WL 17961497, at *12 (N.D. Cal. Dec. 12, 2022) (citations, internal quotations omitted); *see also McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999).  Expert opinion is not permitted on issues that are the sole purview of the trier of fact—such opinions must be excluded.  *See Sterling Sav. Bank v. Poulsen*, 2013 WL 3945989, at *9 (N.D. Cal. July 29, 2013) ("trial court properly excluded the testimony because it did not concern a proper subject for expert testimony" where the subject was within the purview "of the trier of fact") (*quoting Beech Aircraft Corp. v. U.S.*, 51 F.3d 834, 842 (9th Cir. 1995)); *see also, e.g., Nash-Perry v. City of Bakersfield*, 2022 WL 3357516, at *13 (E.D.

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

Cal. Aug. 15, 2022) ("resolving factual matters is not within the purview of an expert but [is] instead the precise role assigned to the jury").

Falsity is just such a question of fact, traditionally reserved for determination by a jury. *S.E.C. v. Todd*, 642 F.3d 1207, 1220 (9th Cir. 2011) ("Generally, whether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact.") (internal citations and quotations omitted).

Because the entire point of Dr. Lehn's analyst-report opinions is to suggest to the jury that Musk's May 13 tweet was not false or misleading, those opinions should be excluded.

**V. The Specific Portions of Dr. Lehn's Opinions That Should Be Excluded Based on the Arguments Herein**

Dr. Lehn's errors surrounding his review of analyst reports impact the following portions of his expert rebuttal report and opinions, each of which should be excluded pursuant to the arguments set forth herein:

- Section III.A (pp. 18–27).
- Section III.B.ii.a (pp. 29–31).
- The portion of paragraph 82 that reads: "He assumes, with no analysis, that this entire increase in the Merger Discount was caused by the alleged misrepresentation."
- Paragraph 83.
- Paragraphs 88-97.
- Paragraph 100.
- Paragraphs 104-110.
- Paragraphs 113-114.

**CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court exclude the portions of Dr. Lehn's report and opinions described above.

Dated: August 15, 2025                    Respectfully submitted,

                                          **COTCHETT, PITRE & MCCARTHY, LLP**
                                          Joseph W. Cotchett (SBN 36324)
                                          Mark C. Molumphy (SBN 168009)

Case No. 22-cv-5937-CRB

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

Tyson C. Redenbarger (SBN 294424)
Elle D. Lewis (SBN 238329)
Gia Jung (SBN 340160)
Caroline A. Yuen (SBN 354388)

*/s/ Tyson C. Redenbarger*
      Tyson C. Redenbarger

San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Aaron P. Arnzen (SBN 218272)

*/s/ Aaron P. Arnzen*
      Aaron P. Arnzen

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

Case No. 22-cv-5937-CRB

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Aaron P. Arnzen, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of August 2025, at La Jolla, California.


                                        */s/ Aaron P. Arnzen*
                                        Aaron P. Arnzen

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF
OPINION OF KENNETH M. LEHN