# EXHIBIT 4

# EXHIBIT 4

**United States District Court**
**Western District of Pennsylvania**

|  |  |
|---|---|
| *In re EQT Securities Litigation* | Master File No. 2:19-cv-00754-RJC |

**EXPERT REPORT OF KENNETH M. LEHN**

June 11, 2021

27.     I found that the regression model in which the returns on a value-weighted index of EQT's peers as identified in its 2017, 2018, and 2019 10-K filings (the intersection of peers identified), along with the Henry Hub natural gas price returns, served as the explanatory variables had the highest adjusted R-squared and, thus, the highest explanatory power. My event study analysis using this regression model yields statistical results that are very similar to those found by Professor Feinstein. Specifically, I find that the *t*-statistics associated with the residual returns on these dates are -1.06 and -0.15, respectively, again well below the threshold for statistical significance. *See* **Exhibit 1**. Furthermore, I replicated the event study analysis in which I used each of the other 478 combinations of market indices, industry indices, and Henry Hub prices in the regression model. *None* of the other 478 event study analyses find statistically significant residual returns on either February 5, 2019 or June 18, 2019.

28.     Thus, the 480 event study analyses (Professor Feinstein's single analysis and the 479 analyses that I conducted) all strongly suggest that the alleged corrective disclosures on

---

NYSE/AMEX Equal-Weighted Return, (viii) the CRSP NYSE Value-Weighted Return, and (ix) the CRSP NYSE Equal-Weighted Return.  The industry indices that I considered are (i) the S&P Oil & Gas Exploration and Production Select Industry Index Excluding EQT, (ii) the S&P Supercomposite Oil & Gas Exploration & Production Sub Industry GICS 4 Index Excluding EQT, (iii) the S&P Supercomposite Energy Sector GICS Level 1 Index Excluding EQT, (iv) the Dow Jones US Oil & Gas Producers Index Excluding EQT, (v) the S&P 400 Energy Sector GICS Level 1 Index Excluding EQT, (vi) the Dow Jones Select Oil Exploration & Production Index Excluding EQT, (vii) value- and equal-weighted indices of EQT's peers as identified in its 2017, 2018 or 2019 10-Ks (the superset of peers identified), (viii) value- and equal-weighted indices of EQT's peers as identified in its 2017, 2018 and 2019 10-Ks (the intersection of peers identified), (ix) value- and equal-weighted indices of EQT's peers as identified in its 2018 or 2019 10-Ks (the superset of peers identified), (x) value- and equal-weighted indices of EQT's peers as identified in its 2018 and 2019 10-Ks (the intersection of peers identified), (xi) value- and equal-weighted indices of EQT's peers as identified in its 2019 10-K, and (xii) various value- and equal-weighted indices based on the frequency with which other firms were compared to EQT by equity analysts who released reports on the Company from January 1, 2019 through June 30, 2019.

February 5, 2019 and June 17, 2019 did not have an impact on EQT's stock price. Accordingly, one can conclude with a very high degree of confidence that the two disclosures did not have an impact on EQT's stock price.

29.     Plaintiffs also claim that EQT's stock price declined on June 19, 2019 as "the market continued to digest the new information disclosed in the Rice Team's [June 17, 2019] investor presentation."[62] However, for several reasons, this claim is baseless:

- The allegedly corrective information was disclosed at 5:19 p.m. ET on June 17, 2019[63] and, as explained *supra* ¶ 24, purportedly new information should be rapidly reflected in stock prices if the market for a stock is efficient, as Professor Feinstein claims it is in this matter. Furthermore, also as explained *supra* ¶ 24, the largest portion of the price response would have occurred shortly after trading began following the disclosure. However, the residual return on June 18, 2019 is not statistically significant;

- The 6/17/19 Rice Presentation was publicized before the market opened on June 18, 2019. Hence, there is no reason to believe investors were not aware of the presentation early in the day on June 18, 2019;[64]

- Analyst commentary is inconsistent with the claim. I identified twelve analyst reports issued by nine firms on June 17, 2019 or June 18, 2019. Only one report even mentions the 6/17/19 Rice Presentation and it did not even discuss the allegedly corrective information.[65] I am not aware of any analyst report about EQT that was issued on June 19, 2019;

---

62.   Complaint, ¶ 387.
63.   EQT Corporation Schedule 14A, filed June 17, 2019 (5:19 p.m. ET).
64.   *See*, e.g., "Press Release:  Rice Team Delivers Highly Comprehensive Investor Presentation to EQT Shareholders, Outlining Detailed Plan to Realize EQT's Potential," *Dow Jones Newswires*, June 18, 2019 (6:00 a.m. ET) & "EQT Issues Statement," *Business Wire*, June 18, 2019 (8:20 a.m. ET).  The latter article is the Company's general response to the 6/17/19 Rice Presentation, and the Defendants did not publicly reverse their position on June 19, 2019.
65.   *Compare* Complaint ¶ 21 *with* "EQT - Rice Team Response Along with a Prompt EQT Follow-Up," RBC, June 18, 2019 ("The Rice Team responded to EQT Corporation's (EQT) operational and financial update from yesterday. The Rice response highlighted that while there is progress, operational and stock performance was below peers and that the past track record of the current team was sub-par. Rice also points out that at current strip prices the $3 billion of FCF is not achievable (EQT notes this is based at a $2.75/Mcf HH deck), 2Q19 FCF generation will be

- Although EQT pre-announced financial results for the second quarter of 2019 after the market closed on June 17, 2019, CapitalIQ reports that the median consensus analyst target price and earnings forecast for 2019 and 2020 did not increase between June 17, 2019 and June 19, 2019. *See* **Exhibit 2**. This indicates that the pre-announcement was not positive information that offset the allegedly negative news in the 6/17/19 Rice Presentation;

- Because substantially similar allegedly corrective information was disclosed in the 2/5/19 Rice Presentation,[66] and there is no reliable basis to conclude that the information had an impact on the Company's stock price on February 5, 2019, there is no reason to believe that repetition of this information on June 17, 2019 would have an impact on EQT's stock price on June 18, 2019, let alone on June 19, 2019;[67] and

- The claimed failure of the market to fully respond to new, purportedly value-relevant information until almost 48 hours after it was disseminated would leave a substantial but unexploited arbitrage opportunity, which is the opposite of what one would expect in an efficient market, especially for a stock that Professor Feinstein reports was held by hundreds of "major institutions"[68] that had the economic incentive and wherewithal to quickly find and trade on any new and

---

negative (EQT's guidance for 2Q19 and 3Q19 was a negative $50-100 million due to seasonal pricing), and 2019 spending reduction of $25 million is being touted on a $2 billion budget (EQT formal budget at $1.85-1.95 billion) only after being challenged and in front of the shareholder vote. The Rice Team has a comprehensive presentation discussing its plan to lower well costs and generating $500 million of incremental FCF and discusses the benefits of its leadership ….").

66. *Compare*, e.g., Complaint ¶ 19 (stating "The Rice Team's February 2019 presentation also emphasized that EQT had been understating its well costs, disclosed that EQT had '*erroneously adjusted*' its well costs 'downwards' in an attempt to 'normalize costs,' and stated that 'EQT costs could be $125-$250/ft higher when including capitalized costs, pad and facilities, etc." (emphasis in original)) *with* ¶ 21 (noting that the 6/17/19 Rice Presentation disclosed that "EQT was excluding more than $300 million in costs it capitalized from its well costs.").

67. I note that the repetition of previously disclosed information would not be expected to impact the price of a stock that traded in an efficient market.

68. Feinstein Market Efficiency Report ¶ 121.