# EXHIBIT 5

# EXHIBIT 5

CONFIDENTIAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **LOUISIANA SHERIFFS' PENSION & RELIEF FUND**, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>    **v.**<br><br>**CARDINAL HEALTH, INC.**, et al.,<br><br>Defendants. | Case No. 2:19-cv-3347<br><br>Judge Edmund A. Sargus<br><br>Magistrate Judge Elizabeth A. Preston Deavers |

**EXPERT REBUTTAL REPORT OF KENNETH M. LEHN**

**June 3, 2022**

to Cardinal Health's consolidated operations, the length of the proposed Class Period, and the large volume of company-specific information unrelated to Plaintiff's claims released during the course of the proposed Class Period.

76. Plaintiff alleges that there are 37 dates[171] on which Cardinal Health made false and misleading statements, which could have created artificial inflation that entered Cardinal Health's stock price during the proposed Class Period. As explained in Section IV.A., there were only five statistically significant positive dates that potentially could be viewed as causing artificial inflation and on all five of those dates the alleged misrepresentations included information that was stale. In addition, on the same dates, Cardinal Health disclosed multiple pieces of information that were distinct from the news about Cordis.[172] As an example, I discuss below the information, including the confounding information, disclosed by Cardinal Health on August 2, 2016, one of the five dates on which there was a statistically significant residual increase in Cardinal Health's stock price.[173]

77. On August 2, 2016, Plaintiff claims that "Barrett praised the Cordis team, telling investors that 'Don Casey and his team did a tremendous job closing the Cordis acquisition on

---

[171] *Supra* n. 61.

[172] Professor Feinstein acknowledged in his testimony that confounding information was released on the alleged misrepresentation dates. *See* Feinstein Dep. Tr. 132:23-133:11 ("I haven't evaluated whether … there was any material confounding information … I mean, the initial misrepresentations and omissions and then the subsequent ones, yeah, they were most likely accompanied at some points in time by information that was not about the Cordis acquisition or integration. I think it's pretty clear that if we look at every one of the alleged misrepresentations and omissions, at least some of them would have been accompanied by other information announced on the same day.").

[173] Professor Feinstein testified that it would be reasonable to expect confounding information on earnings announcement dates. *See* Feinstein Dep. Tr. 127:4-11. Four of the five alleged misstatement dates (August 2, 2016, October 31, 2016, February 7, 2017, and February 8, 2018) with a statistically significant residual increase in Cardinal Health's stock were on earnings announcement dates. On the fifth date (January 8, 2018), Cardinal Health spoke at a conference. During that time, the Company disclosed multiple pieces of information, including positive news due to the change in tax laws. Following this disclosure, some analysts increased their EPS target as a result of this information. *See, e.g.*, "Adjusting Estimates for Revised Tax Rate," *William Blair*, January 11, 2018, at 1 (WB000240).

47

time and managing the integration into Cardinal Health … and we hit our integration and performance benchmarks.' Kaufmann also raved about the progress of the integration, stating, 'First of all, I just want to make sure, we feel really excited about Cordis. We think things are going really well. We've got all of the key employees, management teams, sales folks in place, things are going incredibly well.'"[174] As discussed in Section IV.A, the allegedly misrepresented information on this date included stale information. On the same date, Cardinal Health also announced that (i) the pharmaceutical segment's "revenue was up 20% versus fiscal 2015" and its operating profit increased 19% to $2.5 billion; (ii) Cardinal also "successfully completed the integration of the Harvard Drug team, building on [its] first rate generics offering;" (iii) specialty solutions "delivered an outstanding fiscal 2016" where it "exceeded the $8 billion revenue target" and "successfully completed the integration of Metro Medical."[175] Analyst commentary on these disclosures focused on the information that was distinct from the alleged misrepresentation. For example, William Blair reported: "We maintain our Outperform rating on Cardinal given strong execution in the Pharma segment, an expectation that Red Oak's sourcing capabilities and further generic penetration can more than offset deflationary headwinds, and a reasonable valuation."[176]

78.     Of note, on the same date, Cardinal Health also reported a reduction in the expected FY17 accretion from the Cordis acquisition from greater than $0.20 per share to $0.15 per share. Plaintiff does not allege that this disclosure was corrective. There is no evidence that analysts reacted negatively to the disclosure, as the market would have expected that the

---

[174] Complaint, ¶ 54.

[175] "Q4 FY16 Cardinal Health, Inc. Earnings Conference Call," *Cardinal Health, Inc.*, August 2, 2016, at 3-4.

[176] "Post-Call Model Adjustments; Fiscal 2017 Below Expectations but Longer-Term Drivers Intact," *William Blair*, August 2, 2016, at 3 (WB000007).

integration of any acquisition involves risks. In fact, on this date, William Blair stated that the disclosure was "underscoring the complexity" of the integration process: "Cordis synergy goals, however, were cut to 15 cents in accretion from 20 cents, underscoring the complexity of this integration process (standing up from J&J across multiple countries where Cardinal has not typically operated in the past)."[177]

79.     The remaining 32 dates on which Plaintiff claims Cardinal Health made false and misleading statements also contained confounding information. For example, 13 dates were either earnings announcements dates or dates when Cardinal Health filed its Forms 10-Q and 10-K, which included disclosure of information unrelated to Cordis. Then, on an additional 15 dates, Cardinal Health held or participated in investor conferences. *See* **Exhibit 2.** Thus, on these dates, one would expect that Cardinal Health would have disclosed multiple pieces of information, including information unrelated to Cordis.[178] For example, on May 1, 2017 Cardinal Health announced 3Q 2017 earnings. During the earnings call, Barrett stated that "specialty solutions group continues to grow at a good clip, well into the double digits;" that he is "excited about the acquisition of Medtronic's Patient Recovery business;" that "performance in most of our lines of business is strong;" and that "naviHealth and post-acute activities are extremely attractive to a market going through significant changes, and are also growing at a pace faster than we had originally modeled."[179] In another example, on June 17, 2016, Cardinal Health held

---

[177] "Post-Call Model Adjustments; Fiscal 2017 Below Expectations but Longer-Term Drivers Intact," *William Blair*, August 2, 2016, at 2 (WB000007) ("Cordis synergy goals, however, were cut to 15 cents in accretion from 20 cents, underscoring the complexity of this integration process (standing up from J&J across multiple countries where Cardinal has not typically operated in the past).").

[178] Consistent with this, Professor Feinstein testified that it is reasonable that there would be confounding information on earnings announcement dates. *See* Feinstein Dep. Tr. 127:4-11.

[179] "Q3 FY17 Cardinal Health, Inc. Earnings Conference Call," *Cardinal Health, Inc.*, May 1, 2017, at 2-3.