QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice* )
alexspiro@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
Jessebernstein@quinnemanuel.com
Jonathan E. Feder (*pro hac vice*)
jonathanfeder@quinnemanuel.com
Stephanie Kelemen (*pro hac vice*)
stephaniekelemen@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

*Attorneys for Defendant Elon Musk*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>          Plaintiff,<br><br>     vs.<br><br>ELON R. MUSK,<br><br>          Defendant. | Case No. 3:22-CV-005937-CRB<br><br>**DEFENDANT ELON MUSK'S MOTION TO EXCLUDE THE OPINIONS OF EMILY STRAUSS**<br><br>Judge:  Hon. Charles R. Breyer<br><br>Magistrate Judge:  Hon. Donna M. Ryu<br><br>Hearing Date:    October 31, 2025<br>Time:              10:00 a.m.<br>Courtroom:      6, 17th Floor |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3)) ........................................1

INTRODUCTION ..............................................................................................................................1

FACTUAL BACKGROUND .............................................................................................................2

    A.    Professor Strauss Offers A "Securities 101" Lecture Unconnected To The Facts Of The Case ...................................................................................................2

    B.    At Plaintiffs' Instruction, Professor Strauss Includes Facts Unrelated To Her Opinions And Opinions Unrelated To The Action ..............................................4

ARGUMENT ......................................................................................................................................5

I.    THE COURT SHOULD EXCLUDE PORTIONS OF PROFESSOR STRAUSS'S REPORT AS IMPROPER LEGAL CONCLUSIONS ..............................................5

II.    THE COURT SHOULD EXCLUDE CERTAIN PORTIONS OF PROFESSOR STRAUSS'S REPORT–INCLUDED ONLY AT PLAINTIFFS' BEHEST—AS IRRELEVANT, MISLEADING, AND CONFUSING TO THE JURY .........................7

    A.    Professor Strauss's Section 13D Opinion Is Irrelevant, Misleading, and Prejudicial ........................................................................................................7

    B.    Professor Strauss's Opinions Regarding Stock Price Ownership And Movement Lack Foundation, Require No Expertise, and May Confuse The Jury ...........................9

III.    THE COURT SHOULD EXCLUDE PROFESSOR STRAUSS'S ENTIRE SECURITIES 101 LECTURE BECAUSE IT IS IRRELEVANT AND UNHELPFUL ....................................11

CONCLUSION .................................................................................................................................13

Case No. 3:22-cv-005937-CRB

DEFENDANT ELON MUSK'S MOTION TO EXCLUDE THE OPINIONS OF EMILY STRAUSS

# TABLE OF AUTHORITIES

**Page**

## Cases

*ADT Sec. Servs. v. Sec. One Int'l, Inc.*,
2013 WL 10542929 (N.D. Cal. Sept. 15, 2013) ...................................................................8

*Baker v. SeaWorld Ent., Inc.*,
423 F. Supp. 3d 878 (S.D. Cal. 2019)...............................................................................10

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).............................................................................................................11

*In re Diamond Foods, Inc., Sec. Litig.*,
295 F.R.D. 240 (N.D. Cal. 2013)........................................................................................10

*Focal Point Films, LLC v. Sandhu*,
2020 WL 5760355 (N.D. Cal. Sept. 28, 2020) ....................................................................5

*Fujifilm Corp. v. Motorola Mobility LLC*,
2015 WL 757575 (N.D. Cal. Feb. 20, 2015) ......................................................................11

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ...............................................................................................5

*Highland Capital Mgmt., L.P. v. Schneider*,
379 F.Supp. 2d 461 (S.D.N.Y. 2005)..................................................................................11

*Jones v. Williams*,
297 F.3d 930 (9th Cir. 2002 ) ...............................................................................................7

*Maddox v. Los Angeles*,
792 F.2d 1408 (9th Cir. 1986) ..............................................................................................7

*Mata v. Or. Health Auth.*,
739 F. App'x 370 (9th Cir. 2018) ...........................................................................10, 11, 12

*Messick v. Novartis Pharmaceuticals Corp.*,
747 F.3d 1193 (9th Cir. 2014) ............................................................................................12

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008) ..........................................................................................5, 6

*Peck v. Cnty. of Orange*,
2023 WL 11195794 (C.D. Cal. May 22, 2023) ..................................................................12

*Persian Gulf Inc. v. BP W. Coast Prods. LLC*,
632 F. Supp. 3d 1108 (S.D. Cal. 2022)..........................................................................12, 13

DEFENDANT ELON MUSK'S MOTION TO EXCLUDE THE OPINIONS OF EMILY STRAUSS

*Rasella v. Musk*,
  No. 1:22-cv-03026 (S.D.N.Y. filed April 12, 2022)..............................................................8

*SA Music LLC v. Apple, Inc.*,
  592 F. Supp. 3d 869 (N.D. Cal. 2022) ..............................................................................11

*Sec. & Exch. Comm'n v. Jensen*,
  2013 WL 12129377 (C.D. Cal. Mar. 13, 2013).................................................................10

*SEC v. Musk*,
  No. 1:25-cv-00105 (D.D.C. filed Jan. 14, 2025) ...............................................................8

*Suprock v. Quantum Energy, Inc.*,
  676 F. Supp. 3d 891 (D. Nev. 2023) .................................................................................12

*U.S. v. Blackstone*,
  56 F.3d 1143 (9th Cir. 1995) ..............................................................................................9

*United States v. Finley*,
  301 F.3d 1000 (9th Cir. 2002) ..........................................................................................10

*Valladon v. City of Oakland*,
  2009 WL 890449 (N.D. Cal. Apr. 1, 2009) ........................................................................6

*Mata v. Or. Health Auth.*,
  739 F. App'x 370 (9th Cir. 2018) .......................................................................................9

*Waymo LLC v. Uber Techs., Inc.*,
  2017 WL 5148390 (N.D. Cal. Nov. 6, 2017) ................................................................9, 11

**Statutes / Rules**

Fed. R. Civ. P. 5..................................................................................................................14

Fed. R. Evid. 403 ........................................................................................................1, 7, 11

Fed. R. Evid. 404 .................................................................................................................8

Fed. R. Evid. 702 ...........................................................................................................1, 11

DEFENDANT ELON MUSK'S MOTION TO EXCLUDE THE OPINIONS OF EMILY STRAUSS

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 31, 2025 at 10:00 a.m., before The Honorable Charles R. Breyer, United States District Court, San Francisco Courthouse, Courtroom 6, 17th Floor, at 450 Golden Gate Avenue, San Francisco, California, Defendant Elon R. Musk ("Defendant" or "Mr. Musk") will move for an order entering judgment on an order excluding the opinion of Emily Strauss, Plaintiffs' securities expert, as unhelpful, irrelevant, confusing, prejudicial, and containing improper legal conclusions under Fed. R. Evid. 403 and 702. This Motion is based on this Notice of Motion and Motion; Defendant's Memorandum of Points and Authorities, incorporated herein; the Declaration of Alex Bergjans ("Bergjans Decl.") and accompanying exhibits ("Ex."); and other matters before the Court.

**STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(a)(3))**

Whether Plaintiffs have met their burden of proof demonstrating that Professor Strauss's opinions on the securities laws and stock market are sufficiently relevant and helpful to the jury, but not prejudicial, to be admissible under Federal Rules of Evidence 403 and 702.

**INTRODUCTION**

Plaintiffs' proffered securities expert, Emily Strauss, offers a report that reads like a syllabus for a beginner's securities law course, not an expert analysis tailored to this case. Her "Securities 101" lecture—admittedly a regurgitation of textbook basics—lacks any connection to the facts, claims, or parties here. This includes the teaching of basic concepts like "What is a Stock" and "What is a Public Company," as well as a brief history of the Great Depression. These topics can just as easily be learned from skimming Yahoo Finance or a history textbook and do not require any specialized knowledge to teach the jury. They are also unhelpful to the jury in this case.

But what lies beneath the surface of Professor Strauss's report is the real problem. Professor Strauss, a junior academic with little practical experience in securities law, purports to tell the jury what the law is, namely what the "Required Disclosures" are under the securities laws—a role reserved exclusively for the Court and its jury instructions, to the extent those disclosures are relevant to this case at all. Moreover, through Professor Strauss, Plaintiffs transparently attempt to backdoor both: (1) the improper propensity inference that Mr. Musk violated other securities laws that are not at issue here; and (2) the suggestion that certain actions and statements by Mr. Musk caused Twitter's stock price to move,

and harm Plaintiffs—which Professor Strauss is unqualified to do, and this Court has already held are not actionable. Under the *Daubert* standard and the Federal Rules of Evidence, this Court should exclude Professor Strauss's testimony as unhelpful, irrelevant, prejudicial and improperly instructive on the law.

## FACTUAL BACKGROUND

Plaintiffs proffer Emily Strauss, a UC Law San Francisco associate professor, as an expert on securities law. Professor Strauss will be offering no opinions relating to the evidence or facts of the case, Bergjans Decl. Ex. A (Strauss Dep.) at 74:24-25 ("I'm not giving any opinions as to the facts of this case."); 135:4-23 ("My report does not relate to the fact – does not offer any opinions about the facts of this case"), and does not intend for the jury to apply any of her opinions to render a verdict on any disputed issue at trial. *Id.* at 135:20-136:1 (Q. [Y]ou're not suggesting that the jury should apply any of the opinions or statements contained in your report to the facts of this case, correct? A. It's intended to be context.").

### A.    Professor Strauss Offers A "Securities 101" Lecture Unconnected To The Facts Of The Case

Instead, Professor Strauss—who has little practical experience with securities law[1]—intends to "sort of teach the jury a Securities 101 class." Strauss Dep. at 15:9-17. In her proposed "Securities 101" lecture, Professor Strauss intends to educate the jury about basic concepts like "What is a Stock?";"What is a Public Company?"; "What is the Stock Market"?; "What is an Option?"; and "What is a Board of Directors?" Bergjans Decl. Ex. B (Strauss Rp't) at 4, 5, 8, 9.

Among other topics, she intends to provide a breakdown of public stock ownership (i.e., what percent of stock is owned by households versus mutual funds), but does not know the definition of some of the categories her report identifies. Strauss Dep. at 38:5-9. She will not provide a similar breakdown of ownership in Twitter stock. *Id.* at 39:20-23. Professor Strauss also plans to enlighten the jury by explaining that "[s]tock prices in public companies generally fluctuate throughout the day" and that stock

---

[1]  Prior to becoming a professor, Professor Strauss worked as a junior litigation associate at Sullivan & Cromwell for about a year-and-a-half where, in or around 2015-16, she briefly worked on securities cases relating to the 2008 mortgage crisis, Strauss Dep. at 30:2-5, 31:5-9, and did not otherwise have any experience advising public companies on SEC disclosures or working on mergers or merger-related litigation. *Id.* at 32:3-21.

price tends to decline on negative news and elevate on positive news (Strauss Rp't at 6)—but has no expertise in and does not intend to offer any opinion on the cause of any given stock price movement. Strauss Dep. at 45:22-25.  She expects to testify about the Initial Public Offering process, although she understands that this case has nothing to do with IPOs.  *Id.* at 42:12-43:18.  She expects to offer opinions on how boards of directors typically manage public companies, but she is offering no opinion as to whether Twitter's board operated consistently with standard practice.  *Id.* at 68:1-69:13.

Professor Strauss also intends to explain federal securities law to the jury—including the historical background, what specific regulations require, and how they are enforced by the government and private actors.  Strauss Rp't at 10-20.  Professor Strauss's opinions include an overview of the 1929 stock market crash and the Great Depression summarized from a textbook.  Strauss Dep. at 76:6-12.  Professor Strauss describes bad acts and malfeasance that contributed to the crash, but she concedes that none of those examples are related to any of the events giving rise to this case.  *Id.* at 76:25-77:14.  In the following section to her Report, "Required Disclosures," Professor Strauss identifies and describes four reporting regulations: Rules 10-K, 10-Q, 8-K, and 13(d).  In her descriptions of those regulations, Professor Strauss describes their legal requirements including what information they must contain and when they are required to be filed.  Strauss Rp't at 16-18.  She admits that these descriptions offer conclusions about regulatory requirements and obligations under the securities laws.  Strauss Dep. at 103:11-20; 116:11-117:12.

The final section of Professor Strauss's Report is titled "Enforcing the Securities Laws."  In it, Professor Strauss first explains the creation and structure of the SEC and describes how it enforces securities laws through civil and criminal actions—using the Madoff prosecution as an example.  Strauss Rp't at 19-20.  But Professor Strauss admits that SEC enforcement has nothing to do with the facts of this case and that (unlike Madoff) Mr. Musk is not accused of any criminal misconduct.  Strauss Dep. at 127:14-128:5, 130:5-15. Next, Professor Strauss opines that the securities regime authorizes private rights of action under Section 10(b) and explains that federal courts have held that such a right exists—a statement she admits is simply a description of the law.  *Id.* at 134:9-135:3.  Professor Strauss admitted in deposition that some parts of her report are not related to the claims in this case or her own opinions, but

DEFENDANT ELON MUSK'S MOTION TO EXCLUDE THE OPINIONS OF EMILY STRAUSS

that she only included them because Plaintiffs' counsel asked her to. *Id.* at 55:6-10, 56:18-19, 59:7-13, 126:24-127:1.

**B.    At Plaintiffs' Instruction, Professor Strauss Includes Facts Unrelated To Her Opinions And Opinions Unrelated To The Action**

Beyond her proposed "lecture" opinions, Professor Strauss intends to provide additional inadmissible opinions.

*First*, Professor Strauss explains the legal requirements governing a Schedule 13D filing. Strauss Rp't at 18. She explains that "[a]ny person or group that acquires more than 5% of a company's voting securities must file a 13D within five business days of crossing that threshold." *Id.* But in deposition, Professor Strauss admitted that:

- The legal requirements for Section 13D that she identifies in her report were not operative at the time of the events giving rise to this case. Strauss Dep. at 118:9-119:5.

- She "understand[s]" that a Section 13D or any late-filed Schedule 13D is not "at issue here." *Id.* at 126:13-23.

- She is not offering any opinion in this case about whether any person was required to file a 13D at any point and is not seeking to apply this opinion to anything Mr. Musk did or did not do in this case. *Id.* at 119:6-13.

- She does not intend for the jury to apply any of her 13D opinions about what a 13D requirement is to the facts of this case. *Id* at 137:2-10.

- She agrees that if 13D would be at issue in this case, then she "understand[s] that the judge would – would instruct the – the jury" about the issue. *Id.* at 120:16-22.

- She only included a discussion on 13D because: (1) it is "something that [she] would say in the Securities 101 class, that's meant to provide general context about the securities regime"; and (2) Plaintiffs' counsel asked her to. *Id.* at 118:20-22, 126:24-127:1.

*Second*, in her report Professor Strauss purports to explain that stock prices fluctuate over "multimonth" periods. Strauss Rp't at 6. Professor Strauss includes two graphs, one depicting Twitter's stock price, and one depicting Tesla's stock price. *Id.* at 7. Both charts show Twitter and Tesla's stock prices from April through May 2022. *Id.* According to Professor Strauss, these two graphs were included with the "broader purpose" of having an "exemplar of – of the fluctuation of stock prices," which are "typically depicted in line-chart form." Strauss Dep. at 57:16-58:4. Professor Strauss testified that to make the same point, she could have used any stock, like Amazon or Microsoft. *Id.* at 58:6-8. But she

chose Tesla and Twitter because "[she] was asked by Plaintiffs' counsel to include th[os]e particular stocks." *Id.* at 55:6-10. She further used the dates of April through May 2022 because "[she] was asked by counsel to use those dates." *Id.* at 56:18-19. Professor Strauss does not intend to provide any opinions about the fluctuation or movement of Twitter or Tesla stock prices, or any correlation or connection between the two. *Id.* at 55:19-56:13.

Professor Strauss also included in Appendix C to her report four more graphs of Twitter's stock price during the days immediately before and after: (1) Mr. Musk filed a Schedule 13 disclosing his Twitter holdings, (2) the May 13 Tweet, (3) the July 8 Termination Letter, and (4) the October 4 announcement that Mr. Musk would close. Professor Strauss admitted that these graphs were not connected to any of the opinions she intended to offer at trial. *Id.* at 59:7-13. She is not offering any opinion why Twitter's stock price moved during the dates depicted in her charts. *Id.* at 60:11-22. At best, these charts are "just further exemplars of how stock prices move" over "a shorter period of time." *Id.* at 58:23-59:6. And the reason she included them was because Plaintiffs' counsel instructed her to. *Id.* at 59:7-13.

**ARGUMENT**

**I.    THE COURT SHOULD EXCLUDE PORTIONS OF PROFESSOR STRAUSS'S REPORT AS IMPROPER LEGAL CONCLUSIONS**

Professor Strauss is a law professor, and much of her testimony consists of her telling the jury what the law is. But that is the Court's job, not Professor Strauss's. Those portions of her opinion are inadmissible and should be stricken.

"[I]nstructing the jury as to the applicable law is the distinct and exclusive province of the court." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal citations and quotation marks omitted). Thus, "an expert witness may not explain the law to the jury or tell the jury how to apply the law to the facts of the case." *Focal Point Films, LLC v. Sandhu*, 2020 WL 5760355, at *6 (N.D. Cal. Sept. 28, 2020) (citing *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-59 (9th Cir. 2008)). The portions of Professor Strauss's "Securities 101" lecture that merely explain the legal standards and regulatory requirements of the securities laws usurp the Court's role to instruct the jury on the law and are inadmissible.

The Court should exclude the opinions reflected on pages 16-18 of Professor Strauss's Report, the section titled: "Required Disclosures." Strauss Rp't at 16-18. In this section, Professor Strauss recites the regulatory requirements of certain SEC filings, such as the Form 10-K, 10-Q, and 8-K. *Id.* This entire discussion simply states what "public companies are required to do." Strauss Dep. at 103:5-20. These requirements are, according to Professor Strauss, laid out by "[t]he statute and regulation." *Id.* at 103:21-104:5. So, in her own words, Professor Strauss plans to "tell[] the jury that public companies have various obligations" under the law. *Id.* at 102:1-15. But it is improper for *her* to "tell the jury" what the law is.

In addition, Professor Strauss purports to summarize the requirements governing the Schedule 13D filings. Strauss Rp't at 18. Again, as Professor Strauss conceded, this is just an explanation of what the law is. Strauss Dep. at 116:25-117:25. And this particular legal conclusion is even more objectionable because it does not accurately describe the state of the law in 2022, when the events giving rise to this case occurred. *Id.* at 118:8-119:5; *Nationwide Transp. Fin.*, 523 F.3d at 1058–59 (affirming exclusion of "legal conclusions [that] not only invaded the province of the trial judge, but constituted erroneous statements of law").

Finally, Professor Strauss explains that both the SEC and private parties can enforce the securities laws and she identifies the various claims and actions they can bring. Strauss Rp't at 19-20. That too is just a statement of the law, which Professor Strauss admits is not linked to any of the facts of this case. Strauss Dep. at 130:21-23. Professor Strauss also admits that her opinion regarding private rights of action under 10b-5 is "a representation of what courts hold with respect to rule 10b-5." *Id.* at 134:9-14; *see also id.* at 134:23-135:3. In other words, a bare legal conclusion.

These are not proper opinions; they are jury instructions narrated by Plaintiffs' expert. If the jury needs to know any of this information, the Court can instruct them on it. But Professor Strauss cannot usurp that role. *Valladon v. City of Oakland*, 2009 WL 890449 (N.D. Cal. Apr. 1, 2009) (excluding expert report because "an expert cannot assume the role of the court by instructing the jury as to the applicable law").

## II.   THE COURT SHOULD EXCLUDE CERTAIN PORTIONS OF PROFESSOR STRAUSS'S REPORT–INCLUDED ONLY AT PLAINTIFFS' BEHEST—AS IRRELEVANT, MISLEADING, AND CONFUSING TO THE JURY

Professor Strauss's Report includes a discussion of Section 13D, which she concedes is irrelevant, Strauss Dep. at 126:13-23, and graphs of Twitter and Tesla's stock prices that she admits are not necessary to illustrate her opinions and—in the case of the graphs buried in Appendix C—are unconnected to the content of her Report. *Id.* at 55:19-56:13, 58:6-8, 59:7-13, 60:11-22. Professor Strauss included both because Plaintiffs' counsel told her to. *Id.* at 55:6-10, 56:18-19, 59:7-13. The only apparent reason? To mislead and confuse the jury—ultimately prejudicing Defendant.

Rule 403 requires the Court to exclude evidence—including expert testimony—where its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues," and "misleading the jury." Fed. R. Evid. 403; *see also Maddox v. Los Angeles*, 792 F.2d 1408, 1417-18 (9th Cir. 1986) (affirming exclusion of expert opinion under Rule 403 because "[t]he jury might have given unfair or undue weight to this evidence or they might have been confused as to the relevance of this evidence"). Professor Strauss admits that the probative value of both portions is minimal. Strauss Dep. at 57:16-59:25. And the potential prejudice is substantial. The Court should exclude and strike these portions of Professor Strauss's Report.

### A.   Professor Strauss's Section 13D Opinion Is Irrelevant, Misleading, and Prejudicial

Professor Strauss admits that her 13D opinions are irrelevant to the case. Strauss Dep. at 126:13-23. She testified that she does not intend for the jury to use her opinions on 13D to decide any factual disputes in this case. *Id* at 137:2-10. She also agreed that any instruction regarding 13D that would be necessary in this case would come from the judge, not her. *Id.* at 120:16-22. And she admitted that they do not even accurately describe the state of the law in 2022. *Id.* at 118:9-119:5. They have no probative value.

On the other hand, their potential prejudice is manifest. Plaintiffs no doubt recognize that the Court is unlikely to instruct the jury on Section 13D because it is not a claim in this case. *See e.g., Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002 ) ("A party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence."); *see also id.* at 939 (rejecting plaintiff's proposed jury instructions where "[t]he evidence in th[a]t case did not indicate" the

proposed instructions were relevant).  Plaintiffs are plainly attempting to use Professor Strauss to backdoor an instruction in order to argue that Defendant untimely filed his Schedule 13D.  By focusing on Mr. Musk's allegedly untimely filing, Plaintiffs seek to accuse Defendant of violating another securities law to deflate and manipulate Twitter's stock price—the same theory undergirding their 10b-5 claim.  FAC ¶ 47 ("Despite the fact that Musk already owned 5% of Twitter's stock on or before March 26, 2022, Musk failed to file a Schedule 13D with the SEC, as he was required to do.").  Plaintiffs want the jury to infer that because Defendant violated securities laws in early April, he also violated them in May.  That is improper propensity evidence in violation of Rule 404; the Court should exclude it for that reason alone. *ADT Sec. Servs. v. Sec. One Int'l, Inc.*, 2013 WL 10542929, at *2 (N.D. Cal. Sept. 15, 2013) (granting motion to exclude expert testimony to the extent it was "being offered to show a propensity by Defendants to commit bad acts" (citing Fed. R. Evid. 404(b) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character"))).

Any evidence suggesting that Defendant violated 13D would not only prejudice him, it would confuse the jury and waste the Court's time.  Mr. Musk is not on trial in this case for untimely filing his 13D—that is the subject of other actions in other courts.  *See SEC v. Musk*, No. 1:25-cv-00105 (D.D.C. filed Jan. 14, 2025); *see also Rasella v. Musk*, No. 1:22-cv-03026 (S.D.N.Y. filed April 12, 2022). Injecting this issue into trial, when it does not support a claim for damages—as the filing pre-dates the Class Period and the Court acknowledged it caused Plaintiffs no harm, *see* Dkt. 48 (MTD Order) at n.1— would create a mini-trial about Mr. Musk's disclosure obligations.  It would force the defense to call additional witnesses who would otherwise not testify (including the bankers who bought the stock and disclosure counsel from McDermott Will & Emery who filed the Schedule 13D and advised Mr. Musk on timing) and spend time explaining why Mr. Musk is not liable for an action that did not cost the Class a dime.

Of course, this is exactly what Plaintiffs want—which is why they asked Professor Strauss to discuss 13D in her report in the first place.  Strauss Dep. at 126:24-127:1.  But it is improper to create

unfair prejudice by accusing Defendant of violating securities laws unrelated to this case.[2] *See U.S. v. Blackstone*, 56 F.3d 1143, 1146 (9th Cir. 1995) ("Evidence is prejudicial if it . . . provokes its instincts to punish . . . It is particularly prejudicial when … the proffered evidence connects a party with a highly charged public issue . . . " (internal quotations omitted)).

**B.    Professor Strauss's Opinions Regarding Stock Price Ownership And Movement Lack Foundation, Require No Expertise, and May Confuse The Jury**

Additionally, Professor Strauss offers general background opinions concerning stock ownership and movement that require no expertise and bring a substantial risk of misleading the jury.  The Court should exclude those too.

*First*, Professor Strauss pulls a purported statistic from a textbook that "[a]bout 37% of U.S. equities, by some estimates, are held by households" and around 11.6%  are held by pension funds, Strauss Rp't at 4, in order to "illustrate that normal households are impacted by stock price movement." Strauss Dep. at 41:10-20.  It is an opinion that invites the jury erroneously to conclude that around half of the Class are "normal households" and pensioners.  But parroting a fact from a book requires no expertise, *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *6 (N.D. Cal. Nov. 6, 2017) (excluding expert opinion as not offering "specialized knowledge" when the documents relied upon spoke for themselves), especially if the person reciting the statistic—like Professor Strauss—cannot even explain or define it. When asked in deposition who falls under her statistic's definition of "household," Professor Strauss had no answer.  Strauss Dep. at 37:20-38:9.  She did not know how "household" was defined or whether securities owned by billionaires, centimillionaires, and corporate insiders—hardly "normal households"—were included in that 37%.  *Id.* at 38:10-39:1.

And the statistic—to the extent the jury treats it as a proxy for the make-up of the class—is misleading.  Professor Strauss admitted that she did not investigate how Twitter's stock was distributed amongst insiders, institutional investors, pension funds, or "households" during the class period, *id.* at 39:20-23, and that she has no idea whether it is comparable to the statistic she recited, *id.* at 41:21-42:5. The Court should strike and exclude this "opinion."

---

[2]  Counsel's role here and in the chart exemplars, *infra* pp. 9-10, in dictating the content of Professor Strauss's report also calls into question its reliability.

DEFENDANT ELON MUSK'S MOTION TO EXCLUDE THE OPINIONS OF EMILY STRAUSS

*Second*, Professor Strauss opines that stock prices fluctuate for many reasons, including in response to positive or negative developments about a company and uses two charts comparing Tesla and Twitter's stock price in April and May 2022—along with four additional charts in Appendix C—to illustrate that point. Strauss Rp't at 6-7. Of course, this concept is not beyond the reach or knowledge of the average juror. One hardly needs expert testimony to understand that stocks move—it is a fact known to any person who has watched the evening news, CNBC, or movies like *Wall Street* or *Trading Places*. *See Mata v. Or. Health Auth.*, 739 F. App'x 370, 372 (9th Cir. 2018) ("For an expert's testimony to help the trier of fact understand the evidence, 'the subject matter at issue must be beyond the common knowledge of the average layman.'") (quoting *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002)).

More to the point, Professor Strauss's "decision" to include the charts of Twitter's and Tesla's stock prices is unnecessarily prejudicial. Professor Strauss admitted that she did not need to choose those companies or dates to illustrate her point—literally any other company or time period would have done the job. Strauss Dep. at 62:16-18 ("Q. And again, this could be illustrated with, literally, any other stock, right? A. It could be illustrated with other stocks"). In fact, *she* did not choose the companies at all, Plaintiffs' counsel picked them for her. *Id.* at 55:6-10; 56:18-19 ("A. I was asked by Plaintiffs' counsel to include these particular stocks.").

By choosing *these* companies and *these* dates, Professor Strauss's charts suggest that there was some relationship between the price of Twitter and Tesla stock in April and May 2022. But Professor Strauss is not offering any such opinion, nor is she qualified to. *Id.* at 55:19-56:13. She is not a causation expert. *Id.* at 23:3-5. She did not perform an event study to determine the cause of any of the stock movement, *id.* at 63:2-5, as one is required to do. *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 248 (N.D. Cal. 2013) ("The most common empirical test for a causal connection is an event study, which attempts to calculate the effect of an event on the value of the stock of a company."); *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 899 (S.D. Cal. 2019) ("The use of an event study is often necessary to provide an evidentiary basis for a reasonable jury to determine the existence of loss causation and damages") (citations omitted); *Sec. & Exch. Comm'n v. Jensen*, 2013 WL 12129377, at *4 (C.D. Cal. Mar. 13, 2013) ("An event study . . . often plays a 'pivotal' role in proving loss causation and damages in a

securities fraud case."). At best, Professor Strauss's stock price charts "simply rehash[] otherwise admissible evidence about which the expert has no personal knowledge." *See Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 757575, at \*27 (N.D. Cal. Feb. 20, 2015) (quoting *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005)). At worst, Plaintiffs have asked Professor Strauss to use these charts to suggest some theory of price movement and causation that she is not qualified to give. *See Sec. & Exch. Comm'n v. Jensen*, 2013 WL 12129377, at \*3-5 (C.D. Cal. Mar. 13, 2013) (excluding expert evidence regarding the amount of stock inflation under Rule 403). In either case, the charts on page 7 and in Appendix C are inadmissible under these circumstances. The Court should not permit Professor Strauss to present them to the jury.[3]

## III.    THE COURT SHOULD EXCLUDE PROFESSOR STRAUSS'S ENTIRE SECURITIES 101 LECTURE BECAUSE IT IS IRRELEVANT AND UNHELPFUL

Expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993), on matters "beyond the common knowledge of the average layman." *Mata*, 739 F. at 372. Expert testimony is not an encyclopedia entry—it must do more than simply impart basic concepts. *See e.g., Waymo LLC*, 2017 WL 5148390, at \*6. Thus, an expert opinion that does little more than offer a "truncated history of the laws" at issue and "a summary of their basic functioning" is unhelpful and should not be admitted. *See SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869, 903 (N.D. Cal. 2022) (excluding and giving "no weight" to expert report as unhelpful).

That is all that Professor Strauss intends to do at trial. She will describe basic concepts, many of which—like "What is a Stock," "What is a Public Company," "Buying and Selling in the Stock Market"—are well within the common knowledge of the average layperson. Indeed, her report seldom provides insights deeper than "[a] share of stock represents a partial ownership interest in a corporation," "real-time price data is available" on "Yahoo Finance," and "investors who sell at a lower stock price may suffer a loss." Strauss Rp't at 4, 6, 8. No expert is required for the jury to understand these basic concepts.

---

[3] If the Court otherwise finds Professor Strauss's opinions admissible, Defendant would not object to Professor Strauss amending her Report to use the stock price from other companies unconnected to Mr. Musk or Twitter—i.e., Microsoft or Amazon—to illustrate her point. Strauss Dep. at 58:6-8 (testifying that she could have used any stock, like Amazon or Microsoft).

Defendant has little doubt that the able counsel for both parties and the percipient witnesses in this case—including some of the most accomplished bankers and deal lawyers in the country—will be capable of explaining them as well as Professor Strauss. If some of the concepts are foreign—like stock options, for instance—the Court can provide a basic definition and explanation in its instructions, as is typical in securities cases. *See* Strauss Dep. at 67:3-15; Ex. C (*In re Tesla Inc. Sec. Litig.* Closing Jury Instructions defining "stock option"); *see also Peck v. Cnty. of Orange*, 2023 WL 11195794, at *11 (C.D. Cal. May 22, 2023) (excluding expert opinion on matters where the court speaks through jury instructions).

The remainder of Professor Strauss's opinion consists of an abbreviated history of the securities laws, along with a recitation of their purpose, and description of how they are enforced. To the extent this information is not inadmissible as improper legal conclusion, it is inadmissible as unhelpful. *Suprock v. Quantum Energy, Inc.*, 676 F. Supp. 3d 891, 894-95 (D. Nev. 2023) (striking expert report because it "merely 'explain[s] what the law is'" and "reads more like an amicus brief than an expert report"). The 1929 stock market crash and Great Depression are subjects covered in primary school social studies courses; they are not "beyond the common knowledge of the average layman.'" *Mata*, 739 F. at 372. And Professor Strauss offers no explanation as to how the history of securities laws or the role of the SEC in enforcing them would aid the jury render a verdict on any of the elements of Plaintiffs' 10b-5 claim. Strauss Dep. at 79:24-81:5.

The Strauss Report's utter disconnection from the facts and issues in this case is an independent basis to exclude it in its entirety. To be admissible, expert testimony must be relevant, *i.e.*, "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108, 1167 (S.D. Cal. 2022). The opinion must "logically advance[] a material aspect of the proposing party's case." *Messick v. Novartis Pharmaceuticals Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (citation omitted).

The Strauss Report fails this test too. Professor Strauss admitted that her Report has ***no*** connection to the facts, claims, or even the parties in this case. *See* Strauss Dep. at 74:19-25 ("I'm not giving any opinions as to the facts of this case."), 135:4-23 ("My report does not relate to the fact – does not offer any opinions about the facts of this case). And she does not intend for her opinions to assist the jury to resolve any factual dispute, but only to provide context. *Id.* at 135:20-136:1 (Q. [Y]ou're not suggesting

that the jury should apply any of the opinions or statements contained in your report to the facts of this case, correct?  A.  It's intended to be context."").  It is a Report that could have been authored for any securities action.

Indeed, it discusses many concepts that are so irrelevant they are more likely to cause confusion than they are to inform the jury on any matter necessary to its charge.  For example, Professor Strauss describes the audit process for financial statements included in 10-Ks, including that they "must comply with Generally Accepted Accounting Principles (GAAP) and are subject to independent audit."  Strauss Rp't at 17.  But as she acknowledged, this dispute concerns "monetizable daily active users" or "mDAU," Strauss Dep. at 97:25-98:5, an internal Twitter metric that is *not* subject to GAAP standards and was *not* independently audited, Bergjans Decl. Ex. D (Kaiden Dep.) at 88:13-25.  This information is thus both useless and may erroneously suggest that auditors independently verified Twitter's mDAU estimates.  Similarly, because this is not an SEC action, Professor Strauss's opinion discussing that agency's role in prosecuting cases has no bearing on this case but may cause the jury to infer that the SEC has some connection to or has otherwise endorsed Plaintiffs' action.

Professor Strauss's opinions do not "fit" any question the jury must answer and may cause unnecessary confusion.  They do not properly advance any claim or defense and should be excluded in their entirety.  *See e.g., Persian Gulf*, 632 F. Supp. 3d at 1167-68 (excluding expert opinion that "is divorced from the reality of the case that Plaintiffs are actually trying to prove" because it "is not sufficiently tied to Plaintiffs' liability case to help the factfinder").

## **CONCLUSION**

Defendant respectfully requests that the Court grant this motion to exclude the opinions of Emily Strauss, or, in the alternative, hold a Rule 104 hearing to determine their admissibility.

DATED:  August 15, 2025                    QUINN EMANUEL URQUHART & SULLIVAN, LLP


                                           By  _____/s/ Stephen A. Broome_____
                                               Alex Spiro
                                               Michael T. Lifrak
                                               Stephen A. Broome
                                               Jesse A. Bernstein

                                               *Attorneys for Defendant Elon Musk*

DEFENDANT ELON MUSK'S MOTION TO EXCLUDE THE OPINIONS OF EMILY STRAUSS

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on this the 15th day of August, 2025.

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By _/s/ Alex Bergjans_
　　Alex Spiro
　　Michael T. Lifrak
　　Stephen A. Broome
　　Jesse A. Bernstein

　　*Attorneys for Defendant Elon Musk*

Case No. 3:22-cv-05937-CRB
DEFENDANT ELON MUSK'S MOTION TO EXCLUDE THE OPINIONS OF EMILY STRAUSS

**ATTESTATION**

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories herein.

By /s/ Alex Bergjans
_____
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Jesse A. Bernstein

*Attorneys for Defendant Elon Musk*