# EXHIBIT C

# Deposition Transcript

Case Number: 3:22-CV-05937-CRB

Date: July 30, 2025

In the matter of:

# GIUSEPPE PAMPENA v ELON R. MUSK

# Kenneth M. Lehn

Reported by:
Kelly J. Lawton



Steno
Agency, Inc.

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(888) 707-8366
NV: Firm #108F

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-CV-05937-CRB

GIUSEPPE PAMPENA,

    Plaintiff,

vs.

ELON MUSK,

    Defendant.

VIDEO DEPOSITION OF KENNETH M. LEHN

Taken on Behalf of the Plaintiff

DATE TAKEN:    WEDNESDAY, JULY 30, 2025

TIME:    8:01 A.M. - 1:13 P.M.

PLACE:    REMOTE VIA STENO CONNECT

Examination of the witness stenographically taken
before:

Kelly J. Lawton
Registered Professional Reporter
Certified Court Reporter
Licensed Court Reporter

BY MR. ARNZEN:

Q.   But you didn't form an expert opinion about analysts' inference with respect to Musk's performance of due diligence before signing the merger agreement?

MS. KELEMEN:  Objection.

THE WITNESS:  Well, again, I think I reference some analyst commentary.

I specifically don't recall whether I referenced their comments about the absence of due diligence.

But insofar that that was part of the commentary, then, yes, I did address that in my analysis.

BY MR. ARNZEN:

Q.   Understood.

And I've got a whole lot of these questions, Dr. Lehn, so I'll say this:  Fair to say you identified language that could be used to support such an inference, but you didn't identify and document that specific inference in your report, as such; is that fair?

MS. KELEMEN:  Objection.

THE WITNESS:  I don't -- I don't recall.

I mean, certainly, that was not a specific

takeaway that I reported.

But, again, what I was doing was responding to what Dr. Tabak did.  And astoundingly, Dr. Tabak did not cite a single analyst report in his initial report.

And I've been doing this kind of work for about 30-some-odd years, testifying in securities cases.  I think this is the first case I've ever seen where an expert on either side chose not to cite a single analyst report.

And I don't understand how an expert could reach conclusions about loss causation without ever consulting a single analyst report.

So the focus of my review of analyst commentary was to show that Dr. Tabak has no reliable basis for concluding that the alleged misrepresentation caused any deflation or inflation, depending on the nature of the option, but in the security prices of Twitter, nor that is there a reliable basis, based on his analysis, that there are any damages here whatsoever.

And that was the focus of my -- my analysis.

So when you're asking questions about due diligence and so forth, I think that is all

reflected in the analyst commentary that I reviewed.  But it's all directed towards the deficiencies in what Dr. Tabak did.

MR. ARNZEN:  I'll move to strike as nonresponsive.

BY MR. ARNZEN:

Q.   My question, sir, was:  Is it fair to say that you identified language that could be used to support the inference that we just discussed, but you didn't identify and document such inference in your report?

MS. KELEMEN:  Objection.

THE WITNESS:  I think that's unfair in the following sense:  I described my understanding of the alleged misrepresentations in this matter, and then in my report, I go through analyst commentary to discern the extent to which they were reacting to the alleged misrepresentation, as opposed to other information conveyed by the tweet, which was true information, as I understand Plaintiffs allege.

So that's what I did.

With respect to unpacking every specific component of what was allegedly misrepresented, so with respect to due diligence, I -- I don't

mean, as an expert witness, it's not a matter of what I believe; it's a matter of what the scientific evidence shows.

And when you talk about scientific evidence, you rarely talk in absolutes.

So all I can tell you is that based on the evidence that I've seen in this matter, there's no reliable basis to believe it took more than one trading day for the May 13th tweet to be fully reflected in Twitter's stock price.

BY MR. ARNZEN:

Q.    Paragraph 115 of your report states, quote: It is widely recognized that if the market for a security is efficient, the new information will quickly be reflected in the security price, typically within one trading day.

Correct?

A.    Correct.  That's correct.

Q.    If new information is quote, typically, end quote, reflected in the price of a security within one trading day, doesn't that mean that sometimes it takes longer than one trading day for new information to be reflected in the stock price?

A.    Well, if you -- if so, one would have to establish that empirically.

KENNETH M. LEHN                                          JOB NO. 1870654
JULY 30, 2025

So at the class cert stage when Dr. Tabak conducted his market efficiency tests, he used the traditional one-day effect, that it took only one trading day for information to be fully reflected in the stock price.

Had he, for example, shown systematically it would take two days for information to be reflected in Twitter stock price, then, potentially, he could say, This is consistent with what I found more generally.

But, no, he doesn't do that.

So he's -- says sometimes it takes one day; sometimes it could take more than a day.

But there's no scientific basis for that.

He claims, well, it was a statistically significant return on the second day, but that should not be the basis for extending the window. That's cherry-picking.

I mean, you can get significant days randomly, and that's the whole point of a statistical test and confidence intervals.  You can't just willy-nilly say, Well, I think it's usually efficient one trading day, but in this case, I'm going to go with two.

It's unspecific, it's ad hoc, and there's no

reliable basis for doing what he did.

MR. ARNZEN:  I'll move to strike as nonresponsive.

BY MR. ARNZEN:

Q.    The question was:  If new information is, quote, typically, end quote, reflected in the price of the security within one trading day, doesn't that mean that sometimes it takes longer than one trading day for the information to be reflected in the stock price?

A.    There is --

MS. KELEMEN:  Objection.

THE WITNESS:  If it does, then you have to have a scientific basis.  You can't just say, I think in this case, I think I'm going to extend the window.

And that's what he's done.

And if you can --

BY MR. ARNZEN:

Q.    So sometimes --

Go ahead.

A.    If you can demonstrate that for this stock, it took two days, typically, for information to be reflected in Twitter stock price -- which I don't think you can show -- then, yes, you might have a

basis to say, Okay, I've done by homework.  So even though it's typically one day, I'm showing you here, for Twitter, it takes two days.

But you can't take the same stock, in my opinion, and say that the market for the stock is efficient, and most of the time, it takes one day, but in this case, it took two days.  That's unscientific.

Q.   You cite a single article in support of your "typically" sentence, and that article is entitled, quote, The Intraday Speed of Adjustment of Stock Prices to Earnings and Dividend Announcements, end quote, from the Journal of Financial Economics; is that right?

A.   Correct.

Q.   Earnings and dividend announcements are prescheduled events normally, are they not?

A.   They are.

Q.   Analysts know to tune in, right?

A.   Generally, I -- I believe that's correct, yes.

Q.   Many analysts have models that incorporate earnings and dividend announcements at the press of a button, don't they?

A.   I would presume so.

CERTIFICATE OF REPORTER OATH

STATE OF FLORIDA

COUNTY OF PINELLAS

I, Kelly J. Lawton, Registered Professional Reporter, Licensed Court Reporter, and Certified Court Reporter, hereby certify that the witness named herein was duly sworn.

WITNESS my hand this 6th day of August, 2025.

_____

KELLY J. LAWTON, RPR, LCR, CCR

KENNETH M. LEHN                                                    JOB NO. 1870654
JULY 30, 2025

CERTIFICATE OF REPORTER

STATE OF FLORIDA

COUNTY OF PINELLAS

I, Kelly J. Lawton, Registered Professional Reporter, Licensed Court Reporter, and Certified Court Reporter, do hereby certify that I was authorized to and did stenographically report the examination of the witness named herein; that a review of the transcript was not requested; and that the foregoing transcript is a true record of my stenographic notes.

I FURTHER CERTIFY that I am not a relative, employee, or attorney, or counsel for any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the outcome of this action.

DATED THIS 6th day of August, 2025, Pinellas County, Florida.

_____
KELLY J. LAWTON, RPR, LCR, CCR