# EXHIBIT E

COTCHETT, PITRE & MCCARTHY, LLP
Joseph W. Cotchett (SBN 36324)
jcotchett@cpmlegal.com
Mark C. Molumphy (SBN 168009)
mmolumphy@cpmlegal.com
Tyson C. Redenbarger (SBN 294424)
tredenbarger@cpmlegal.com
Elle D. Lewis (SBN 238329)
elewis@cpmlegal.com
Gia Jung (SBN 340160)
gjung@cpmlegal.com
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
fbottini@bottinilaw.com
Albert Y. Chang (SBN 296065)
achang@bottinilaw.com
Aaron P. Arnzen (SBN 218272)
aarnzen@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF INTERROGATORIES (NOS. 15-23)** |

**PROPOUNDING PARTY:**     **DEFENDANT**

**RESPONDING PARTY:**     **PLAINTIFFS**

**SET NUMBER:**                              **THREE**

Pursuant to Federal Rule of Civil Procedure ("FRCP") 36, and the Local Rules of the United States District Court for the Northern District of California, Plaintiffs, Brian Belgrave, John Garrett, and Nancy Price, hereby respond to Interrogatories, Set Three, propounded by Defendant Elon Musk, as follows:

<u>**PRELIMINARY STATEMENT**</u>

All of the responses contained herein are based only upon such information and documents which are presently available and specifically known to this responding party who disclosed only those contentions and documents which presently occurred to such responding party. It is anticipated that further discovery, independent investigation, legal research, and analysis may supply additional facts, add meaning to the new facts, as well as establish new factual conclusions, legal conclusions, and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the contentions and disclosures herein set forth.

The following responses are given without prejudice to the responding party's right to produce evidence of any subsequently discovered facts or documents which this responding party may later discover or recall. The responding party accordingly reserves the right to change any and all responses herein as additional facts or documents are ascertained and/or recalled and analyses thereof are made.

Plaintiffs incorporate by reference each and every general objection set forth into each and every specific response. From time to time, a specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response shall not be interpreted as a waiver of any general objection to that response.

The responses contained herein are made in a good faith effort to supply as much factual information as is presently known, but should in no way be to the prejudice of this party in relation to further discovery, research, investigation or analysis.

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF
INTERROGATORIES (NOS. 15-23)

## GENERAL OBJECTIONS APPLICABLE TO ALL INTERROGATORIES

Plaintiffs generally object to the Interrogatories on the following grounds, each of which is expressly incorporated by reference in the responses to the individual interrogatories below.  All individual responses set forth herein are subject to and without waiver of any of these General Objections:

1.     Plaintiffs object to the Interrogatories to the extent that they purport to impose any obligations upon Plaintiffs that are not imposed by law, or are otherwise inconsistent with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, and any other applicable law.

2.     Plaintiffs object to the Interrogatories to the extent they seek information that is beyond the scope of permissible discovery.

3.     Plaintiffs object to the Interrogatories to the extent they seek information that can be found in the pleadings and other court filings.

4.     Plaintiffs object to the Interrogatories to the extent they seek communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine.  Plaintiffs hereby assert all applicable privileges and protections, and exclude privileged information from their responses to the Interrogatories.  Any disclosure of such privileged information is inadvertent and is not intended to waive those privileges, doctrines, and protections.

5.     Plaintiffs object to each Definition and Instruction to the extent each imposes on Plaintiffs any obligation beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of the Northern District of California, and any other applicable law.

6.     Plaintiffs object to the Interrogatories to the extent that they are overbroad, unduly burdensome and oppressive in that they would require a search for information that would be of little or no benefit with respect to the issues or controversies in this Action, such that the value of the information would be far outweighed by the burden of obtaining them.

3                    Case No: 3:22-CV-05937-CRB

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF
INTERROGATORIES (NOS. 15-23)

7. Plaintiffs object to the Interrogatories to the extent they call for a legal conclusion, a legal argument, or are invasive of the attorney work product doctrine.

8. By responding to the Interrogatories, Plaintiffs do not concede the relevancy, materiality, or admissibility as evidence of any of the information sought.

9. No objection, limitation, response, or lack thereof made in these Objections and Responses is intended as an admission by Plaintiffs as to the existence or non-existence of information responsive to the Interrogatories.

10. Plaintiffs object to the Interrogatories and to each and every instruction, definition, and request therein to the extent that they call for the production of information readily available through public sources, or from sources that are more convenient, less burdensome or less expensive.

11. Plaintiffs' objections are provided without prejudice to their right to produce evidence of any subsequently discovered facts or any facts that it may later recall, and with express rights to revise, correct, supplement, or clarify any objections or responses set forth herein at a later time.

12. The failure of Plaintiffs to make a specific objection to a particular Interrogatory is not, and shall not be construed as, an admission that responsive information exists. Likewise, any statement herein that Plaintiffs will provide information in response to an individual Interrogatory does not mean that Plaintiffs in fact have any such information, or that any such information exists. Rather, any such statement reflects the intention of Plaintiffs, subject to their objections, to conduct a reasonable search for responsive information.

13. In providing information in response to the Interrogatories, Plaintiffs do not in any way waive, or intend to waive, but rather intend to preserve and is preserving:

a. all objections as to competency, relevancy, materiality, authenticity, or admissibility of any Interrogatory, responses or their subject matter;

4                    Case No: 3:22-CV-05937-CRB

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF
INTERROGATORIES (NOS. 15-23)

b.      all objections as to vagueness, ambiguity, or other infirmity in the form of the Interrogatories, any objections based on the undue burden imposed by the Interrogatories and each individual request contained therein;

c.      all rights to object on any ground to the use of any of the information or its subject matter in any subsequent proceedings, including the trial of this or any other action;

d.      all rights to object on any ground to any further interrogatories or other discovery requests involving or related to the subject matter of any Interrogatory;

e.      all rights to revise, correct, supplement, or clarify any of the responses set forth herein at a later time; and

f.      any and all privileges and rights under applicable law, including but not limited to, the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, other statutes, guidelines and common law.

14.     Plaintiffs object to the Interrogatories to the extent they request that Plaintiff generate or create documents that did not previously exist (*e.g.*, lists, charts, etc.).

15.      Plaintiffs reserve the right to amend, modify, and supplement these responses should additional discovery warrant such amendment, modification or supplementation.

16.     The inadvertent production or revelation of privileged or otherwise protected information shall not be deemed to waive the privilege or protection with respect to such documents or information or any other documents or information.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Plaintiffs object to the Interrogatories' Definitions and Instructions to the extent they (i) impose on Plaintiffs conditions and obligations that exceed or are inconsistent with those set forth in the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or any other applicable statutes, rules, or laws; (ii) depart from the customary meaning of any term or provide definitions that are inaccurate; or (iii) are based on premises that are misleading, inaccurate, or incomplete.

5                    Case No: 3:22-CV-05937-CRB

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF
INTERROGATORIES (NOS. 15-23)

2.    Plaintiffs object to the Interrogatories' Definitions and Instructions to the extent they incorporate purported facts.  Plaintiffs do not adopt or confirm the accuracy of any purported facts incorporated in the Definitions and Instructions.

3.    Plaintiffs object to the definitions of "Concerning" and "identify" on the grounds that they are overbroad, vague, ambiguous, unduly burdensome, and not proportional to the needs of the case, and to the extent that those definitions purport to impose obligations on Plaintiffs that exceed or are inconsistent with those set forth in the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or any other applicable statutes, rules, or laws.  Plaintiffs further object to the extent the definitions purport to require Plaintiffs to produce irrelevant information or information unknown to Plaintiffs.

4.    Plaintiffs object to all Instructions (whether or not repeated for emphasis) to the extent they purport to impose obligations on the Plaintiffs that exceed or are inconsistent with those set forth in the Federal Rules, the Local Rules, or any other applicable statutes, rules, or laws.

**SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES**

Subject to and without waiver of the foregoing General Objections and Objections to Definitions and Instructions, which are incorporated into each response below whether or not repeated for emphasis, and the specific objections set forth below, and expressly stating that their responses are subject to all such objections, Plaintiffs respond to each specific Interrogatory as follows.

**INTERROGATORY NO. 15:**

Identify what rights—if any—Defendant had under the Merger Agreement to details supporting Twitter's calculation that spam/fake accounts do represent less than 5% of users.

**RESPONSE TO INTERROGATORY NO. 15:**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the

6                    Case No: 3:22-CV-05937-CRB

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF
INTERROGATORIES (NOS. 15-23)

Local Rules of the Northern District of California.  Plaintiffs object to the term "rights" as vague and ambiguous.  Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine, including but not limited to the mental impressions of trial counsel.  Plaintiffs further object to this Interrogatory because it calls for Plaintiffs to make a legal conclusion.  Plaintiffs also object to this Interrogatory on the grounds that it contains compound, conjunctive, or disjunctive questions.  Plaintiffs object to this Interrogatory because it seeks information in the possession of, is known to, or is otherwise equally available to Defendant. Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or analysis of documents or information.  Creating such a compilation or summary would require undue effort and is beyond the scope of standard discovery requests.  This Response is based on information currently known and available to Plaintiffs—discovery is ongoing and Plaintiffs reserve the right to amend or supplement this Response as additional discovery and depositions occur in this Action, including the deposition of Defendant.  Plaintiffs additionally object that this Interrogatory is duplicative of Interrogatories 1, 2, and 3.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows: Defendant had no rights under the Merger Agreement to details supporting Twitter's calculation that spam/fake accounts do represent less than 5% of users.  The Merger Agreement did not give Defendant the right to details supporting Twitter's calculation that spam/fake accounts do represent less than 5% of users because, among other things, Defendant expressly waived due diligence as a condition to consummation of the Merger.  As a result, the Merger Agreement contains no such condition and thus Musk was not entitled to due diligence regarding spam/fake accounts, nor did he have the right to condition closing of the Merger on his receipt of spam/fake accounts data or his satisfaction with any information regarding spam/fake accounts.  *See, e.g.*, Article VII of the Merger Agreement.  Moreover, Paragraph 6.4 of the Merger Agreement only afforded Musk reasonable access to information necessary to the consummation of the transactions contemplated by the Merger Agreement, and Musk did not need spam/fake account data to consummate the

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF
INTERROGATORIES (NOS. 15-23)

Merger. Section 6.4 of the Merger Agreement also stated that Twitter was not required to disclose any information to Musk if such disclosure would, in the reasonable judgment of Twitter, (i) cause significant competitive harm to Twitter or its Subsidiaries. Paragraph 6.4 also stated "No investigation or access permitted pursuant to this Section 6.4 shall affect or be deemed to modify any representation or warranty made by the Company hereunder." Since Musk had waived due diligence and since the Company had made no representations about spam/fake accounts in Section IV, Musk could not use Section 6.4 as a pretext to check the alleged accuracy of representations Twitter had not made in the Merger Agreement.

Musk expressly acknowledged in paragraph 4.25 of the Merger Agreement that "Except for the representations and warranties expressly set forth in this Article IV, neither the Company nor any other Person makes or has made any representation or warranty of any kind whatsoever, express or implied, at Law or in equity, with respect to the Company or any of its Subsidiaries or their respective business, operations, assets, liabilities, conditions (financial or otherwise), notwithstanding the delivery or disclosure to Parent and the Acquisition Sub or any of their Affiliates or Representatives of any documentation, forecasts or other information with respect to any one or more of the foregoing. Without limiting the generality of the foregoing, neither the Company nor any other Person makes or has made any express or implied representation or warranty to Parent, Acquisition Sub or any of their respective Representatives with respect to (a) any financial projection, forecast, estimate or budget relating to the Company, any of its Subsidiaries or their respective businesses or,(b) except for the representations and warranties made by the Company in this Article IV, any oral or written information presented to Parent, Acquisition Sub or any of their respective Representatives in the course of their due diligence investigation of the Company, the negotiation of this Agreement or the course of the Merger, or the accuracy or completeness thereof." No representations or warranties were provided to Musk in Section IV of the Merger Agreement regarding fake/spam accounts.

The Merger Agreement further provided in Article VII the conditions for the closing of the Merger. None of those conditions were related in any way to spam/fake account data or Musk's

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF
INTERROGATORIES (NOS. 15-23)

access to spam/fake account data.  In addition, neither due diligence nor the receipt of adequate financing for the Merger were conditions to Musk's obligation under Article VII to consummate the Merger.  Thus, any claim by Musk that he needed spam/fake account data to obtain financing so he could close the Merger was false and pretextual; since the Merger was not subject to a financing contingency, Musk was obligated to consummate the Merger whether or not he obtained any financing.

**INTERROGATORY NO. 16:**

Identify the provisions of the Merger Agreement—if any—that entitled Defendant to details supporting Twitter's calculation that spam/fake accounts represent less than 5% of users.

**RESPONSE TO INTERROGATORY NO. 16:**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California.  Plaintiffs object to the term "entitled" as vague and ambiguous.  Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine, including but not limited to the mental impressions of trial counsel.  Plaintiffs further object to this Interrogatory because it calls for Plaintiffs to make a legal conclusion.  Plaintiffs also object to this Interrogatory on the grounds that it contains compound, conjunctive, or disjunctive questions.  Plaintiffs object to this Interrogatory because it seeks information in the possession of, is known to, or is otherwise equally available to Defendant.  Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or analysis of documents or information.  Creating such a compilation or summary would require undue effort and is beyond the scope of standard discovery requests.  This Response is based on information currently known and available to Plaintiffs—discovery is ongoing and Plaintiffs reserve the right to amend or supplement this Response as additional

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF INTERROGATORIES (NOS. 15-23)

discovery and depositions occur in this Action, including the deposition of Defendant.  Plaintiffs additionally object that this Interrogatory is duplicative of Interrogatories 1, 2, 3, and 15.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows: No provision of the Merger Agreement "entitled" Defendant to details supporting Twitter's calculation that spam/fake accounts represent less than 5% of users.

**INTERROGATORY NO. 17:**

If You contend that the Merger Agreement did not obligate Twitter to produce any of the information listed in Requests Nos. 1.01-1.13 in the "Diligence Tracker" in Exhibit 3, served herewith and produced at MUSK-PAMPENA-0294549, identify each piece of information listed therein that You contend the Merger Agreement did not obligate Twitter to produce, all facts and reasons in support of that contention, and when and how You contend class members become aware of each fact supporting that contention.

**RESPONSE TO INTERROGATORY NO. 17:**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is compound, overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California.  Plaintiffs object to the term "obligate" as vague and ambiguous.  Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine, including but not limited to the mental impressions of trial counsel.  Plaintiffs further object to this Interrogatory because it calls for Plaintiffs to make a legal conclusion.  Plaintiffs also object to this Interrogatory on the grounds that it contains compound, conjunctive, or disjunctive questions. Plaintiffs object to this Interrogatory because it seeks information in the possession of, is known to, or is otherwise equally available to Defendant.  Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or analysis of documents or information.  Creating such a compilation or summary would require undue effort and is beyond the scope of standard discovery

10                    Case No: 3:22-CV-05937-CRB

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF INTERROGATORIES (NOS. 15-23)

requests.    This Response is based on information currently known and available to Plaintiffs—discovery is ongoing and Plaintiffs reserve the right to amend or supplement this Response as additional discovery and depositions occur in this Action, including the deposition of Defendant. Plaintiffs additionally object that this Interrogatory is duplicative of Interrogatories 1, 2, 3, 15, and 16.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows: Twitter was not obligated under any provision of the Merger Agreement to produce any of the information listed in Requests Nos. 1.01-1.13 in the "Diligence Tracker" in Exhibit 3 (MUSK-PAMPENA-0294549) including: the number of verified users and the verification process (1.01); details supporting Twitter's calculation that spam/fake accounts represent less than 5% of users (1.02); user database containing key metrics (1.03); the number of accounts Twitter suspended (1.04-1.05); the number of ads rendered in the past to accounts later suspended (1.06); a log of the compliance firehose suspend action (1.07); the total amount of money Twitter refunded to advertisers or enterprise data consumers (1.08); the number of new accounts that had been created (1.09); firehose data for all tweets, likes and engagements, and more (1.10-1.11); details of account audits and reviews (1.12); and details regarding the account activity and Twitter's procedures for tracking active users (1.13).    The Merger Agreement did not give Defendant the right to the information listed in Requests Nos. 1.01-1.13, including the spam/fake account data he requested, as a condition to closing the Merger because, among other things, Defendant expressly waived due diligence as a condition to consummation of the Merger.    As a result, the Merger Agreement contains no such condition and thus Musk was not entitled to due diligence regarding spam/fake account data, nor any of the information listed in Requests Nos. 1.01-1.13, nor did he have the right to condition closing of the Merger on his receipt of  information or data relating to Requests Nos. 1.01-1.13 or his satisfaction with any information or data relating to Requests Nos. 1.01-1.13. *See, e.g.*, Article VII of the Merger Agreement.  Moreover, Paragraph 6.4 of the Merger Agreement only afforded Musk reasonable access to information necessary to the consummation of the transactions contemplated by the Merger Agreement, and Musk did not need information or data relating to

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF INTERROGATORIES (NOS. 15-23)

Requests Nos. 1.01-1.13 consummate the Merger. Section 6.4 of the Merger Agreement also stated that Twitter was not required to disclose any information to Musk if such disclosure would, in the reasonable judgment of Twitter, (i) cause significant competitive harm to Twitter or its Subsidiaries. Paragraph 6.4 also stated "No investigation or access permitted pursuant to this Section 6.4 shall affect or be deemed to modify any representation or warranty made by the Company hereunder." Since Musk had waived due diligence and since the Company had made no representations about spam/fake accounts or other information relating to Requests Nos. 1.01-1.13 in Section IV, Musk could not use Section 6.4. Plaintiffs discovered the information contained in the "Diligence Tracker" in Exhibit 3 produced at MUSK-PAMPENA-0294549 after Musk produced the document in this litigation as part of his discovery obligations.

**INTERROGATORY NO. 18:**

Identify all information Defendant was entitled to under Section 6.4 of the Merger Agreement and state all facts and reasons in support, including when and how you contend class members become aware of each fact identified.

**RESPONSE TO INTERROGATORY NO. 18:**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is compound, overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California. Plaintiffs object to the terms "entitled" and "aware" as vague and ambiguous. Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine, including but not limited to the mental impressions of trial counsel. Plaintiffs further object to this Interrogatory because it calls for Plaintiffs to make a legal conclusion. Plaintiffs also object to this Interrogatory on the grounds that it contains compound, conjunctive, or disjunctive questions. Plaintiffs object to this Interrogatory because it seeks information in the possession of, is known to, or is otherwise equally available to Defendant. Plaintiffs object to this Interrogatory to the extent

that it requires a compilation, summary, or analysis of documents or information. Creating such a compilation or summary would require undue effort and is beyond the scope of standard discovery requests. This Response is based on information currently known and available to Plaintiffs—discovery is ongoing and Plaintiffs reserve the right to amend or supplement this Response as additional discovery and depositions occur in this Action, including the deposition of Defendant. Plaintiffs additionally object that this Interrogatory is duplicative of Interrogatories 11, 12, and 13.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows: Plaintiffs refer Defendant to Plaintiffs' Supplementary Responses to Interrogatories 11, 12 and Plaintiffs' Response to Interrogatory 13. Section 6.4 of the Merger Agreement afforded Musk reasonable access to information necessary to the consummation of the transactions contemplated by the Merger Agreement, and stated that Twitter was not required to disclose any information to Musk if such disclosure would, in the reasonable judgment of Twitter, (i) cause significant competitive harm to Twitter or its Subsidiaries. Paragraph 6.4 also stated "No investigation or access permitted pursuant to this Section 6.4 shall affect or be deemed to modify any representation or warranty made by the Company hereunder."

Defendant made voluminous requests for information relating to spam/fake accounts not to consummate the merger, but instead to find a way to get out of his obligation to acquire Twitter. Any information provided under section 6.4 of the Merger Agreement was subject to the provisos in that section clarifying that nothing in section 6.4 requires Twitter to disclose information that would in Twitter's reasonable judgment cause significant competitive harm, violate applicable laws or jeopardize any attorney-client or other legal privilege. Additionally, Musk and his companies agreed in section 6.4 of the Merger Agreement that it would not itself or cause its representatives to use any information provided for any competitive or other purpose unrelated to the consummation of the merger. However, Musk nonetheless revealed confidential information provided to him under the protections of a non-disclosure agreement. Musk also agreed to use reasonable best efforts to "minimize any disruption to the respective business of [Twitter] that may result from requests for access under [section 6.4.]" Musk's team, however, made voluminous

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF
INTERROGATORIES (NOS. 15-23)

requests of information and demanded or expected such information to be provided in unreasonably short periods of time, not for any reasonable business purpose relating to consummation of the merger, nor did he or his team use any effort to minimize disruption to Twitter. Instead, Musk publicly disparaged Twitter and its business throughout the Class Period.

With respect to when absent class members became aware of facts concerning any information Defendant was entitled to under Section 6.4 of the Merger Agreement, Plaintiffs object to this subsection of the Request as compound. Without waiving such objection, Plaintiffs have not spoken to or communicated with absent class members and thus lack information about what such unidentified persons may have known or not known. After a reasonable inquiry based on the information available to Plaintiffs, Plaintiffs respond further as follows: analysts who closely followed Twitter and issued reports during the Class Period made comments in their analyst reports indicating that they were confused about what informational rights Defendant had in light of Defendant's tweets and statements that are at issue in this action. For example, Wedbush issued an analyst report on the same day Musk issued his May 13, 2022 tweet, stating "In a bizarre tweet this morning Elon Musk said the Twitter deal temporarily is on hold pending details supporting calculation that spam/fake accounts do indeed represent less than 5% of users (in a filing by Twitter last week). The implications of this tweet will send this Twitter circus show into a Friday the 13th horror show as now the Street will view this deal as 1) likely falling apart, 2) Musk negotiating for a lower deal price, or 3) Musk simply walking away from the deal with a $1 billion breakup fee. . . The nature of Musk creating so much uncertainty in a tweet (and not a filing) is very troubling to us and the Street and now sends this whole deal into a circus show with many questions and no concrete answers as to the path of the deal going forward." Truist Securities also issued an analyst report on May 13th, stating "Hard to know whether Mr. Musk is using this move as a negotiating tactic to get the price down . . . or as a way to get out of the deal altogether." Wedbush issued another report on May 16, 2022 which stated "This afternoon Musk said at a Miami conference that spam and fake accounts likely account for 20% of all Twitter accounts (at the low end), which is much higher than the "less than 5% of spam/bots" Twitter has highlighted and discussed in filings.

14                                    Case No: 3:22-CV-05937-CRB

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF
INTERROGATORIES (NOS. 15-23)

Musk said a deal for Twitter is "not out of the question" at a lower price given this back-and-forth situation between Musk and Twitter. There is no discussion of how these numbers were derived and no filings about the major discrepancy in calculations which speaks to the Twitter deal currently on hold. Our view is that the Street is assigning the chance of Musk walking as more than 50% which speaks to the pressure on Twitter shares, coupled by if he stays and does a deal $54.20 is out the window with this circus show now hard to predict the next move from Twitter's Board." Truist issued another analyst report on July 19, 2022, that stated "Nightmare scenario's playing out for TWTR amid Musk takeover. On July 8th, Elon Musk sent a letter to Twitter's board terminating the merger agreement, which comes roughly a month after he tweeted that the deal was on hold due to his concerns around bot accounts on the platform. Musk strongly disagrees with mgt's claim that spam accounts represent fewer than 5% of daily users on Twitter's platform (which were 229M at the end of 1O), and believes this number could be closer to 20%, although he has yet to provide any evidence supporting this claim. We expect Twitter is now likely to engage in a messy and prolonged court battle to try to force him to go through with the deal on the agreed-upon terms ($54.20/share, a $44B valuation), an unlikely outcome in our view. This whole saga renders the investment case for TWTR hard to make at this point."

**INTERROGATORY NO. 19:**

Identify all information Defendant was entitled to under Section 6.11 of the Merger Agreement and state all facts and reasons in support, including when and how You contend class members become aware of each fact identified.

**RESPONSE TO INTERROGATORY NO. 19:**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is compound, overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California. Plaintiffs object to the terms "entitled" and "aware" as vague and ambiguous. Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client privilege, the

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF INTERROGATORIES (NOS. 15-23)

attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine, including but not limited to the mental impressions of trial counsel. Plaintiffs further object to this Interrogatory because it calls for Plaintiffs to make a legal conclusion. Plaintiffs also object to this Interrogatory on the grounds that it contains compound, conjunctive, or disjunctive questions. Plaintiffs object to this Interrogatory because it seeks information in the possession of, is known to, or is otherwise equally available to Defendant. Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or analysis of documents or information. Creating such a compilation or summary would require undue effort and is beyond the scope of standard discovery requests. This Response is based on information currently known and available to Plaintiffs— discovery is ongoing and Plaintiffs reserve the right to amend or supplement this Response as additional discovery and depositions occur in this Action, including the deposition of Defendant. Plaintiffs additionally object that this Interrogatory is duplicative of Interrogatories 11, 12, 13, and 18.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows: Plaintiffs refer Defendant to Plaintiffs' Supplementary Responses to Interrogatories 11, 12, 13 and above response to Interrogatory 18. Section 6.11 of the Merger Agreement refers to Twitter's obligation to reasonably cooperate with Musk's financial backers. The obligation is heavily limited by the wording of section 6.11 itself which limits requested cooperation to such cooperation that does not unreasonably or materially interfere with the ongoing operations of Twitter. The section also provides that no cooperation under the section shall: (i) require Twitter to provide any information where such disclosure would be prohibited or restricted by law, or binding agreement with a third party, or any privileged information (ii) require Twitter to act in a way that would reasonably be expected to conflict with its organizational documents or any laws, or would reasonably be expected to result in a violation or breach of, or default under any agreement with Twitter; (iii) require Twitter to take any action that in the good faith determination of Twitter would create a risk of damage or destruction to any property or assets of Twitter. These are just some of the limitations in section 6.11 of the Merger Agreement.

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF INTERROGATORIES (NOS. 15-23)

With respect to when absent class members became aware of facts concerning any information Defendant was entitled to under Section 6.11 of the Merger Agreement, Plaintiffs object to this subsection of the Request as compound. Without waiving such objection, Plaintiffs have not spoken to or communicated with absent class members and thus lack information about what such unidentified persons may have known or not known. After a reasonable inquiry based on the information available to Plaintiffs, Plaintiffs respond further as follows: analysts who closely followed Twitter and issued reports during the Class Period made comments in their analyst reports indicating that they were confused about what informational rights Defendant had in light of Defendant's tweets and statements that are at issue in this action. For example, Wedbush issued an analyst report on the same day Musk issued his May 13, 2022 tweet, stating "In a bizarre tweet this morning Elon Musk said the Twitter deal temporarily is on hold pending details supporting calculation that spam/fake accounts do indeed represent less than 5% of users (in a filing by Twitter last week). The implications of this tweet will send this Twitter circus show into a Friday the 13th horror show as now the Street will view this deal as 1) likely falling apart, 2) Musk negotiating for a lower deal price, or 3) Musk simply walking away from the deal with a $1 billion breakup fee. . . . The nature of Musk creating so much uncertainty in a tweet (and not a filing) is very troubling to us and the Street and now sends this whole deal into a circus show with many questions and no concrete answers as to the path of the deal going forward." Truist Securities also issued an analyst report on May 13th, stating "Hard to know whether Mr. Musk is using this move as a negotiating tactic to get the price down . . . or as a way to get out of the deal altogether." Wedbush issued another report on May 16, 2022 which stated "This afternoon Musk said at a Miami conference that spam and fake accounts likely account for 20% of all Twitter accounts (at the low end), which is much higher than the "less than 5% of spam/bots" Twitter has highlighted and discussed in filings. Musk said a deal for Twitter is "not out of the question" at a lower price given this back-and-forth situation between Musk and Twitter. There is no discussion of how these numbers were derived and no filings about the major discrepancy in calculations which speaks to the Twitter deal currently on hold. Our view is that the Street is assigning the chance of Musk walking as more than 50%

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF INTERROGATORIES (NOS. 15-23)

which speaks to the pressure on Twitter shares, coupled by if he stays and does a deal $54.20 is out the window with this circus show now hard to predict the next move from Twitter's Board."  Truist issued another analyst report on July 19, 2022, that stated "Nightmare scenario's playing out for TWTR amid Musk takeover. On July 8th, Elon Musk sent a letter to Twitter's board terminating the merger agreement, which comes roughly a month after he tweeted that the deal was on hold due to his concerns around bot accounts on the platform. Musk strongly disagrees with mgt's claim that spam accounts represent fewer than 5% of daily users on Twitter's platform (which were 229M at the end of 1O), and believes this number could be closer to 20%, although he has yet to provide any evidence supporting this claim. We expect Twitter is now likely to engage in a messy and prolonged court battle to try to force him to go through with the deal on the agreed-upon terms ($54.20/share, a $44B valuation), an unlikely outcome in our view. This whole saga renders the investment case for TWTR hard to make at this point."

**INTERROGATORY NO. 20:**

If You contend that Twitter was not required to comply with Sections 6.4 or 6.11 of the Merger Agreement "in order to have performed or complied, in all material respects, with its obligations required under the [Merger] Agreement to be performed or complied with by [Twitter] on or prior to the Closing Date" (Merger Agreement, Section 7.2(a)), state all facts and reasons in support of that contention, including when and how You contend class members become aware of each fact supporting that contention.

**RESPONSE TO INTERROGATORY NO. 20:**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is compound, overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California.  Plaintiffs object to the term "aware" as vague and ambiguous.  Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine, including but not

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF
INTERROGATORIES (NOS. 15-23)

limited to the mental impressions of trial counsel. Plaintiffs further object to this Interrogatory because it calls for Plaintiffs to make a legal conclusion. Plaintiffs also object to this Interrogatory on the grounds that it contains compound, conjunctive, or disjunctive questions. Plaintiffs object to this Interrogatory because it seeks information in the possession of, is known to, or is otherwise equally available to Defendant. Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or analysis of documents or information. Creating such a compilation or summary would require undue effort and is beyond the scope of standard discovery requests. This Response is based on information currently known and available to Plaintiffs—discovery is ongoing and Plaintiffs reserve the right to amend or supplement this Response as additional discovery and depositions occur in this Action, including the deposition of Defendant. Plaintiffs additionally object that this Interrogatory is duplicative of Interrogatories 11, 12, 13, 18, and 19.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows: Plaintiffs do not contend that Twitter was not required to comply with the terms of the Merger Agreement.

**INTERROGATORY NO. 21:**

If You contend that the Closing of the Merger was not on hold or otherwise delayed after May 13, 2022, state all facts and reasons in support of that contention, including when and how You contend class members become aware of each fact supporting that contention.

**RESPONSE TO INTERROGATORY NO. 21:**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is compound, overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California. Plaintiffs object to the term "aware" as vague and ambiguous. Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine, including but not limited to the mental impressions of trial counsel. Plaintiffs further object to this Interrogatory

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF INTERROGATORIES (NOS. 15-23)

because it calls for Plaintiffs to make a legal conclusion.  Plaintiffs also object to this Interrogatory on the grounds that it contains compound, conjunctive, or disjunctive questions.  Plaintiffs object to this Interrogatory because it seeks information in the possession of, is known to, or is otherwise equally available to Defendant.  Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or analysis of documents or information.  Creating such a compilation or summary would require undue effort and is beyond the scope of standard discovery requests.   This Response is based on information currently known and available to Plaintiffs—discovery is ongoing and Plaintiffs reserve the right to amend or supplement this Response as additional discovery and depositions occur in this Action, including the deposition of Defendant.  Plaintiffs additionally object that this Interrogatory is duplicative of Interrogatories 6, 7, 8, and 9.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows: Contrary to Defendant's public statements and unbeknownst to the public, Plaintiffs, or the class, the Twitter deal was not on hold or otherwise delayed on May 13, 2025.  Defendant never took any steps to put the deal on hold, instead instructing his team to continue working on the deal.  Musk's lawyers and bankers continued to meet with Twitter and make progress on the acquisition.  Neither Defendant nor his team informed Twitter that the "deal was on hold."  Twitter was continuing to cooperate, provide information, and work around the clock to close the deal.  None of Musk's team had been instructed that the deal was on hold and instead were privately responding to investors and the SEC that the deal was not on hold.  Plaintiffs refer Defendant to Plaintiffs' Supplementary Responses to Interrogatories 6, 7, 8, and 9.  Plaintiffs further refer Defendant to the testimony of Michael Ringler at his March 25, 2025 deposition.  The market became aware of the true facts when Musk announced on October 4, 2022 that he would go through with the merger at the original price, less than two weeks before the October 17, 2022 Delaware Chancery action was set to begin. Forced to face the lack of merit of his baseless contention that Twitter had breached multiple provisions of the Merger Agreement and that there had allegedly been a material adverse effect, Musk essentially acknowledged that he had been bluffing all along. Musk capitulated and announced he would honor the Merger Agreement on the original terms and at the original $54.20 price. In response, Twitter's

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF INTERROGATORIES (NOS. 15-23)

stock immediately jumped by over 15% before trading in the stock was halted by the New York Stock Exchange. When trading resumed later in the day, the stock increased another 7%, eventually closing up over 22% in one day.

**INTERROGATORY NO. 22:**

If You contend that any investors (including named Plaintiffs) believed that Defendant based his May 16, 2022 Statement (identified at paragraph 120 of the FAC), and the May 17, 2022 Tweet (identified at paragraph 125 of the FAC) regarding the number of bots/spam on Twitter's platform on data he obtained from Twitter, identify all facts in support of that contention, including the identities of any investors who held that belief.

**RESPONSE TO INTERROGATORY NO. 22:**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is compound, overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California. Plaintiffs object to the terms "believed" and "bots" as vague and ambiguous. Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine, including but not limited to the mental impressions of trial counsel. Plaintiffs further object to this Interrogatory because it calls for Plaintiffs to make a legal conclusion. Plaintiffs also object to this Interrogatory on the grounds that it contains compound, conjunctive, or disjunctive questions. Plaintiffs object to this Interrogatory because it seeks information in the possession of, is known to, or is otherwise equally available to Defendant. Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or analysis of documents or information. Creating such a compilation or summary would require undue effort and is beyond the scope of standard discovery requests. Plaintiffs further object to this Interrogatory's request for the identity of unnamed class members. This Response is based on information currently known and available to Plaintiffs—

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF INTERROGATORIES (NOS. 15-23)

discovery is ongoing and Plaintiffs reserve the right to amend or supplement this Response as additional discovery and depositions occur in this Action, including the deposition of Defendant.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows: Defendant's statement misled the public since the public would reasonably assume that Defendant possessed internal or nonpublic information that enabled him to know that the % of spam accounts was more than what Twitter estimated.  As to the May 16 statements, based on public information, investors would not have been able to determine whether the "analysis" from "a bunch of quite smart outside firms" was done at Defendant's behest or whether the supposed analysts received Twitter's internal data through Defendant. a reasonable investor would continue to have been misled by Musk's tweets.  Defendant's first termination letter does not dispute the fact that Twitter turned over some information to Musk. "For nearly two months, Mr. Musk has sought the data and information [from Twitter]." … Sometimes Twitter has ignored Mr. Musk's requests, sometimes it has rejected them for reasons that appear to be unjustified, and sometimes it has claimed to comply while giving Mr. Musk incomplete or unusable information." FAC ¶ 140. With the exception of Musk, Twitter, and their representatives, it was anybody's guess what information fell into which of these three categories. This is consistent with other allegations that, prior to the merger, Musk had access to *some* information, and a reasonable investor would not be able to tell whether this included the bot information that Musk tried to use to torpedo the deal.  Defendant "was privy to confidential proprietary information concerning the Company and its business and operations." *Id.* ¶ 18; *see also* ¶¶ 45, 46, 55–57, 63, 72 (detailing Musk's access to and telephonic and in-person discussions with Twitter board members), 87 (quoting proxy statement: "Over the subsequent months following the announcement of the merger agreement and the merger, Twitter and its representatives, and Mr. Musk and his representatives, met regularly to discuss the transaction and the remaining actions necessary to close the transaction."). In short, there is no unambiguous information regarding what Defendant received from Twitter and when, and investors were thus misled by Defendant's May 17 tweet which implied that he received very unfavorable information from Twitter.  Plaintiffs further refer Defendant to the Court's Motion to Dismiss Order, ECF No.

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF
INTERROGATORIES (NOS. 15-23)

48. Plaintiffs respond further as follows: analysts who closely followed Twitter and issued reports during the Class Period made comments in their analyst reports indicating that they were confused about what informational rights Defendant had and/or what information Musk had received or was entitled to, in light of Defendant's tweets and statements that are at issue in this action. *See* Plaintiffs' Response to Interrogatory No. 19.

**INTERROGATORY NO. 23:**

Identify all rights that You contend Defendant forfeited by waiving financing and business due diligence, as alleged in Paragraph 82 of the FAC.

**RESPONSE TO INTERROGATORY NO. 23:**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California. Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine, including but not limited to the mental impressions of trial counsel. Plaintiffs further object to this Interrogatory because it calls for Plaintiffs to make a legal conclusion. Plaintiffs also object to this Interrogatory on the grounds that it contains compound, conjunctive, or disjunctive questions. Plaintiffs object to this Interrogatory because it seeks information in the possession of, is known to, or is otherwise equally available to Defendant. Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or analysis of documents or information. Creating such a compilation or summary would require undue effort and is beyond the scope of standard discovery requests. This Response is based on information currently known and available to Plaintiffs—discovery is ongoing and Plaintiffs reserve the right to amend or supplement this Response as additional discovery and depositions occur in this Action, including the deposition of Defendant.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

23                          Case No: 3:22-CV-05937-CRB

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF INTERROGATORIES (NOS. 15-23)

By waiving financing and business due diligence, Musk was not entitled to and Twitter was not required to prepare or provide information other than the limited information called for in the merger agreement that was reasonably necessary to consummate the merger.    The Merger Agreement provided Musk with limited information access rights, not a vehicle to conduct due diligence that was knowingly waived.   Further, because he waived financing as a condition of the merger, Musk was obligated to consummate the merger whether or not he obtained any financing.

The Merger Agreement contained no diligence condition.  Each of Parent and Acquisition Sub represented that it "conducted, to its satisfaction, its own independent investigation, review and analysis of the business, results of operations, prospects, condition (financial or otherwise) or assets of the Company and its Subsidiaries," and that, in determining to proceed with the merger, each "relied solely on the results of its own independent review and analysis and the covenants, representations and warranties of the Company" in the merger agreement. § 5.11. Parent and Acquisition Sub further acknowledge that "neither the Company nor any of its Subsidiaries, nor any other Person, makes or has made or is making any express or implied representation or warranty with respect to the Company or any of its Subsidiaries or their respective business or operations, in each case, other than those expressly given solely by the Company in Article IV," and they represent that in agreeing to the merger they were not relying on "any express or implied representation or warranty, or the accuracy or the completeness of the representations and warranties" in the merger agreement about Twitter and its business and its operations "other than those expressly given solely by the Company in Article IV." *Id.*

Dated: March 31, 2025                    **COTCHETT, PITRE & McCARTHY, LLP**

By:   _____/s/ *Tyson C. Redenbarger*_____
                    TYSON C. REDENBARGER
                    *Lead Counsel for Plaintiffs and the Class*

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF INTERROGATORIES (NOS. 15-23)

**BOTTINI & BOTTINI, INC.**


By:    /s/ *Francis A. Bottini, Jr.*
       FRANCIS A. BOTTINI, JR.
       *Lead Counsel for Plaintiffs and the Class*

Case No: 3:22-CV-05937-CRB

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF
INTERROGATORIES (NOS. 15-23)

## PROOF OF SERVICE

I, the undersigned, state:

I am a citizen of the United States and am over the age of 18 and not a party to the within action. My business address is 840 Malcolm Road, Suite 200, Burlingame, California 94010.

On March 28, 2025, I served the following document:

**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF INTERROGATORIES (NOS. 15-23)**

on parties in this action, addressed as stated below:

Alex Spiro
alexspiro@quinnemanuel.com
Jesse Bernstein
jessebernstein@quinnemanuel.com
Jonathan E. Feder
jonathanfeder@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

Michael T. Lifrak
michaellifrak@quinnemanuel.com
Joseph C. Sarles
josephsarles@quinnemanuel.com
Alex Bergjans
alexbergjans@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000

Nathan Archibald
nathanarchibald@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
2755 E. Cottonwood Parkway, Suite 430
Salt Lake City, Utah 84121
Telephone: (801) 515-7300

*Attorneys for Defendant*

**By Electronic Mail**: By causing the document to be sent to each party via electronic mail

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF
INTERROGATORIES (NOS. 15-23)

on March 28, 2025.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on March 28, 2025, at Burlingame, California.

_____
Jeanine Acosta

Case No: 3:22-CV-05937-CRB

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF INTERROGATORIES (NOS. 15-23)

**VERIFICATION**

*PAMPENA V. MUSK.,* CASE NO. 3:22-CV-05937-CRB

I, Brian Belgrave, hereby state and declare as follows:

I have read the foregoing Plaintiffs' Responses and Objections to Defendant Elon R. Musk's Third Set of Interrogatories (NOS. 15-23).  As to those matters within my personal knowledge, I verify that the contents and representations made as to me are true and accurate; as to other matters, on information and belief, I verify that the contents thereof are true and accurate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at ___Portland___, ___OR_____ on this 28/03/25 ___ day of March, 2025.


Brian Belgrave (Mar 28, 2025 12:07 PDT)

BRIAN BELGRAVE

VERIFICATION

**VERIFICATION**

*PAMPENA V. MUSK.,* CASE NO. 3:22-CV-05937-CRB

I, Nancy Price, hereby state and declare as follows:

I have read the foregoing Plaintiffs' Responses and Objections to Defendant Elon R. Musk's Third Set of Interrogatories (NOS. 15-23).  As to those matters within my personal knowledge, I verify that the contents and representations made as to me are true and accurate; as to other matters, on information and belief, I verify that the contents thereof are true and accurate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at ___Roslin___, ___Ontario___ on this 31 day of March, 2025.


Nancy Price (Mar 31, 2025 20:11 EDT)

NANCY PRICE

VERIFICATION

**VERIFICATION**

*PAMPENA V. MUSK.,* CASE NO. 3:22-CV-05937-CRB

I, John Garrett, hereby state and declare as follows:

I have read the foregoing Plaintiffs' Responses and Objections to Defendant Elon R. Musk's Third Set of Interrogatories (NOS. 15-23).  As to those matters within my personal knowledge, I verify that the contents and representations made as to me are true and accurate; as to other matters, on information and belief, I verify that the contents thereof are true and accurate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at __Roslin__, __Ontario__ on this 31 day of March, 2025.


John Garrett (Mar 31, 2025 20:43 EDT)

JOHN GARRETT

VERIFICATION