QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice* )
alexspiro@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
Jessebernstein@quinnemanuel.com
Jonathan E. Feder (*pro hac vice*)
jonathanfeder@quinnemanuel.com
Stephanie Kelemen (*pro hac vice*)
stephaniekelemen@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

*Attorneys for Defendant Elon Musk*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | Case No. 3:22-CV-005937-CRB<br><br>**DEFENDANT ELON MUSK'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF OPINION OF KENNETH M. LEHN**<br><br>Judge:  Hon. Charles R. Breyer<br><br>Hearing Date:   October 31, 2025<br>Time:              10:00 a.m.<br>Courtroom:     6, 17th Floor |

Case No. 3:22-CV-005937-CRB

DEFENDANT ELON MUSK'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF OPINION OF KENNETH M. LEHN

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3)).......................................... 1

SUMMARY OF THE ARGUMENT .......................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 2

ARGUMENT ............................................................................................................................ 6

I.      PLAINTIFFS SEEK TO ELIMINATE ALL EVIDENCE OF WHAT INVESTORS
        ACTUALLY BELIEVED ON MAY 13 ........................................................................ 6

        A.      Dr. Lehn Properly Rebuts Dr. Tabak's Omission Of Analyst Commentary ...................... 6

        B.      Dr. Lehn's Opinions On The Impression Created By The May 13 Tweet Are
                Quintessential To Securities Fraud Cases And Wholly Appropriate Here ......................... 9

II.     DR. LEHN'S OPINIONS EXTEND TO ALL THEORIES OF FALSITY ................................. 12

CONCLUSION.......................................................................................................................... 13

Case No. 3:22-CV-005937-CRB

DEFENDANT ELON MUSK'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF OPINION OF
KENNETH M. LEHN

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
738 F.3d 960 (9th Cir. 2013) ............................................................................................. 1

*In re Apple Inc. Sec. Litig.*,
2023 WL 4556765 (N.D. Cal. July 17, 2023) ...................................................................... 7

*Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
11 F.4th 138 (2d Cir. 2021) .............................................................................................. 11

*Baker v. SeaWorld Ent., Inc.*,
423 F. Supp. 3d 878 (S.D. Cal. 2019) .............................................................1, 8, 10, 11, 13

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
2018 WL 1611835 (N.D. Cal. Apr. 3, 2018) ...................................................................... 7

*Brighton Collectible, LLC v. Believe Prod., Inc.*,
2017 WL 440255 (C.D. Cal. Jan. 30, 2017) ...................................................................... 13

*States ex rel. Brown v. Celgene Corp.*,
2016 WL 6542730 (C.D. Cal. June 29, 2016) .................................................................... 13

*Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*,
285 F.3d 609 (7th Cir. 2002) .............................................................................................. 6

*Fed. Trade Comm'n v. Qualcomm Inc.*,
2018 WL 6522134 (N.D. Cal. Dec. 11, 2018) ................................................................... 10

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ......................................................................................... 9, 11

*Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*,
340 F. Supp. 3d 934 (N.D. Cal. 2018) .............................................................................. 12

*Hubbard v. BankAtlantic Bancorp. Inc.*,
688 F.3d 713 (11th Cir. 2012) ............................................................................................ 9

*J.V. v. Pomona Unified Sch. Dist.*,
2017 WL 11636026 (C.D. Cal. May 2, 2017) .................................................................... 12

*Marmo v. Tyson Fresh Meats, Inc.*,
457 F.3d 748 (8th Cir. 2006) ............................................................................................ 10

*Menorah Mivtachim Ins. Ltd. v. Sheehan*,
2024 WL 1613907 (2d Cir. Apr. 15, 2024) ......................................................................... 9

*Messick v. Novartis Pharm. Corp.*,
747 F.3d 1193 (9th Cir. 2014) .......................................................................................... 13

*Nantworks, LLC v. Bank of Am. Corp.*,
2024 WL 4825237 (C.D. Cal. June 5, 2024) ....................................................................... 8

DEFENDANT ELON MUSK'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF OPINION OF
KENNETH M. LEHN

*In re Novatel Wireless Sec. Litig.*,
  2013 WL 12144150 (S.D. Cal. Oct. 25, 2013) ........................................................................ 8

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
  730 F.3d 1111 (9th Cir. 2013) ....................................................................................... 1, 2, 9

*Pac. Life Ins. Co. v. Bank of New York Mellon*,
  571 F. Supp. 3d 106 (S.D.N.Y. 2021) ................................................................................. 6

*In re REMEC Inc. Sec. Litig.*,
  702 F. Supp. 2d 1202 (S.D. Cal. 2010) .............................................................................. 9

*Rutenberg v. Ortho-McNeil Janssen Pharms., Inc.*,
  2017 WL 5634986 (C.D. Cal. Mar. 27, 2017) .................................................................. 13

*In re Sci. Atlanta, Inc. Sec. Litig.*,
  754 F. Supp. 2d 1339 (N.D. Ga. 2010) ............................................................................... 9

*TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericcson*,
  2016 WL 7042085 (C.D. Cal. Aug. 17, 2016) .................................................................. 10

*In re Tesla, Inc. Sec. Litig.*,
  2022 WL 7374936 (N.D. Cal. Oct. 13, 2022) ................................................................. 9, 10

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab.*
  *Litig.*,
  978 F. Supp. 2d 1053 (C.D. Cal. 2013) ............................................................................. 11

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016) .............................................................................................. 11

*Wadler v. Bio-Rad Labs., Inc.*,
  2016 WL 6070530 (N.D. Cal. Oct. 17, 2016) ................................................................... 12

*Weir v. Allianz SE*,
  2025 WL 1792516 (9th Cir. June 27, 2025) ...................................................................... 11

**Statutes**

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) ........................................................................ 1

Federal Rule of Evidence 702 ..................................................................................................... 1

**Other Authorities**

Civil Local Rule 7-4(a)(3) ........................................................................................................... 1

DEFENDANT ELON MUSK'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF OPINION OF
KENNETH M. LEHN

## STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(a)(3))

Whether the Court should deny Plaintiffs' Motion to Exclude Portions of Opinion of Kenneth M. Lehn given that Dr. Lehn's opinions were properly disclosed pursuant to Federal Rule of Civil Procedure 26(a)(2)(D)(ii) and are sufficiently reliable to be admissible under Federal Rule of Evidence 702 and *Daubert I.*

## SUMMARY OF THE ARGUMENT

The Court should admit the entirety of the expert opinion of Dr. Kenneth M. Lehn, Defendant's rebuttal expert to Plaintiffs' loss-causation and damages expert, Dr. David Tabak. Dr. Lehn applies the accepted methodology in securities cases—review of analyst commentary to determine what information the market understood and reacted to—and provides a reliable and comprehensive critique of Dr. Tabak's analysis. *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 901-902 (S.D. Cal. 2019) ("Contrary to Defendants' assertion that [expert] simply lists and summarizes these reports and articles, [expert's] opinion of *how* the market interpreted SeaWorld's statements from the August 13, 2014 press release will assist the trier of fact in determining loss causation.").

Contrary to Plaintiffs' portrayal, Dr. Lehn's review was not selective. In contrast to Dr. Tabak—who cited zero analyst reports in the entirety of his expert report—Dr. Lehn cited virtually all analyst commentary issued in the two days following the May 13 Tweet, the relevant period for assessing market reaction. Dr. Lehn—with the assistance of his support team—examined all relevant analyst commentary. Unsurprisingly then, Plaintiffs identify no report with conclusions inconsistent with his analysis. Their assertion that Dr. Lehn "ignored" evidence rests only on an artificially broadened date range, not on any concrete omission that would alter his conclusions. And, in any event, the fact that an expert does not review every available document does not render his testimony inadmissible. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*, Inc., 738 F.3d 960, 969 (9th Cir. 2013) ("contrary evidence" not considered by expert "is to be attacked by cross examination . . . not exclusion").

More fundamentally, Dr. Lehn highlights Dr. Tabak's failure to disaggregate the impact of the alleged falsity from the impact of information Plaintiffs claim was true. This methodological defect is fatal: it renders Dr. Tabak's opinion unreliable and destroys Plaintiffs' ability to prove loss causation. *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1123 (9th Cir.

2013) (To show loss causation, plaintiffs "must reasonably distinguish the impact of" the alleged fraud "from other economic factors."). Whereas Dr. Tabak simply assumed the market responded to the alleged falsity in Mr. Musk's May 13 Tweet, without citing a single analyst report, Dr. Lehn conducted a comprehensive review showing analysts understood the May 13 Tweet as evidence that Mr. Musk was getting "cold feet" and reconsidering the deal—information Plaintiffs allege to be true.

Dr. Lehn's testimony therefore directly addresses all of Plaintiffs' numerous and shifting theories of falsity, and demonstrates that the market reaction was to information Plaintiffs' claim is *true*, not the alleged fraud. Because Dr. Lehn's analysis rests on the same accepted methodology routinely used in securities litigation, and because it exposes the foundational unreliability of Dr. Tabak's opinion, the Court should admit the challenged portions of Dr. Lehn's testimony in full.

## FACTUAL BACKGROUND

Defendant proffered Dr. Kenneth M. Lehn as a rebuttal expert on loss causation and damages. Dr. Lehn is a Professor Emeritus of Finance at the University of Pittsburgh and Senior Consultant at Compass Lexecon. Ex. 233 (Lehn Rp't) ¶ 1. He has published more than 50 scholarly papers, primarily in the field of corporate finance. He served on the editorial boards of several scholarly journals and is a founding editor of the *Journal of Corporate Finance*. *Id.* He was the Deputy Chief Economist from 1984-1985, and Chief Economist from 1987-1991 of the Securities and Exchange Commission. *Id.* at ¶ 2. Since leaving the SEC, he has been retained as an expert witness more than 100 times to opine on various topics, including materiality, loss causation, and damages, often in matters involving M&A. *Id.* Plaintiffs do not dispute that Dr. Lehn is a highly qualified professional to opine on the subject matter of this case.

Dr. Lehn opines that Plaintiffs' expert, Dr. David Tabak, makes several mistakes which undermine the reliability of his opinion that the alleged misrepresentations contained in Mr. Musk's May 13 Tweet caused Twitter's stock to fall and remain deflated throughout the Class Period. Notably, Dr. Tabak treated all the information contained in the May 13 Tweet as an "interwoven bundle" without reviewing *a single* analyst report to determine what information mattered to the market. Ex. B (Tabak Dep.) 165:24-166:1, 178:11-25. Dr. Lehn opines that Dr. Tabak's failure to disaggregate the market's reaction to the alleged fraud from the information Plaintiffs allege is true—that Musk was getting "cold feet"—proves fatal to his analysis. Simply put, Dr. Tabak's failure renders it impossible for a jury to determine what would

have occurred in a "but-for" world.  Additionally, deviating from the traditional approach taken by loss causation experts in securities cases, Dr. Tabak used simple arithmetic to conclude that the alleged fraud caused billions in investor losses: because the stock experienced a statistically significant decline following the May 13 Tweet, *all* movement must have been caused by the alleged fraud without analyzing any market commentary.  Dr. Lehn rebuts Dr. Tabak's opinion with a more traditional approach involving an empirical review of market commentary to assess the integrity of Dr. Tabak's purely quantitative analysis.  Plaintiffs seek to exclude Dr. Lehn's qualitative analysis, and in doing so, seek to exclude all evidence of what investors ***actually thought*** following the May 13 Tweet.

**Dr. Tabak's Opinion**: Dr. Tabak opines that alleged misrepresentations contained in Mr. Musk's May 13 Tweet—"Twitter deal temporarily on hold pending details supporting calculation that spam/fake accounts do indeed represent less than 5% of users"—caused Twitter's stock price to fall and remain artificially deflated until the "October 24, 2022 alleged corrective disclosure."   Ex. 243[1] (Tabak Supplemental Report[2]) ¶¶ 16-20.

Dr. Tabak performed an event study of Twitter's stock price during the Class Period and concluded that the alleged misrepresentations contained in the May 13 Tweet caused a statistically significant drop in Twitter's stock price.  *Id.* ¶¶ 17-18.  But he then opined that the alleged misrepresentations contained in the Tweet (sent before the trading day on May 13) caused ***100%*** of Twitter's two-day $8.52 price drop on ***both*** May 13 ***and*** May 16.  *Id.* ¶ 23 n. 13.  Dr. Tabak did not disaggregate how much of this deflation was caused by the truthful information the Tweet conveyed.  Tabak Dep. 86:1-87:5.  For example, market analysts interpreted the May 13 Tweet as communicating that Mr. Musk was getting "cold feet" about the deal—a fact that Plaintiffs allege was the true state of affairs. Ex. 238 (Plaintiffs' Supplemental Responses to Defendant's First Set of Interrogatories), at No. 10.  Dr. Tabak admitted that he did nothing to isolate how much Twitter's stock price fell on the allegedly true news that Mr. Musk was getting "cold feet" versus how much it fell in response to the alleged misrepresentations about his rights under the Merger

---

[1]   Deposition exhibits are marked with numbers (*e.g.*, 1-500); new exhibits in support of this motion are marked with letters (*e.g.*, A-Z).  All cited exhibits are to the Bergjans Declaration.

[2]   On July 18, 2022, Dr. Tabak submitted a Supplemental Report ("Tabak Rp't") correcting an error he discovered during his first deposition.  The Supplemental Report contains the entirety of Dr. Tabak's opinions.

Agreement. Tabak Dep. 86:1-87:4. Incredibly, Dr. Tabak does not cite *a single* analyst report. His conclusions are based solely on arithmetic, rather than an empirical evaluation of the market's reaction.

After using an event study to determine loss causation, Dr. Tabak abandoned it to calculate artificial deflation (i.e., damages) during the Class Period. Dr. Tabak invented a novel and seemingly unprecedented "constant percentage" method of calculating damages. Before Mr. Musk's May 13 Tweet, Twitter traded at $45.08—ten dollars lower than the $54.20 merger price. Tabak Rp't ¶ 22. Dr. Tabak refers to this difference as the merger discount. *Id.* Dr. Tabak compared the so-called merger discount on May 12 and May 16 (based on his assumption that Twitter's entire price drop on May 16 was caused by the May 13 Tweet as well), divided the $9.12 "discount" on May 12 by the $16.81 "discount" on May 16, which resulted in 54.3% of the discount unrelated to the alleged misrepresentation and the remainder, or 45.7% of the discount as attributable to the alleged misrepresentation. *Id.* He then mechanically applied this percentage as a constant across the entire Class Period—taking the difference between Twitter's stock price and $54.20 and multiplying it by 0.457 to calculate deflation—except for adjustments made on August 23 and July 8 to account for statistically significant stock movements that Dr. Tabak concedes were not attributable to the alleged fraud. *Id.* at ¶¶ 23-24. In both his initial calculation of his "constant percentage" and in its application throughout the Class Period, Dr. Tabak did not attempt to isolate the stock price decrease caused by allegedly true statements in Mr. Musk's Tweet to determine damages. Tabak Rp't ¶¶ 22-24

**Dr. Lehn's Opinion**: Dr. Lehn opines that the market's reaction to the May 13 Tweet reflected the true state of affairs according to Plaintiffs—that the market perceived that Mr. Musk was getting "cold feet" about the transaction—and that this perception, not any alleged misrepresentation, impacted Twitter's stock price. Lehn Rp't ¶ 38. His conclusions are grounded in an extensive review of contemporaneous analyst commentary.

First, Dr. Lehn explains that Dr. Tabak's opinions are flawed in conception and theory. Dr. Tabak fails to demonstrate loss causation because he did no analysis whatsoever to determine whether the May 13 price movement was attributable to the alleged fraud, as opposed to other information conveyed by the Tweet. Dr. Lehn points out that Plaintiffs do not disaggregate the effect of information that he understands Plaintiffs claim to be true from the alleged misrepresentation. Lehn Rp't at ¶ 39. Plaintiffs argue that the

DEFENDANT ELON MUSK'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF OPINION OF KENNETH M. LEHN

May 13 Tweet simultaneously conveyed truthful information—that Mr. Musk was getting "cold feet" and the deal might be delayed—and also the alleged misrepresentation. *Id.* However, Dr. Tabak wrongly attributes the entire stock price decline to the alleged misrepresentation, ignoring any potential impact caused by the market learning that Mr. Musk may no longer wish to proceed with the merger. *Id.* Thus, Dr. Lehn concludes that Dr. Tabak fails to disaggregate the impact of the alleged fraud from other causes of the stock price movement. *Id* at ¶ 40.

Second, Dr. Lehn conducted a comprehensive review of analyst commentary following the May 13 Tweet to test whether Dr. Tabak's failure to disaggregate undermines his conclusions. Ex. A (Lehn Dep.) at 30:2-5. At Dr. Lehn's direction, his staff reviewed every analyst report issued between April 25, 2022 to October 10, 2022. Lehn Rp't at ¶ 53 n. 80; Lehn Dep. at 11:8-20. Dr. Lehn asked his staff to identify the analyst reports that were published "around the key events" because "these are the most important in determining what the market was reacting to when key information was released to the market." *Id.* at 16:21-24.

In total, Dr. Lehn not only reviewed but *explicitly cited and relied upon* all but three analyst reports from the May 13 timeframe. *Compare* Lehn Rp't Appx. B at 2-3 *with* Ex. C (Mot. Ex. 3) at 4-5; 17. Based on his review of the analyst commentary surrounding the May 13 Tweet, Dr. Lehn concluded that "the market was not reacting to a belief or a concern that the May 13 Tweet suggested Mr. Musk had contractual rights to walk away from the deal if Twitter did not provide the information on bots/spam accounts." Lehn Rp't at ¶ 54; Lehn Dep. at 17:10-21. Dr. Lehn further concluded that the market "was not reacting to a belief that Mr. Musk's statement that the deal was "on hold" meant that Mr. Musk's team was not "continu[ing] to work with Twitter on closing the deal." Lehn Rp't at ¶ 59. Dr. Lehn testified that "there's no evidence, based on the analyst commentary, that the analysts were somehow fooled by the alleged misrepresentation." Lehn Dep. at 24:20-22. To the contrary, Dr. Lehn concluded that the market did react to a belief that Mr. Musk was getting "cold feet" in consummating this deal. Lehn Rp't at ¶¶ 62-66; Lehn Dep. at 26:14-17.

DEFENDANT ELON MUSK'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF OPINION OF KENNETH M. LEHN

**ARGUMENT**

**I.   PLAINTIFFS SEEK TO ELIMINATE ALL EVIDENCE OF WHAT INVESTORS ACTUALLY BELIEVED ON MAY 13**

**A.   Dr. Lehn Properly Rebuts Dr. Tabak's Omission Of Analyst Commentary**

In stark contrast to Dr. Tabak's failure to cite a single analyst report (Tabak Dep. 165:24-166:1, 178:11-25), Dr. Lehn reviewed dozens of analyst reports to test Dr. Tabak's hypothesis that the 100% of the stock price reaction to the May 13 Tweet was caused by the alleged fraud.  Lehn Rp't Appx. B at 2-3; Lehn Dep. 12:18-13:6; 15:10-21; 16:12-24.  Plaintiffs now urge the Court to exclude all portions of Dr. Lehn's opinion that reference analyst commentary, contending that he "carefully select[ed] snippets of analyst reports that he believes favor Musk."  Plaintiffs' Motion to Exclude Portions of Opinion of Kenneth M. Lehn ("Mot.") at 6.  That characterization is flatly wrong.  With the help of his staff, Dr. Lehn reviewed every Twitter analyst report published between April 25, 2022 to October 10, 2022.  Lehn Rp't at ¶ 53 n. 80; Lehn Dep. at 12:18-13:6; *see Pac. Life Ins. Co. v. Bank of New York Mellon*, 571 F. Supp. 3d 106, 115 (S.D.N.Y. 2021) ("[A]n expert may rely on assistants or the opinions of other experts in formulating their own expert opinions . . . The rules of evidence allow an expert to present the work of others if the expert supervised, directed, or participated in that work, and if the expert is qualified in the field and could perform the work themselves.") (internal quotes omitted); *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 612-13 (7th Cir. 2002) ("An expert witness is permitted to use assistants in formulating his expert opinion, and normally they need not themselves testify…[t]he opposing party can depose them in order to make sure they performed their tasks competently; and the expert witness can be asked at his deposition whether he supervised them carefully and whether his relying on their assistance was standard practice in his field.").

Dr. Lehn personally reviewed, relied upon, and cited virtually every report published around the dates he identified as key to his analysis.  Lehn Dep. at 16:12-24; *compare* Lehn Rp't Appx. B at 2-3 *with* Ex. C (Mot. Ex. 3).  The three reports from the May 13 timeframe that he did not explicitly cite in his Report were duplicative of reports he *did cite* as supportive material. Unsurprisingly, they too were consistent with and supported his conclusions.  Two were from CFRA and nearly identical to another CFRA report he analyzed from this period.  *Id.* at 4-5 (Nos. 26 and 27).  The third, from Jefferies, reached

DEFENDANT ELON MUSK'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF OPINION OF
KENNETH M. LEHN

the same conclusion—that Musk was attempting to renegotiate a lower purchase price—that appeared in a contemporaneous Jefferies report he did review. *Id.* at 17 (No. 230). Far from selective, Dr. Lehn's methodology was thorough, reasoned, and corroborated across sources.[3] Notably, Plaintiffs neither asked Dr. Lehn at his deposition whether he reviewed any of the three uncited reports that they now claim are grounds for exclusion, nor sought to depose Dr. Lehn's staff on whether they reviewed analyst reports they now claim Dr. Lehn omitted. *See BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2018 WL 1611835, at *4 (N.D. Cal. Apr. 3, 2018) ("BladeRoom could have solicited discovery from the [expert's] employees who assisted Facebook's experts . . . It seems BladeRoom did not do so.").

Dr. Lehn's review of analyst commentary surrounding the July 8 Termination Letter and alleged corrective disclosure on October 4, was as comprehensive as his approach to the May 13 Tweet. Dr. Lehn cited to seven analyst reports from the two trading days following the July 8 Termination Letter and six published the two days after the October 4 alleged corrective disclosure. *Compare* Lehn Rp't Appx. B at 2-3 *with* Ex. C (Mot. Ex. 3). Dr. Lehn did not cite to one report issued on July 8 by CFRA , but that report was issued **prior to** the Termination Letter. Ex. D (Jul. 8, 2022 CFRA Report). Dr. Lehn did rely on the report issued by CFRA discussing the Termination Letter on July 11, 2022. Ex. E (Jul. 11, 2022 CFRA Report). Similarly, Dr. Lehn did not explicitly reference two reports published on October 4, but those reports contain only general statements that Musk would be closing the Twitter acquisition and do not impact Dr. Lehn's conclusions. Ex. F (Oct. 4, 2022 Citigroup Report) ("Earlier today Elon Musk's advisors sent a letter to Twitter indicating his intent to complete the transaction agreed upon in the April

_____

[3] Plaintiffs argue that Dr. Lehn "cherry-picked" from analyst reports, citing to *In re Apple Inc. Sec. Litig.*, 2023 WL 4556765 (N.D. Cal. July 17, 2023) for the proposition that Dr. Lehn did not explain how he chose the reports that he reviewed. Mot at 9. But Dr. Lehn testified that he reviewed analyst reports from "key dates" which are the "most important in determining what the market was reacting to when key information was released to the market." Lehn Dep. at 15:14-21. Notably, *In re Apple rejected* the argument Plaintiffs advance here that "not consider[ing] all analyst reports" was a basis for an expert's exclusion, correctly ruling that such supposed "flaw" went "to the weight that should be given to his opinions, not their admissibility." *In re Apple*, 2023 WL 4556765, at *6. The expert in *In re Apple* whose testimony was excluded was not even opining, like Dr. Lehn here, on how the market interpreted certain information. Instead, he sought to use analyst reports to explain to the jury how the defendant typically "handled such [earnings] calls in the past," something not even at issue here. *Id.* at *5. And as *In re Apple* makes clear, the "central role of a rebuttal expert" is to "mak[e] a substantive critique of the methods employed by the other experts," which in this case involves a complete omission of any analyst commentary. *Id.* at *1; Tabak Dep. 165:24-166:1, 178:11-25.

DEFENDANT ELON MUSK'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF OPINION OF KENNETH M. LEHN

25th merger agreement at the $54.20 / share price pending the adjournment of the court proceedings."); Ex. G (Oct. 4, 2022 JMP Report) ("This morning, press reports suggest that Elon Musk and Twitter have agreed to close the acquisition of Twitter at the initially agreed to terms of $54.20 cash per share.").

There was nothing "arbitrary" about Dr. Lehn's analysis. He reviewed and cited everything that was not duplicative or irrelevant to his opinion.[4] What is arbitrary, however, is Plaintiffs' own definition of the "relevant" date range. They fault Dr. Lehn for not reviewing reports issued between "May 13 to May 21, July 8 to July 14, and October 4 to October 8." Mot. at 7. But Plaintiffs ignore that their own expert concluded that the May 16 and May 17 alleged misstatements caused no price reaction—and thus were not part of Dr. Lehn's rebuttal analysis. Tabak Rp't at ¶¶ 16-17. Dr. Lehn's opinion focuses on the market's reaction to the May 13 Tweet, which Dr. Tabak concludes was the sole alleged misstatement that caused damages. Tabak Rp't at ¶ 18. According to Dr. Tabak, the market fully incorporated the information conveyed by the May 13 Tweet within two trading days, i.e., by May 16. *Id.* Logically then, the relevant time period that analyst commentary would shed light on what the market believed when reacting to the May 13 Tweet is May 13-16. *See In re Novatel Wireless Sec. Litig.*, 2013 WL 12144150, at *8 (S.D. Cal. Oct. 25, 2013) ("[T]he relevant disclosure dates [are] . . . analyst reports released *simultaneously* to explain the reason for" the stock price reaction.) (emphasis added). Adding four more days of reports, as Plaintiffs propose (Mot. at 7 n. 6), is both unfounded and inconsistent with their own causation theory. Dr. Lehn nonetheless went further, considering the views from all banks that published analyst reports on Twitter through May 17.[5] Lehn Rp't Appx. B at 2-3; Ex. C (Mot. Ex. 3).

In any event, to the extent Plaintiffs claim that Dr. Lehn's opinion is inconsistent with analyst commentary he did not cite, that would be a quintessential topic for cross examination and not a basis for exclusion. *See Alaska Rent-A-Car, , 738 F.3d at 969 ("Shaky but admissible evidence is to be attacked*

---

[4]  Even using the 2-day window provided by Plaintiffs' expert, the number of analyst reports that Dr. Lehn did not cite is inflated due to duplicates. For example, Raymond James published two nearly identical reports on July 11, 2022. The number is further distorted by other materials that would not be cited by an expert. A meeting invite from Wedbush on July 11, 2022 is included in the "analyst reports" that Plaintiffs attack Dr. Lehn for not reviewing and citing.

[5]  To further exaggerate their claims of reports not considered by Dr. Lehn, Plaintiffs point to Tesla analyst reports. Mot at 8 n. 7. Plaintiffs do not explain why they believe Dr. Lehn's opinions must be excluded for failure to consider analyst commentary on *another company*.

DEFENDANT ELON MUSK'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF OPINION OF KENNETH M. LEHN

by cross examination, contrary evidence, and attention to the burden of proof, not exclusion. . . Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."); *Baker*, 423 F. Supp. 3d at 902 (declining to exclude loss causation opinion where expert did not review "a handful of analyst reports"); *Nantworks, LLC v. Bank of Am. Corp.*, 2024 WL 4825237, at *13 (C.D. Cal. June 5, 2024) ("[A]n expert witness need not cite all contrary evidence in forming or offering an opinion . . . To the extent Defendants contend [expert witness] failed to account for certain pieces of evidence, this should be the subject of cross examination but is not, alone, grounds for exclusion."). Of course, Plaintiffs do not identify a single analyst report inconsistent with Dr. Lehn's conclusions—because none exists. As a result, Plaintiffs hope to prevent the jury from hearing that analysts uniformly understood Mr. Musk's Tweet to mean exactly what Plaintiffs themselves allege was true: that Mr. Musk was getting "cold feet" and considering walking away from the deal. Tabak Rp't at ¶ 61; Ex. 238 (Plaintiffs' Supplemental Responses to Defendant's First Set of Interrogatories), at No. 10.

### B.     Dr. Lehn's Opinions On The Impression Created By The May 13 Tweet Are Quintessential To Securities Fraud Cases And Wholly Appropriate Here

The more fundamental problem—and the point of Dr. Lehn's opinion—is that Dr. Tabak does no analysis to disaggregate the market's reaction to the May 13 Tweet's disclosure that Mr. Musk was getting cold feet from the alleged fraud. *See Nuveen*, 730 F.3d at 1123(To show loss causation, plaintiffs "must reasonably distinguish the impact of" the alleged fraud "from other economic factors."); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 421 (7th Cir. 2015) ("[T]o prove loss causation, plaintiffs in securities-fraud cases need to isolate the extent to which a decline in stock price is due to fraud-related corrective disclosures and not other factors."). Notably, although Plaintiffs claim "[d]isaggregation arguments surrounding the market's reaction to information distinct from alleged misrepresentations. . . are routinely handled (and often rejected) by the courts," Mot. at 10, ***all but one*** of the cases Plaintiffs cite reject a loss causation theory premised on an expert opinion infected—like Dr. Tabak's—by a disaggregation issue. *See Menorah Mivtachim Ins. Ltd. v. Sheehan*, 2024 WL 1613907, at *2 (2d Cir. Apr. 15, 2024) (granting summary judgment for failure to disaggregate); *Hubbard v. BankAtlantic Bancorp. Inc.*, 688 F.3d 713, 729-30 (11th Cir. 2012) (granting judgment as a matter of law for failure to

Case No. 3:22-CV-005937-CRB

DEFENDANT ELON MUSK'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF OPINION OF KENNETH M. LEHN

disaggregate); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1275 (S.D. Cal. 2010) (excluding expert and dismissing case for failure to disaggregate); *In re Sci. Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting summary judgment for failure to disaggregate).  The sole case that allowed a non-disaggregated loss causation opinion to go to the jury was *In re Tesla, Inc. Sec. Litig.*, 2022 WL 7374936 (N.D. Cal. Oct. 13, 2022).  That case is distinguishable.  There, the expert reviewed "all related news sources and analyst reports" and took various measures—including reviewing "the minute-by-minute results from his event study"—to isolate the impact of the alleged misrepresentation. *In re Tesla*  at *10.  Dr. Tabak did none of that.  Further, the court noted that there was a "factual basis" to conclude that only the alleged fraudulent statement lead to the price impact.  *Id.* at *11.  The same cannot be said in this case.

Against this backdrop, the disputed portions of Dr. Lehn's opinion are relevant only if the Court deems Dr. Tabak's failure to disaggregate an issue for the jury.  In that event, Dr. Lehn's criticisms are both proper and admissible.  *Fed. Trade Comm'n v. Qualcomm Inc.*, 2018 WL 6522134, at *1 (N.D. Cal. Dec. 11, 2018) ("The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party.") (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006)).  Contrary to Plaintiffs' assertion, the nature of Dr. Lehn's opinion is not that "Musk's actual misstatements should be ignored" (Mot. at 6), but rather that **Dr. Tabak ignores** pertinent information conveyed by the May 13 Tweet.  *See Baker*, 423 F. Supp. 3d at 918 ("Identifying flaws in [expert's] analysis is proper rebuttal testimony."); *TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericcson*, 2016 WL 7042085, at *5 (C.D. Cal. Aug. 17, 2016) ("[D]efendant [may] properly present expert rebuttal of the plaintiff's expert by putting forth its own expert who ... claims that ... the plaintiff's expert's methodology was conducted improperly in some way.").

Plaintiffs also accuse Dr. Lehn of using an "inference only" approach without assessing the actual Tweet itself.  Mot. at 5.  This mischaracterizes Dr. Lehn's opinion.  Dr. Lehn is not interpreting the Tweet himself.  Lehn Dep. at 62:13-24.  Nor is he opining as to falsity, as Plaintiffs contend.[6]  Lehn Dep. at 39:7-

---

[6]  Plaintiffs' point to Dr. Lehn's testimony that the May 13 Tweet "conveyed information to the market that, if anything, enhance[d] the integrity of the price" and that "there was [nothing] nefarious about tweeting something that the market inferred – from which the market inferred a truthful state of affairs."

40:22. He is merely showing how the **market** interpreted the Tweet. *See, e.g.*, Lehn Rp't at ¶ 40. This is entirely appropriate and exactly what a loss causation expert is supposed to do. *See e.g.*, *In re Tesla*, 2022 WL 7374936, at *10 (declining to exclude expert who examined "approximately 2,400 articles published during the Class Period to identify" and rule out any company-specific information that could impact stock price); *Baker*, 423 F. Supp. 3d at 901-902 ("Contrary to Defendants' assertion that [expert] simply lists and summarizes these reports and articles, [expert's] opinion of *how* the market interpreted SeaWorld's statements from the August 13, 2014 press release will assist the trier of fact in determining loss causation.") (emphasis in original).

In assessing how the market interpreted the Tweet, the relevant question is the "impression" created by the statement, not the literal meaning of the words. *See Weir v. Allianz SE*, 2025 WL 1792516, at *1 (9th Cir. June 27, 2025) ("A statement is misleading in the totality of the statements made within the Class Period, affirmatively create[s] an **impression** of a state of affairs that differs in a material way from the one that actually exists.") (internal quotations omitted) (emphasis added). Dr. Lehn's opinion that "analysts inferred that Mr. Musk was getting apprehensive about the deal" is based on how analysts discussed the information they gleaned from the Tweet. Lehn Rp't ¶¶ 61-66. Here, the jury is entitled— indeed, **required**—to consider what the effect of a fully corrective statement would have been, which the jury could conclude included some statement that Musk was getting "cold feet" and looking for a way out of the deal according to Plaintiffs' theory of the true state of affairs. *Glickenhaus*, 787 F.3d at 417 ("The amount of inflation caused by a false statement is the difference between the stock price after the false statement and what it *would have been* had the statement reflected the truth. What the model measures is the effect the truth would have had on the price.") (emphasis in the original); *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016) ("[T]he proper question for purposes of our inquiry into price impact is not what might have happened had a company remained silent, but what would have happened if it had spoken truthfully."); *Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 11 F.4th 138, 141 n.3 (2d Cir. 2021) ("[P]rice inflation is measured by what would have happened if the defendant had told the truth.").

---

Lehn Dep. at 24:4-8; 24:10-25:6. But Dr. Lehn was merely responding to hypothetical questions posed by Plaintiffs' counsel outside the scope of his report. 23:21-23 ("If Musk was trying to create a significant impact on the market, he picked a good way to do it through this 5/13 tweet, didn't he?"); 24:10 ("True statements can disrupt markets, right?").

There is no caselaw holding that "subtext" deemed critical by the market cannot be considered for purposes of loss causation, and Plaintiffs cite no cases in support of their claim that a so-called "inferences-only" approach is improper. Mot. at 11. And inference or not, Dr. Lehn merely points out that the market appeared to react to information other than what Dr. Tabak assumes, which is proper rebuttal testimony. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1069 (C.D. Cal. 2013) ("As a rebuttal witness, he may … point out flaws in [opposing expert's] methodologies or conclusions.").

## II.    DR. LEHN'S OPINIONS EXTEND TO ALL THEORIES OF FALSITY

Plaintiffs argue that Dr. Lehn does not address the full gamut of their falsity arguments. Mot. at 13. However, their own expert adopts the theories of falsity for the May 13 Tweet put forth by the Court rather than the seven theories (*id.*) Plaintiffs now enumerate for the first time. Tabak Dep. At 131:13-132:12; Tabak R'pt at 6; Dkt. 48 (MTD Order) at 20. The fact that Dr. Lehn's opinion is only responsive to Dr. Tabak's framing does not render it inadmissible—to the contrary, it makes it proper rebuttal testimony. *J.V. v. Pomona Unified Sch. Dist.*, 2017 WL 11636026, at *25 (C.D. Cal. May 2, 2017) ("Rebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts.") (quotations omitted); *see also Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 995 (N.D. Cal. 2018) ("Rebuttal testimony cannot be used to advance new arguments or new evidence.") (quoting *Wadler v. Bio-Rad Labs., Inc.*, 2016 WL 6070530, at *3 (N.D. Cal. Oct. 17, 2016)

In any case, Plaintiffs' seven theories of falsity (Mot. at 13) largely overlap with and are duplicative of each other, and all are addressed in Dr. Lehn's opinion. Lehn Dep. 39:18-40:4; 40:6-22. Each of these theories boil down to whether Mr. Musk had certain rights under the Merger Agreement. This is consistent with the Court's framing of falsity for the May 13 Tweet: "Plaintiffs plausibly allege that Defendant's right to bot data under Sections 6.4 and 6.11 of the Merger Agreement was far more limited than the broad due diligence rights he undisputedly waived prior to his May 13 tweet—and that the information about bot calculations fell into the category of due diligence that Twitter had no obligation to provide." Dkt. 48 (MTD Order) at 20; Lehn Dep.at 39:4-10. Dr. Lehn specifically assessed and ruled out that the market was reacting to a belief that Musk had the right to the information he was seeking under the terms of the

Merger Agreement. Lehn Rp't ¶¶ 67-73. To the extent it is a distinct theory, Dr. Lehn even addressed Plaintiffs' allegation that the May 13 Tweet was false because "Twitter had not agreed to any deferral of the Buyout" (Mot. at 13) by concluding that analyst commentary showed the market did not interpret of the Tweet in that manner and therefore any loss would not have been caused by such interpretation (regardless of whether such interpretation was correct, an opinion Dr. Lehn did not offer). Lehn Rp't ¶¶ 74-79.

Opining whether the market's interpretation of the alleged false statements was consistent or inconsistent with Plaintiffs' theory of falsity is permissible expert testimony in a securities case. *Baker*, 423 F. Supp. 3d 878 at 901-902; *see also* United *States ex rel. Brown v. Celgene Corp.*, 2016 WL 6542730, at *4 (C.D. Cal. June 29, 2016) ("The fact that evidence <u>could</u> have been addressed in a party's case-in-chief does not necessarily preclude its admission in rebuttal … All that is required is for the information to repel other expert testimony … This may require a party to marshal evidence and argument in a rebuttal report to explain why the opposing party's expert is wrong.") (emphasis in original) (internal quotations omitted). Because Dr. Lehn's opinions apply no matter how Plaintiffs decide to frame falsity at trial, they are admissible. *See Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (the "bar is low" for admitting expert testimony); *Brighton Collectible, LLC v. Believe Prod., Inc.*, 2017 WL 440255, at *7 (C.D. Cal. Jan. 30, 2017) ("[A]n expert is not required to testify to every element of a party's claim for their opinions to be admissible."); *Rutenberg v. Ortho-McNeil Janssen Pharms., Inc.*, 2017 WL 5634986, at *2 (C.D. Cal. Mar. 27, 2017) ("[T]he district court will not exclude expert testimony simply because … the opponent has offered cogent criticisms of that testimony.").

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Exclude Portions of Opinion of Kenneth M. Lehn should be denied.

DATED:  September 12, 2025                    QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  ___/s/ Jesse A. Bernstein_____
   Alex Spiro
   Michael T. Lifrak
   Stephen A. Broome
   Jesse A. Bernstein

   *Attorneys for Defendant Elon Musk*

DEFENDANT ELON MUSK'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF OPINION OF KENNETH M. LEHN

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on this the 12th day of September, 2025.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ Alex Bergjans
    Alex Spiro
    Michael T. Lifrak
    Stephen A. Broome
    Jesse A. Bernstein

*Attorneys for Defendant Elon Musk*

DEFENDANT ELON MUSK'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF OPINION OF KENNETH M. LEHN

**ATTESTATION**

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories herein.

By  /s/ Alex Bergjans
    Alex Spiro
    Michael T. Lifrak
    Stephen A. Broome
    Jesse A. Bernstein

    *Attorneys for Defendant Elon Musk*

Case No. 3:22-CV-005937-CRB
DEFENDANT ELON MUSK'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF OPINION OF KENNETH M. LEHN