**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
*jcotchett@cpmlegal.com*
Mark C. Molumphy (SBN 168009)
*mmolumphy@cpmlegal.com*
Tyson C. Redenbarger (SBN 294424)
*tredenbarger@cpmlegal.com*
Elle D. Lewis (SBN 238329)
*elewis@cpmlegal.com*
Gia Jung (SBN 340160)
*gjung@cpmlegal.com*
Caroline A. Yuen (SBN 354388)
*cyuen@cpmlegal.com*
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
*fbottini@bottinilaw.com*
Albert Y. Chang (SBN 296065)
*achang@bottinilaw.com*
Aaron P. Arnzen (SBN 218272)
*aarnzen@bottinilaw.com*
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | Case No. 22-cv-5937-CRB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS OF PROFESSOR EMILY STRAUSS**<br><br>Date:     October 31, 2025<br>Time:    10:00 a.m.<br>Courtroom: 6, 17th Floor<br>Judge:   Hon. Charles R. Breyer |

Case No: 3:22-CV-05937-CRB

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE
OPINIONS OF PROFESSOR EMILY STRAUSS

# TABLE OF CONTENTS

**Page**

ISSUE PRESENTED ......................................................................................................................1

SUMMARY OF ARGUMENT .......................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................1

LEGAL STANDARD ....................................................................................................................2

ARGUMENT .................................................................................................................................3

     I.     Strauss is an Accomplished Securities Professor, and her Testimony is Relevant and Will Help the Jury ...................................................................................3

     II.    Strauss's Testimony is Clearly Relevant in this Case ................................................5

          A.     Expert Testimony on Schedule 13D Filings Is Relevant and Helpful .............6

          B.     Expert Testimony on Stock Price, Ownership, and Movement Will Help the Jury ...................................................................................................8

CONCLUSION ............................................................................................................................10

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINIONS OF
PROFESSOR EMILY STRAUSS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Berckeley Inv. Grp., Ltd. v. Colkitt*
    455 F.3d 195 (3d Cir. 2006).......................................................................................... 4, 5

*Brown v. Google, LL*
    2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) .......................................................... 3, 6

*Daubert v. Merrell Dow Pharms., Inc.*
    43 F.3d 1311 (9th Cir. 1995)............................................................................................ 3

*Focal Point Films, LLC v. Sandh*
    2020 WL 5760355 (N.D. Cal. Sept. 28, 2020) ................................................................ 5

*Hafen v. Howel*
    2023 WL 2188566 (D. Utah Feb. 23, 2023) ................................................................... 4

*Hangarter v. Provident Life & Acc. Ins. Co*
    373 F.3d 998 (9th Cir. 2004)................................................................................... 3, 5, 8

*Mata v. Oregon Health Auth.*
    739 F. App'x 370 (9th Cir. 2018) .................................................................................... 9

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*
    523 F.3d 1051 (9th Cir. 2008)......................................................................................... 5

*Primiano v. Cook*
    598 F.3d 558 (9th Cir. 2010)....................................................................................... 3, 8

*Sec. & Exch. Comm'n v. Zouvas*
    2019 WL 4016687 (D. Ariz. Aug. 26, 2019) .................................................................. 7

*Specht v. Jensen*
    853 F.2d 805 (10th Cir. 1988).......................................................................................... 5

*United States v. Chartier*
    2021 WL 3795352 (E.D.N.Y. Aug. 26, 2021), aff'd, 2024 WL 3617023 (2d Cir.
    Aug. 1, 2024) ................................................................................................................... 3

*United States v. Rahm*
    993 F.2d 1405 (9th Cir. 1993)......................................................................................... 5

*United States v. Rizk*
    660 F.3d 1125 (9th Cir. 2011)....................................................................................... 10

*United States v. Weinstein*
2025 WL 509245 (D.N.J. Feb. 14, 2025)............................................................................ 4

*Waymo LLC v. Uber Techs., Inc.*
2017 WL 5148390 (N.D. Cal. Nov. 6, 2017).................................................................. 8, 9

**Other Authorities**

Federal Rule of Evidence 702 .......................................................................................*passim*

Federal Rules of Civil Procedure 26(a)(2)(D)(ii) and 37(c)(1)........................................ 1

Case No: 3:22-CV-05937-CRB

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE
OPINIONS OF PROFESSOR EMILY STRAUSS

## ISSUE PRESENTED

Whether the Court should exclude portions of Professor Emily Strauss's Report and testimony from use in this case under Federal Rules of Civil Procedure 26(a)(2)(D)(ii) and 37(c)(1), Federal Rule of Evidence 702, and *Daubert I*.

## SUMMARY OF ARGUMENT

Musk's evidentiary objections to Prof. Strauss's report and testimony fail to connect. Testimony from "teaching experts" is routinely admitted to give the finder of fact background information about specialized fields. Here, testimony about nuanced securities issues, even if simplified, is helpful for the jury. Indeed, jurors will benefit from a "securities 101" course, which will explain case context, describe what certain technical documents are (*i.e.*, a 10-K or Schedule 13D), explain esoteric terminology, and give a helpful background on our securities markets and regulations. Case law is clear that such testimony is appropriate in a securities case like this.

Musk's complaints about Prof. Strauss's testimony boil down to speculation that Plaintiffs' choice to use this expert is driven by some sinister ulterior motive. Musk's paranoia is based on the incorrect assumptions that Prof. Strauss will improperly tell the jury that Musk violated other securities laws (she will not, even though he did), and that Prof. Strauss will testify that Musk caused Twitter's stock price to move (again, she will not, even though he did). In short, Prof. Strauss's testimony is not an improper attempt to prejudice Musk—truthful and relevant testimony is not unfairly prejudicial. Musk can address any deficiency he perceives in Strauss's testimony through cross-examination and rebuttal testimony at trial.

## FACTUAL BACKGROUND

Emily Strauss is an Associate Professor at the University of California College of the Law, San Francisco (formerly UC Hastings). *See* ECF 248-3 at 2 (the "Strauss Report"). Prior to that, Prof. Strauss was a member of the law faculty at Duke University School of Law for seven years. *Id*. Prof. Strauss's "teaching and research focus on corporate and securities law," and she has "taught courses including Business Associations, Securities Litigation and Enforcement, and Financial Regulation, and [has] published multiple legal articles in these areas." *Id*. Prior to academia, Prof.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE
OPINION OF PROFESSOR EMILY STRAUSS

Strauss was an associate at Sullivan & Cromwell, where she concentrated on securities and business dispute litigation and regulatory investigations. *Id.*

Professor Strauss's report and testimony will educate the factfinder about the securities markets, general principles relevant to this case, securities terminology, and regulations that are relevant in this case. *See id.* at 2-3. Prof. Strauss summarizes the topics of her testimony as follows:

- The structure of the securities markets;
- The characteristics and general background of companies traded on public markets;
- Common securities industry terminology;
- Types of investors, from individuals to funds that manage retirement accounts for various professionals;
- The role of the U.S. Securities and Exchange Commission ("SEC") in regulating public companies; and
- The disclosure obligations of SEC-registered public companies.

Strauss Report at 2-3. Prof. Strauss also includes several charts depicting stock price movements for Twitter stock and Tesla stock during relevant time periods in this case.

Importantly, and contrary to Musk's assertions, Prof. Strauss does not opine on any legal conclusions or attempt to instruct the jury on the law. *Id.*

## LEGAL STANDARD

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion *or otherwise* if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*See* Fed. R. Evid. 702 (emphasis added).

The Advisory Committee Notes, 2000 Amendment, further explain that expert testimony is appropriate if used to "educate the factfinder about general principles." *See* Fed. R. Evid. 702

Case No: 3:22-CV-05937-CRB

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINION OF PROFESSOR EMILY STRAUSS

(Advisory Committee Notes, 2000 Amendment). It is explicitly and well recognized that such testimony can, but need not, apply the facts of the case to the area of expertise.

> For example, experts might instruct the factfinder on the principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports, without ever knowing about or trying to tie their testimony into the facts of the case. ***The amendment does not alter the venerable practice of using expert testimony to educate the factfinder on general principles. For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case.***

*Id.* (emphasis added).

Similarly, to pass the Daubert test, the expert's testimony must be "relevant to the task at hand" and must "logically advance[ ] a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995). Courts should screen "unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004). Even "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

<strong>ARGUMENT</strong>

**I.    Prof. Strauss is an Accomplished Securities Professor, and her Testimony is Relevant and Will Help the Jury**

Opinions that "provide background and context information," even if "general in nature," are permitted under Rule 702. *Brown v. Google, LLC*, 2022 WL 17961497, at *10 (N.D. Cal. Dec. 12, 2022) (expert testimony permitted in privacy case regarding what privacy is, the importance of privacy, the different types of data, and other general privacy issues). Musk argues that stock price fluctuations is "not beyond the reach or knowledge of the average juror" but he cites no support for this proposition. ECF 248 at 10. While Musk and his team of attorneys and banks might be intimately familiar with the concept of the stock market and stock prices, it is unclear why that should be common knowledge among jurors. Indeed, courts routinely allow "securities 101" expert testimony like Prof. Strauss's, which will educate the factfinder on general principles concerning the securities markets, technical terminology, and topics related to this case. *See United States v. Chartier*, 2021

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINION OF
PROFESSOR EMILY STRAUSS

WL 3795352, at *2, *4, *6 (E.D.N.Y. Aug. 26, 2021), aff'd, 2024 WL 3617023 (2d Cir. Aug. 1, 2024) (fn. 2: "Deborah Oremland . . . testified as an expert witness in securities terminology and regulations. … She also explained that units of stock are referred to as shares and can be purchased or sold (i.e., traded) over public markets."; fn. 11: "explained that a reverse merger occurs when a private company takes over a publicly traded shell company."; fn. 14: "explained that a person buying or selling stock sets a 'limit order' by designating a specific price to buy or sell."). *See also United States v. Weinstein*, 2025 WL 509245, at *4 (D.N.J. Feb. 14, 2025) (allowing testimony on "securities laws and technical financial terms of art," finding the testimony would "not usurp the role of the judge. An expert may testify to the 'customs and business practice in the securities industry' to provide important context.") (citing *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 218 (3d Cir. 2006)). *See also Hafen v. Howell*, 2023 WL 2188566 at *2, (D. Utah Feb. 23, 2023) (collecting cases where courts admitted generalized expert testimony "to help jurors assess whether an investment scheme was a Ponzi scheme, reasoning such testimony can be relevant and helpful to the trier of fact on this issue").

Here, Prof. Strauss is a seasoned law professor whose job it is to expertly break down complex securities law concepts into simple, digestible explanations for law students. That Musk considers the Strauss Report to read like a "beginner's securies law course" is precisely why Prof. Strauss can provide instructive value as an expert who will break down these potentially foreign concepts for the jury, who will no doubt hear about stocks, stock prices, and securities terminology all throughout trial. ECF 248 at 1.

Aside from several backhanded comments, Musk does not challenge Prof. Strauss's expertise on "securities 101." Instead, Musk argues that Prof. Strauss's testimony consists of improper legal conclusions. ECF 248 at 5. That argument is easily dispelled. Prof. Strauss will testify as to foundational securities market concepts, the relevant requirements that apply to public companies, and the relevant filings that will be discussed in this case, *i.e.*, Twitter's 10-Ks or Musk's Schedule 13Ds. Strauss Report at 1-18. Explaining that public companies customarily file periodic reports and that individuals with significant stakes in companies must also submit filings at times is not an

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINION OF
PROFESSOR EMILY STRAUSS

improper legal opinion. *See Berckeley, supra*, 455 F.3d at 218 ("customs and business practices in the securities industry at the time the parties entered into the Agreement provides an important context which will aid the jury in determining whether Berckeley had the requisite scienter at the time to evade the registration requirements."). Additionally, explaining that the SEC and private parties can enforce securities laws is not an improper legal conclusion as Musk claims. *Id*. In short, Prof. Strauss's testimony is proper and she will not testify that Musk violated the law—indeed, she was careful to only discuss general principles, leaving the questions of fact and legal conclusions for the judge and jury. ECF 248-2, Strauss Tr. at 23:9-23.

In support of his argument, Musk cites *Hangarter v. Provident Life & Acc. Ins. Co*., but there, the Ninth Circuit found that the expert "testimony did not improperly usurp the court's role by instructing the jury as to the applicable law." 373 F.3d at 1017 (9th Cir. 2004). The *Hangarter* Court confirmed that "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Id., citing Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988). That is exactly the circumstance here.

The other cases Musk cite stand for the basic proposition that experts cannot opine on the ultimate issue of law, which Prof. Strauss does not do. *See Focal Point Films, LLC v. Sandhu*, 2020 WL 5760355, at *6 (N.D. Cal. Sept. 28, 2020); *see Nationwide Transp. Fin. v. Cass Info. Sys., Inc*., 523 F.3d 1051, 1058 (9th Cir. 2008) (excluding legal conclusions, while allowing discussion of "industry conditions, standards, and practices," as well as "factual corporate norms."). She will testify to common practices, standards, and terminology (among other general issues), which will certainly "aid the jury in understanding the facts in evidence" because many of the facts in this case are "couched in legal terms." *Hangarter*, 373 F.3d 998, 1017 (9th Cir. 2004).

## II.    Prof. Strauss's Testimony is Clearly Relevant in this Case

The Ninth Circuit has explained that "not every expert need express, nor even hold, an opinion with regard to the issues involved in a trial. . . . Rather, the key concern is whether expert testimony

5

Case No: 3:22-CV-05937-CRB

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINION OF PROFESSOR EMILY STRAUSS

will assist the trier of fact in drawing its own conclusion as to a 'fact in issue.'" *United States v. Rahm*, 993 F.2d 1405, 1411 (9th Cir. 1993).

Prof. Strauss's report and testimony are obviously relevant to the issues in this case. This case involves claims that Musk violated Federal securities laws in relation to his purchase of Twitter. Prof. Strauss's report and testimony concerning the securities markets, securities industry terminology, common investors, the SEC, and relevant required disclosures—all of which will be discussed at trial—will aid the jury in understanding this case. For example, not all jurors will understand options trading, what it means to be a public company, and the types of standard regulations and requirements that public companies comply with. *See* Strauss Report, at 4-20. Paradoxically, while arguing that Prof. Strauss's report teaches "basic concepts," Musk also suggests that one would need to read Yahoo Finance or a history textbook or indeed take a "beginner's securities law course" to learn the information expertly proffered by Prof. Strauss. ECF 248 at 1. Jurors will benefit from Prof. Strauss's accessible explanation on how to read a stock chart, the history of the U.S. stock market, and descriptions of what 10-K and 10-Q forms are, just to name a few. Strauss Report, 7, 17-18. Such background information is permitted under Rule 702 and Daubert. *Brown*, 2022 WL 17961497, at *10.

Musk focuses on two subjects of Prof. Strauss's testimony, arguing that they are irrelevant or confusing—(1) the discussion on Section 13D and (2) the discussion on stock price ownership and price movement. ECF 248 at 9. As explained below, both arguments are meritless.

## A.    Expert Testimony on Schedule 13D Filings Is Relevant and Helpful

As alleged in Plaintiffs First Amended Complaint ("FAC"), "[d]espite the fact that Musk already owned 5% of Twitter's stock on or before March 26, 2022, Musk failed to file a Schedule 13D with the SEC, as he was required to do." FAC ¶ 47.[1] The FAC also alleges that when Musk belatedly disclosed his stake in Twitter, "Twitter shares rose more than 27% on the announcement on an extraordinarily large volume of 268.42 million shares." *Id*. at ¶ 48.

These facts—which are related to Musk's purchase of Twitter—are relevant. At a minimum,

---

[1] All "FAC ¶ _" citations refer to Plaintiffs' June 8, 2023 First Amended Complaint, ECF 31.

Case No: 3:22-CV-05937-CRB

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINION OF
PROFESSOR EMILY STRAUSS

the 13D filings are background and will be discussed by witnesses, including Musk, at trial. *See* MSJ Ex. 3 [ECF 253-4][2] at 43-47; MSJ Ex. 13 [ECF 253-14] at 96-99; MSJ Ex. 14 [ECF 253-15] at 123 (Musk testified about his 13D filings during his depositions in this case and the SEC case). Additionally, the timing of the filings and the impact, *i.e.,* that the stock market reacted so strongly, are further evidence that Musk knew his actions had the ability to disrupt the stock market. *See id.,* MSJ Ex. 3 [ECF 253-4] Musk SEC Tr. at 43-47. Evidence that Musk knew he could disrupt the markets, and did significantly disrupt the markets when he filed his 13Ds, is relevant to scienter.

Additionally, Musk **waived due diligence** in a 13D filing made on April 20, 2022. *See* FAC ¶¶ 29, 112. Musk's waiver of due diligence is a central issue in this case. Accordingly, it is plainly wrong to argue that Schedule 13Ds, and Prof. Strauss's explanation of those filings, are irrelevant.

Musk also incorrectly asserts that Prof. Strauss admitted her 13D opinions are irrelevant. To the contrary, Prof. Strauss testified that Musk's Schedule 13D filings were relevant to the "broad story of, you know, the facts of what happened here." MTE Ex. A [ECF 248-2][3], Strauss Tr. at 139-140. Prof. Strauss further explained the relevance of her discussion of a Schedule 13D filing: "as with the rest of my report, the idea is to give the jury some context and some terminology for the story, for the facts that they will hear argued in this case. And a 13D is – is relevant to that." *Id.* While Strauss's testimony is clearly relevant to issues in this case, the law does not require experts to tie their testimony to specific factual matters at issue in the case. *See Sec. & Exch. Comm'n v. Zouvas*, 2019 WL 4016687, at *4 (D. Ariz. Aug. 26, 2019) ("Federal Rule of Evidence 702 simply does not require that an expert 'tie' his conclusions and opinions to the specific facts of the case; rather, his testimony needs to "help the trier of fact to understand the evidence.'"). Here, there can be no dispute that a basic understanding of what a Sechdule 13D filing is, and who is required to file

---

[2] "MSJ Ex. ___ [ECF 253___]" citations refer to exhibits attached to the Declaration of Tyson C. Redenbarger in Support of Plaintiffs' Motion for Partial Summary Judgment ECF 253-1 – 253-66. In the interest of judicial economy, Plaintiffs did not file duplicate copies of exhibits previously submitted by the Parties relating to summary judgment motions and motions to exclude expert reports.

[3] "MTE Ex. ___ [ECF 248___]" citations refer to exhibits attached to the Declaration of Alex Bergjans in Support of Defendants' Motion to Exclude Options of Professor Emily Strauss ECF 248-1—248-6.

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINION OF
PROFESSOR EMILY STRAUSS

one, will help triers of fact.

Musk's prejudice argument also fails.  Musk's motion seeks to strike Prof. Strauss's report because it purportedly attempts to "backdoor" an accusation that Musk violated another securities law by failing to file his 13Ds timely.  *See* ECF 248 at 8.  To be clear, there is nothing in Strauss's report or her testimony that articulates or "infer[s] that because Defendant violated securities laws in early April, he also violated them in May."  *Id*.  Musk's argument on this issue, which plainly mischaracterizes Strauss's report and testimony and is based on speculation, should be rejected.  Moreover, whether Plaintiffs will elicit testimony as to whether Musk belatedly filed any Schedule 13D, or the fact that he has been sued by the SEC for such, is not before the Court presently and is not appropriate for resolution on this motion.  If the Court later limits testimony on these issues (which it should not, as they are probative of Musk's lack of mistake and scienter (*see* Fed. Evid. 402(b)(2)), Strauss may then have to modify that portion of her testimony.  However, that issue is not before the Court, and this argument should be rejected.

**B.     Expert Testimony on Stock Price, Ownership, and Movement Will Help the Jury**

Musk argues that Strauss's testimony concerning stock price movement and general stock ownership should be excluded because those issues "require no expertise and bring a substantial risk of misleading the jury."  ECF 248 at 9.  The Court should reject these arguments.

First, Musk argues that statistics about who owns stocks "invites the jury [to] erroneously [] conclude that around half of the Class are 'normal households' and pensioners."  *Id*.  Musk criticizes the information, but does not cite any counterveiling information, nor does he establish that such information would not be helpful to the jury.   If Musk intends to counter this testimony at trial, he is welcome to, but excluding this information is unwarranted.  See *Hangarter, supra*, 373 F.3d at 1017 (courts should screen "unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."); see also *Primiano, supra,* 598 F.3d at 564 (even "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.")

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINION OF PROFESSOR EMILY STRAUSS

Musk cites *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390 (N.D. Cal. Nov. 6, 2017). ECF 251 at 6. In that case, Judge Alsup noted that the expert simply multiplied one unsupported number (the purported number of hours saved by defendants in a trade secrets case) by another unsupported number (expense projections) to arrive at a completely unreliable result. Given this, the Court was unimpressed that the purported expert "simply adopted the opinions of others and performed grade-school arithmetic counsel can do on an easel." *Waymo*, 2017 WL 5148390 at *21; *see also* Plaintiffs' Opposition to Musk's Motion to Exclude the Opinions of Christine Davis filed concurrently. Strauss's testimony on stock ownership is clearly distinguishable. Prof. Strauss's testimony does not involve any "grade-school arithmetic" and instead describes obscure statistics that jurors are unlikely to know. Understanding who is impacted by stock price movement is clearly helpful to understand the context of this case and who the class consists of. If Musk wishes to cross-examine Strauss on what qualifies as a "normal household," or how Twitter's stock was distributed, he can. But full-sail exclusion is imporper and disproportionate.[4]

Second, Musk complains that (i) Prof. Strauss's testimony is not necessary to understand that stock prices move, and (ii) that the Twitter and Tesla stock charts are prejudicial. ECF 248 at 10. In particular, Musk claims these charts are "prejudicial" because they suggest a relationship between Twitter and Tesla in April and May 2022. *Id*. But Prof. Strauss does not form any such opinion nor does she offer any testimony to that effect. MTE Ex. A [ECF 248-2], Strauss Tr. at 55:19-56:17.

The use of Twitter and Tesla stock to depict stock price movement will aid the jury. The charts are based on admissible evidence, and Musk does not dispute that the prices moved as depicted. Using another stock to depict generalized price movement would be less helpful and potentially more confusing. Jurors will likely wonder why Prof. Strauss's report suddenly depicts "Amazon or Microsoft" stock charts in a case about Twitter and Tesla. *See* ECF 248 at 4. Moreover, there is simply no evidence that Plaintiffs will use these charts or Prof. Strauss's testimony for any improper purpose, such as proving causation. *Id*. The Court should reject Musk's speculation and inferences.

---

[4] Musk also cites *Mata v. Oregon Health Auth.*, 739 F. App'x 370, 372 (9th Cir. 2018), but that case has no substantive discussion and simply states basic authority.

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINION OF
PROFESSOR EMILY STRAUSS

Alternatively, if the Court determines that Prof. Strauss's report and testimony on stock price movement do not represent an admissible expert opinion, her graphs should be admitted as summary exhibits. These charts draw information from voluminous stock price documents that are independently admissible and cannot conveniently be examined comprehensively in court. *See* FRE 1006 ("The court may admit as evidence a summary, chart, or calculation offered to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court …"); *United States v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. 2011) ("The purpose of the rule is to allow the use of summaries when the documents are unmanageable or when the summaries would be useful to the judge and jury.") (internal quotation and citation omitted).

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court include Professor Strauss's report and testimony described above.

Dated: September 12, 2025

Respectfully submitted,

**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
Tyson C. Redenbarger (SBN 294424)
Elle D. Lewis (SBN 238329)
Gia Jung (SBN 340160)
Caroline A. Yuen (SBN 354388)

*/s/ Tyson C. Redenbarger*
       Tyson C. Redenbarger

San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Aaron P. Arnzen (SBN 218272)

*/s/ Aaron P. Arnzen*
       Aaron P. Arnzen

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

10                    Case No: 3:22-CV-05937-CRB
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINION OF
PROFESSOR EMILY STRAUSS

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Tyson C. Redenbarger, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of September 2025, at Burlingame, California.


*/s/ Tyson C. Redenbarger*
Tyson C. Redenbarger

Case No: 3:22-CV-05937-CRB
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINION OF
PROFESSOR EMILY STRAUSS