**COTCHETT, PITRE & McCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
*jcotchett@cpmlegal.com*
Mark C. Molumphy (SBN 168009)
*mmolumphy@cpmlegal.com*
Tyson C. Redenbarger (SBN 294424)
*tredenbarger@cpmlegal.com*
Elle D. Lewis (SBN 238329)
*elewis@cpmlegal.com*
Gia Jung (SBN 340160)
*gjung@cpmlegal.com*
Caroline A. Yuen (SBN 354388)
*cyuen@cpmlegal.com*
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
*fbottini@bottinilaw.com*
Albert Y. Chang (SBN 296065)
*achang@bottinilaw.com*
Aaron P. Arnzen (SBN 218272)
*aarnzen@bottinilaw.com*
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>    vs.<br><br>ELON R. MUSK,<br><br>            Defendant. | Case No. 22-cv-5937-CRB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT ELON MUSK'S MOTION TO EXCLUDE THE OPINIONS OF A. CHRISTINE DAVIS**<br><br>Date:        October 31, 2025<br>Time:        10:00 a.m.<br>Courtroom:   6, 17th Floor<br>Judge:       Hon. Charles R. Breyer<br><br>**(REDACTED-PUBLIC VERSION)** |

Case No. 22-cv-5937-CRB

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS
OF A. CHRISTINE DAVIS

# TABLE OF CONTENTS

**Page**

ISSUE PRESENTED ........................................................................................................... 1

SUMMARY OF ARGUMENT ........................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 1

I.       The Claims ............................................................................................................. 1

II.      Musk Planned To, and Did, Use Proceeds from the Sale of Tesla Stock to Buy
         Twitter ................................................................................................................... 2

III.     Davis's Expert Report ........................................................................................... 3

LEGAL STANDARD ........................................................................................................ 4

ARGUMENT ..................................................................................................................... 4

I.       Davis Did Far More than Perform "Grade-School Arithmetic Counsel Can Do on an
         Easel." .................................................................................................................. 4

II.      Davis's Report Is Highly Relevant and Reliable .................................................. 7

III.     Davis Does Not, and Will Not, Offer State of Mind Evidence ............................. 8

IV.      Even if Davis's Conclusions Are Not Admissible Opinions Under Rule 702, Her
         Charts, Graphs and Related Testimony Should Be Admitted as Summary Exhibits
         Under Rule 1006 ................................................................................................... 9

CONCLUSION ................................................................................................................ 10

Case No. 22-cv-5937-CRB

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS
OF A. CHRISTINE DAVIS

# TABLE OF AUTHORITIES

**Page(s)**

**CasesCases**

*Andrews v. Metro N. C. R. Co.*
  882 F.2d 705 (2d Cir. 1989)................................................................................................7

*Corbo Props. v. Seneca Ins. Co.*
  771 F. Supp. 2d 877 (N.D. Ohio 2010).............................................................................9

*Gallagher v. Holt*
  2012 WL 3205175 (E.D. Cal. Aug. 3, 2012) ...................................................................5

*Golden Unicorn Enters. v. Audible, Inc.*
  682 F. Supp. 3d 368 (S.D.N.Y. 2023).............................................................................6

In re Novatel Wireless Sec. Litig.
  2011 U.S. Dist. LEXIS 133105 (S.D. Cal. Nov. 17, 2011) ............................................7

*In re Software Toolworks Inc. Sec. Litig.*
  50 F.3d 615 (9th Cir. 1994)...........................................................................................5, 8

*In re Tesla, Inc. Sec. Litig.*
  2022 WL 7374936 (N.D. Cal. Oct. 13, 2022)...................................................................4

Kelley v. BMO Harris Bank N.A.
  2022 U.S. Dist. LEXIS 176891 (D. Minn. Sept. 29, 2022) ............................................9

*Randle v. Allstate Indem. Co.*
  649 F. Supp. 2d 675 (N.D. Ohio 2009)............................................................................9

*Skyline Advanced Tech. Servs. v. Shafer*
  2021 WL 5908387 (N.D. Cal. Dec. 14, 2021) .............................................................4, 5

*In re Software Toolworks Inc. Sec. Litig.*
  50 F.3d 615, 627 (9th Cir. 1994)...................................................................................8, 9

*Taniguchi v. Kan Pacific Saipan, Ltd.*
  566 U.S. 560 (2012)..........................................................................................................5

Think20 Labs LLC v. Perkinelmer Health Scis., Inc.
  2023 U.S. Dist. LEXIS 231286 (C.D. Cal. Nov. 30, 2023)............................................6

*United States v. Rizk*
  660 F.3d 1125 (9th Cir. 2011)..........................................................................................9

*United States v. Williams*
  2016 U.S. Dist. LEXIS 155444 (E.D. La. Nov. 9, 2016)................................................5

*Waymo LLC v. Uber Techs., Inc.*
  2017 WL 5148390 (N.D. Cal. Nov. 6, 2017)................................................................5, 6

Case No. 22-cv-5937-CRB

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS
OF A. CHRISTINE DAVIS

*Wing v. Kaye Scholer, LLP*
  2010 WL 5020576 (D. Utah Dec. 3, 2010)......................................................................................5


**Rules**

FED. R. EVID 404 ........................................................................................................................8

FED. R. EVID 702 ...........................................................................................................1, 4, 8, 9

FED. R. EVID. 1006 .....................................................................................................................9

Case No. 22-cv-5937-CRB

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS
OF A. CHRISTINE DAVIS

**ISSUE PRESENTED**

Whether the Court should admit the opinions of forensic accountant A. Christine Davis under Federal Rule of Evidence 702, where Davis's analysis draws from a wide variety of technical documents, including Musk's own SEC filings, to calculate the additional funds that Musk would have to produce to complete his acquisition of Twitter over a time period during which the stock price of Tesla—the asset that Musk knew he was going to use to fund the acquisition—was sinking fast.

**SUMMARY OF ARGUMENT**

Davis's opinions should be admitted at trial because they are reliable, helpful to the jury, and highly relevant. Davis used her training and experience in forensic accounting to identify information scattered throughout Musk's technical (and sometimes complicated) SEC filings and other reliable source documents to create a time-lapsed portrait of Musk's funding troubles. The analysis culminates in a calculation of how much more Tesla stock—which Musk treasured—he would need to sell to complete his acquisition of Twitter at the time he made his false statements on May 13, 16, and 17, 2022.[1] Davis's opinions are based on specialized knowledge and beyond the ken of ordinary jurors, are extremely relevant, would be helpful to the Court and the jury, and therefore should be admitted.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.    The Claims**

The First Amended Complaint ("FAC") alleges that, on April 13, Musk made an offer to buy Twitter at $54.20 per share. FAC ¶ 76.[2] On April 25, Twitter and Musk signed a merger agreement in a transaction valued at approximately $44 billion. FAC ¶ 85. Soon thereafter, faced with mounting financial risks, Musk proceeded to make false statements, send misleading tweets, and engage in conduct designed to create unfounded uncertainty and drive Twitter's stock down. FAC ¶ 26. Musk did this to create leverage to either back out of the purchase or renegotiate the buyout

---

[1] Unless otherwise noted, all dates noted herein refer to calendar year 2022.
[2] All "FAC ¶ _" citations refer to Plaintiffs' June 8, 2023 First Amended Complaint, ECF 31.

1                                    Case No. 22-cv-5937-CRB
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS
OF A. CHRISTINE DAVIS

price.  FAC ¶ 26.  Musk's false statements included those made on May 13, 16, and 17.  FAC ¶¶ 111, 120, 125.

**II.     Musk Planned To, and Did, Use Proceeds from the Sale of Tesla Stock to Buy Twitter**

Plaintiffs allege, and the evidence shows, that Musk made his false statements by design and partly in reaction to the steep decline of Tesla's stock price.  In 2022, Musk owned huge quantities of Tesla stock, and he was always going to—and actually did—use proceeds from the sale of some of this stock to advance his acquisition of Twitter.  He bought his initial (and illegally concealed) tranche of Twitter in early 2022 with Tesla stock proceeds.  *See* MSJ Ex. 13[3] [ECF 253-14], Musk Tr. at 35:17–24 ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ .

Similarly, just days before launching his offer to buy Twitter, Musk and his Morgan Stanley bankers assumed ██████████████████████ would form the foundation for various acquisition financing alternatives—to the exclusion of any other assets that Musk may have owned or used.  *See* Ex. 1[4], at *041[5] (detailing Morgan Stanley's ████████████████████████ ████████████ ; *see also* MSJ Ex. 14 [ECF 253-15] Musk Tr. at 171:8 - 172:9 ████████████ ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ .  Musk next used Tesla to secure a margin loan to fund the Twitter purchase through a "Collateral Account" holding Tesla shares.  *See* Ex. 2, at 5 (April 20, 2022 SEC Schedule 13-D: "the Margin Loan Facility [includes] a condition which requires that the borrower thereunder satisfy a maximum loan to value

---

[3] "MSJ Ex. ___ [ECF 253___]" citations refer to exhibits attached to the Declaration of Tyson C. Redenbarger in Support of Plaintiffs' Motion for Partial Summary Judgment ECF 253-1 – 253-66.  In the interest of judicial economy, Plaintiffs did not file duplicate copies of exhibits previously submitted by the Parties relating to summary judgment motions and motions to exclude expert reports.

[4] "Ex." refers to exhibits attached to the Declaration of Aaron Arnzen in support of this Opposition Brief.

[5] "*##" refers to the last digits of the Bates numbers following the MUSK_PAMPENA prefix.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS
OF A. CHRISTINE DAVIS

ratio of 20%, which is expected be satisfied by the contributions of a portion of Mr. Musk's unencumbered **shares in Tesla, Inc.** to such borrower") (emphasis added).

Unsurprisingly, given this chronology, Musk sold $15.4 billion-worth of Tesla stock between the time he signed the merger agreement and the close of the merger on October 27, 2022 (and $22.9 billion through the end of 2022). *See* Davis Report, ECF 251-2, at 31. And after the acquisition, Musk expressly acknowledged that he used these Tesla proceeds to buy Twitter, responding to another user's tweet that "haha I still can't believe Elon bought Twitter" by stating: "Sucks that I had to sell so much Tesla to do so (sigh)." MSJ Ex. 37 [ECF 253-38].

## III.     Davis's Expert Report

Plaintiffs engaged Christine Davis, an experienced Certified Public Accountant ("CPA") who holds a Certified in Financial Forensics (or "CFF") Certificate, to analyze the impact that the decline in Tesla's stock price had on Musk's financing of his Twitter acquisition.

To perform her analysis, Davis used her forensic accounting expertise and judgment and followed professional guidelines[6] to identify an array of sources from which to draw relevant information, and made calculations to determine, *inter alia*, (1) the sources and amounts of funding Musk had identified on key dates, including April 21, 25, 26, 27, 28, 29, and May 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 16, and 17 (Davis Report, ECF 259-2 at 15-18); (2) the amount of Musk's own cash that would be required on those key dates to fund the deal and the number of Tesla shares he would need to sell to raise such cash (*id.* at 19-25); (3) how Tesla's stock slide impacted Musk's margin loan to finance the deal (*id.* at 25-28); (4) how much of his own money Musk would have had to come up with when Musk posted his false deal-on-hold Tweet on May 13, compared to his banker's estimate on the day Musk made his initial offer to buy Twitter (*id.* at 28-30); and (5) the amount of Tesla stock Musk sold throughout 2022. *Id.* at 30-35.

The results are striking. Just by way of example, as of the early morning hours of May 13 (when Musk launched his first false deal-on-hold tweet), Musk would have had to sell up to an

---

[6] Davis Depo., ECF 251-3, Davis Tr. at 41:9–19 (Davis relied on, and complied with, the AICPA's Statement on Standards for Forensic Services).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS
OF A. CHRISTINE DAVIS

*additional $16.1 billion-worth of Tesla stock* to complete the deal, as compared to his team's earlier expectations on the day he launched his offer. *Id.* at 28-30. To form her conclusions, Davis drew information from Musk's SEC Schedule 13-Ds, the Merger Agreement, Musk's equity and debt commitment letters, Tesla's Form 10-K, Morgan Stanley's investment banker presentations to Musk and internal briefing memos, Morgan Stanley emails, Musk's SEC Form 4s disclosing his sales of Tesla, Twitter's stock prices in 2022, and Tesla pre-split and post-split stock prices in 2022. *See* Davis Tr., ECF 251-2, at 47-49. Davis has presented her results in voluminous and detailed tabulations and graphs to facilitate the Court's and jurors' understanding of the results. *Id.* at 49-79.

## LEGAL STANDARD

Expert testimony is admissible if: (1) the witness is "qualified as an expert;" (2) "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (3) "the testimony is based on sufficient facts or data;" (4) "the testimony is the product of reliable principles and methods;" and (5) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." FED. R. EVID. 702.

Given their ability to identify reliable information and apply their specialized skills to reach useful results, "forensic accountants routinely give this kind of testimony" under Rule 702. *Skyline Advanced Tech. Servs. v. Shafer*, No. 18-CV-06641-CRB, 2021 WL 5908387, at *12 (N.D. Cal. Dec. 14, 2021) (Breyer, J.). If an expert meets Rule 702's criteria, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden and proof are the traditional and appropriate means" of challenging an expert, in lieu of precluding the expert's testimony from trial. *In re Tesla, Inc. Sec. Litig.,* No. 18-CV-04865-EMC, 2022 WL 7374936, at *6 (N.D. Cal. Oct. 13, 2022) (quoting FED. R. EVID. 702, Adv. Comm. Notes (2000)).

## ARGUMENT

I.     **Davis Did Far More than Perform "Grade-School Arithmetic Counsel Can Do on an Easel."**

As set forth above, Davis followed professional guidelines to identify and collect a wide variety of voluminous source materials, and integrate that information into a technical, layered, time-

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS
OF A. CHRISTINE DAVIS

lapsed portrait of Musk's acquisition-financing troubles created by Tesla's falling stock price.  In order to assist the Court and the jury, Davis did not just vaguely point out that the acquisition got more expensive for Musk (as Musk's motion falsely claims, *see* ECF 251, at 1:18-22); instead, Davis calculated **how much more expensive** the deal had become for Musk, and **how many more shares** of Tesla stock Musk needed at critical junctures from the time he made his offer through his false statements on May 13, 16 and 17.

Ignoring all of the expertise and professional judgment required to perform this analysis, Musk argues that Davis merely "performed basic arithmetic." ECF 251, at 6-7.  Not so.  The analysis conducted by Davis covers 15 pages of tightly formatted tables that capture and make detailed calculations based on highly relevant financial information from a large number of diverse and often technical sources—this is an entirely different kettle of fish than "grade-school arithmetic counsel can do on an easel," as Musk argues.  ECF 251, at 6 (quoting *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *6 (N.D. Cal. Nov. 6, 2017)).  Davis's analysis is in the heartland of forensic accountant opinion testimony that is regularly admitted under the Federal Rules of Evidence.  *See Skyline Advanced Tech. Servs. v. Shafer,* No. 18-CV-06641-CRB, 2021 WL 5908387, at *12 (N.D. Cal. Dec. 14, 2021) ("Kawamoto is a forensic accountant, forensic accountants routinely give this kind of testimony, and Kawamoto did his calculations using information provided by [plaintiff].") (Breyer, J.); *see also Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 574 (2012) (contrasting forensic accounting experts, who "decipher documentary evidence," with interpreters, who provide real-time translation); *Gallagher v. Holt*, 2012 WL 3205175, at *14 (E.D. Cal. Aug. 3, 2012) ("[A]s a forensic accountant, [the witness] will unavoidably render opinions, observations, conclusions or statements based on [his] specialized education, training and experience.") (internal quotation, citation omitted); *United States v. Williams,* 2016 WL 6635032, at *1 (E.D. La. Nov. 9, 2016) ("Forensic accounting is a practice that involves the application of accounting, auditing, and investigative skills to analyze financial records.  As a result, the testimony of a forensic accountant typically is offered as that of an expert witness.") (internal quotation, citation omitted); *Wing v. Kaye Scholer, LLP*, 2010 WL 5020576, at *2 (D. Utah Dec. 3, 2010) ("[T]he court concludes that the

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS
OF A. CHRISTINE DAVIS

Declaration of John Curtis is expert testimony and not lay testimony" given that the witness's "reasoning is based on accounting principles that he and his staff applied when reviewing and completing a forensic accounting database, reconciling and agreeing data with bank records and analyzing, reviewing financial records, tax returns, investor reports and other records of [the subject company].").

Despite these cases, Musk advances the meritless argument that mere arithmetic should not be presented through an expert. ECF 251 at 5-6. But the cases Musk cite feature nothing more than adding or multiplying a few questionable numbers. *See Think20 Labs LLC v. Perkinelmer Health Scis., Inc.*, 2023 WL 9005633, at *4 (C.D. Cal. Nov. 30, 2023) (excluding expert because "[t]he sum total of her opinion in this area is that Plaintiff is owed restitution in the amount [Plaintiff] incurred and still owes for the purchase of [Defendant's] instruments") (internal quotation omitted); *Golden Unicorn Enters. v. Audible, Inc.*, 682 F. Supp. 3d 368, 379 (S.D.N.Y. 2023) (excluding expert because "he merely multiplies the price of each returned audiobook by the royalty rate Plaintiffs received", and "simply replicated calculations that Audible had already done").

Musk's argument also relies upon *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390 (N.D. Cal. Nov. 6, 2017). ECF 251 at 6. In that case, ***Judge Alsup lambasted a report submitted by Quinn Emanuel, Musk's own defense firm here***. Among a litany of other deficiencies (*id.* at **3-6), Judge Alsup noted that the expert simply multiplied one unsupported number (the purported number of hours saved by defendants in a trade secrets case) by another unsupported number (expense projections) to arrive at a completely unreliable result. Screenshots of this dubious math appear in Judge Alsup's order:

Figure 12: Uber's Saved Development Expense by Trade Secret[635]

| | Accelerated AV Development (Years) | AV Development Expense Run Rate (Annual) | Uber's Unjust Enrichment Measured by Saved Development Expenses |
|---|---|---|---|
| Trade Secret #25 | 2.00 | $240,000,000 | $480,000,000 |
| Trade Secret #111 | 1.00 | $240,000,000 | $240,000,000 |
| Trade Secret #9 | 0.34 | $240,000,000 | $81,478,439 |
| Trade Secret #96 | 0.13 | $240,000,000 | $30,225,873 |
| Trade Secret #2 | 0.11 | $240,000,000 | $27,597,536 |
| Trade Secret #13 | 0.11 | $240,000,000 | $26,940,452 |
| Trade Secret #14 | 0.11 | $240,000,000 | $26,940,452 |
| Trade Secret #7 | 0.05 | $240,000,000 | $12,484,600 |

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS
OF A. CHRISTINE DAVIS

Given this, the court was unimpressed that the purported expert "simply adopted the opinions of others and performed grade-school arithmetic counsel can do on an easel." *Id.* at *6.

Davis's opinions here stand in sharp contrast. She did not simply act as a human calculator or rely on another expert's opinions and then blindly lift their numbers. Instead, Davis performed her own research, selected and used the appropriate portions of, often technical, SEC filings and other financing documents with which jurors are not typically familiar, collected and organized the relevant information, and presented this information and related calculations in easy-to-understand tabulations and graphs. Her work product goes far beyond simple arithmetic—it is, instead, a synthesis of relevant information and data from complicated source documents that required her expertise, application of accounting principles, and interpretation to present accurately and efficiently. There is simply no way that "counsel can do on an easel" that which Davis does in 15 pages of her report, and it is unreasonable to assume that the jury would be able to do so, either.[7] *See id.* at *6.

## II.    Davis's Report Is Highly Relevant and Reliable

Musk also attempts to attack Davis's analysis because it rests on the "untested assumption" that Musk would have had to use Tesla to fund his purchase of Twitter even though Musk had other assets at his disposal. ECF 251, at 7. He likewise complains that Davis "did not review any documents concerning Mr. Musk's other businesses." *Id.*

Musk's argument is unpersuasive. As the FAC alleges, "Musk also had the motive and opportunity to commit the fraud" because the "large decline in Tesla stock post-signing put Musk in a bind, as a result of which he had a strong motive to attempt at all costs to get out of the Merger, renegotiate the price, or delay it in the hope that that market would rebound before he was forced to sell large amounts of his most prized asset — his Tesla stock — to pay for the Merger." FAC, ¶

---

[7] Musk's other cases are not about numbers of forensic accounting at all. In *Andrews v. Metro N. C. R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989), for example, an expert inappropriately testified that a railroad platform was a "safe place," and that "it was 'reasonable' for [plaintiff] to have walked the distance of approximately 3,000 feet along the railroad tracks"). *See also In re Novatel Wireless Sec. Litig.,* 2011 WL 5827198, at *4 (S.D. Cal. Nov. 17, 2011) (excluding expert because he simply "quotes selectively from e-mails and prior sworn testimony," which "are not complicated and speak for themselves").

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS
OF A. CHRISTINE DAVIS

153.  The Court credited these allegations, finding that "Plaintiffs adequately allege a motive to terminate the deal or renegotiate the price that should be considered alongside Plaintiffs' other allegations of scienter."  ECF 48 at 32.

Further, the evidence discussed above shows that Musk knew before, during, and after the deal that he would—***and did***—use his Tesla stock to buy Twitter.  In circumstances where those other assets are not mentioned in the operative complaint, Musk knew SpaceX stock was not available to support the expedited transaction he envisioned and, in reality, Musk and his team always knew his Tesla stock would fund his Twitter purchase, why would Ms. Davis opine on SpaceX or other assets?[8]  Musk's counsel may certainly cross-examine Davis about analyzing the one asset that actually mattered—Plaintiffs are confident that the jury will prefer relevant evidence to meaningless sideshows—but excluding the report is not justified under FED. R. EVID. 702.

## III.    Davis Does Not, and Will Not, Offer State of Mind Evidence

Contrary to Musk's position, Davis does not offer a "thinly-disguised" and "impermissible state of mind opinion."  ECF 251, at 8.  Her report does not mention "motive," "scienter," "good faith," "bad faith," or anything of the kind.  To be sure, Davis's opinion will constitute ***evidence*** of Musk's motive—but that is exactly what makes it relevant and admissible.

Motive is, of course, an essential manner in which plaintiffs may seek to prove the element of scienter.  FED. R. EVID. 404(b); *In re Software Toolworks Inc. Sec. Litig.*, 50 F.3d 615, 627 (9th Cir. 1994) ("The proof of scienter in fraud cases is often a matter of inference from circumstantial evidence.") (citations omitted).  And while "an expert may not offer an opinion as to an entity's or individual's knowledge, intent, motive or other mental state," he or she "may, however, testify about observable underlying facts that might be relevant to determining the mental state of an individual

---

[8]  Musk also suggests that Ms. Davis should have reviewed additional financing documents and Musk's communications with his financial advisors in forming her opinions.  ECF 259, at 7.  But Ms. Davis has confirmed that she "had everything needed to form those opinions," and did not need, *e.g.*, "Twitter's internal documents related to the acquisition," "communications between Mr. Musk and Twitter management," or "more documents from Morgan Stanley" to perform her analysis.  ECF 251-3, Davis Depo, at 109:9–111:9.  Musk apparently did not think an opinion that focused on these other materials was all that important given that he had every opportunity to procure his own expert (rebuttal or otherwise) but chose not to do so.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS
OF A. CHRISTINE DAVIS

or entity." *Kelley as Tr. of BMO Litig. Tr. v. BMO Harris Bank N.A.*, No. 19-CV-1756 (WMW), 2022 WL 4547022, at *10 (D. Minn. Sept. 29, 2022) (forensic accountant's analysis of "factors that could motivate M&I employees to benefit from participating in fraudulent conduct" were "not improper speculation as to mental state, but instead describe and explain—based on Jarek's knowledge and expertise—various observable documents, statements, behaviors and other factors that might be relevant to a jury's determinations about knowledge or mental state"); *Corbo Props. v. Seneca Ins. Co.*, 771 F. Supp. 2d 877, 888 (N.D. Ohio 2010) ("[Defendant insurance company] could reasonably conclude that the [plaintiffs] had motive to set the fire. …[T]he undisputed facts show that the [plaintiffs] had significant financial obligations for which it appeared, through the analysis of a forensic accountant, they would have significant difficulty managing."); *Randle v. Allstate Indem. Co.*, 649 F. Supp. 2d 675, 679 (N.D. Ohio 2009) (crediting evidence presented by forensic accountants to demonstrate motive).

Finally, given that scienter findings are often based on circumstantial evidence and reasonable inferences, *see Software Toolworks*, 50 F.3d at 627, an order precluding Plaintiffs from introducing evidence of Musk's financial motives through Davis would be highly prejudicial.

**IV.     Even if Davis's Conclusions Are Not Admissible Opinions Under Rule 702, Her Charts, Graphs and Related Testimony Should Be Admitted as Summary Exhibits Under Rule 1006**

If the Court determines that Davis's analysis does not represent an admissible expert opinion, her calculations, tabulations, and graphs nevertheless should be admitted as summary exhibits. This is so because her charts draw information from voluminous documents that are independently admissible, and cannot conveniently be examined in a comprehensive manner in Court. *See* FED. R. EVID. 1006 ("The court may admit as evidence a summary, chart, or calculation offered to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court …"); *United States v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. 2011) ("The purpose of the rule is to allow the use of summaries when the documents are unmanageable or when the summaries would be useful to the judge and jury.") (internal quotation, citation omitted).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS
OF A. CHRISTINE DAVIS

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny Musk's motion and admit the opinions of A. Christine Davis.

Dated: September 12, 2025

Respectfully submitted,

**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
Tyson C. Redenbarger (SBN 294424)
Elle D. Lewis (SBN 238329)
Gia Jung (SBN 340160)
Caroline A. Yuen (SBN 354388)

*/s/ Tyson C. Redenbarger*
   Tyson C. Redenbarger

San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Aaron P. Arnzen (SBN 218272)

*/s/ Aaron P. Arnzen*
   Aaron P. Arnzen

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

10          Case No. 22-cv-5937-CRB

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS
OF A. CHRISTINE DAVIS

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Tyson C. Redenbarger, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of September 2025, at Burlingame, California.


*/s/ Tyson C. Redenbarger*
Tyson C. Redenbarger

11                                                    Case No. 22-cv-5937-CRB
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS
OF A. CHRISTINE DAVIS