COTCHETT, PITRE & MCCARTHY, LLP
Joseph W. Cotchett (SBN 36324)
*jcotchett@cpmlegal.com*
Mark C. Molumphy (SBN 168009)
*mmolumphy@cpmlegal.com*
Tyson C. Redenbarger (SBN 294424)
*tredenbarger@cpmlegal.com*
Elle D. Lewis (SBN 238329)
*elewis@cpmlegal.com*
Gia Jung (SBN 340160)
*gjung@cpmlegal.com*
Caroline A. Yuen (354388)
*cyuen@cpmlegal.com*
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN: 175783)
*fbottini@bottinilaw.com*
Albert Y. Chang (SBN 296065)
*achang@bottinilaw.com*
Aaron Arnzen (SBN 218272)
*aarnzen@bottinilaw.com*
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Lead Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated, | Case No. 3:22-cv-05937-CRB |
| Plaintiff, | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE PORTIONS OF OPINION OF KENNETH M. LEHN** |
| vs. | |
| | Date: October 31, 2025 |
| ELON R. MUSK, | Time: 10:00 a.m. |
| Defendant. | Courtroom: 6, 17th Floor |
| | Judge: Hon. Charles R. Breyer |

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE PORTIONS
OF OPINION OF KENNETH M. LEHN

# **TABLE OF CONTENTS**

**Page(s)**

SUMMARY OF ARGUMENT ...................................................................................................1

ARGUMENT .............................................................................................................................2

I.     Musk's Opposition Brief Falsely Represents That, "at Dr. Lehn's Direction, His Staff Reviewed Every Analyst Report Issued Between April 25, 2022 to October 19, 2022" ...............................................................................................2

II.    Musk's After-the-Fact Attempts to Explain Away Dr. Lehn's Lack of a Reliable Methodology Are Unpersuasive .................................................................................3

III.   Musk Offers No Legal Authority to Justify Dr. Lehn's Inferences-Only Approach ...............5

IV.    Musk Claims That Dr. Lehn Considered All of Plaintiffs' Theories of Falsity, But Ignores Dr. Lehn's Unambiguous Testimony to the Contrary..................................................6

V.     Plaintiffs Do Not Seek To Exclude Evidence Regarding What Investors Believed and Will Seek to Admit Analyst Reports at Trial..........................................................................8

VI.    Contrary to Musk's Assertions, the Vast Majority of Dr. Lehn's Report Does Not Focus on Rebutting Dr. Tabak's Decision to Rely on Analyst Commentary .........................8

CONCLUSION ..........................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharm., Inc.*,
43 F.3d 1311 (9th Cir. 1995)..................................................................................................8

*Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*,
594 U.S. 113 (2021) ..............................................................................................................9

*In re Apple Inc. Sec. Litig.*,
2023 WL 4556765 (N.D. Cal. July 17, 2023)........................................................................4

*Sec. & Exch. Comm'n v. Davis*,
2022 WL 3575769 (C.D. Cal. June 23, 2022) .......................................................................8

*United States v. Schiff*,
602 F.3d 152 (3d Cir. 2010)...................................................................................................8

**Rules**

17 CFR 240.10b-5 ...................................................................................................................... 1, 5

FED. R. CIV. P. 26. ........................................................................................................................7

FED. R. EVID. 702 .................................................................................................................... 1, 3

## SUMMARY OF ARGUMENT

In response to Plaintiffs' arguments that Dr. Lehn, Musk's loss causation and damages expert, did not employ a reliable methodology to form his opinions, Musk blatantly misrepresents what Dr. Lehn and his assistants actually did, and then retroactively backfills the gaps in Dr. Lehn's process with half-baked excuses. But those excuses, made up by Musk and his lawyers, have nothing to do with Dr. Lehn's methodology. And absent a reliable methodology, the challenged portions of Dr. Lehn's opinions cannot be admitted under Federal Rule of Evidence 702.

Plaintiffs also argued in their opening brief that Dr. Lehn's inferences-only approach (which involves ignoring the actual language of the statements at issue and substituting in Dr. Lehn's own purported inferences about Musk's cold feet) has no support in the facts or the law, and stated that they were unaware of any cases that addressed or approved of such an approach. In response, Musk tries to equate the term "impression," as used to describe falsity under Rule 10b-5 (a statement is false if it "creates an impression of a state of affairs that differs" from reality) with "subtext" and "inferences." But Musk's deal-on-hold tweet did not mention, assert, refer to, or give the impression of making assertions about Musk's feet (cold or otherwise). Nor did Musk come up with a case addressing or approving an inferences-only approach like the one that Dr. Lehn advances here.

Musk's opposition brief also fails to explain away yet another problem with Dr. Lehn's report. Dr. Lehn opines that investors did not respond to the false aspects of Musk's deal-on-hold tweet, but he failed to actually address five of the seven ways in which Plaintiffs allege the tweet was false. In his attempt to counter this argument, Musk ignores unambiguous testimony by Dr. Lehn that he did not consider these allegations—which means he cannot reasonably or reliably form an opinion on whether analysts reacted to what was allegedly false about Musk's tweet.

Musk imagines that Plaintiffs want to hide analyst reports from the jury. That is certainly not the case—Plaintiffs will seek their admission at trial, and simply object to Dr. Lehn's intermediation and cherry picking. Each of the errors described in Plaintiffs' motion requires exclusion of the challenged aspects of Dr. Lehn's report. Plaintiffs' motion should be granted.

**ARGUMENT**

I.    **Musk's Opposition Brief Falsely Represents That, "at Dr. Lehn's Direction, His Staff Reviewed Every Analyst Report Issued Between April 25, 2022 to October 10, 2022"**

Musk's opposition brief unambiguously claims that "[a]t Dr. Lehn's direction, his staff reviewed every analyst report issued between April 25, 2022 to [sic] October 10, 2022." ECF 264 at 5:9-10 (citing Lehn Report at ¶ 53 n. 80 and Lehn Depo. at 11:8-20); *see also* 6:10-13 ("With the help of his staff, Dr. Lehn reviewed every Twitter analyst report published between April 25, 2022 to October 10, 2022."). ***This assertion goes directly to the reliability of Dr. Lehn's methodology in reviewing analyst reports—the central issue in this motion—and it is patently false.*** Footnote 80 of Dr. Lehn's report, which Musk cites, simply identifies the universe of analyst reports that Dr. Lehn's assistants downloaded from subscription databases, not what they reviewed. *See* ECF 246-3, at ¶ 53 n. 80. And at the portion of Dr. Lehn's deposition that Musk cites, Dr. Lehn confirms that he relied on just 30 analyst reports. *See* Reply Declaration of Aaron P. Arnzen ("Reply Decl."), Ex. 1, Lehn Depo., at 11:11-15 ("Well, in the appendix, just to be precise, the analyst reports begin with number 29, and then it goes through 58. So inclusive of that would be 30 analyst reports.").

The portion of the deposition that directly contradicts the assertion in Musk's brief begins on the very next page. Asked if he reviewed all 183 reports that his assistants downloaded, Dr. Lehn testified:

> A.  I reviewed the ones that are cited in my report. I don't recall offhand if I might have reviewed others as well, but I certainly did review the ones that are cited in my report.
>
> Q.  Okay.  Did you review the entirety of the -- of the reports and news articles that are cited in your report?
>
> A.  The ones that are cited, yes.  The ones that are not cited, I don't recall if I reviewed all of them.  My recollection is I reviewed some, but ***I don't think I reviewed the universe of reports that were released during that time period.***

Reply Decl. Ex. 1, at 12:13–14:8 (emphasis added). Lehn's testimony about his assistants, in turn, was completely non-committal on what, if anything, his assistants did except forward analyst reports issued around key dates to Dr. Lehn.

> Q.  Okay.  Did the people at Compass Lexecon read all of the reports in their entirety?

A. *I can't speak for what they did.* I think that's their normal protocol, but *I don't have firsthand knowledge of precisely whether or not they read all the reports in their entirety*.

*Id.* at 14:9–16:4 (emphasis added).

Hanlon's Razor famously advises that one should not ascribe to malice that which is adequately explained by incompetence. It is increasingly difficult to follow that advice when it comes to Musk's briefing to this Court given that (1) Dr. Lehn's slapdash review—*i.e.*, his lack of a reliable methodology and his failure to review 153 of the 183 reports available to him—is the primary issue raised in Plaintiffs' motion, and (2) the misrepresentation appears twice in Musk's brief. ECF 264 at 5:9–10, 6:10–13.

## II.    Musk's After-the-Fact Attempts to Explain Away Dr. Lehn's Lack of a Reliable Methodology Are Unpersuasive

Plaintiffs' opening brief challenged Dr. Lehn's opinion based on his failure to use a reliable methodology in reaching his conclusions about what market analysts did and did not believe about Musk's agreement to acquire Twitter. Specifically, Dr. Lehn read and relied on just 30 of 183 reports—fewer than one out of six reports that his assistants obtained for this engagement—in forming his opinions. ECF 246-2, Appx. B, at 2-3.

Dr. Lehn's report provides no explanation for selecting such a small smattering of reports, but he did state at deposition that he asked his assistants to "provide me with the analyst reports that were released around those key dates." ECF 246-3 at 15:10-21. Lehn offered no further explanation for choosing such a small minority of analyst reports. Musk's opposition brief tries to backfill these holes retroactively, mostly by having his attorneys review the reports Dr. Lehn failed to review and arguing that those reports were "duplicative or irrelevant to his [Dr. Lehn's] opinion." Opp. at 8:4-5. There are two problems with *post facto* argument.

First, Plaintiffs challenge **Dr. Lehn's** methodology. *See* FEDERAL RULE OF EVIDENCE 702 (an expert may testify only if, *inter alia*, "the testimony is the product of reliable principles and methods"). Thus, the question is whether Dr. Lehn made considered decisions about what not to review based on his own assessment (or that of his assistants) that certain reports were "duplicative or irrelevant." But there is no evidence that Dr. Lehn or his assistants made such assessments (which

would be hard to do without reviewing the reports).  Indeed, Dr. Lehn offered no basis for reviewing less than one in six analyst reports, except that he asked his assistants to forward reports issued on or around key dates (even though his report highlights cherry-picked portions of analyst reports on other dates).  As a result, the Court and Plaintiffs are left only with an after-the-fact effort by Musk's counsel to make excuses for Dr. Lehn's failures.  ***But these excuses completely miss the point, because they have nothing to do with Dr. Lehn's methodology***.  Plaintiffs' motion must be granted in light of this fatal flaw.  *In re Apple Inc. Sec. Litig*., 2023 WL 4556765, at *1 (N.D. Cal. July 17, 2023) (excluding expert where he "does not explain how he chose which reports or calls to consider or how they are representative of reports on the call generally. As such, they do not appear to provide any reliable context for a jury and appear to substitute his own judgment for theirs").

Second—admittedly a distant second, given that Musk's after-the-fact excuses are ultimately irrelevant to Plaintiffs' challenge here—the primary excuse offered by Musk's counsel is half-baked.  Musk faults Plaintiffs for observing that, without explanation, Dr. Lehn read and relied on just 23— less than half—of the 48 reports that were issued within four market days of key events (including Musk's misstatements) in this case.  ECF 246 at 8:9-15.  Instead, Musk asserts that the only reports that matter are those that were released on days the market moved in response to Musk's false statements.  *Id*. at 8:4-19 ("Logically then, the relevant time period that analyst commentary would shed light on what the market believed when reacting to the May 13 Tweet is May 13-16"); *see also id*. at 8:18-19 (asserting that Dr. Lehn considered reports between May 13 and May 17); *id*. at 7:9-12 (Dr. Lehn considered reports on July 8 plus two trading days thereafter, and on October 4 plus two trading days thereafter).  But Dr. Lehn did not ask his assistants to provide reports on just the days the market reacted to Musk's statement; he directed his assistants "to provide me with the analyst reports that were released ***around those key dates***."  ECF 246-3 at 15:10-21 (emphasis added).  Further, if market-moving days plus two or three days after the event in question are the only days that mattered to Dr. Lehn's opinion (as Musk argues), then why did he rely extensively on reports outside these ranges?  Indeed, Dr. Lehn's Appendix B lists analyst reports issued on May 23; June 21; July 13, 14 and 18; August 10 and 30; and September 12, and 23—not to mention 20 news articles

outside of Musk's t+2 or t+3 days timeframe advanced in his current argument?  Dr. Lehn and Musk fail to explain this.  The upshot:  Musk's argument about the bases for Dr. Lehn's opinion ignores the materials upon which Dr. Lehn relied in forming his opinion, and his excuses don't add up.

### III.    Musk Offers No Legal Authority to Justify Dr. Lehn's Inferences-Only Approach

As set forth in Plaintiffs' opening brief, Dr. Lehn argues that Musk's actual misstatements should be ignored and the only proper focus is on supposed inferences that Lehn divined from cherry-picked snippets of analyst reports.  ECF 264 at 11:6-11.  There are no valid factual or legal grounds for ignoring Musk's actual statement (without which none of Dr. Lehn's claimed inferences would exist in the first place) and, as explained in their initial brief, Plaintiffs have been unable to identify any cases brought under the federal securities laws that address—much less approve of— an "inferences-only" disaggregation approach similar to Dr. Lehn's.

Musk's attempt to support Dr. Lehn's inferences-only approach is a simplistic exercise in semantics.  Musk begins the exercise by quoting good law regarding falsity:  a statement is misleading if it "affirmatively creates an impression of a state of affairs that differs in a material way from the one that actually exists."  ECF 264 at 11:9-13 (cleaned up, quotation and citation omitted). As used in the case law regarding falsity under Rule 10b-5 (and in everyday speech, for that matter), the term "impression" clearly means that which the reader/listener understands to be asserted by the statement at issue.  *E.g.*, ECF 48 at 19:21–20:6 (analyzing the ***actual language*** of Musk's May 13 deal-on-hold tweet to determine that it gave reasonable investors an "impression of a state of affairs" that differed from reality: "Because Twitter did not have an obligation to provide this data to Defendant under the terms of the Merger Agreement, Defendant's representation that Twitter did have this obligation in order for the deal to close was false.").

But Musk reimagines the meaning of "impression," as used in the case law, and asserts that it is synonymous with the terms "subtext" and "inferences."  ECF 264 at 11:9-13.  While equating these distinct terms is far too thin a reed in the abstract, it is certainly not appropriate where, as here, Musk's May 13 tweet clearly asserted that he had rights under the merger agreement that he did not

have, and the tweet did not mention, assert, or give the impression of asserting, that Musk suddenly had "cold feet."

To put the nail in the coffin, Musk is unable to identify any case law that considers or approves of an approach that ignores the actual statement in favor of inferences and subtext. ECF 264 at 12:1-7.

## IV. Musk Claims That Dr. Lehn Considered All of Plaintiffs' Theories of Falsity, But Ignores Dr. Lehn's Unambiguous Testimony to the Contrary

As argued in Plaintiffs' opening brief, Dr. Lehn purports to attack all of Plaintiffs' falsity allegations, but his analysis ignores most of those allegations. *See* ECF 246-2, ¶ 50; ECF 246 at 12:16-22. Specifically, Dr. Lehn made the dubious (due to his flawed methodology) conclusion that the market did not care about the two concepts that, in Dr. Lehn's view, allegedly made the tweet false—*i.e.*, whether Musk had a right to information under the merger agreement, or whether Musk instructed his team to stop working on the deal.

> Plaintiffs allege that the May 13 Tweet was false "because (1) the Merger was not on hold: contrary to the suggestion in Musk's tweet, Twitter had not agreed to any deferral of the Buyout; and (2) nothing in the merger agreement allowed Musk to put the Buyout on hold, particularly since he had already agreed to buy Twitter without conducting due diligence and agreed to a 'seller friendly' merger agreement that did not make any due diligence a condition of the Merger. … [A]nalysts did not express concern—and typically did not even mention—the information Plaintiffs claim is false.

ECF 246-2, ¶¶50, 53. ***In contrast to the two bases of falsity examined by Dr. Lehn, Plaintiffs' First Amended Complaint ("FAC") sets forth seven reasons why Musk's statements were false.***[1]

Once again, Musk attempts to backfill holes in Dr. Lehn's opinions. First, Musk asserts that "Plaintiffs now enumerate for the first time" the seven reasons that Musk's statements were false, inferring that Dr. Lehn could not have responded to these because Plaintiffs just made them up. ECF

---

[1] Plaintiffs allege that the May 13 tweet was false because, *inter alia*: (1) "the Merger was not on hold;" (2) "Twitter had not agreed to any deferral of the Buyout;" (3) "nothing in the merger agreement allowed Musk to put the Buyout on hold;" (4) Musk "had already agreed to buy Twitter without conducting due diligence;" (5) Musk "agreed to a 'seller friendly' merger agreement that did not make any due diligence a condition of the Merger;" (6) the tweet "constituted an effort to depress the price of Twitter shares since he already knew all about the fake accounts;" and (7) the tweet falsely "stated or implied that Musk's obligation to consummate the Buyout was conditioned on his satisfaction with due diligence to determine whether 'spam/fake accounts do indeed represent less than 5% of users.'" ECF 31, ¶¶ 4, 29.

264 at 12:10-11. Nonsense—as stated above, the FAC unambiguously sets forth all seven falsity allegations, and Dr. Lehn also reviewed Plaintiffs' interrogatory responses, which offer a detailed description of Plaintiffs' position on falsity. ECF 246-3 at 20, n. 86.

Next, Musk argues that "Plaintiffs' seven theories of falsity" are "all [] addressed in Dr. Lehn's opinion." ECF 264 at 12:20-21. But Musk cites Dr. Lehn's deposition transcript and not Dr. Lehn's written report—which is required to contain "a complete statement of all opinions the witness will express." FED. R. CIV. P. 26(a)(2)(B)(i). What's more, the cited portions of Dr. Lehn's deposition that Musk cites prove nothing, particularly in light of Dr. Lehn's detailed testimony that he did not consider all of these reasons that Musk's statements were false. Reply Decl. Ex. 1, at 26:3–27:13 ("whether analysts made inferences about whether the deal was on -- in fact, on hold" was "not a specific issue that I was asked to address"); 28:14-20 ("whether analysts made inferences about whether Musk had conducted due diligence on Twitter before signing the merger agreement" was not "the focus of my analysis"); 29:2-30:1 ("analysts' inference[s] with respect to Musk's performance of due diligence before signing the merger agreement" was "not a specific takeaway that I reported"); 32:7–16 (Dr. Lehn did not directly "discern the extent to which analysts reacted to whether Musk had signed a seller-friendly, quote/end quote, merger agreement"); 33:2-7 (Dr. Lehn did not directly discern "the extent to which analysts reacted to whether Mr. Musk made statements about the deal in order to allow him to renegotiate it"); 33:9-24 (did not directly discern the "extent to which analysts reacted to whether Mr. Musk made statements about Twitter for purposes of bringing down the price of Twitter's stock"); 34:6-10 (did not "discern the extent to which analysts reacted to whether, before signing the merger agreement, Mr. Musk was familiar with the problem of fake and spam accounts on Twitter"); 34:22-35:9 (did not "discern the extent to which analysts reacted to whether there was underlying evidentiary support for Musk's statements about Twitter and its business that are at issue in this case"); 35:25-5 (did not discern whether "analysts reacted to the extent to which Twitter had complied with Musk's demands for information about fake and spam accounts on its platform").

Because Dr. Lehn opines that the market did not react to what Plaintiffs allege was false about Musk's statements, but considered only a small minority of the ways in which Musk's statements are alleged to be false, his opinions on this topic are unhelpful, irrelevant, and pose a grave risk of confusing the jury. *See Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (expert's testimony must "logically advance[] a material aspect of the proposing party's case" to qualify as relevant).

## V.       Plaintiffs Do Not Seek To Exclude Evidence Regarding What Investors Believed and Will Seek to Admit Analyst Reports at Trial

The first of the two major headings in Musk's argument section advances the position that "Plaintiffs seek to eliminate all evidence of what investors actually believed on May 13." ECF 264 at 6 (capitalization adjusted). Not so. Plaintiffs will affirmatively seek to admit analyst reports at trial. *See United States v. Schiff*, 602 F.3d 152, 172 n.26 (3d Cir. 2010) ("Wall Street analysts" could "testify that a pharmaceutical company's sales and the level of wholesaler inventory are material to their investment decisions."); *Sec. & Exch. Comm'n v. Davis,* 2022 WL 3575769 at *3-4 (C.D. Cal. June 23, 2022). Plaintiffs simply prefer the actual evidence, *i.e.*, the reports themselves, to Dr. Lehn's slapdash effort to cherry pick from analyst commentary.

Thus, to the extent that Musk submitted pages 6-12 of his opposition brief (which correspond to the header) to counter an imagined intent to "eliminate evidence" of the analyst reports, the Court can safely ignore those pages of the brief because Plaintiffs believe that the analyst reports are relevant and admissible.

## VI.      Contrary to Musk's Assertions, the Vast Majority of Dr. Lehn's Report Does Not Focus on Rebutting Dr. Tabak's Decision to Rely on Analyst Commentary

To defend Dr. Lehn's faults, Musk argues that "Dr. Lehn properly rebuts Dr. Tabak's omission of analyst commentary." ECF 264 at 6 (header I.A.; capitalization adjusted). This is a red herring—Dr. Lehn's lengthy report contains just a few sentences asserting that Dr. Tabak should have looked at analyst commentary.

Instead, the overwhelming thrust of the challenged portions of Dr. Lehn's report is that Dr. Tabak should have disaggregated the impact of certain information (that Musk had cold feet)

contained in Musk's deal-on-hold tweet. But Dr. Lehn and Musk both assume that Musk's cold feet needed disaggregation—which would only be true if that information was new and material. Under the efficient market hypothesis, the market would only react to the supposedly embedded inference that Musk suddenly had cold feet if that fact —*i.e.*, the cold feet—represented new and material information. *See Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*, 594 U.S. 113, 118 (2021). As argued elsewhere, the evidence shows that there was information in the market well before May 13 indicating that Musk had cold feet. *E.g.*, ECF 272-8, at 4, Reuters, "Elon Musk Probably Won't Buy Twitter," Apr. 27, 2022 ("There are good reasons for him [Musk] to get cold feet. The biggest is Tesla."). This dooms Musk's meritless suggestion that the "cold feet" inference could have accounted for the huge stock drop in response to Musk's May 13 tweet. Because this information was already "in the market" before May 13, there is no reason to believe that the cold-feet inference would suddenly assume materiality on May 13, and thus no reason for Dr. Tabak to disaggregate this inference from the actual language Musk used in his May 13 tweet. *Goldman Sachs*, 594 U.S. at 118.

All of which points back to Dr. Lehn's overarching failure—Dr. Lehn did not know that market already had information about the state of Musk's feet because he did not employ any reliable methodology and simply engaged in blatant cherry picking.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court exclude the portions of Dr. Lehn's report and opinions identified in the opening brief. ECF 246 at 15.

Dated: September 26, 2025    Respectfully submitted,

**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
Elle D. Lewis (SBN 238329)
Tyson C. Redenbarger (SBN 294424)
Gia Jung (SBN 340160)
Caroline A. Yuen (SBN 354388)

*/s/ Tyson C. Redenbarger*
    Tyson C. Redenbarger

San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN: 175783)
Albert Y. Chang (SBN 296065)
Aaron Arnzen (SBN 218272)

*/s/ Aaron P. Arnzen*
    Aaron P. Arnzen

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile: (858) 914-2002

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Tyson C. Redenbarger, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of September 2025, at Burlingame, California.


*/s/ Tyson C. Redenbarger*
Tyson C. Redenbarger