QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice* )
alexspiro@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
Jessebernstein@quinnemanuel.com
Jonathan E. Feder (*pro hac vice*)
jonathanfeder@quinnemanuel.com
Stephanie Kelemen (*pro hac vice*)
stephaniekelemen@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

*Attorneys for Defendant Elon Musk*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br>          vs.<br><br>ELON R. MUSK,<br><br>                    Defendant. | Case No. 3:22-CV-005937-CRB<br><br>**DEFENDANT ELON MUSK'S REPLY IN SUPPORT OF MOTION TO EXCLUDE THE OPINIONS OF DAVID I. TABAK**<br><br>Judge:  Hon. Charles R. Breyer<br><br>Magistrate Judge:  Hon. Donna M. Ryu<br>Hearing Date:     October 31, 2025<br>Time:             10:00 a.m.<br>Courtroom:        6, 17th Floor |

**TABLE OF CONTENTS**

**Page**

SUMMARY OF THE ARGUMENT ........................................................................................1

ARGUMENT .........................................................................................................................2

I. DR. TABAK FAILS TO ARTICULATE A SOUND LOSS CAUSATION THEORY .................2

    A. Sellers' Class Actions Are Subject To The Same Loss Causation Requirements As Buyers' Cases Under *Dura*..........................................................................................2

    B. Dr. Tabak Does Not Isolate The Artificial Deflation ..............................................5

    C. Dr. Tabak's Failure To Engage With The Disaggregation Issue Is Grounds For Exclusion......................................................................................................................7

II. PLAINTIFFS' COUNSEL CANNOT CONDUCT DR. TABAK'S ANALYSIS FOR HIM........................................................................................................................................9

    A. Dr. Tabak Does Not Rely On A Single Analyst Report And thus Did Not Do The Appropriate Analysis To Remove Confounding Information ..............................................9

    B. Dr. Tabak Assumes Without Justification That The October 4th Letter Was A Corrective Disclosure Of The May 13 Tweet..................................................................10

CONCLUSION.....................................................................................................................11

DEFENDANT ELON MUSK'S REPLY ISO MOTION TO EXCLUDE THE OPINIONS OF DAVID I. TABAK

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
738 F.3d 960 (9th Cir. 2013) ................................................................................6

*Atmel Corp. v. Info. Storage Devices, Inc.*,
189 F.R.D. 410 (N.D. Cal. 1999)........................................................................1, 9

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*
663 F. Supp. 3d 334, 374-76 (S.D.N.Y. 2023) ...................................................3, 4

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ................................................................................3

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).............................................................................1, 2, 3, 4, 10

*General Electric Co. v. Joiner*,
522 U.S. 136 (1997)..............................................................................................6

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ................................................................................6

*Gross v. GFI Grp., Inc.*,
310 F. Supp. 3d 384 (S.D.N.Y. 2018), *aff'd,* 784 F. App'x 27 (2d Cir. 2019) .........................8

*Gruber v. Gilbertson*,
628 F. Supp. 3d 472 (S.D.N.Y. 2022)...................................................................8

*Hubbard v. BankAtlantic Bancorp. Inc.*,
688 F.3d 713 (11th Cir. 2012) ..............................................................................7

*Levie v. Sears Roebuck & Co.*,
496 F. Supp. 2d 944 (N.D. Ill. 2007) ...................................................................3

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) ..........................................................................1, 11

*McCoy v. DePuy Orthopaedics, Inc.*,
2024 WL 1705952 (S.D. Cal. Apr. 19, 2024)........................................................9

*Menorah Mivtachim Ins. Ltd. v. Sheehan*,
2024 WL 1613907 (2d Cir. Apr. 15, 2024) ...........................................................7

*In re Novatel Wireless Sec. Litig.*,
2013 WL 12247558 (S.D. Cal. Nov. 19, 2013) .....................................................7

DEFENDANT ELON MUSK'S REPLY ISO MOTION TO EXCLUDE THE OPINIONS OF DAVID I. TABAK

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
  730 F.3d 1111 (9th Cir. 2013) ...............................................................................2, 3, 5, 10

*In re Omnicom Grp., Inc. Sec. Litig.*,
  541 F. Supp. 2d 546 (S.D.N.Y. 2008), aff'd, 597 F.3d 501 (2d Cir. 2010).....................3, 8, 10

*In re Oracle Sec. Litig.*,
  829 F. Supp. 1176 (N.D. Cal. 1993) .................................................................................1, 5

*In re REMEC Inc. Sec. Litig.*,
  702 F. Supp. 2d 1202 (S.D. Cal. 2010)................................................................................7

*Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*,
  2005 WL 1366025 (D.N.J. June 8, 2005) .............................................................................3

*In re Sci. Atlanta, Inc. Sec. Litig.*,
  754 F. Supp. 2d 1339 (N.D. Ga. 2010) .................................................................................7

*Smilovits v. First Solar, Inc.*,
  2019 WL 7282026 (D. Ariz. Dec. 27, 2019) ........................................................................8

*In re Tesla, Inc. Sec. Litig.*,
  2022 WL 7374936 (N.D. Cal. Oct. 13, 2022)..................................................................7, 8, 9

*In re Twitter, Inc. Sec. Litig.*,
  2020 WL 4187915 (N.D. Cal. Apr. 17, 2020) .......................................................................8

*Williams v. Gaye*,
  895 F.3d 1106 (9th Cir. 2018) ..............................................................................................8

*Williams Sec. Litig.–WCG Subclass*,
  558 F.3d 1130 (10th Cir. 2009) ...........................................................................................11

*Wolff v. Tomahawk Mfg.*,
  2025 WL 1555251 (D. Or. June 2, 2025) ..............................................................................9

**Statutes / Rules**

FED. R. CIV. P. 5(b)...............................................................................................................13

Rule 104 ................................................................................................................................11

Rule 26(a)(2)(B)......................................................................................................................9

Rule 702 ..............................................................................................................................1, 11

DEFENDANT ELON MUSK'S REPLY ISO MOTION TO EXCLUDE THE OPINIONS OF DAVID I. TABAK

# SUMMARY OF THE ARGUMENT

The Court should exclude the expert testimony of Dr. David Tabak, whose fundamentally flawed loss causation analysis abandons the accepted methodology required in securities litigation and fails to satisfy the basic reliability standards under Rule 702 and *Daubert*.  Plaintiffs' Opposition rests on the faulty premise that the burden of proving loss causation differs when plaintiffs are sellers rather than purchasers.  This proposition finds no support in controlling authority.  Whether labeled "inflation" or "deflation," Plaintiffs must show a causal connection between the alleged misrepresentation and the loss, and they must reasonably distinguish fraud-related effects from market, industry, and firm-specific forces. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005).  Dr. Tabak's proffered analysis fails to satisfy this essential requirement.

Contrary to the accepted methodology in securities cases, Dr. Tabak conducted no qualitative review of contemporaneous analyst commentary to determine what the market understood and reacted to.  Instead, he equates price movement with fraud, rejects his own event-study in calculating damages, and adopts a "constant percentage" ribbon that knowingly incorporates general market and industry moves.  That approach does not isolate any artificial deflation attributable to the May 13 Tweet; it sweeps in non-fraud information—including what Plaintiffs themselves say was true, i.e., the market's perception that Mr. Musk had "cold feet."  *See In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1181 (N.D. Cal. 1993) (finding damages methodology unreliable where expert failed to separate fraud-related from non-fraud influences).

Plaintiffs cannot fix those methodological failures by doing the work for Dr. Tabak.  Post-hoc citations to analyst reports in a brief are not a substitute for an expert's own disaggregation analysis.  The admissibility of expert testimony must be evaluated based upon the methodology actually employed by the expert, as set forth in the expert's report, rather than upon subsequent attempts at rehabilitation by counsel.  *See Atmel Corp. v. Info. Storage Devices, Inc.*, 189 F.R.D. 410, 416 (N.D. Cal. 1999) (excluding expert opinion on industry knowledge for failure to review industry literature ***prior*** to disclosing expert report).  Nor can arithmetic stand in for causation.  Dr. Tabak declines to opine that the October 4 Letter actually "corrected" the May 13 Tweet, offers no analysis of what the October 4 Letter revealed vis-à-vis the May 13 Tweet, and ignores the obvious intervening event—the July 8 termination letter—that he admits could explain the post-July price path independent of the May 13 Tweet.  *See Lloyd v. CVB Fin.*

DEFENDANT ELON MUSK'S REPLY ISO MOTION TO EXCLUDE THE OPINIONS OF DAVID I. TABAK

*Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) ("[T]he plaintiff in a securities fraud action must demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event.").

Dr. Tabak's testimony therefore fails at every critical juncture: he employs no methodology to isolate fraud-related impacts, ignores admittedly truthful information that requires disaggregation, and assumes correlation equals causation. The result is an opinion that forces the jury to accept Dr. Tabak's conclusion without any evidentiary foundation, unless they attempt to reconstruct the missing analysis through complex calculations of their own. Because his opinions rest on dubious assumptions and arithmetic rather than a reliable methodology, they are inadmissible and should be excluded in full.

<u>ARGUMENT</u>

## I.    DR. TABAK FAILS TO ARTICULATE A SOUND LOSS CAUSATION THEORY

### A.    Sellers' Class Actions Are Subject To The Same Loss Causation Requirements As Buyers' Cases Under *Dura*

The fundamental requirements for proving loss causation are the same in a seller case as in a purchaser case. The Supreme Court has made clear that a plaintiff must establish "a causal connection between the material misrepresentation and the loss" they claim to have suffered, not simply that a misrepresentation was made at the same time the security's price moved. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). That principle applies with equal force here. Plaintiffs cannot evade *Dura*'s mandate by rebranding their theory as one of "deflation" rather than "inflation." Regardless of whether Plaintiffs bought at an inflated price or sold at a deflated one, they must prove that the loss they suffered was actually caused by the revelation of the fraud, and not by unrelated "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events." *Id.* at 342-43; *see also Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1123 (9th Cir. 2013) ("[E]vidence that certain misrepresented risks are responsible for a loss must reasonably distinguish the impact of those risks from other economic factors.").

Plaintiffs appear to argue that it is enough that Dr. Tabak identified a statistically significant decline following Mr. Musk's May 13 Tweet. Opp. at 5. But a stock drop, without more, does not establish loss causation. As courts have recognized, the "causal connection" required by *Dura* demands

evidence that the alleged fraud was later corrected and that the stock price responded accordingly. *See In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020) ("[P]laintiff must show that after purchasing her shares and before selling, the following occurred: (1) 'the truth became known,' and (2) the revelation caused the fraud-induced inflation [or deflation] in the stock's price to be reduced or eliminated."); *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 552 (S.D.N.Y. 2008), aff'd, 597 F.3d 501 (2d Cir. 2010) (a corrective disclosure must "reveal the falsity of the alleged misstatements"). Plaintiffs' reliance on *Levie v. Sears Roebuck & Co.*, 496 F. Supp. 2d 944 (N.D. Ill. 2007), is misplaced. That case addressed class certification, not the elements of loss causation—the fact that the plaintiffs in *Levie* can be class members does not excuse them from proving loss causation.[1]  *Id.* at 947-49.  Without a corresponding statistically significant increase tied to the revelation of **the fraud** (and not some other information), there is no basis to conclude that any decline was caused by misrepresentation rather than market, industry, or firm-specific factors.  Indeed, if the stock never rebounds after the supposed correction, then seller plaintiffs suffered no actionable loss because they could not have sold at a higher price absent the alleged fraud.[2]

Recognizing this, courts have rejected attempts to collapse the loss-causation inquiry into mere temporal correlation as Plaintiffs attempt here (Opp. at 8).  *See Nuveen*, 730 F.3d at 1121 (rejecting theory that "renders the concept of loss causation meaningless by collapsing it into transaction causation").  In fact, in *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*—the primary authority Plaintiffs' cite in support of their argument that *Dura* does not apply to seller's cases—the court made clear that merely showing that a stock's price fell at the same time of the alleged fraud was insufficient to plead loss causation, even under a deflation theory.  663 F. Supp. 3d 334, 374-76 (S.D.N.Y. 2023).  The *Altimeo* court held that plaintiffs survived the motion to dismiss only because they plausibly pleaded that "had the market been

---

[1]  Plaintiffs further cite to *Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*, 2005 WL 1366025, at *7 (D.N.J. June 8, 2005) to support this unfounded theory.  *Rocker* dealt with a motion to dismiss and merely decided that "issues related to causation and whether a given misstatement substantially contributed to Plaintiffs' losses, are not properly resolved at this juncture."  *Id.* (quotations and citations omitted).  It said nothing about reducing the requirements to prove causation at trial.

[2]  Plaintiffs' hypothetical proves this logic—the investor who sold at $80 can buy back in at $80 and could not have sold at a better price had they not sold until after revelation of the fraud.  Opp. at 11.

DEFENDANT ELON MUSK'S REPLY ISO MOTION TO EXCLUDE THE OPINIONS OF DAVID I. TABAK

fully informed of the" truth during the class period, the price of securities would have been higher. *Id.* at 376. It also pointedly noted that "discovery will test such premises" and that plaintiffs bore the obligation to prove ultimately prove that theory. *Id.* at 375. Here, Plaintiffs had the opportunity to test the premise of their theory. But their own expert, does not even attempt to connect the dots for them to prove the premise. Dr. Tabak merely points to statistically significant movements alone. This does not show how the market would have reacted to the "truth" because Dr. Tabak dispenses with any analysis whatsoever regarding what the market was actually reacting to, including the extensive analyst commentary showing that the market was not reacting to any allegedly "false" aspect of Mr. Musk's statements. Dr. Tabak similarly conducted no analysis to determine whether a corrective disclosure caused a statistically significant increase consistent with curing the alleged deflation.[3]

Indeed, Dr. Tabak admitted he was unwilling to opine that Twitter's stock price would have been *any different* had Mr. Musk simply tweeted that he was getting cold feet about the Merger. Nor was Dr. Tabak willing to opine that the October 4 Letter constituted a corrective disclosure at all. Tabak Dep. (Mot. Ex. A) 168:6-13. Those omissions are both fatal under *Dura*. Plaintiffs' theory effectively asks the Court to dispense with the very requirement that ensures a jury can distinguish between losses caused by fraud and those caused by other market forces, including changed market expectations based on inferences the market drew that Plaintiffs allege were *correct*. Without proof that the alleged misstatements were

---

[3]  Dr. Tabak's opinion is also deficient under *Altimeo*. 663 F. Supp. 3d at 376. Dr. Tabak's model provides no analysis or evidence to show that the price of Twitter's stock would have been higher had the market known that the deal was not "pens down" or that Musk did not have the rights he allegedly claimed he did in the May 13 tweet. Dr. Tabak admitted that when the market learned from both Twitter *and* Musk that the parties continued to work toward closing, the stock price did *not* increase in any statistically significant way. Tabak Dep. 60:10-21. Dr. Tabak was unable to explain and had no opinion why these disclosures did not cause Twitter's stock to rise. Tabak Dep. at 59:3-9; 61:10-16. Plaintiffs claim that the absence of any price response to these disclosures "is irrelevant" because "Musk provides no reason the market would place the same, or any emphasis on statements by Twitter's CLO…compared to a statement by Musk himself." Opp. at 14. But Plaintiffs ignore that two of the disclosures at issue *did* come from "Musk himself." Tabak Dep. at 46:8-49:2; 54:6-56:8. Dr. Tabak had no explanation why those statements did not cause any movement in Twitter's stock price. So even assuming *arguendo*, that there is some reason why the market would not respond to news from Twitter about the merger—a massive and unsupported assumption—Dr. Tabak's model fails even under *Altimeo* because it does not show that Twitter's stock price did rise in response to Musk's personal correction of the alleged misstatements.

DEFENDANT ELON MUSK'S REPLY ISO MOTION TO EXCLUDE THE OPINIONS OF DAVID I. TABAK

corrected and that the market reacted accordingly, Plaintiffs cannot satisfy the fundamental requirements of loss causation.

### B.    Dr. Tabak Does Not Isolate The Artificial Deflation

Dr. Tabak's damages model is fatally flawed because it does not isolate the alleged artificial deflation from other influences on Twitter's stock price.  Rather than limiting damages to the portion of the decline attributable to the alleged misstatement, his methodology sweeps in movements caused by general market and industry forces, as well as information Plaintiffs themselves claim was true.  An expert must "reasonably distinguish" the impact of the alleged fraud from other economic factors, *Nuveen*, 730 F.3d at 1123, and damages cannot be based on price movements caused by non-fraudulent information. *See In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1181 (N.D. Cal. 1993) (damages analysis "drawn into question" where expert "fail[ed] to distinguish between the fraud-related and non-fraud related influences on the stock's price behavior").  Yet Dr. Tabak rejected his own event study and admitted that he did nothing to disaggregate the effect of truthful information, such as the market's interpretation that Mr. Musk was getting "cold feet," from any alleged misrepresentation in the May 13 Tweet.  Tabak Dep. 86:1–87:5; 134:5-13.

Plaintiffs argue that Dr. Tabak's failure to remove the effects of market and industry factors should be excused because he was "conservative" by using an unadjusted $7.69 decline rather than the $8.52 abnormal return his event study measured.  Opp. at 2.  But this supposed conservatism applies only to one instance in the class period—and only if one accepts his novel two-day window.[4]  For every other day in the class period, Dr. Tabak abandoned his event study entirely and relied instead on a "constant percentage" methodology that knowingly includes market and industry movements.  Tabak Dep. 134:5-13, 138:23-139:15.  Plaintiffs concede that Dr. Tabak has included movements caused by market and industry factors in his analysis (Opp. at 14), which is precisely what courts have consistently held merits exclusion. *Nuveen*, 730 F.3d at 1123 (rejecting expert's opinion for failing to disaggregating non-fraud

---

[4]  Indeed, Dr. Tabak awards $6.17 in damages to a class member who sold on May 13—the entire amount of the raw stock decline on that day—when his event study provides an abnormal return of only $5.94.  Tabak Rp't at Ex. 4a, Ex. 5b-SUPP.  Plaintiffs' argument that Dr. Tabak's methodology is "conservative" only applies to class members who sold on May 16, not any of the other 143 days in the Class Period for which he awards damages without use of his event study. *Id.*

related information); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 423 (7th Cir. 2015) (finding expert opinion insufficient for not disaggregating non-fraud related information and ordering a new trial on this basis). As a result, his model sometimes awards Plaintiffs more damages than the entire $7.69 decline he attributes to the May 13 Tweet,[5] an illogical outcome with no precedent in the case law. No court has endorsed a methodology that awards damages greater than the total decline allegedly caused by the fraud itself. Plaintiffs ask this Court to be the first.

This flaw is compounded by Dr. Tabak's use of a two-day window. He extends his analysis mechanically through May 16, despite admitting that information released over the weekend—such as Mr. Musk's May 15 Tweet and the SparkToro study—could have affected Twitter's stock but was never ruled out. Tabak Dep. 105:15-22, 113:4-16. His window choice is dictated by math, not analysis of what the market was actually reacting to. Tabak Rp't (Mot. Ex. 243) at ¶ 18. If the proper window were one day, then his two-day approach materially overstates damages.[6] Plaintiffs' suggestion that the jury can simply "do the math" and adjust his model if it rejects the two-day window (Opp. at 6) only underscores the problem. Expert testimony must itself be reliable; an unreliable model cannot be salvaged by leaving jurors to reconstruct a different one. *See General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered" to allow it to be presented to the jury.); *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)("[T]he judge is supposed to screen the jury from unreliable nonsense opinions.").

Finally, Plaintiffs misstate their own expert's conclusions by suggesting that losses were caused by the May 16 alleged misstatement. Opp. at 9, 13. Dr. Tabak explicitly ruled that statement out as an independent source of loss, finding "no statistical evidence that the statement made during the trading day had any economic importance." Tabak Rp't ¶ 18. His two-day window simply sweeps in the May 16

---

[5] For example, Dr. Tabak awards class members who sold on May 24, 2022 $8.44 in damages, nearly 10% more than the actual stock decline on May 13. Tabak Rp't at Ex. 5b-SUPP.

[6] The raw stock decline on May 13th was $8.52, but Dr. Tabak's event study provides that the decline was only $7.69 when adjusted for market and industry factors. Tabak Rp't at ¶ 22.

DEFENDANT ELON MUSK'S REPLY ISO MOTION TO EXCLUDE THE OPINIONS OF DAVID I. TABAK

decline by arithmetic, not by reasoned analysis.  That choice—combined with his failure to disaggregate market, industry, and truthful information—renders his opinion fatally unreliable.

### C.     Dr. Tabak's Failure To Engage With The Disaggregation Issue Is Grounds For Exclusion

Dr. Tabak's analysis collapses at the threshold because he never even *attempts* to separate the impact of alleged fraud from information Plaintiffs allege was true.  He admits that the May 13 Tweet plausibly conveyed both true and false information—that it increased the market's impression that Mr. Musk was getting "cold feet," which Plaintiffs themselves say was true—but he made no effort whatsoever to disaggregate the effect of that supposed truth from the alleged fraud.  Tabak Dep. 86:1–87:5.  Courts have been clear that "plaintiffs should not recover for losses not caused by the misrepresentation." *In re Novatel Wireless Sec. Litig.*, 2013 WL 12247558, at *3 (S.D. Cal. Nov. 19, 2013).  By ignoring the issue altogether, Dr. Tabak offers no way for a jury to determine what portion of the decline, if any, is fraud-related.  This is not a problem for cross-examination—it is a threshold reliability failure that warrants exclusion.

Plaintiffs themselves have argued, in seeking to exclude Dr. Lehn, that the question of whether an expert has properly disaggregated is for the Court, not the jury.  Dkt. 246 at 5-6.   That is correct here, as Dr. Tabak has provided the jury with no means to disaggregate. *Menorah Mivtachim Ins. Ltd. v. Sheehan*, 2024 WL 1613907, at *2 (2d Cir. Apr. 15, 2024) (granting summary judgment for failure to disaggregate); *Hubbard v. BankAtlantic Bancorp. Inc.*, 688 F.3d 713, 729-30 (11th Cir. 2012) (granting judgment as a matter of law for failure to disaggregate); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1275 (S.D. Cal. 2010) (excluding expert and dismissing case for failure to disaggregate); *In re Sci. Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting summary judgment for failure to disaggregate).  Nor can they rely on *In re Tesla* as cover.  In *In re Tesla, Inc. Sec. Litig.*, 2022 WL 7374936 (N.D. Cal. Oct. 13, 2022), the Court allowed an expert to testify without quantitatively separating true and false components because the Court found there was evidence—based on the expert's robust qualitative analysis—that there was no impact from the non-fraud component of statement. *Id.* at *10-11 (declining to exclude expert who examined "approximately 2,400 articles published during the Class Period to identify" and rule out any company-specific information that could impact stock price).  Dr. Tabak did

nothing of the sort. He cites no analyst reports, offers no qualitative discussion, and simply assumes the entire decline was caused by the alleged misstatement. His analysis therefore bears no resemblance to the expert work credited in *In re Tesla*.

The other cases Plaintiffs cite do not rescue Dr. Tabak's analysis; they highlight why it must be excluded. Plaintiffs cite to a handful of cases for the proposition that "[t]he question of how much of the decline can be attributed to the challenged statements, as opposed to other factors, is a factual question for the jury." Opp. at 6. These carefully selected quotes and cites are misleading. In *Gruber v. Gilbertson*, 628 F. Supp. 3d 472 (S.D.N.Y. 2022), the paragraph immediately preceding Plaintiffs' citation explains that the expert in that case disaggregated, which Tabak failed to do here. *Id.* at 489 (S.D.N.Y. 2022). Plaintiffs' reliance on *In re Twitter, Inc. Sec. Litig.,* 2020 WL 4187915, at *16, n.17 (N.D. Cal. Apr. 17, 2020) is similarly flawed. That footnote is distinguished by the fact that the expert disaggregated confounding data. *Id*. at *16 n. 17. Plaintiffs' cite to *Smilovits v. First Solar, Inc.*, 2019 WL 7282026, at *9 (D. Ariz. Dec. 27, 2019) is likewise problematic. There, the expert disaggregated confounding information, the argument was simply about *how* he did that. *Id.* at *9.[7] Here, by contrast, Dr. Tabak expressly refused to disaggregate, even though he acknowledged the existence of confounding truth.

At bottom, Plaintiffs misstate the record when they suggest that Dr. Tabak engaged in the kind of analysis courts have accepted. He admits there was information to disaggregate, but made no attempt to do so. That omission is not cured by hand-waving about the jury's ability to "do the math." Courts have repeatedly stressed that experts must isolate fraud-related losses from other causes before the case reaches a jury. *See In re Omnicom,* 541 F. Supp. 2d at 554 (rejecting an expert's report from being submitted to the jury when the expert failed to disaggregate because "there is simply no way for a juror to determine whether the alleged fraud caused any portion of Plaintiffs' loss."); *Gross v. GFI Grp., Inc.,* 310 F. Supp. 3d 384, 398–99 (S.D.N.Y. 2018), *aff'd,* 784 F. App'x 27 (2d Cir. 2019) (preventing the expert's report

---

[7] Plaintiffs fare no better with their cite to *Williams v. Gaye*, 895 F.3d 1106 (9th Cir. 2018), a copyright infringement case. The portion that Plaintiffs quote is about appellate review of the jury's apportionment of "an infringer's profits," which the court reviewed for "clear error." *Id.* at 1129-30. This discussion and citation has nothing to do with a securities plaintiff's obligation to disaggregate and does not support the proposition that "perfectly capable of adjusting a damages expert's model to account for its liability findings" in a securities class action. Mot. at 6.

DEFENDANT ELON MUSK'S REPLY ISO MOTION TO EXCLUDE THE OPINIONS OF DAVID I. TABAK

from being submitted to the jury when the expert did not disaggregate because "a jury would not be able to disaggregate that portion of the increase in [company's] share price attributable to a correction of [defendant's] statement from that portion of the increase attributable to the other information simultaneously disclosed to the market."). Because Dr. Tabak's report makes no attempt at providing a principled method for making that distinction, it is inadmissible as a matter of law.

## II. PLAINTIFFS' COUNSEL CANNOT CONDUCT DR. TABAK'S ANALYSIS FOR HIM

### A. Dr. Tabak Does Not Rely On A Single Analyst Report And thus Did Not Do The Appropriate Analysis To Remove Confounding Information

Analyst commentary is one of the primary tools experts use to evaluate whether a stock price reaction was in fact attributable to an alleged misstatement as opposed to other contemporaneous events. *See, e.g., In re Tesla*, 2022 WL 7374936 at *10 (declining to exclude where expert examined "approximately 2,400 articles published during the Class Period" to identify and rule out confounding information). Dr. Tabak, however, admitted that he did not cite or rely on a single analyst report in his forming his affirmative opinion, despite acknowledging that they are "often useful for things such as additional disaggregation." Tabak Dep. 178:1-23.

Plaintiffs attempt to paper over this failure by noting that their counsel reviewed analyst reports and determined potentially confounding information was "almost completely ignored by the news and analysts." Opp. at 13-14. That is insufficient. The law requires the expert, not the advocate, to do the analysis. *See Atmel Corp. v. Info. Storage Devices, Inc.*, 189 F.R.D. 410, 416 (N.D. Cal. 1999) ("It is true that, after the fact, Mr. Kern tried to rebut the articles advanced by the opposing experts and that . . . he [later] conducted a literature search. This did not cure the intentional failure to do the work professionally required for his Rule 26(a)(2)(B) report."); *see also McCoy v. DePuy Orthopaedics, Inc.*, 2024 WL 1705952, at *16 (S.D. Cal. Apr. 19, 2024) ("An expert witness [must] . . . independently investigat[e] the underlying evidence."); *Wolff v. Tomahawk Mfg.*, 2025 WL 1555251, at *7 (D. Or. June 2, 2025) ("Wolff's post hoc argument that Ms. Wolff's opinion is based on the entire-market-value rule cannot fill in the gaps for her deficient expert report. Because Ms. Wolff did not apportion the royalty, cite or discuss the entire-market-value rule, or provide any reasoning or methodology that explains her royalty calculation or can support an inference that she applied the entire-market-value rule, her opinion is unreliable."). Although

Dr. Tabak eventually looked at some analyst reports after being confronted with Dr. Lehn's criticisms, he has never disclosed any such reports as the basis for his affirmative opinions.  Tabak Rp't at Ex. 2.

Accordingly, *counsel's* conclusion that analyst commentary indicated that Twitter-specific information released on May 14 and 15, 2022 was "indicative of an immaterial news event" is irrelevant and cannot rescue Dr. Tabak's analysis from exclusion.  *Dr. Tabak* cannot testify that he studied these events and the accompanying analyst commentary and ruled out that they had any impact on Twitter's May 16 price drop.  In fact, Dr. Tabak doesn't know one way or the other if the May 15 Tweet or SparkToro report had an impact because he did not consider them.  Tabak Dep. 105:1-22; 109:3-110:6.  Nor can he testify that there is any evidentiary basis for concluding that the May 13 Tweet—rather than confounding information about bots or Mr. Musk's perceived "cold feet"—caused the declines he attributes to fraud.  Without considering and conducting a qualitative analysis of analyst reports to either disaggregate the price impact of company-specific non-fraud information or support his conclusion that no disaggregation is necessary, Dr. Tabak's model is nothing more than arithmetic that assumes away the core loss-causation question.  That is not a reliable methodology under *Dura* and its progeny, and it should be excluded.  *Nuveen*, 730 F.3d at 1123 (To show loss causation, plaintiffs "must reasonably distinguish the impact of" the alleged fraud "from other economic factors.").

**B.    Dr. Tabak Assumes Without Justification That The October 4th Letter Was A Corrective Disclosure Of The May 13 Tweet**

Dr. Tabak's model starts from an unsupported premise: that the October 4 Letter "corrected" the May 13 Tweet.  Tabak Dep. at 166:3-12.  Yet, Dr. Tabak does not take a position on whether the October 4th Letter is a corrective disclosure.  Tabak Dep. at 167:18-23 ("Q: So are you -- your opinion is that the October 4th, 2022, statement is actually corrective of the May 13 tweet?  A:  I actually really don't have much of an opinion there because that is not relevant to the damages analysis.").  He did not analyze what October 4 actually revealed vis-à-vis May 13; he simply observed a statistically significant price increase and assigned it to "correction."  Tabak Dep. at 56:14-19.  That is correlation, not causation.  Courts require that a corrective disclosure "reveal the falsity of the alleged misstatements," not merely coincide with a price move.  *In re Omnicom.*, 541 F. Supp. 2d at 552.  A "math-only" inference that "[t]he fact that that there was a statistically significant increase following this news [on October 4th] provides additional

evidence of the economic importance of the alleged misrepresentations" does not satisfy Rule 702's reliability requirements.  Tabak Rp't at ¶ 20.

The analytical gap is especially stark because Dr. Tabak never grapples with the obvious intervening cause: Mr. Musk's July 8 Termination Letter.  That firm-specific event may have materially reset market expectations about the transaction independent of any May 13 statement.  Tabak Dep. at 155:14-22; 161:7-16.  By Dr. Tabak's own admission, from July 8 through October 4 Twitter's stock would have followed the same path whether or not the May 13 tweet had ever been made.  Tabak Dep. 168:18–169:7.  If the post-July 8 price was unaffected by May 13, then the October 4 increase cannot logically be a "correction" of May 13; more likely, it reflects a market reaction to the resolution of the termination dispute introduced on July 8.  That concession severs any causal chain tying October 4 back to May 13.  *Williams Sec. Litig.–WCG Subclass*, 558 F.3d 1130, 1138 (10th Cir. 2009) (a plaintiff may not "simply state that the market had learned the truth by a certain date and, because the learning was a gradual process, attribute all prior losses to the revelation of the fraud"); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) ("Loss causation is shorthand for the requirement that investors must demonstrate that the defendant's deceptive conduct caused their claimed economic loss . . . Thus, like a plaintiff claiming deceit at common law, the plaintiff in a securities fraud action must demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event.") (internal quotations omitted).  Because Dr. Tabak's corrective disclosure assumption ignores an acknowledged intervening cause and substitutes arithmetic for analysis, the Court should exclude opinions that rely on October 4 as a "correction" of May 13.

### CONCLUSION

Defendant respectfully requests that the Court grant this motion to exclude the opinions of Dr. David I. Tabak, or, in the alternative, hold a Rule 104 hearing to determine their admissibility.

DATED:  September 26, 2025                    QUINN EMANUEL URQUHART & SULLIVAN, LLP


By _____/s/ Jesse A. Bernstein_____
   Alex Spiro
   Michael T. Lifrak
   Stephen A. Broome
   Jesse A. Bernstein

   *Attorneys for Defendant Elon Musk*

Case No. 3:22-cv-05937-CRB
DEFENDANT ELON MUSK'S REPLY ISO MOTION TO EXCLUDE THE OPINIONS OF DAVID I. TABAK

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on this the 26th day of September, 2025.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Alex Bergjans
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Jesse A. Bernstein

*Attorneys for Defendant Elon Musk*

DEFENDANT ELON MUSK'S REPLY ISO MOTION TO EXCLUDE THE OPINIONS OF DAVID I. TABAK

**<u>ATTESTATION</u>**

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories herein.

By */s/ Alex Bergjans*
   Alex Spiro
   Michael T. Lifrak
   Stephen A. Broome
   Jesse A. Bernstein

   *Attorneys for Defendant Elon Musk*