QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice* )
alexspiro@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
Jessebernstein@quinnemanuel.com
Jonathan E. Feder (*pro hac vice*)
jonathanfeder@quinnemanuel.com
Stephanie Kelemen (*pro hac vice*)
stephaniekelemen@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

*Attorneys for Defendant Elon Musk*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>ELON R. MUSK,<br><br>　　　　　Defendant. | Case No. 3:22-CV-005937-CRB<br><br>**DEFENDANT ELON MUSK'S REPLY IN SUPPORT OF HIS MOTION TO EXCLUDE THE OPINIONS OF EMILY STRAUSS**<br><br>Judge:  Hon. Charles R. Breyer<br><br>Magistrate Judge:  Hon. Donna M. Ryu<br><br>Hearing Date:  October 31, 2025<br>Time:  10:00 a.m.<br>Courtroom: 6, 17th Floor |

**TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ................................................................................................1

ARGUMENT ......................................................................................................................1

I.      PROFESSOR STRAUSS IMPROPERLY OPINES ON LEGAL STANDARDS, NOT SECURITIES CUSTOM AND PRACTICE ................................................................1

II.     PROFESSOR STRAUSS'S SCHEDULE 13D, STOCK OWNERSHIP, AND STOCK MOVEMENT OPINIONS ARE IRRELEVANT, PREJUDICIAL, AND MISLEADING ............4

        A.      Professor Strauss's Schedule 13D Opinions Are Not Relevant or Helpful to This Case ..................................................................................................................4

        B.      Professor Strauss's Opinions Related to the Stock Charts Are Not Relevant or Helpful ..............................................................................................................6

III.    PROFESSOR STRAUSS'S ENTIRE SECURITIES 101 LECTURE IS IRRELEVANT AND UNHELPFUL ................................................................................................8

CONCLUSION ...................................................................................................................10

Case No. 3:18-cv-04865-EMC
DEFENDANT ELON MUSK'S REPLY IN SUPPORT OF HIS MOTION TO EXCLUDE THE OPINIONS OF EMILY STRAUSS

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Bennett v. AT&T Servs., Inc.*,
2021 WL 11701375 (N.D. Cal. Nov. 12, 2021) .................................................................................9

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
455 F.3d 195 (3d Cir. 2006)...................................................................................................3, 4

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014) ..............................................................................................4

*Focal Point Films, LLC v. Sandhu*,
2020 WL 5760355 (N.D. Cal. Sept. 28, 2020) ......................................................................2, 4

*Hafen v. Howell*,
2023 WL 2188566 (D. Utah Feb. 23, 2023) ...............................................................................10

*Lust v. Merrell Dow Pharms., Inc.*,
89 F.3d 594 (9th Cir. 1996) .........................................................................................................7

*Maddox v. Los Angeles*,
792 F.2d 1408 (9th Cir. 1986) .....................................................................................................5

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008) .....................................................................................................3

*Persian Gulf Inc. v. BP W. Coast Prods. LLC*,
632 F. Supp. 3d 1108 (S.D. Cal. 2022)...................................................................................9, 10

*Provident Life & Acc. Ins. Co*,
373 F.3d 998 (9th Cir. 2004) .......................................................................................................3

*SA Music LLC v. Apple, Inc.*,
592 F. Supp. 3d 869 (N.D. Cal. 2022) .........................................................................................9

*Sec. & Exch. Comm'n v. Zouvas*,
2019 WL 4016687 (D. Ariz. Aug. 26, 2019)...............................................................................9

*United States v. Rahm*,
993 F.2d 1405 (9th Cir. 1993) .....................................................................................................10

*United States v. Weinstein*,
2025 WL 509245 (D.N.J. Feb. 14, 2025) ...................................................................................10

*Waymo LLC v. Uber Techs., Inc.*,
2017 WL 5148390 (N.D. Cal. Nov. 6, 2017) .............................................................................7

DEFENDANT ELON MUSK'S REPLY IN SUPPORT OF HIS MOTION TO EXCLUDE THE OPINIONS OF EMILY STRAUSS

**Rules**

Fed. R. Civ. P. 5(b) ...............................................................................................................12

Fed. R. Evid. 403 ..................................................................................................................5

Case No. 3:18-cv-04865-EMC
DEFENDANT ELON MUSK'S REPLY IN SUPPORT OF HIS MOTION TO EXCLUDE THE OPINIONS OF EMILY
STRAUSS

**SUMMARY OF ARGUMENT**

Plaintiffs' Opposition to Defendant's Motion to Exclude the Opinions of Professor Emily Strauss is not a response to Musk's arguments, but an exercise in evasion. Plaintiffs do not dispute that Professor Strauss intends to tell the jury what "requirements apply to public companies" and individuals under the federal securities laws. Opp. at 4. Instead, they try to rebrand these opinions as "customs and practices"—a phrase that appears nowhere in Professor Strauss's Report or deposition transcript. Professor Strauss did not use that term herself because she is not explaining industry habits or norms; she is purporting to testify about laws and regulations. Plaintiffs ignore Professor Strauss's own deposition confession: she intends to tell jurors what the law requires, pure and simple. Her legal opinions should not reach the jury.

Worse, Plaintiffs try to dodge the irrelevance and prejudice of Professor Strauss's opinions wholesale. They do not contest that she included prejudicial and misleading passages—like her descriptions of Section 13D's filing deadlines and stock ownership stats—only because Plaintiffs' lawyers asked her to, even though she acknowledged those opinions are untethered to this case. And they sidestep the real risk that this is an attempt to inject evidence of other Musk lawsuits to prejudice the jury.

Finally, Plaintiffs claim that "Securities 101" testimony is routine, but they almost exclusively cite criminal cases in which experts provided background testimony only to tie it to the specific facts of the case—which Strauss openly admitted she is not doing here. There is no dispute that experts can support their opinions with even the most basic foundational testimony. Where Plaintiffs go wrong is their insistence that an expert can provide only basic background, particularly on matters (like here) that are irrelevant to the action and well within the common knowledge and understanding of the average juror. This is a legal dispute subject to the Rules of Evidence, not a college survey course. The testimony must be relevant and helpful to be admissible. This Report is not.

Professor Strauss's Securities 101 lecture flunks Rule 702 and should be excluded in its entirety.

**ARGUMENT**

**I.    PROFESSOR STRAUSS IMPROPERLY OPINES ON LEGAL STANDARDS, NOT SECURITIES CUSTOM AND PRACTICE**

In an attempt to rescue Professor Strauss's legal opinions, Plaintiffs try to rewrite her report and transform her into a so-called "customs and practices" expert. Opp. at 4-5. But Professor Strauss never

uses that phrase anywhere and that is not the type of testimony she offers. To the contrary, Professor Strauss could not have been more clear about the purpose of her challenged testimony. She intends to explain what "public companies are required to do" pursuant to "statute and regulation" and "tell[] the jury that public companies have various obligations" under the law. Ex. A (Strauss Dep.) at 103:5-104:5; 102:1-15. Plaintiffs admit as much, conceding that she is articulating "the relevant *requirements that apply to public companies ….*" Opp. at 4.[1] But that is the Court's job, not Professor Strauss's. The Court should exclude these improper legal opinions at trial. *Focal Point Films, LLC v. Sandhu*, 2020 WL 5760355, at *6 (N.D. Cal. Sept. 28, 2020) ("[An] expert witness[] may not explain the law to the jury or tell the jury how to apply the law to the facts of the case.").

Plaintiffs' efforts to reframe Professor Strauss's actual opinions—which the Opposition takes great pains not to quote—reveal precisely how untenable their position is. Plaintiffs assert that "[e]xplaining that public companies customarily file periodic reports and that individuals with significant stakes in companies must also submit filings at times is not an improper legal opinion." Opp. at 4-5. The first part of this sentence mischaracterizes Professor Strauss's testimony. She did not opine that companies "file periodic reports" as a matter of "custom," she intends to testify that they are "*required*" to file such reports *as a matter of law*. Ex. B (Strauss Report) at 16 (discussing "periodic and event-driven disclosures that public companies are *required* to make"); *id.* ("This section describes the primary categories of *required disclosures*."); *id*. at 18 ("The Form 8-K is an episodic filing that companies *must submit* following the occurrence of certain material events … a *company must file* an 8-K within four business days of an event that a reasonable investor would consider important, or 'material.'"). And the second part of the sentence is a contradiction in terms: opining that "individuals … *must also submit* filings at times" does not describe some voluntary norm or custom, it is a legal opinion about a legal requirement.

Plaintiffs' cited authority only affirms that Professor Strauss's opinions should be excluded. Opp. at 4-5. In *Berckeley Inv. Grp., Ltd. v. Colkitt*, the court held that "any testimony as to the legal effect of the various SEC pronouncements regarding Rule 144 and Regulation S, are inadmissible as improper legal opinions," and excluded testimony about whether a party could reasonably believe it fell under a particular

---

[1]   All emphases are added unless otherwise noted.

DEFENDANT ELON MUSK'S REPLY IN SUPPORT OF HIS MOTION TO EXCLUDE THE OPINIONS OF EMILY STRAUSS

SEC exemption because it "concern[ed] … legal duties resulting from the various SEC pronouncements." 455 F.3d 195, 218 (3d Cir. 2006). Professor Strauss's opinions exclusively concern legal duties arising from various SEC rules and thus must be excluded. *E.g.,* Ex. A (Strauss Dep.) at 116:25-117:25 ("Q. [T]he specific opinion that any person or group that acquires more than 5 percent of a company's voting securities must file … a 13D within five business days of crossing that threshold, that is an explanation of what a legal requirement is, right? A. That's an explanation of what shareholders are obligated to do under 13D.").

*Hangarter v. Provident Life & Acc. Ins. Co.* (*see* Opp. at 5, 8), does not change this analysis. There, the court allowed an expert to offer an opinion relating to whether an insurer denied coverage in bad faith that was based in part on the expert's understanding of a statute that was not "directly at issue in the case." 373 F.3d 998, 1016 (9th Cir. 2004). In contrast, Professor Strauss is not relying on some ancillary statute to help form her ultimate opinions in this case; her challenged opinions directly describe the Securities Act and its related regulations. Ex. B (Strauss Report) at 16-20.

At the very least, Professor Strauss should not be permitted to give the jury an *erroneous* description of what SEC's various filing requirements were in 2022. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-59 (9th Cir. 2008) (affirming exclusion of "legal conclusions [that] not only invaded the province of the trial judge, but constituted erroneous statements of law"). Plaintiffs have no response to Musk's point that Professor Strauss admitted that her Schedule 13D opinions do not accurately describe what Musk's disclosure obligations were in April and May 2022. Ex. A (Strauss Dep.) at 118:9-119:5. Those opinions should be stricken and excluded for this reason alone.

Professor Strauss's testimony about the various ways in which the government and private parties are authorized by statute to enforce the securities laws also constitute impermissible legal opinions. Her description of the claims the SEC can bring and the remedies it may seek and a summary of federal and Supreme Court law on the viability of private rights of action under the Securities Act could not credibly be characterized as anything but an explanation of the law. *Focal Point Films,* 2020 WL 5760355, at *6; *see also In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 558 (C.D. Cal. 2014) ("[E]xpert witnesses' use of judicially defined terms, terms that derived their definitions from judicial interpretations, and legally specialized terms constitutes an expression of opinion as to the ultimate legal conclusion.") (cleaned up).

Plaintiffs present no argument otherwise.  They simply conclude with a citation to *Berckeley Inv. Grp.* that this portion of Strauss's Report "is not an improper legal conclusion as Musk claims."  Opp. at 5.  But simply stating that does not make it so.

Professor Strauss's opinions at pages 16-20 of her Report do nothing more than instruct the jury on the law.  They are the definition of improper legal opinions and should be excluded.

## II. PROFESSOR STRAUSS'S SCHEDULE 13D, STOCK OWNERSHIP, AND STOCK MOVEMENT OPINIONS ARE IRRELEVANT, PREJUDICIAL, AND MISLEADING

Musk also seeks to exclude two prejudicial and confusing portions of Professor Strauss's Report that she included not because she believed they were relevant, but because Plaintiffs' counsel instructed her to.  Ex. A (Strauss Dep.) at 55:6-10, 56:18-19, 59:7-13, 126:24-127:1.  The Opposition offers no persuasive defense of Professor Strauss's opinions concerning the deadline to file a Schedule 13D and her inclusion of certain Tesla and Twitter stock charts unnecessary to illustrate her unremarkable opinion that stock prices move day-to-day.  The Court should exclude them.

### A. Professor Strauss's Schedule 13D Opinions Are Not Relevant or Helpful to This Case

Professor Strauss intends to offer a narrow opinion regarding Schedule 13D—that after a person acquires 5% of a public company stock, he must file a Schedule 13D within five business days of crossing that threshold and amend the 13D within two business days of any shift of his ownership constituting 1% or more of the company's stock (Ex. B (Strauss Report) at 18), even though she acknowledges that she does not "understand 13D to be at issue here."  Ex. A (Strauss Dep.) at 126:13-23.  Plaintiffs attempt to rehabilitate this opinion through Professor Strauss's testimony that "13D is … relevant" to "give the jury some context and some terminology for the story," (Opp. at 7) but this vague explanation cannot overcome Professor Strauss's concession that she included the opinion only at counsels' insistence.  Ex. A (Strauss Dep.) at 126:24-127:1.  By Professor Strauss's own admission, her explanation of the timing requirements for filing a Schedule 13D has no probative value to any issue the jury must determine at trial and thus should be excluded under Rule 403.  Fed. R. Evid. 403; *Maddox v. Los Angeles*, 792 F.2d 1408, 1417-18 (9th Cir. 1986).

Even assuming *arguendo* that the market's reaction to Musk's April disclosure of his Twitter stake was relevant to scienter, Opp. at 7, Plaintiffs do not explain why the jury needs to know whether the timing

of that disclosure violated Section 13D.[2]  That conclusion—even if it were not baseless and the subject of a different class action[3]—is plainly irrelevant here.  Based on Plaintiffs' own proffered theory of relevance, Twitter's stock price jumped because the market learned that Musk took a large position in the company (Opp. at 7), not because Musk allegedly improperly delayed that disclosure.  There is thus no reason for the jury to learn that Musk's filing was allegedly untimely.

Plaintiffs also argue that Professor Strauss's opinion is relevant because Musk purportedly waived pre-signing diligence in an April 20, 2022 amendment to his Schedule 13D.  Opp. at 7.  But Professor Strauss's opinion is limited only to Section 13D's timing requirements when a person becomes a beneficial owner or subsequently effects some material change in his ownership of a public company.  She has no other opinions about what information is contained in a Schedule 13D or the impact of any other type of disclosure or representation in that form.  And she made clear that she is offering no opinions about the facts of this case—including Musk's decision to forego pre-signing business due diligence or the medium through which he made that offer.  Ex. A (Strauss Dep.) at 74:19-25 ("I'm not giving any opinions as to the facts of this case."); *id.* at 135:4-23 ("My report does not … offer any opinions about the facts of this case.").  This opinion cannot help the jury—and is likely only to create confusion in its efforts to—resolve any issue relating to Musk's April 20 disclosure.

Plaintiffs' arguments in support of Professor Strauss's Schedule 13D opinions expose the real purpose behind them: to accuse Musk of an unrelated violation of securities laws in order to unfairly paint him as a habitual rule breaker and market manipulator.  Musk's concerns about Plaintiffs' intent are not "based on speculation;" they make this very argument in the FAC.  Dkt. 31 ("FAC") ¶ 52 ("*Musk likely*

---

[2]  Plaintiffs claim that the 13D filings "will be discussed by witnesses, including Musk, at trial" because he was asked about it in his SEC deposition and his deposition in this case.  Opp. at 6-7.  Of course, Musk and other witnesses will only discuss his Schedule 13D filing if the Court determines this subject matter is admissible evidence.  Plaintiffs cannot make an otherwise irrelevant and inadmissible topic relevant just by asking about it in deposition.  And the fact that Musk testified about his Schedule 13D in his SEC deposition does not render that topic relevant in this case.  As the Court is aware, the SEC asked Musk about his Schedule 13D because it was investigating a potential violation of Section 13D—a violation that the Court found did not cause any damage to Plaintiffs in this case and does not give rise to any cause of action.  Dkt. 48 at 2 n.1.

[3]  *Rasella v. Musk*, No. 1:22-cv-03026 (S.D.N.Y., filed April 12, 2022).

*saved more than $143 million by not reporting that his trades had crossed the 5% threshold … since the* share price could have been higher had the market known of Musk's growing stake.") (emphasis in original). And Plaintiffs' defense that Professor Strauss does not personally draw this connection misreads and misrepresents Musk's argument. Opp. at 8. Professor Strauss herself does not need to explicitly articulate this inference for her opinion to be improperly prejudicial. The fact that Plaintiffs intend to use her to lay the evidentiary foundation to do so themselves justifies its exclusion. This opinion is plainly improper and this is the appropriate time and vehicle for the Court to strike it.

**B.      Professor Strauss's Opinions Related to the Stock Charts Are Not Relevant or Helpful**

Plaintiffs are also unable to defend Professor Strauss's misleading and confusing opinions regarding stock ownership and stock price movement and thus have not met their burden to establish that these opinions are admissible.

***Stock Ownership Opinions***: Plaintiffs' defense of Professor Strauss's regurgitation of statistics purporting to reflect who owns stock confirms why they are improper and should be excluded. Plaintiffs admit that they intend to use these statistics to tell the jury "who the class consists of." Opp. at 9. But Professor Strauss admitted that the statistics she pulled do no such thing. She has no idea and did not investigate who held Twitter's stock during the Class Period and whether the statistics she copied and pasted from a textbook are at all comparable to the actual demographic breakdown of Twitter's stock ownership. Ex A (Strauss Dep.) at 39:20-23, 41:21-42:5. The Opposition is a confession that Plaintiffs intend to use Professor Strauss's "opinion" to mislead the jury into believing that retail investors and pensioners make up nearly 50 percent of the Class despite having no foundation in support of that contention. Plaintiffs argue that they ought to be able to speculate because Musk has not yet produced the real breakdown of Twitter stock ownership. Opp. at 8. But that is nothing more than improper burden shifting. Plaintiffs are required to show that Professor Strauss's opinion is not misleading (*Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) ("It is the proponent of the expert who has the burden of proving admissibility.")), and Professor Strauss could have—and should have—identified those statistics herself if Plaintiffs intended to use her testimony to explain "who the class consists of."

Plaintiffs also argue that these opinions are admissible because they "describe[] obscure statistics that jurors are unlikely to know." Opp. at 9. But Professor Strauss does not know these statistics either—

DEFENDANT ELON MUSK'S REPLY IN SUPPORT OF HIS MOTION TO EXCLUDE THE OPINIONS OF EMILY STRAUSS

or, at the very least, does not understand them.  In deposition, Professor Strauss could not define the terms used in the statistics she reproduced.  Ex. A (Strauss Dep.) at 37:21-39:1.  She therefore lacks the foundation necessary to offer them.  She certainly did not demonstrate that she employed any "specialized knowledge" to render this opinion, which appears to be supported by nothing more than a superficial Google search.  Mot. at 9 (citing *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *6 (N.D. Cal. Nov. 6, 2017) (excluding expert opinion as not offering "specialized knowledge")).

***Stock Movement Opinions***:  Nor are Plaintiffs  able to defend Professor Strauss's opinions on stock price movement and her accompanying stock charts.  Plaintiffs contend that the basic notion that stock prices fluctuate is beyond the knowledge and understanding of the average juror in this District, and that only securities litigators, investments bankers, and billionaires understand "the concept of the stock market and stock prices."  Opp. at 3.  Plaintiffs cite no evidence for this patronizing and far-fetched assumption.  As Musk noted in his Motion, financial news about the stock market and its movement is ubiquitous in this country and the idea that stock prices change in response to positive and negative developments has permeated popular culture as a driving plot point in best-selling books and hit movies.  Mot. at 10.  In fact, the very information Plaintiffs assert is beyond the jury's common knowledge and understanding is currently taught to local fifth graders.  Ashley McBride, *California school districts will soon be required to teach financial literacy. Some Oakland schools already do*, THE OAKLANDSIDE, Dec. 20, 2024, https://oaklandside.org/2024/12/20/financial-literacy-oakland-schools/.  The jury does not need a law professor to explain the basics of how the stock market works.

Plaintiffs are also unable to articulate any persuasive reason why Professor Strauss needs to use *Twitter and Tesla* stock price charts to illustrate her opinions.  Professor Strauss agrees, and admitted that she included them only at counsel's instruction.  Ex. A (Strauss Dep.) at 55:6-10; 56:18-19, 62:16-18.  The only argument Plaintiffs are able to muster in response is that the jury may be confused to see stock prices from other companies in a case "about Twitter and Tesla."  Opp. at 9.[4]  But Professor Strauss's opinions are not "about Twitter and Tesla" or any of the facts of this case.  *See, e.g.*, Ex. A (Strauss Dep.) at 74:19-25; *id.* at 135:4-23.  Her use of an Amazon stock chart instead of the ones Plaintiffs' counsel

---

[4]  This case, of course, is not about Tesla.

DEFENDANT ELON MUSK'S REPLY IN SUPPORT OF HIS MOTION TO EXCLUDE THE OPINIONS OF EMILY STRAUSS

insisted that she include is thus unlikely to cause any juror confusion and certainly is far less of a *non sequitur* than her photographs of Great Depression-era breadlines and references to Bernie Madoff. Ex. B (Strauss Report) at 14, 19-20. Finally, Plaintiffs do not deny that the two charts stacked on top of one another showing Tesla and Twitter's stock declining in tandem suggest a relationship between the two companies. They claim no prejudice from that comparison because Professor Strauss formed no opinion about the companies' stock movement. Opp. at 9. But if Professor Strauss has not formed any such opinion, there is no reason for her to include these specific charts. Professor Strauss agrees. Ex. A (Strauss Dep.) at 62:16-18.

As a last ditch effort to keep these charts in, Plaintiffs assert they are admissible as summary exhibits. Opp. at 10. This argument too confirms why Musk objected to them in the first place—they have virtually nothing to do with Professor Strauss's Report. Whether or not these charts are ultimately admissible as evidence independent of Professor Strauss's testimony depends entirely on how and with whom Plaintiffs intend to use them. Plaintiffs have not made such a proffer and their Opposition is the wrong vehicle to make such a request.[5] *Bennett v. AT&T Servs., Inc.*, 2021 WL 11701375, at *2 (N.D. Cal. Nov. 12, 2021) ("[A] request for affirmative relief is not proper when raised for the first time in an opposition"). This request is procedurally improper, premature, and need not be decided now. But the Court can and should conclude now that Professor Strauss cannot use them in *her* testimony.

## III.    PROFESSOR STRAUSS'S ENTIRE SECURITIES 101 LECTURE IS IRRELEVANT AND UNHELPFUL

Setting aside the specific and inadmissible defects discussed above, the Court should exclude Professor Strauss's testimony in its entirety because it is nothing more than a "truncated history of the laws" at issue and "a summary of their basic functioning." *SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869, 903 (N.D. Cal. 2022) (excluding and giving "no weight" to expert report as unhelpful). The testimony is unconnected to the facts of this case. *Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108, 1167 (S.D. Cal. 2022).

---

[5] Plaintiffs' Opposition is the first time they requested that these charts be admitted through some witness other than Professor Strauss. Without more information, Musk cannot take a position on the admissibility of some—or any—of these charts but is willing to meet and confer with Plaintiffs to reach a stipulation if one is appropriate.

DEFENDANT ELON MUSK'S REPLY IN SUPPORT OF HIS MOTION TO EXCLUDE THE OPINIONS OF EMILY STRAUSS

Citing *Sec. & Exch. Comm'n v. Zouvas*, 2019 WL 4016687, at \*4 (D. Ariz. Aug. 26, 2019), Plaintiffs argue that Professor Strauss's testimony need not be tied to the facts of the case so long as it "help[s] the trier of fact to understand the evidence." Opp. at 7. That is where the Opposition and Professor Strauss have a problem. Plaintiffs provide no explanation for *how* Professor Strauss's history of the Great Depression and the promulgation of securities laws will aid the jury's determination of whether Musk made any false statements, acted with scienter, or caused Plaintiffs to suffer any damages. Professor Strauss admitted that they would not. Ex. A (Strauss Dep.) at 135:20-136:1. Although this testimony could explain why securities laws are laudable public policy, it provides no additional relevant context for the jury to understand the evidence presented. In *Zouvas*, for instance, the Court admitted the portions of the expert's opinions that constituted pure background as "to the usual factors inherent in a market manipulation" because he then also "express[ed] an opinion as to whether those factors [we]re present." 2019 WL 4016687, at \*4. Here, Strauss presents *only* background, the vast majority of which is irrelevant to any of the issues at trial. And the remaining portions of her Report that provide a basic definition of stock or options are all concepts that the Court can explain through its instructions.

Notably, Plaintiffs do not cite to a single case where the Court permitted an expert—over a party's objection—to provide the pure background testimony that Professors Strauss intends to offer here. In *United States v. Weinstein*, the court permitted background testimony because "that background knowledge [wa]s relevant context to inform [the expert]'s other testimony concerning how Ponzi schemes—the alleged fraudulent scheme directly at issue in this case—generally operate." 2025 WL 509245, at \*4 (D.N.J. Feb. 14, 2025). In fact, most of Plaintiffs' cases stand for the unremarkable proposition that an expert witness can first explain what a Ponzi scheme is before opining that a party was involved with one. *Hafen v. Howell*, 2023 WL 2188566, at \*2 (D. Utah Feb. 23, 2023) (collecting cases where courts admitted generalized expert testimony "to help jurors assess whether an investment scheme was a Ponzi scheme, reasoning such testimony can be relevant and helpful to the trier of fact on this issue"). And Plaintiffs cite *United States v. Rahm* out of context. There, the district court erred in excluding a psychologist's testimony about a battery of psychological tests conducted on the defendant holding that while the expert did not have an opinion as to mens rea, his testimony about the defendant's psychological make-up could assist the jury. *United States v. Rahm*, 993 F.2d 1405, 1409 (9th Cir. 1993).

-9-

The testimony thus had a specific connection to a disputed issue: defendant's mental state.  Here, as she concedes, Professor Strauss's testimony does not.

Musk does not dispute that an expert may be permitted to provide general background information to set the stage for their forthcoming opinions *about the case*.  But Plaintiffs have failed to show that courts actually do routinely allow—or have *ever allowed*—expert testimony that is so disconnected from the facts of the case as Professor Strauss's.  Nor do they explain how such disconnected opinions can even be helpful for the jury when Professor Strauss admits that she does not intend for the jury to apply them to the facts.  Ex. A (Strauss Dep.) at 135:20-136:1.  Because Professor Strauss's opinions are not designed to assist the trier of fact resolve any disputed fact in this case, they should be excluded.  *See Persian Gulf*, 632 F. Supp. 3d at 1167.

## CONCLUSION

Defendant respectfully requests that the Court grant this motion to exclude the opinions of Emily Strauss, or, in the alternative, hold a Rule 104 hearing to determine their admissibility.

DATED:  September 26, 2025                          QUINN EMANUEL URQUHART & SULLIVAN, LLP


By_____*/s/ Stephen A. Broome*_____
                Alex Spiro
                Michael T. Lifrak
                Stephen A. Broome
                Jesse A. Bernstein

                *Attorneys for Defendant Elon Musk*

DEFENDANT ELON MUSK'S REPLY IN SUPPORT OF HIS MOTION TO EXCLUDE THE OPINIONS OF EMILY STRAUSS

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on this the 26th day of September, 2025.

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By _/s/ Alex Bergjans_
　　Alex Spiro
　　Michael T. Lifrak
　　Stephen A. Broome
　　Jesse A. Bernstein

_Attorneys for Defendant Elon Musk_

Case No. 3:22-cv-05937-CRB
DEFENDANT ELON MUSK'S REPLY IN SUPPORT OF HIS MOTION TO EXCLUDE THE OPINIONS OF EMILY STRAUSS

**ATTESTATION**

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories herein.

By  /s/ Alex Bergjans
        Alex Spiro
        Michael T. Lifrak
        Stephen A. Broome
        Jesse A. Bernstein

        *Attorneys for Defendant Elon Musk*

DEFENDANT ELON MUSK'S REPLY IN SUPPORT OF HIS MOTION TO EXCLUDE THE OPINIONS OF EMILY STRAUSS