IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ELON MUSK,<br><br>    Defendant. | Case No. 22-cv-05937-CRB<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO DISQUALIFY ALEX SPIRO AS TRIAL COUNSEL** |

Plaintiffs move to disqualify Alex Spiro as trial counsel for Defendant Musk. Mot. (dkt. 295). They contend that Spiro is a key fact witness in the case and his role as lead trial counsel would violate the advocate-witness rule. Id. at 6. Unsurprisingly, Musk disagrees. Musk argues that disqualification of his lead trial counsel so late into the case would be unfair, especially because he provided informed written consent to have Spiro continue as counsel even if called as a witness. Opp'n (dkt. 300) at 1. Because Musk provided consent and Plaintiffs fail to show palpable prejudice, the Court **DENIES** Plaintiffs' motion.

**I.   BACKGROUND**

Alex Spiro is a high-profile lawyer who has done work with many noteworthy individuals and celebrities. Yuen Decl. (dkt. 295-1) ¶ 20. He often works with Musk. Id. And he aided Musk throughout the Twitter acquisition. See id. ¶¶ 10–13.

Spiro has relevant, firsthand knowledge regarding Musk's statements that are at the heart of the case. For example, on May 13, when Musk tweeted about the Twitter deal being on hold, Spiro called him to discuss the tweet. Spiro Dep. (dkt. 300-3) at 14:17-11. Shortly after the call, Musk tweeted that he still wanted to go through with the acquisition.

Id. at 18:14-20:7.  Spiro also engaged data scientist firms to analyze fake/spam accounts on Twitter.  Id. at 76:19-80:14.

In the instant action, Spiro has served as lead trial counsel for Musk since December 2022.  See Dkt. 12.  Plaintiffs first listed Spiro as a potential witness in February 2024 and sought his deposition a year later.  Redenbarger Decl. (dkt. 305-1) ¶ 2.  In June 2025, Magistrate Judge Ryu ordered Plaintiffs to state whether they intended to call Spiro as a witness and whether they intended to move to disqualify him as counsel.  Dkt. 217 at 2.  Plaintiffs disclosed their intent to disqualify Spiro on July 3, 2025 (dkt. 217) and finally moved to do so on September 26 (dkt. 279).

When Spiro was notified of Plaintiffs' intent to disqualify him, he told the Court that he had Musk's informed written consent to continue as counsel.  Dkt. 225-01 ¶ 4.  Nevertheless, he agreed to appear for a deposition on topics outside the ambit of the attorney-client privilege.  Id. ¶ 2.  Plaintiffs then deposed Spiro on August 20, 2025 for about 95 minutes.  See Spiro Dep.

## II.    LEGAL STANDARD

Motions to disqualify counsel are decided under state law.[1]  In re County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000).  Under California law, the starting point for deciding a motion to disqualify counsel is the recognition of interests implicated by such a motion.  Courts "must examine these motions carefully to ensure that literalism does not deny the parties substantial justice."  People v. Speedee Oil Change Systems, Inc., 20 Cal. 4th 1135, 1145 (1999).  At base, "disqualification motion[s] may involve such considerations as a client's right to chosen counsel, an attorney's interest in representing a client, [and] the financial burden on a client to replace disqualified counsel."  Id.  Ultimately, however, a court must maintain ethical standards of professional responsibility.  Id.

---

[1] The Parties disagree on the relevance of New York law when it comes to Musk's informed written consent, since Spiro is licensed in New York.  Because Spiro was admitted to practice pro hac vice in this action and agreed to comply with the California standards of professional conduct, the Court applies only California law.  See Civil L.R. 11-4(a)(1); Dkt. 65.

2

The California Rules of Professional Conduct enshrine the "advocate-witness rule." That rule provides that lawyers cannot act as both advocate and witness at a trial unless: "(1) the lawyer's testimony relates to an uncontested issue or matter; (2) the lawyer's testimony relates to the nature and value of legal services rendered in the case; or (3) the lawyer has obtained informed written consent from the client." Cal. R. Prof. Conduct 3.7(a). But informed written consent is not an absolute exception. A comment to Rule 3.7 reiterates that, even with informed written consent, a court retains the "discretion to take action, up to and including disqualification of a lawyer who seeks to both testify and serve as an advocate, to protect the trier of fact from being misled or the opposing party from being prejudiced." Id., Comment 3.

California courts make clear that the "discretion to disqualify a likely advocate-witness notwithstanding client consent . . . has been judicially interpreted to be permissible only upon 'a convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process.'" Geringer v. Blue Rider Fin., 94 Cal. App. 5th 813, 822 (Cal. Ct. App. 2023) (quoting Lyle v. Superior Court, 122 Cal. App. 3d 470, 482 (Cal. Ct. App. 1981)). Accordingly, a court can only disqualify counsel when it is "confronted with manifest interests which it must protect from palpable prejudice." Lyle, 122 Cal. App. At 482. And the moving party has a heavy burden. They must make a "convincing demonstration . . . of a potential for injury to the integrity of the judicial process—a showing that must be based on an adequate factual record, not overarching statements of policy or conclusory allegations." Id. at 826 (cleaned up).

### III. DISCUSSION

When exercising discretion to disqualify counsel under the advocate-witness rule, a court considers: "(1) whether counsel's testimony is, in fact, genuinely needed; (2) the possibility [opposing] counsel is using the motion to disqualify for purely tactical reasons; and (3) the combined effects of the strong interest parties have in representation by counsel of their choice, and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case." Doe v. Yim, 55 Cal. App. 5th 573,

583 (Cal. Ct. App. 2020) (quotation marks omitted).  Weighing these factors and the risk of palpable prejudice, the Court denies Plaintiffs' motion.

### A. Palpable Prejudice

Plaintiffs point to very real concerns with Spiro's role as an advocate-witness.  They illustrate the problem with any lawyer who has such a dual role:  a jury's potential confusion when trying to parse fact from argument.  Mot. at 9–10; see Yim, 55 Cal. App. 5th at 584–85 ("Lee's dual role posed the risk that the jury would be misled into accepting Lee's assertions during closing argument as evidence based on her personal knowledge as a witness.").

Plaintiffs argue the jury will see Spiro referencing and challenging the evidence, which would include his own testimony and testimony about him, throughout the trial.[2]  Reply (dkt. 305) at 5.  While Plaintiffs correctly assess this risk, the Court finds that it is a "generic concern[]" that could "apply to any case in which a lawyer acts as both advocate and witness." Geringer, 94 Cal. App. 5th at 826 (holding that the "risk of error and confusion" to the jury from an advocate-witness" is insufficient on its own to disqualify trial counsel).  Indeed, Rule 3.7 requires a higher showing because it permits a dual role when a client gives informed written consent.  Cal. R. Prof. Conduct 3.7.  That is why a different court in this District did not require disqualification of trial counsel when the lawyer might also have been called as a key fact witness.  Zhu v. Li, No. 19-CV-02534-JSW, 2023 WL 1111507, at *4 (N.D. Cal. Jan. 30, 2023) (denying a motion to preclude a plaintiff from calling the0020defendants' trial counsel to testify).

Plaintiffs also suggest there is risk of substantial prejudice when Spiro will cross-examine witnesses regarding their interactions with him.  Mot. at 10.  They contend that Spiro could then "get[] the answers he wants from witnesses, or at least [be] effective in sowing confusion . . . because trial witnesses will include major players in the business world, most of whom have every incentive to curry favor with, and avoid angering, both

---

[2] The Court notes that both parties are free to comment on Spiro's credibility.  The ability to litigate a lawyer's credibility is not necessarily an advantage or a disadvantage.

Musk and Spiro." Id. at 11. The Court finds this argument specious. As Musk notes, Plaintiffs' position would functionally lock Spiro out of working on major business disputes. Opp'n at 10. And there is no basis to suggest Spiro's mere presence would suborn perjury. Plaintiffs attempt to counter Musk's argument by suggesting Spiro would only be prevented from trying cases "where he was not intimately involved in the very events that led to litigation." Reply at 6. But this still goes too far. If this becomes a categorical rule, parties with longstanding, trusted counsel would always be forced to switch lawyers just for litigation and in the anticipation of trial.

Consequently, the Court finds that Plaintiffs have not made a convincing demonstration of palpable prejudice, let alone potential injury to judicial integrity. But just because Plaintiffs fail to make this heightened showing does not mean they make invalid points. The Court and the parties can take steps to limit the risk of prejudice. The Court has the ability "to control counsel's questioning and argument" to ensure Spiro conducts his dual role appropriately. Geringer, 94 Cal. App. 5th at 825. The Court can also provide limiting instructions to the jury, as needed. As for the parties, Musk has suggested that other trial counsel can cross-examine witnesses that Plaintiffs believe have a high risk of conflict. Opp'n at 10. Such negotiation and compromise are reasonable and expected by the Court.

### B. Genuine Need for Spiro's Testimony

Musk concedes Spiro has relevant testimony but disputes that Plaintiffs have a genuine need for it. Opp'n at 12. And, for the most part, the Court agrees. Plaintiffs outline a list of topics they assert shows how Spiro's testimony is unique: his discussions with Musk regarding the May 13 tweet, the circumstances following Musk's May 17 tweet, Spiro's vetting of data scientists, the October termination of key Twitter officers post-merger, and discussions regarding renegotiations of the merger. Reply at 7–8. But while these topics are certainly relevant, it is unclear how Spiro's testimony is genuinely needed. For most of the topics, other witnesses can just as easily testify about the circumstances—as well as Spiro's statements and conduct. And while Spiro may have

5

unique knowledge for topics such as the May 13 tweet or the October firings, it is unclear how much Plaintiffs can extract without running headfirst into the attorney-client privilege. See Opp'n at 12. Accordingly, the Court finds that Plaintiffs only make a weak showing of genuine need.

### C. Tactical Reasons

The Court is not convinced Plaintiffs seek to disqualify Spiro for purely tactical reasons. Musk points to the year-long wait between disclosing Spiro as a potential witness and declaring their intent to disqualify Spiro. Opp'n at 13. But Plaintiffs make a sufficient showing that the delay was the result of discovery disputes between the parties. See Reply at 1–2. After Plaintiffs took Spiro's deposition on August 20, they filed the instant motion about a month later. See id. at 2–3. While Plaintiffs perhaps could have moved faster, their conduct is not indicative of disqualification for purely tactical considerations. See White v. Superior Ct., 98 Cal. App. 3d 51, 55–56 (Cal. Ct. App. 1979) (parties seeking disqualification of counsel should "proceed at the first reasonable opportunity").

### D. Choice of Counsel

Plaintiffs contend Musk has not shown how he has a strong interest in being represented by Spiro at trial. Reply at 9. But that is not the law. Courts presume parties have a "strong interest" in having "representation by counsel of their choice." Geringer, 94 Cal. App. 5th at 822; see Lyle, 122 Cal. App. 3d at 482 (in "close cases," courts should favor "the client's right to representation by an attorney of his or her choice and not . . . in favor of complete withdrawal of the attorney"). Moreover, as Musk notes, Plaintiffs have made his case for him. See Opp'n at 14. Plaintiffs repeatedly describe how closely Spiro works with Musk. They even explain how Spiro has specialized case knowledge through his involvement in the events at issue—the whole reason they seek to call Spiro as a witness in the first instance. Mot. at 2 ("Spiro was at the epicenter of virtually every important decision relating to the Twitter acquisition.").

That being said, Plaintiffs are correct that Musk is unlikely to incur cost or delay if Spiro were to be disqualified, since even Musk concedes "other [Quinn Emanuel]

1  attorneys have been involved in this case." Opp'n at 14.  But the choice of counsel is a
2  deeply personal one, particularly when the lawyer will represent a client before a jury.
3  Accordingly, this factor weighs in Musk's favor.

4  **IV.  CONCLUSION**

5  For the foregoing reasons, the Court has weighed the appropriate factors and
6  determines that Plaintiffs have not made a sufficient showing for why Spiro should be
7  disqualified as trial counsel.  Accordingly, the Court **DENIES** Plaintiffs' motion.

8  **IT IS SO ORDERED.**

9  Dated: December 1, 2025

   _____
   CHARLES R. BREYER
   United States District Judge