QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
Jessebernstein@quinnemanuel.com
Ellyde R. Thompson *(pro hac vice)*
ellydethompson@quinnemanuel.com
295 5th Ave., New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendant Elon Musk*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**MOTION *IN LIMINE* NO. 1**<br><br>**DEFENDANT ELON MUSK'S MOTION *IN LIMINE* TO PRECLUDE IMPROPER CHARACTER EVIDENCE**<br><br>Action Filed: 10/10/2022<br>Pretrial Conference: 2/17/2026<br>Time: 2 pm<br>Location: Courtroom 6, 17th Floor<br>Trial Date: 2/23/2026 |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................1

ARGUMENT .........................................................................................................................3

I.     THE COURT SHOULD EXCLUDE IMPROPER CHARACTER EVIDENCE ..........................3

    A.    The Court Should Exclude Evidence or Argument that Musk Allegedly Violated Section 13 of the Exchange Act ................................................................3

    B.    The Court Should Exclude Evidence Relating to the 2018 Tesla "Take Private" Saga ................................................................................................................6

    C.    The Court Should Exclude Evidence Regarding Communications with Sean Combs and Sam Bankman-Fried ..................................................................7

CONCLUSION .......................................................................................................................7

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Duran v. City of Maywood*,
    221 F.3d 1127 (9th Cir. 2000) ....................................................................................... 4, 5, 6

*Grace v. Apple, Inc.*,
    2020 WL 227404 (N.D. Cal. Jan. 15, 2020) ............................................................................ 6

*Kaiser Found. v. Abbott Labs*,
    2006 WL 5105220 (C.D. Cal. Mar. 17, 2006) ......................................................................... 7

*Lazarus v. Fo*,
    2023 WL 7552730 (D. Hawaii Nov. 14, 2023) ........................................................................ 4

*In re Outlaw Lab., LP Litig.*,
    2022 WL 507492 (S.D. Cal. Feb. 18, 2022) ............................................................................ 7

*Rasella v. Musk*,
    No. 1:22-cv-03026 (S.D.N.Y. 2022) ........................................................................................ 2

*In re Tesla Inc. Sec. Litig.*,
    No. 3:18-cv-04865-EMC (N.D. Cal. Feb. 3, 2023) ................................................................. 6

*U.S. v. Contra Costa Cty. Water Dist.*,
    678 F.2d 90 (9th Cir. 1982) ................................................................................................ 1, 7

*U.S. v. Fitzgerald*,
    279 F. App'x 444 (9th Cir. 2008) ............................................................................................ 7

*U.S. v. McCourt*,
    925 F.2d 1229 (9th Cir. 1991) ................................................................................................. 6

*United States v. Bailey*,
    696 F.3d 794 (9th Cir. 2012) ................................................................................................... 5

**Rules/Statutes**

Fed. R. Evid. 404(b) ............................................................................................................ *passim*

Fed. R. Evid. 402 ........................................................................................................................... 1

Fed. R. Evid. 403 .................................................................................................................. 1, 6, 7

## INTRODUCTION

Plaintiffs intend to tell the jury that Defendant Elon Musk is a serial securities-law violator. They are wrong on the facts—a jury in this District already found Musk did *not* commit fraud in connection with his 2018 Tesla tweets—and wrong on the law. Rule 404(b) exists to prevent this precise kind of character attack. Plaintiffs' anticipated evidence falls into three categories, none of which is relevant to any element of their claim:

*First*, Plaintiffs will argue that Musk violated Section 13 of the Exchange Act by filing his disclosure forms too late after initial purchases of Twitter stock. But this occurred in early April 2022—before Musk offered to acquire Twitter, before he signed the Merger Agreement, and before any of the financial pressures that allegedly motivated the fraud arose. That evidence proves nothing about whether Musk's May 2022 statements about bot data were false or made with scienter. Its only purpose is to improperly suggest that Musk has a propensity to violate the securities laws.

*Second*, Plaintiffs will point to Musk's 2018 tweets about taking Tesla private and his subsequent SEC settlement. But a jury rejected the fraud claim arising from those tweets. And a no-admit *settlement* is not evidence of wrongdoing. *U.S. v. Contra Costa Cty. Water Dist.*, 678 F.2d 90, 92 (9th Cir. 1982).

*Third*, Plaintiffs questioned Musk at his deposition about communications with Sam Bankman-Fried and Sean Combs regarding potential Twitter investments—communications that have nothing to do with bot data, due diligence, or any challenged statement. The sole apparent purpose: to associate Mr. Musk with individuals later convicted of federal crimes in widely publicized trials well known to the jury.

Each category of evidence is inadmissible under Rule 404(b)(1), irrelevant under Rule 402, and unfairly prejudicial under Rule 403. Allowing any of it would transform this trial into a referendum on Musk's character rather than a determination of whether three statements in May 2022 were fraudulent.

## BACKGROUND

Plaintiffs claim that, in mid-May 2022, Musk made "false public comments that were carefully calculated to drive down the price of Twitter stock," and that he did so "[t]o try to renegotiate the price or delay [] the Merger." Dkt. 31 (Amended Complaint or "FAC") ¶¶ 1, 10. This Court permitted that theory with respect to three statements by Musk, on May 13, 16, and 17, 2022. *See* Dkt. 48 (MTD Order).

Notwithstanding the narrowness of their claim (and perhaps because of it), Plaintiffs' FAC is rife with allegations that Musk violated securities laws before. In discussing pre-Class Period events, Plaintiffs accuse Musk of "Fail[ing] to Timely Disclose His 9%+ Stake in Twitter." FAC ¶¶ 47-54. They claim Musk was required to file a Schedule 13G in March 2022 disclosing that he had acquired 5% of Twitter, but that he did not do so until April 4. *Id.* Plaintiffs argue that his motive was to save money by preventing the stock price from increasing while he was buying shares, thus constituting "market manipulation." *Id.* ¶ 65. Plaintiffs also allege that Musk failed to disclose on April 4 that he was mulling joining the board or acquiring Twitter, which required a Schedule 13D filing (instead of a 13G). *Id.* ¶¶ 47-68. Plaintiffs concede that Musk filed the correct form the next day. *Id.* ¶ 64.

Plaintiffs do not claim any losses or seek any relief related to Musk's Section 13 disclosures, which are the subject of a different lawsuit in the Southern District of New York. *See Rasella v. Musk*, No. 1:22-cv-03026 (S.D.N.Y. 2022). Yet, Plaintiffs allege that "Musk's disregard for securities laws demonstrates how billionaires can skirt the law and the tax code to build their wealth at the expense of the average American." FAC ¶ 68. And while Plaintiffs' securities expert has disclaimed any opinion about the propriety of Musk's Section 13 filings (*see* Ex. 1[1] (Strauss Dep.) at 119:6-13), Plaintiffs have made clear they plan to focus on that issue at trial. They recently argued that Musk's belated disclosures are "probative of Musk's lack of mistake and scienter," and urged the Court not to limit "testimony as to whether Musk belatedly filed any Schedule 13D, or the fact that he has been sued by the SEC …." Dkt. 270 at 8. In addition, while Plaintiffs' securities expert testified that she does not understand Plaintiffs' case to relate to Musk's 13D filing, she testified Plaintiffs' counsel nevertheless instructed her to address it in her expert report. Ex. 1 (Strauss Dep.) at 120:5-15, 126:13-127:1.

Plaintiffs also allege that "Musk has violated SEC rules related to going-private transactions before," citing his 2018 tweets regarding taking Tesla private and the ensuing SEC lawsuit and settlement. FAC ¶¶ 43-44. They conspicuously omit, however, that the Tesla take-private class action proceeded to trial in this District, where a jury *exonerated* Musk of wrongdoing.

Plaintiffs did not identify any of the above events as relevant to scienter or any other issue when

---

[1] All "Ex." citations are to the exhibits attached to the Declaration of Alex Bergjans filed herewith.

they opposed Musk's motion to dismiss. *See* Dkt. 36 (Pls' Opp. to MTD). Yet, Plaintiffs have since made a point to seek discovery regarding these events. They questioned Musk about his April 4 and 5 SEC filings, directed an expert to opine on the proper timing of Section 13 disclosures, and questioned Musk about his settlement with the SEC related to the Tesla take-private Tweets. *See, e.g.*, Ex. 2 (Musk Dep.) at 38-47; Dkt. 248 (Def's Motion to Exclude Strauss) at 4; Ex. 2 at 31:18-24.

Plaintiffs have also sought to show that, during the relevant period, Musk communicated with two well-known individuals who were later convicted of crimes. Plaintiffs questioned Musk about communications with Sam Bankman-Fried and Sean "Diddy" Combs concerning potential investments in or improvements to Twitter. Ex. 3 (Musk Dep.) at 119:5-19, 189:8-22. Both were later convicted of federal crimes having nothing to do with Musk or Twitter after widely publicized trials. Bankman-Fried was convicted of conspiracy to commit securities fraud and related charges.

## ARGUMENT

### I.     THE COURT SHOULD EXCLUDE IMPROPER CHARACTER EVIDENCE

Plaintiffs may not try this case by suggesting that Musk is the kind of person who violates securities laws or, more generally, that he is the kind of person who breaks the law given his connection to individuals who have broken the law. Any such evidence would run afoul of Federal Rule of Evidence 404(b), is irrelevant, and would cause unfair prejudice to Musk.

**A.     The Court Should Exclude Evidence or Argument that Musk Allegedly Violated Section 13 of the Exchange Act**

The jury may hear about Musk's initial acquisition of Twitter shares and his disclosure of those purchases via April 4 and 5 Schedule 13G and 13D filings. But the Court should exclude any evidence or argument that Musk's Section 13 disclosures were untimely, unlawful, an example of "market manipulation" (FAC ¶ 65), or the subject of subsequent SEC investigations or litigation—because Plaintiffs do not claim that these disclosures (timely or not) caused them any harm. Nor is such evidence probative of any material issue in this case. It therefore would serve only to improperly (and incorrectly) suggest that Musk has a propensity for violating the securities laws.

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted

-3-                                  Case No. 3:22-CV-05937-CRB
                                    DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE
                                    IMPROPER CHARACTER EVIDENCE

in accordance with the character." In certain cases, evidence of prior "bad acts" may be admissible for the limited purposes of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). To admit evidence of a prior act, "(1) there must be sufficient proof for the jury to find that the defendant committed the other act; (2) the other act must not be too remote in time; (3) the other act must be introduced to prove a material issue in the case; and (4) the other act must, in some cases, be similar to the offense charged."[2] *Duran v. City of Maywood*, 221 F.3d 1127, 1132-33 (9th Cir. 2000). Plaintiffs' suggestion that Musk engaged in "market manipulation" by not filing a timely Section 13 disclosure fails each prong of the admissibility test.

*First*, such evidence would not prove any "material issue." *Id.* Plaintiffs erroneously contend that Musk's alleged Section 13 violations are "probative of Musk's lack of mistake and scienter" with respect to his May 2022 statements. Dkt. 270 at 8. But whether Musk made belated disclosures in early April about his Twitter stock purchases has no bearing on whether his at-issue statements over a month later concerning his bot data requests and bot counts were materially misleading or made with intent to defraud, which is what Plaintiffs must prove. The May statements concerned Musk's request for details supporting Twitter's calculation that less than 5% of accounts were spam or fake accounts (and which Twitter agreed to provide)—a subject entirely divorced from the disclosure timing of his earlier stock purchases. That Musk had not even *offered* to take Twitter private at the time of his Section 13 disclosures—much less signed the contract to do so—underscores the disconnect.

Any suggestion by Plaintiffs that Musk's alleged Section 13 violations stem from a motive to save money purchasing Twitter stock, and that the same general motive prompted Musk's May, is illusory. Plaintiffs allege that Musk's motive for fraud was a result of (1) Musk signing a contract to acquire Twitter on April 27, 2022; (2) Musk obtaining financing commitments in late April 2022 collateralized by his Tesla stock; and (3) a subsequent decline in Tesla's stock price, which put him at risk of margin calls or needing to sell more Tesla stock to make up the shortfall. FAC ¶¶ 9-10, 90-106, 153-54. According to Plaintiffs, these circumstances placed Musk "in a bind" and a "precarious financial position … ***after he agreed to buy Twitter***," and his false statements were meant to drive down Twitter's stock price to

---

[2] While evidentiary issues under Rule 404(b) most often arise in criminal cases, the rule "applies equally to civil and criminal cases." *Lazarus v. Fo*, 2023 WL 7552730, at *1 (D. Hawaii Nov. 14, 2023).

renegotiate or exit the deal. *Id.* ¶¶ 9, 153 (emphasis added). None of these events—the signing of the Merger Agreement, Musk's financing arrangements, or the decline in Tesla stock—had yet occurred in March and early April 2022, when Plaintiffs claim Musk violated Section 13 of the Exchange Act. Not surprisingly then, Plaintiffs made no allegation in their FAC, and no argument in opposition to Musk's motion to dismiss, that his purported violations of Section 13 are evidence of scienter. FAC ¶¶ 152-66 (alleging Musk's scienter); Dkt. 36 (MTD Opp.) at 12-17. That Plaintiffs have made the argument only now, on the eve of trial, indicates that Plaintiffs intend to skew the jury with improper character evidence.

Musk's purported Section 13 violations are also "too remote in time" to his commission of the alleged fraud. *Duran,* 221 F.3d at 1132-33. To be clear, the temporal remoteness is not a result of the passage of many years or even months but instead is the result of the separate acts falling on opposite sides of critical intervening events: the signing of the Merger Agreement and Musk subsequently being caught in a "precarious financial position." FAC ¶ 9.

Nor is Musk's alleged Section 13 violation sufficiently similar to the alleged fraud here. *Duran,* 221 F.3d at 1132-33. That purported violation resulted from the allegedly delayed filing of a Schedule 13 form, which purportedly saved Musk money buying Twitter stock. The alleged fraud here, by contrast, is based on tweets about information Musk had requested from Twitter. Any similarity is superficial at best, including Plaintiffs' claim that both are acts of financially motivated "market manipulation" (which would be true of any alleged intentionally misleading disclosure about a public company).

Finally, there is no evidence that Musk actually violated Section 13. *Id.* Instead, there is uncontroverted record evidence that the belated or incorrect filing was, at worst, an innocent mistake based upon information provided by Musk's financial advisors at Morgan Stanley. Ex. 2 (Musk Dep.) 40-47; Ex. 4 (Birchall Dep.) 102-105. It also is not disputed that within one trading day of anyone raising the idea that disclosure may have been required within 10 days of crossing 5%, Musk disclosed his position. That the SEC brought non-fraud based claims and other plaintiff's lawyers have sued Musk over these disclosures does not provide the required evidentiary foundation either, because "a complaint is merely an accusation of conduct and not [] proof that the conduct alleged occurred." *United States v. Bailey*, 696 F.3d 794, 801 (9th Cir. 2012). Whatever the Court decides with respect to the spectrum of Section 13

evidence, anything related to the SEC and other lawsuits must be excluded. *Id.* ("Admitting the complaint may have permitted the jurors to succumb to the simplistic reasoning that if the defendant was accused of the conduct, it probably or actually occurred. Such inferences are impermissible.").

Because any evidence that Musk violated Section 13 in April 2022 is plainly irrelevant, it is apparent Plaintiffs want the jury to infer that if he did it before, he probably did it again. Plaintiffs all but admit this, alleging: "Musk's disregard for securities laws demonstrates how billionaires can skirt the law and the tax code to build their wealth at the expense of the average American." FAC ¶ 68. A theory of liability premised on propensity for "skirt[ing] the law" is not permitted. Fed. R. Evid. 404(b)(1); *United States v. McCourt*, 925 F.2d 1229, 1235-36 (9th Cir. 1991) ("[O]ur system of justice should not permit the trier of fact to infer that because someone was a bad guy once, he is likely to be a bad guy again.").

Even if Plaintiffs could shoehorn the evidence into a permissible 404(b)(2) use, the Court still should exclude it given the minimal probative value and the unfair prejudice to Musk in the likely event the jury draws negative inferences about his character. Fed. R. Evid. 403. "[B]ackground facts comprising part of the sequence of events" must be excluded when they "would likely have a significant improper influence on the jury's determination." *Grace v. Apple, Inc.*, 2020 WL 227404, at *2 (N.D. Cal. Jan. 15, 2020). Here, allowing Plaintiffs to insinuate a propensity for wrongdoing risks the jury giving it "more weight than it warrants" and/or distracting from and confusing the real issues, *Grace*, 2020 WL 227404, at *2, as Musk would need to fully refute any notion that he previously broke the law. *See Duran,* 221 F.3d at 1133 (affirming exclusion of similar shooting incident involving defendant that occurred within three days of shooting incident on trial, due to risk of unfair prejudice and confusing the issues). Indeed, that is the subject to an entirely different lawsuit, and there is no need for a mini-trial here.

**B.     The Court Should Exclude Evidence Relating to the 2018 Tesla "Take Private" Saga**

A jury in this District already found that Musk did *not* commit fraud with his 2018 tweets about taking Tesla private. *See In re Tesla Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC (N.D. Cal.) (Feb. 3, 2023 verdict). Given this exoneration, there is no foundation for Plaintiffs to claim Musk committed a prior "bad act" relating to Tesla. *See Duran,* 221 F.3d at 1132-33 (there must be "sufficient proof" of other act). Even setting aside that verdict, such evidence has no connection to this case. The Tesla case involved

tweets about *funding* to take a company private. This case involves tweets about Musk's legal rights under a merger agreement. The only similarity is that both involve Musk tweeting. That superficial connection does not satisfy Rule 404(b)(2). Again, Plaintiffs' purpose is transparent: to improperly argue propensity. *See* FAC ¶ 43 ("Musk has violated SEC rules related to going-private transactions before.").

The Court also should exclude any reference to Musk's no-admit settlement with the SEC. *See Contra Costa Cty. Water Dist.*, 678 F.2d at 92 (evidence related to settlement "is irrelevant" because settlement generally is "motivated by a desire for peace rather than from a concession of the merits"); *In re Outlaw Lab., LP Litig.*, 2022 WL 507492, at *1 (S.D. Cal. Feb. 18, 2022) ("[A] settlement agreement is inadmissible as evidence, unless for a narrow purpose such as proving a witness' bias or prejudice."); *Kaiser Found. v. Abbott Labs*, 2006 WL 5105220, at *1 (C.D. Cal. Mar. 17, 2006) (excluding "[r]eferences to FTC Investigation and … Consent Decree"). Finally, allowing evidence regarding the Tesla saga would require a needless and confusing mini-trial, which independently warrants exclusion. Fed. R. Evid. 403.

### C. The Court Should Exclude Evidence Regarding Communications with Sean Combs and Sam Bankman-Fried

During the Class Period, Musk communicated briefly with Bankman-Fried and Combs concerning potential investments in Twitter. Ex. 3 (Musk Dep.) 119, 189. That has no relevance to any element of Plaintiffs' claim, as it does not concern bot data, due diligence, or any allegedly false statement. Yet the risk of unfair prejudice is acute. Bankman-Fried was convicted of conspiracy to commit securities fraud after a widely publicized trial. Combs was convicted of trafficking prostitutes in an equally high-profile trial. The inevitable implication—that Musk associates with securities fraudsters and other lawbreakers and is thus more likely to engage in similar conduct—is precisely the character inference Rule 404(b) prohibits. *United States v. Fitzgerald*, 279 F. App'x 444, 445 (9th Cir. 2008) (unpublished) (evidence tending to prove "guilt by association" inadmissible). If Plaintiffs wish to show that Musk solicited investors, they can do so without identifying individuals later convicted of unrelated crimes.

### CONCLUSION

Defendant respectfully requests that the Court exclude any evidence or argument that he previously violated securities laws or communicated with Sean Combs or Sam Bankman-Fried.

DATED: January 13, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Stephen A. Broome*
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on Tuesday, January 13, 2026.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Stephen A. Broome*
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*

## ATTESTATION

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories herein.

By  */s/ Stephen A. Broome*
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*