QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
jessebernstein@quinnemanuel.com
Ellyde R. Thompson (*pro hac vice*)
ellydethompson@quinnemanuel.com
295 Fifth Ave., New York, NY 10010
Telephone:     (212) 849-7000
Facsimile:      (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:      (213) 443-3100

*Attorneys for Defendant Elon Musk*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**MOTION *IN LIMINE* NO. 2**<br><br>**DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE RELATED TO WALTER ISAACSON'S BIOGRAPHY *ELON MUSK***<br><br>Action Filed: 10/10/2022<br>Pretrial Conference: 2/17/2026<br>Time: 2 pm<br>Location: Courtroom 6, 17th Floor<br>Trial Date: 2/23/2026<br><br>FILED UNDER SEAL – REDACTED FOR PUBLIC FILING |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ..........................................................................................................................3

    A.    The Isaacson Book Is Inadmissible Hearsay ....................................................3

    B.    The Isaacson Book Does Not Fit Within Any Hearsay Exception ....................4

    C.    The Court Should Also Preclude Use of or Reference to the Isaacson Book During Cross Examination or for Impeachment .................................................6

CONCLUSION .......................................................................................................................7

# **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*AFMS LLC v. United Parcel Serv. Co.*,
   105 F. Supp. 3d 1061 (C.D. Cal. 2015) ................................................................................... 3

*California v. Green*,
   399 U.S. 149 (1970) ............................................................................................................ 1, 6

*Erfindergemeinschaft UroPep GbR v. Eli Lilly and Co.*,
   276 F. Supp. 3d 629 (E.D. Tex. 2017) ..................................................................................... 7

*Fong v. Am. Airlines, Inc.*,
   626 F.2d 759 (9th Cir. 1980) ................................................................................................... 5

*Green v. Baca*,
   226 F.R.D. 624 (C.D. Cal. 2005) ......................................................................................... 3, 5

*Larez v. City of Los Angeles*,
   946 F.2d 630 (9th Cir. 1991) ............................................................................................... 3, 5

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
   2014 WL 12795479 (N.D. Cal. May 30, 2014) ...................................................................... 3

*In re Oracle Corp. Sec. Litig.*,
   2009 WL 1709050 (N.D. Cal. June 19, 2009) ........................................................................ 3

*Reynolds v. Univ. of Pa.*,
   747 F. Supp. 2d 522 (E.D. Pa. 2010) ....................................................................................... 6

*United States v. Almonte*,
   956 F.2d 27 (2d Cir. 1992) ....................................................................................................... 7

*United States v. Canales-Fuentes*,
   176 F. App'x 873 (9th Cir. 2006) ............................................................................................ 4

*United States v. Check*,
   582 F.2d 668 (2d Cir. 1978) ..................................................................................................... 6

*United States v. Craig*,
   953 F.3d 898 (6th Cir. 2020) .................................................................................................... 7

*United States v. Crouch*,
   731 F.2d 621 (9th Cir. 1984) .................................................................................................... 7

*United States v. Cumbie*,
   28 F. 4th 907 (8th Cir. 2022) ...................................................................................7

*United States v. Gaynor*,
   2024 WL 516686 (M.D. Fla. Feb. 9, 2024) ..............................................................4

*United States v. Hall*,
   989 F.2d 711 (4th Cir. 1993) ....................................................................................6

*United States v. Leonardi*,
   623 F.2d 746 (2d Cir.) ..............................................................................................7

*United States v. Pena-Gutierrez*,
   222 F.3d 1080 (9th Cir. 2000) ..................................................................................4

*United States v. Peterman*,
   841 F.2d 1474 (10th Cir. 1988) ................................................................................7

**Statutes and Rules**

Fed. R. Evid. 613 ..............................................................................................................6

Fed. R. Evid. 801 .....................................................................................................1, 3, 4

Fed. R. Evid. 802 ........................................................................................................1, 3

Fed. R. Evid. 805 ........................................................................................................1, 4

Fed. R. Evid. 807 ........................................................................................................1, 5

Fed. R. Evid. 902 ..............................................................................................................7

**Other Authorities**

5 Handbook of Fed. Evid. § 613:3 (10th ed.) ...................................................................7

5 J. Wigmore, Evidence § 1367 (3d ed. 1940) .................................................................6

# INTRODUCTION

Defendant Elon Musk moves to exclude at trial any evidence, testimony, argument, reference, or mention of the book titled *Elon Musk*, authored by celebrity biographer Walter Isaacson (the "Isaacson Book" or the "Book"), with one exception. The Book should be excluded for three independent reasons.

*First*, the Isaacson Book is inadmissible hearsay. It consists entirely of out-of-court statements offered for the truth of the matter asserted. Fed. R. Evid. 801(c), 802. The problem is compounded because the Book contains double hearsay: to the extent Plaintiffs seek to introduce quotations attributed to Musk or other witnesses, those statements constitute out-of-court statements (the purported quotes) repeated in another out-of-court statement (the Book). Both layers must independently satisfy a hearsay exception. Fed. R. Evid. 805. Neither does here.

*Second*, no hearsay exception applies. Plaintiffs' only potential refuge is Rule 807's residual exception, but that exception is unavailable where, as here, the Book is not reliable, and the "best evidence" is testimony from the witnesses who actually participated in the events at issue. The witnesses to the Twitter transaction—Musk and his advisors, Twitter and its advisors—are available to testify. A second-hand account from a biographer is categorically inferior. Moreover, Isaacson resides in New York, outside this Court's subpoena power, and has twice successfully moved to quash Plaintiffs' deposition subpoenas—with one exceedingly limited exception described below. Isaacson will not be at trial to authenticate his work or be examined—denying Musk his fundamental right to test the Book's reliability through cross-examination—"the greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158 (1970) (citation omitted).

*Third*, the Court should preclude Plaintiffs from introducing the Isaacson Book through the backdoor during cross-examination. Even if the Book is excluded as a trial exhibit, Plaintiffs may attempt to read from or reference the Book during cross-examination of Musk or other witnesses. This tactic is improper. Embedding inadmissible hearsay in a question does not sanitize it, and confronting a witness with what a third-party author wrote is not proper impeachment—it is hearsay dressed up as a question.

The jury will hear from dozens of witnesses who actually participated in the events at issue. That is the proper evidence. Isaacson's second-hand account is not.

# BACKGROUND

In September 2023, celebrity biographer Walter Isaacson published *Elon Musk*, a biography spanning 95 chapters and almost 700 pages. It talks about Musk's entire life up to and into 2023. Only 14 of the Book's 95 chapters discuss Twitter. Because the Book is a pop biography intended for mass consumption, Isaacson uses a dramatic narrative style. According to several witnesses, Isaacson got many details wrong. Ex. 5[1] (Dorsey Dep.) at 89:16-90:5 ("No, I don't agree with [Isaacson's characterization]."); Ex. 7 ███████████████████████ ███████████; Ex. 3 (Musk Dep.) at 177:14-22 ("[T]his book was not run by me for fact-checking before it was published, and I have not read the book. … My mother read the book and was upset by how many factual errors there were."); *id.* at 316:14-18 ("I don't know [where Isaacson got that information from]. Artistic license."); Ex. 2 (Musk Dep.) at 80:23-81:4 ("[W]hen my mother and I were at dinner with Walter Isaacson, my mother spent the entire dinner telling Walter how he got so many things wrong in the book."); Ex. 6 (Spiro Dep.) at 50:5-12 (testifying that Isaacson "never interviewed me … [a]t all" when shown that the Book lists Spiro as an interviewee); *id.* at 13:21-24 ("I have no idea how Mr. Isaacson wrote that or why he wrote that.").

Plaintiffs have repeatedly attempted to pull Issacson and the Book into the case. They served a request for all of Musk's communications with Isaacson relating to the Twitter acquisition. Only *three* such communications existed—two of which were emails from Isaacson seeking to initiate conversation about Twitter to which Musk did not respond. Ex. 8 (Musk Am. Responses to Pls' Third Set of Interrogatories) at 48-49. In response to the third, which occurred on April 17, 2022—a month before the May 13 tweet Plaintiffs challenge, and before Musk offered to buy Twitter—Musk responded simply: "It would be unwise to discuss public company matters[.]"

Plaintiffs then twice subpoenaed Isaacson for deposition, and twice courts in the Southern District of New York granted his motions to quash based on relevance and the reporter's privilege. *See Isaacson v. Pampena*, Case No. 1:25-mc-126 (S.D.N.Y.), Dkt. 11; *Isaacson v. Pampena*, Case No. 1:25-mc-457 (S.D.N.Y.), Dkt. 30; Ex. 9 at 26:10-15; 28:2-12; 30:7-17; 35:2-9; 37:16-23; 81:14-82:15. The second

---

[1] All "Ex." citations are to the exhibits attached to the Declaration of Alex Bergjans filed herewith.

court (Ricardo, J.) permitted only a narrow deposition to confirm whether Musk made one specific quoted statement. Ex. 9 (Second Isaacson Hr'g Tr.) at 53:6-24, 57:5-16. The court encouraged a stipulation in lieu of deposition, *id.* at 53:6-24, and Musk offered to stipulate to both the quote and its admissibility, *id.* at 51:11-15; Bergjans Decl. ¶ 10. Plaintiffs declined. Musk does not object to the admissibility of that passage at trial. Other than those four sentences, all other evidence, testimony, argument, or references to the Book should be excluded.

## ARGUMENT

### A.     The Isaacson Book Is Inadmissible Hearsay

The Isaacson Book is hearsay or double hearsay and should be excluded in its entirety. Fed. R. Evid. 801(c), 802. This is not a close question. Courts routinely exclude books and other publications offered for the truth of their contents. *See e.g.*, *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 2014 WL 12795479, at *4 (N.D. Cal. May 30, 2014) ("[A] book constitutes inadmissible hearsay and, as such, may not be introduced for the truth of the matter asserted therein."); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050, at *8 (N.D. Cal. June 19, 2009), *aff'd sub nom. In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) ("Plaintiffs rely on analyst reports and newspaper articles to prove that defendants made false statements … These documents constitute hearsay as they are out of court statements offered to prove the truth of the matter asserted[.]"); *AFMS LLC v. United Parcel Serv. Co.*, 105 F. Supp. 3d 1061, 1070 (C.D. Cal. 2015), *aff'd sub nom. AFMS LLC v. United Parcel Serv., Inc.*, 696 F. App'x 293 (9th Cir. 2017) ("It is axiomatic to state that newspaper articles are by their very nature hearsay evidence and are thus inadmissible if offered to prove the truth of the matter asserted[.]"); *Larez v. City of Los Angeles*, 946 F.2d 630, 644 (9th Cir. 1991) (news reporters' transcriptions "necessarily ma[ke] the implicit statement, '[Declarant] said this!'"); *Green v. Baca*, 226 F.R.D. 624, 637-38 (C.D. Cal. 2005) ("Even when the actual statements quoted in a newspaper article constitute nonhearsay, or fall within a hearsay exception, their repetition in the newspaper creates a hearsay problem.").

The problem is compounded because the Isaacson Book contains **double hearsay**. Plaintiffs do not merely want to introduce Isaacson's narrative—they want to introduce quotations Isaacson attributes to Musk and other witnesses. A quote in the Book involves two layers of hearsay: (1) the alleged

statement by the speaker, and (2) Isaacson's out-of-court assertion that the statement was made. Both layers must independently satisfy a hearsay exception for the evidence to be admissible. Fed. R. Evid. 805; *see United States. v. Pena-Gutierrez*, 222 F.3d 1080, 1086 (9th Cir. 2000) ("This hearsay report contained Macias–Limon's hearsay statement that he was a citizen and national of Mexico. ... Applying the appropriate standards of review, we hold that the district court erred in admitting Macias–Limon's hearsay statement within Inspector Anderson's hearsay report."); *United States v. Canales-Fuentes*, 176 F. App'x 873, 876 (9th Cir. 2006) ("Canales's statements were themselves hearsay, creating 'hearsay within hearsay.'"). None does here. The Isaacson Book consists entirely of the purported out-of-court statements transcribed by Isaacson or Isaacson's own out-of-court statements. It should be excluded.

### B. The Isaacson Book Does Not Fit Within Any Hearsay Exception

No enumerated hearsay exception covers a celebrity biography written for commercial publication. Isaacson's purported quotes attributed to Musk and his advisors cannot be introduced as admissions by a party opponent under Rule 801(d)(2) because Isaacson's retelling of the quotes is itself hearsay and Plaintiffs cannot show that Musk adopted any statements. *United States v. Gaynor*, 2024 WL 516686 (M.D. Fla. Feb. 9, 2024), is directly on point. There, the government sought to introduce a biography of the defendant, arguing it was not hearsay because it was an adoptive admission of a party-opponent. *Id*. at *1, 5. In support of its argument, the government noted that the defendant "h[e]ld[] the book's copyright, that she distributed the book to her family members, and the author of the book submitted a declaration stating that [the defendant] 'reviewed and accepted' the book 'as an accurate retelling of her life story.'" *Id.* at *5. The court found that the author's retelling of the defendant's purported admissions was hearsay, and the statements could not be admitted as adoptive admissions because: "A jury could not infer from [the defendant's] copyright and her distribution of the book that she heard, understood, and acquiesced in the particular statements sought to be offered." *Id*. It further found that the author's declaration "itself [wa]s hearsay and thus not a 'foundational fact' on which the jury could rely." *Id*.

Here, there can be no dispute that Isaacson's purported quotations of Musk and others is hearsay. And there is no evidence that Musk adopted the statements—to the contrary, he testified he never read the book. Ex. 3 at 177:14-22 ("[T]his book was not run by me for fact-checking before it was published, and

I have not read the book.").

Plaintiffs' only potential refuge, then, is Rule 807's residual exception—but that exception "is not to be used as a new and broad hearsay exception, but rather is to be used rarely and in exceptional circumstances." *Fong v. Am. Airlines, Inc.*, 626 F.2d 759, 763 (9th Cir. 1980). The statements in the book must be: (1) "supported by sufficient guarantees of trustworthiness;" and (2) "more probative on the points for which [they] are offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a). The Isaacson Book fails both of Rule 807's requirements.

*First*, the Book lacks sufficient guarantees of trustworthiness. Fed. R. Evid. 807(a)(1). A pop biography written in a dramatic narrative style, for profit and mass consumption, by an author who will not be present at trial and often was not present for the events he describes, offers no such guarantees. *See Green*, 226 F.R.D. at 639 (newspaper articles offered by plaintiff lacked circumstantial guarantees of trustworthiness); *Larez*, 946 F.2d at 643 (collecting cases where "[c]ourts may well question whether an out-of-court statement, merely because it appears in newsprint, is sufficiently reliable.").

*Second*, the Book is not more probative than available alternatives. Federal Rule of Evidence 807(a)(2) "essentially creates a 'best evidence' requirement." *Larez*, 946 F.2d at 644. Here, the best evidence is obvious: testimony from those who actually participated in relevant events. The witnesses to the Twitter transaction—Musk and his advisors, and Twitter and its advisors—are available to testify. Many will appear at trial (live or by deposition); others are within the Court's subpoena power. A second- and sometimes third-hand account from a biographer is categorically inferior to sworn testimony from percipient witnesses subject to cross-examination. *See id.* ("The statements' admission, therefore, was erroneous because the newspaper quotations were not the best available evidence of what Gates said[.]").

This is especially true given that multiple witnesses have confirmed the Book is riddled with inaccuracies—some of which have caused extensive litigation in this case. *See supra*, at 2. As one example: the Book claims that both Spiro and Birchall participated in a phone call with Musk after the first May 13 tweet and before the second tweet. Dkt. 192. Both submitted declarations stating only Musk and Spiro were on the call. Dkt. 222 ¶ 9; Dkt. 244 ¶ 2. No witness testified otherwise, yet the parties have made eleven filings on this one error. *See* Dkts. 162-1, 168, 192, 198, 222, 223, 243, 244, 279, 300, 305.

The concern is even greater here given Isaacson will not be at trial to authenticate his book and be subject to cross-examination. *See California*, 399 U.S. at 158 (cross examination is the "greatest legal engine ever invented for the discovery of truth." (quoting 5 J. Wigmore, Evidence § 1367 (3d ed. 1940))).

These deficiencies are fatal. Rule 807 exists for situations where reliable evidence would otherwise be lost. That is not the case here.

### C. The Court Should Also Preclude Use of or Reference to the Isaacson Book During Cross Examination or for Impeachment

If the Court excludes the Book, Plaintiffs may attempt to introduce it through the backdoor by reading from or referencing it during witness examinations. This tactic should be prohibited, too.

Courts recognize that the "[p]rotections against the use of … inadmissible evidence would be of little benefit if [a party] were allowed, under the guise of 'artful cross-examination,' to tell the jury the substance of inadmissible evidence." *United States v. Hall*, 989 F.2d 711, 716 (4th Cir. 1993); *see also Reynolds v. Univ. of Pa.*, 747 F. Supp. 2d 522, 538-539 (E.D. Pa. 2010), *aff'd*, 483 F. App'x 726 (3d Cir. 2012) (improper to ask questions that reference excluded evidence). Simply put, embedding inadmissible hearsay in a question does not sanitize it. That the evidence is presented in question form rather than as a direct statement does not eliminate the danger that the jury will consider the evidence for its truth.

The risk of prejudice is particularly acute here. Isaacson is a celebrated biographer whose prior subjects include Benjamin Franklin, Albert Einstein, and Steve Jobs. If Plaintiffs' counsel were permitted to ask, for example, "Walter Isaacson wrote that you said XYZ—is that true?", the jury would be exposed to Isaacson's characterization of events, imbued with his considerable public credibility, without any opportunity for Musk to cross-examine the source. *See, e.g.*, *United States. v. Check*, 582 F.2d 668, 683 (2d Cir. 1978) (introduction of inadmissible hearsay through "artful" cross-examination gives "the benefit of having … an additional witness … while simultaneously insulating [the witness] from cross-examination[.]"). Even a denial by the witness would leave the hearsay lingering before the jury.

That is not proper impeachment. Impeachment with a prior inconsistent statement requires the witness's *own* prior statement. Fed. R. Evid. 613. Confronting a witness with what a third-party author wrote is simply hearsay dressed up as a question. Indeed, "[e]very circuit has said evidence that is inadmissible for substantive purposes may not be purposely introduced under the pretense of

impeachment." *United States. v. Peterman*, 841 F.2d 1474, 1479 n.3 (10th Cir. 1988), *cert. denied,* 488 U.S. 1004 (1989) (citing cases); *United States v. Crouch*, 731 F.2d 621, 623, 624 (9th Cir. 1984), *cert. denied,* 469 U.S. 1105 (1985) (using impeachment "as a 'subterfuge' to get otherwise inadmissible testimony before the jury" is improper in light of "recognized conceptual difficulties juries may have in distinguishing testimony admissible for impeachment from testimony admissible for its substance").

Even more, prior inconsistent statements must be authenticated. *See United States v. Cumbie*, 28 F. 4th 907, 914 (8th Cir. 2022) ("Although extrinsic evidence may be used for impeachment by prior inconsistent statement, such extrinsic evidence must still be authenticated.") (quoting *United States v. Craig*, 953 F.3d 898, 904 (6th Cir. 2020)); *see also, e.g.*, *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) ("[A] 'third party's characterization' of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization.") (quoting *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir.), *cert denied*, 447 U.S. 928 and 449 U.S. 994 (1980)). The Book is not self-authenticating. *See* Fed. R. Evid. 902(5) (self-authenticating "book[s]" are those "*issued by a public authority*") (emphasis added). And when prior inconsistent statements are not "substantially verbatim," they "must have been either adopted or approved by the witness" in order to be admitted for impeachment. 5 Handbook of Fed. Evid. § 613:3 (10th ed.). That is not the case here—Musk has not even read the Book. "Finally, whatever limited value the [inadmissible evidence] would have had in impeaching [the witness's] credibility would have been swamped by the unfair prejudice to [the opposing party] from the use of those materials at trial." *Erfindergemeinschaft UroPep GbR v. Eli Lilly and Co.*, 276 F. Supp. 3d 629, 679 (E.D. Tex. 2017).[2]

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court order that Plaintiffs, their counsel, and their witnesses may not read from, refer to, or otherwise use[3] the Isaacson Book, including during the examination of any witness at trial.

---

[2] Similarly, "[i]t is by no means clear that a limiting instruction would [] cure[] the prejudicial effect of allowing the [inadmissible evidence] into the case in that manner." *Id.*

[3] For example, the Court should not permit Plaintiffs' counsel to seek to impeach Musk by reading quotes from the Isaacson Book while flashing its cover before the jury.

| | |
|---|---|
| DATED: January 13, 2026 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By  /s/ Stephen A. Broome |
| | Alex Spiro |
| | Michael T. Lifrak |
| | Stephen A. Broome |
| | Ellyde R. Thompson |
| | Jesse A. Bernstein |
| | Alex Bergjans |
| | |
| | *Attorneys for Defendant Elon Musk* |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on Tuesday, January 13, 2026.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Alex Bergjans
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*

**ATTESTATION**

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories herein.

By /s/ *Stephen A. Broome*
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*