1  QUINN EMANUEL URQUHART & SULLIVAN, LLP

2  Alex Spiro (*pro hac vice*)
   alexspiro@quinnemanuel.com

3  Jesse A. Bernstein (*pro hac vice*)
   jessebernstein@quinnemanuel.com

4  Ellyde R. Thompson (*pro hac vice*)
   ellydethompson@quinnemanuel.com

5  295 Fifth Ave., New York, NY 10010
   Telephone:     (212) 849-7000

6  Facsimile:     (212) 849-7100

7
   Michael T. Lifrak (Bar No.  210846)

8  michaellifrak@quinnemanuel.com
   Stephen A. Broome (Bar No.  314605)

9  stephenbroome@quinnemanuel.com
   Alex Bergjans (Bar No.  302830)

10 alexbergjans@quinnemanuel.com
   865 S.  Figueroa Street, 10th Floor

11 Los Angeles, California 90017
   Telephone:     (213) 443-3000

12 Facsimile:     (213) 443-3100

13

14 *Attorneys for Defendant Elon Musk*

15                    UNITED STATES DISTRICT COURT

16                    NORTHERN DISTRICT OF CALIFORNIA

17 GIUSEPPE PAMPENA, on behalf of         CASE NO.  3:22-CV-05937-CRB
   himself and all others similarly situated,
18                                         **MOTION *IN LIMINE* NO. 3**

19         Plaintiff,                      **DEFENDANT'S MOTION *IN LIMINE* TO
                                           PRECLUDE EVIDENCE AND
20      vs.                                ARGUMENT REGARDING ELON
                                           MUSK'S POLITICS AND
21 ELON R.  MUSK,                          MANAGEMENT OF TWITTER/X**

22         Defendant.                      Action Filed: 10/10/2022
                                           Pretrial Conference: 2/17/2026
23                                         Time: 2 pm
                                           Location: Courtroom 6, 17th Floor
24                                         Trial Date: 2/23/2026

25

26

27

28
                                                Case No.  3:22-CV-05937-CRB

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .....................................................................................................................2

ARGUMENT...........................................................................................................................2

I.      PLAINTIFFS SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF MUSK'S POLITICS AND MANAGEMENT OF TWITTER UNDER FRE 402 AND 403 ................................................................................................................................2

     A.      Musk's Politics and Management of Twitter After the Class Period are Irrelevant and Prejudicial .......................................................................................................3

          1.      Evidence of Musk's Political Views or Activities is Irrelevant and Prejudicial ............................................................................................3

          2.      Evidence of Musk's Management of Twitter is Irrelevant and Prejudicial .............4

     B.      Twitter's Post-Closing Reduction-In-Force is Irrelevant and Prejudicial ..........................5

     C.      Musk's Termination of Twitter Executives is Irrelevant and Prejudicial............................6

CONCLUSION...........................................................................................................................7

DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND
ARGUMENT REGARDING MUSK'S POLITICS AND MANAGEMENT OF TWITTER

# TABLE OF AUTHORITIES

**Page**

## Cases

*Agrawal et al v. Musk et al*,
   Case No. 3:24-cv-01304-MMC (N.D. Cal.) ........................................................................................6

*Matrixx Initiatives v. Siracusano*,
   563 U.S. 27 (2011) .............................................................................................................................1

*In re Copper Mountain Sec. Litig.*,
   311 F. Supp. 2d 857 (N.D. Cal. 2004) ..............................................................................................3

*Fecht v. Price Co.*,
   70 F.3d 1078 (9th Cir. 1995) .............................................................................................................3

*Hsu. v. Puma Biotechnology, Inc.*,
   2018 WL 11669124 (C.D. Cal. Oct. 24, 2018) ..................................................................................1

*Isaacson v. Pampena et al.*,
   Case No. 1:25-mc-457 (JHR) (HJR), Dkt. 30 (S.D.N.Y.) ................................................................3

*Lawrence E. Jaffee Pension Plan v. Household Int'l, Inc.*,
   2006 WL 3445742 (N.D. Ill. Nov. 22, 2006) ....................................................................................3

*Low v. Trump Univ., LLC*,
   2016 WL 6647793 (S.D. Cal. Nov. 10, 2016) ...................................................................................4

*Muhlrad v. City of San Marino*,
   2024 WL 5349935 (C.D. Cal. Jan. 3, 2024) .....................................................................................4

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   2013 WL 6535164 (C.D. Cal. Dec. 9, 2013) .....................................................................................7

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) .......................................................................................................1, 3

*Schleicher v. Wendt*,
   618 F.3d 679 (7th Cir. 2010) .......................................................................................................1, 3

*Shenwick v. Twitter, Inc.*,
   2021 WL 1232451 (N.D. Cal. Mar. 31, 2021)...................................................................................5

*In re Tesla, Inc. Sec. Litig.*,
   2022 WL 17582008 (N.D. Cal. Dec. 7, 2022) ...................................................................................1

*Yates v. Sweet Potato Enters., Inc.*,
    2013 WL 4067783 (N.D. Cal. Aug. 1, 2013) ................................................................................5

**Rules / Statutes**

Civil L.R. 5-1 .......................................................................................................................10

ERISA .....................................................................................................................................6

Fed. R. Civ. P. 5(b) ...............................................................................................................9

Fed. R. Evid. 401 ...............................................................................................................2, 4

Fed. R. Evid. 402 ...............................................................................................................2, 4

Fed. R. Evid. 403 .....................................................................................................1, 2, 3, 4, 5

Fed. R. Evid. 404(b)...............................................................................................................6

Case No. 3:22-CV-05937-CRB

DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND
ARGUMENT REGARDING MUSK'S POLITICS AND MANAGEMENT OF TWITTER

1

## PRELIMINARY STATEMENT

2       This securities fraud case turns on three statements Musk made over four days in May 2022—five

3   months *before* he owned Twitter.  Yet Plaintiffs seek to put on trial Musk's politics, his management of

4   Twitter, and his termination of executives—beliefs and events that have nothing to do with the statements

5   and, for the most part, occurred *after* he closed the deal in October 2022 and *after* the Class Period ended.

6   The Court should not permit Plaintiffs to taint the jury with patently irrelevant and prejudicial evidence.

7       The law is clear:  "Fraud by hindsight is not actionable," *Ronconi v. Larkin*, 253 F.3d 423, 430

8   n.12 (9th Cir. 2001) (cleaned up), abrogated *on other grounds by Matrixx Initiatives v. Siracusano*, 563

9   U.S. 27, 37–49 (2011), and therefore "[f]raud depends on the state of events when a statement is made,

10  not on what happens later," *Schleicher v. Wendt*, 618 F.3d 679, 684 (7th Cir. 2010).  Accordingly, whether

11  Musk's May 2022 statements were false and made with scienter must be assessed based on the facts *when*

12  *made*—not what happened months or years later.  Musk's political activities, his post-closing management

13  decisions, Twitter's participation in industry-wide layoffs, and his termination of executives have no

14  bearing on whether three statements about bot data in May 2022 were truthful when made.

15      Plaintiffs' theory of relevance is also contradictory.  They claim Musk lied about bots to escape an

16  expensive deal, while at the same time arguing that "Musk was motivated to purchase Twitter in part out

17  of spite" so that he could "fire[] the executives for personal reasons."  Dkt. 168 at 3.  Putting aside the

18  absurd notion that one would pay $44 billion "out of spite," the internal inconsistency between Plaintiffs'

19  core theory of liability and their theory of relevance of the executive terminations demonstrates that their

20  gambit is prejudice, not truth-seeking.

21      Even if marginally relevant, this evidence should be excluded under Rule 403.  Allowing Plaintiffs

22  to parade Musk's political affiliations, mass layoffs, and executive firings before the jury would transform

23  this trial into a referendum on his management and political views—inviting decisions based on sympathy

24  or antipathy rather than the narrow question of whether three statements about bots were false when made.

25  Courts in this Circuit routinely exclude such post-class period evidence to prevent precisely this result.

26  *See, e.g.*, *Hsu. v. Puma Biotechnology, Inc.*, 2018 WL 11669124 (C.D. Cal. Oct. 24, 2018); *In re Tesla,*

27  *Inc. Sec. Litig.*, 2022 WL 17582008, at \*16-17 (N.D. Cal. Dec. 7, 2022) (granting in part motion *in limine*

28

1  to exclude post-Class Period events).

2      The parties have ten days to try this case.  The jury's time should be spent on what Musk knew

3  about the deal and said in May 2022, not on opinions and activities—primarily post-Class Period—that

4  have nothing to do with the claims.

5  **BACKGROUND**

6      Plaintiffs' First Amended Complaint ("FAC") (Dkt. 31) identified over a dozen allegedly false

7  statements Musk made between May 13 and September 9, 2022.  FAC ¶¶111-151.  On December 11,

8  2023, the Court dismissed most of those statements as inactionable, leaving three:  Musk's May 13, 2022

9  tweets stating the deal was "temporarily on hold" pending bot data (though "still committed to

10  acquisition"); his May 16, 2022 statement at the All-In Summit referencing a 20% bot estimate; and his

11  May 17, 2022 tweet stating he "cannot move forward" until Twitter provides proof of its <5% bot claim.

12  Dkt. 48 at 22-29.  Plaintiffs allege that those purported misstatements were corrected on October 4, 2022

13  when Musk announced he would close the deal.  FAC ¶ 167.  Plaintiffs' case thus turns on whether the

14  three statements, made over the course of four days in May 2022, were false *when made*.  That issue does

15  not turn on Musk's political beliefs or events that occurred months later—after the Class Period ended on

16  October 4, 2022, and after Musk took ownership of Twitter on October 27, 2022.

17      Despite this narrow focus, Plaintiffs have sought to introduce evidence concerning events that

18  postdate both the challenged statements and the Class Period by months or even years.  This includes:  (1)

19  Musk's political affiliations and activities, including his 2024 endorsement of Donald Trump and

20  appointment to co-lead the Department of Government Efficiency ("DOGE"); (2) Musk's post-closing

21  changes to Twitter's content-moderation policies, including the release of the "Twitter Files" in November

22  2022; (3) Twitter's late-2022 reduction in force and subsequent layoffs; and (4) Musk's October 27, 2022

23  termination of former Twitter executives Parag Agrawal, Ned Segal, Vijaya Gadde, and Sean Edgett.

24  **ARGUMENT**

25  **I.    PLAINTIFFS SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF
26      MUSK'S POLITICS AND MANAGEMENT OF TWITTER UNDER FRE 402 AND 403**

27      Evidence is relevant only if it has a tendency to make a consequential fact more or less probable.

28  Fed. R. Evid. 401.  "Irrelevant evidence is not admissible."  *Id.* at 402.  And relevant evidence is

DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND
ARGUMENT REGARDING MUSK'S POLITICS AND MANAGEMENT OF TWITTER

1    inadmissible "if its probative value is substantially outweighed by … unfair prejudice." *Id.* at 403.

2    Plaintiffs' surviving claims turn on whether certain statements Musk made between May 13 and

3    May 17, 2022 were materially false or misleading, and whether Musk acted with the requisite scienter, *at*

4    *the time those statements were made*. Evidence concerning Musk's politics and events occurring outside

5    the Class Period is irrelevant to these issues because "[f]raud depends on the state of events when a

6    statement is made, not on what happens later." *Schleicher*, 618 F.3d 684; *see also Ronconi*, 253 F.3d at

7    430 n.12 ("Fraud by hindsight is not actionable.") (cleaned up); *In re Copper Mountain Sec. Litig.*, 311 F.

8    Supp. 2d 857, 868 (N.D. Cal. 2004) ("[T]he securities law approach matters from an ex ante perspective.");

9    *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995) (jury decides whether "the disputed statement[s]

10   w[ere] untrue or misleading when made"); *Lawrence E. Jaffee Pension Plan v. Household Int'l, Inc.*, 2006

11   WL 3445742, at *4 (N.D. Ill. Nov. 22, 2006) (denying motion to compel where post class period

12   information had only "marginal probative value"). As U.S. District Court for the Southern District of

13   New York found in granting Walter Isaacson's Second Motion To Quash Plaintiffs' Deposition Subpoena,

14   *see Isaacson v. Pampena et al.*, Case No. 1:25-mc-457 (JHR) (HJR), Dkt. 30 (S.D.N.Y.),[1] "the more

15   relevant question [is] what the merger agreement actually says" and "whether Mr. Musk's stated concerns

16   at a [] point in time in May were genuine." Ex. 9 (Isaacson Hr'g Tr.) at 36:17-20, 37:16-22.[2] Evidence

17   post-dating the Class Period is probative of neither issue.

18   **A.    Musk's Politics and Management of Twitter After the Class Period are Irrelevant and Prejudicial**

19

20   **1.    Evidence of Musk's Political Views or Activities is Irrelevant and Prejudicial**

21   Plaintiffs intend to inject Musk's politics into trial asserting, among other things, that Musk

22   purchased Twitter as part of his purported "desire to control a vehicle to express his growing socio-

23   political fixations." *Isaacson v. Pampena et al.*, Case No. 1:25-mc-457 (JHR) (HJR), Dkt. 27 at 13 n.6

24   (S.D.N.Y.). For instance, Plaintiffs' pre-trial witness list indicates that they will call two former Twitter

25   employees to testify about the "importance of and experience with safety on the platform," which is likely

26   ---
     [1]    Plaintiffs sought to depose Walter Isaacson on many subjects including the post-Class Period
     termination of Twitter executives. *See* Musk's Motion *in Limine* to Exclude Evidence Related to Walter

27   Isaacson's Biography Titled "Elon Musk." Isaacson has twice quashed Plaintiffs' deposition subpoenas.

     [2]    All "Ex." citations are to the exhibits attached to the Declaration of Alex Bergjans filed herewith.

28

1    a vague allusion to these witnesses' perceptions of Musk's purported views towards certain minority

2    groups or moderation of controversial speech, as well as why the witnesses believe such views were

3    incompatible with Twitter's claimed "safety" ethos.  Such evidence is wholly irrelevant.  None of the three

4    challenged statements relate to Musk's political views.  And there is a substantial temporal gap between

5    Musk's statements about bot data in May 2022 and his political activities in 2024 and 2025 that severs

6    any potential connection between two.  Plainly, the point of such evidence is to prejudice Musk by inviting

7    the jury to find him liable on the basis that he holds political views or has engaged in political activities

8    with which jurors may disagree.

9        Such evidence should be excluded under Rules 402 and 403.  *See Muhlrad v. City of San Marino*,

10    2024 WL 5349935, at *2 (C.D. Cal. Jan. 3, 2024) (excluding "[e]vidence of Plaintiffs' political beliefs ...

11    pursuant to Fed. R. Evid. 401 and 403"); *Low v. Trump Univ., LLC*, 2016 WL 6647793, at *4 (S.D. Cal.

12    Nov. 10, 2016) (excluding evidence of political affiliation "[b]ecause such evidence has no apparent

13    relevance and may be unduly inflammatory").  Allowing Plaintiffs to introduce this evidence would

14    transform this securities fraud trial into a referendum on Musk's political views—a result that is both

15    irrelevant to the issues and extraordinarily prejudicial.

16        **2.    Evidence of Musk's Management of Twitter is Irrelevant and Prejudicial**

17        Evidence concerning activity on Twitter after Musk bought the company, Musk's post-closing

18    management decisions, including changes to Twitter's content-moderation policies, and the release of the

19    "Twitter Files" in November 2022 is equally irrelevant.  These decisions were made months after the May

20    2022 statements (and the close of the Class Period) and reflect Musk's policy views as the *owner* of

21    Twitter—not his state of mind when making statements about bot data before he acquired the company.

22        These matters are not only irrelevant, they are politically, socially, and emotionally charged.

23    Plaintiffs seek to introduce evidence that, shortly after Musk bought Twitter, certain users and bots started

24    using the n-word at an alarming rate—posts that Musk abhorred and immediately ordered be removed

25    from the platform.  Ex. 7 (Roth Dep.) at 155:5-157:19.  They also intend to raise Musk's release of the

26    "Twitter Files"—internal Twitter communications concerning content moderation during the 2020

27    election and decision to suspend President Donald Trump from the platform—and its social impact at trial.

28

DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND
ARGUMENT REGARDING MUSK'S POLITICS AND MANAGEMENT OF TWITTER

1    Ex. 7 (Roth Dep.) at 119:12-120:13.  Introducing this evidence would invite the jury to decide the case

2    based on their views of how Musk manages X (formerly Twitter)—a subject that generates strong

3    reactions across the political spectrum.

4         The risk of unfair prejudice is acute:  jurors who disagree with Musk's politics, content-moderation

5    policies, and stewardship of Twitter may seek to punish him for those views rather than evaluating the

6    evidence of falsity and scienter.  *See* Fed. R. Evid. 403; *Shenwick v. Twitter, Inc.*, 2021 WL 1232451, at

7    *7 (N.D. Cal. Mar. 31, 2021) (finding that evidence of "controversial" political views "has very little

8    probative value" and "any probative value of the evidence would be outweighed by juror confusion or the

9    undue consumption of time").

10        **B.        Twitter's Post-Closing Reduction-In-Force is Irrelevant and Prejudicial**

11        The Court should also preclude Plaintiffs from introducing any evidence of Twitter's November

12   2022 company-wide reduction in force as irrelevant and prejudicial.  The post-acquisition company-wide

13   restructuring has no bearing whatsoever on falsity or scienter.  In fact, *Twitter* made the decision to

14   implement cost-cutting measures—including mass layoffs—in late 2021 or early 2022, before Musk

15   signed the Merger Agreement. Ex. 10 (Hayes Dep.) at 160:19-167:10.  Moreover, Twitter's post-Class

16   Period workforce reductions were part of an industry-wide wave of layoffs in the technology sector.  Meta

17   laid off over 21,000 employees between November 2022 and March 2023; Amazon cut 18,000+; Alphabet

18   cut approximately 12,000; and Microsoft eliminated 10,000 jobs—all attributed to post-pandemic over-

19   hiring, rising interest rates, and declining advertising revenues.  *See* Exs. 11-13.  Evidence of Twitter's

20   participation in this industry-wide trend has no tendency to show that that the challenged statements were

21   false or made with scienter; to the contrary, it demonstrates that the layoffs were a standard business

22   response—one already made, in part, by former Twitter leadership—to conditions that first arose before

23   and then crystallized months after the Class Period.

24        Even if the layoffs had marginal relevance, any probative value would be substantially outweighed

25   by unfair prejudice.  Evidence of mass layoffs generates sympathy and invites jurors to punish Musk for

26   making the same business decision virtually every major tech CEO made around the same time.  *See* Fed.

27   R. Evid. 403; *Yates v. Sweet Potato Enters., Inc.*, 2013 WL 4067783, at *3 (N.D. Cal. Aug. 1, 2013)

28

-5-                          Case No. 3:22-CV-05937-CRB
DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND
ARGUMENT REGARDING MUSK'S POLITICS AND MANAGEMENT OF TWITTER

1    (excluding evidence that was not probative of any claims and had a "sympathy-inducing" effect).

2    **C.    Musk's Termination of Twitter Executives is Irrelevant and Prejudicial**

3    Finally, Plaintiffs seek to introduce a purported play-by-play (copied and pasted from Isaacson's

4    hearsay Book) of Musk's decision to terminate former Twitter executives Parag Agrawal, Ned Segal,

5    Vijaya Gadde, and Sean Edgett on October 27, 2022—more than five months after the May 2022

6    statements.  Plaintiffs intend to argue that Musk fired these individuals—who all planned to resign after

7    the deal closed—to unlawfully deprive them of severance.  But this is not an employment dispute or

8    ERISA suit (the executives already filed and resolved one with Musk, *see Agrawal et al v. Musk et al*,

9    Case No. 3:24-cv-01304-MMC (N.D. Cal.)) and Musk's post-Class Period personnel decisions and

10    purported motives would be an irrelevant and prejudicial distraction at trial.

11    Any connection between Musk's decision to terminate the executives and Plaintiffs' securities

12    fraud claim is tangential at best.  As the Court in the Southern District of New York explained in quashing

13    Plaintiffs' demand to depose Isaacson on this very topic, what Musk "thought about" or "his animus as

14    to" the former executives "really has nothing to do with the misleading statements or whether Mr. Musk

15    was trying to get out of the deal.  It seems to be related either to why he got into the deal in the first place

16    or what he did after he completed the deal."  Ex. 9 (Isaacson Hr'g Tr.) at 28:2-12.

17    Plaintiffs' proffered theories of relevance do not undermine this reasoned analysis.  They invoke

18    Rule 404(b) to claim it shows Musk's motive—to pursue personal vendettas.  But the only "motive" this

19    is probative of is Musk's desire to fire them after he bought the company, not his motive to exit or

20    renegotiate the deal (after all, all the executives would have presumably kept their jobs had Musk

21    successfully terminated).  Nor is it relevant to show—as Plaintiffs hyperbolically claim—that Musk acted

22    with "irrational anger." Dkt. 168 at 3.  Musk's decision to terminate executives in October, based on

23    information he learned in June-October, Ex. 14 (Supplemental Response to Plaintiffs' Interrogatory No.

24    22), has no bearing on his emotional state in May.  Further, the decision to terminate in October cannot

25    logically be used to rebut evidence that Musk believed the executives to be incompetent:  his pitch to

26    investors in *April 2022*—before he signed the Merger Agreement—was that current management was not

27    capable of running the company.  *See* Ex. 15.  Finally, Plaintiffs' core theory of relevance is internally

28

DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND
ARGUMENT REGARDING MUSK'S POLITICS AND MANAGEMENT OF TWITTER

1  contradictory.  They claim this evidence is necessary to show that Musk purchased Twitter "out of spite,"

2  but their theory of liability is that Musk lied to *avoid* buying the company.

3      Plaintiffs' scattershot and incoherent relevance arguments demonstrate that whatever minimal

4  probative value Musk's decision and motives to terminate the executives may have is far outweighed by

5  the prejudice to Musk.  Plaintiffs want to use this evidence to paint Musk as a bad, vindictive, and

6  "irrational" person so that the jury punishes him for his character.  But the jury must render a verdict based

7  on whether Musk lied about his contractual information rights and the number of bots, not whether he

8  subsequently violated employment laws as Twitter's owner.  Worse, if Plaintiffs were permitted to

9  introduce this evidence, Musk would be compelled to justify and defend these "for cause" firings by

10  offering evidence that the executives engaged in fraud, excessive spending, and other misconduct.  Ex. 14

11  (Supplemental Response to Plaintiffs' Interrogatory No. 22).  That would require extensive testimony

12  about performance issues, Twitter's lack of compliance with a 2011 FTC consent decree, the executives'

13  wrongful terminations of other Twitter employees, and the impropriety of various expenditures.  These

14  are all matters and issues raised and litigated in an entirely separate lawsuit[3] and would require their own

15  series of minitrials (one for each terminated executive) to contextualize the decisions—inevitably causing

16  undue delay, wasting time, and confusing the jury.  *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 2013

17  WL 6535164, at *16 (C.D. Cal. Dec. 9, 2013) (excluding evidence from "outside the Class Period,"

18  finding the "minimal relevance" of such evidence to be "substantially outweighed by the danger of

19  prejudice and confusion of the issues").  The Court should not allow it.

20                                 **CONCLUSION**

21      For the foregoing reasons, Defendant respectfully requests that the Court preclude Plaintiffs from

22  introducing all evidence, testimony, exhibits, argument, or references to Musk's politics or management

23  of Twitter after the Class Period, specifically including:  (1) Musk's political activities and affiliations;

24  (2) Musk's post-closing changes to Twitter's content-moderation policies and the "Twitter Files"; (3)

25  Twitter's 2022-2023 layoffs; and (4) Musk's termination of former Twitter executives in October 2022.

26

27  [3]  Plaintiffs may also try to introduce the fact that Musk and the executives resolved this dispute as evidence that Musk had no basis to terminate them.  The existence of the lawsuit and settlement have even less relevance and are more prejudicial than the terminations themselves.  They should also be excluded.

28
                                                    -7-              Case No. 3:22-CV-05937-CRB

1

DATED:  January 13, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

2

3

4

By_____/s/ Stephen A. Broome_____

Alex Spiro

5

Michael T. Lifrak

Stephen A. Broome

6

Ellyde R. Thompson

Jesse A. Bernstein

7

Alex Bergjans

8

*Attorneys for Defendant Elon Musk*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:22-CV-05937-CRB

DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND
ARGUMENT REGARDING MUSK'S POLITICS AND MANAGEMENT OF TWITTER

1

## CERTIFICATE OF SERVICE

2      I hereby certify that the foregoing document was served on all counsel of record electronically or

3  by another manner authorized under FED. R. CIV. P. 5(b) on Tuesday, January 13, 2026.

4

5                                          QUINN EMANUEL URQUHART & SULLIVAN, LLP

6

7                               By  */s/ Stephen A. Broome*

8                                      Alex Spiro
                                       Michael T. Lifrak
9                                      Stephen A. Broome
                                       Ellyde R. Thompson
10                                     Jesse A. Bernstein
                                       Alex Bergjans
11

12                                     *Attorneys for Defendant Elon Musk*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND
ARGUMENT REGARDING MUSK'S POLITICS AND MANAGEMENT OF TWITTER

**ATTESTATION**

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories herein.

By  */s/ Stephen A. Broome*
    Alex Spiro
    Michael T. Lifrak
    Stephen A. Broome
    Ellyde R. Thompson
    Jesse A. Bernstein
    Alex Bergjans

    *Attorneys for Defendant Elon Musk*