QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
jessebernstein@quinnemanuel.com
Ellyde R. Thompson (*pro hac vice*)
ellydethompson@quinnemanuel.com
295 Fifth Ave., New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendant Elon Musk*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**MOTION *IN LIMINE* NO. 4**<br><br>**DEFENDANT ELON MUSK'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OR ARGUMENT OF LIABILITY BASED ON NON-FRAUDULENT STATEMENTS OR UNPLED CONDUCT**<br><br>Action Filed: 10/10/2022<br>Pretrial Conference: 2/17/2026<br>Time: 2 pm<br>Location: Courtroom 6, 17th Floor<br>Trial Date: 2/23/2026 |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................1

BACKGROUND ..............................................................................................................................2

      A.     The FAC Asserts a Section 10(b) Claim Based Only on Alleged Misstatements ...............2

      B.     The Court Dismisses Plaintiffs' Claim to the Extent Predicated on Statements other than the May 13 Tweet, May 16 Statement, and May 17 Tweet .........................................3

      C.     Plaintiffs' Belated Attempt to Revive Dismissed Claims as Part of a "Scheme" .................3

ARGUMENT ....................................................................................................................................4

I.    THE COURT SHOULD PRECLUDE PLAINTIFFS FROM PREMISING LIABILITY ON DISMISSED STATEMENTS, UNPLED CONDUCT, OR PROTECTED ACTIVITY ....................4

II.   THE COURT SHOULD GIVE A LIMITING INSTRUCTION ........................................................7

CONCLUSION .................................................................................................................................7

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*In re AGS, Inc. Sec. Litig.*,
   2024 WL 581124 (D. Nev. Feb. 12, 2024),..................................................................4, 5, 6

*In re Alphabet, Inc. Sec. Litig.*,
   1 F.4th 687 (9th Cir. 2021) ........................................................................................................5

*BE & K Construction Co. v. NLRB*,
   536 U.S. 516 (2002)....................................................................................................................7

*In re Eastman Kodak Co. Sec. Litig.*,
   632 F. Supp. 3d 169 (W.D.N.Y. 2022) ......................................................................................5

*In re Illumina, Inc. Sec. Litig.*,
   2025 WL 2739655 (S.D. Cal. Sept. 26, 2025) ..........................................................................5

*Kang v. PayPal Holdings, Inc.*,
   620 F. Supp. 3d 884 (N.D. Cal. 2022) ...................................................................................4, 6

*Merrick v. Paul Revere Life Ins. Co.*,
   500 F.3d 1007 (9th Cir. 2007) ...................................................................................................7

*In re Oracle Corp. Sec. Litig.*,
   2009 WL 1709050 (N.D. Cal. June 19, 2009) .........................................................................6

*In re Palo Alto Networks, Inc. Sec. Litig.*,
   2025 WL 2410348 (N.D. Cal. Aug. 19, 2025) ................................................................1, 5, 6

*Reese v. BP Expl. (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) .....................................................................................................6

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) .....................................................................................................7

*In re Stem, Inc. Sec. Litig.*,
   2025 WL 3675114 (N.D. Cal. Dec. 17, 2025)......................................................................4, 6

*In re Tesla, Inc. Sec. Litig.*,
   2022 WL 17582008 (N.D. Cal. Dec. 7, 2022) .........................................................................6

### Rules / Statutes

Fed. R. Evid. 105 ................................................................................................................................7

Rule 10(b)-5 ............................................................................................................1, 2, 3, 5, 6

Fed. R. Civ. P. 9(b) ...........................................................................................................2, 6

Securities and Exchange Act of 1934 Section 10(b) ..................................................1, 2, 4, 5

# INTRODUCTION

Defendant Elon Musk respectfully moves the Court to preclude Plaintiffs from arguing or introducing evidence at trial suggesting that Musk committed securities fraud based on dismissed statements or any other conduct or statements not pled in the Amended Complaint. The Court's motion to dismiss order clearly limited Plaintiffs' claim to three specific alleged misstatements made on May 13, 16, and 17, 2022. Plaintiffs may not circumvent the Court's ruling by characterizing their theory as one for scheme liability both because the law is clear that such a claim may not be based upon non-fraudulent statements and because Plaintiffs did not plead any other basis for their claim.

In their First Amended Complaint, Plaintiffs alleged Musk committed securities fraud by making or disseminating "false and misleading statements . . . designed to drive down the price of [Twitter]'s stock." Dkt. 31 (FAC) ¶ 10. Musk moved to dismiss the "sole cause of action for violation of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5," which the Court denied only as to the May 13 Tweet, May 16 Statement, and May 17 Tweet. The Court otherwise made clear that it "GRANTS Defendant's motion with respect to Plaintiffs' ***claims*** to the extent they are ***predicated on all other challenged statements***." Dkt. 48 (MTD Order) at 39.

Yet, despite this clear ruling, Plaintiffs have indicated that they will seek to pursue a theory of scheme liability and to premise liability for securities fraud upon unpled and dismissed statements and conduct. The Court should prohibit Plaintiffs from doing so.

At the threshold, the Court's order clearly limited the Rule 10b-5 claim to the three specifically pled May statements. Because the Court dismissed any securities fraud claim as to 15 of the 18 statements, Plaintiffs cannot rely on dismissed statements as part of a "scheme" theory of liability. Plaintiffs cannot avoid their own pleading deficiency merely by "repackaging their claims as 'scheme liability' claims under SEC Rules 10b-5(a) and (c)." *In re Palo Alto Networks, Inc. Sec. Litig.*, 2025 WL 2410348, at *2 (N.D. Cal. Aug. 19, 2025) (Breyer, J.). To hold otherwise not only would nullify the Court's prior ruling but also contravene the requirements of the Private Securities Litigation Reform Act's heightened pleading requirements.

Separately, to extent Plaintiffs seek to expand their claim beyond the three sufficiently pled

1  statements, any such theory would violate the PSLRA, Rule 9(b), and the generally applicable rule
2  prohibiting the introduction of unpled theories. And, whether pleaded or not, Plaintiffs' theory of
3  securities fraud may not encompass any litigation-related conduct, which falls within the protection of the
4  *Noerr-Pennington* doctrine and cannot serve as a basis for liability.
5      Plaintiffs have made clear their intent to expand their claim beyond what survived the Court's
6  motion to dismiss order. The Court should preclude them from doing so. And, because certain facts
7  regarding statements that the Court already dismissed may come into evidence for a proper purpose (such
8  as to establish the fact of the termination of the Merger Agreement), the Court should give a limiting
9  instruction to ensure the jury does not improperly consider such conduct as a basis for liability.

## BACKGROUND

### A.    The FAC Asserts a Section 10(b) Claim Based Only on Alleged Misstatements

The FAC asserts a single claim for violation of Section 10(b) and Rule 10(b)-5 alleging that Musk made or disseminated "false and misleading statements . . . designed to drive down the price of [Twitter]'s stock." FAC ¶¶ 10. Beginning on page 31, the FAC lists all of the alleged misconduct during the Class Period giving rise to the securities fraud claim—under the heading "False Statements During The Class Period." This section identified 18 separate "false statements," and includes the May 13, 2022 Tweets, the May 14, 2022 Tweet, the May 16, 2022 Statement at the All In Summit that "fake and spam accounts make up at least 20% of Twitter's users" and associated Tweets, the May 17, 2022 Tweets, the May 21, 2022 Tweets, and "Musk's False Statements Foreshadowing and Later Purporting to Terminate the Merger," encompassing letters sent between Musk's counsel and Twitter, the July 8, 2022 Termination Letter, and subsequent Termination Letters sent August 30 and September 9, 2022. FAC ¶¶ 111-48. Immediately thereafter, the FAC includes a catchall paragraph purporting to explain why "the statements referenced above were materially false and/or misleading." *Id.* ¶ 149. It identified no other misconduct alleged to violate the securities laws.

The FAC did not identify Rules 10(b)-5(a) or (c). Nonetheless, Plaintiffs have asserted they pleaded a "scheme liability" claim because they mentioned the term "scheme" 5 times in the 194 paragraph FAC and generally aver that Musk participated in one. But other than the 18 alleged misstatements, the

FAC does not identify any actions purportedly giving rise to any scheme. And when pleading scienter, the FAC alleges only that "Musk acted with scienter in that he knew that the public documents and statements issued or disseminated were materially false and misleading" and "had actual knowledge" or "acted with reckless disregard for the truth when he failed to ascertain and disclose the true facts in the statements made by him or his agents . . . the material omissions and/or the falsity of the material statements set forth above." FAC ¶¶ 189-90.

### B. The Court Dismisses Plaintiffs' Claim to the Extent Predicated on Statements other than the May 13 Tweet, May 16 Statement, and May 17 Tweet

In December 2023, the Court dismissed Plaintiffs' claim to the extent based on the May 14 Tweet, May 16 Tweet, May 21 Tweets, and correspondence with Twitter, including the July 8 Termination Letter, on the grounds that the FAC did not adequately plead the statements were false or misleading. MTD Order at 21-28. As to the Termination Letters, the Court held that "Plaintiffs do not identify how [their] legal assertion[s] [are] false or misleading" and concluded that it "is not convinced that Defendant's entry into a legal dispute with Twitter, and statements made in support thereof, 'create an impression of a state of affairs that differs in a material way from the one that actually exists.'" *Id.* at 27-28. As to Musk's information requests, the Court explained that Plaintiffs "generally allege that Defendant's motive in sending letters requesting data was to create uncertainty and the requests were a 'ruse,'" but that "Plaintiffs do not point to an objectively verifiable affirmative statement or misleading omission." *Id.* at 28.

The Court denied Musk's motion to dismiss as to the May 13 Tweets, May 16 statement, and May 17 Tweet, but "GRANT[ED] Defendant's motion with respect to Plaintiffs' claims to the extent they are predicated on all other challenged statements." MTD Order at 39. Plaintiffs did not amend.

### C. Plaintiffs' Belated Attempt to Revive Dismissed Claims as Part of a "Scheme"

Plaintiffs have indicated they will seek to revive several of the "other challenged statements" that the Court dismissed. For example, Plaintiffs instructed their loss causation and damages expert, Dr. Tabak, to calculate damages under Rule 10b-5(a) and (c) and "to consider not only the misrepresentations that survived the MTD Order, but also to consider Musk's July 8, 2022 termination letter." Ex. 16 (Tabak Rpt.) ¶ 13. Plaintiffs also identified in Interrogatory Responses thirty-one alleged "false statements"—including those previously dismissed by the Court—as evidence of Musk's purported scheme. Ex. 17 at

32-152 (Chart of responses to ROGs 6-12). And, after the close of discovery and only in response to a Court order granting Musk's Motion to Compel, Plaintiffs identified unpled conduct including breaching the Merger Agreement and "instigating the Delaware lawsuit and taking unsupported and changing positions in that case" as part of a fraudulent scheme. Ex. 18 at 24-26 (Supp. Rog Response 14).

## ARGUMENT

### I. THE COURT SHOULD PRECLUDE PLAINTIFFS FROM PREMISING LIABILITY ON DISMISSED STATEMENTS, UNPLED CONDUCT, OR PROTECTED ACTIVITY

The Court should preclude Plaintiffs from asserting as a basis for their securities fraud claim any statements or conduct other than the three alleged misstatements made on May 13, 16, and 17.

*First*, the Court should bar Plaintiffs from arguing that Musk may be found liable based—in whole or in part—on any dismissed statements. The Court dismissed Plaintiffs' claims "to the extent that they are predicated on all other challenged statements" except for the May 13 Tweet, May 16 statement, and May 17 Tweet. (MTD Order) at 39. That order binds the parties. Plaintiffs cannot evade the Court's prior ruling by characterizing the claims as part of a purported "scheme" instead of independent misrepresentations because there can be no "fraudulent scheme" absent underlying fraud: "[I]f a plaintiff's scheme liability claim is based on the same alleged set of facts as its misrepresentation claim, and the court finds that those facts do not sufficiently allege fraud (with the requisite scienter) to sustain the misrepresentation claim, the scheme liability claim necessarily fails." *In re AGS, Inc. Sec. Litig.*, 2024 WL 581124, at *5 (D. Nev. Feb. 12, 2024), *aff'd sub nom. Oklahoma Police Pension & Ret. Sys. v. PlayAGS, Inc.*, 2025 WL 927296 (9th Cir. Mar. 27, 2025).

The Court held that Plaintiffs did not sufficiently allege fraud to sustain a misrepresentation claim as to any of the other dismissed statements, so Plaintiffs cannot rely on those non-fraudulent statements as part of a scheme. *See In re AGS*, 2024 WL 581124, at *5; *Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 902 (N.D. Cal. 2022) (Breyer, J) ("PayPal correctly argues that this alleged scheme consists entirely of (and fails for the same reasons as) the misstatements analyzed above."); *In re Stem, Inc. Sec. Litig.*, 2025 WL 3675114, at *11 (N.D. Cal. Dec. 17, 2025) ("[B]y its August 30 Order, the Court dismissed plaintiffs' claim alleging scheme liability to the extent said claim was based on allegedly false or misleading statements, finding plaintiffs failed to plead any such statement violated section 10(b).").

Plainly, Plaintiffs cannot pursue at trial a "scheme liability" theory based on, or seek damages caused by, statements the Court held to be nonactionable. *See In re Palo Alto Networks*, 2025 WL 2410348, at *2.[1]

In this regard, *In re AGS, Inc.* is instructive. There, plaintiffs brought a single cause of action for violation of Section 10(b) and Rule 10b-5. 2024 WL 581124, at *4. Defendants moved to dismiss for failure to state a claim under Rule 10b-5(b), but not Rules 10b-5(a) and (c). The court dismissed the misrepresentation claim for failure to plead falsity or scienter, and plaintiffs argued that the action survived because defendants did not specifically attack their "scheme liability" theory. *Id.* The court held that the plaintiffs could not proceed under "either theory of liability," noting "[i]t is irrelevant whether lead plaintiff sufficiently alleged a scheme to 'manipulate the price of PlayAGS common stock' under the second element of scheme liability because the court has already found that it did not sufficiently allege a 'deceptive or manipulative act' under the *first* element." *Id.* at *5 (emphasis in original).

The same is true here. The Court dismissed "Plaintiffs' claims to the extent they are predicated on all other challenged statements." MTD Order at 39. That conclusion holds even if Plaintiffs contend that Musk engaged in a scheme to manipulate Twitter's stock through the dissemination of the dismissed statements because the Court already held that those statements were not deceptive acts. MTD Order at 28. For example, as to the July 8 Termination Letter, the Court ruled that "Defendant's entry into a legal dispute with Twitter, and statements made in support thereof" are not actionable in fraud. *Id.* As a result, Plaintiffs may not tell the jury they were defrauded by the same statement. *In re Illumina, Inc. Sec. Litig.*, 2025 WL 2739655, at *3-4 (S.D. Cal. Sept. 26, 2025) (dismissing scheme claim based on dismissed misrepresentations); *In re Eastman Kodak Co. Sec. Litig.*, 632 F. Supp. 3d 169, 190 (W.D.N.Y. 2022) (holding fact that "Plaintiffs have not sufficiently alleged that that any material false statements or omissions were made is also fatal to Plaintiffs' scheme liability claim.").

*Second*, Plaintiffs cannot premise their claim on anything other than the three statements because Plaintiffs may not rely on unpled theories or conduct. "All claims brought under Rule 10b-5 are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the [PSLRA]." *In*

---

[1] While the Ninth Circuit held in *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. 2021), that plaintiffs plausibly alleged that defendants made actionable misstatements and pleaded a "scheme liability" claim based on the dissemination of such misstatements, the court did not hold that plaintiffs could pursue a scheme liability claim arising from losses purportedly caused by nonfraudulent statements.

*re AGS*, 2024 WL 581124, at *4.  Yet, Plaintiffs have identified unpled statements and conduct as part of their claim, including that Musk asked for "unreasonable information … to claim a false breach of the agreement," had "his lawyers 'paper' a breach by falsely or unreasonably claiming that Twitter was refusing to provide information," and "instigat[ed] the Delaware lawsuit and taking unsupported and changing positions in that case."  Ex. 18 at 24-26.  They seek to present *thirty-one* statements—all but three unpled or dismissed—that they contend give rise to both their misrepresentation claim and a purported scheme (including unidentified statements from the All In Summit beyond the statement identified at FAC ¶ 120.  *See* Ex. 17 at 33-152.  To allow Plaintiffs to add statements without amending the FAC "would effectively dispense with the 'formidable' pleading requirements of the PSLRA."  *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050, at *18 (N.D. Cal. June 19, 2009).  Instead, a Plaintiff may not assert "unpled fraud theor[ies]."  *Id.*;  *In re Tesla, Inc. Sec. Litig.*, 2022 WL 17582008, at *9 (N.D. Cal. Dec. 7, 2022) (allowing unpled fraud theories at trial "would be an end-run around the PSLRA.").

Once again, Plaintiff cannot escape this rule through an assertion of scheme liability.  "Plaintiffs cannot remedy their failure to plead falsity or scienter by repackaging their claims as 'scheme liability' claims under SEC Rules 10b-5(a) and (c)."  *In re Palo Alto Networks, Inc. Sec. Litig.*, 2025 WL 2410348, at *2.  And, while a scheme liability claim may rest on conduct not duplicative of the dismissed misstatements, the "plaintiff must allege a transaction or other event the principal purpose and effect of which is to create [a] false appearance of fact."  *In re Stem*, 2025 WL 3675114, at *12 (N.D. Cal. Dec. 17, 2025) (internal quotation omitted).  For example,  Plaintiffs would have had to allege that Musk's requests for information were not "consistent with the defendants' normal course of business."  *Id.*  As to the events giving rise to the litigation, they would have had to allege more than wrongful termination because merely breaching a contract does not give rise to liability for securities fraud.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 691-92 (9th Cir. 2011).  Because Plaintiffs "do not allege any false or misleading conduct" under their new, unpled theory or "a strong inference of scienter" as to the fraudulent nature of the conduct, *Kang*, 620 F. Supp. 3d at 902, Plaintiffs may not now seek to hold Musk liable based on this unpled theory.

*Finally*, Plaintiffs should also be precluded from offering evidence or argument at trial that Musk should be held liable based upon conduct or statements arising from Musk's protected litigation conduct.

"[T]he *Noerr–Pennington* doctrine requires that, to the extent possible, [the Court] construe federal statutes so as to avoid burdens on activity arguably falling within the scope of the Petition Clause of the First Amendment," including "[p]relitigation communications." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). Such protection covers "reasonably based but unsuccessful lawsuits." *Id.* at 930 (discussing *BE & K Construction Co. v. NLRB*, 536 U.S. 516, 525 (2002)). Here, notwithstanding the Court's motion to dismiss order, Plaintiffs seek to hold Musk liable for protected litigation activity. *See supra* pp. 3-4. Indeed, Plaintiffs instructed their loss causation and damages expert "to consider not only the misrepresentations that survived the MTD Order, but also to consider Musk's July 8, 2022 termination letter." Ex. 16 ¶ 13. The law prohibits liability based on such protected conduct and the Court should preclude Plaintiff from offering evidence or argument on such theories for this reason as well.

## II.     THE COURT SHOULD GIVE A LIMITING INSTRUCTION

Because certain facts on which Plaintiffs improperly attempt to premise liability may be offered for some other, permissible purpose, the Court should give a limiting instruction to ensure the jury does not improperly consider such conduct as a basis for liability.

"When evidence is admissible for a limited purpose, the opponent is entitled to a limiting instruction admonishing the jury not to use the evidence for a forbidden purpose." *Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1017 (9th Cir. 2007) (reversing and remanding for new trial for failure to give limiting instruction); *see also* Fed. R. Evid. 105 (requiring court, upon request, to "restrict the evidence to its proper scope and instruct the jury accordingly"). Here, even though Plaintiffs may not seek to hold Musk liable based on any statement or conduct beyond three specific statements on May 13, 16, and 17, 2022, evidence related to the dismissed misstatements and unpled theories—such as the fact of a termination notice or litigation—potentially could be introduced for other purposes. In that instance, the Court should instruct the jury that it may not hold Musk liable based on such conduct or statements.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court limit Plaintiffs' claim to the May 13 Tweet, May 16 statement, and May 17 Tweet (FAC ¶¶ 111, 120, 125), and instruct the jury accordingly.

DATED: January 13, 2026    QUINN EMANUEL URQUHART & SULLIVAN, LLP

By      */s/ Stephen A. Broome*
    Alex Spiro
    Michael T. Lifrak
    Stephen A. Broome
    Ellyde R. Thompson
    Jesse A. Bernstein
    Alex Bergjans

*Attorneys for Defendant Elon Musk*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on Tuesday, January 13, 2026.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ Stephen A. Broome
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*

**ATTESTATION**

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories herein.

By  */s/ Stephen A. Broome*
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*