COTCHETT, PITRE & MCCARTHY, LLP
Joseph W. Cotchett (SBN 36324)
jcotchett@cpmlegal.com
Mark C. Molumphy (SBN 168009)
mmolumphy@cpmlegal.com
Tyson C. Redenbarger (SBN 294424)
tredenbarger@cpmlegal.com
Elle D. Lewis (SBN 238329)
elewis@cpmlegal.com
Gia Jung (SBN 340160)
gjung@cpmlegal.com
Caroline A. Yuen (SBN 354388)
cyuen@cpmlegal.com
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
fbottini@bottinilaw.com
Aaron P. Arnzen (SBN 218272)
aarnzen@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | Case No. 3:22-CV-05937-CRB<br><br>**PLAINTIFFS' MOTION *IN LIMINE* NO. 1 TO PRECLUDE EVIDENCE OF CERTAIN EXTRANEOUS LEGAL PROCEEDINGS UNDER FEDERAL RULES OF EVIDENCE 401 AND 403**<br><br><span style="color:red">(PUBLIC – REDACTED VERSION)</span><br>Date:       February 17, 2026<br>Time:       2:00 p.m.<br>Courtroom: 6, 17th Floor<br>Judge:      Hon. Charles R. Breyer |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on February 17, 2026, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Charles R. Breyer, United States District Judge, located at 450 Golden Gate Avenue, Courtroom 6, 17th Floor, San Francisco, California 94102, Lead Plaintiffs Nancy Price, John Garrett, and Brian Belgrave ("Plaintiffs") will and hereby do move the Court to exclude evidence of certain extraneous legal proceedings under FRE 401 and 403. This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, Declaration of Aaron P. Arnzen, and all other papers and proceedings in this action.

For the reasons stated in the Memorandum of Points and Authorities, Plaintiffs respectfully request that the Court grant the present motion.

Case No. 3:22-CV-05937-CRB

PLAINTIFFS' MOTION *IN LIMINE* NO. 1 TO PRECLUDE EVIDENCE OF CERTAIN EXTRANEOUS LEGAL PROCEEDINGS UNDER FRE 401 AND 403   i

## INTRODUCTION

Plaintiffs move to exclude evidence of certain extraneous legal proceedings involving Twitter as irrelevant and likely to cause confusion, mislead the jury, cause undue delay, and force unnecessary "trials within a trial."

Musk may seek to introduce evidence of a number of separate proceedings involving Twitter over the years. These include an FTC consent decree into which Twitter entered in 2011; private securities litigation against Twitter that was filed in 2017 and related derivative litigation; a whistleblower complaint concerning cybersecurity at Twitter that became public in August 2022 (months after Musk made his false statements and initiated his fraudulent scheme); and a case against Musk alleging that he aided and abetted the breach of fiduciary duties by two of Twitter's board members in connection with Musk's Twitter takeover. Those proceedings have little or no meaningful connection to this case. Nor were the factual allegations in those proceedings ever validated through contested hearings. Admitting evidence of the proceedings would undoubtedly confuse the jury, lengthen the proceedings, and create mini-trials within the trial. The Court should therefore exclude evidence of these proceedings under Rules of Evidence 401 and 403.

## STATEMENT OF FACTS

Before Musk's acquisition, Twitter was a large public company with over $5 billion in annual revenue and offices and employees distributed around the world. *See* Declaration of Aaron P. Arnzen ("Arnzen Decl."), ¶ 2, Ex. 1, at 21, 62 (excerpt of Twitter's SEC Form 10-K). Like most companies of such size and geographic reach, Twitter was involved in litigation and legal proceedings. *Id.* at 98-99. As discussed below, the litigation and legal proceedings subject to this motion do not meaningfully touch upon the questions the jury will decide here.

## LEGAL STANDARD

"Irrelevant evidence is not admissible." FRE 402. Likewise, relevant evidence may be excluded where "its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 403.

|   |   |
|---|---|
| 1 | These rules have been repeatedly applied to preclude a party from presenting evidence of |
| 2 | allegations and other legal proceedings where the underlying factual issues remain unresolved.  This |
| 3 | is because the introduction of such evidence would lead to a "trial within a trial" and raise several of |
| 4 | the concerns—*e.g.*, confusing the issues, misleading the jury, and undue delay—that Rule 403 seeks |
| 5 | to address.  See, *e.g.*, *Whitall v. Caballero*, 2025 WL 2323360, at *1 (N.D. Cal. Aug. 11, 2025) |
| 6 | (Breyer, J.) ("Any evidence from Lieutenant Mireles would have led to an unnecessary trial within a |
| 7 | trial as to whether there was sufficient evidence of excessive force to pass the complaint along to |
| 8 | OIA, a different question than whether Defendants actually used excessive force."); *see also United* |
| 9 | *States v. Singh*, 995 F.3d 1069, 1080-81 (9th Cir. 2021) (approving trial judge's evidentiary ruling |
| 10 | that constrained cross examination to the conduct at issue in trial: "We are not here to try Mr. Wadhwa |
| 11 | for a plot to murder another witness…[W]e are not trying the murder for hire case.  We are trying the |
| 12 | hawala money laundering case."); *United States v. Smith*, 741 F. App'x 525, 526 (9th Cir. 2018) |
| 13 | (defendant's rights "were not violated by the district court's decision not to allow Smith to question |
| 14 | Morales about a case having little relevance to Smith's case and which would have created a risk of |
| 15 | undue delay and a trial within a trial"); *Giganews, Inc. v. Perfect 10, Inc.,* 2019 WL 1422723 at *2 |
| 16 | (C.D. Cal. Mar. 13, 2019) ("The Court is not going to let this fraudulent transfer trial turn into an |
| 17 | extended course on the finer nuances of copyright law or a trial-within-a-trial about the related case |
| 18 | or an in-depth critique of the Court's orders. Such a discussion would not assist the trier of fact, would |
| 19 | cause confusion, would consume inordinate amounts of time, and would likely distract from the real |
| 20 | factual issue here …"). |
| 21 | **ARGUMENT** |
| 22 | The Court should preclude evidence and argument of the following litigation and legal |
| 23 | proceedings because they are irrelevant and would confuse the jury, lengthen the proceedings, and |
| 24 | create mini-trials within the trial. |
| 25 | **<u>2011 FTC Consent Decree</u>.**  On March 2, 2011, the FTC alleged that lapses in Twitter's data |
| 26 | security allowed hackers to obtain unauthorized administrative control of Twitter on two occasions. |
| 27 | Arnzen Decl, ¶ 3, Ex. 2 (FTC complaint).  On March 11, 2011, the FTC announced that it had entered |
| 28 |   |

1  into a settlement agreement with Twitter surrounding these allegations. Arnzen Decl, ¶ 4, Ex. 3 (FTC press release). The agreement barred Twitter from misleading consumers for 20 years about "the extent to which it protects the security, privacy, and confidentiality of nonpublic consumer information," and obligated Twitter to "establish and maintain a comprehensive information security program." *Id.*

There is no evidence that this 2011 consent decree, or Twitter's underlying conduct at issue there—which took place from 2006-2009—has any connection with fake or spam accounts on Twitter's platform, Musk's May 2022 misstatements, his rights under the 2022 merger agreement, the number of bots on Twitter, or whether Musk engaged in a scheme to defraud Twitter's investors from May through October 2022. Indeed, the allegations concern conduct that allegedly took place well over a decade before Musk began his fraudulent conduct at issue here. Admitting evidence of the FTC complaint and/or consent decree would thus create a sideshow that has no bearing on the issues upon which the jury will decide. Such evidence should be excluded under Rules 401 and 403.

**Twitter Securities and Derivative Litigation**. A securities class action was filed against Twitter and certain of its executives and board members in 2016, and an amended complaint was filed in March 2017. Arnzen Decl., ¶ 5, Ex. 4 (class action complaint). The complaint alleged that Twitter failed to disclose challenges the company faced in growing its user base, and instead reported metrics—"MAU" (monthly active users) and "timeline views"—which did not clearly disclose lower-than-anticipated growth rates. *Id.* at ¶ 3. The complaint also included limited, ambiguous allegations about "robot" accounts. *E.g.*, *id.* at ¶ 89(f). The term "mDAU"—a key metric Twitter adopted sometime *after* the Twitter Securities Litigation settlement and which is arguably at issue in this case—does not appear in the complaint in that case. The case was headed for trial and, even through settlement, Twitter and the individual defendants continued to dispute the validity of the allegations. Arnzen Decl., ¶ 6, Ex. 5 at 1-2 (stipulation of settlement). A related derivative case, *Verma v. Costolo*, Del. Ch. Case No. 2019-0509-PAF, was also settled at the same time, and likewise did not touch upon MDAU. *Id.*, ¶ 10, Ex. 9.

**Peiter Zatko Cybersecurity Allegations.** Twitter's former CEO, Jack Dorsey, hired Peiter

1  Zatko to help improve the company's cybersecurity environment in November 2020.  Arnzen Decl.,
2  ¶ 7, Ex. 6 at 1 (Zatko initial statement to U.S. Senate).  However, Zatko had personal conflicts with
3  his team and was terminated in January 2022 due to "███████████████████████."  Arnzen
4  Decl., ¶ 8, Ex. 7 at 34:13-16 (Parag Agrawal deposition excerpt).  ████████████████████
5  ████████████████████████.  *Id.* at 116:2-6.  After being terminated and receiving his
6  settlement, Zatko made whistleblower allegations against Twitter and gave related testimony before
7  the Senate Judiciary Committee on September 13, 2022.  Arnzen Decl., ¶ 7, Ex. 6 at 1.  Zatko made
8  a number of unsubstantiated allegations, including an assertion that Twitter had been penetrated by
9  foreign intelligence agencies, that Twitter lacked certain safety features, was not incentivized to
10 reduce spam and that Twitter should, in his opinion, be calculating and publishing the percentage of
11 total active accounts that are bots.  *Id.*  What Twitter actually published, in contrast, was the percent
12 of bots that are in its mDAU (monetizable Daily Active Users) metric, which is a subset of all active
13 users.  Arnzen Decl., ¶ 2, Ex. 1, at 5.  From the beginning, Twitter has denied Zatko's sensationalistic
14 allegations.

15       Musk has made no showing that Zatko had any role in calculating mDAU, bots, or that he had
16 any detailed or reliable knowledge about those calculations.  Resolving the (in)accuracy of Zatko's
17 allegations, which came to light in August 2022, in the middle of a trial about whether Musk made
18 misstatements and began his scheme to defraud investors in May 2022, would create a classic trial
19 within a trial.  Also, given the timing of Musk's statements, Musk cannot show that he was aware, in
20 May 2022, of information in Zatko's complaint when he announced that the deal was "on hold" and
21 spam and fake accounts constitute at least 20% of Twitter's mDAU.  Indeed, while Alex Spiro and
22 Musk's hyper-aggressive deal attorneys tried to leverage Zatko's allegations in the Delaware
23 Litigation, even they did not assert that the allegations implicated the number of fake or spam accounts
24 on Twitter.  Arnzen Decl., ¶ 9, Ex. 8 at 2.  Evidence surrounding Zatko's allegations should therefore
25 be excluded under Rules 401 and 403.

26       **Heresniak v. Musk, et al.**  In 2022, an action was filed by a Twitter shareholder asserting
27 three causes of action: (1) against Musk for aiding and abetting the violations of corporate fiduciary
28

duties by two of Twitter's directors (Jack Dorsey and Egon Durban), (2) declaratory and injunctive relief regarding Musk's rights under the merger agreement, and (3) against Musk for unjust enrichment. *See Heresniak v. Musk, et al.*, N.D. Cal. Case No. 22CV3074-CRB ("*Heresniak*"), ECF 66. All of these claims stemmed from Musk and Twitter's negotiation and execution of the merger agreement, and whether the Twitter board sufficiently vetted Musk's offer and compared it to the company's other strategic options. *Id.* Mr. Heresniak was represented by the same law firms representing the class here. *Id.*

Before any discovery was produced (except for initial disclosures), the Court granted defendants' motion to dismiss the *Heresniak* case due to lack of standing and failure to state a claim. *Heresniak*, at ECF 82. As such, there were no evidentiary proceedings, and the accuracy of the complaint's factual allegations were not tested or resolved in any meaningful way. While Musk has made confusing arguments that the *Heresniak* complaint is relevant here in order to obtain discovery, his effort failed when Magistrate Judge Ryu denied Defendant's motion to compel discovery from Mr. Heresniak's attorneys. ECF 182.

Introduction of evidence surrounding the *Heresniak* matter in the forthcoming trial would create a trial within a trial and add little or nothing to the voluminous body of evidence that will already be presented on the issues that will actually matter to the jury's factual determinations. Such evidence should be excluded under Rules 401 and 403.

## CONCLUSION

For the reasons set forth above, the Court should grant Plaintiffs' present motion.

Dated: January 13, 2026               Respectfully submitted,

**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
Tyson C. Redenbarger (SBN 294424)
Elle D. Lewis (SBN 238329)
Gia Jung (SBN 340160)
Caroline A. Yuen (SBN 354388)

*/s/ Tyson C. Redenbarger*
Tyson C. Redenbarger

|   |   |
|---|---|
| 1 | San Francisco Airport Office Center |
| 2 | 840 Malcolm Road, Suite 200 |
|   | Burlingame, California 94010 |
| 3 | Telephone: (650) 697-6000 |

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
Aaron P. Arnzen (SBN 218272)

*/s/ Aaron P. Arnzen*
Aaron P. Arnzen

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Tyson C. Redenbarger, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13th day of January, 2026, at Burlingame, California.

*/s/ Tyson C. Redenbarger*
Tyson C. Redenbarger