COTCHETT, PITRE & MCCARTHY, LLP
Joseph W. Cotchett (SBN 36324)
jcotchett@cpmlegal.com
Mark C. Molumphy (SBN 168009)
mmolumphy@cpmlegal.com
Tyson C. Redenbarger (SBN 294424)
tredenbarger@cpmlegal.com
Elle D. Lewis (SBN 238329)
elewis@cpmlegal.com
Gia Jung (SBN 340160)
gjung@cpmlegal.com
Caroline A. Yuen (SBN 354388)
cyuen@cpmlegal.com
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
fbottini@bottinilaw.com
Aaron P. Arnzen (SBN 218272)
aarnzen@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | Case No. 3:22-CV-05937-CRB<br><br>**PLAINTIFFS' MOTION *IN LIMINE* NO. 4 TO PRECLUDE OPINION, TESTIMONY, EVIDENCE, AND ARGUMENT CONCERNING FAKE OR SPAM ACCOUNT ESTIMATES**<br><br>(PUBLIC – REDACTED VERSION)<br>Date:        February 17, 2026<br>Time:       2:00 p.m.<br>Courtroom: 6, 17th Floor<br>Judge:      Hon. Charles R. Breyer |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on February 17, 2026, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Charles R. Breyer, United States District Judge, located at 450 Golden Gate Avenue, Courtroom 6, 17th Floor, San Francisco, California 94102, Lead Plaintiffs Nancy Price, John Garrett, and Brian Belgrave ("Plaintiffs") will and hereby do move the Court to preclude Musk from introducing opinion, testimony, evidence, or argument concerning fake or spam account analysis performed after May 17, 2022, and/or opinion, testimony, evidence, and argument of the number of fake or spam accounts not produced in this action.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Tyson Redenbarger filed herewith, and all other papers and proceedings in this action.

For the reasons stated in the Memorandum of Points and Authorities, Plaintiffs respectfully request that the Court grant the present motion.

# INTRODUCTION

Plaintiffs move to preclude Defendant Elon Musk from introducing at trial any expert opinion, testimony, evidence, and argument estimating the number of fake or spam accounts on the Twitter platform ("Fake Account Estimates") or otherwise opining on the quality of Twitter's methodology or estimates of fake accounts ("Twitter's Methodology and Estimates").

Neither party disclosed any experts in this case who will opine on Fake Account Estimates, and therefore neither Plaintiffs nor the Court has had the opportunity to scrutinize any expert testimony relating to Fake Account Estimates. Yet Musk has made it clear he will attempt to introduce testimony and evidence at trial, which is nothing more than undisclosed expert opinions on the topic, including that of Emilio Ferrara, who Musk hired and designated as an expert in the Delaware litigation but not this case. The Court should exclude Musk's third-party Fake Account Estimates on this basis alone pursuant to FRCP 26(a)(2)(A). Musk will also attempt to have lay witnesses, such as his hired data scientists (Cyabra, Counteraction, and Halo), testify to issues requiring specialized knowledge and skill, not their own personal observation. Because they have not been designated as experts, and their anticipated testimony goes far beyond any percipient knowledge, such lay "opinion" testimony should be excluded under FRE 701.

Moreover, any Fake Account Estimates that post-date May 17 have no probative value as to the basis for Musk's false statements or Musk's state of mind *at the time* he made his misleading statements on May 13, 16, and 17. Finally, to the extent that Fake Account Estimates are used for the truth of the matter asserted (*i.e.*, the number of fake accounts on Twitter), it should be excluded as hearsay. Accordingly, any Fake Account Estimates opinion, testimony, evidence, and argument would be improper expert opinion and/or not be probative, and/or hearsay, and should be precluded.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege that Defendant Elon Musk committed securities fraud by making false statements and omissions and engaging in a fraudulent scheme in connection with his acquisition of Twitter in 2022. During the Class Period, Musk made several public statements—including on May 13, 16, and 17—concerning the percentage of fake or spam accounts on Twitter's platform. *See*

1  ECF 31 at ¶¶ 120-127.  Plaintiffs argue that these statements were false and made knowingly or at
2  least recklessly.  In addition, in furtherance of a fraudulent scheme, Musk used the number of fake
3  accounts on Twitter as a pretext for attempting to negotiate a better price and/or get out of the deal.
4       Musk is likely to argue that his statements and conduct were not misleading or deceptive
5  and/or were not made with the requisite intent, in part, by seeking to introduce backdoor ***expert***
6  evidence of Fake Account Estimates without designating any witness as an appropriate expert.
7  Indeed, Musk has identified at least four ***lay*** witnesses who were retained by Musk and will testify
8  as to the prevalence of fake or spam accounts on Twitter's platform.  Redenbarger Declaration
9  ("Redenbarger Decl.") ¶ 8.  However, Musk did not identify any experts to opine on Fake Account
10 Estimates before the March 28, 2025, expert disclosure deadline—or, for that matter, at any time in
11 this case—under Rule 26(a)(1).  Nevertheless, Musk is likely to engage in post-hoc justification of
12 his May 13, 16, and 17 statements by relying on Fake Account Estimates made by his experts, which
13 he hired *after* May 17, 2022.  Any scientific estimate, report, or opinion concerning Fake Account
14 Estimates is, therefore, improper expert testimony and should be excluded for the reasons below.
15 These undisclosed experts are also likely to opine on Twitter's Methodology and Estimates in an
16 attempt to legitimize Musk's basis for terminating the Twitter deal and confuse the issues that the
17 jury should determine. Such testimony would also be improper and should be excluded for the
18 reasons below.

## LEGAL STANDARD

20      Under Rule 37(c) of Federal Rules of Civil Procedure ("FRCP"), "[i]f a party fails to provide
21 information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that
22 information or witness to supply evidence . . . at a trial, unless the failure was substantially justified
23 or is harmless."  The court may also impose other sanctions enumerated in FRCP 37(b)(2)(A) and
24 inform the jury of the party's failure.  FRCP 37(c)(1).
25      FRCP 26(a)(2)(A) also requires a litigant to disclose the identity of every witness from whom
26 the party intends to offer expert opinion testimony under Federal Rule of Evidence Rule ("FRE")
27 702 and produce an expert witness report containing the detailed information specified in FRCP
28

26(a)(2)(B). Absent the failure to disclose being substantially justified or harmless, "[t]he exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1)." *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.,* 388 F.3d 976, 983 (6th Cir. 2004); *United Nat. Maint., Inc. v. San Diego Convention Ctr. Corp.*, 2011 WL 672799, at *2 (S.D. Cal. Feb. 18, 2011) ("As amended in 1993, this rule provides for automatic exclusion of expert information that was not disclosed despite the existence of an independent duty to disclose under Rule 26(a) and 26(e)(1).").

A lay witness may provide opinion testimony only if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) **not based on scientific, technical, or other specialized knowledge within the scope of Rule 702**." FRE 701 (emphasis added). Furthermore, any expert opinion or testimony from lay witnesses must be precluded as improper expert testimony. *Id.* 701, 702.

Additionally, "irrelevant evidence is not admissible." *Id.* 402. The Court may also exclude relevant evidence if its probative value is "substantially outweighed" by a danger of unfair prejudice, confusion, or waste of time. *Id.* 403.

## ARGUMENT

### A. Musk's Failure to Disclose Any Expert Witness to Estimate Fake Accounts or Opine on Twitter's Methodology and Estimates Precludes Introducing Such Evidence Under FRE 701 and 702

Musk has not identified any expert in this litigation to analyze or determine Fake Account Estimates or opine on Twitter's Methodology and Estimates. Yet, Musk will attempt to introduce evidence to do exactly that. Musk's failure to disclose such an expert is neither substantially justified nor harmless. Therefore, Musk should be precluded from introducing any expert opinion, evidence, argument or testimony of Fake Account Estimates and any opinions on Twitter's Methodology or its Estimates. There are multiple ways in which Musk might seek to introduce such evidence, each of which is improper.

Musk will seek to introduce the expert report and testimony of Emilio Ferrara, who Musk did not identify as an expert in this case but who was hired as Musk's expert in the Delaware litigation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████

3 ████████████████████████████   Redenbarger Decl. Exhibit ("Ex.") 2.  Despite not designating

4 Ferrara as an expert in this case, Musk has included Ferrara on his pre-trial witness list and Ferrara's

5 Delaware expert report on his pre-trial exhibits list.  Decl. at ¶8.  If permitted, Ferrara's testimony

6 and his report are likely to be used for two purposes: ████████████████████████████

7 ████████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████████

9 ██████   Indeed, Musk relied on Ferrara's findings in his responses to Plaintiffs' interrogatories.

10 *See* Ex. 3 ████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████

12 ████████████████████████████.  Having failed to designate Ferrara as an expert in this

13 litigation, Musk has evaded his expert disclosure obligations and is attempting to shield Ferrara from

14 *Daubert* review.  Musk should, therefore, be precluded from relying on or otherwise offering

15 Ferrara's expert opinions in this case under FRE 701 and 702.  *Pope v. S. Pac. Transportation Co*.,

16 14 F. App'x 798, 799 (9th Cir. 2001) ("the District Court properly excluded the testimony as

17 undisclosed expert testimony.").

18    In a similar vein, Musk should be precluded from introducing evidence or testimony

19 regarding Fake Account Estimates by an online outfit named Sparktoro, as he did in his Motion for

20 Summary Judgment, and as he will attempt to do at trial.  ECF 255 at 13-14; *see* Decl. ¶ 8.  Neither

21 Sparktoro nor its principals have been identified as experts in this case for any purpose, let alone for

22 offering Fake Account Estimates or analyzing Twitter's Methodology and Estimates.  Similarly,

23 Musk's pre-trial disclosures indicate he will seek to introduce estimations performed by his hired

24 data scientists (Cyabra, Counteraction, and Halo), ████████████████████████

25 ████████████████████████████   Ex. 4-6.  Thus, this evidence and testimony should be

26 excluded under FRCP 26(a)(2)(A), FRE 701 and 702,  because such persons were never designated

27 or disclosed as experts by Musk.

28

1    In addition, the anticipated evidence from Sparktoro and Cyabra/Counteraction/Halo should also be excluded under FRE 701. These data scientists allegedly made ***specialized and technical*** Fake Account Estimates in connection with the Delaware Litigation. Thus, like Ferrara, they are likely to offer testimony supporting alternative Fake Account Estimates and criticizing or otherwise opining on Twitter' Methodology and Estimates. Yet, because Musk has not designated these firms or their scientists as experts, Musk will apparently attempt to use these firms and their reports on the basis that they are just lay opinions. However, Musk himself describes these firms as ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ in his responses to interrogatories. *See* Ex. 3 (emphasis added). Any witness testimony as to Fake Account Estimates or opinions as to Twitter's Methodology by Musk's expert data scientists is necessarily based on "scientific, technical, or other specialized knowledge within the scope of Rule 702" and thus must be excluded under FRE 701.

    These witnesses' opinion testimony could only be allowed under FRE 701 if it was based on the witnesses' own perception, is helpful to understand the witness's testimony or determine a fact in issue, and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FRE 701. This is clearly not the case, and thus FRE 701 precludes the testimony. *See United States v. Figueroa-Lopez*, 125 F.3d 1241, 1244-45 (9th Cir. 1997) (excluding disguised expert testimony pursuant to FRE 701); *Humboldt Baykeeper v. Union Pac. R. Co.*, 2010 WL 2179900 at *1 (N.D. Cal. May 27, 2010) (granting motion in limine to exclude undesignated experts, stating that the purpose of FRE 701's limitation is "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.").

    Moreover, since Musk retained Cyabra/Counteraction/Halo *after* he made his allegedly false statements, their Fake Account Estimates could not have been a basis for Musk's May 13, 16, or 17 statements. The testimony thus would be irrelevant under FRE 402.

    Additionally, Musk might try to improperly offer an opinion through his own testimony. During his deposition, Musk testified that after acquiring Twitter, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 1 at 338:15-22. This would

1  also be disguised expert opinion evidence.  Indeed, in the Delaware Litigation, Musk designated an
2  expert on this very issue—something he obviously did not do here.  Moreover, there has been no
3  showing that Musk himself is an expert in Twitter's data or network science under FRCP 26(a)(2)'s
4  requirements, or that his opinions are rationally based on his own perception as FRE 701 requires
5  for non-expert witnesses.  Ex. 1 at 338:23-340:5 (███████████████████████████████████
6  █████).  Additionally, Musk has not produced any documents supporting this unsupported opinion.
7  Under these circumstances, Musk should be precluded from offering any opinion testimony
8  regarding Fake Account Estimates.  *See e.g. Venture Corp. Ltd. v. Barrett*, 2015 WL 2088999, at *3
9  (N.D. Cal. May 5, 2015), aff'd sub nom. *Venture Corp., Ltd v. Barrett*, 694 F. App'x 597 (9th Cir.
10  2017) (granting motion in limine to preclude defendant offering improper opinion testimony);
11  *Houghtailing v. Crown Equip. Corp.*, 2014 WL 12641993 at *1 (N.D. Cal. Nov. 18, 2014) (granting
12  motion *in limine* to exclude "any 'expert' testimony by lay witnesses."); *Vincent v. Reyes,* 2021 WL
13  4262289 at *1 (N.D. Cal. Sep. 20, 2021) (granting in part motion *in limine* to exclude lay party
14  rendering expert medical opinion as to the medical cause of his injuries).

15  **B.   Unsupported Fake Account Estimates Should Also Be Excluded Under Rule 403**

16  Unsupported Fake Account Estimates should also be excluded under Rule 403 because the
17  probative value of Fake Account Estimates—particularly those estimates that post-date May 17—is
18  outweighed by the risk of confusion and waste of time.  FRE 403.  The relevant inquiries in this case
19  are whether Musk's statements were false or misleading, whether he had a reasonable basis at the
20  time for making his statements, and whether he engaged in a scheme to defraud.  By contrast, neither
21  the accuracy of Musk's unsubstantiated third-party Fake Account Estimates or the quality of
22  Twitter's Methodology and Estimates are issues that the jury will need to decide.  To permit
23  otherwise would leave the jury faced with multiple, unsupported third-party Fake Account Estimates
24  and differing methodologies, which in turn would require the parties to delve into the underlying
25  technical methodology to effectively rebut and/or untangle the evidence where no relevant expert
26  has been designated nor any reports provided.  This irrelevant inquiry could result in hours of
27  irrelevant testimony, leading to a mini-trial centered around Fake Account Estimates and Twitter's
28

Methodology and Estimates, which is not an issue in this case. This evidence and testimony should be excluded. *See e.g. Head v. Costco Wholesale Corp.,* 2025 WL 3063318, at *3 (N.D. Cal. Nov. 3, 2025) (excluding evidence under Rule 403 where there is "the danger of mini trials that would waste time and confuse the jury."); *In re Roundup Prods. Liab. Litgation*, 2019 WL 1371806, at *1 (N.D. Cal. Feb. 18, 2019), aff'd sub nom. *Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021) (restricting discussion of a classification of compounds by their carcinogenic nature under Rule 403 where the classification itself did not go to a "primary inquiry" of the trial).

### C. Fake Account Estimates are Inadmissible Hearsay

In addition to the above, any attempt by Musk to admit Fake Account Estimates—whether it be through his undesignated Delaware litigation expert, his hired data scientists, online third-party estimates, or his own testimony—for the truth of establishing the number of fake accounts would run headfirst into hearsay issues. Musk should be precluded from introducing Fake Account Estimates for this reason alone.

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion *in limine* should be granted, and Musk should be precluded from introducing improper evidence, testimony, or opinion concerning the estimation of the number of fake accounts on Twitter.

Dated: January 13, 2026

Respectfully submitted,

**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
Tyson C. Redenbarger (SBN 294424)
Elle D. Lewis (SBN 238329)
Gia Jung (SBN 340160)
Caroline A. Yuen (SBN 354388)

*/s/ Tyson C. Redenbarger*
Tyson C. Redenbarger

San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
Aaron P. Arnzen (SBN 218272)

*/s/ Aaron P. Arnzen*
Aaron P. Arnzen

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Tyson C. Redenbarger, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13th day of January, 2026, at Burlingame, California.

*/s/ Tyson C. Redenbarger*
Tyson C. Redenbarger