COTCHETT, PITRE & MCCARTHY, LLP
Joseph W. Cotchett (SBN 36324)
jcotchett@cpmlegal.com
Mark C. Molumphy (SBN 168009)
mmolumphy@cpmlegal.com
Tyson C. Redenbarger (SBN 294424)
tredenbarger@cpmlegal.com
Elle D. Lewis (SBN 238329)
elewis@cpmlegal.com
Gia Jung (SBN 340160)
gjung@cpmlegal.com
Caroline A. Yuen (SBN 354388)
cyuen@cpmlegal.com
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN: 175783)
fbottini@bottinilaw.com
Aaron P. Arnzen (SBN 218272)
aarnzen@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for the Plaintiffs and the Class*

QUINN EMANUEL URQUHART & SULLIVAN,
LLP
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Ellyde R. Thompson (*pro hac vice*)
ellydethompson@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
jessebernstein@quinnemanuel.com
295 Fifth Avenue
New York, NY 10010
Telephone:  (212) 849-7000
Facsimile:   (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

*Counsel for Defendant Elon Musk*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**PARTIES' JOINT [PROPOSED] JURY INSTRUCTIONS**<br><br>Date:        February 17, 2026<br>Time:        2:00 p.m.<br>Courtroom:  6, 17th Floor<br>Judge:       Honorable Charles R. Breyer |

# TABLE OF CONTENTS

**Pages**

Stipulated Ninth Circuit Manual of Model Civil Jury Instructions ............................................. 1

Stipulated Instruction Re Claims and Defenses ......................................................... 3

Disputed Jury Instruction No. 1 Re Duty of Jury ...................................................... 4

Disputed Jury Instruction No. 2 Re What Is Not Evidence ....................................... 6

Disputed Jury Instruction No. 3 Re Burden of Proof ................................................ 7

Disputed Jury Instruction No. 4 Re Securities—Purpose and Selected Definitions ............... 8

Disputed Jury Instruction No. 5 Re Securities—Rule 10b-5 Claims ........................ 12

Disputed Jury Instruction No. 6 Re Securities—Misrepresentations or Omissions—Materiality ........ 16

Disputed Jury Instruction No. 7 Re Opinions Inactionable ..................................... 20

Disputed Jury Instruction No. 8 Re Securities—Knowingly or Recklessly ............... 23

Disputed Jury Instruction No. 9 Re Securities—Justifiable Reliance—Fraud-on-the-Market Case ..... 25

Disputed Jury Instruction No. 10 Re Securities—Causation .................................... 28

Disputed Jury Instruction No. 11 Re Protected Litigation Conduct .......................... 31

Disputed Jury Instruction No. 12 Re Securities—Damages...................................... 33

Disputed Jury Instruction No. 13 Re Willful Suppression of Evidence ..................... 36

**<u>Stipulated Ninth Circuit Manual of Model Civil Jury Instructions</u>**

Per the Court's Guidelines, the below lists cite to the form preliminary, general, and concluding instructions that the Parties have stipulated to as they appear in the Model. ECF 195.


<u>Stipulated Preliminary Instructions</u>

➢ 1.3 Duty of Jury

➢ 1.6 Burden of Proof—Preponderance of the Evidence

➢ 1.9 What is Evidence

➢ 1.10 What Is Not Evidence

➢ 1.11 Evidence for Limited Purpose

➢ 1.12 Direct and Circumstantial Evidence

➢ 1.13 Ruling on Objections

➢ 1.14 Credibility of Witnesses

➢ 1.15 Conduct of the Jury

➢ 1.16 Publicity During Trial

➢ 1.17 No Transcript Available to Jury

➢ 1.18 Taking Notes

➢ 1.19 Questions to Witnesses by Jurors (*Option 1*)

➢ 1.20 Bench Conferences and Recesses

➢ 1.21 Outline of Trial

➢ 2.4 Deposition in Lieu of Live Testimony

➢ 2.13 [Expert] Opinion Testimony

➢ 2.15 Charts and Summaries Received in Evidence

➢ 2.2 Stipulations of Fact


<u>Stipulated Cautionary Instructions</u>

➢ 2.0 Cautionary Instructions

<u>Stipulated As-Needed Instructions</u>

The following instructions are stipulated by the Parties as to language but whether they should be given should be determined on a case-by-case basis and both Parties reserve the right to object to their ultimate inclusion.

- ➢ [2.1 Stipulated Testimony]
- ➢ [2.3 Judicial Notice]
- ➢ [2.9 Impeachment Evidence—Witness]
- ➢ [2.11 Use of Interrogatories]
- ➢ [2.12 Use of Requests for Admission]
- ➢ [2.14 Charts and Summaries Not Received in Evidence]
- ➢ [2.16 Evidence in Electronic Format]

<u>Stipulated Concluding Instructions</u>

- ➢ 3.1 Duty to Deliberate
- ➢ 3.2 Consideration of Evidence—Conduct of the Jury
- ➢ 3.3 Communication With Court
- ➢ 3.4 Readback or Playback
- ➢ 3.5 Return of Verdict
- ➢ 3.9 Post-Discharge Instruction

<u>**STIPULATED PRELIMINARY JURY INSTRUCTION**</u>

Below is a stipulated instruction with modifications from Model Instruction 1.5 highlighted in yellow.

**Stipulated Instruction Re Claims and Defenses**

To help you follow the evidence, I will give you a brief summary of the parties and the positions of the parties:

The parties that bring a lawsuit are called the plaintiffs.  This case is a "class action." A class action is a lawsuit that has been brought by one or more plaintiffs called "Class Representatives" on behalf of a larger group of people who have similar legal claims.  All of these people together are called a "class."  The Class Representatives in this case are Nancy Price, John Garrett, and Brian Belgrave.  Ms. Price, Mr. Garrett, and Mr. Belgrave, as the Class Representatives, represent a class of investors who sold Twitter securities during the period May 13, 2022 through October 4, 2022, which is referred to as the "Class Period."  Unless I distinguish them, I will refer to the Class Representatives and the class collectively as the "Plaintiffs."

The party against whom the lawsuit is brought is called the defendant.  In this case, the defendant is Elon Musk.

In this case, the Plaintiffs assert that Defendant Elon Musk violated Section 10(b) of the Securities and Exchange Act of 1934 in connection with his purchase of Twitter in 2022.

The plaintiffs have the burden of proving these claims.

The defendant denies these claims.

Source: Ninth Circuit Model Civil Jury Instruction 1.5; Judicial Council of California Civil Jury Instructions (2025 edition) No. 115, "Class Action" Defined (Plaintiff Class).

## <u>DISPUTED CLOSING JURY INSTRUCTIONS</u>[1]

Below are Parties' Disputed Jury Instructions.  Plaintiffs' modifications to the model instructions are ==highlighted==.  Defendant's modifications to the model instructions are <u>underlined</u>.

**Disputed Jury Instruction No. 1 Re Duty of Jury**

**<u>Offered by Defendant</u>**

Members of the Jury: <u>Now that you have heard all of the evidence</u>, it is my duty to instruct you on the law that applies to this case.

<u>A copy of these instructions will be sent to the jury room for you to consult during your deliberations.</u>

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

Source: Ninth Circuit Model Civil Jury Instruction 1.2.

---

[1]   Defendant reserves the right to alter his requested jury instructions based on the evidence Plaintiffs present, including the theory of liability Plaintiffs pursue at trial.

**Disputed Jury Instruction No. 1 Re Duty of Jury**

**Plaintiffs Assert No Such Instruction Should Be Given**

Plaintiffs do not offer a counter version to Defendant's Closing Instruction re Duty of the Jury.  Model Instruction 1.2 is a preliminary instruction and Plaintiffs have no objection to it being given once and at the inception of the case, as contemplated by the Model Instructions. The model closing instructions that the Parties have stipulated to sufficiently guide the jury as to their duty to deliberate and consider the evidence.  *See* Ninth Circuit Model Civil Jury Instructions 3.1, 3.2.

**Disputed Jury Instruction No. 2 Re What Is Not Evidence**

**<u>Offered by Defendant</u>**

Ninth Circuit Model Civil Jury Instruction 1.10.

**Disputed Jury Instruction No. 2 Re What Is Not Evidence**

**<u>Plaintiffs Assert No Such Instruction Should Be Given</u>**

Plaintiffs do not offer a counter version to Defendant's Closing Instruction re What Is Not Evidence.  Model Instruction 1.10 is a preliminary instruction and Plaintiffs have no objection to it being given once and at the inception of the case, as stipulated and as contemplated by the Model Instructions.  The model closing instructions that the Parties have stipulated to sufficiently guide the jury as to their duty to deliberate and consider the evidence. *See* Ninth Circuit Model Civil Jury Instructions 3.1, 3.2.

**Disputed Jury Instruction No. 3 Re Burden of Proof**

**<u>Offered by Defendant</u>**

Ninth Circuit Model Civil Jury Instruction 1.6.

**Disputed Jury Instruction No. 3 Re Burden of Proof**

**<u>Plaintiffs Assert No Such Instruction Should Be Given</u>**

Plaintiffs do not offer a counter version to Defendant's Closing Instruction re Burden of Proof. Model Instruction 1.6 is a preliminary instruction and Plaintiffs have no objection to it being given once and at the inception of the case, as stipulated and as contemplated by the Model Instructions. The model closing instructions that the Parties have stipulated to sufficiently guide the jury as to their duty to deliberate and consider the evidence. *See* Ninth Circuit Model Civil Jury Instructions 3.1, 3.2.

1  **Disputed Jury Instruction No. 4 Re Securities—Purpose and Selected Definitions**

2  **Offered by Plaintiffs**

3      Congress enacted the securities laws to protect the integrity of financial markets. The

4  plaintiffs claim to have suffered a loss caused by defendant's violation of certain of these laws.

5      There are terms concerning securities laws that have a specific legal meaning.  The following

6  definitions apply throughout these instructions, unless noted otherwise.

7      A security is an investment of money in a commercial, financial, or other business enterprise,

8  with the expectation of profit or other gain produced by the efforts of others.  Some common types of

9  securities are stocks and options.

10      The buying and selling of securities are controlled by the Securities Laws.  Many of these

11  laws are administered by the United States Securities and Exchange Commission (SEC).

12      A "10b-5 Claim" is a claim brought under a federal statute, Section 10(b) of the Securities

13  Exchange Act of 1934, which prohibits acts of manipulation or deception in connection with the

14  purchase or sale of a security and in violation of rules and regulations that the SEC has the duty and

15  power to issue.  A corresponding SEC Rule, Rule 10b-5, prohibits any act, practice, or scheme to

16  defraud, the misrepresentation of material facts, and the omission of material facts in connection with

17  the purchase or sale of securities. A person or business entity who violates the securities laws,

18  including Rule 10b-5, may be liable for damages caused by the violation.

19      An act, practice or scheme to defraud is any conduct intended to mislead investors, including

20  by artificially affecting market activity.

21      A misrepresentation is a statement of material fact that is false or misleading when it is made.

22  A statement may be misleading even if it is literally true if the context in which the statement was

23  made caused the listener or reader to remain unaware of the actual state of affairs.  A statement is

24  misleading if it would give a reasonable investor the impression of a state of affairs that differs in a

25  material way from the one that actually exists.  Words cannot be viewed in complete isolation but

26  must instead be read in light of all the information then available to the market to decide if they

27  conveyed a false or misleading impression.

28

An omission is a failure to disclose a material fact that needed to be disclosed to prevent other statements that were made from being misleading.

"In connection with" means that there was some relationship, or nexus, between the allegedly fraudulent conduct and the sale of the securities.  The defendant's conduct may be in connection with a purchase or sale of a security even if the defendant did not actually participate in any securities transaction.

An instrumentality of interstate commerce includes the postal mails, e-mails, telephone, telegraph, telefax, interstate highway system, internet and similar methods of communication, and travel from one state to another within the United States.

**Citations:**

o   Ninth Circuit Manual of Model Civil Jury Instructions 18.1

o   17 C.F.R. § 240.10b-5

o    15 U.S. Code § 78j

o   *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 939–41 (9th Cir. 2009) (manipulative conduct in violation of Rule 10b-5(a) or (c) includes "practices…that are intended to mislead investors by artificially affecting market activity") (*quoting Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977)

o   *Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 78-79, (2019) (Provisions of Rule 10b-5(a)-(c) "capture a wide range of conduct" including "disseminating false or misleading information to prospective investors with the intent to defraud.")

o   *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008) (a statement is misleading if it would give a reasonable investor the "impression of a state of affairs that differs in a material way from the one that actually exists.").

o   *In re Vaxart, Inc. Sec. Litig.*, 576 F. Supp. 3d 663, 670 (N.D. Cal. 2021) (Words "cannot be viewed 'in complete isolation' but must instead be 'read in light of all the information then

1     available to the market' to decide if they 'conveyed a false or misleading impression.'" (quoting

2     *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 512 (9th Cir. 1991)).

1  **Disputed Jury Instruction No. 4 Re Securities—Purpose and Selected Definitions**

2  **Offered by Defendant**

3      Congress enacted the securities laws to protect the integrity of financial markets.  The

4  plaintiffs claim to have suffered a loss caused by defendant's violation of certain of these laws.

5      There are terms concerning securities laws that have a specific legal meaning.  The following

6  definitions apply throughout these instructions, unless noted otherwise.

7      A security is an investment of money in a commercial, financial, or other business enterprise,

8  with the expectation of profit or other gain produced by the efforts of others.  Some common types of

9  securities are stocks and options.

10      The buying and selling of securities are controlled by Securities Laws.  Many of these laws

11  are administered by the United States Securities and Exchange Commission (SEC).

12      A "10b-5 claim" is a claim brought under a federal statute, Section 10(b) of the Securities

13  Exchange Act of 1934, which prohibits acts of deception in connection with the purchase or sale of a

14  security and in violation of rules and regulations that the SEC has the duty and power to issue.  A

15  corresponding SEC Rule, Rule 10b-5, prohibits the knowing misrepresentation of material facts in

16  connection with the purchase or sale of securities.  A person who violates the securities laws,

17  including Rule 10b-5, may be liable for damages caused by the violation.

18      A misrepresentation is a statement of material fact that is false or misleading when it is made.

19      "In connection with" means that there was some relationship, or nexus, between the allegedly

20  fraudulent conduct and the sale of the securities.  The defendant's conduct may be in connection with

21  a purchase or sale of a security even if the defendant did not actually participate in any securities

22  transaction.

23      An instrumentality of interstate commerce includes the postal mails, e-mails, telephone,

24  telegraph, telefax, interstate highway system, internet and similar methods of communication, and

25  travel from one state to another within the United States.

26  Source: Ninth Circuit Model Civil Jury Instruction 18.1.

27

28

1    **Disputed Jury Instruction No. 5 Re Securities—Rule 10b-5 Claims**

2    **Offered by Plaintiffs**

3        The plaintiffs allege that the defendant engaged in securities fraud in violation of the federal

4    securities laws.  This is referred to as "the plaintiffs' 10b-5 claim."

5        To succeed on this claim, the plaintiffs have the burden of proving each of the following five

6    elements by a preponderance of the evidence:

7        First, the defendant Elon Musk (a) employed a device, scheme, or artifice to defraud; or (b)

8    made an untrue statement of a material fact or omitted a material fact necessary under the

9    circumstances to keep the statements that were made from being misleading; or (c) engaged in an act,

10   practice, or course of business which operated or would operate as a fraud or deceit upon any person,

11   in connection with the sale of securities.

12       Second, defendant Elon Musk acted knowingly or recklessly;

13       Third, defendant Elon Musk, used or caused the use of an instrumentality of interstate

14   commerce, such as mail, telephone, internet, or any facility of a national securities exchange, in

15   connection with the purchase or sale of securities, regardless of whether the instrumentality or facility

16   itself was used to engage in the manipulative act, or to make an untrue statement or a material

17   omission;

18       Fourth, there was an active and open market for Twitter securities during the class period, and

19   plaintiffs and investors reasonably relied on that market as an accurate reflection of the current

20   market value of the securities; and

21       Fifth, defendant Elon Musk's manipulative act, misrepresentation, or omission caused the

22   plaintiffs to suffer damages.

23       If you find that the plaintiffs have proved each of these elements, your verdict should be for

24   the plaintiffs.  If, on the other hand, you find that the plaintiffs have failed to prove any of these

25   elements, your verdict should be for the defendant.

26

27

28

**Citations:**

○ Ninth Circuit Manual of Model Civil Jury Instructions 18.2

○ 17 C.F.R. § 240.10b-5

○ 15 U.S. Code § 78j

○ *Rabkin v. Lion Biotechnologies, Inc.*, 2018 WL 905862, at *16 (N.D. Cal. Feb. 15, 2018) ("To allege a claim for scheme liability, a plaintiff must allege the elements of a securities fraud claim. Rules 10b–5(a) and (c)…prohibit manipulative or deceptive acts.")

○ *Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 71 (2019) ("Dissemination of false or misleading statements with intent to defraud can fall within the scope of Rules 10b–5(a) and (c)").

○ *In re Vaxart, Inc. Sec. Litig.*, 2025 WL 1869694, at *1 (N.D. Cal. July 7, 2025) ("A reasonable jury could find that the defendants engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of a scheme to defraud.")

○ *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 939–41 (9th Cir. 2009) ("manipulative conduct" in violation of Rule 10b-5(a) or (c) includes "practices…that are intended to mislead investors by artificially affecting market activity") (*quoting Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977))

**Disputed Jury Instruction No. 5 Re Rule 10b-5 Claim**

**Offered by Defendant**

The plaintiffs allege that Elon Musk <u>violated Rule 10b-5 and harmed investors</u> by making materially false and misleading statements about the Twitter acquisition on May 13, May 16, and May 17.  Specifically, Plaintiffs allege that the following statements were materially false and misleading:

(1) A May 13, 2022 Tweet, "Twitter deal temporarily on hold pending details supporting calculation that spam/fake accounts do indeed represent less than 5% of users."

(2) A May 16, 2022 statement that "the prevalence of spam/fake accounts on Twitter is "probably at least four or five times" Twitter's 5% representation and that "the lowest estimate would be probably 20 percent.  And this—and this is—a bunch of quite smart outside firms have done analysis of Twitter and looked at the . . . daily users, and their conclusion is also about—its about 20 percent."

(3)  A May 17, 2022 Tweet, "20% fake/spam accounts, while 4 times what Twitter claims, could be *much* higher.  My offer was based on Twitter's SEC filings being accurate.  Yesterday, Twitter's CEO publicly refused to show proof of <5%.  The deal cannot move forward until it does."

This is referred to as "the Plaintiffs' 10b-5 claim."  <u>Mr. Musk denies the allegations.</u>

To succeed on this claim, the plaintiffs have the burden of proving<u>—as to each of the alleged misstatements—</u>each of the following elements by a preponderance of the evidence:

1) The defendant made an untrue statement of material fact in connection with the purchase or sale of securities;

2) The defendant acted knowingly;

3) The defendant used an instrumentality of interstate commerce, in connection with the sale and/or purchase of Twitter securities;

4) Plaintiffs justifiably relied on the alleged untrue statements of material fact; and

5) The defendant's <u>material</u> misrepresentations caused the plaintiffs to suffer damages.

If you find that Plaintiffs have proved each of <u>the above</u> elements, your verdict should be for

1  Plaintiffs.  If on the other hand, you find that Plaintiffs have failed to prove any of these elements,

2  your verdict should be for Mr. Musk.

3

4  Source: Ninth Circuit Model Civil Jury Instruction 18.2; Ex. 1, Closing Jury Instructions at 7–8,
   Instruction No. 6, *In re Tesla Inc. Securities Litig.*, 3:18-cv-4865-EMC (N.D. Cal. Feb. 1, 2023), Dkt.

5  655.

**Disputed Jury Instruction No. 6 Re Securities—Misrepresentations or Omissions—Materiality**

**Offered by Plaintiffs**

The plaintiffs must prove by a preponderance of the evidence that the defendant's misrepresentation or omission was material.  A factual representation concerning a security is material if there is a substantial likelihood a reasonable investor would consider the fact important in deciding whether to buy or sell that security.  An omission concerning a security is material if a reasonable investor would have regarded what was not disclosed to him, her, or it as having significantly altered the total mix of information he, she, or it took into account in deciding whether to sell the security.

You must decide whether something was material based on the circumstances as they existed at the time of the statement or omission.

**Citation:**

- o   Ninth Circuit Manual of Model Civil Jury Instructions 18.3

**Disputed Jury Instruction No. 6 Re Materiality**

**<u>Offered by Defendant</u>**

A plaintiff must prove by a preponderance of the evidence that a defendant's alleged misrepresentation was <u>materially false or misleading.   When there is no statement made that is objectively false, there was no affirmative misrepresentation.</u>

A factual representation concerning a security is material if there is a substantial likelihood a reasonable investor would consider the fact important in deciding whether to buy or sell that security. <u>A material misrepresentation gives a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists.</u>

<u>A factual representation can be untrue but not materially misleading.  A statement is not material just because it contains information that relates to a matter of general importance.</u>

<u>For example, when a company inaccurately reports its revenue, such a misstatement is factually false and involves a matter of general importance to the company and its investors. However, that misstatement may not be material if the difference between the disclosed revenue and the accurate revenue is not significant enough to influence a reasonable investor's decision whether to buy or sell securities in that company.</u>

<u>Additionally, to prove that a statement is materially false, Plaintiffs must prove a substantial likelihood that the correction of the misstated fact would have been viewed by the reasonable investor as having significantly altered the total mix of information he or she took into account in deciding whether to buy or sell the security.  The absence of a stock price reaction to the correction of a misstated fact may be evidence that the fact is not material because immaterial facts and information, by definition, do not affect stock price in an efficient market.</u>

You must decide whether a statement was material based on the circumstances as they existed at the time of the statement, <u>including the statement's content, the context in which the statement was made, the circumstance in which a reasonable investor would have seen or heard it, and all of the news and information that was publicly available at the time of the statement.  Plaintiffs bear the burden to prove that a statement conveyed a materially false or misleading impression when read in</u>

light of all the information available to the market.  A statement, even if inaccurate, may not be materially misleading if the correct information has been made credibly available to the market by other sources.

A statement regarding a material fact is not rendered false or misleading when made merely because subsequent events prove it to have been erroneous.

Source: Ninth Circuit Model Civil Jury Instruction 18.3; 3B Kevin F. O'Malley, et al., Federal Jury Practice and Instructions - Civil §162:235 (6th ed. 2013) ("A statement regarding a material fact may not be held false or misleading merely because subsequent events prove it to have been erroneous."); Ex. 1, Closing Jury Instructions at 10, Instruction No. 8, *In re Tesla Inc. Securities Litig.*, 3:18-cv-4865-EMC (N.D. Cal. Feb. 1, 2023), Dkt. 655 at 8 ("A material misrepresentation gives a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists."); *id.* ("A factual representation can be untrue but not material.  For example, if a company inaccurately reports its revenue, this representation is untrue.  The factual representation would be material if the difference between the disclosed revenue and the accurate revenue is significant enough to influence a reasonable investor's decision whether to buy or sell securities in that company.  If not, it would not be material."); *Retail Wholesale & Dep't Store Union Local 338 Retirement Fund v. HewlettPackard Co.*, 845 F.3d 1268, 1277 (9th Cir. 2017) ("In sum, we conclude that as there was no statement during the Class Period that was capable of being objectively false, there was no affirmative misrepresentation."); *id.* at 1275 (("[A] statement is misleading if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.'" (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008)); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1109 (9th Cir. 2010) ("Instead, 'a statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008)); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017) (holding statements were materially misleading because they "affirmatively created an impression of a state of affairs that differed in a material way from the one that actually existed"); *Tarapara v. K12 Inc.*, 2017 WL 3727112, at *15 (N.D. Cal. Aug. 30, 2017) ("A statement is materially misleading when it 'affirmatively created an impression of a state of affairs that differed in a material way from the one that actually exists.'"); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1259 (N.D. Cal. 2000) ("Put another way, there must be a substantial likelihood that the disclosure of the omitted fact [or correction of the misstated fact] would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available."); *id.* at 1261 (discussing the distinction between information that is generally important from material information that a reasonable investor would consider important in making a decision whether to purchase a security); *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 464 (2013) (noting that its "uncontroversial" that immaterial misrepresentations and omissions "by definition [do] not affect . . . stock price [s] in an efficient market" (omission in original)); *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 43 (2011) (assessing materiality of omitted information required "consideration of the source, content, and context of reports"); *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1321 (11th Cir. 2019) ("[T]he materiality inquiry includes consideration of the context in which a statement was made and the circumstances in which a reasonable investor would have heard

it."); *In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 369 (3d Cir. 1993) ("[M]ateriality is a relative concept, so that a court must appraise a misrepresentation or omission in the complete context in which the author conveys it."); *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1115 (9th Cir. 1989); *Guangyi Xu v. ChinaCache Int'l Holdings Ltd.*, 2017 WL 114401, at *5 (C.D. Cal. Jan. 9, 2017) ("Critically, plaintiff must 'demonstrate that a particular statement, *when read in light of all the information then available* to the market . . . conveyed a false or misleading impression.'" (emphasis and omission in original) (quoting *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 512 (9th Cir. 1991), as amended on denial of reh'g (Dec. 6, 1991))).

**Disputed Jury Instruction No. 7 Re Opinions Inactionable**

**Offered by Defendant**

To be misleading, a statement must be capable of objective verification. A statement expressing an opinion rather than a knowingly false statement of fact is not misleading.

Statements of opinion include subjective interpretations of contract provisions, statements concerning disputed legal issues, statements concerning one's legal rights and compliance with the law, statements interpreting or analyzing data, and statements that include terms like "I think" or "I believe."

The only exception to the general rule that opinions are not misleading is if the plaintiffs prove by a preponderance of the evidence that, at the time the statement of opinion was made, (1) the defendant did not actually hold the belief he professed and (2) the belief is objectively untrue.

Source: Ninth Circuit Model Civil Jury Instruction 18.1, Comment; Ninth Circuit Model Civil Jury Instruction 18.4; Ex. 2, Final Jury Instructions at 10, *In re JDS Uniphase Securities Litig.*, 4:02-1486-CW (N.D. Cal. Nov. 9, 2007), Dkt. No. 1874; *Retail Wholesale & Dep't Store Union Local 338 Retirement Fund v. HewlettPackard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017) ("To be misleading, a statement must be capable of 'objective verification.'" (quoting *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014)); *id.* (explaining that something like "'puffing'—expressing an opinion rather than a knowingly false statement of fact—is not misleading"); *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183–84, 186 (2015) (explaining that statements regarding one's legal rights and view about legal compliance are not actionable and explaining that using phrases like "I think" or "I believe" transforms statement of facts into statements of opinion); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017) ("Although *Omnicare* concerned Section 11 claims, we conclude that the Supreme Court's reasoning is equally applicable to Section 10(b) and Rule 10b-5 claims."); *id.* at 615–16 ("First, when a plaintiff relies on a theory of material misrepresentation, the plaintiff must allege both that 'the speaker did not hold the belief she professed' and that the belief is objectively untrue."); *Iafrate v. Angelo Iafrate, Inc.*, 827 F. App'x 543, 549 (6th Cir. 2020) (explaining that subjective interpretations of contract provisions are not objectively verifiable); *Hagood v. Sonoma County Water*, 81 F.3d 1465, 1478 (9th Cir. 1996) (explaining that "evidence [that] shows only a disputed legal issue [] is not enough to support a reasonable inference" of falsity); Ex. 3, *Homyk v. Chemocentryx, Inc.*, Dkt. No. 345 at 8 (N.D. Cal. Aug. 15, 2025) ("[T]here is no single 'correct' way to interpret data [, and] qualified data scientists often and reasonably disagree over how to analyze data and interpret results.").

**Disputed Jury Instruction No. 7 Re Opinions Inactionable**

**Plaintiffs Assert No Such Instruction Should Be Given**

Plaintiffs dispute that a stand-alone jury instruction on opinion statements is warranted in this case given that the definitions set forth in Model Instruction 18.1 are sufficient for the jury to assess what a misrepresentation or omission is.  However, to the extent that the Court chooses to include Statements of Opinion as a stand-alone instruction, Plaintiffs would propose the alternative language below.

**Statements of Opinion Offered by Plaintiffs**

A statement that is merely aspirational generally is not actionable because it cannot be said to be false.  A statement of opinion does not constitute an untrue statement of material fact simply because the stated opinion ultimately proves incorrect.

But an opinion is actionable as a false statement if the speaker does not sincerely hold the view or belief expressed regarding the material representation or if the opinion contains a material, verifiable statement of fact that is untrue.  Further, an opinion may be actionable if the speaker omits material facts necessary to make the opinion not misleading.

**Citations:**

o   Ninth Circuit Manual of Model Civil Jury Instructions 18.1, Comment ¶3.

o   *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 176-91 (2015).

o   *Retail Wholesale & Dep't Store Union Local 338 Retirement Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275-76 (9th Cir. 2017).

o   Final Jury Instructions at 10, *In re JDS Uniphase Securities Litig.,* 4:02-1486-CW (N.D. Cal. Nov. 9, 2007), Dkt. 1874 ("Under Section 10(b), a statement of opinion or belief is false if the opinion or belief is not honestly held when the statement is made. A person who states an

opinion or belief that he honestly holds is not liable under Section 10(b) merely because the opinion turns out to be incorrect.")

**Disputed Jury Instruction No. 8 Re Securities—Knowingly or Recklessly**

**<u>Offered by Plaintiffs</u>**

A defendant acts knowingly when he makes an untrue statement with the knowledge that the statement was false or with reckless disregard for whether the statement was true.

A defendant acts knowingly when he omits necessary information with the knowledge that the omission would make the statement false or misleading or with reckless disregard for whether the omission would make the statement false or misleading.

A defendant acts recklessly when he engages in highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it.

**Citations:**

- o   Ninth Circuit Manual of Model Civil Jury Instructions 18.5
- o   *Gebhart v. S.E.C.*, 595 F.3d 1034, 1044 (9th Cir. 2010)

**Disputed Jury Instruction No. 8 Re Scienter or State of Mind**

**Offered by Defendant**

The plaintiffs must prove by a preponderance of the evidence that the defendant acted with the intent to defraud—which is known as scienter.

To establish scienter, Plaintiffs must show that the defendant intended to make an untrue statement of fact with the knowledge that the statement was materially false.

It is not sufficient to show that a statement later turns out to be false or misleading.  A plaintiff must show that a defendant did believe in the truth or accuracy of the statement at the time it was made.

Source: Ninth Circuit Model Civil Jury Instruction 18.5; Ex. 1, Closing Jury Instructions at 11, Instruction No. 9, *In re Tesla Inc. Securities Litig.*, 3:18-cv-4865-EMC (N.D. Cal. Feb. 1, 2023), Dkt. 655; Ex. 2, Final Jury Instructions at 12–13, *In Re JDS Uniphase Corp. Securities Litig.*, 4:02-1486-CW (N.D. Cal. Nov. 9, 2007), Dkt. No. 1874 ("An honest or good faith belief on the part of a Defendant that a statement is true is inconsistent with a finding that he acted with scienter in making that statement."); Ex. 4, Charge To The Jury at 29, Instruction No. 24, *In re Vivendi Universal, S.A. Securities Litig.*, 1:02-c v-5571-PAE (S.D.N.Y. Mar. 26, 2010), Dkt. No. 1023-6 ("Even if a statement turns out to be false or misleading, it is not fraudulent or deceptive if the defendant had a good faith belief in the truth or accuracy of the statement at the time he made the statement."); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976) (holding that the element of scienter is the "intent to deceive, manipulate, or defraud"); *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1546 (9th Cir. 1994) (noting "no quarrel" with the following formulation of the scienter element: "the courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint *also* sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading" (quoting *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992) (Breyer, J), superseded by statute on other grounds); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1424 (9th Cir. 1994); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007) ("To establish liability under § 10(b) and Rule 10b–5, a private plaintiff must prove that the defendant acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud." (quotation marks and citation omitted)); *Pampena v. Musk*, 705 F. Supp. 3d 1018, 1047 (N.D. Cal. 2023); *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015).

**Disputed Jury Instruction No. 9 Re Securities—Justifiable Reliance—Fraud-on-the-Market Case**

**Offered by Plaintiffs**

 The plaintiffs do not have to prove that they justifiably relied on the alleged misrepresentation or omission in deciding to sell the Twitter securities in question if they prove by a preponderance of the evidence that there was an active, open market for Twitter securities at the time of the transactions in question.  An "active, open market" means that there were a large number of traders, a high level of activity, and frequent trades, such that the price of the security immediately reflected all publicly available information.

 If you find that the plaintiffs have proved by a preponderance of the evidence that (1) an active, open market for the Twitter securities existed at the time of the transactions in question and (2) investors reasonably relied on that market as an accurate reflection of the current market value of Twitter securities, you may find that the plaintiffs have proved that they justifiably relied on the defendant's statements, manipulative acts, misrepresentations, or omissions.

 If, however, the defendant proves by a preponderance of the evidence either that (1) the plaintiffs did not actually rely on the integrity of the market or (2) the alleged misrepresentation or omission did not affect the market price of the security, then the defendant has rebutted any presumption that the plaintiffs relied on the market.  In that event, the plaintiffs must then prove that they justifiably relied directly on the alleged manipulative acts, misrepresentations or omissions.

**Citations:**

- o Ninth Circuit Manual of Model Civil Jury Instructions 18.7
- o *Rabkin v. Lion Biotechnologies, Inc.*, 2018 WL 905862, at *16 (N.D. Cal. Feb. 15, 2018) ("To allege a claim for scheme liability, a plaintiff must allege the elements of a securities fraud claim.)

1  **Disputed Jury Instruction No. 9 Re Reliance**

2  **Offered by Defendant**

3      A plaintiff must prove by a preponderance of the evidence <u>reliance on the alleged material</u>

4  <u>misrepresentations and that the plaintiff was justified in doing so</u>.  A plaintiff may not intentionally

5  close his or her eyes and refuse to investigate the circumstances or disregard known or obvious risks.

6  A plaintiff does not have to prove that he, she, or other members of the Class individually relied on

7  the alleged misrepresentations in deciding to sell the securities in question if they prove by a

8  preponderance of the evidence <u>the requirements for invoking a presumption that they and the class</u>

9  <u>relied on the integrity of the market price, otherwise known as the "fraud-on-the-market"</u>

10  <u>presumption.</u>

11      <u>To invoke the fraud-on-the-market presumption</u>, a plaintiff must prove by a preponderance of

12  the evidence that:

13      (1) there was an active, open market for Twitter securities during the relevant time period.  <u>An</u>

14  <u>"active, open market" means that there were a large number of traders, a high level of activity, and</u>

15  <u>frequent trades, such that the price of the security immediately reflects all publicly available</u>

16  <u>information;</u>

17      (2) investors reasonably relied on that market as an accurate reflection of the current market

18  value of the securities;

19      (3) <u>the alleged misrepresentations were publicly known and material, meaning that a</u>

20  <u>reasonable investor would have regarded what was not disclosed to them as having significantly</u>

21  <u>altered the total mix of information they took into account in deciding whether to sell the Twitter</u>

22  <u>security; and</u>

23      (4) <u>Plaintiff traded the stock between when the alleged material misrepresentations were made</u>

24  <u>and when the truth was revealed.</u>

25      A defendant may rebut the presumption that the plaintiffs relied on the integrity of the market

26  price when selling Twitter securities by proving by a preponderance of the evidence the plaintiffs did

27  not actually rely on the integrity of the market price <u>when they sold Twitter securities.   In that event,</u>

28

the plaintiffs must then prove that they justifiably relied directly on the misrepresentation.  A defendant may also rebut the presumption that the plaintiffs relied on the market price when selling Twitter securities by proving by a preponderance of the evidence that the misrepresentation did not affect the market price of Twitter's stock.

If the defendant proves the plaintiffs would have bought Twitter securities at the same price, even if they knew the security price was affected by fraud, the presumption of reliance does not apply.

The fraud-on-the-market presumption of reliance is limited to the time between when the misrepresentation was made and when the truth was revealed.  If you find that any information sufficient to correct an alleged misstatement entered the market before October 4, 2022, you must find that the fraud-on-the-market presumption does not apply to any trades made after the date of the revelation.

Source: Ninth Circuit Model Civil Jury Instruction 18.6; Ninth Circuit Model Civil Jury Instruction 18.7; Ex. 1, Closing Jury Instructions at 13–14, Instruction No. 11, *In re Tesla Inc. Securities Litig.*, 3:18-cv-4865-EMC (N.D. Cal. Feb. 1, 2023), Dkt. No. 655; Ex. 5, Final Jury Instructions at 35, Court's Instruction No. 31, *Hsingching Hsu v. Puma Biotechnology, Inc., et al.*, 8:15-cv-00865-DOC-SHK (C.D. Cal. Jan. 29, 2019), Dkt. No. 700 ("For example, if Defendants prove Norfolk Pension Fund would have bought Puma stock at the same price, even if it knew the stock price was affected by fraud, the presumption of reliance does not apply."); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 811 (2011) (holding that to prove the fraud-on-the-market exception, plaintiffs must demonstrate "the alleged misrepresentations were publicly known (else how would the market take them into account?), that the stock traded in an efficient market, and that the relevant transaction took place between the time the misrepresentations were made and the time the truth was revealed." (citations omitted)); *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 474 (2013) ("A failure of proof on the issue of materiality, in contrast, not only precludes a plaintiff from invoking the fraud-on-the-market presumption of classwide reliance; it also establishes as a matter of law that the plaintiff cannot prevail on the merits of her Rule 10b–5 claim."); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267–68; 278–79 (2014) (holding that fraud-on-the-market reliance is only presumed for the period of time between when the misrepresentations were made and when the truth was revealed"); *Basic Inc. v. Levinson*, 485 U.S. 224, 248–49 (1988) (where "news of the merger discussions credibly entered the market and dissipated the effects of the misstatements, those who traded Basic shares after the corrective statements would have no direct or indirect connection with the fraud"); *Teachers' Ret. Sys. of LA v. Hunter*, 477 F.3d 162, 188 (4th Cir. 2007) (stock decline following lawsuit "is not one for which plaintiffs in this case are entitled to compensation").

**Disputed Jury Instruction No. 10 Re Securities—Causation**

<u>**Offered by Plaintiffs**</u>

The plaintiffs must prove by a preponderance of the evidence that the alleged manipulative acts, material misrepresentations or omissions were the cause of their economic injury. To establish economic injury or loss, the plaintiffs must prove that the alleged manipulative acts, misrepresentations, or omissions artificially deflated the price of Twitter's securities. To establish causation, the plaintiffs must prove that the alleged manipulative acts, misrepresentations or omissions played a substantial part in causing the injury or loss the plaintiffs suffered. The plaintiffs need not prove that the alleged manipulative acts, misrepresentations or omissions were the sole cause of the economic injuries.

**Citations:**

- o    Ninth Circuit Manual of Model Civil Jury Instructions 18.8

- o    17 C.F.R. § 240.10b-5

- o    15 U.S. Code § 78j

- o    *Rabkin v. Lion Biotechnologies, Inc.*, 2018 WL 905862, at *16 (N.D. Cal. Feb. 15, 2018) ("To allege a claim for scheme liability, a plaintiff must allege the elements of a securities fraud claim.)

1    **Disputed Jury Instruction No. 10 Re Loss Causation**

2    **Offered by Defendant**

3        A plaintiff must prove by a preponderance of the evidence that the alleged material

4    misrepresentations were the <u>proximate</u> cause of their economic loss.  <u>This is commonly referred to as</u>

5    <u>the "loss causation" element.</u>

6        <u>A material misrepresentation is a proximate cause of a plaintiff's loss if (1) it caused Twitter's</u>

7    <u>stock price to be lower than it would be if the statement had reflected the truth; and (2) the market's</u>

8    <u>discovery of the truth about that statement caused Twitter's stock price to increase.  The truth may be</u>

9    <u>revealed to the market through a single disclosure or a series of disclosures made by any person or</u>

10   <u>entity.</u>

11       <u>To prove loss causation, a plaintiff needs to isolate the extent to which a decline in stock price</u>

12   <u>is due to the alleged material misrepresentation and not other factors or intervening events.  In other</u>

13   <u>words, a plaintiff must separate any stock-price reaction to the alleged materially false information</u>

14   <u>from the market's reaction to other information affecting Twitter's securities prices.  A plaintiff must</u>

15   <u>provide evidence sufficient for you to attribute some rough proportion of his losses to the allegedly</u>

16   <u>misrepresented information, as opposed to other factors for which a plaintiff cannot recover losses.</u>

17   <u>The amount of deflation caused by a false statement is the difference between the stock price after the</u>

18   <u>false statement and what it would have been had the statement reflected the truth, not what might</u>

19   <u>have happened had the defendant remained silent.</u>

20   Source: *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342–48 (2005) (holding that law requires "that
     a plaintiff prove that the defendant's misrepresentation (or other fraudulent conduct) proximately
21   caused the plaintiff's economic loss"); *id.* at 344 ("Indeed, the Restatement of Torts, in setting forth
     the judicial consensus, says that a person who 'misrepresents the financial condition of a corporation
22   in order to sell its stock' becomes liable to a relying purchaser 'for the loss' the purchaser sustains
     'when the facts become generally known' and 'as  result' share value 'depreciates." (alterations
23   adopted)); *id.* at 347 ("For the reasons set forth in Part II-A, *supra*, however, the 'artificially inflated
     purchase price' is not itself a relevant economic loss."); *Nuveen Mun. High Income Opportunity Fund
24   v. City of Alameda*, 730 F.3d 1111, 1118 (9th Cir. 2013) ("The loss causation element, however,
     requires that [the plaintiff] also show 'proximate' or 'legal' cause."); *id.* at 1123 ("[E]vidence that
25   certain misrepresented risks are responsible for a loss must reasonably distinguish the impact of those
     risks from other economic factors."); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016)
26   (holding that plaintiffs "must demonstrate that an economic loss was caused by the defendant's

27

28

misrepresentations, rather than some intervening event."); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) ("[T]o establish loss causation, a plaintiff must allege . . . that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security."); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 417, 421 (7th Cir. 2015) ("[T]o prove loss causation, plaintiffs in securities-fraud cases need to isolate the extent to which a decline in stock price is due to fraud-related corrective disclosures and not other factors."); *In re Vivendi, S.A. Sec. Litig.,* 838 F.3d 223, 258 (2d Cir. 2016) ("[T]he proper question for purposes of our inquiry into price impact is not what might have happened had a company remained silent, but what would have happened if it had spoken *truthfully*." (emphasis in original)); *Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 11 F.4th 138, 141 n.3 (2d Cir. 2021) ("[P]rice inflation is measured by what would have happened if the defendant had told the truth."); Ex. 6, Filed Jury Instructions (Given) at 32, *Jaffee v. Household International, Inc.*, 1:02-cv-5893 (N.D. Ill. May 7, 2009) Dkt. No. No. 1614 ("A statement or omission of a material fact is a substantial cause of plaintiffs' loss if (1) it causes Household's stock price to be higher than it would be if the statement had not been made or the concealed fact had been disclosed; and (2) the market's discovery of the truth about the statement or omission causes Household's stock price to decrease.  The truth may be revealed to the market through a single disclosure or a series of disclosures made by any person or entity.").

1   **Disputed Jury Instruction No. 11 Re Protected Litigation Conduct**

2   **Offered by Defendant**

3           The Constitution ensures the right of all persons to bring lawsuits to vindicate their rights.  In

4   connection with the constitutional right to petition and protection of the right to access the courts, the

5   law recognizes a breathing space principle that extends this protection to conduct that is incidental or

6   sufficiently related to attempts to vindicate rights in court.  For example, public statements asserting

7   rights under an agreement and warning that violations of those rights could result in litigation are

8   sufficiently related to litigation to fall within the scope of this protection.  Similarly, publicity related

9   to litigation is protected from liability.  Such petitioning conduct is not illegal, either standing alone

10  or as part of a broader scheme.  Evidence of the exercise of such rights cannot form the basis for

11  liability.

12

13  Source:  79.06 Modern Federal Jury Instructions—Civil, ¶¶ 79.62, 79.63; *Nunag-Tanedo v. East Baton Rouge Parish Sch. Bd.*, 711 F.3d 1136, 1139 (9th Cir. 2013) ("[A]lthough the doctrine was developed in the antitrust context, it has been extended to other statutory schemes." (citations omitted)); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935, 929 (9th Cir. 2006) ("The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of 'the right of the people . . . to petition the Government for a redress of grievances.'  Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct."); *id.* at 931–32 ("In determining whether the burdened conduct falls under the protection of the Petition Clause, we must give adequate 'breathing space' to the right of petition."); *Allied Tube & Conduit Corp. v. Indian Head*, 486 U.S. 492, 499 (1988); *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1082 (C.D. Cal. 2010) ("In connection with the First Amendment's Petition Clause and protection of the right to access the courts, the Ninth Circuit recognizes a breathing space principle which extends immunity under the *Noerr-Pennington* doctrine to conduct which is incidental to petitioning activities, even if it is not itself petitioning activity."); *Columbia Pictures Indus., Inc. v. Pro. Real Est. Invs., Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991) ("[W]here underlying litigation is not a sham, attendant publicity is protected by *Noerr-Pennington* doctrine." (citing *Aircapital Cablevision, Inc. v. Starlink Communications Grp., Inc.*, 634 F. Supp. 316, 326 (D. Kan. 1986)); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965) ("Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition.  Such conduct is not illegal, either standing alone or as part of a broader scheme itself violative of the Sherman Act.").

1    **Disputed Jury Instruction No. 11 Re *Noerr Pennington* Defense**

2    **Plaintiffs Assert No Such Instruction Should Be Given**

3          Plaintiffs do not offer a counter version to Defendant's Instruction No. 9 re *Noerr Pennington*

4    because no such instruction should be given.  Defendant's proposed instruction is neither supported

5    by the facts nor the law and should be rejected.  *See* Plaintiffs' concurrently filed Memorandum of

6    Law in Support of Disputed Instructions.

7          In the first instance, the *Noerr-Pennington* doctrine does not apply to securities cases.  *In*

8    *re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 794 F. Supp. 1424, 1448 (D. Ariz. 1992)

9    ("*Noerr–Pennington* simply has no application" and would "undermine the fabric" of federal

10    securities laws as a "rule of law which excuse[s] misrepresentations when it is the truth of the

11    information which is fundamentally at issue" because "it is not a shield for fraud").  At no point

12    in this action or in these papers has Defendant cited a case in which *Noerr-Pennington* was

13    applied to a securities fraud case.

14          Moreover, given the law and other instructions in this case, there is no need for a *Noerr-*

15    *Pennington* instruction, which will only confuse the jury.  *United States v. Lopez-Alvarez*, 970 F.2d

16    583, 597 (9th Cir. 1992) ("A defendant is not entitled to any particular form of instruction, nor is he

17    entitled to an instruction that merely duplicates what the jury has already been told").  If the jury finds

18    liability under Rule 10b-5 for any of the conduct that Defendant claims is protected, they have found

19    fraud and therefore *Noerr-Pennington* does not apply.  *United States v. Koziol*, 993 F.3d 1160, 1181

20    (9th Cir. 2021) (Trial court's refusal to give stand-alone *Noerr-Pennington* instruction where finding

21    liability under Hobbs Act would moot defense "was not misleading and…adequately guided the

22    jury's deliberation").

23          If such an instruction is given, Plaintiffs request, rather than Defendant's proposed general

24    and inflammatory description of Constitutional rights, that any instruction on *Noerr-Pennington* lay

25    out the elements of the doctrine, the sham exception, and that in this case, would apply only to

26    Musk's actions in the Delaware lawsuit.  *See, e.g.,* Judicial Council of California Civil Jury

27    Instructions No. 3430.

28

**Disputed Jury Instruction No. 12 Re Securities—Damages**

**<u>Offered by Plaintiffs</u>**

  If you find for the plaintiffs on the 10b-5 claim, then you must consider and decide the amount of money damages, if any, to be awarded to the plaintiffs and the Class. You may award only actual damages in an amount that will reasonably and fairly compensate the plaintiffs and the Class for the economic losses they and the Class sustained. Your award must be based on evidence and not upon speculation, guesswork, or conjecture. The plaintiffs have the burden of proving damages by a preponderance of the evidence.

**Citations:**

- Ninth Circuit Manual of Model Civil Jury Instructions 18.9

- 17 C.F.R. § 240.10b-5

- 15 U.S. Code § 78j

1  **Disputed Jury Instruction No. 12 Re Damages**

2  **Offered by Defendant**

3    If you find for the plaintiff on the 10b-5 Claim, then you must consider and decide the amount

4  of damages to be awarded.  <u>If you decide that the Plaintiffs are not entitled to recover, you need go no</u>

5  <u>further.</u>

6    <u>Just because I am instructing you on how to measure damages does not mean that I have any</u>

7  <u>opinion on whether or not the defendant should be found liable on the 10b-5 claim.  That is for you to</u>

8  <u>decide on the evidence presented and the rules of law I have given to you.  I am instructing you on</u>

9  <u>damages only so that you will have guidance should you determine that the plaintiffs have proven an</u>

10 <u>entitlement to recovery.</u>

11   <u>If you determine that the defendant violated Rule 10b-5 with respect to any of the challenged</u>

12 <u>statements, then you must determine the amount of damages, if any, as to which Plaintiffs are</u>

13 <u>entitled.</u>

14   You may award only actual damages in an amount which will reasonably and fairly

15 compensate Plaintiffs for the economic losses sustained.

16   <u>Actual damages are measured by the amount of deflation caused by the misrepresentations</u>

17 <u>only on which you based your finding of 10b-5 liability.  In other words, actual damages are</u>

18 <u>measured by the difference between the price at which a stock sold and the price at which the stock</u>

19 <u>would have sold had the statements reflected the true state of affairs.  Actual damages are limited to</u>

20 <u>losses caused by the alleged material misrepresentation and do not include losses caused by other</u>

21 <u>events.  Plaintiffs bear the burden of separating the alleged material misrepresentations from any</u>

22 <u>other factors that may have affected the price of Twitter securities and ascribing some proportion of</u>

23 <u>the whole loss to the alleged material misrepresentation.  Defendant is not liable for any loss resulting</u>

24 <u>from those other events.</u>

25   <u>You will be asked to determine the amount, if any, by which the prices for Twitter common</u>

26 <u>stock and put options were artificially affected by any material misrepresentation you may find for</u>

27 <u>each day during the Class Period.  You will also be asked to determine the appropriate level of</u>

28

implied volatility which should be used to calculate the effect of any material misrepresentation you may find on Twitter options.

Your award must be based on evidence and not upon speculation, guesswork or conjecture. Plaintiffs have the burden of proving damages by a preponderance of the evidence.  Plaintiffs also bear the burden of separating out any share price decline caused by factors other than the alleged misrepresentations.

Source: Ninth Circuit Model Civil Jury Instruction 18.9; Ex. 5, Final Jury Instructions at 37, Instruction No. 33, *Hsingching Hsu v. Puma Biotechnology, Inc., et al.*, 8:15-cv-00865-DOC-SHK (C.D. Cal. Jan. 29, 2019), Dkt. 700 ("Actual damages are measured by the amount of inflation per share of Puma stock caused by the misrepresentations or omissions on which you based your finding of a §10(b)-5 violation."); *id.* ("Plaintiffs also bear the burden of separating out the share price decline, if any, caused by factors other than the alleged misrepresentations or omissions."); Ex. 7, 6/21/12 Tr. at 3094:24-3095:11; 3097:4-22, *Liberty MediaCorp. v. Vivendi Universal*, S.D.N.Y. Case No. 03-cv-02175, Dkt. No. 305 ("Vivendi is not liable for any loss resulting from those other non-fraud related events."); Ex. 1, Closing Jury Instructions at 16, Instruction No. 13, *In re Tesla Inc. Securities Litig.*, 3:18-cv-4865-EMC (N.D. Cal. Feb. 1, 2023), Dkt. 655 ("In other words, actual damages are measured by the difference between the price at which a security sold and the price at which the security would have sold absent the alleged misrepresentation."); *id.* at 17 ("Plaintiff also has the burden of separating out the price decline, if any, caused by factors, if any, other than the alleged misrepresentation."); *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014 (C.D. Cal. 2003) ("Damages in a securities fraud case are measured by the difference between the price at which a stock sold and the price at which the stock would have sold absent the alleged misrepresentations or omissions"), *aff'd sub nom. Mortensen v. Snavely*, 145 F. App'x 218 (9th Cir. 2005); *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 155 (1972) (similar); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 417 (7th Cir. 2015) ("The amount of inflation caused by a false statement is the difference between the stock price after the false statement and what it *would have been* had the statement reflected the truth. What the model measures is the effect the truth would have had on the price." (emphasis in original)); *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016) ("[T]he proper question for purposes of our inquiry into price impact is not what might have happened had a company remained silent, but what would have happened if it had spoken *truthfully*." (emphasis in original)); *Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 11 F.4th 138, 141 n.3 (2d Cir. 2021) ("[P]rice inflation is measured by what would have happened if the defendant had told the truth."); *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014–15 (C.D. Cal. 2003) ("A proper measure of damages in the securities context thus requires elimination of that portion of the price decline or price difference which is unrelated to the alleged wrong"); *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1119 (9th Cir. 2013); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1273–74 (S.D. Cal. 2010) (pointing out flaw in damages analysis where expert "fails to separate the loss caused by the disclosure of corrective information (new, negative, company-specific, revealing a prior misrepresentation or omission) from loss caused by the disclosure of other company-specific information").

1   **Disputed Jury Instruction No. 13 Re Willful Suppression of Evidence**

2   <u>**Offered by Plaintiffs**</u>

3         You may consider whether one party intentionally concealed or destroyed evidence. If you

4   decide that a party did so, you may decide that the evidence would have been unfavorable to that

5   party.

6   **Citations:**

7   o   Judicial Council of California Civil Jury Instructions No. 204

8   o   *Apple Inc. v. Samsung Elecs. Co.,* 881 F. Supp. 2d 1132, 1150-1151 (N.D. Cal. 2012)

9        (instructing the jury on an adverse inference where spoination occurred and describing the

10       levels of severity of instruction).

11  o   *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 958 (9th Cir. 2006) (A court can sanction a party

12       who has despoiled evidence under "the inherent power of federal courts to levy sanctions

13       in response to abusive litigation practices") (citing *Fjelstad v. Am. Honda Motor Co.*, 762

14       F.2d 1334, 1337-38; and FRCP 37(b)(2)(C)).

15  o   *Ruderman v. Rolls Royce Motor Cars NA*, LLC, 2022 WL 3009464, at *2 (C.D. Cal. May

16       26, 2022) (If a party seeking an adverse inference instruction establishes spoliation

17       through a three-part test, "[t]he Court has broad discretionary power to permit an adverse

18       inference from the spoliation of relevant evidence against the spoliating party")

19

20

21

22

23

24

25

26

27

28

**Disputed Jury Instruction No. 13 Re Willful Suppression of Evidence**

**Defendant Contends No Such Instruction Should Be Given**

Defendant objects to Plaintiffs' proposed instruction regarding willful suppression of evidence, which is wholly improper and ignores the proper procedure for challenging spoliation of evidence, if any occurred, and requesting sanctions. Such an instruction is only appropriate in limited instances as a sanction following a finding of spoliation under Rule 37(e). Of course, the Court has not found any spoliation here. Indeed, Plaintiffs did not file any Rule 37(e) motion or even raise any concerns about any alleged destruction of evidence with Defendant at any point throughout this entire case.

Plaintiffs' failure to bring a Rule 37(e) motion and the absence of any Court order making the specific factual findings mandated by the Rule precludes any adverse inference instruction. *Gregory v. State of Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024) (reversing and remanding verdict where the district court gave an instruction as a spoliation sanction without complying with Rule 37(e)). At the threshold, Rule 37(e) provides that a spoliation sanction based on the destruction of Electronically Stored Information ("ESI") can only be given if (1) the information "should have been preserved," (2) "is lost because a party failed to take reasonable steps to preserve it," and (3) "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37. After finding that "such a covered loss of information occur[ed], the court must make the specified findings required by [Rule 37(e)] paragraphs (1) or (2) before it may impose a sanction." *Gregory*, 118 F.4th at 1079. Specifically, the court must find "prejudice to another party from loss of the information" or that "the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e). None of the above elements has been established in this case and Plaintiffs have not availed themselves of Rule 37(e)'s procedures. This instruction cannot be given as a matter of law. *Gregory*, 118 F.4th at 1080.

Even if the court finds a sanction is warranted, it then would need to determine the appropriate sanction. In doing so, courts generally consider three factors: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3)

1    whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Scalia*

2    *v. Cnty. of Kern*, 658 F. Supp. 3d 809, 814 (E.D. Cal. 2023).

3          Citing to *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 958 (9th Cir. 2006), Plaintiffs contend that,

4    notwithstanding their failure to seek a sanction under Rule 37(e), the Court can issue an adverse

5    inference instruction pursuant to its inherent authority.  But *Leon* predates the 2015 Amendment to

6    Rule 37(e), which foreclosed courts from relying on their inherent authority to levy sanctions for ESI

7    spoliation.  *Gregory*, 118 F.4th at 1080 ("Because Rule 37(e) governs both the loss of information

8    and the sanctions imposed in this case, and because the rule's specific requirements preclude

9    invocation of a court's inherent authority, the district court erred as a matter of law by relying upon

10   its inherent authority rather than applying Rule 37(e)."). *Leon* is no longer good law. *See id.* Rule

11   37(e) provides the only basis and process for Plaintiffs to obtain an adverse inference instruction.

12   They did not follow it and cannot obtain such an instruction here.

13         Plaintiffs had their opportunity to raise any concern, investigate any purported destruction of

14   evidence, and bring a motion during discovery.  The Court should not entertain any attempt by

15   Plaintiffs to bring an untimely Rule 37 motion now. *See United Food Grp., LLC v. Cargill, Inc.*,

16   2014 WL 12925563, at *3 (C.D. Cal. Nov. 14, 2014) (rejecting request for a destruction of evidence

17   instruction because the party failed to timely move for sanctions during discovery).  In any event,

18   Defendant did not destroy any evidence.  During the parties' meet and confer related to these

19   Instructions, Plaintiffs identified a gap in Defendant's text messages as the basis for their proposed

20   instruction.  But as Plaintiffs know—or ought to know since this precise issue was publicly litigated

21   during the Delaware Action—the gap exists because Defendant had no responsive texts during that

22   period (during a portion of which Defendant was overseas and not texting at all), not because there

23   was any destruction. *See Twitter v. Musk*, DE Ch. Case No. 2022-0613-KSJM, Opposition to Motion

24   to Sanction Defendants for Failure to Produce Responsive Phone Messages (Sept. 21, 2022).

25   Moreover, Plaintiffs agreed and stipulated that Defendant satisfied all document and ESI discovery

26   obligations by producing only the documents and data exchanged in the Delaware Action.  Dkt. 116.

27   Plaintiffs entered this stipulation on notice that the text message gap existed.  They cannot claim any

28

1    prejudice now.  Of course, all these issues could have and should have been identified, raised, and

2    adjudicated in connection with a Rule 37 motion.  They were not.  And they cannot be raised now via

3    an adverse inference instruction or otherwise.

9    DATED:  January 27, 2026

10   /s/ Tyson C. Redenbarger                              /s/ Alex Bergjans

11   COTCHETT, PITRE & MCCARTHY, LLP          Alex Spiro (*pro hac vice*)
     Joseph W. Cotchett (SBN 36324)                    alexspiro@quinnemanuel.com
12   jcotchett@cpmlegal.com                            Ellyde R. Thompson (*pro hac vice*)
     Mark C. Molumphy (SBN 168009)                     ellydethompson@quinnemanuel.com
13   mmolumphy@cpmlegal.com                            Jesse A. Bernstein (*pro hac vice*)
     Tyson C. Redenbarger (SBN 294424)                 jessebernstein@quinnemanuel.com
14   tredenbarger@cpmlegal.com                         295 Fifth Avenue
     Elle D. Lewis (SBN 238329)                        New York, NY 10010
15   elewis@cpmlegal.com                               Telephone:  (212) 849-7000
     Gia Jung (SBN 340160)                             Facsimile:  (212) 849-7100
16   gjung@cpmlegal.com
     Caroline A. Yuen (SBN 354388)
17   cyuen@cpmlegal.com                                Michael T. Lifrak (Bar No. 210846)
     840 Malcolm Road, Suite 200                       michaellifrak@quinnemanuel.com
18   Burlingame, California 94010                      Stephen A. Broome (Bar No. 314605)
     Telephone: (650) 697-6000                         stephenbroome@quinnemanuel.com
19                                                     Alex Bergjans (Bar No. 302830)
20                                                     alexbergjans@quinnemanuel.com
     /s/ Aaron Arnzen                                  865 South Figueroa Street, 10th Floor
21   BOTTINI & BOTTINI, INC.                           Los Angeles, CA 90017
     Francis A. Bottini, Jr. (SBN: 175783)             Telephone:  (213) 443-3000
22   fbottini@bottinilaw.com                           Facsimile:  (213) 443-3100
     Aaron Arnzen (SBN 218272)
23   aarnzen@bottinilaw.com
     7817 Ivanhoe Avenue, Suite 102                    *Attorneys for Defendant Elon Musk*
24   La Jolla, California 92037
     Telephone: (858) 914-2001
25

26   *Lead Counsel for Plaintiffs and the Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Tyson C. Redenbarger, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of January 2026, at Burlingame, California.

By  _/s/ Tyson C. Redenbarger_
          Tyson C. Redenbarger