COTCHETT, PITRE & MCCARTHY, LLP
Joseph W. Cotchett (SBN 36324)
*jcotchett@cpmlegal.com*
Mark C. Molumphy (SBN 168009)
*mmolumphy@cpmlegal.com*
Tyson C. Redenbarger (SBN 294424)
*tredenbarger@cpmlegal.com*
Elle D. Lewis (SBN 238329)
*elewis@cpmlegal.com*
Gia Jung (SBN 340160)
*gjung@cpmlegal.com*
Caroline A. Yuen (SBN 354388)
*cyuen@cpmlegal.com*
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
*fbottini@bottinilaw.com*
Aaron P. Arnzen (SBN 218272)
*aarnzen@bottinilaw.com*
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GIUSEPPE PAMPENA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | Case No. 3:22-CV-05937-CRB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 1 TO PRECLUDE IMPROPER CHARACTER EVIDENCE**<br><br>**(PUBLIC – REDACTED VERSION)**<br>Date:       February 17, 2026<br>Time:       2:00 p.m.<br>Courtroom: 6, 17th Floor<br>Judge:      Honorable Charles R. Breyer |

## INTRODUCTION

Musk's Motion *in Limine* No. 1 to Preclude Improper Character Evidence ("Musk's MIL 1") seeks to exclude factual evidence that is highly relevant to this case and supports several of the elements that Plaintiffs must prove. ECF 339. Specifically, Musk seeks to preclude the fact that, after *secretly* purchasing more than 9% of Twitter's stock, he failed to timely file the required SEC disclosure forms and failed to make mandated disclosures that he was considering joining Twitter's board of directors. It is uncontested that the SEC investigated Musk and ultimately filed a lawsuit against him for failing to comply with the disclosure requirements. As explained below, the secret purchases, belated filings, failure to disclose his plans to join the board, and facts developed through the subsequent SEC investigation are highly relevant to Musk's scienter, motive, and lack of mistake, establishing the compressed timeline in this case, and giving context to the operative events. Importantly, Plaintiffs do not intend to present evidence of the SEC's allegations against Musk. The Court should therefore deny the motion as to Musk's SEC filings.

Musk also moves to exclude discussion of his 2018 tweets concerning taking Tesla private, and text messages he sent to Sam Bankman-Fried and Sean Combs concerning the Twitter acquisition. Plaintiffs do not intend to introduce evidence concerning the Tesla lawsuit. Plaintiffs will seek to introduce the subject text messages for the limited purpose of authentication only if Musk contests the authenticity of his text messages produced in this action.

## RELEVANT BACKGROUND

**Musk's Late Disclosure of 9.2% Ownership and Intent to Join the Board**

The facts leading up to Musk's offer to purchase Twitter in April of 2022 are highly relevant to Plaintiffs' case. This includes the fact that Musk purchased more than 73 million shares (worth $2.6 billion) *covertly* between January 2022 and April 2022. Musk knew that if the public found out he was buying massive amounts of Twitter stock the price would go up and it would cost him more money to acquire the stock he intended to buy. Indeed, Musk testified ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Declaration of Tyson Redenbarger filed in support of this

Opposition ("Redenbarger Decl.") Ex. 1, Musk SEC Tr. at 43-47. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Redenbarger Decl. Ex. 3.

Critically, Musk failed to timely inform the public and the SEC that he had bought more than 5% of Twitter's stock. Redenbarger Decl. Ex. 4 (date of event requiring disclosure listed as March 14, 2022 on cover page, yet disclosure was signed and filed on April 4 [see signature page]). From March 14, when disclosure was triggered, to April 1, 2022, Musk acquired more than 31,000,000 shares of Twitter stock. Redenbarger Decl. Ex. 5 at 7. These shares, which gave Musk more leverage when he eventually disclosed his intent to take over the company, were acquired at a discount, as Twitter stock jumped 27% when Musk belatedly disclosed his ownership on April 4. *See* Twitter stock chart, ECF 253-5, row 55. Musk also failed to timely disclose, as required by the SEC, that he was considering and discussing joining Twitters' board of directors. *See* FAC, ECF 31 at ¶64.

The SEC investigated Musk's late disclosure, which included taking Musk's investigative testimony on July 12, 2022, and July 27, 2022. During questioning, Musk provided testimony which is highly and directly relevant to this case, including: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SEC Tr. at 306-307: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SEC Tr. at 271-72); ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SEC Tr. at 282). Redenbarger Decl. Ex. 1. On January 14, 2025, SEC filed a complaint against Musk in connection with these late-filed disclosures. According to the SEC's complaint, after Musk failed to timely file a beneficial ownership report by March 24, 2022, he bought more than $500 million worth of Twitter common stock between March 25, 2022 and April 1, 2022, and saved himself $150 million because investors were unaware of his purchases.

## ARGUMENT

It is extraordinarily important to Plaintiffs' case that they be permitted to fully develop evidence of Musk's scienter, including his motive for making false statements and engaging in a fraudulent scheme during his acquisition of Twitter in 2022. For example, Plaintiffs will point to

1    circumstantial evidence—a hallmark of virtually every fraud trial—to establish that Musk acted
2    knowingly or recklessly. Indeed, the "proof of scienter required in fraud cases is often a matter of
3    inference from circumstantial evidence." *Herman & Maclean v. Huddleston*, 459 U.S. 375, 390 n.30
4    (1983). As such, the law has long recognized that "intent can be inferred from circumstantial evidence,
5    including financial motive." *Spencer v. City of Spokane*, 836 F. App'x 516, 518 (9th Cir. 2020)
6    (quoting, *inter alia*, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009)).

7    Here, Plaintiffs will show that Musk purchased billions of dollars of Twitter stock secretly in
8    order to keep more money in his pocket. These facts help establish that Musk was acutely aware that
9    his conduct would move Twitter's stock price. Redenbarger Decl. Ex. 1, Musk SEC Tr. at 43:10-
10   44:25;70:6-11 (admitting ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11   ▮▮▮▮▮▮). Musk was right—when he belatedly disclosed his 9.2% ownership stake, Twitter's
12   stock jumped more than 27%. *See* ECF 253-5, row 55. Plaintiffs will use these facts to prove that
13   when Musk made false, misleading, or disparaging comments in May 2022, which "*disrupted*"
14   Twitter's stock price and impacted the market, he did so knowingly (or recklessly), because he was
15   highly aware of his influence and knew his negative commentary about the deal would drive Twitter's
16   stock price down.

17   The facts are also intrinsically intertwined with the transaction itself. Indeed, separate and
18   apart from the agency's investigation, the SEC's Division of Corporation Finance thought it was
19   sufficiently important to the merger that it required Twitter to discuss Musk's violation of the Rule in
20   the merger proxy statement. *See* Redenbarger Decl. Ex. 7 at 5 (demanding disclosure regarding the
21   board's consideration of the fact Musk's mandated disclosure filing "was not made within the required
22   10 days from the date of acquisition, as required by Rule 13d-1(c).").

23   In addition, this evidence shows that Musk was motivated to buy Twitter as a way to make
24   himself even more wealthy. When he met with his bankers at Morgan Stanley for the first time to talk
25   about the potential Twitter transaction, Musk announced that he expected to ▮▮▮▮▮▮▮▮▮▮
26   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27   ▮  *See* ECF 253-8, Claassen Tr. at 151; *see also* Plaintiffs' concurrently filed Opposition to Musk's
28   Motion *in Limine* No. 3. This evidence (secret purchases and belated filings) therefore both establishes

motive and undermines Musk's self-proclaimed reason for buying Twitter, *i.e.*, to save free speech. In reality, Musk was motivated by greed, which Plaintiffs should be permitted to establish at trial.

Contrary to Musk's arguments, Musk's failure to timely file is relevant and admissible under FRE 404(b), which provides that other acts evidence is admissible "as proof of motive, opportunity, intent, preparation, plan, knowledge, … or absence of mistake or accident." The Ninth Circuit has held such evidence to be admissible under the following test:

> (1) there must be sufficient proof for the jury to find that the defendant committed the other act; (2) the other act must not be too remote in time; (3) the other act must be introduced to prove a material issue in the case; and (4) the other act must, in some cases, be similar to the offense charged.

*Duran v. City of Maywood* 221 F.3d 1127, 1132–1133 (9th Cir. 2000) (citations omitted). Plaintiffs easily satisfy this test.

First, Musk's motion argues that there is no evidence that he "actually violated Section 13." Musk's MIL 1 at 5. Yet, Musk concedes the filing was late and a subsequent corrective filing was necessary. *Id*. Musk also argues that the late filing was a mistake, but that is irrelevant to whether he violated Section 13, which is a strict liability statute. *See* Exchange Act Section 13(d) [15 U.S.C. § 78m(d)] and Rule 13d-1 [17 C.F.R. § 240.13d-1]. In short, there is ample proof to find that Musk violated the statute.

Second, Musk argues that the violation is "too remote in time" without any specific or convincing arguments concerning the facts here. That is because there are none. Musk failed to file his disclosure on the deadline of March 24, 2022. By April 4, when he finally disclosed, he was already in discussions with Twitter to join the board. Five days later, on April 9, he told Twitter's CEO that he would make an offer to take Twitter private. Redenbarger Decl. Ex 8, row 325. The factual connections between Musk's acquisition of 9.2% of Twitter's stock, which he then used as leverage to orchestrate a buy-out of the entire company, over the course of just a few weeks in 2022, are obviously related and very close in time. Redenbarger Decl., Ex 9 ("My offer is my best and final offer and if it is not accepted, I would need to reconsider my position as a shareholder."). This factor greatly weighs in Plaintiffs' favor.

Third, Musk argues that evidence concerning his secret acquisition of stock and belated filings

"would not prove any 'material issue.'" Musk's MIL 1 at 4. Not so. As explained above, these facts speak directly to Plaintiffs' theory on scienter, motive, and lack of mistake, which are obviously key issues in any securities fraud case. The fact that *before* Musk announced that he would acquire Twitter, he intentionally delayed disclosing his acquisition of Twitter stock to keep Twitter's price artificially low, combined with the fact that Twitter's stock price immediately buoyed after the merger was announced, are crucial facts from which a jury could reasonably infer that Musk <u>knew</u> his public activity could and did move the stock market. These facts also contradict Musk's claims that he was committed to "transparency." That Musk argues the incorrect filing was "an innocent mistake" does not rebut the fact that Musk ███████████████████████████████████████████ ██████. Redenbarger Decl. Ex. 1, Musk SEC Tr. at 43:10-44:25;70:6-11.

Further, Musk is plainly wrong to suggest that Plaintiffs have only raised this argument "on the eve of trial." Musk's MIL 1 at 5. Plaintiffs alleged in their Complaint that Musk engaged in market manipulation by secretly accumulating stock before he belatedly disclosed the same, as the Court has also recognized. ECF 31 at ¶ 46 and 65; ECF 48 at 2 n.1. Additionally, in discovery responses served on March 17, 2025, Plaintiffs identified the following as support for their claim that Musk acted with scienter in this case:

> **Defendant was aware from past incidents that his public activity could influence the stock market.** In particular, Defendant knew his statements and actions relating to his acquisition of Twitter shares would influence the stock market. Thus, his decision to make unfounded statements publicly demonstrates his intent (and/or recklessness) to manipulate the price of Twitter shares.

Redenbarger Decl., Ex. 2, see attached chart, Interrogatory 10 column (emphasis added). To the extent Musk is suggesting that Plaintiffs are required to give Musk advance notice of their trial strategy by stating exactly what facts they will use to prove which elements of their claims, that should be rejected. Further, as this Court recently observed, "I have learned that over time litigation changes. What was important at the beginning becomes less important during the discovery period and vice versa. And so, where people don't want to make an issue of something at the beginning, suddenly it becomes a large issue and a significant one." Redenbarger Decl. Ex. 10 at 4:20-24 (Tr. of MTDQ hearing). Musk was plainly on notice of the well-pled factual allegations that he now seeks to exclude, and Plaintiffs

1  should be permitted to prove scienter, motive, and lack of mistake through this evidence at trial.

2  Fourth, Musk asserts that the Section 13 violation is not "sufficiently similar to the alleged fraud here." Musk's MIL 1 at 5. That argument fails. Musk's secret purchases and late disclosure proves that Musk was aware that his conduct could and did impact Twitter's stock price. This issue is identical to the elements of the sole claim here—Musk was aware that his conduct (false statements and scheme) could and did impact Twitter's stock price. Indeed, Musk ████████████ ████████████, which is why he sought to keep his purchases of billions of dollars of stock secret. Redenbarger Decl. Ex. 1, Musk SEC Tr. at 43:10-44:25;70:6-11 ("████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████."). Likewise, in this case, Musk knew (or recklessly disregarded) that his false statements, omissions, and scheme would impact the price of Twitter, which it did. Thus, Musk's violation of Section 13 is at the very least "sufficiently similar" to the alleged fraud here. Plaintiffs easily exceed the FRE 404(b) test for admissibility under these facts.

Accordingly, the Court should allow Plaintiffs to present evidence of (i) the secret purchases, (ii) the late disclosure, (iii) the impact of the late disclosure on the stock market, (iv) the fact that Musk saved significant amounts of money due to the late disclosure, (v) that fact that Musk is aware that his conduct could and did have an impact on the stock market, and (vi) that he provided testimony before the SEC during its investigation surrounding the Section 13 filings. To be clear, Plaintiffs do not intend to introduce evidence that the SEC alleges that Musk violated Section 13(d).

Lastly, Musk argues that even if the evidence is permissible under FRE 404(b)—which it is— the probative value is minimal, and Musk would be unfairly prejudiced. Neither of these arguments are persuasive. As explained above, the facts surrounding Musk secret purchases, late filings, and the fact that the filings did not comply with SEC regulations are highly relevant to the facts of the case and speak directly to Plaintiffs' scienter theory. Moreover, the facts here are not simply background, but speak directly to scienter, motive, and intent, which are hotly contested issues in this case. *Cf., Grace v. Apple, Inc*. 2020 WL 227404, at *1, 2 (N.D. Cal., Jan. 15, 2020) (unrelated litigation, which "does nothing to negate Apple's motives" was "of minimum probative value because it merely

1  constitutes 'background facts.'"). On the other side of the scale, any imagined prejudice would arise
2  from evidence of the fact that the SEC filed a civil injunctive action against Musk, a fact that Plaintiffs
3  do not seek to admit.

4       In short, the evidence surrounding Musk's intentionally concealed purchases, knowledge of
5  his influence, and the fact that he violated SEC regulations are key facts in this case and certainly do
6  not warrant exclusion under Rule 403. *See United States v. Velazquez* 125 F.4th 1290, 1296 (9th Cir.
7  2025) ("Application of Rule 403 must be cautious and sparing' because the Rule's 'major function is
8  limited to excluding matter ***of scant or cumulative*** probative force, dragged in by the heels for the
9  sake of its prejudicial effect.") (emphasis added). Musk's claims that he needs to refute these facts
10 would not consume undue time as it is uncontested that he filed his form late and the statute provides
11 for strict liability. At a minimum, these issues can be addressed during trial based on the full record
12 and facts. *Id*. (a district court's Rule 403 determination is afforded "great deference, because the
13 considerations arising under Rule 403 are susceptible only to case-by-case determinations, requiring
14 examination of the surrounding facts, circumstances, and issues.") (citations omitted).

15      **Tesla Lawsuit and Text Messages**

16      Plaintiffs do not intend to introduce evidence concerning Musk's 2018 tweets concerning
17 taking Tesla private. As for the text messages with Sam Bankman-Fried and Sean "Diddy" Combs,
18 which Musk confirmed he sent, Plaintiffs will only introduce them if necessary to authenticate the
19 broader collection of Twitter-related text messages that Musk produced during discovery. *See* FRE
20 901(b)(4) (authenticity may be established through the "appearance, contents, substance, internal
21 patterns, or other distinctive characteristics of the item, taken together with all the circumstances").
22 Musk should not, in good faith, contest the admissibility of his own text messages—he produced them
23 in the Delaware litigation and again here—but his attorneys have been cagey about admissibility.
24 Redenbarger Decl. at ¶7. If that continues, Plaintiffs should be permitted to use the Bankman-Fried
25 and Combs text messages to meet FRE 901's requirements.

26                             **CONCLUSION**

27      For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendant's
28 Motion in Limine No. 1.

Dated: January 29, 2026

Respectfully submitted,

**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
Tyson C. Redenbarger (SBN 294424)
Elle D. Lewis (SBN 238329)
Gia Jung (SBN 340160)
Caroline A. Yuen (SBN 354388)

*/s/ Tyson C. Redenbarger*
Tyson C. Redenbarger

San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
Aaron P. Arnzen (SBN 218272)

*/s/ Aaron P. Arnzen*
Aaron P. Arnzen

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Tyson C. Redenbarger, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of January, 2026, at Burlingame, California.

*/s/ Tyson C. Redenbarger*
Tyson C. Redenbarger