COTCHETT, PITRE & MCCARTHY, LLP
Joseph W. Cotchett (SBN 36324)
*jcotchett@cpmlegal.com*
Mark C. Molumphy (SBN 168009)
*mmolumphy@cpmlegal.com*
Tyson C. Redenbarger (SBN 294424)
*tredenbarger@cpmlegal.com*
Elle D. Lewis (SBN 238329)
*elewis@cpmlegal.com*
Gia Jung (SBN 340160)
*gjung@cpmlegal.com*
Caroline A. Yuen (SBN 354388)
*cyuen@cpmlegal.com*
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
*fbottini@bottinilaw.com*
Aaron P. Arnzen (SBN 218272)
*aarnzen@bottinilaw.com*
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GIUSEPPE PAMPENA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | Case No. 3:22-CV-05937-CRB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 3 TO PRECLUDE EVIDENCE AND ARGUMENT REGARDING ELON MUSK'S POLITICS AND MANAGEMENT OF TWITTER/X**<br><br>**(PUBLIC – REDACTED VERSION)**<br>Date:      February 17, 2026<br>Time:      2:00 p.m.<br>Courtroom: 6, 17th Floor<br>Judge:     Honorable Charles R. Breyer |

# INTRODUCTION

If Defendant Elon Musk has his way, Plaintiffs will be left without crucial evidence to prove Musk's scienter, which is an element of Plaintiffs' sole claim here. Indeed, through his Motion in Limine No. 3 to Preclude Evidence and Argument Regarding Elon Musk's Politics and Management of Twitter/X, Musk attempts to handicap Plaintiffs' effort to present a full portrait of his fraud through circumstantial evidence of Musk's state of mind when he misled investors and broke the law.

Absent a mind-reading gadget or direct admission about Musk's motives as he embarked on his fraudulent scheme, Plaintiffs intend to establish Musk's state of mind through circumstantial evidence. Specifically, Plaintiffs will show what was motivating Musk before, during, and after his acquisition of Twitter in 2022. An exceptionally important piece of the puzzle: Musk sought to quadruple Twitter's value after taking over the company. His fixation on making his Twitter gambit pay enormous dividends manifested in various ways, including his actions before **and** after taking over the company. Such financial motive evidence is the bread and butter of proving state of mind in almost every fraud case brought before a jury—to take one example from this District's recent memory, one is hard pressed to imagine the Government trying to prove that Elizabeth Holmes and Sunny Balwani defrauded Theranos investors without presenting evidence of their intended fraudulent proceeds. That's because the "proof of scienter required in fraud cases is often a matter of inference from circumstantial evidence." *Herman & Maclean v. Huddleston*, 459 U.S. 375, 390 n.30 (1983). As such, the law has long recognized that "intent can be inferred from circumstantial evidence, including financial motive." *Spencer v. City of Spokane*, 836 F. App'x 516, 518 (9th Cir. 2020) (quoting, *inter alia*, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009)). Here, Plaintiffs will show that, in the days and hours leading up to May 13, 2022, Musk decided to tank the deal because his plans to quadruple the value of his investment came into serious jeopardy.

Musk also seeks to exclude evidence surrounding his political stances. To be sure, Plaintiffs see no benefit in dwelling on politics, have no interest in polarizing the jury, and must convince jurors of all political inclinations in order to prevail. But it is virtually impossible to tell the full story of Musk's acquisition of Twitter, or his change of heart and attempt to escape or renegotiate the deal that

Case No: 3:22-CV-05937-CRB

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 3 TO PRECLUDE EVIDENCE
AND ARGUMENT REGARDING ELON MUSK'S POLITICS AND MANAGEMENT OF TWITTER/X          1

are at the center of his scheme to defraud investors, without evidence that may tangentially touch upon Musk's political views—mainly because Musk repeatedly infused his effort to take over Twitter with politics. It would also be exceptionally difficult to enforce a politics-based exclusion order, given that virtually everything Musk said and did in 2022 vis-à-vis Twitter was arguably motivated by politics. Separately, because at least one key witness has closely associated himself with Musk and his political efforts, Plaintiffs will be unable to explore that witness's bias under oath without some mention of politics.

The Court should deny Musk's present motion.

## RELEVANT FACTUAL BACKGROUND

### I. Musk's Plans to Quadruple His Money

Musk is fond of telling audiences that he purchased Twitter to save free speech and could care less about the financial implications of taking over Twitter.

> This is not a way to sort of make money … My strong intuitive sense is that having a public platform that is maximally trusted and broadly inclusive is extremely important to the future of civilization. I don't care about the economics at all.

April 14, 2002 TED Talk, at 15:30–16:00 (available at https://www.youtube.com/watch?v=cdZZpaB2kDM).

Plaintiffs have uncovered—and should be permitted to present—evidence that undermines Musk's self-proclaimed selflessness. Indeed, the evidence shows that Musk conceived of buying Twitter as a way to make himself even more extraordinarily wealthy. When he met with his bankers at Morgan Stanley for the first time to talk about the potential Twitter transaction, Musk announced ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* ECF 253-8, Claassen Tr. at 151. To establish that this financial motivation was not a fleeting notion, or confined to a brief window of time, Plaintiffs will show Musk's persistent and intense focus on ensuring that his investment paid huge dividends. Examples of evidence demonstrating Musk's financial motivation include: ▇▇▇▇▇▇▇▇▇▇▇▇

1 ███████████████████████████████████████████████████████████████ (Ex. 1[1]); (2)
2 his intent, when he took over Twitter, to make Twitter more profitable by being a ████
3 ████████████████████████████████████████ (Ex. 2); (3) ██████████████████████████
4 ████████████████████████████████████████████████████████████████████████████████
5 ████████████████████████████████████████████████████████████████████████████████
6 ████████████████████████████████████████████████████████████████████████████████
7 █████████████████████████████████████████ (Ex. 3 at 4); (4) █████████████████████
8 ████████████████████████████████████████████████████████████████████████████████
9 ██████████████████████████████████████ (Ex. 4); (5) firing 80% of the company's
10 workforce shortly after acquisition (Ex. 5)[2]; terminating Twitter's senior executives and denying them
11 their earned severance packages in order to save over $200 million (Ex. 6 at ¶ 4); and refusing to pay
12 vendors and landlords (Ex. 7).

13    Establishing these facts will, in turn, allow Plaintiffs to argue that Musk tried to back out of
14 the deal when he began to suspect that his eagerly anticipated profits were in jeopardy. First, Tesla
15 stock—which was near and dear to Musk's heart and the primary source of his wealth—began to tank,
16 and he realized he would have to sell much more Tesla (up to $16 billion-worth more) to buy Twitter.
17 *See* ECF 253-26, Expert Report of C. Davis, at 28-30. Second, the rest of the stock market was also
18 sliding, which meant that Musk could have probably paid far less for Twitter if he had just waited
19 several more months to ink the deal. The point of all of this: to show that Musk had an enormous
20 financial motivation for everything he did surrounding Twitter in 2022—including on May 13, when
21 he began to mislead investors and embarked on his scheme to defraud.

22    **II.    Musk Infused his Effort to Acquire Twitter with Politics**

23    Plaintiffs and Musk both will have to navigate at trial the fact that Musk infused his buyout
24 efforts and related communications with politics. Musk clearly bought Twitter to indulge his growing

---

[1] "Ex." citations are to the exhibits attached to the Declaration of Aaron Arnzen filed herewith.

[2] Musk tries to normalize his Twitter layoffs by pointing to layoffs at other technology companies in 2023. ECF 341 at 5:15-19. But the modest layoffs at other companies clearly demonstrate that firing 80% of Twitter's workforce was extreme and can only be explained by an intense desire to become richer still. Ex. 14 (Meta cut 13% of its staff; Amazon cut less than 1%; Alphabt cut 6%; Microsoft cut 4.5%).

political enthusiasm in 2022. Just by way of example, he told potential co-investors in X that Twitter's platform decisions ████████████████████████████████ (Ex. 2); told Morgan Stanley that Twitter' policy team was ████████████ (Ex. 8); tweeted that Democrats "have become the party of division & hate" and therefore he "will vote Republican" (Ex. 9); and subjected Twitter's Chief of Legal, Safety, and Policy to a barrage of online abuse by criticizing her supposed censorship on the platform: "After Musk's remark, other Twitter users started trolling the Indian-born policy chief. They flooded her mentions with sexist and racist vitriol. CEO Parag Agrawal, himself of Indian origin, was also enveloped in some of the attacks" (Ex. 10).

Musk eventually joined the current administration in Washington D.C. to help run the so-called Department of Government Efficiency, or "DOGE" (the name of a cryptocurrency that Musk touts). This is relevant because Anthony Armstrong—Musk's co-lead banker at Morgan Stanley and a key witness in this case—went to work for Musk as a leader at DOGE. Ex. 11. After that, Armstrong took another job working for Musk as the Chief Financial Officer at xAI, Musk's artificial intelligence company. *Id.* Armstrong's co-lead at Morgan Stanley and another important trial witness, Michael Grimes, has also taken a position in the current administration's Department of Commerce, which has a hand in tariff enforcement and other politically charged issues. Ex. 12. Plaintiffs have not yet learned (and therefore seek to question Grimes and/or Musk about) whether Musk had a hand in Grime's transition.

## ARGUMENT

### I. Circumstantial Evidence of Musk's State of Mind Should Be Admitted

It is extraordinarily important to Plaintiffs' case that they be permitted to fully develop evidence of Musk's scienter, including his motive for making false statements and engaging in a fraudulent scheme during his acquisition of Twitter in 2022. Because Musk has never directly admitted that he misled investors, the only proof available to Plaintiffs is circumstantial evidence—a characteristic of virtually every fraud trial. The "proof of scienter required in fraud cases is often a matter of inference from circumstantial evidence." *Herman & Maclean*, 459 U.S. at 390 n.30.

So, how will Plaintiffs show that Musk was motivated by his financial situation vis-a-vis Twitter when he began to mislead investors on May 13, given the lack of direct evidence or

admissions? By demonstrating that Musk kept a steady and probing focus on his prospective profits from Twitter before, during, and shortly after the acquisition. This began with Musk's early fixation on quadrupling his money and his pre-agreement predictions that he would be a ████████ ████████████████████████ in order to make Twitter profitable, and carried all the way through his refusal to pay Twitter's bills and purge Twitter's employees shortly after he took the reigns at X. *See supra*, Ex. 2.

Such evidence is routinely admitted in cases where a fraud defendant is motivated by profits. "[I]ntent can be inferred from circumstantial evidence, including financial motive." *City of Spokane*, 836 F. App'x at 518 (quoting, *inter alia*, *Zucco Partners*, 552 F.3d at 991). Circumstantial evidence of this kind is every bit as valid and admissible as is direct evidence, given that the "law makes no distinction between the weight to be given to either direct or circumstantial evidence." MANUAL OF MODEL CIVIL JURY INSTRUCTIONS, 1.12 Direct and Circumstantial Evidence. The reason underlying this sensible rule is as obvious as it is time-tested:

> Because it is difficult to prove intent to defraud from direct evidence, a jury may consider circumstantial evidence of fraudulent intent and draw reasonable inferences therefrom. Intent can be inferred from efforts to conceal the unlawful activity, from misrepresentations, from proof of knowledge, ***and from profits***.

*United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007) (cleaned up, quotation omitted, emphasis added).

Simply put, the Court should not accept Musk's invitation to hamstring Plaintiffs' ability to prove scienter through evidence that circumstantially demonstrates Musk's intense focus on whether he could make his Twitter gambit profitable.[3]

---

[3] In support of his argument, Musk cites a number of cases. All are inapposite because they did not address whether actions or statements after the class period constituted circumstantial state of mind evidence. *E.g.*, *Ronconi v. Larkin*, 253 F.3d 423, 430 (9th Cir. 2001) (addressing falsity: "no facts are alleged in the complaint that would support an inference that the company's more optimistic predictions were known to be false or misleading at that time by the people who made them"); *Schleicher v. Wendt*, 618 F.3d 679, 683 (7th Cir. 2010) (addressing loss causation arguments, which the Court dismissed as unhelpful to its analysis); *Hsu v. Puma Biotechnology, Inc.,* 2018 WL 11669124 at *3 (C.D. Cal. Oct. 24, 2018) (excluding evidence in securities fraud trial about whether FDA later declared subject drug to be safe); *In re Tesla, Inc. Sec. Litig.*, 2022 WL 17582008, at *17 (N.D. Cal. Dec. 7, 2022) (rejecting Musk's efforts to introduce evidence of "Tesla's 'mission' to ensure a sustainable future" and "Plaintiff's post-Class Period investments and trading in Tesla").

## II. Politics, Which Musk Infused into His Twitter Acquisition, Cannot Be Fairly Excised from the Evidence

Musk also seeks to exclude references to politics at trial. Plaintiffs realize that playing the political card would likely be folly at this trial; to prevail, Plaintiffs must convince jurors of all political stripes to find in their favor. That said, it would be exceedingly difficult to sanitize the evidence of the political dimensions that Musk superimposed on his acquisition of Twitter. As set forth above, Musk's political enthusiasm was one of the underlying reasons that he bought Twitter, he almost invariably talked about politics whenever he talked about Twitter, and the intersection of free speech and political beliefs came up regularly when Musk and Twitter were mentioned in the same conversation. *E.g.*, Ex. 13. Even Musk's proposed trial exhibits include a Tweet about President Biden. Ex. 15. Such evidence should be admitted because the jury cannot be expected to understand and decide this case without knowing about the circumstances surrounding Musk's misstatements and scheme to defraud investors. "A jury is entitled to know the circumstances and background of a criminal charge. It cannot be expected to make its decision in a void without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992) (quotation omitted).

Musk cites a number of cases excluding evidence of political affiliation, but none involve underlying facts that are as infused with politics as this case, or rest its decision on logic that applies here. *E.g.*, *Low v. Trump Univ.*, 2016 WL 6647793, at *4 (S.D. Cal. Nov. 10, 2016) (ordering parties to "provide advance notice to the Court outside the presence of the jury if they intend to offer evidence of witnesses' political affiliation"); *Muhlrad v. City of San Marino*, 2024 WL 5349935, at *2 (C.D. Cal. Jan. 3, 2024) (granting unopposed motion *in limine* without explanation); *Shenwick v. Twitter, Inc.*, 2021 WL 1232451, at *7 (N.D. Cal. Mar. 31, 2021) (excluding an expert's political views, which had no bearing on the underlying events, as irrelevant).

In addition, there is at least one important trial witness, Anthony Armstrong, who joined Musk in his political pursuits and may be favorably biased toward Musk in part because of Musk's political leanings. Another important trial witness, Michael Grimes, also parachuted into a Department of Commerce position while Musk was particularly fervent about politics and may share the same bias.

Case No: 3:22-CV-05937-CRB

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 3 TO PRECLUDE EVIDENCE AND ARGUMENT REGARDING ELON MUSK'S POLITICS AND MANAGEMENT OF TWITTER/X   6

"Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel*, 469 U.S. 45, 52 (9th Cir. 1984).

## CONCLUSION

For the reasons set forth above, the Court should deny Musk's Motion *in Limine* No. 3 to Preclude Evidence and Argument Regarding Elon Musk's Politics and Management of Twitter/X.

Dated: January 29, 2026

Respectfully submitted,

**COTCHETT, PITRE & McCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
Tyson C. Redenbarger (SBN 294424)
Elle D. Lewis (SBN 238329)
Gia Jung (SBN 340160)
Caroline A. Yuen (SBN 354388)

*/s/ Tyson C. Redenbarger*
      Tyson C. Redenbarger

San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
Aaron P. Arnzen (SBN 218272)

*/s/ Aaron P. Arnzen*
      Aaron P. Arnzen

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Tyson C. Redenbarger, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of January, 2026, at Burlingame, California.

　　　　　　　　　　　　　　　　　　　　　　*/s/ Tyson C. Redenbarger*
　　　　　　　　　　　　　　　　　　　　　　　Tyson C. Redenbarger