QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Ellyde R. Thompson (pro hac vice)
ellydethompson@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
Jessebernstein@quinnemanuel.com
295 Fifth Ave., New York, NY 10010
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

*Attorneys for Defendant Elon Musk*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**DEFENDANT ELON MUSK'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 3 TO EXCLUDE AGGREGATE DAMAGES**<br><br>Judge: Hon. Charles R. Breyer |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT .........................................................................................................................2

    A.    The Aggregate Result of the Per-Share Damage Plaintiffs Seek is Neither Irrelevant Nor Speculative..................................................................................2

    B.    Aggregate Damages Evidence Is Not Unfairly Prejudicial Under Rule 403 ............4

    C.    Plaintiffs' "Ability to Pay" Argument Attacks a Strawman .....................................6

CONCLUSION .....................................................................................................................6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. SeaWorld Entertainment, Inc.*,
    2020 WL 241441 (S.D. Cal. Jan. 16, 2020) .............................................................................. 4

*Bell v. Fore Systems, Inc.*,
    2002 WL 32097540 (W.D. Pa. Aug. 2, 2002) .......................................................................... 5

*In re Broadcom Corp. Securities Litigation*,
    2005 WL 1403756 (C.D. Cal. June 3, 2005) ............................................................................ 5

*Hsu v. Puma Biotechnology, Inc.*,
    2018 WL 11669124 (C.D. Cal. Oct. 24, 2018) ........................................................................ 5

*Kaufman v. Motorola, Inc.*,
    2000 WL 1506892 (N.D. Ill. Sept. 21, 2000) ........................................................................... 5

*Nuwer v. FCA US, LLC*,
    2024 WL 6967240 (S.D. Fla. Jan. 10, 2024) ............................................................................ 5

*Pearlstein v. BlackBerry Ltd.*,
    2022 WL 741941 (S.D.N.Y. Mar. 11, 2022) ............................................................................ 5

*Shenwick v. Twitter, Inc.*
    2021 WL 1232451 (N.D. Cal. Mar. 31, 2021) .......................................................................... 6

*In re WorldCom, Inc. Sec. Litig.*,
    2005 WL 375314 (S.D.N.Y. Feb. 17, 2005) ............................................................................. 4

**Statutes**

Fed. R. Civ. P. 5(b) .......................................................................................................................... 8

Fed. R. Evid. 403 ................................................................................................................... 1, 2, 4, 6

**INTRODUCTION**

Plaintiffs' motion to exclude "evidence or argument at trial regarding the aggregate damages suffered by the Class" seeks to exclude any evidence or argument concerning the aggregate damages necessitated by their own damages theory—damages that simply reflect the billions in losses Plaintiffs themselves pled were caused.

Their motion also rests on a half-truth. Although Plaintiffs' expert calculates alleged damages on a per-share basis, their case is not so limited, and depends on applying those per-share figures across a defined class period and the trading volume on which their expert expressly relies. Defendant should be entitled to explain—and to test through cross-examination—what Plaintiffs' damages model necessarily yields when applied in the manner Plaintiffs themselves propose. Preventing the jury from hearing that information would leave jurors with a materially incomplete understanding of Plaintiffs' theory and would improperly insulate that theory from meaningful scrutiny.

Plaintiffs invoke Rule 403 to argue that disclosure of the aggregate results of their own model would be unfairly prejudicial. That argument fails. Where aggregate damages flow directly and mechanically from Plaintiffs' per-share methodology and class definition, the resulting magnitude is neither speculative nor irrelevant. It is part of the evidentiary record Plaintiffs themselves have created and is properly considered by the jury in evaluating the plausibility and coherence of Plaintiffs' loss-causation and damages theories.

This is not—and will not be—an argument about Defendant's ability to pay or personal financial circumstances. Defendant does not contend that liability should turn on wealth or hardship. To the contrary, it is Plaintiffs who have repeatedly injected Defendant's personal wealth and financial resources into this litigation. Having chosen to place wealth in issue when it suits their narrative, Plaintiffs cannot now invoke speculative concerns about juror sympathy to prevent the jury from understanding the magnitude of the recovery Plaintiffs themselves seek—particularly where that magnitude flows directly from Plaintiffs' own class definition and expert model.

Rule 403 does not permit Plaintiffs to present their damages case in fragments while preventing the jury from understanding what those fragments add up to in practice. At bottom,

Plaintiffs' motion seeks to portray this case as involving a modest and easily affordable recovery, rather than the sweeping monetary relief Plaintiffs actually pursue. That one-sided presentation would improperly influence the jury's perception of the case and tilt the balance unfairly against Defendant. Rule 403 favors admission—not exclusion—of such evidence.

## ARGUMENT

### A. The Aggregate Result of the Per-Share Damage Plaintiffs Seek is Neither Irrelevant Nor Speculative

Many of the premises underlying Plaintiffs' motion are not disputed. Defendant does not contest that Plaintiffs' expert calculates damages, if any, on a per-share basis, nor does Defendant dispute that damages shareholder claims will be assessed during a claims administration process. But those methodological details do not change the central reality of this case: Plaintiffs claim that Musk's conduct caused billions of dollars in shareholder damages. Dkt. 31 (First Amended Complaint or "FAC") ¶ 27 ("Musk's market manipulation worked—Twitter lost $8 billion in valuation in direct response to Musk's false statements after the Buyout was announced"), *see id.* ¶ 132 (alleging "Musk's false and misleading tweets and disparagement of Twitter had the desired effect, as they caused Twitter's stock to decline substantially in the days following the tweets, erasing over $8 billion in market capitalization"), *id.* ¶ 154 (noting that "[a]nalysts later argued that Twitter's value had declined to $25 billion by October 2022"); Dkt. 8 at 1 ("Musk . . . caused Twitter to lose billions of dollars in market capitalization."). Indeed, the original purported class-representatives, just four individuals, alone allege they collectively "suffered losses of approximately $558,383.72, as a result of Defendants' [sic] misconduct." Dkt. 8 at 6.

Plaintiffs' methodological choice to present damages as part of the trial submission on a per share basis does not render the scale of their claimed losses irrelevant or speculative.

First, even setting aside that Plaintiffs have pled that the shareholder losses here are in the billions, the potential magnitude of the aggregate damages claim is apparent from Plaintiffs' own expert evidence. Plaintiffs' expert asserts sustained per-share price deflation on each trading day between May 13 and October 2, 2022—for example, $6.17 per share on May 13. *See* Ex. 297

(Tabak Supp. Report) at Exhibit 5b-SUPP.[1] Plaintiffs define the class to include all persons and entities who sold Twitter securities during that five-month period. *See* Dkt. 31 ¶ 1. Their expert further relies on trading-volume data showing that, over the class period, between approximately 46.7 million and 60.6 million shares traded weekly on a market-maker-adjusted basis. *See* Ex. 238 (Tabak Cert. Report) ¶ 17. Even a conservative application of these figures yields aggregate damages in the multi-billion-dollar range—consistent with Plaintiffs' framing of losses in their pleadings. Although Defendant does not intend to offer a precise calculation of aggregate recovery at trial, the magnitude is obvious from Plaintiffs' own evidence. *Baker v. SeaWorld Ent., Inc.*, 2020 WL 241441, at *2 (S.D. Cal. Jan. 16, 2020) (denying motion to exclude reference to aggregate damages even though defendant "did not intend to offer a precise calculation of the potential aggregate recovery at trial.").

Second, the aggregate implications of Plaintiffs' per-share model are relevant. Plaintiffs have expressly pled that billions of dollars of shareholder losses are at stake. Even setting that aside, aggregate implications are relevant because they allow the jury to evaluate the plausibility of Plaintiffs' loss-causation and damages theory. Understanding what Plaintiffs' model necessarily implies when applied across millions of real-world trades permits the jury to assess whether the asserted per-share price impact is economically coherent and consistent with market behavior during the class period. Aggregate figures thus provide a means to test the assumptions embedded in Plaintiffs' model—namely, whether a single alleged course of conduct could realistically have caused sustained, uniform price deflation across the volume of trading Plaintiffs invoke.

Plaintiffs cannot have it both ways. They cannot publicly proclaim that Musk caused billions in shareholder losses and then ask the jury to accept a damages theory premised on class-wide price deflation across enormous trading volumes, while simultaneously insisting that the inevitable aggregate consequences of that model are irrelevant.

At the very least, where, as here, aggregate damages flow directly and mechanically from Plaintiffs' own per-share methodology and trading-volume assumptions, excluding any reference to

---

[1] All "Ex." citations are to the exhibits attached to the Declaration of Alex Bergjans filed herewith.

that result would improperly insulate Plaintiffs' theory from meaningful scrutiny. The Federal Rules do not permit Plaintiffs to present their damages case in pieces while preventing the jury from viewing the whole. *Baker,* 2020 WL 241441, at *2 ("Defendants should not be precluded from explaining that the total recovery of the class will be larger than the single-digit per-share figure calculated by Plaintiffs' expert."). Jurors are not required to deliberate in the dark. Even where damages are awarded on a per-share basis, the jury is entitled to understand that any award will ultimately be determined by applying that figure across the number of shares traded during the class period. The jury should not be asked to resolve a multi-week trial under the mistaken belief that it is deciding whether to award only a nominal sum. The Federal Rules do not require jurors to be blind to the real-world consequences of the findings they are asked to make.

### B. Aggregate Damages Evidence Is Not Unfairly Prejudicial Under Rule 403

Plaintiffs' attempt to exclude aggregate damages evidence under Rule 403 fares no better. Plaintiffs seek an unfair advantage by presenting a per-share damages model that necessarily scales across trades over the class period, while simultaneously asking the Court to bar Defendant from explaining what that model implies in practice. Courts have squarely rejected that tactic. "Testimony about the damages suffered by the class does not constitute unfair prejudice." *In re WorldCom, Inc. Sec. Litig.*, 2005 WL 375314, at *8 (S.D.N.Y. Feb. 17, 2005).

Courts routinely allow defendants in securities class actions to explain that a per-share damages figure translates into a much larger class-wide recovery. In *Baker*, 2020 WL 241441, at *2, the court denied a motion to exclude aggregate damages evidence, ruling that defendants "should not be precluded from explaining that the total recovery of the class will be larger than the single-digit per-share figure calculated by Plaintiffs' expert," rejecting plaintiffs' claims that evidence or argument concerning aggregate damages unfairly distracts the jury or invites an improper, emotional response from the jury (*see* No. 14-cv-2129-MMA (AGS) Dkt. 476-1 at 42). In *Hsu v. Puma Biotechnology, Inc.*, 2018 WL 11669124, at *2 (C.D. Cal. Oct. 24, 2018), the court found the same, denying plaintiffs' motion "to exclude evidence or reference to aggregate damages to the Class" and rejecting plaintiffs argument that evidence about the implications of a per-share damage award would be unduly prejudicial (*see* No. 8:15-CV-00865 AG (SHKx) Dkt. 512 at 3–4). In *Pearlstein*

*v. BlackBerry Ltd.*, 2022 WL 741941, at *1 (S.D.N.Y. Mar. 11, 2022), the court similarly denied in part a motion in limine regarding aggregate damages, ruling that defendants may point out to the jury the total amount of damages sought by plaintiffs. The same is true in non-securities class actions. *See Nuwer v. FCA US, LLC*, 2024 WL 6967240, at *2 (S.D. Fla. Jan. 10, 2024) (denying motion to prevent "Defendant from 'speculating' about aggregate damages").

The cases cited by Plaintiffs do not support a contrary result. *In re Broadcom Corp. Securities Litigation*, 2005 WL 1403756 (C.D. Cal. June 3, 2005), involved exclusion of a specific aggregate damages model offered by *the plaintiffs'* expert witness, not a prohibition on whether the defendants could mention at trial the concept of aggregate damages or the fact that the class-wide recovery would be larger than the per-share figure. The same is true of both *Kaufman v. Motorola, Inc.*, 2000 WL 1506892, at *2 (N.D. Ill. Sept. 21, 2000), where the court excluded *plaintiff's* expert testimony on a proportional trading aggregate damages model under *Daubert*, and *Bell v. Fore Systems, Inc.*, 2002 WL 32097540, at *4 (W.D. Pa. Aug. 2, 2002), where the court excluded the aggregated class damages approach utilized by *plaintiffs'* expert. Those decisions did not (and do not here) bar Defendant from addressing the scale of Plaintiffs' claimed recovery at trial.

Indeed the gravamen of Plaintiffs' motion—that jurors will be improperly swayed by the mere scale of the damages they seek is unsupported by law or common sense. Lay jurors are routinely asked to evaluate claims involving large sums in patent, trade secret, commercial, and personal injury cases. There is nothing inherently prejudicial about explaining that a per-share damages figure, when applied across the trading volume Plaintiffs invoke, results in a substantial total recovery. What would be misleading is to suggest—implicitly or otherwise—that the stakes of this case are minimal.

Moreover, Plaintiffs' reliance on *Shenwick v. Twitter, Inc.* 2021 WL 1232451 (N.D. Cal. Mar. 31, 2021) is misplaced. *Shenwick* does not establish a categorical rule barring all references to aggregate damages. It addressed speculative aggregate modeling untethered to record evidence and offered to discourage a jury from awarding damages for improper reasons. *Id.* at *3. Defendant seeks none of that here. Plaintiffs' attempt to stretch *Shenwick* beyond its facts should be rejected.

### C. Plaintiffs' "Ability to Pay" Argument Attacks a Strawman

Plaintiffs speculate that "[Defendant] may also seek to argue or introduce evidence regarding the effect of any judgment on [him]." (Mot. at 6).  That speculation rests on a false premise. Defendant does not intend to argue inability to satisfy a judgment, personal hardship, or that liability should turn on wealth. Plaintiffs cite no evidence suggesting otherwise.  To the extent Plaintiffs seek exclusion of arguments Defendant does not intend to make, the motion should be denied as moot.

It bears noting that, it is *Plaintiffs*—not Defendant—who have repeatedly injected Defendant's personal wealth into this litigation. *See* Dkt. 21 at 14, Dkt. 31 ¶¶ 22, 68, Dkt. 62 at 10, Dkt. 295 at 1. Yet it is Plaintiffs who now are invoking a speculative concern that Defendants will improperly invite juror sympathy based on ability to pay. Plaintiffs cannot manufacture a risk they themselves created and then invoke Rule 403 to exclude otherwise relevant, contextual evidence.

More fundamentally, Plaintiffs improperly conflate disavowed "ability to pay" arguments with Defendant's right to explain the implications of Plaintiffs' own damages model.  Preventing Defendant from responding to Plaintiffs' damages presentation based on speculative concerns about juror sympathy would elevate conjecture over evidence and shield Plaintiffs' theory from scrutiny. The Federal Rules do not permit Plaintiffs to invoke wealth when it suits them, while silencing Defendant from addressing the consequences of Plaintiffs' own damages framework.

### CONCLUSION

Defendant respectfully requests that the motion be denied in its entirety.

DATED: January 29, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Stephen A. Broome*
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on Thursday, January 29, 2026.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Stephen A. Broome*
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*

**ATTESTATION**

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories herein.

By /s/ Alex Bergjans
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*