QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Ellyde R. Thompson (*pro hac vice*)
ellydethompson@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
jessebernstein@quinnemanuel.com
295 Fifth Ave., New York, NY 10010
Telephone:     (212) 849-7000
Facsimile:      (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:      (213) 443-3100

*Attorneys for Defendant Elon Musk*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>ELON R. MUSK,<br><br>        Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**MOTION *IN LIMINE* NO. 3**<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND ARGUMENT REGARDING ELON MUSK'S POLITICS AND MANAGEMENT OF TWITTER/X**<br><br>Action Filed: 10/10/2022<br>Pretrial Conference: 2/17/2026<br>Time: 2 pm<br>Location: Courtroom 6, 17th Floor<br>Trial Date: 2/23/2026 |

Case No. 3:22-CV-05937-CRB

DEFENDANT'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 3 TO PRECLUDE EVIDENCE AND ARGUMENT REGARDING ELON MUSK'S POLITICS AND MANAGEMENT OF TWITTER/X

Plaintiffs' Opposition confirms this motion's necessity. They claim Musk's desire to "quadruple Twitter's value *after taking over the company*," Opp. 1 (emphasis added), somehow proves fraudulent intent in May 2022. Post-acquisition profit-seeking is expected and cannot retroactively motivate pre-acquisition statements. In any event, Plaintiffs do not allege that Musk fired the executives to make Twitter profitable; they allege he fired them to pursue vendettas. *See* Dkt. 168 at 3. Plaintiffs also seek to tell the jury that Musk's actions caused "Indian-born" Twitter executives to be "flooded with sexist and racist vitriol," and to delve into Musk's political activities long after the close of the Class Period because they know that is likely inflame a likely liberal-leaning jury pool. Opp. at 4. This inflammatory evidence has zero probative value but is certain to have enormous prejudicial impact. The Court should exclude it.

## ARGUMENT

## I.    PLAINTIFFS CONCEDE THE RELEASE OF THE TWITTER FILES AND MUSK'S MANAGEMENT OF CONTENT MODERATION ARE INADMISSIBLE

Plaintiffs fail to respond to Musk's arguments regarding the irrelevance and prejudicial nature of introducing evidence and argument regarding Musk's release of the "Twitter Files" in November 2022 and implementation of other content moderation policies after he acquired Twitter. *See* Mot. at 4-5. Therefore, Plaintiffs "consent to the granting of the motion [*in limine*] on such issue[s]." *Smith v. City of La Verne*, 2024 WL 2106742, at *2 (C.D. Cal. Apr. 30, 2024).

## II.    PLAINTIFFS' SELF-DEFEATING "FINANCIAL MOTIVE" THEORY MUST STILL BE TEMPORARILY RELEVANT

Plaintiffs' Opposition reveals a fatal tension at the heart of their case. Their liability theory is that Tesla stock declined and the transaction became too costly, so Musk lied about bots to get out of the Twitter acquisition. Yet their relevance theory for admitting post-Class Period conduct is that Musk wanted the deal to succeed so badly that he would fire executives to save severance costs and slash Twitter's workforce to boost margins. These theories cannot coexist. Musk cannot both want out of the deal ***and*** be hyper-focused on making money from Twitter. If Musk's true motive was to "quadruple" his investment, then he would have every reason to close the deal and pursue that return—not to tank the stock price[1] and risk losing the acquisition entirely.

---

[1]   Plaintiffs never explain how Musk's desire to make Twitter profitable after acquisition translates into motive to *depress* Twitter's stock price during the Class Period. Firing 80% of the workforce in November 2022 and denying executives severance in October 2022 demonstrates a desire to increase Twitter's value

Furthermore, although Plaintiffs trumpet as "exceptionally important" the fact that "Musk sought to quadruple Twitter's value *after taking over the company*" to justify introducing evidence of Musk's October 2022 mass layoffs and executive terminations, Opp. 1 (emphasis added), his decision to lay off a chunk of Twitter's workforce (as every other large tech company was doing at the time) and terminate executives cannot retroactively "motivate" statements made months earlier.  While Plaintiffs are correct on the law that they can use circumstantial evidence to prove scienter, they are wrong on the application.  Whatever circumstantial evidence Plaintiffs intend to offer must still bear a logical relationship to the alleged misstatements.  *In re Northpoint Commc'ns Grp., Inc. Sec. Litig.*, 184 F. Supp. 2d 991, 997 (N.D. Cal. 2001) ("[C]ircumstantial evidence to prove scienter … might include **contemporaneous** receipt of a report with information directly at odds with an alleged misrepresentation, the inference being that the conflicting data was **timely read and remembered**; and statements by witnesses that they told the actor the true facts **before the false statement was made**, the inference being that the actor heard and remembered the information, saw the discrepancy, and made the statement anyway." (emphasis added) (internal quotation marks omitted)).  The Twitter layoffs and terminations of executives at the end of 2022 are not **timely** or **contemporaneous** to the May 13, 16, and 17 statements.  Plaintiffs admit that this untimely evidence is irrelevant.  *See* Dkt. 349 at 1, 5, 6 ("The relevant inquiries in this case are whether Musk's statements were false or misleading," so evidence "that post-date[s] May 17 ha[s] no probative value" and "thus would be irrelevant under FRE 402.").  As such, "circumstantial evidence" that post-dates May 17 should be excluded.[2]

### III.  MUSK'S POLITICAL ACTIVITIES ARE IRRELEVANT AND PREJUDICIAL

Plaintiffs acknowledge they "see no benefit in dwelling on politics" and "have no interest in polarizing the jury."  Opp. 1.  Yet they insist on introducing evidence of Musk's 2024 Trump endorsement, his DOGE leadership, and evidence that his statements caused "Indian-born" executives to be "flooded with sexist and racist vitriol."  Opp. 4.  Plaintiffs claim that this evidence of political activities is relevant

---

*after* taking control, not to manipulate its stock price months *earlier* when he was contractually obligated to pay $54.20 per share regardless of market price.

[2]  The fact that Musk wanted to profit from a $44 billion investment is unremarkable.  That Musk later acted on this goal by reducing costs does not transform ordinary business planning into evidence of securities fraud.  The *Theranos* analogy Plaintiffs invoke (Opp. at 1) undermines their position.  In that case, Holmes and Balwani allegedly made false statements *to induce investors to give them money.*  Here, Musk made statements while *paying* Twitter shareholders $54.20 per share under a binding contract.

because "Musk superimposed [it] on his acquisition of Twitter" because "the intersection of free speech and political beliefs came up regularly when Musk and Twitter were mentioned in the same conversation." Opp. at 6.  But none of the alleged misstatements mention or allude to free speech or political beliefs.[3] This is instead a narrative that invites the jury to punish Musk for third parties' deplorable online conduct, which Musk himself abhorred.  Mot. at 4.  Rule 403 exists to exclude this type of inflammatory, prejudicial evidence.  *See Yates v. Sweet Potato Enters., Inc.*, 2013 WL 4067783, at *2-3 (N.D. Cal. Aug. 1, 2013).

If Plaintiffs want to argue Musk bought Twitter to make money rather than to promote free speech, they may do so without dragging DOGE, Trump, and allegations of racism into the courtroom.[4]  Further, Musk's belief in free speech (whatever one thinks of it) is conceptually distinct from his later partisan activities—which, importantly, are also ***temporally distinct*** from the alleged misstatements.  *Supra* 1-2.

Plaintiffs can similarly establish bias (if any) without political detail.  They claim they need political evidence to show Armstrong's bias.  Opp. 6.  But he can simply be asked whether he now works for Musk at xAI (he does).  Plaintiffs do not need to delve into his stint at the highly controversial DOGE or the political dimensions of his employment.  As for Grimes, his 2025 position in the Department of Commerce has zero connection to this case.  Plaintiffs do not even allege Musk had any role in Grimes's appointment. Opp. 4 ("Plaintiffs have not yet learned … whether Musk had a hand in Grimes' transition").  In any event, Plaintiffs will call Grimes via deposition designation.  Dkt. 358 at App. 2.  Whether Musk was involved in that transition in 2025 could not have created any bias that would have affected his 2022 deposition.

## CONCLUSION

The Court should exclude all evidence of:  (1) Musk's 2024-2025 political activities; (2) Musk's management and content moderation changes; (3) the 2022-2023 layoffs; and (4) the October 27, 2022 executive terminations.  Of those that are still contested, none are relevant to whether three May 2022 statements were false when made, and all carry substantial risk of unfair prejudice.

---

[3]  Plaintiffs dismiss Musk's cases because "none involve underlying facts that are as infused with politics as this case."  Opp. at 6.  But Plaintiffs do not explain *how* the facts are so intertwined with politics here.
[4]  Plaintiffs' meager citations to documents where Musk "invariably talked about politics whenever he talked about Twitter," Opp. at 6, are dated May and early June 2022.  Plaintiffs are free to use contemporaneous circumstantial evidence to make their arguments.  Musk's motion seeks to exclude Musk's 2024-2025 political activities and "unduly inflammatory" evidence of political affiliation.  *See Low v. Trump Univ., LLC*, 2016 WL 6647793, at *4 (S.D. Cal. Nov. 10, 2016).

1

DATED:  February 5, 2026                        QUINN EMANUEL URQUHART & SULLIVAN, LLP

2

3

4                                              By _____
                                                         */s/ Stephen A. Broome*
                                                  Alex Spiro
5                                                 Michael T. Lifrak
                                                  Stephen A. Broome
6                                                 Ellyde R. Thompson
                                                  Jesse A. Bernstein
7                                                 Alex Bergjans

8                                                 *Attorneys for Defendant Elon Musk*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 3 TO PRECLUDE EVIDENCE
AND ARGUMENT REGARDING ELON MUSK'S POLITICS AND MANAGEMENT OF TWITTER/X

1

## <u>CERTIFICATE OF SERVICE</u>

2       I hereby certify that the foregoing document was served on all counsel of record electronically or

3  by another manner authorized under FED. R. CIV. P. 5(b) on Thursday, February 5, 2026.

4

5                                  QUINN EMANUEL URQUHART & SULLIVAN, LLP

6

7                          By  */s/ Alex Bergjans*
                              Alex Spiro
8                             Michael T. Lifrak
                              Stephen A. Broome
9                             Ellyde R. Thompson
                              Jesse A. Bernstein
10                            Alex Bergjans

11
                              *Attorneys for Defendant Elon Musk*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 3 TO PRECLUDE EVIDENCE
AND ARGUMENT REGARDING ELON MUSK'S POLITICS AND MANAGEMENT OF TWITTER/X

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **<u>ATTESTATION</u>**

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories herein.

By  */s/ Alex Bergjans*
    Alex Spiro
    Michael T. Lifrak
    Stephen A. Broome
    Ellyde R. Thompson
    Jesse A. Bernstein
    Alex Bergjans

    *Attorneys for Defendant Elon Musk*

DEFENDANT'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 3 TO PRECLUDE EVIDENCE AND ARGUMENT REGARDING ELON MUSK'S POLITICS AND MANAGEMENT OF TWITTER/X