COTCHETT, PITRE & MCCARTHY, LLP
Joseph W. Cotchett (SBN 36324)
*jcotchett@cpmlegal.com*
Mark C. Molumphy (SBN 168009)
*mmolumphy@cpmlegal.com*
Tyson C. Redenbarger (SBN 294424)
*tredenbarger@cpmlegal.com*
Elle D. Lewis (SBN 238329)
*elewis@cpmlegal.com*
Gia Jung (SBN 340160)
*gjung@cpmlegal.com*
Caroline A. Yuen (SBN 354388)
*cyuen@cpmlegal.com*
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
*fbottini@bottinilaw.com*
Aaron P. Arnzen (SBN 218272)
*aarnzen@bottinilaw.com*
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br> vs.<br><br>ELON R. MUSK,<br><br><br>      Defendant. | Case No. 3:22-CV-05937-CRB<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 4 TO PRECLUDE OPINION, TESTIMONY, EVIDENCE, AND ARGUMENT CONCERNING FAKE OR SPAM ACCOUNT ESTIMATES**<br><br>Date:      February 17, 2026<br>Time:     2:00 p.m.<br>Courtroom: 6, 17th Floor<br>Judge:   Hon. Charles R. Breyer<br><br>**[PUBLIC VERSION]** |

Musk's Opposition to Plaintiffs' Motion in Limine No. 4 does not challenge the preclusion of internal reviews of spam accounts conducted <u>after</u> he acquired Twitter, as they were never produced or identified in discovery.  On third-party spam analyses conducted <u>prior</u> to acquisition, Musk fails to demonstrate that such undisclosed expert evidence is admissible under federal rules.

**Musk Does Not Contest Preclusion of Post-Acquisition "Internal Reviews."**  Musk did not address, let alone oppose, Plaintiffs' motion to preclude evidence relating to "internal reviews" of fake accounts or mDAU performed **after** Musk acquired Twitter.  *See* MIL 4 at 5-6.  For good reason: there is no documentary evidence of an internal review, Musk failed to identify or produce any evidence as required by FRCP 26(a), and the review's results would constitute improper opinion, barred by FRE 701 and FRCP 37(c), and risk confusion and prejudice under FRE 403.  Given the lack of opposition, the Court should bar such unproduced evidence.

**Undesignated, Delaware Expert Testimony and Report**.  Musk seeks to sidestep expert disclosure rules and introduce evidence from an expert he hired in the Delaware litigation, Emilio Ferrara, claiming that he is only offered as a percipient witness and not a retained expert **in this case**.  Musk's argument is self-defeating.  It is precisely because he was not disclosed that he cannot testify as an expert here.  Disclosure is required for both *retained* and *non-retained* experts.  FRCP 26(a)(2)(A) ("a party must disclose . . . **any** witness it may use at trial to present evidence under [FRE] 702, 703, or 705.") (emphasis added).  If Musk wanted to introduce his opinions at trial, he was required to disclose Ferrara as a non-retained expert and to state "the subject matter on which the witness is expected to present evidence . . . and [provide] a summary of the facts and opinions to which the witness is expected to testify."  FRCP 26(2)(C).  Since Musk did not make such a disclosure, he is now precluded from using Ferrara—a retained expert who drafted an expert report— to introduce expert opinions or testify about his specialized knowledge or work in the Delaware case.

Musk cites no authority supporting his novel argument, and the one case he does cite, *Britz*, actually supports Plaintiffs' position since the defendant there **disclosed** the non-retained experts. *See Britz Fertilizers, Inc. v. Bayer Corp.*, 2009 WL 1748775, at *1 (E.D. Cal. June 17, 2009).

**Musk Cannot Use Hired Data Scientists to Backdoor Expert Testimony**.  Musk suggests that third-party data firms he hired ("Hired Data Scientists") to evaluate Twitter's spam accounts,

well after the deal was signed, and in anticipation of litigation in Delaware, will only testify on limited non-objectionable matters. According to Musk, he "does not intend to prove Twitter's estimate was wrong or that his team's estimates were correct", but rather only to explain their "personal efforts to obtain data, why they drafted certain data requests, Twitter's responses, and their communications with Musk's team." ECF 378, ("Opp. to MIL 4") at 5. But these vague assertions clearly leave open the door for Musk to improperly introduce the undisclosed expert "estimates."

The Hired Data Scientists should not be allowed to testify or opine on any undisclosed *expert opinions* or conclusions based on their work. Musk's description of their proposed testimony does not address this point. Indeed, Musk glosses over the fact that they were experts retained in connection with the Delaware litigation to opine on *the percentage* of spam or fake Twitter accounts and the *appropriateness* of Twitter's methodology, using supposedly sophisticated and complex data sampling techniques. *See* Redenbarger Replies Declaration Exhibit ("Ex.") 6 at ROG 14 (█████████ ████████████████████████████████████████████████████████████ █████████████████████) (emphasis added). Musk even asserted privilege over communications with Hired Data Scientists on the basis that they concern the ███████████ ███████████████████████████████████████████████ Exs. 2-4 (emphasis added). Here, Musk did not disclose the Hired Data Scientists as experts. Their undisclosed expert opinions based on scientific, technical, or other specialized knowledge that "an untrained layman could not make if perceiving the same acts or events" should be precluded. FRE 701; *Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 504098, at *4 (N.D. Cal. Feb. 19, 2008).

Musk fails to provide any persuasive authority that their undisclosed *opinion testimony* is appropriate under FRE 701. Instead, the cited cases all support exclusion. *See Hynix*, 2008 WL 504098, at *3-4 ("[FRE 701](c), was added in 2000 to prevent litigants from skirting the Daubert standard or the expert disclosure guidelines by introducing expert opinion testimony as lay opinion testimony"); *Alivecor, Inc. v. Apple, Inc.*, 2024 WL 591864, at *8 (N.D. Cal. Feb. 13, 2024) (While "[a] witness may provide both lay and expert testimony, [] any testimony that is based on "scientific, technical, or other specialized knowledge" must be filtered through Rule 702.") (citations omitted).

Musk cites a single case for the general proposition that a percipient witness does not need

to be identified in an expert disclosure, *United States ex rel. Samandi v. Materials and Electrochemical Research Corporation* 2010 WL 11470583, at *2 (D. Ariz., Mar. 29, 2010), but the witness there was "MER's president and a defendant, [who] played a role in the contested events, and his testimony results from his knowledge of MER's business, not information gained from outside sources." Here, Musk's Hired Data Scientists are not parties, and they did not have firsthand knowledge of Twitter's business—they were experts retained in anticipation of the Delaware litigation to provide opinions in that case, not this case. Musk cannot now "evade the vetting and disclosure process required by Rule 702." *Hynix*, 2008 WL 504098, at *4.

Finally, the work of Musk's Hired Data Scientists, retained to perform analyses that were never even disclosed to Twitter, is irrelevant to any issues in this case. Musk claims the testimony is not offered for the truth, but to "rebut Plaintiffs' accusation that Musk's team drafted unreasonable data requests." Opp. to MIL 4 at 5. But Musk fails to explain why he needs to introduce third-party expert opinions to rebut this point. *Id*. Separately, the assignments and certain communications with the Hired Data Scientists were improperly redacted or withheld, preventing Plaintiffs from even testing Musk's claim that his information requests were reasonable. Exs. 9-15. Under federal law, Musk cannot put these communications "at issue," but claim privilege over certain content, *i.e.*, the assignment or scope of work. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (where party raises issue, the privilege is implicitly waived). *See* Plaintiffs' Reply ISO MIL 2.

**Sparktoro.** Musk claims that the Sparktoro report will be used solely to prove that it existed and "was communicated" to Musk before his May 16 statement, "not that Twitter's true spam percentage was 19.42%." Opp. to MIL 4 at 7. Yet, there is no evidence that Musk was aware of Sparktoro at any time, let alone before May 16. *See* Ex. 5 at 257:21-262:5. And Musk's 2022 Delaware discovery confirmed ███████████████████████ in making his May statements. Ex. 6 at ROGs 4-6. Musk's claim that the report "is offered to prove that the Report existed and was publicly available" does not defeat the litany of evidentiary issues that preclude this "report" from coming into evidence, including hearsay, authentication, and reliability. Opp. to MIL 4 at 7. In addition, since not offered for its truth, the unsupported "19.42%" conclusion should be precluded as undisclosed expert opinion whose probative value is outweighed by risk of confusion.

Dated: February 5, 2026

Respectfully submitted,

**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
Tyson C. Redenbarger (SBN 294424)
Elle D. Lewis (SBN 238329)
Gia Jung (SBN 340160)
Caroline A. Yuen (SBN 354388)

*/s/ Tyson C. Redenbarger*
Tyson C. Redenbarger

San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
Aaron P. Arnzen (SBN 218272)

*/s/ Aaron P. Arnzen*
Aaron P. Arnzen

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

### ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Tyson C. Redenbarger, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of February 2026, at Burlingame, California.

*/s/ Tyson C. Redenbarger*
Tyson C. Redenbarger

Case No. 22-cv-5937-CRB
PLAINTIFFS' REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 4 RE FAKE OR SPAM ACCOUNT ESTIMATES        4