QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Ellyde R. Thompson (*pro hac vice*)
ellydethompson@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
jessebernstein@quinnemanuel.com
295 Fifth Ave., New York, NY 10010
Telephone:   (212) 849-7000
Facsimile:   (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

*Attorneys for Defendant Elon Musk*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**DEFENDANT ELON MUSK'S RESPONSE TO THE COURT'S INVITATION FOR SUPPLEMENTAL BRIEFING ON MIL NO. 4 AND REQUEST FOR A CONTINUANCE**<br><br>Judge: Hon. Charles R. Breyer |

**INTRODUCTION**

At the pretrial conference, the Court indicated that Plaintiffs would be permitted to present a scheme claim encompassing everything—protected litigation activity, dismissed statements, and completely unidentified conduct—that took place during the Class Period. Such a theory of liability not only is absent from the First Amended Complaint and the grounds for certification of the class, but is also contrary to the law. Any scheme liability claim that encompasses conduct during the Class Period necessarily sweeps in months of protected litigation conduct, including statements made by counsel during and in anticipation of litigation, all of which is immune from liability under the First Amendment. The securities laws are clear that making a true statement that is not misleading cannot give rise to liability under Section 10(b), whether framed as a Rule 10b-5(b) misrepresentations and omissions claim or a Rules 10b-5(a) and (c) claim. And the "scheme" liability claim could not pass the pleading stage—much less proceed to trial—because the Federal Rules of Civil Procedure require all fraud claims, including scheme liability claims, to be pled with particularity. Plaintiffs cannot rely on boilerplate recitations of the language of Section 10(b) to assert the Amended Complaint provided notice of a scheme and cannot pursue a scheme claim at trial based on conduct never pled to be part of the scheme. For all these reasons, Plaintiffs should be prohibited from asserting a scheme liability based on litigation conduct, statements that are not materially false or misleading, and unpled conduct.

Separately, however, if the Court permits Plaintiffs to pursue scheme liability, the Court should grant a continuance to avoid prejudicing Defendant's ability to defend against this new theory, including permitting additional class discovery. Plaintiffs have invoked the fraud-on-the-market presumption set forth in *Basic*, but that presumption applies only to misstatement-based claims. Thus, at a minimum, the Court must reopen discovery to permit inquiry into the basis for reliance apart from the fraud-on-the-market presumption.

Defendant Elon Musk appreciates the Court's invitation to provide additional case law to show that the law forbids Plaintiffs from pursuing this amorphous "scheme" theory of liability. Based on the law set forth below, the Court should grant Defendant's Motion *in Limine* No. 4 to preclude Plaintiffs from advancing a scheme theory of liability at trial. In the alternative, the Court

should grant a continuance to permit class discovery based on the new theory of liability that necessitates a separate showing of reliance.

## ARGUMENT

### I. PERMITTING A SCHEME CLAIM TO PROCEED BASED ON DISMISSED STATEMENTS, UNPLED CONDUCT, AND *NOERR-PENNINGTON* PROTECTED ACTIVITY IS CONTRARY TO THE LAW

#### A. Plaintiffs Cannot Pursue A Scheme Claim Based On Conduct Protected By The First Amendment

At the threshold, the Court should uphold its obligation to preclude Plaintiffs from seeking to hold Mr. Musk liable for litigation-related activity protected by the petition clause of the First Amendment.

"The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of 'the right of the people . . . to petition the Government for a redress of grievances.'" *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (quotation omitted). The right to petition is "one of 'the most precious of the liberties safeguarded by the Bill of Rights.'" *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 524 (2002) (quoting *Mine Workers v. Illinois Bar Assn.*, 389 U.S. 217, 222 (1967)). "The essence of the *Noerr-Pennington* doctrine is that those who petition any department of the government for redress are immune from statutory liability for their petitioning conduct." *Theme Promotions, Inc. v. News Am. Marketing FSI*, 546 F.3d 991, 1006 (9th Cir. 2008). Thus, "[l]itigants are immune from liability that arises out of their petitioning activity, *i.e.*, the filing of a lawsuit, as well as conduct 'incidental to the prosecution of the suit.'" *Gamble v. Kaiser Foundation Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1027 (N.D. Cal. 2018).

Plaintiffs have made clear that they plan to assert a scheme claim based on Musk "sending letters purportedly terminating the deal with no legal basis to do so," "asserting frivolous defenses and counterclaims in the Delaware Action," and "behind-the-scenes attempts at renegotiation." Pls.' Opp. to Def.'s Mot. *in Limine* No. 4, Dkt. No. 372, at 2. Plaintiffs describe in their pretrial brief that their scheme claim includes Musk "deliver[ing] a letter to Twitter purporting to terminate the merger" on July 8 and also includes Musk's counterclaims and his "positions in the Delaware litigation." Dkt. No. 409 at 8. At the pretrial conference, the Court suggested that Plaintiffs could

present a scheme claim based on the entire "course of conduct" during the class period—that is, everything from May 13, 2022 to October 4, 2022.  But, as Plaintiffs have made abundantly clear, such an approach would ask the jury to find Musk liable for securities fraud based on months of litigation conduct squarely immunized from liability by the First Amendment.

On July 12, 2022, Twitter sued Musk in Delaware Chancery Court.  First Am. Compl., Dkt. No. 31, at ¶ 143.  Musk asserted a defense.  There can be no dispute that Musk's entire defense to litigation filed against him, including the positions taken by his counsel during that litigation, is litigation conduct.

Nor can there be any dispute that such litigation conduct is immunized from liability by the First Amendment.  *Sosa*, 437 F.3d at 933 ("Consistent with the breathing space principle, we have recognized that, in the litigation context, not only petitions sent directly to the court in the course of litigation, but also conduct incidental to the prosecution of the suit is protected by the *Noerr-Pennington* doctrine."); *Gamble*, 348 F. Supp, 3d at 1027 ("Litigants are immune from liability that arises out of their petitioning activity, *i.e.*, the filing of a lawsuit, as well as conduct 'incidental to the prosecution of the suit.'").

The same is true for Defendant's July 8 termination letter.  The Ninth Circuit is clear that "[c]onduct incidental to a lawsuit, including a pre-suit demand letter, falls within the protection of the *Noerr-Pennington* doctrine." *Theme Promotions*, 546 F.3d at 1007.  Yet not only have Plaintiffs repeatedly made clear that they intend to argue that the July 8 termination letter is a basis for scheme liability, it is also the ***only*** conduct during the entire class period outside of the May 13 alleged misstatement that Plaintiffs can argue caused Twitter's stock price to drop.  Tabak Supp. Report (Jul. 28, 2025) at Paragraph 19 ("The 10b-5(a) and (c) analysis incorporates both the May 13 tweet and the July 8, 2022 post-market termination letter.") .[1]

---

[1] Moreover, the Court has already ruled that the July 8 letter is not a basis for liability at trial.  In its class certification order, the Court denied Plaintiffs' request to appoint Steve Garrett as a lead class representative because "the evidence does . . . preclude Steve Garrett from establishing reliance on any of Musk's allegedly misleading statements." Dkt. No. 106 at 9.  The Court explained (footnote continued)

DEFENDANT ELON MUSK'S RESPONSE TO THE COURT'S INVITATION FOR SUPPLEMENTAL BRIEFING ON MIL NO. 4 AND REQUEST FOR A CONTINUANCE

This constitutional protection has just one narrow exception—where "such activity is a 'sham.'" *Gamble*, 348 F. Supp. 3d at 1027. "*Noerr-Pennington* immunity, and the sham exception, also apply to defensive pleadings, because asking a court to deny one's opponent's petition is also a form of petition; thus, we may speak of a 'sham defense' as well as a 'sham lawsuit.'" *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005). But Plaintiffs did not include in the Joint Pre-Trial Order the sham litigation exception as an issue to be tried—a prerequisite for any claim premised on litigation conduct. That "pretrial order controls the subsequent course of the action and the parties are bound by their agreement to limit the issues to be tried." *United States v. Joyce*, 511 F.2d 1127, 1130 n.1 (9th Cir. 1974). And, in any event, allegations of improper or illegal purposes and motivations do not render litigation conduct a "sham." *Empress LLC v. City and County of San Francisco*, 419 F.3d 1052, 1056–57 (9th Cir. 2005) (citing *United Mine Workers*, 381 U.S. at 669, for the proposition that "illegal purposes and motivations behind petitioning do not illegalize the petitioning conduct").

Up to this point, the Court has not addressed that all of Defendant's litigation conduct is immunized by the *Noerr-Pennington* doctrine. At the motion to dismiss, the Court recognized that "[t]he termination letters . . . are potentially incidental to the Delaware Action," but did not address the *Noerr-Pennington* issue because the Court held that "Plaintiffs have not adequately alleged falsity with respect to the letters." Dkt. No. 48 at 39. If Plaintiffs may now seek to re-insert the July 8 termination letter, subsequent termination letters, and core litigation conduct such as positions taken by Mr. Musk's lawyers during litigation, the Court must now address *Noerr-Pennington*. As set forth above, the law is clear that this conduct is categorically immune from statutory liability.

---

that Steve Garrett's claims were atypical of the class because "he sold his shares in July 2022 because Musk said that he was terminating the deal, and he ruled out any other reason for doing so." *Id.* The Court reasoned that the July 8 termination was not one of "Musk's allegedly misleading statements" or an act giving rise to Plaintiffs' claims and thus Steve Garrett could not avail himself of the presumption of class-wide reliance. *Id.* at 10.

### B. Plaintiffs Cannot Pursue A Scheme Claim Based On Statements That Are Not Actionable Under Rule 10b-5(b)

Nor may Plaintiffs pursue a scheme claim based on non-actionable statements, including statements the Court has dismissed under Rule 10b-5(b).

To state the obvious, a securities fraud claim requires fraud. *Chiarella v. U.S.*, 445 U.S. 222, 234–35 (1980). "Section 10(b) is aptly described as a catchall provision, but what it catches must be fraud." *Id.* Section 10(b) of the Exchange Act makes it unlawful to "use or employ . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). "Rule 10b-5 encompasses only conduct already prohibited by § 10b." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). Thus, a scheme liability claim can include "dissemination of ***false or misleading*** statements with intent to defraud." *Lorenzo v. Securities and Exchange Commission*, 587 U.S. 71, 78 (2019) (emphasis added). But, beyond that, "the cause of action must be based either on a 'manipulative' device or contrivance or on a 'deceptive' one." *Desai v. Deutsche Bank Sec. Litig.*, 573 F.3d 931, 938 (9th Cir. 2009). Plaintiffs recognize as much. Pls.' Pretrial Br. at 7 (citing *Rabkin v. Lion Biotechnologies*, 2018 WL 905862, at *16 (N.D. Cal. Feb. 15, 2018) (explaining that claims brought under Rules 10b-5(a) and (c)—so called "scheme liability" claims—must allege that "the defendant committed a deceptive or manipulative act in furtherance of the alleged scheme"); *see also York County on Behalf of County of York Ret. Fund v. HP Inc.*, 738 F. Supp. 3d 1182, 1206 (N.D. Cal. 2024) (articulating the same requirement).

Here, Plaintiffs ground their scheme claim in an assertion that "Musk engaged in manipulative conduct constituting a fraudulent scheme to keep Twitter's stock price artificially depressed." Pls.' Pretrial Br., Dkt. No. 409, at 7. Plaintiffs rely on *Desai*, 573 F.3d at 940-41, for the proposition that "[m]anipulative conduct is actionable under Rule 10b-5(a) or (c) and includes activities designed to affect the price of a security." *Id.* (alteration adopted). But "'[m]anipulation' is 'virtually a term of art when used in connection with securities markets.'" *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976)).

1. "The term refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Id.* It encompasses only "practices deemed by the SEC to be 'manipulative' in this technical sense of artificially affecting market activity in order to mislead investors." *Id.* And the Supreme Court has explicitly interpreted "manipulative" in the context of § 10(b) "to require misrepresentation." *Schreiber v. Burlington Northern, Inc.*, 472 U.S. 1, 7–8 (1985).

Under this framework, a true and not misleading statement—a statement that cannot be a basis for liability under Rule 10b-5(b)—cannot be a basis for liability under Section 10(b) at all. For this reason, courts routinely dismiss statements as a basis for scheme liability where the court has already found that the statements are not actionable under Rule 10b-5(b), without any additional analysis. This Court, in *In re Palo Alto Networks, Inc. Sec. Litig.*, specifically held that "Plaintiffs cannot remedy their failure to plead falsity or scienter by repackaging their claims as 'scheme liability' claims under SEC Rules 10b-5(a) and (c)." 2025 WL 2410348, at *2 (N.D. Cal. Aug. 19, 2025) (Breyer, J.). Likewise, in *Kang v. PayPal Holdings, Inc.*, this Court concluded that "PayPal correctly argues that this alleged scheme consists entirely of (and fails for the same reasons as) the misstatements analyzed above." 620 F. Supp. 3d 884, 902 (N.D. Cal. 2022) (Breyer, J.); *see also In re Stem, Inc. Sec. Litig.*, 2025 WL 3675114, at *11 (N.D. Cal. Dec. 17, 2025) ("A scheme liability claim can be based on false or misleading statements that also violate section 10(b), but where the alleged scheme consists entirely of' failed section 10(b) statements, a plaintiff likewise fails to adequately plead a scheme. Here, . . . the Court dismissed plaintiffs' claim alleging scheme liability to the extent said claim was based on allegedly false or misleading statements, finding plaintiffs failed to plead any such statement violated section 10(b)."); *In re Illumina, Inc. Sec. Litig.*, 2025 WL 2739655, at *4 (S.D. Cal. Sept. 26, 2025) ("Here, Plaintiffs' scheme liability claim under Rule 10b-5(a) and (c) is basically a duplicate of their first fraud claim under Rule 10b-5(b). This scheme consists entirely of the allegations underlying Plaintiffs' first claim under Rule 10b-5(b), so it fails for the same reasons." (quotation omitted)).

At the pretrial conference, the Court articulated a specific concern—that an individual may artfully avoid liability for securities fraud by formulating intentionally misleading statements as

non-actionable statements of opinion.  *See* Feb. 18, 2026 Tr. of Proceedings at 97:17–99:22.  The Court's concern is well-taken, but it is already addressed by Rule 10b-5(b).  Statements of opinion are not *per se* "not false."  Rather, if a speaker expresses an opinion that he does not sincerely hold, that statement of opinion may be false.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615–16 (9th Cir. 2017).  Likewise, such a statement can serve as a basis for liability under Rule 10b-5(b) if a speaker omits facts "whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context."  *Id.* at 616.  And, more broadly, statements "literally true on their face may nonetheless be misleading when considered in context."  *Miller v. Thane Int'l*, 519 F.3d 879, 886 (9th Cir. 2008).  Misleading statements—even when framed as statements of opinion—are actionable under Rule 10b-5(b).  The securities laws thus already address the Court's concerns.  Opinion statements that depress the market price may give rise to a scheme liability claim, but only if the statements are either materially false or misleading—that is, if the statements are fraudulent.

The law is clear that true and not misleading statements cannot be the basis for any liability under Section 10(b).  Thus, the dismissed statements cannot be recast as part of a scheme to hold Mr. Musk liable for securities fraud.

### C. Plaintiffs Cannot Pursue A Scheme Claim Based On Conduct They Did Not Plead With Particularity Was Part Of The Scheme

Finally, Plaintiffs assert that their scheme claim consists of unspecified "conduct designed to depress Twitter's stock price."  Pls.' Pretrial Br., Dkt. No. 409, at 7.  At the pretrial conference, the Court appeared inclined to allow a scheme claim to be presented to the jury that would encompass everything that happened from the beginning of the class period until the end.  The Court suggested that you cannot "parse" the Plaintiffs' scheme claim to identify specific conduct alleged as the basis for the claim.  But that is precisely what the Federal Rules of Civil Procedure require.  Rule 9(b) imposes a heightened requirement to plead all fraud claims with particularity and "[i]t is well established that claims brought under Rule 10b–5 and Section 10(b) must meet the particularity requirements of Fed. R. Civ. P. 9(b)."  *In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996).  Plaintiffs' own cited case confirm as much: "[P]laintiffs must also state with

particularity what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue." *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 577 (S.D.N.Y. 2016) (cited Pls.' Opp. to Def's Mot. *in Limine* No. 4, Dkt. No. 372, at 4).

There is no better proof that Plaintiffs simply did not allege a scheme claim as required by the Federal Rules of Civil Procedure than Plaintiffs' own citations at the pretrial conference. When the Court asked Plaintiffs to point the Court to the paragraphs in the First Amended Complaint identifying their scheme claim, Plaintiffs pointed to paragraphs 10, 11, and 188. Those paragraphs state:

> 10. To try to renegotiate the price or delay it the Merger, Musk made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market, all in violation of the law. This scheme artificially, and almost immediately, depressed the price of Twitter securities. In direct violation of the Exchange Act, Musk's statements were designed to drive down the price of the stock—as he later admitted in a BBC interview, he did not want to pay the price he had agreed to. Plaintiffs sold their Twitter common stock due to Musk's misleading statements and as a result, Plaintiffs and the class suffered economic loss in violation of federal securities laws, as set forth in detail in this Complaint.
>
> 11. The claims asserted herein arise under and pursuant to §10(b) of the Exchange Act (15 U.S.C. §78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).
>
> 188. Musk violated §10(b) of the 1934 Act and Rule 10b-5 in that he: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their sales of the Company's securities during the Class Period.

True, two of those paragraphs include the word "scheme." But there can be no dispute that none of them "state with particularity what deceptive or manipulative acts were performed." *Menaldi*, 164 F. Supp. 3d at 577. Nor do any other paragraphs in the First Amended Complaint. For this reason, Defendant was under no obligation to move to dismiss the purported scheme claim specifically—Defendant moved to dismiss the entire First Amended Complaint, which simply did not allege any conduct constituting a scheme under the securities laws. As the Court recognized at

the pretrial conference, ruling on Defendant's motion requires the Court to decide whether any scheme claim was properly pled under Rule 9(b). Tr. of Feb. 17, 2026 Proceedings at 80:7-10 ("That's it. But that's what I have to decide. Not whether the statement is false, not whether it's material. I have to decide whether it was properly pled. That's what I have to decide.").

The Court's comments at the pretrial conference highlighted the First Amended Complaint's failure to plead a scheme claim. As the Court explained, Rule 10b-5(b) and scheme liability are two separate bases for liability. But the First Amended Complaint lists a single count. "A complaint that 'commits the sin of not separating into a different count each cause of action or claim for relief' is a shotgun pleading." *In re Tupperware Brands Corp. Sec. Litig.*, No. 22-10658, 2023 WL 5091802, at *8 (11th Cir. Aug. 8, 2023) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)). Thus, where a securities fraud complaint "brings two different claims—one misrepresentation claim and one scheme liability claim—in the same count," it makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Id.* That problem is all the more heightened where, as here, Plaintiffs seek to assert scheme liability based on conduct that was never pleaded at all—after all, Plaintiffs pleaded only false statements, not conduct—or was pleaded solely for the purposes of establishing scienter. Allowing Plaintiffs to assert a scheme liability claim at trial based on conduct that was simply never identified as part of a scheme claim violates the Federal Rules of Civil Procedure, would deprive Mr. Musk of a fair trial, and cannot be permitted.

## II. IF THE COURT PERMITS PLAINTIFFS TO PROCEED ON THIS NOVEL SCHEME THEORY, IT SHOULD CONTINUE TRIAL AND REOPEN DISCOVERY

Any order permitting Plaintiffs to pursue a scheme claim based on a "course of conduct . . . from the first . . . statement to October 4th," Tr. of Feb. 17, 2026 Proceedings at 35:23-26:2—which includes statements the Court previously found to be nonactionable and litigation conduct—will dramatically expand the scope of the claims beyond that which the Court certified for class treatment and that the parties have litigated to this point. Under these circumstances, Mr. Musk respectfully requests—and good cause supports—a trial continuance to reopen class certification to determine whether Plaintiffs can establish class-wide reliance as to their scheme claim, as mandated by the

DEFENDANT ELON MUSK'S RESPONSE TO THE COURT'S INVITATION FOR
SUPPLEMENTAL BRIEFING ON MIL NO. 4 AND REQUEST FOR A CONTINUANCE

Supreme Court, and to conduct necessary discovery into this expanded claim. *Docklight Brands Inc. v. Tilray Inc.*, 2023 WL 4761479, at *2 (W.D. Wash. July 26, 2023) (granting trial continuance after late amendment "altered the scope of the lawsuit"); *Navajo Health Found.-Sage Mem'l Hosp., Inc. v. Burwell*, 2016 WL 10226025, at *4 (D.N.M. Sept. 16, 2016) (granting continuance where theory "significantly increased the scope of this litigation").

At the outset, the Court should grant a continuance to litigate whether Plaintiffs can establish class-wide reliance for their scheme claim. Binding Supreme Court law requires the Court to reopen class certification and allow Mr. Musk to specifically challenge Plaintiffs' scheme theory of class-wide reliance before that claim can proceed to trial. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014). To prove their "scheme claim," Plaintiffs must establish that they "relied" on the **alleged conduct** giving rise to the scheme.

"Absent the fraud-on-the-market theory, the requirement that Rule 10b–5 plaintiffs establish reliance would ordinarily preclude certification of a class action seeking money damages because individual reliance issues would overwhelm questions common to the class. The fraud-on-the-market theory, however, facilitates class certification by recognizing a rebuttable presumption of classwide reliance on public, material misrepresentations when shares are traded in an efficient market." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 462–63 (2013). Plaintiffs sought to establish predominance by invoking the presumption of reliance in *Basic Inc. v. Levinson*, 485 U.S. 224, 244–47 (1988), **exclusively** on the ground that the alleged misstatements were misleading and impacted the price of Twitter's securities. Dkt. No. 102 at 1 ("Plaintiffs have successfully invoked the fraud-on-the-market premise by demonstrating (1) Musk's false Tweets were public, (2) Plaintiffs traded in the stock after Musk made those misrepresentations and before the truth was revealed, and (3) that Twitter stock traded in an efficient market."). Notably, Plaintiffs never asserted that they were pursuing a "scheme theory" or that the members of the class **relied on any statements or conduct outside of the three alleged misrepresentations**. The word "scheme" appears nowhere in the briefing or the Court's order certifying the class.

Consistent with Plaintiffs' proffered theory of *Basic* reliance, the Court's certification order identified only a misrepresentation theory of reliance based on the three alleged misstatements at

issue. Dkt. 106 No. at 1 ("Lead Plaintiffs Steve Garrett, Nancy Price, John Garrett, and Brian Belgrave bring this securities class action against Defendant Elon Musk, alleging that Musk violated Section 10(b) of the Securities Exchange Act of 1934, as well as Rule 10b-5, by making multiple misstatements to artificially depress the price of Twitter stock."); *id.* at 2 (identifying only the three alleged misstatements); *id.* at 6–7 ("[Plaintiff's] theory is simply that Musk's statements were misleading—even to sophisticated investors and even in light of the Merger Agreement—and that his statements affected Twitter's stock price as a result."). In fact, it went further: It held that proposed lead Plaintiff Steve Garrett's claim was "atypical" of the class because "he sold his shares in July 2022 because Musk said that he was terminating the deal, and he ruled out any other reason for doing so." *Id.* at 9. According to the Court, Mr. Garrett's "identification of something other than the integrity of the market (and, of course, **other than Musk's allegedly misleading statements**) that caused him to sell Twitter stock 'severs' any causal chain linking his decision to Musk's statements and **rebuts the presumption that he relied on Musk's statements**." *Id.* at 9–10 (emphasis added). As the Court's order and analysis made clear, the only theory of class-wide reliance it certified related to the three alleged misstatements. After all, that is the only theory of reliance Plaintiffs asserted.

So, before proceeding under a new theory of loss and reliance—one apparently predicated on the same non-actionable statement that the Court previously held class members could not rely on—Plaintiffs must establish that they satisfy Rule 23 and the "fraud-on-the-market" presumption as to all theories they intend to pursue at trial. And that means Mr. Musk "***must be afforded an opportunity before class certification*** to defeat the presumption." *Halliburton*, 573 U.S. at 284 (emphasis added). At class certification, Plaintiffs did not identify any other conduct beyond the three alleged misstatements that they contended satisfied *Basic* and thus did not "afford[]" Mr. Musk "an opportunity" to defeat the presumption as to that other conduct "before class certification." Had Plaintiffs identified additional "manipulative conduct" upon which they purportedly relied, Mr. Musk would have challenged it. They did not, so he did not. But now that they are purporting to seek damages for additional conduct outside of the three alleged misstatements, the law requires that the Court give Mr. Musk the opportunity to challenge it before a class is certified as to that

theory. Accordingly, should Plaintiffs seek to establish class-wide reliance under any theory beyond the three alleged misstatements, the Court should continue trial for further class certification briefing and discovery. *Halliburton*, 573 U.S. at 284.

## CONCLUSION

The Court should grant Defendant's Motion *in Limine* No. 4 or, in the alternative, grant a continuance to allow for discovery and a determination as to whether Plaintiffs can establish class-wide reliance for their scheme claim.

DATED: February 18, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Ellyde R. Thompson*
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on Wednesday, February 18, 2026.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Alex Bergjans*
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*

# ATTESTATION

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories herein.

By /s/ Alex Bergjans
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*