1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Alex Spiro (*pro hac vice*)
2  alexspiro@quinnemanuel.com
   Ellyde R. Thompson (*pro hac vice*)
3  ellydethompson@quinnemanuel.com
   Jesse A. Bernstein (*pro hac vice*)
4  jessebernstein@quinnemanuel.com
   295 Fifth Ave., New York, NY 10010
5  Telephone:    (212) 849-7000
   Facsimile:    (212) 849-7100
6
7  Michael T. Lifrak (Bar No. 210846)
8  michaellifrak@quinnemanuel.com
   Stephen A. Broome (Bar No. 314605)
9  stephenbroome@quinnemanuel.com
   Alex Bergjans (Bar No. 302830)
10 alexbergjans@quinnemanuel.com
   865 S. Figueroa Street, 10th Floor
11 Los Angeles, California 90017
   Telephone:    (213) 443-3000
12 Facsimile:    (213) 443-3100
13
   *Attorneys for Defendant Elon Musk*
14
                   UNITED STATES DISTRICT COURT
15
                  NORTHERN DISTRICT OF CALIFORNIA
16
17
18 GIUSEPPE PAMPENA,                      CASE NO. 3:22-CV-05937-CRB
   on behalf of himself and
19 all others similarly situated,         **DEFENDANT'S NOTICE OF *EX PARTE***
                                          **APPLICATION AND *EX PARTE***
20              Plaintiff,                **APPLICATION TO CONTINUE TRIAL;**
                                          **MEMORANDUM OF POINTS AND**
21        vs.                             **AUTHORITIES IN SUPPORT**

22 ELON R. MUSK,                          Judge: Hon. Charles R. Breyer

23              Defendant.
24
25
26
27
28

## NOTICE OF APPLICATION AND *EX PARTE* APPLICATION FOR CONTINUANCE

Defendant Elon R. Musk respectfully moves *ex parte* pursuant to Federal Rule of Civil Procedure 16(b)(4), L.R. 7-10, and the Court's Standing Order B-7 for an order continuing trial on the grounds that he remains without notice of the scope of the purported "scheme" theory of securities fraud being asserted against him and that the Court has yet to resolve controlling issues of law defining the scope of that theory—which the Court has indicated may include protected petitioning conduct immunized from liability by the First Amendment and *Noerr-Pennington* doctrine, statements dismissed as unactionable, and true statements protected from liability by the First Amendment.  Good cause supports this motion.  Defendant diligently sought to discover Plaintiffs' scheme theory (but they refused to disclose it until after the close of discovery) and sought guidance from the Court as to its scope, which remains forthcoming.  Defendant diligently sought the relief at issue.  The continuance will serve a number of useful purposes—including allowing time for the Court to resolve pending, dispositive legal questions and permitting additional time to conduct discovery and adequately prepare for trial.  Neither the Court nor the Plaintiffs will be meaningfully inconvenienced.  And Defendant will suffer immense prejudice should the trial proceed as scheduled.  The bases for Defendant's motion are set forth in greater detail in the accompanying Memorandum of Points and Authorities.

PLEASE TAKE FURTHER NOTICE that this motion is based on the Memorandum of Points and Authorities below, the arguments of counsel, and any other matters properly before this Court.

PLEASE TAKE FURTHER NOTICE that pursuant to L-R 7-2(c) and Paragraph I.C of the Court's Standing Order, Defendant has filed a Proposed Order.

## ISSUES TO BE DECIDED

1.    Should the Court continue trial in light of the fact that the scope of Plaintiffs' scheme theory of securities fraud—including the extent to which it encompasses petitioning conduct immunized by *Noerr-Pennington* and unactionable statements protected by the First Amendment— remains undefined, was not disclosed to Defendant during discovery, and purports to dramatically expand the scope of allegedly actionable conduct?

1

2

DATED:  February 23, 2026          Respectfully submitted,

3

                                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

4

5                                   By: */s/ Ellyde Thompson*
                                        Alex Spiro
6                                       Michael T. Lifrak
                                        Stephen A. Broome
7                                       Ellyde R. Thompson
                                        Jesse A. Bernstein
8                                       Alex Bergjans

9
                                        *Attorneys for Defendant Elon Musk*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

      A.     The First Amended Complaint And Motion To Dismiss.........................................2

      B.     Plaintiffs' Failure To Seek Class Certification On A Scheme Theory And To Disclose Any Non-Misstatement Conduct Until *After* Discovery Closes ..........3

      C.     Plaintiffs' Non-Opposition To Mr. Musk's *Noerr-Pennington* Argument On Summary Judgment..............................................................................................6

      D.     To Date, The Scope Of Plaintiffs' Scheme Theory Remains Unclear....................6

LEGAL STANDARD..........................................................................................................8

ARGUMENT .......................................................................................................................9

I.      THE COURT SHOULD CONTINUE TRIAL TO PERMIT DEFENDANT TO PREPARE TO TRY THIS DRAMATICALLY EXPANDED AND NOVEL THEORY ....................................................................................................................9

CONCLUSION..................................................................................................................13

# TABLE OF AUTHORITIES

**Page**

## Cases

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ................................................................. 3

*Bennett v. AT&T Servs., Inc.*,
    2021 WL 11669437 (N.D. Cal. Sept. 29, 2021) ................................ 8, 12

*Docklight Brands Inc. v. Tilray Inc.*,
    2023 WL 4761479 (W.D. Wash. July 26, 2023) ................................ 9

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) ................................................................. 12

*Navajo Health Found.-Sage Mem'l Hosp., Inc. v. Burwell*,
    2016 WL 10226025 (D.N.M. Sept. 16, 2016) .................................. 9

*Parker v. Joe Lujan Enters., Inc.*,
    848 F.2d 118 (9th Cir. 1988) ....................................................... 9, 12

*Skillz Platform Inc. v. AviaGames Inc.*,
    2023 WL 8189560 (N.D. Cal. Nov. 27, 2023) ................................ 8

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ....................................................... 11

*In re Stem, Inc. Sec. Litig.*,
    2025 WL 3675114 (N.D. Cal. Dec. 17, 2025) .................................. 11

*Tutor Perini Bldg. Corp. v. First Mercury INS. Co.*,
    2024 WL 4868643 (C.D. Cal. Jan. 10, 2024) .................................. 9

## Rules and Statutes

17 C.F.R. §240.10b-5 ....................................................................... 7

17 CFR § 240.10b-5(a) and (c) .......................................................... 4, 5

Federal Rule of Civil Procedure 16(b)(4) ............................................. 8

Exchange Act Section 10(b) .......................................................... 2, 4, 7, 11

PSLRA ......................................................................................... 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Other Authorities

Fed. R. Civ. P. 9(b) ................................................................................................................ 2, 9

Fed. R. Civ. P. 16 ...................................................................................................................... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendant Elon Musk respectfully applies *ex parte* for a four-month trial continuance due to his lack of ability to prepare to defend against—or seek discovery concerning—a still ill-defined "scheme liability" theory for the lone securities fraud claim in this case.

Trial starts in this securities fraud class action starts in seven days. Yet as the Court noted on Thursday, February 19, it remains an "open question" what statements or conduct may serve as a basis for liability. Despite the Amended Complaint containing only fleeting, boilerplate references to a scheme (as Plaintiffs' counsel admitted, Feb. 17, 2026 Pretrial Conf. Tr. 64:7-9), and Plaintiffs' sandbagging Defendant with an interrogatory response on the scope of the purported scheme beyond the three misstatements ***after the close of discovery***, the Court so far has declined to grant Defendant's Motion *in Limine* No. 4. As it stands, the Court would permit Defendant to be held liable under a scheme liability theory based on petitioning conduct protected by the First Amendment's *Noerr-Pennington* doctrine for issuing termination letters and defending himself in litigation. As it stands, the Court would permit Defendant to be held liable under this "scheme" for making statements the Court dismissed as unactionable. And, as it stands, the grounds for the supposed "scheme" cannot be identified in the Amended Complaint and defies any meaningful limits: it apparently "can be based on everything that happened between one date and another date, provided that the probative value of everything that happened outweighs any prejudicial effect." Feb. 17, 2026 Pretrial Conf. Tr. 83:1-4.

While Mr. Musk appreciates the Court's invitation for additional briefing on the scheme liability question, the need for such briefing underscores the good cause justifying a continuance. To date—with trial to be begin in seven days—Mr. Musk does not know the scope of Plaintiffs' scheme theory. Plaintiffs proceeded only under a misstatement theory of fraud. The class certification motion and order identified only the three alleged false statements that survived the motion to dismiss as the acts giving rise to liability. And during discovery, Plaintiffs refused to define their scheme, instead taking the position that any "scheme" was merely "***duplicative***" of the alleged false statements. Plaintiffs did not identify any additional "conduct" giving rise to their

1   scheme until **after the close of discovery** and only two days before summary judgment briefs were

2   due.  When Defendant moved for summary judgment of the dilatory scheme theory under *Noerr-*

3   *Pennington*, Plaintiffs **did not even oppose** that part of the motion.

4        At this point, Mr. Musk prepared for trial not knowing that he would have to defend

5   dismissed statements and the actions of his lawyers in the Delaware litigation, let alone "everything

6   that happened between one date and another date."  Feb. 17, 2026 Pretrial Conf. Tr. 83:1-2.  Rushing

7   to trial when issues of great "significance in the case," Feb. 19, 2026 Jury Selection Tr. 163:7-8,

8   remain unresolved and undefined is imprudent, prejudicial, and fundamentally unfair.  No defendant

9   should be required to try a fraud case under far less notice of the accusations against him than is

10  required by even the basic pleading standards of Rule 9(b).  These extraordinary circumstances and

11  good cause demand that a continuance be granted.  The Court should continue the trial for at least

12  four months to allow Mr. Musk to prepare for trial—and seek discovery—with the knowledge of

13  the scope of any scheme liability that Plaintiffs will be permitted to pursue at trial.

14                              **<u>BACKGROUND</u>**

15      **A.    The First Amended Complaint And Motion To Dismiss**

16        Plaintiffs' First Amended Complaint ("FAC") asserts a single count for violation of Section

17  10(b) of the Exchange Act and Rule 10b-5 against Defendant Elon Musk.  After introducing the

18  claim and describing "events leading up to the beginning of the Class Period," the First Amended

19  Complaint identifies a series of alleged "false statements during the Class Period."  FAC, Dkt. No.

20  31, at ¶¶ 107–151.  Those are the only actions set out as a basis for liability; the remainder of the

21  FAC sets out scienter, loss causation, and class action allegations.  Defendant moved to dismiss the

22  entire FAC, arguing that it failed to state a claim, including because the alleged misstatements were

23  not materially false or misleading and because the alleged misstatements constitute litigation

24  conduct, which is protected from liability by the First Amendment.  Dkt. No. 34 at 11–16, 21–25.

25  After a careful analysis of every alleged false statement, the Court "DENIE[D] Defendant's motion

26  to dismiss Plaintiffs' claims to the extent they are predicated" on three specific alleged

27  misstatements—"the May 13 tweet that the deal was 'temporarily on hold,' the May 16 statement

28  that fake and spam accounts make up at least 20% of Twitter's users, and the May 17 tweet."  Dkt.

No. 48 at 39.  The Court "GRANT[ED] Defendant's motion with respect to Plaintiffs' claims to the extent they are predicated on all other challenged statements." *Id.*  As to *Noerr-Pennington*, the Court determined that the three surviving statements were not intimately related to the actual litigation process.  *Id.*  The Court reasoned that it "need not decide" whether the other challenged statements, including termination letters, were entitled to immunity under the *Noerr-Pennington* doctrine because the Court had already determined that the letters were not adequately alleged to be false.  *Id.*

### B.    Plaintiffs' Failure To Seek Class Certification On A Scheme Theory And To Disclose Any Non-Misstatement Conduct Until *After* Discovery Closes

During the course of discovery and class certification process, Plaintiffs did not put Defendant on notice that they intended to pursue a "scheme" claim based on his legal team's effort to seek information from Twitter relating to the company's spam disclosures, Defendant's termination of the Merger Agreement, or Defendant—and by extension, his counsel's—conduct in the Delaware litigation that Twitter filed following the termination letter.

***Plaintiffs Identified—And The Court Certified—Only Misstatement Claims At Class Certification***:  At Class Certification, Plaintiffs sought to establish predominance by invoking the presumption of reliance in *Basic Inc. v. Levinson*, 485 U.S. 224, 244-47 (1988), ***exclusively*** on the ground that the alleged misstatements were misleading and impacted the price of Twitter's securities.  Dkt. No. 102 at 1 ("Plaintiffs have successfully invoked the fraud-on-the-market premise by demonstrating (1) Musk's false Tweets were public, (2) Plaintiffs traded in the stock after Musk made those misrepresentations and before the truth was revealed, and (3) that Twitter stock traded in an efficient market.").  Plaintiffs never asserted that they were pursuing a theory based on Musk's termination or litigation conduct or that the members of the class relied on any statements or conduct outside of the three alleged misrepresentations.  The word "scheme" appears nowhere in the briefing or the Court's order certifying the class.

Consistent with Plaintiffs' proffered theory of *Basic* reliance, the Court's certification order identified only a misrepresentation theory of reliance based on the three alleged misstatements at issue.  Dkt. 106 No. at 1 ("Lead Plaintiffs Steve Garrett, Nancy Price, John Garrett, and Brian

DEFENDANT'S EX PARTE APPLICATION TO CONTINUE TRIAL

Belgrave bring this securities class action against Defendant Elon Musk, alleging that Musk violated Section 10(b) of the Securities Exchange Act of 1934, as well as Rule 10b-5, by making multiple misstatements to artificially depress the price of Twitter stock."); *id.* at 2 (identifying only the three alleged misstatements); *id.* at 6-7 ("[Plaintiff's] theory is simply that Musk's statements were misleading—even to sophisticated investors and even in light of the Merger Agreement—and that his statements affected Twitter's stock price as a result.").  And the Court's order rejected any liability based on dismissed statements in ruling that proposed lead Plaintiff Steve Garrett's claim was "atypical" of the class because "he sold his shares in July 2022 because Musk said that he was terminating the deal, and he ruled out any other reason for doing so."  *Id.* at 9.  According to the Court, Mr. Garrett's "identification of something other than the integrity of the market (and, of course, other than Musk's allegedly misleading statements) that caused him to sell Twitter stock 'severs' any causal chain linking his decision to Musk's statements and rebuts the presumption that he relied on Musk's statements."  *Id.* at 9–10.

***Plaintiffs Only Identified "Conduct" As A Basis For Scheme Liability <u>After</u> Discovery Closed***:  During discovery, Plaintiffs began taking the position that they were pursuing a so-called "scheme claim" beyond the scope of the three alleged misstatements that the Court did not dismiss. Defendant disputed that Plaintiffs had pleaded any such claim but diligently sought discovery demanding that Plaintiffs define exactly what their scheme claim entailed.  In February 2025, Defendant served Plaintiffs with an interrogatory requesting that they:  "State all bases and facts that support Your contention that Defendant violated 17 CFR § 240.10b-5(a) and (c)."  Ex. A[1] (Rog. 14).

In response, Plaintiffs referred Defendant to their responses to the interrogatories regarding the allegedly false statements ("Interrogatories Nos. 6, 7, 8, 9, and 10," Ex. C), and also objected to the Scheme Interrogatory as "***duplicative of Interrogatories 6, 7, 8, 9, and 10***."  Ex. B.  Plaintiffs responses to Interrogatories Nos. 6-10 identified the three alleged misstatements that survived the

---

[1]  Citations to "Ex." refer to the exhibits attached to the Declaration of Alex Bergjans filed contemporaneously herewith.

Motion to Dismiss, 27 tweets posted during the Class Period, and the July 8 Termination Letter—which Plaintiffs contended "included false and misleading statements and omissions." Plaintiffs did not identify *any conduct* or any actions or statements Defendant or his lawyers made in the Delaware Litigation. At the same time, Plaintiffs refused to concede that their so-called scheme included only the statements they identified.

Defendant demanded that Plaintiffs amend or supplement Interrogatory No. 14, Plaintiffs refused, forcing Defendant to move to compel in April 2025. Dkt. No. 175. Only on August 12, 2025, *well after discovery closed and only two days before summary judgment was due* did Plaintiffs claim for the first time that Defendant violated Rules 10b-5(a) and (c) by, *inter alia*, "making improper requests for information beyond what he was entitled to," "having his lawyers 'paper' a breach by falsely or unreasonably claiming that Twitter was refusing to provide information that Musk claimed he was entitled to," "by instigating the Delaware lawsuit and taking unsupported and changing positions in that case, and by using his deceptive conduct before and during the litigation to try to renegotiate the price or back out of the acquisition." Ex. D at 25-26. None of this conduct was pleaded as actionable in the FAC. *Compare id. with* FAC ¶¶ 107-151.

In short, Plaintiffs purported to expand their scheme claim by adding an unpleaded theory only in response to a Court order, after discovery closed, and forty-eight hours before dispositive motions were due.

***Plaintiffs Did Not Identify Any Termination Or Litigation Conduct In Their Effort To Disqualify Alex Spiro***: Plaintiffs also gave Defendant no indication that they intended to assert any theory of liability arising from Musk's July 8 termination and the subsequent litigation conduct in their motion to disqualify Alex Spiro—the ***lead lawyer in the Delaware litigation***. Dkt. No. 295. Plaintiffs brought their motion in October 2025: after discovery closed and summary judgment was briefed. *Id.* And to disqualify Spiro, Plaintiffs were required to establish a "genuine need" for his testimony. *Id.* at 9. Surely, if Plaintiffs had pleaded and were pursuing a claim arising from Musk's litigation conduct, the easiest argument they could make to establish the "genuine need" for Spiro's testimony to trigger his disqualification would be that he was leading that litigation. But they did not—arguing instead that Spiro's testimony was necessary to establish facts relating to Musk's

1    *scienter*.   Plaintiffs spent pages arguing that Spiro's testimony was genuinely needed to prove

2    whether Walter Isaacson "is telling the truth" and not a word arguing that Spiro was needed to show

3    that Musk took "unsupported and changing positions in that case" that Spiro led.  *Compare id.* at 68

4    *with* Ex. D at 26.

### C.    Plaintiffs' Non-Opposition To Mr. Musk's *Noerr-Pennington* Argument On Summary Judgment

When Mr. Musk moved for summary judgment on Plaintiffs' scheme claim to the extent it

was predicated on the termination and Delaware litigation based on the *Noerr-Pennington* doctrine,

Dkt. No. 255 at 36, **Plaintiffs did not oppose** that part of Defendant's summary judgment motion.

*See generally* Dkt. No. 268; Dkt. No 285 at 23 (noting that Plaintiffs did not oppose summary

judgment on *Noerr-Pennington* grounds).   The term "*Noerr-Pennington*" appears nowhere in

Plaintiffs' 35-page opposition.  Dkt. No. 268.  They did not dispute that the doctrine applied and did

not argue that Musk engaged in a "sham litigation."  Nor could they: Twitter's own lead litigation

lawyer conceded that "Twitter's case[] was not uncontested.  The other side of the litigation did not

agree and presented to us and the Court materials that they believed supported a contrary

conclusion."  Dkt. 255 at 29 n.8.

The Court issued a two-sentence order denying both parties' motions for summary judgment,

finding "that there are genuine issues of material fact."  Dkt. No. 302.  But the Court did not provide

any guidance as to what theories of liability and defenses it deemed unsuitable for judgment in light

of the "genuine issues of material fact."  *Id.*   The Court did, however, make clear at the pretrial

conference that it had not considered or ruled on whether *Noerr-Pennington* barred any theory

arising from Musk's termination, the Delaware Action, or any other related petitioning conduct.

Feb. 17, 2026 Pretrial Conf. Tr. at 89:18-90:8.

### D.    To Date, The Scope Of Plaintiffs' Scheme Theory Remains Unclear

At this point, uncertainty remains on the scope of the "scheme" claim that Plaintiffs will be

allowed to pursue at the trial that starts next week.  At the pretrial conference, the Court stated that

Plaintiffs allege "the defendant embarked upon a scheme to renegotiate or terminate the agreement"

but remarked that even if Defendant proved that he made no false statement, he may still be held

liable if "those [not false] statements and … everything that led up to it was part of a scheme." Feb. 17, 2026 Pretrial Conf. Tr. 66:7-67:6. The Court did not define with any particularity what the "everything" entails. The Court stated that the scheme is "based on a course of conduct—which included all the statements by the way. Some of which are actionable and some of which are not actionable. Its's an entirety of a scheme. ***You can't parse it and identify this or identify that*** … and ***they all, by the way, may be true***. And I would think that there is some materiality to it, but I haven't thought through that particular problem. But I'm saying they have a scheme. They allege a scheme … [T]hey have a scheme that commences at a certain date and ends on another date." *Id.* at 81:12-24 (emphasis added); *see also id.* 83:1-4 ("The scheme liability can be based on everything that happened between one date and another date, provided that the probative value of everything that happened outweighs any prejudicial effect….").

The uncertainty arises, in no small part, from the manner in which Plaintiffs purportedly pleaded their "scheme." When the Court asked Plaintiffs to point the Court to the paragraphs in the First Amended Complaint identifying their scheme claim, Plaintiffs pointed to paragraphs 10, 11, and 188. *Id.* at 64:7-9. Those paragraphs state:

> 10. To try to renegotiate the price or delay it the Merger, Musk made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market, all in violation of the law. This scheme artificially, and almost immediately, depressed the price of Twitter securities. In direct violation of the Exchange Act, Musk's statements were designed to drive down the price of the stock—as he later admitted in a BBC interview, he did not want to pay the price he had agreed to. Plaintiffs sold their Twitter common stock due to Musk's misleading statements and as a result, Plaintiffs and the class suffered economic loss in violation of federal securities laws, as set forth in detail in this Complaint.

> 11. The claims asserted herein arise under and pursuant to §10(b) of the Exchange Act (15 U.S.C. §78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

> 188. Musk violated §10(b) of the 1934 Act and Rule 10b-5 in that he: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their sales of the Company's securities during the Class Period.

1    The Court also did not provide a ruling as to whether statements and petitioning conduct—

2  including the termination letters and Musk's actions in the Delaware lawsuit—that are immunized

3  by *Noerr-Pennington* could give rise to liability under Plaintiffs' scheme theory.  Feb. 17, 2026

4  Pretrial Conf. Tr. at 89:18-90:8.

5    At the pretrial conference, the Court invited Defendant to submit supplemental briefing on

6  this issue.  Defendant filed his brief the following day.  Dkt. 429.  Following jury selection, on

7  February 19, the Court told the parties "[o]ne open question is the scheme—quote, scheme.  It's

8  open in the sense that the defendant has asked me, essentially, to reconsider, or to consider further."

9  Feb. 19, 2026 Tr. at 163:2-4.  The Court explained "I have indicated that because of its significance

10  in the case, I want to really think it through.  And it's helpful to think it through a second time to

11  see whether or not I wanted to change my mind.  I have no indication that I would change my mind.

12  The plaintiffs should proceed on the theory that I'm not changing my mind, but I don't want to

13  suggest that I've made up my mind for, quote, purposes of reconsideration because I haven't.  I

14  haven't read the brief yet or looked at the authority yet and so forth."  *Id.* at 163:7-15.  The Court

15  invited Plaintiffs to file a responsive brief.  As of the filing of this motion, Plaintiffs have not done

16  so, and the Court has not issued any further guidance on the scope of the purported "scheme."

17  <u>**LEGAL STANDARD**</u>

18    Courts are empowered under Federal Rule of Civil Procedure 16(b)(4) to continue a trial.

19  *Skillz Platform Inc. v. AviaGames Inc.*, 2023 WL 8189560, at *1 (N.D. Cal. Nov. 27, 2023).  "In

20  determining whether to grant a continuance, the district court considers four factors: (1) the diligence

21  of the moving party prior to seeking the continuance; (2) whether granting a continuance would

22  serve a useful purpose; (3) the extent to which granting a continuance would inconvenience the court

23  and the opposing party; and (4) the potential prejudice."  *Bennett v. AT&T Servs., Inc.*, 2021 WL

24  11669437, *1 (N.D. Cal. Sept. 29, 2021) (granting motion for continuance).  "Although the factors

25  must be taken together in deciding a motion to continue, in order to succeed, the movant must show

26  some prejudice resulting from the court's denial of the motion to continue."  *Id.* (quotations

27  omitted).  "The central inquiry under Fed. R. Civ. P. 16(b)(4) is whether the requesting party was

28  diligent."  *Skillz Platform Inc.*, 2023 WL 8189560, at *1.

1

## ARGUMENT

2 **I.    THE COURT SHOULD CONTINUE TRIAL TO PERMIT DEFENDANT TO PREPARE TO TRY THIS DRAMATICALLY EXPANDED AND NOVEL THEORY**

3

4       It is a fundamental and basic notion that a defendant be put on notice of what he is being

5 accused of and given an adequate opportunity to prepare his defense.  This protection is built into

6 our procedural and substantive rules.  Rule 9(b) requires that a plaintiff accusing a defendant of

7 fraud—even a "scheme"—plead the conduct giving rise to liability with particularity.  The PSLRA

8 requires even more.  The federal rules mandate that claims dismissed at the pleadings remain out of

9 an action absent amendment.  The discovery process requires that a party disclose its theories of

10 liability with adequate time for them to be tested.  Each of these safeguards failed in this case.  Now,

11 Defendant is at the eve of trial potentially being forced to defend a securities fraud theory of liability

12 "based on everything that happened between one date and another date"—whether fraudulent or

13 not; protected petitioning conduct or not—"provided that the probative value of everything that

14 happened outweighs any prejudicial effect."  Feb. 17, 2026 Pretrial Conf. Tr. 83:1-4.

15       The rules protect against this situation, too.  Where a new theory is articulated or expanded

16 at the eve of trial, Rule 16 empowers courts to continue trial to resolve potentially dispositive legal

17 issues, conduct more discovery, and "reprepare its case for trial on an entirely different factual

18 theory of liability."  *See Parker v. Joe Lujan Enters., Inc.*, 848 F.2d 118, 121 (9th Cir. 1988) (party

19 substantially prejudiced by late amendment); *Docklight Brands Inc. v. Tilray Inc.*, 2023 WL

20 4761479, at *2 (W.D. Wash. July 26, 2023) (granting trial continuance after late amendment "altered

21 the scope of the lawsuit"); *Tutor Perini Bldg. Corp. v. First Mercury INS. Co.*, 2024 WL 4868643,

22 at *2 (C.D. Cal. Jan. 10, 2024) (granting in part motion for continuance "to conduct limited

23 additional discovery regarding the late-disclosed witnesses and documents."); *Navajo Health

24 Found.-Sage Mem'l Hosp., Inc. v. Burwell*, 2016 WL 10226025, at *4, 15 (D.N.M. Sept. 16, 2016)

25 (granting continuance where theory "significantly increased the scope of this litigation").  Each of

26 the consideration in a Rule 16 inquiry support a continuance under these highly irregular and

27 prejudicial circumstances.  The Court should grant a continuance.

28

*First*, Defendant has been diligent in seeking clarity regarding the scope of Plaintiffs' theory from both Plaintiffs and the Court and in requesting this continuance.  Defendant had no notice that Plaintiffs intended and could proceed on a fraud theory "based on everything that happened between one date and another date, provided that the probative value of everything that happened outweighs any prejudicial effect," Feb. 17, 2026 Pretrial Conf. Tr. 83:1-5, for the pendency of this litigation and discovery.  Although Plaintiffs used the word "scheme" five times in their FAC, they did not allege any conduct giving rise to the scheme beyond alleged misstatements.  FAC ¶¶ 107-151.  Neither Plaintiffs nor the Court gave Defendant any indication that Plaintiffs sought to prove liability through any misconduct beyond the three alleged misstatements that survived the Motion to Dismiss during class certification.  Plaintiffs moved for class certification on a fraud-on-the-market theory based only the three alleged misstatements.  And the Court not only limited its Order to only those three statements, but it also dismissed a class representative who testified that he relied on the previously dismissed July 8 termination letter—which the Court has suggested can now be a basis of liability—on the grounds that his claim was "atypical" of the class.  Dkt. 106 at 1, 9.

Plaintiffs also concealed much of their "scheme" theory from Defendant until ***after the close of discovery***.  Defendant diligently demanded that Plaintiffs disclose all bases for their scheme claim.  Plaintiffs identified ***only alleged misstatements***—the vast majority of which were unpled or dismissed—and claimed that Defendant's Scheme Interrogatory was "***duplicative of***" the alleged false statements.  Ex. A-C.  Plaintiffs only disclosed additional bases after being ordered to do so by the Court and after discovery closed.  And despite having only two days to respond to these new theories, Defendant still diligently moved for summary judgment on them and asserted a *Noerr-Pennington* defense that Plaintiffs ***did not oppose***.  Given the dispute between the parties as to what theories were at issue, Defendant anticipated that the Court would define those theories in its summary judgment order to allow him to better prepare for trial.  It did not.  Defendant then diligently filed pretrial motions seeking that clarity.  And now, just days after the Court purported to tentatively describe the course of conduct at issue—all statements and actions during the Class Period whether true or false, dismissed or sustained, petitioning conduct or not—Defendant is diligently seeking a continuance.

1    *Second*, granting a continuance in this case would serve a number of profoundly useful

2    purposes.  The Court has acknowledged the "significance" of the scope of the scheme issue "in the

3    case" and expressed a desire "to really think it through."  Feb. 19, 2026 Jury Selection Tr. 163:1-8.

4    For very good reason.  The broad scheme theory apparently implicates a number of fundamental

5    and controlling issues of law that must be carefully considered and resolved before this case

6    proceeds to trial.  It remains unclear whether Mr. Musk can be held liable for making true and

7    unactionable statements if categorized as part of a scheme—despite the unanimous authority holding

8    otherwise.  *E.g., In re Stem, Inc. Sec. Litig.*, 2025 WL 3675114, at *11 (N.D. Cal. Dec. 17, 2025)

9    ("Here, … the Court dismissed plaintiffs' claim alleging scheme liability to the extent said claim

10    was based on allegedly false or misleading statements, finding plaintiffs failed to plead any such

11    statement violated section 10(b).").  It also remains unclear whether Mr. Musk can be held liable for

12    engaging in protected petitioning conduct where Plaintiffs failed to raise the "sham litigation"

13    exception—the First Amendment and an unbroken line of Ninth Circuit authority holds he cannot.

14    *E.g., Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929-31 (9th Cir. 2006).  The Court correctly understands

15    that these are weighty legal issues that require careful thought and study.  A continuance will allow

16    it—or the Ninth Circuit on interlocutory appeal—to give them the attention they deserve and avoid

17    error brought on by haste.

18    A continuance also will allow Defendant to prepare for trial with an understanding of what,

19    exactly, will need to be tried.  Defendant identified witnesses and exhibits with the understanding

20    that he would not have to defend statements the Court dismissed or the conduct of his lawyers in the

21    Delaware Action.  He did based on this Court's prior orders.  Dkt. No. 48 at 39 ("The Court

22    GRANTS Defendant's motion with respect to Plaintiffs' claims to the extent they are predicated on

23    all other challenged statements."); *id.* ("[B]ecause Plaintiffs have not adequately alleged falsity with

24    respect to the letters, the Court need not decide whether they are entitled to *Noerr-Pennington*

25    immunity.").  He engaged in discovery with that same understanding; he had no reason to believe

26    otherwise until ***after*** discovery closed.  Had he known this unpled or dismissed conduct would be

27    at issue, he would have sought and produced discovery related to the litigation of the Delaware

28    action—including, perhaps, document and deposition discovery from Twitter's lawyers.  Springing

a broad theory at the eve of trial that Plaintiffs did not disclose during discovery or plead with any particularity in their FAC is fundamentally unfair. *See Parker*, 848 F.2d at 121 (noting it would be unfair and "substantially prejudic[ial]" for defendant "be forced to reprepare its case for trial on an entirely different factual theory of liability" not timely disclosed in operative complaint). A continuance will serve the useful purpose of remedying that prejudice.

Likewise, a continuance will allow the parties to re-open the class certification process to allow Defendant to rebut the fraud-on-the-market presumption as to Plaintiffs' scheme claim, as mandated by the Supreme Court. *Halliburton Co. v. Erica P. John Fund, Inc*., 573 U.S. 258, 284 (2014) (A defendant "***must*** be afforded an opportunity before class certification to defeat the presumption." (emphasis added)).

*Third*, a continuance would not meaningfully inconvenience the Court and Plaintiffs. Defendant recognizes our unique circumstances given the basis for the scheme liability that Plaintiffs will be permitted to pursue remains unclear on the eve of trial after a jury as been impaneled.  But Plaintiffs are seeking money damages and their available remedy will not be meaningfully prejudiced by a continuance.  Nor will it affect their "ability to procure witnesses or otherwise render the trial more difficult." *Bennett*, 2021 WL 11669437, at *1 (plaintiff not inconvenienced by continuance; the "weight" of preparing for trial insufficient where no indication the continuance would impact ability to present evidence).  And while both the Court and the parties have expended substantial resources to get to this point, the Court's comments last week indicate that much work and study is still required to try this case.  Moreover, Plaintiffs will suffer even greater inconvenience if a new trial is ordered or judgment is entered for Defendant after trial as a result of legal error that could have been remedied through a more deliberative process.

*Fourth*, the potential prejudice Defendant will suffer if a continuance is denied is manifest. He may be denied a fair trial and ability to adequately prepare a defense based on tactical decisions and circumstances beyond his control. *See Bennett*, 2021 WL 11669437, at *1 (granting defendant's motion for continuance where plaintiff refused to timely produce evidence in discovery).  He will be rushed to try a case and may suffer an adverse verdict based on statements and conduct the Court dismissed years ago, statements and conduct the jury finds to be non-fraudulent (but nonetheless

1   actionable because they impacted the market), and the exercise of his First Amendment rights.  He

2   will be forced, with little notice, to defend litigation decisions made by his lawyers without having

3   the ability to call those same lawyers to testify in his—and, in effect, their own—defense.  And he

4   will have to defend claims that he took frivolous positions in a lawsuit against Twitter without

5   having the ability to meaningfully test Twitter's actions and deliberations in connection with that

6   lawsuit.  That Mr. Musk will ultimately be vindicated on appeal is cold comfort given the potential

7   professional and reputational consequences that he—and those who worked with him—may suffer

8   through an adverse verdict.

9        The circumstances and good cause mandate, at minimum, a trial continuance here.

10                                       **<u>CONCLUSION</u>**

11       For the reasons set forth above, Defendant respectfully requests that the Court continue trial

12   for four months.

13   DATED:  February 23, 2026

                                    Respectfully submitted,

14
                                    QUINN EMANUEL URQUHART &
15                                  SULLIVAN, LLP

16

17
                                    By:  ___/s/ Ellyde Thompson___
18                                      Alex Spiro
19                                      Michael T. Lifrak
                                        Stephen A. Broome
20                                      Ellyde R. Thompson
                                        Jesse A. Bernstein
21                                      Alex Bergjans

22

23                                  *Attorneys for Defendant Elon Musk*

24

25

26

27

28

DEFENDANT'S EX PARTE APPLICATION TO CONTINUE TRIAL

1

## CERTIFICATE OF SERVICE

2      I hereby certify that the foregoing document was served on all counsel of record

3    electronically or by another manner authorized under FED. R. CIV. P. 5(b) on Monday, February

4    23, 2026.

5                                        QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP
6

7

8                                  By: /s/ Ellyde Thompson
                                       Alex Spiro
9                                      Michael T. Lifrak
                                       Stephen A. Broome
10                                     Ellyde R. Thompson
                                       Jesse A. Bernstein
11                                     Alex Bergjans

12
                                       *Attorneys for Defendant Elon Musk*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S EX PARTE APPLICATION TO CONTINUE TRIAL

1

## <u>ATTESTATION</u>

2

3
     Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of

this document has been obtained from the other signatories herein.

4

5

6

7
                    By <u>*/s/ Alex Bergjans*</u>
                       Alex Spiro

8
                       Michael T. Lifrak
                       Stephen A. Broome

9
                       Ellyde R. Thompson
                       Jesse A. Bernstein

10
                       Alex Bergjans

11
                       *Attorneys for Defendant Elon Musk*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S EX PARTE APPLICATION TO CONTINUE TRIAL