# EXHIBIT A

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
jessebernstein@quinnemanuel.com
Jonathan E. Feder (*pro hac vice*)
jonathanfeder@quinnemanuel.com
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Nathan Archibald *(pro hac vice)*
nathanarchibald@quinnemanuel.com
2755 E. Cottonwood Parkway, Suite 430
Salt Lake City, Utah 84121
Telephone:    (801) 515-7300
Facsimile:    (801) 515-7400

*Attorneys for Defendant Elon Musk*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>          Plaintiff,<br><br>     vs.<br><br>ELON R. MUSK,<br><br>          Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**DEFENDANT'S AMENDED SECOND SET OF INTERROGATORIES  (NOS. 13-14)**<br><br>Judge:  Hon. Charles R. Breyer<br><br>Magistrate Judge: Donna M. Ryu |

## DEFENDANT'S SECOND SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure ("FRCP") 33, and the Local Rules of the United States District Court for the Northern District of California, Defendant Elon R. Musk serves the following interrogatories upon all plaintiffs in this matter. Defendant requests that Plaintiffs serve written responses and all responsive documents to these requests in accordance with the following instructions and definitions to Quinn Emanuel Urquhart & Sullivan, LLP, located at 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543, within 30 days of service.

## DEFINITIONS

The definitions below are incorporated by reference whenever applicable in this document and should be considered part of each such interrogatory. As used herein, all terms shall have the fullest and broadest meaning accorded to those terms and shall have the meaning generally ascribed to such terms in common parlance.

1.    "Alleged Misstatements" means and refers to the May 13, 2022 Tweet (identified at paragraph 111 of the FAC), the May 16, 2022 Statement (identified at paragraph 120 of the FAC), and the May 17, 2022 Tweet (identified at paragraph 125 of the FAC).

2.    "Defendant" refers to Elon R. Musk.

3.    "Documents" shall be defined broadly to include all written, printed, or electronically stored material, whether prepared by hand, typewriter, computer, or other means. It includes, but is not limited to, letters, emails, reports, memos, notes, records, correspondence, and any other form of written or recorded communication.

4.    "FAC" refers to Plaintiffs' First Amended Complaint filed in this matter on June 8, 2023.

5.    To "identify" means to provide sufficient information to make the item or individual clear, including names, dates, and descriptions.

6.    "Relating to," "related to," "regarding," and "referring to" means any document or communication that concerns, mentions, or is connected with the subject matter of the request, in any way.

7.     "You" or "Your" refers to each individual plaintiff in this matter, regardless of whether the plaintiff is an individual, corporation, or other entity.

8.     The use of the singular form of any word includes the plural and vice versa.

9.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring all responses within the scope of the discovery request that might otherwise be construed to be outside of its scope.

## INSTRUCTIONS

The following Instructions apply to the interrogatories below and should be considered part of each such interrogatory.

1.     Unless otherwise specified in a particular interrogatory the time period covered by each interrogatory runs from January 1, 2018 to the present.

2.     Your responses must comply with Federal Rule of Civil Procedure 33 and any other governing rule or order.

3.     These interrogatories require you to provide all responsive information.  If you withhold any requested information for any reason, state the basis for withholding the information in a manner sufficient to enable Defendant and the Court to adjudicate the validity of its withholding.  For any information or documents withheld on the grounds of privilege, work product, or other alleged protection against disclosure, or if an interrogatory is otherwise not answered in full, you must (a) identify the nature of information being withheld and all persons with knowledge of the information; and (b) specify the nature of the privilege or doctrine you claim and the grounds for claiming it, and answer the interrogatory to the extent there is no objection.

4.     Each interrogatory shall be answered fully unless it is in good faith objected to, in which event the reasons for your objections shall be stated in detail.  If any objection pertains to only a portion of an interrogatory or to a word, phrase, or clause contained in it, you shall state your objection to that portion and respond to the remainder of the interrogatory, using good faith efforts to do so.

5.      If you elect to avail yourself of the procedure authorized by Federal Rule of Civil Procedure 33(d) for answering interrogatories, you shall specify the production numbers or other identifying information of the documents from which the answer may be derived or ascertained.

6.      None of the definitions and instructions or the interrogatories should be construed as an admission relating to the existence of any evidence, to the relevance as an admission relating to the existence of any evidence, to the relevance or admissibility of any evidence, or to the truth or accuracy of any statement or characterization in any definition, instruction, or interrogatory.

7.      These interrogatories are ongoing and continuing in nature.  Promptly supplement your responses in accordance with Fed. R. Civ. P. 26(e).

8.      If you withhold information or documents on the basis of privilege, please serve with your written responses and objections all information to support the privilege claim, as required under Federal Rule of Civil Procedure 26(b)(5) and any other applicable rule or order.

### INTERROGATORIES

13.      Other than the documents listed in Your response to Interrogatory No. 2, attached hereto as Exhibit 1, identify with specificity any facts or information known or available to Defendant that would have revealed that the Alleged Misstatements were false or misleading at the time they were made.

14.      State all bases and facts that support Your contention that Defendant violated 17 CFR § 240.10b-5(a) and (c).

1  DATED:  February 21, 2025

2

3                                           */s/ Alex Bergjans*

4                                           QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
5                                           Alex Spiro (*pro hac vice*)
                                            alexspiro@quinnemanuel.com
6                                           Jesse A. Bernstein (*pro hac vice*)
                                            jessebernstein@quinnemanuel.com
7                                           Jonathan E. Feder (*pro hac vice*)
                                            jonathanfeder@quinnemanuel.com
8                                           295 Fifth Avenue
                                            New York, New York 10016
9                                           Telephone:    (212) 849-7000
10                                          Facsimile:     (212) 849-7100

11                                          Michael T. Lifrak (Bar No. 210846)
                                            michaellifrak@quinnemanuel.com
12                                          Joseph C. Sarles (Bar No. 254750)
                                            josephsarles@quinnemanuel.com
13                                          Alex Bergjans (Bar No. 302830)
                                            alexbergjans@quinnemanuel.com
14                                          865 S. Figueroa Street, 10th Floor
                                            Los Angeles, California 90017
15                                          Telephone:    (213) 443-3000
                                            Facsimile:     (213) 443-3100
16

17                                          Nathan Archibald (*pro hac vice*)
18                                          nathanarchibald@quinnemanuel.com
                                            2755 E. Cottonwood Parkway, Suite 430
19                                          Salt Lake City, Utah 84121
                                            Telephone:    (801) 515-7300
20                                          Facsimile:     (801) 515-7400

21
                                            *Attorneys for Defendant Elon Musk*
22

23

24

25

26

27

28

# EXHIBIT 1

**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
jcotchett@cpmlegal.com
Mark C. Molumphy (SBN 168009)
mmolumphy@cpmlegal.com
Tyson C. Redenbarger (SBN 294424)
tredenbarger@cpmlegal.com
Elle D. Lewis (SBN 238329)
elewis@cpmlegal.com
Gia Jung (SBN 340160)
gjung@cpmlegal.com
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN: 175783)
fbottini@bottinilaw.com
Albert Y. Chang (SBN 296065)
achang@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated, | CASE NO. 3:22-CV-05937-CRB |
| Plaintiff, | **PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES (NOS. 1-12)** |
| vs. | |
| ELON R. MUSK, | |
| Defendant. | |

**PROPOUNDING PARTY:**      **ELON MUSK**

**RESPONDING PARTY:**      **PLAINTIFFS**

**SET NUMBER:**      **ONE**

Case No: 3:22-CV-05937-CRB

Pursuant to Federal Rule of Civil Procedure ("FRCP") 36, and the Local Rules of the United States District Court for the Northern District of California, Plaintiffs, Brian Belgrave, John Garrett, and Nancy Price, hereby respond to Interrogatories, Set One, propounded by Defendant Elon Musk, as follows:

## **PRELIMINARY STATEMENT**

All of the responses contained herein are based only upon such information and documents which are presently available and specifically known to this responding party who disclosed only those contentions and documents which presently occurred to such responding party. It is anticipated that further discovery, independent investigation, legal research, and analysis may supply additional facts, add meaning to the new facts, as well as establish new factual conclusions, legal conclusions, and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the contentions and disclosures herein set forth.

The following responses are given without prejudice to the responding party's right to produce evidence of any subsequently discovered facts or documents which this responding party may later discover or recall. The responding party accordingly reserves the right to change any and all responses herein as additional facts or documents are ascertained and/or recalled and analyses thereof are made.

Plaintiffs incorporate by reference each and every general objection set forth into each and every specific response. From time to time, a specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response shall not be interpreted as a waiver of any general objection to that response.

The responses contained herein are made in a good faith effort to supply as much factual information as is presently known, but should in no way be to the prejudice of this party in relation to further discovery, research, investigation or analysis.

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES (NOS. 1-12)

**GENERAL OBJECTIONS APPLICABLE TO ALL INTERROGATORIES**

Plaintiffs generally objects to the Interrogatories on the following grounds, each of which is expressly incorporated by reference in the responses to the individual interrogatories below. All individual responses set forth herein are subject to and without waiver of any of these General Objections:

1.      Plaintiffs object to the Interrogatories to the extent that they purport to impose any obligations upon Plaintiffs that are not imposed by law, or are otherwise inconsistent with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, and any other applicable law.

2.      Plaintiffs object to the Interrogatories to the extent they seek information that is beyond the scope of permissible discovery.

3.      Plaintiffs object to the Interrogatories to the extent they seek information that can be found in the pleadings and other court filings.

4.      Plaintiffs object to the Interrogatories to the extent they seek communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine.  Plaintiffs hereby assert all applicable privileges and protections, and exclude privileges information from their responses to the Interrogatories.  Any disclosure or such privileged information is inadvertent and is not intended to waive those privileges, doctrines, and protections.

5.      Plaintiffs object to each Definition and Instruction to the extent each imposes on Plaintiffs any obligation beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of the Northern District of California, and any other applicable law.

6.      Plaintiffs object to the Interrogatories to the extent that they are overbroad, unduly burdensome and oppressive in that they would require a search for information that would be of little or no benefit with respect to the issues or controversies in this Action, such that the value of the information would be far outweighed by the burden of obtaining them.

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF
INTERROGATORIES (NOS. 1-12)

7.      Plaintiffs object to the Interrogatories to the extent they call for a legal conclusion, a legal argument, or are invasive of the attorney work product doctrine.

8.      By responding to the Interrogatories, Plaintiffs do not concede the relevancy, materiality, or admissibility as evidence of any of the information sought.

9.      No objection, limitation, response, or lack thereof made in these Objections and Responses is intended as an admission by Plaintiffs as to the existence or non-existence of information responsive to the Interrogatories.

10.      Plaintiffs object to the Interrogatories and to each and every instruction, definition, and request therein to the extent that they call for the production of information readily available through public sources, or form sources that are more convenient, less burdensome or less expensive.

11.      Plaintiffs' objections are provided without prejudice to its right to produce evidence of any subsequently discovered facts or any facts that it may later recall, and with express rights to revise, correct, supplement, or clarify any objections or responses set forth herein at a later time.

12.      The failure of Plaintiffs to make a specific objection to a particular Interrogatory is not, and shall not be construed as, an admission that responsive information exists. Likewise, any statement herein that Plaintiffs will provide information in response to an individual Interrogatory does not mean that Plaintiffs in fact has any such information, or that any such information exists. Rather, any such statement reflects the intention of Plaintiffs, subject to their objections, to conduct a reasonable search for responsive information.

13.      In providing information in response to the Interrogatories, Plaintiffs do not in any way waive, or intend to waive, but rather intends to preserve and is preserving:

a.      all objections as to competency, relevancy, materiality, authenticity, or admissibility of any Interrogatory, responses or their subject matter;

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF
INTERROGATORIES (NOS. 1-12)

b.      all objections as to vagueness, ambiguity, or other infirmity in the form of the Interrogatories, any objections based on the undue burden imposed by the Interrogatories and each individual request contained therein;

c.      all rights to object on any ground to the use of any of the information or its subject matter in any subsequent proceedings, including the trial of this or any other action;

d.      all rights to object on any ground to any further interrogatories or other discovery requests involving or related to the subject matter of any Interrogatory;

e.      all rights to revise, correct, supplement, or clarify any of the responses set forth herein at a later time; and

f.      any and all privileges and rights under applicable law, including but not limited to, the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, other statutes, guidelines and common law.

14.      Plaintiffs object to the Interrogatories to the extent they request that Plaintiff generate or create documents that did not previously exist (*e.g.*, lists, charts, etc.).

15.       Plaintiffs reserve the right to amend, modify, and supplement these responses should additional discovery warrant such amendment, modification or supplementation.

16.      The inadvertent production or revelation of privileged or otherwise protected information shall not be deemed to waive the privilege or protection with respect to such documents or information or any other documents or information.

### **OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1.      Plaintiffs object to the Interrogatories' Definitions and Instructions to the extent they (i) impose on Plaintiffs conditions and obligations that exceed or are inconsistent with those set forth in the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or any other applicable statutes, rules, or laws; (ii) depart from the customary meaning of any term or provide definitions that are inaccurate; or (iii) are based on premises that are misleading, inaccurate, or incomplete.

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES (NOS. 1-12)

2.     Plaintiffs object to the Interrogatories' Definitions and Instructions to the extent they incorporate purported facts. Plaintiffs do not adopt or confirm the accuracy of any purported facts incorporated in the Definitions and Instructions.

3.     Plaintiffs object to the definitions of "Concerning" and "identify" on the grounds that they are overbroad, vague, ambiguous, unduly burdensome, and not proportional to the needs of the case, and to the extent that those definitions purport to impose obligations on Plaintiffs that exceed or are inconsistent with those set forth in the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or any other applicable statutes, rules, or laws. Plaintiffs further object to the extent the definitions purport to require Plaintiffs to produce irrelevant information or information unknown to Plaintiffs.

4.     The Individual Defendants object to all Instructions (whether or not repeated for emphasis) to the extent they purport to impose obligations on the Individual Defendants that exceed or are inconsistent with those set forth in the Federal Rules, the Local Rules, or any other applicable statutes, rules, or laws.

**SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES**

Subject to and without waiver of the foregoing General Objections and Objections to Definitions and Instructions, which are incorporated into each response below whether or not repeated for emphasis, and the specific objections set forth below, and expressly stating that their responses are subject to all such objections, Plaintiffs respond to each specific Interrogatory as follows.

**INTERROGATORY NO. 1:**

Describe in detail—including by identifying specific provisions of the Merger Agreement and any other public documents—all reasons why the Merger Agreement did not give Defendant the right to the Bot Data as a condition to closing the Merger.

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES (NOS. 1-12)

**RESPONSE TO INTERROGATORY NO. 1:**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California. Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine. Plaintiffs further object to this Interrogatory because it calls for Plaintiffs to make a legal conclusion. Plaintiffs also object to this Interrogatory on the grounds that it contains compound, conjunctive, or disjunctive questions. Plaintiffs object to this Interrogatory because it seeks information in the possession of, is known to, or is otherwise equally available to Defendant. Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or analysis of documents or information. Creating such a compilation or summary would require undue effort and is beyond the scope of standard discovery requests. This Response is based on information currently known and available to Plaintiffs—discovery is ongoing and Plaintiffs reserve the right to amend or supplement this Response as additional discovery and depositions occur in this Action, including the deposition of Defendant.

Subject to and without waiving the foregoing objections, the Merger Agreement did not give Defendant the right to the Bot Data he requested as a condition to closing the Merger because, among other things, Defendant expressly waived due diligence as a condition to consummation of the Merger. As a result, the Merger Agreement contains no such condition and thus Musk was not entitled to due diligence regarding Bot Data, nor did he have the right to condition closing of the Merger on his receipt of Bot Data or his satisfaction with any information regarding Bot Data. *See, e.g.*, Article VII of the Merger Agreement. Moreover, Paragraph 6.4 of the Merger Agreement only afforded Musk reasonable access to information necessary to the consummation of the transactions contemplated by the Merger Agreement, and Musk did not need Bot Data to consummate the

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF
INTERROGATORIES (NOS. 1-12)

Merger.  Section 6.4 of the Merger Agreement also stated that Twitter was not required to disclose any information to Musk if such disclosure would, in the reasonable judgment of Twitter, (i) cause significant competitive harm to Twitter or its Subsidiaries.  Paragraph 6.4 also stated "No investigation or access permitted pursuant to this Section 6.4 shall affect or be deemed to modify any representation or warranty made by the Company hereunder."  Since Musk had waived due diligence and since the Company had made no representations about Bot Data in Section IV, Musk could not use Section 6.4 as a pretext to check the alleged accuracy of representations Twitter had not made in the Merger Agreement.

Musk expressly acknowledged in paragraph 4.25 of the Merger Agreement that "Except for the representations and warranties expressly set forth in this Article IV, neither the Company nor any other Person makes or has made any representation or warranty of any kind whatsoever, express or implied, at Law or in equity, with respect to the Company or any of its Subsidiaries or their respective business, operations, assets, liabilities, conditions (financial or otherwise),notwithstanding the delivery or disclosure to Parent and the Acquisition Sub or any of their Affiliates or Representatives of any documentation, forecasts or other information with respect to any one or more of the foregoing. Without limiting the generality of the foregoing, neither the Company nor any other Person makes or has made any express or implied representation or warranty to Parent, Acquisition Sub or any of their respective Representatives with respect to (a) any financial projection, forecast, estimate or budget relating to the Company, any of its Subsidiaries or their respective businesses or,(b) except for the representations and warranties made by the Company in this Article IV, any oral or written information presented to Parent, Acquisition Sub or any of their respective Representatives in the course of their due diligence investigation of the Company, the negotiation of this Agreement or the course of the Merger, or the accuracy or completeness thereof." No representations or warranties were provided to Musk in Section IV of the Merger Agreement regarding Bot Data.

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES (NOS. 1-12)

The Merger Agreement further provided in Article VII the conditions for the closing of the Merger.  None of those conditions were related in any way to Bot Data or Musk's access to Bot Data.  In addition, neither due diligence nor the receipt of adequate financing for the Merger were conditions to Musk's obligation under Article VII to consummate the Merger.  Thus, any claim by Musk that he needed Bot Data to obtain financing so he could close the Merger was false and pretextual; since the Merger was not subject to a financing contingency, Musk was obligated to consummate the Merger whether or not he obtained any financing.  In addition to the fact that Musk's receipt of financing was not a condition to consummation of the Merger, Musk had already received commitments regarding funding of the Merger prior to the announcement of the Merger Agreement.  For example, the Form 8-K filed by Twitter on April 26, 2022, to which the Merger Agreement was attached, stated:  "Pursuant to an equity commitment letter dated April 25, 2022, and subject to the terms thereof, Mr. Musk committed to provide Parent, at the effective time of the Merger, with an equity contribution of up to approximately $21 billion. Pursuant to a debt commitment letter dated April 25, 2022, and subject to the terms and conditions set forth therein, the commitment parties party thereto committed to provide to Acquisition Sub, at the effective time of the Merger, debt financing of approximately $13 billion. Pursuant to a margin loan commitment letter dated April 25, 2022, and subject to the terms and conditions set forth therein, the commitment parties party thereto committed to provide to X Holdings III, LLC, a Delaware limited liability company wholly owned by Mr. Musk, at the effective time of the Merger, margin loan financing of approximately $12.5 billion, the proceeds of which will be distributed or otherwise made available to Acquisition Sub."

Contrary to the terms of the Merger Agreement, Defendant made false statements and sought to obtain and analyze Bot Data as a pretext for terminating the Merger.  Twitter was not required to prepare or provide financial information other than the financial information provided to the U.S. Securities and Exchange Commission ("SEC"), nor provide any other information that was not available to the Company without undue effort or expense; Defendant's ability to obtain

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF
INTERROGATORIES (NOS. 1-12)

financing did not void or otherwise diminish Defendant's obligation to consummate the Merger; as noted *supra*, as of the time the Merger Agreement was signed, Defendant had already secured debt commitments that, together with his personal equity commitment, were sufficient to fund the Merger; the Bot Data sought by Defendant was not reasonably related to consummation of the Merger; Twitter was not obligated to comply with Defendant's requests for Bot Data because, in the exercise of Twitter's reasonable judgment, it determined that compliance could cause significant competitive harm to the company; Twitter was not obligated to comply with Defendant's requests for Bot Data because, in the exercise of Twitter's reasonable judgment, it determined that doing so could violate applicable law, including privacy laws; Defendant had, or was reasonably likely to, use information he requested for competitive purposes or other purposes unrelated to the consummation of the Merger; the information that Defendant requested would not allow for accurate and reliable calculations of bots. Plaintiffs further refer Defendant to the allegations in Plaintiffs' First Amended Complaint ("FAC"), the allegations in the Verified Complaint filed by Twitter, Inc. in Delaware, Case No 2022-0613-KSJM (the "Delaware Action"), Twitter's Answer to Defendants' Counterclaims in the Delaware Action, and Twitter's Answer to Defendants' Amended Counterclaims in the Delaware Action.

**INTERROGATORY NO. 2:**

Identify all provisions of the Merger Agreement—and any other public SEC filings available as of May 13, 2022—that Defendant could have reviewed that would have revealed that Twitter did not have a contractual obligation to provide Bot Data to Defendant.

**RESPONSE TO INTERROGATORY NO. 2:**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California. Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF
INTERROGATORIES (NOS. 1-12)

privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine. Plaintiffs further object to this Interrogatory because it calls for Plaintiffs to make a legal conclusion. Plaintiffs also object to this Interrogatory on the grounds that it seeks information in the possession of, is known to, or is otherwise equally available to Defendant. Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or analysis of documents or information. Creating such a compilation or summary would require undue effort and is beyond the scope of standard discovery requests. This Response is based on information currently known and available to Plaintiffs—discovery is ongoing and Plaintiffs reserve the right to amend or supplement this Response as additional discovery and depositions occur in this Action, including the deposition of Defendant.

Subject to and without waiving the foregoing objections, Plaintiffs incorporate herein their response to Interrogatory No. 1 above, which notes, among other things, that Musk could have reviewed the Form 8-K filed by Twitter on April 26, 2022, including the Merger Agreement attached thereto, including Articles IV, VI, and VII of the Merger Agreement. Defendant could also have reviewed, among other things, (1) Twitter's annual reports as filed on Forms 10-K and 10-Q for the fiscal periods ended March 31, 2017 onward, including those portions of such reports that address DAU, MDAU, spam, bots, false accounts, and other account, user and engagement metrics; (2) the entirety of the Merger Agreement, which provides the parties' various obligations and the consequences of complying and failing to comply with the agreement; (3) the specific provisions of the Merger Agreement that are cited in the Verified Complaint filed by Twitter in the Delaware Action, Twitter's Answer to Defendants' Counterclaims in the Delaware Action, and Twitter's Answer to Defendants' Amended Counterclaims in the Delaware Action. Plaintiffs further refer Defendant to the allegations in the FAC, the allegations in the Verified Complaint filed by Twitter in the Delaware Action, Twitter's Answer to Defendants' Counterclaims in the Delaware Action, and Twitter's Answer to Defendants' Amended Counterclaims in the Delaware Action.

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF
INTERROGATORIES (NOS. 1-12)

1    **INTERROGATORY NO. 3:**

2        Identify all reasons why the Merger Agreement, Twitter's 2022 proxy statements regarding

3    the Merger, and the April 21, 2022 Amended Schedule 13D, as identified in Paragraphs 82 and 112

4    of the FAC, did not sufficiently inform investors what the conditions to closing the Merger were,

5    including whether Twitter had an obligation to provide Bot Data as a condition to closing the

6    Merger.

7    **RESPONSE TO INTERROGATORY NO. 3:**

8        In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on

9    the grounds that it is overbroad, vague, ambiguous, and unduly burdensome and imposes

10   obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the

11   Local Rules of the Northern District of California. Plaintiffs also object to this Interrogatory

12   because it seeks communications, information and/or documents protected by the attorney-client

13   privilege, the attorney work product doctrine, or any other applicable privilege, protection,

14   immunity, or doctrine.  Plaintiffs further object to this Interrogatory because it calls for Plaintiffs

15   to make a legal conclusion.  Plaintiffs also object to this Interrogatory on the grounds that it contains

16   compound, conjunctive, or disjunctive questions.  Plaintiffs object to this Interrogatory because it

17   seeks information in the possession of, is known to, or is otherwise equally available to Defendant.

18   Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or

19   analysis of documents or information.  Creating such a compilation or summary would require

20   undue effort and is beyond the scope of standard discovery requests.  This Response is based on

21   information currently known and available to Plaintiffs—discovery is ongoing and Plaintiffs

22   reserve the right to amend or supplement this Response as additional discovery and depositions

23   occur in this Action, including the deposition of Defendant.

24       Subject to and without waiving the foregoing objections, the Merger Agreement, Twitter's

25   2022 proxy statements regarding the Merger,  and the April 21, 2022 Amended Schedule 13D (the

26   "Subject Documents," for purposes of this response), were not sufficient to dispel the false

27

28                                    11                    Case No: 3:22-CV-05937-CRB

statements made by Musk because none of them contained a countervailing statement that the Merger would close even if Musk did not receive the Bot Data he had requested or even if Musk or his advisors did not agree with the Bot Data or thought it was inaccurate. Musk has argued at least twice that the information available in the market was legally sufficient to advise investors of the true state of affairs and his argument has been rejected at least twice by the Court. Most recently, in the order denying Musk's Motion for Judgment on the Pleadings, the Court stated that it had rejected Musk's argument in response to Musk's initial motion to dismiss, noting:

> At the motion hearing, Defendant argued that because the Merger Agreement was publicly filed with the SEC, Defendant's tweets could not have been misleading as to Twitter's obligation under the Merger Agreement. However, Defendant does not point to a specific disclosure in the Merger Agreement that would prevent a reasonable investor from being misled by Defendant's tweet—i.e., a countervailing statement that the deal will close even if Twitter fails to provide him with the bot data he requests. *See, e.g. In re eHealth, Inc. Sec. Litig.*, No. 20-CV02395-JST, 2023 WL 6390593, at *5 (N.D. Cal. Sept. 28, 2023) (finding that although the defendants referenced SEC filings on the calls in which the alleged misstatements were made, nothing in the filings directly addressed the specific issue about which reasonable investors would be misled).

*See* Order at 20 n.8. See Dkt. No. 89 at p. 5.

The Court specifically noted that "At that time, the Court was fully aware of the provisions of the Merger Agreement that Musk now points to, and the Court determined that those provisions were not sufficient countervailing statements." *Id.* The Court then went on to reject Musk's argument a second time, denying Musk's motion for judgment on the pleadings. *Id.* at 5-6.

Defendant, whose statements are unusually persuasive and widely published, injected significant uncertainty and confusion surrounding the Subject Documents and the Merger by and through his false and misleading statements and fraudulent scheme, as alleged in the FAC; the Subject Documents did not contain a specific disclosure or provision that would prevent a reasonable investor from being misled by Defendant's false and misleading statements and fraudulent scheme; any information that was countervailing to Defendant's false and misleading statements and fraudulent scheme was not provided to the market, during the class period, with

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES (NOS. 1-12)

sufficient intensity and credibility to dispel Musk's false statements; and, during the class period, investors had access to Defendants' submissions in the Delaware Action, in which Defendant reiterated the false statement that Twitter had an obligation to provide Bot Data as a condition to closing the Merger.  For example, Defendant stated in his Verified Amended Counterclaims, Answer, and affirmative defenses to Twitter's Complaint that "Twitter has breached its information sharing obligations under the Merger Agreement by failing to reasonably respond to the Musk Parties' information requests."  Plaintiffs incorporate by reference herein all portions of the Subject Statements upon which Defendant purported to rely in taking this position.  Plaintiffs further refer Defendant to the allegations in Plaintiffs' FAC, the allegations in the Verified Complaint filed by Twitter in the Delaware Action, Defendants' verified counterclaims, answer, and affirmative defenses in the Delaware Action, Defendants' amended verified amended counterclaims, answer, and affirmative defenses in the Delaware Action, Twitter's Answer to Defendants' Counterclaims in the Delaware Action, Twitter's Answer to Defendants' Amended Counterclaims in the Delaware Action, and Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant Elon Musk's Motion for Judgment on the Pleadings in this Action.

**INTERROGATORY NO. 4.**

If you contend that any provision in the Merger Agreement is ambiguous, identify each such provision and state all facts and reasons in support of that contention.

**RESPONSE TO INTERROGATORY NO. 4.**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California. Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine.  Plaintiffs further object to this Interrogatory because it calls for Plaintiffs

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF
INTERROGATORIES (NOS. 1-12)

1    to make a legal conclusion.  Plaintiffs also object to this Interrogatory on the grounds that it contains

2    compound, conjunctive, or disjunctive questions.  Plaintiffs object to this Interrogatory because it

3    seeks information in the possession of, is known to, or is otherwise equally available to Defendant.

4    Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or

5    analysis of documents or information.  Creating such a compilation or summary would require

6    undue effort and is beyond the scope of standard discovery requests.  This Response is based on

7    information currently known and available to Plaintiffs—discovery is ongoing and Plaintiffs

8    reserve the right to amend or supplement this Response as additional discovery and depositions

9    occur in this Action, including the deposition of Defendant.

10           Subject to and without waiving the foregoing objections, Plaintiffs respond that while they

11   do not believe that any provisions in the Merger Agreement were ambiguous, Defendants' false

12   and misleading statements and fraudulent scheme misled investors and the market regarding the

13   portions of the Merger Agreement referenced in the responses to Interrogatories 1 and 2, for the

14   reasons set forth in response to Interrogatory 3.  Plaintiffs further refer Defendant to the allegations

15   in Plaintiffs' FAC, the allegations in the Verified Complaint filed by Twitter in the Delaware

16   Action, Defendants' verified counterclaims, answer, and affirmative defenses in the Delaware

17   Action, Defendants' amended verified amended counterclaims, answer, and affirmative defenses

18   in the Delaware Action, Twitter's Answer to Defendants' Counterclaims in the Delaware Action,

19   Twitter's Answer to Defendants' Amended Counterclaims in the Delaware Action, and Plaintiffs'

20   Memorandum of Points and Authorities in Opposition to Defendant Elon Musk's Motion for

21   Judgment on the Pleadings in this Action.

22   **INTERROGATORY NO. 5.**

23           Describe in detail the non-privileged circumstances of your retention of counsel in

24   connection with this action, including any solicitation to represent you by any attorney representing

25   you in this action and the fee structure under which your counsel is being compensated in

26   connection with this action.

27

28
                                    14              Case No: 3:22-CV-05937-CRB

**RESPONSE TO INTERROGATORY NO. 5.**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California. Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, Cal. Bus. & Prof. Code Section 6068, 6149, or any other applicable privilege, protection, immunity, or doctrine.  Plaintiffs also object to this Interrogatory on the grounds that it contains compound, conjunctive, or disjunctive questions.

Subject to and without waiving the foregoing objections, Plaintiffs respond that they contacted and retained their counsel at  Bottini & Bottini, Inc. and Cotchett Pitre & McCarthy LLP after reviewing a PSLRA-mandated notice discussing the pendency of this action and their right to participate in and seek lead plaintiff appointment in the action.  Without waiving any applicable privileges, Plaintiffs' counsel's compensation will be determined by the Court.

**INTERROGATORY NO. 6.**

Identify every statement made by Defendant you contend is false and/or misleading or contains a false and/or misleading omission of material fact, that you contend is actionable under the federal securities law following the Court's Motion to Dismiss Order, ECF No. 48.

**RESPONSE TO INTERROGATORY NO. 6.**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is compound, overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California. Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine.  Plaintiffs further object to this Interrogatory because it calls for Plaintiffs

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF
INTERROGATORIES (NOS. 1-12)

to make a legal conclusion. Plaintiffs also object to this Interrogatory on the grounds that it contains compound, conjunctive, or disjunctive questions. Plaintiffs object to this Interrogatory because it seeks information in the possession of, is known to, or is otherwise equally available to Defendant. Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or analysis of documents or information. Creating such a compilation or summary would require undue effort and is beyond the scope of standard discovery requests. This Response is based on information currently known and available to Plaintiffs—discovery is ongoing and Plaintiffs reserve the right to amend or supplement this Response as additional discovery and depositions occur in this Action, including the deposition of Defendant.

Plaintiffs refer Defendant to the allegations in FAC. Plaintiffs also specifically refer Defendant to the Court's Order on Defendant's Motion to Dismiss ("Order"), ECF No. 48, as well as ¶¶ 111-147 of the FAC in this Action. The May 13, 2022 Tweet (FAC ¶111), the May 16, 2022 Statement (FAC ¶120), and the May 17, 2022 Tweet (FAC ¶125), per the Court's Order, are actionable under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5(b) thereunder. All other false and misleading statements and actions identified in the FAC are actionable under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5(a) and (c) thereunder.

**INTERROGATORY NO. 7.**

For each and every statement you identify in Interrogatory No. 6, explain why you contend it is false and/or misleading or contains a false and/or misleading omission of material fact and identify all facts supporting that contention, including identification of the material fact you contend was misleadingly omitted; when and how you became aware of each fact supporting that contention; and when and how you contend class members became aware of each fact supporting that contention.

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF
INTERROGATORIES (NOS. 1-12)

**RESPONSE TO INTERROGATORY NO. 7.**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is compound, overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California. Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine. Plaintiffs also object to this Interrogatory on the grounds that it contains compound, conjunctive, or disjunctive questions. Plaintiffs object to this Interrogatory because it seeks information in the possession of, is known to, or is otherwise equally available to Defendant. Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or analysis of documents or information. Creating such a compilation or summary would require undue effort and is beyond the scope of standard discovery requests. This Response is based on information currently known and available to Plaintiffs—discovery is ongoing and Plaintiffs reserve the right to amend or supplement this Response as additional discovery and depositions occur in this Action, including the deposition of Defendant.

Subject to and without waiving the foregoing objections, Defendant's statements are false and/or misleading or contain false and/or misleading omissions because Defendant made them in order to attempt to avoid his obligations under Merger Agreement, renegotiate the terms of the Merger Agreement, and artificially deflate the price of Twitter stock before he completed the purchase, all by misrepresenting the terms of the Merger Agreement, his rights thereunder, and Twitter's obligations, among other things. *See* Response to Interrogatory Nos. 1-3. Plaintiffs became aware of the facts supporting these contentions as a result of Musk's reversal and statement that he would close the Merger at the initial price of $54.20 on or about October 4, 2022, subsequent statements by Musk and others, and through consultation with their attorneys. Plaintiffs continue to uncover additional proof of Defendants' deception through discovery obtained in this Action.

Plaintiffs further refer Defendant to the allegations in the FAC, the allegations in the Verified Complaint filed by Twitter in the Delaware Action, Twitter's Answer to Defendants' Counterclaims in the Delaware Action, and Twitter's Answer to Defendants' Amended Counterclaims in the Delaware Action.

**INTERROGATORY NO. 8.**

For each and every statement you identify in Interrogatory No. 6, and each fact supporting your contention that it is false and/or misleading or contains a false and/or misleading omission of material fact, identify each non-public fact supporting that contention.

**RESPONSE TO INTERROGATORY NO. 8.**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is compound, overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California. Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine. Plaintiffs also object to this Interrogatory on the grounds that it contains compound, conjunctive, or disjunctive questions. Plaintiffs object to this Interrogatory because it seeks information in the possession of, is known to, or is otherwise equally available to Defendant. Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or analysis of documents or information. Creating such a compilation or summary would require undue effort and is beyond the scope of standard discovery requests. Any non-public facts have been produced in discovery in this Action and are equally available to Defendant. Plaintiffs further object that discovery is ongoing and Plaintiffs reserve the right to amend or supplement this Response as additional discovery and depositions occur in this Action, including the deposition of Defendant. Plaintiffs refer Defendant to the allegations in the FAC, the allegations in the Verified Complaint filed by Twitter in the Delaware Action, Twitter's Answer to Defendants' Counterclaims

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES (NOS. 1-12)

in the Delaware Action, and Twitter's Answer to Defendants' Amended Counterclaims in the Delaware Action.

Subject to and without waiving the foregoing objections, non-public information included facts revealing that Musk's statements for putting the merger on hold and for terminating it were pretextual, as disclosed in the Walter Isaacson biography, including that Musk's misstatements were made for the purpose of undermining and renegotiating the deal.

For example, in Isaacson's biography on Musk, which was based on "unprecedented access" to Musk as well as extensive interviews with Musk and his attorney Alex Spiro,  Isaacson writes that the statements in Musk's termination letter were a mere "pretext for trying to withdraw from the deal."  Musk wanted out of the deal because "advertising was collapsing and the economy declining."

Musk also admitted in a text message on July 8, 2022 to Adeo Ressi, in response to complements on the termination letter: "Haha indeed, although they [Twitter's board] do have a decent chance of forcing the deal through."

When Musk made his false statements in May 2022, he had not yet requested the Bot Data from Twitter, had not hired the experts that would be able to support his contentions regarding the Bot Data, did not have the right to put the deal on hold, had not informed Twitter that the deal was purportedly "on hold," and Twitter never agreed nor implied that the deal was on hold.  Musk's experts were never able to prove, when applying Twitter's methodology, that Twitter's calculation that 5% of mDAU were bots was inaccurate.  Twitter complied with Musk's requests for information and acted in good faith, despite Musk's repeated misstatements that Twitter was not giving him any information.  Musk conceded to a non-party that he thought it was likely that Twitter would win the Delaware action.  Musk later revealed that he had made statements about terminating the Merger because he did not want to pay the $44 billion had agreed to and was attempting to negotiate a lower price.

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES (NOS. 1-12)

**INTERROGATORY NO. 9.**

For each and every statement you identify in Interrogatory No. 6, explain why you contend it was materially misleading, and identify all facts supporting that contention, including when and how you became aware of each fact supporting that contention, and when and how you contend class members became aware of each fact supporting that contention.

**RESPONSE TO INTERROGATORY NO. 9.**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is compound, overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California. Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine.  Plaintiffs also object to this Interrogatory on the grounds that it contains compound, conjunctive, or disjunctive questions.  Plaintiffs object to this Interrogatory because it seeks information in the possession of, is known to, or is otherwise equally available to Defendant. Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or analysis of documents or information.  Creating such a compilation or summary would require undue effort and is beyond the scope of standard discovery requests.  Plaintiffs further object to this Interrogatory as duplicative of Interrogatory 7.  This Response is based on information currently known and available to Plaintiffs—discovery is ongoing and Plaintiffs reserve the right to amend or supplement this Response as additional discovery and depositions occur in this Action, including the deposition of Defendant.

Subject to and without waiving the foregoing objections, Defendant's statements were false and/or misleading or contained false and/or misleading omissions of material fact because Defendant made them to in order to wrongfully avoid his obligations under the Merger Agreement, renegotiate the terms of the Merger Agreement, and artificially depress the price of Twitter stock

before he completed the Merger, all by misrepresenting the terms of the Merger Agreement, his rights thereunder, and Twitter's obligations under the Merger Agreement, among other things. Plaintiffs became aware of the facts supporting these contentions as a result of Musk's reversal and statement that he would close the Merger at the initial price of $54.20 on or about October 4, 2022, subsequent statements by Musk and others, and through their consultations with counsel.  Plaintiffs continue to uncover additional proof of Defendants' deception through discovery obtained in this Action.  Plaintiffs further refer Defendant to the allegations in the FAC, the allegations in the Verified Complaint filed by Twitter in the Delaware Action, Twitter's Answer to Defendants' Counterclaims in the Delaware Action, and Twitter's Answer to Defendants' Amended Counterclaims in the Delaware Action.

**INTERROGATORY NO. 10.**

For each and every statement you identify in Interrogatory No. 6, identify all facts and reasons supporting your contention that Defendant made each statement with scienter.

**RESPONSE TO INTERROGATORY NO. 10.**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is compound, overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California. Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine.  Plaintiffs also object to this Interrogatory on the grounds that it contains compound, conjunctive, or disjunctive questions.  Plaintiffs object to this Interrogatory because it seeks information in the possession of, is known to, or is otherwise equally available to Defendant. Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or analysis of documents or information.  Creating such a compilation or summary would require undue effort and is beyond the scope of standard discovery requests.  This Response is based on

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF
INTERROGATORIES (NOS. 1-12)

information currently known and available to Plaintiffs—discovery is ongoing and Plaintiffs reserve the right to amend or supplement this Response as additional discovery and depositions occur in this Action, including the deposition of Defendant.

Subject to and without waiving the foregoing objections, Defendant's scienter is evident from the fact that Defendant made his statements and omissions in order to avoid his obligations under Merger Agreement, renegotiate the terms of the Merger Agreement, and artificially deflate the price of Twitter stock before he completed the Merger, all by misrepresenting the terms of the Merger Agreement, his rights thereunder, and Twitter's obligations, data, and actions, among other things. Plaintiffs became aware of the facts supporting these contentions through their consultations with counsel Plaintiffs continue to uncover additional proof of Defendants' deception through discovery obtained in this Action. Plaintiffs further refer Defendant to the allegations in Plaintiffs' First Amended Complaint and the allegations in the Delaware Verified Complaint filed by Twitter in the Delaware Action. Among other reasons, Defendant possessed scienter because: (a) Defendant "personally negotiated" the Merger and therefore had actual knowledge of the falsity of the statements; (b) Defendant had a motive to depress Twitter stock; (c) Defendant's actions and ultimate settlement in the Delaware action are evidence of scienter; and (d) Defendant's dismissal of his financing lead is evidence of scienter. *See* FAC ¶¶ 152–55. Defendant was heavily involved in the Merger Agreement process—tweeting about a potential tender offer, see FAC ¶ 80, and directly calling Twitter's executives during the bidding process, *see id.* ¶ 83. In addition, Defendant tweeted prior to the Merger Agreement, on April 14, 2022, that "[i]f our Twitter bid succeeds, we will defeat the spam bots or die trying!," *id.* ¶ 78, indicating that he was aware of the issue with "spam bots," before entering into the Merger Agreement. *See id.* ¶ 116. Defendant sent a letter to Twitter on April 24, 2022 which stated that the Merger Agreement was "seller friendly." *Id.* ¶ 84. Defendant consistently tweeted nearly real-time updates about the Merger Agreement, "touting" his "intimate knowledge" of the deal. Even if he truly believed that Twitter had the contractual obligation to provide details about the company's spam and bot data, Musk was at least deliberately

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF
INTERROGATORIES (NOS. 1-12)

reckless for not investigating that obligation with respect to the Merger Agreement before making his statements.

Musk also had the motive and opportunity to commit fraud to get out of the Merger Agreement because of the large price decline of Tesla stock and the realization that he had greatly overpaid for Twitter by agreeing to buy it shortly before a significant market decline. *See* FAC ¶ 154. Musk experienced financial pressure immediately after signing the Merger Agreement. Between April 25, 2022, when the Merger Agreement was announced, and May 12, 2022, Tesla's stock declined by 27%, which threatened a margin call on the stock Musk had pledged as collateral to fund the Merger.

Musk also made comments in an April 11, 2023, interview with the BBC, in which he admitted he had made statements about terminating the Merger because he didn't want to pay the $44 billion.

> **Interviewer**: So you were still trying to get out of it and then you were just advised by lawyers, "Look, you're going to have to buy this."
> **[Defendant]**: Yes.
> **Interviewer**: Interesting. So you didn't actually want to purchase it even when you said you were go-
> **[Defendant]**: Well not at that price. I think the analogy is pretty close. Let's say there's a warehouse full of goods. They say less than 5% of what's in the warehouse is broken. Then you walk into warehouse and say, "Actually it's 25%." So you might still want to buy what's in that warehouse, but probably at a lower price. You're not buying the stuff that's broken.

The transcript of this interview with the BBC on April 11, 2023, was submitted by Musk in support of his original motion to dismiss. *See* Bergjans Decl., Ex. 7.

Defendant's scienter is also demonstrated by his baseless positions advanced in the Delaware Action, during which he stated that he was entitled to due diligence, despite having actual knowledge that he had waived due diligence. FAC ¶ 155. During the course of litigating the Delaware Action, Musk attempted to shield from discovery analyses that data scientists he hired conducted, and refused to make a fulsome production of documents. Defendant ultimately agreed to the original merger price he offered, thus suggesting that Musk did not have confidence in the

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF
INTERROGATORIES (NOS. 1-12)

1    positions he was asserting in Delaware.   Musk's scienter is also suggested by his dismissal of Bob

2    Swan—the financing lead for the Merger—in June 2020.  Since Musk was claiming that he needed

3    Bot Data to secure his financing for the Merger, Musk would have replaced Swan immediately

4    (which he did not do) if he truly needed the Bot Data to secure financing for the Merger.

5    **INTERROGATORY NO. 11.**

6    Identify all purported corrective disclosures that you contend revealed the alleged falsity of

7    the statements identified in Interrogatory No. 6 and identify all facts in support of that contention.

8    **RESPONSE TO INTERROGATORY NO. 11.**

9    In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on

10    the grounds that it is overbroad, vague, ambiguous, and unduly burdensome and imposes

11    obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the

12    Local Rules of the Northern District of California. Plaintiffs also object to this Interrogatory

13    because it seeks communications, information and/or documents protected by the attorney-client

14    privilege, the attorney work product doctrine, or any other applicable privilege, protection,

15    immunity, or doctrine.  Plaintiffs also object to this Interrogatory on the grounds that it contains

16    compound, conjunctive, or disjunctive questions.  Plaintiffs object to this Interrogatory because it

17    seeks information in the possession of, is known to, or is otherwise equally available to Defendant.

18    Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or

19    analysis of documents or information.  Creating such a compilation or summary would require

20    undue effort and is beyond the scope of standard discovery requests.  This Response is based on

21    information currently known and available to Plaintiffs—discovery is ongoing and Plaintiffs

22    reserve the right to amend or supplement this Response as additional discovery and depositions

23    occur in this Action, including the deposition of Defendant.

24    Subject to and without waiving the foregoing objections, Plaintiffs refer Defendant to the

25    allegations in Plaintiffs' FAC and the allegations in the Verified Complaint filed by Twitter in the

26

27

28
PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF
INTERROGATORIES (NOS. 1-12)

Delaware Action.  Plaintiffs point to the Court's Motion to Dismiss Order ("Order"), ECF No. 48.

Musk made a corrective disclosure on or about October 4, 2022. See FAC, ¶¶167-175.

**INTERROGATORY NO. 12.**

Identify all new information that was not previously publicly disclosed contained in each purported corrective disclosure identified in Interrogatory No. 11 and identify all reasons in support of your contention that this new information revealed the alleged falsity of the statements identified in Interrogatory No. 6.

**RESPONSE TO INTERROGATORY NO. 12.**

In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome and imposes obligations and burdens beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California. Plaintiffs also object to this Interrogatory because it seeks communications, information and/or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or doctrine.  Plaintiffs also object to this Interrogatory on the grounds that it contains compound, conjunctive, or disjunctive questions.  Plaintiffs object to this Interrogatory because it seeks information in the possession of, is known to, or is otherwise equally available to Defendant. Plaintiffs object to this Interrogatory to the extent that it requires a compilation, summary, or analysis of documents or information.  Creating such a compilation or summary would require undue effort and is beyond the scope of standard discovery requests.  This Response is based on information currently known and available to Plaintiffs—discovery is ongoing and Plaintiffs reserve the right to amend or supplement this Response as additional discovery and depositions occur in this Action, including the deposition of Defendant.

Subject to and without waiving the foregoing objections, Musk's announcement on October 4, 2022 provided new information to the market about Musk's abrupt about-face less than two weeks before the October 17, 2022 Delaware Chancery action was set to begin. Forced

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF
INTERROGATORIES (NOS. 1-12)

to face the lack of merit of his baseless contention that Twitter had breached multiple provisions of the Merger Agreement and that there had allegedly been a material adverse effect, Musk essentially acknowledged that he had been bluffing all along. Musk capitulated and announced he would honor the Merger Agreement on the original terms and at the original $54.20 price.  In response, Twitter's stock immediately jumped by over 15% before trading in the stock was halted by the New York Stock Exchange. When trading resumed later in the day, the stock increased another 7%, eventually closing up over 22% in one day**.**   Subsequent news articles revealed that Musk had, in fact, been using his false statements about Twitter's alleged breaches of the Merger Agreement to try to negotiate a lower price for the Merger. When Twitter rejected Musk's requests to lower the deal price and called his bluff, "Musk caught Twitter off guard by sending its lawyers a two-sentence letter proposing to move forward on the original terms."[1]

As the Court previously held in denying Musk's motion to dismiss, "Plaintiffs have plausibly alleged that when Defendant announced that he would move forward with the deal—after a public battle with Twitter about the Merger Agreement and absent any apparent resolution around his due diligence requests—the market reasonably reacted to the 'truth' that Twitter never had the obligation to provide the bot-account information to Defendant. Dkt. No. 48, at p. 36.

The direct causation between Defendant's false statements and Plaintiffs' losses also constitutes evidence of loss causation.  See Dkt. No. 48, at p. 37. Plaintiffs further refer Defendant to the allegations in the FAC, the allegations in the Verified Complaint filed by Twitter in the Delaware Action, Twitter's Answer to Defendants' Counterclaims in the Delaware Action, and Twitter's Answer to Defendants' Amended Counterclaims in the Delaware Action.

Dated: January 21, 2025        **COTCHETT, PITRE & McCARTHY, LLP**
                           By:   */s/ Tyson C. Redenbarger*
                                     TYSON C. REDENBARGER
                                     *Counsel for Plaintiffs*

---

[1] *See, e.g.*, Cara Lombardo, "Elon Musk and Twitter at Odds Over Terms of Agreement to Close Deal," THE WALL STREET JOURNAL, Oct. 6, 2022.

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF
INTERROGATORIES (NOS. 1-12)

1

## **<u>VERIFICATION</u>**

2

*PAMPENA V. MUSK.,* CASE NO. 3:22-CV-05937-CRB

3

4          I, Brian Belgrave, hereby state and declare as follows:

5          I have read the foregoing Plaintiffs' Responses and Objections to Defendant Elon R. Musk's First

Set of Interrogatories (NOS. 1-12).  As to those matters within my personal knowledge, I verify that the

6

contents and representations made as to me are true and accurate; as to other matters, on information and

7

belief, I verify that the contents thereof are true and accurate.

8

9          I declare under penalty of perjury under the laws of the United States that the foregoing is true and

correct.

10

11          Executed at _____, _____ on this ___ day of January, 2025.

Portland    OR                    18.00

12

13

*Brian Belgrave*

14          BRIAN BELGRAVE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

VERIFICATION

**VERIFICATION**

*PAMPENA V. MUSK.*, CASE NO. 3:22-CV-05937-CRB

I, John Garrett, hereby state and declare as follows:

I have read the foregoing Plaintiffs' Responses and Objections to Defendant Elon R. Musk's First Set of Interrogatories (NOS. 1-12). As to those matters within my personal knowledge, I verify that the contents and representations made as to me are true and accurate; as to other matters, on information and belief, I verify that the contents thereof are true and accurate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at ___BELLEVILLE___ on this 18 day of January, 2025.
___ONTARIO___

_____
JOHN GARRETT

**VERIFICATION**

## VERIFICATION

*PAMPENA V. MUSK.*, CASE NO. 3:22-CV-05937-CRB

I, Nancy Price, hereby state and declare as follows:

I have read the foregoing Plaintiffs' Responses and Objections to Defendant Elon R. Musk's First Set of Interrogatories (NOS. 1-12). As to those matters within my personal knowledge, I verify that the contents and representations made as to me are true and accurate; as to other matters, on information and belief, I verify that the contents thereof are true and accurate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at ___BELLEVILLE, ONT.___ on this _18_ day of January, ~~2043.~~ 2025 *NP.*
___CANADA___

_Nancy Price_
NANCY PRICE

## <u>CERTIFICATE OF SERVICE</u>

I am employed in the County of San Mateo, State of California.  I am a citizen of the United States, over the age of 18 years and not a party to the within cause.  My business address is the Law Offices of Cotchett, Pitre & McCarthy, LLP, San Francisco Airport Office Center, 840 Malcolm Road, Suite 200, Burlingame, California, 94010.

On January 21, 2025, I served the following document(s) in the manner described below:

**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES (NOS. 1-12)**

☒    **BY E-MAIL**: My e-mail address is zagudelo@cpmlegal.com and service of this document(s) occurred on the date shown below.  This document is being served electronically and the transmission was reported as complete and without error.

### SEE ATTACHED SERVICE LIST

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.  Executed at Burlingame, California, on January 21, 2025.



_____
Zyres Agudelo

PROOF OF SERVICE

1

## SERVICE LIST

| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>Alex Spiro (*pro hac vice*)<br>alexspiro@quinnemanuel.com<br>Jesse A. Bernstein (*pro hac vice*)<br>Jessebernstein@quinnemanuel.com<br>Jonathan E. Feder (*pro hac vice*)<br>jonathanfeder@quinnemanuel.com<br>295 Fifth Avenue<br>New York, New York 10016<br>Telephone: (212) 849-7000<br>Facsimile: (212) 849-7100<br><br>Michael T. Lifrak (Bar No. 210846)<br>michaellifrak@quinnemanuel.com<br>Joseph C. Sarles (Bar No. 254750)<br>josephsarles@quinnemanuel.com<br>Alex Bergjans (Bar No. 302830)<br>alexbergjans@quinnemanuel.com<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100<br><br>Nathan Archibald (*pro hac vice*)<br>nathanarchibald@quinnemanuel.com<br>2755 E. Cottonwood Parkway, Suite 430<br>Salt Lake City, Utah 84121<br>Telephone: (801) 515-7300<br>Facsimile: (801) 515-7400<br><br>*Attorneys for Defendant Elon Musk* | ***Counsel for Elon Musk*** |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2                Case No. 3:22-CV-05937-CRB

CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2025, a true and correct copy of the above and foregoing document has been served on the following counsel via electronic mail at the e-mail address(es) set forth below:

COTCHETT, PITRE & MCCARTHY, LLP
Joseph W. Cotchett
jcotchett@cpmlegal.com
Mark C. Molumphy
mmolumphy@cpmlegal.com
Tyson C. Redenbarger
tredenbarger@cpmlegal.com
Gia Jung
gjung@cpmlegal.com

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr.
fbottini@bottinilaw.com
Albert Y. Chang
achang@bottinilaw.com
Aaron P. Arnzen
aarnzen@bottinilaw.com
*Attorneys for Plaintiffs*

DATE: February 21, 2025

_/s/ Alex Bergjans_
Alex Spiro
Jesse Bernstein
Michael T. Lifrak
Joseph C. Sarles
Jonathan E. Feder
Alex Bergjans
Nathan Archibald