1 | COTCHETT, PITRE & MCCARTHY, LLP
Joseph W. Cotchett (SBN 36324)
2 | jcotchett@cpmlegal.com
Mark C. Molumphy (SBN 168009)
3 | mmolumphy@cpmlegal.com
4 | Tyson C. Redenbarger (SBN 294424)
tredenbarger@cpmlegal.com
5 | Elle D. Lewis (SBN 238329)
elewis@cpmlegal.com
6 | Gia Jung (SBN 340160)
gjung@cpmlegal.com
7 | Caroline A. Yuen (SBN 354388)
cyuen@cpmlegal.com
8 | San Francisco Airport Office Center
9 | 840 Malcolm Road, Suite 200
Burlingame, California 94010
10 | Telephone: (650) 697-6000

11
BOTTINI & BOTTINI, INC.
12 | Francis A. Bottini, Jr. (SBN 175783)
fbottini@bottinilaw.com
13 | Aaron P. Arnzen (SBN 218272)
aarnzen@bottinilaw.com
14 | 7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
15 | Telephone: (858) 914-2001

16
*Lead Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GIUSEPPE PAMPENA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | Case No. 3:22-CV-05937-CRB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT ELON MUSK'S RESPONSE TO THE COURT'S INVITATION FOR SUPPLEMENTAL BRIEFING ON MIL NO. 4 AND REQUEST FOR A CONTINUANCE**<br><br>**[PUBLIC VERSION]** |

**INTRODUCTION**

While asking for a second chance to reargue their motion *in limine* on scheme liability, Defendant Elon Musk ignores the specific instructions from the Court and, instead, files an even longer motion that repeats the same arguments made previously. Making matters worse, Musk also falsely suggests that he was somehow "sandbagged" because Plaintiffs waited until after discovery to allege and describe their theory. The exact opposite is true.

Musk has been on notice of Plaintiffs' scheme claim since the beginning of the case, conducted discovery focused on the alleged scheme, and received detailed responses back in **2025**. *See* Plaintiffs' First Amended Complaint ("FAC") ECF 31 at ¶¶10, 11, 186; Ex. 1[1], Plaintiffs' March 17, 2025 Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1-12) (incorporating January 21 2025 responses referencing scheme and supplementing with a multi-page chart incorporating Musk's conduct); Ex. 2, Plaintiffs' August 12, 2025 Further Responses and Objections to Defendant's Interrogatories, Interrogatory No. 14 (incorporating March 28, 2025 responses and supplementing). Indeed, starting from their timely **January 21, 2025** responses to Musk's first set of Interrogatories, and continuing to the present, Plaintiffs have clearly and repeatedly identified their pursuit of scheme liability and its basis, including the conduct and statements pled in the FAC. Decl. at ¶2; Ex. 1, Responses to Interrogatories 3, 4, and 6. Musk's current claim that he had no idea that Plaintiffs were pursuing a scheme claim, when his own **February 20, 2025** Interrogatory 14 requested Plaintiffs to describe the basis for their "***contention that Defendant violated 17 CFR 240.10b-5(a) and (c)***," is highly misleading. Ex. 2 (emphasis added).

Musk's supplemental brief also ignores the Court's instructions. At the February 17, 2026 Pretrial Conference, the Court clearly said it was "not" deciding "whether the statement is false" or "material," but rather "whether it was properly pled. That's what I have to decide. I got it. In my view, just to end the suspense, it was sufficiently pled. So scheme liability is going to be permitted in this case." Ex. 3, Pretrial Conference Transcript at 80:7-13. After further argument, the Court advised Musk that, "if you want to urge me to keep out this theory, which you are entitled to do, now knowing

---

[1] All "Ex." citations are to the exhibits attached to the Declaration of Tyson Redenbarger ("Decl.") filed herewith.

how I think about it, please direct your attention to exactly what is of concern to me." *Id.* at 99:9-22. Musk responded with an 11-page supplemental brief that merely repeats arguments from his original Motion *in Limine* No. 4. ECF 429.

Musk has had sufficient opportunity to present his argument. There is no reason for the Court to change its decision on scheme liability, a theory that was pled, subjected to discovery, and now ready to be decided by the jury.

## ARGUMENT

**A.  Musk Took Discovery Regarding Plaintiffs' Scheme Claim**

The fact discovery cut-off in this case was March 31, 2025. Decl. at ¶2. Musk served his first set of sweeping interrogatories on December 13, 2024. *Id*. Plaintiffs timely responded on January 21, 2025, referring to Musk's scheme in their responses to Interrogatories 3 and 4, and in responding to Interrogatory 6, which asked to identify every statement made by Defendant that Plaintiffs "contend is actionable under the federal securities law following the Court's Motion to Dismiss Order," told Musk that **"[a]ll other false and misleading statements and actions identified in the FAC are actionable under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5(a) and (c) thereunder."** Ex. 1 at 19; Decl. at ¶2.

On February 20, 2025, Musk served Plaintiffs with Interrogatory 14, requesting Plaintiffs to "[s]tate all bases and facts that support *Your contention that Defendant violated 17 CFR 240.10b-5(a) and (c)*. Ex. 2, (emphasis added); Decl. at ¶2. Meanwhile, after meeting and conferring with Musk, Plaintiffs supplemented their responses to the first set of interrogatories on March 17, 2025, with a detailed chart of the statements (inclusive and beyond the May 13, 16, and 17 statements) that were part of Musk's scheme, as well as detailing the behind-the-scenes conduct and motivations that were part of the scheme. Ex. 1, chart responding to interrogatories 6-10. On March 28, 2025, Plaintiffs timely responded to Musk's February 20, 2025, interrogatories, properly objecting to Interrogatory 14 and referring Musk to the chart which compiled all actionable statements that Plaintiffs contend were actionable. Decl. at ¶2; Ex. 2.

After timely motion practice, Judge Ryu ordered Plaintiffs to make clear to what extent their answers to Interrogatories 6-10 are coextensive with Interrogatory 14, and to provide any additional

1  material facts that Plaintiffs seek to rely on for their scheme liability claim. ECF 238. Plaintiffs timely
2  supplemented their response to Interrogatory 14 per the Court's Order—not with any new information
3  or facts, but in a consolidated format for Musk's clarity. *See* Ex. 2 ("Interrogatories 6-10, in whole,
4  are responsive to this Interrogatory in addition to the following"). All of this information was pled in
5  the FAC. *See e.g.* ECF 31 (Musk's scheme paired misstatements with fraudulent conduct (¶¶10, 26,
6  32) that included Musk's barrage of tweets (¶¶26, 28-29, 31, 34; 109, 128-130); his misleading
7  statements at the May 16 All-In Summit (¶¶120-122); going public with his complaints instead of
8  contacting Twitter directly (¶¶33-34, 115, 123); his letter-writing campaign (¶¶135-149); sending
9  Twitter "incendiary" requests (¶¶139); firing Bob Swan (¶¶162-163, 165); sending letters purportedly
10 terminating the deal with no legal basis (¶¶8, 37, 140-141, 144-145, 147-149); hiring data scientists to
11 gin up evidence (¶¶156-57); asserting frivolous defenses and counterclaims in the Delaware Action
12 (¶¶155-160, 162); and behind-the-scenes attempts at renegotiations (¶¶169-170)).

13       Musk's request for additional discovery should be rejected. He had every opportunity to, and
14 did, pursue discovery regarding Plaintiffs' scheme liability allegations prior to the Court's discovery
15 cutoff date.

16 **B.    Plaintiffs Sufficiently Pled Scheme**

17       Plaintiffs' FAC sufficiently alleges scheme liability under the Federal securities laws. At the
18 outset, the FAC describes in the clearest possible terms the very "Nature of the Action," alleging that
19 Musk "***engaged in a scheme to deceive the market***, all in violation of the law. ***This scheme***
20 ***artificially, and almost immediately, depressed the price of Twitter securities***." FAC, ECF 31 at ¶10
21 (emphasis added). The very next paragraph makes clear that these scheme allegations are brought
22 under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder. *Id.* at ¶11.
23 Critically, the FAC does not single out or otherwise limit itself to misstatement liability under Rule
24 10b-5(b), but instead pleads a violation of the entire statute and related rule, including scheme liability
25 under subsections (a) and (c). *Id*. at ¶¶10-11, 185-194.

26       All of the FAC's supporting factual allegations describe Musk's scheme and the surrounding
27 circumstances in great detail. These allegations—including facts supporting a strong inference of
28 scienter—span more than 150 paragraphs. FAC ¶¶16-184; ECF 48. The FAC's sole cause of action

asserts a claim under "Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder." *Id.* at ¶186. Consistent with the Nature of Action section described *supra*, the claim did not single out or solely seek to pursue false statement liability under subsection (b).

Importantly, and to eliminate any doubt, the claim also purposefully included language drawn directly from subsections (a) and (c), *i.e.*, the very subsections of Rule 10b-5 that describe scheme liability.

> Musk violated Section 10(b) of the 1934 Act and Rule 10b-5 in that he: ***employed devices, schemes and artifices to defraud***; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or ***engaged in acts, practices and a course of business that operated as a fraud or deceit*** upon plaintiff and others similarly situated.

*Id.* at ¶188 (emphasis added). It would be difficult to more closely mirror the very language of subsections (a) and (c), which make it unlawful to "employ any device, scheme, or artifice to defraud" or "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 CFR § 240.10b-5. Given the foregoing, the notion that the FAC did not put Musk on notice of Plaintiffs' assertion of, intent to pursue, and bases for their scheme liability claim straddles the border between the inexplicable and the preposterous.

Musk also argues that the FAC should have singled out specific statements or acts that constitute part of the scheme. But Plaintiffs allege that all of Musk's statements and actions set forth in the FAC constitute and were made in furtherance of his scheme. That's how schemes work—just like conspiracies, they routinely last for some period of time and involve coordinated statements and actions, all driven by one or more nefarious purposes; here, to mislead the market and pressure Twitter in an attempt to escape or renegotiate Musk's deal to acquire the company. *See* Ex. 3 at 81:12-82:6 ("It's based upon a desire -- it's based upon a course of conduct -- which included all the statements…It's an entirety of a scheme. You can't parse it and identify this or identify that.…They tell you it was to renegotiate the price or terminate the agreement. That's what they say…I mean, it seems to me it's clear what the scheme is.").

Any argument that Plaintiffs were required to do more in their complaint is further, and fatally, undermined by the Ninth Circuit's decision in *In re Alphabet Securities Litigation*, 1 F.4th 687, 709

(9th Cir. 2021). There, the complaint included the word "scheme" in its introduction and set forth very limited factual allegations regarding the scheme, *i.e.*, that "Google's scheme did manage to unite the country's two political parties," and "[w]ith the Companies' scheme exposed, Pichai testified before Congress." Ex. 4, Alphabet Complaint, at ¶¶2, 61, 70. The *Alphabet* complaint proceeded to mirror the language of Rule 10b-5(a) and (c) in its claims for relief. *Id.* at ¶95. Critically, that complaint ***did not*** identify which specific actions or statements constituted a scheme—undoubtedly because, like here, the combination of actions and statements over time are what collectively constituted the scheme. *Id.* at ¶¶1-92. In other words, ***the Alphabet complaint's scheme liability allegations are structurally identical to the FAC's allegations here***.

The Ninth Circuit approved—***and reversed dismissal***—of the scheme liability allegations in *Alphabet*. 1 F.4th at 709. Specifically, because the complaint alleged that defendants "engaged and participated in a continuous course of conduct to conceal the truth and/or adverse material information about Alphabet's business and operations," the Court had no problem finding that Plaintiffs had alleged a scheme based largely on defendants' misstatements. *Id.* (quoting complaint). "Alphabet's argument that Rule 10b-5(a) and (c) claims cannot overlap with Rule 10b-5(b) statement liability claims is foreclosed by *Lorenzo*, which rejected the petitioner's argument that Rule 10b-5(a) and (c) 'concern scheme liability claims' and are violated only when conduct other than misstatements is involved.'" *Id.* (quoting *Lorenzo v. SEC*, 139 S. Ct.1094, 1101–02 (2019)).

The FAC's scheme liability allegations here are "on all fours" with those in the *Alphabet* complaint. Foreclosing Plaintiffs from trying the case they clearly pleaded would be exceptionally prejudicial, force them to drastically rework their intended trial presentation, and directly contradict the Ninth Circuit's guidance set forth in *Alphabet*.

Enamored with the cut and paste tool, Musk also rehashes other arguments on which the Court did not call for briefing. Those arguments are refuted in Plaintiffs' Opposition to Musk's Motion *in Limine* #4, which is attached hereto as Ex. 5.

C. ***Noerr-Pennington* Does Not Preclude Scheme Liability**

The *Noerr-Pennington* doctrine does not "categorically" preclude liability, as Musk incorrectly suggests. Under the *Noerr–Pennington* doctrine, certain pre-litigation activities might be immune

from suit, but only if Musk proves the doctrine applies in the first place and Plaintiffs fail to prove the litigation conduct was a "sham." *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 351–52 (9th Cir. 2014) *citing Or. Natural Res. Council v. Mohla*, 944 F.2d 531, 534 (9th Cir.1991); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 939–40 (9th Cir.2006). As explained below, there is no support for Musk's argument that Plaintiffs' claims can be excluded by *motion in limine* based on the *Noerr-Pennington* doctrine. The Court should deny the motion.

In circumstances like the present case, when a motion for summary judgement asserting the *Noerr–Pennington* doctrine has been denied (which Musk's was, ECF 302), Court's allow **the jury** to decide whether the doctrine is available and whether the sham exception applies. *Rock River Commc'ns*, 745 F.3d at 352. Indeed, in *Rock River* the same issue was presented, and the Ninth Circuit clearly stated that the issue should be decided by the jury. There, the district court "found that triable issues of fact prevented summary adjudication of the *Noerr–Pennington* defense" and the issue was properly for the jury. *Id*. at 351. On appeal, the defendant argued that summary judgment should be affirmed because certain cease and desist letters are immune under the *Noerr-Pennington* doctrine. The Ninth Circuit rejected that argument, stating:

> Because a reasonable jury could conclude that UMG's cease-and-desist communications satisfy both criteria of the sham exception, we cannot affirm the district court's grant of summary judgment to UMG on the alternative basis of *Noerr–Pennington* immunity. At trial, UMG can attempt to develop the facts necessary to support its Noerr–Pennington defense, but it has not done so for the purpose of summary judgment.
> *Id.* at 353.

The Ninth Circuit has, therefore, made it crystal clear that litigation conduct is not "categorically immune" from liability as Musk argues. ECF 429 at 4. Instead, in situations like this, Musk must "develop the facts necessary to support [his] *Noerr–Pennington* defense" and then Plaintiffs can present evidence to establish that the sham litigation exception applies. *Rock River Commc'n*., 745 F.3d at 352-3. The fact that the Court denied Musk's motion for summary judgment, which asserted the very same arguments concerning *Noerr–Pennington*, does not mean the "Court must address it now," before trial. ECF 429 at 4. Instead, the appropriate course, under Ninth Circuit

law, is to allow this issue to go to the jury. *Rock River Commc'ns*, 745 F.3d at 352. The Court should therefore deny Musk's Motion *in Limine* No. 4 for this reason alone.

As the Court and Jury will soon find out, Plaintiffs have ample evidence that the sham litigation exception applies because Musk's conduct was both (1) objectively baseless and (2) an attempt to directly interfere with Twitter's business "through the use of the governmental process—as opposed to the outcome of that process." *Id*. at 351 (a "sham" lawsuit is one where the suit is both "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" and "an attempt to interfere directly with the business relationship of a competitor through the use of the governmental process—as opposed to the outcome of that process.")

Indeed, evidence will establish that Musk's termination letter and subsequent conduct was objectively baseless. Specifically, Musk claimed that the merger was terminated because Twitter "refused" to provide information. That is objectively false. Twitter never "refused" to provide information. In fact, the day Musk sent the termination letter, he ███████████████████████ ███████. Second, Musk's conduct was a sham because it was plainly an attempt interfere with Twitter's business "through the use of the governmental process—as opposed to the outcome of that process." *Id*. at 351. A reasonable jury could easily conclude that Musk was attempting to disparage the company and depress Twitter's stock price "through the litigation *process* rather than through the *result* of that process." *Rock River Commc'ns*., 745 F.3d at 353; *see e.g.,* below.



None of the cases cited by Musk in his supplemental briefing stand for the position that the Court can dismiss certain claims on the eve of trial, without evidence, based on an unproven claim that *Noerr-Pennington* "categorically" precludes liability and the sham exception does not apply. *See e.g., Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 927 (9th Cir. 2006) (deciding motion to dismiss); *Theme Promotions, Inc. v. News Am. Mktg. FSI,* 546 F.3d 991, 1008 (9th Cir. 2008) (claims presented to the jury, not dismissed beforehand); *Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1026 (N.D. Cal. 2018) (motion to strike complaint, leave to amend granted); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1183 (9th Cir. 2005) (motion to dismiss); *Empress LLC v. City & Cnty. of San Francisco*, 419 F.3d 1052, 1054 (9th Cir. 2005) (motion to dismiss).

## CONCLUSION

Plaintiffs respectfully request that the Court deny Musk's Motion *in Limine* No. 4 as indicated at the February 17, 2026 Pre-Trial Conference, and further deny Musk's request for a continuance to allow for unnecessary additional discovery.

Dated: February 23, 2026

Respectfully submitted,

**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
Tyson C. Redenbarger (SBN 294424)
Elle D. Lewis (SBN 238329)
Gia Jung (SBN 340160)
Caroline A. Yuen (SBN 354388)

*/s/ Tyson C. Redenbarger*
Tyson C. Redenbarger

San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
Aaron P. Arnzen (SBN 218272)

*/s/ Aaron P. Arnzen*
Aaron P. Arnzen

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

Case No: 3:22-CV-05937-CRB

PLAINTIFFS' OPPOSITION TO DEFENDANT ELON MUSK'S RESPONSE TO THE COURT'S INVITATION FOR SUPPLEMENTAL BRIEFING ON MIL NO. 4 AND REQUEST FOR A CONTINUANCE

8

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Tyson C. Redenbarger, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of February, 2026, at Burlingame, California.

                      */s/ Tyson C. Redenbarger*
                        Tyson C. Redenbarger