QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Ellyde R. Thompson (*pro hac vice*)
ellydethompson@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
jessebernstein@quinnemanuel.com
295 Fifth Ave., New York, NY 10010
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

*Attorneys for Defendant Elon Musk*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>        vs.<br><br>ELON R. MUSK,<br><br>                    Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**DEFENDANT ELON MUSK'S RESPONSE TO THE COURT'S ORDER FOR FURTHER RESPONSE**<br><br>Judge: Hon. Charles R. Breyer |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................1

ARGUMENT ............................................................................................................4

I.     UNDER THE *NOERR-PENNINGTON* DOCTRINE, PROTECTED LITIGATION
       CONDUCT MUST BE CARVED OUT FROM ANY SCHEME LIABILITY
       CLAIM ..........................................................................................................4

       A.     *Clipper* Does Not Permit A Scheme To Encompass Protected Litigation
              Activity .............................................................................................4

       B.     Plaintiffs May Not Argue The Sham Exception At Trial.........................8

II.    WHOLLY APART FROM THE *NOERR-PENNINGTON* DOCTRINE,
       PLAINTIFFS CANNOT REST SCHEME LIABILITY ON STATEMENTS NOT
       PLED TO BE FALSE OR MISLEADING .............................................................11

III.   PLAINTIFFS' FAILURE TO PROPERLY PLEAD, DISCLOSE, OR CERTIFY A
       SCHEME LIABILITY THEORY BARS SUCH A CLAIM IN ITS ENTIRETY .............12

       A.     Plaintiffs Failed To Plead Scheme Liability With Particularity...............12

       B.     Plaintiffs Failed To Disclose The Scheme Theory They Seek To Pursue
              Prior To The Close Of Discovery ........................................................13

       C.     Plaintiffs Did Not Certify A Scheme Class...........................................15

CONCLUSION .........................................................................................................15

# TABLE OF AUTHORITIES

**Page**

### Cases

*Abbott Lab'ys v. Teva Pharms. USA, Inc.*,
 432 F. Supp. 2d 408 (D. Del. 2006) ..................................................................... 6

*In re Alphabet Sec. Litig.*
 1 F.4th 687 (9th Cir. 2021)................................................................................. 13

*Boone v. Redevelopment Agency of City of San Jose*,
 841 F.2d 886 (9th Cir. 1988)............................................................................ 7, 9

*In re Burlington Northern, Inc.*,
 822 F.2d 518 (5th Cir. 1987)................................................................................. 7

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
 690 F.2d 1240 (9th Cir. 1982) .............................................................. 1, 4, 5, 6, 8

*Databricks, Inc. v. Weisfield*,
 2025 WL 3785324 (W.D. Wash. Mar. 14, 2025)................................................. 6

*El-Hakem v. BJY Inc.*,
 415 F.3d 1068 (9th Cir. 2005) ............................................................................ 10

*Empress LLC v. City & Cnty. of San Francisco*,
 419 F.3d 1052 (9th Cir. 2005)............................................................................... 7

*Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd.*,
 542 F.2d 1076 (9th Cir. 1076) ........................................................................... 10

*Gamble v. Kaiser Foundation Health Plan, Inc.*,
 348 F. Supp. 3d 1003 (N.D. Cal. 2018) ............................................................... 9

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
 63 F.4th 747 (9th Cir. 2023)............................................................................... 14

*Grip-Pak, Inc. v. Illinois Tool Works, Inc.*,
 651 F. Supp. 1482 (N.D. Ill. 1986) ...................................................................... 6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
 573 U.S. 258 (2014) ..................................................................................... 12, 15

*Hartzell v. Marana Unified Sch. Dist.*,
 130 F.4th 722 (9th Cir.) ..................................................................................... 10

*Knology, Inc. v. Insight Commc'ns Co.*,
 393 F.3d 656 (6th Cir. 2004)................................................................................ 2

*Lorenzo v. Sec. & Exch. Comm'n*,
    587 U.S. 71 (2019) ................................................................................................ 2, 11

*In re Merck Mumps Vaccine Antitrust Litig.*,
    2024 WL 4432076 (3d Cir. Oct. 7, 2024) ...................................................................... 2

*Oregon Nat. Res. Council v. Mohla*,
    944 F.2d 531 (9th Cir. 1991) ....................................................................... 7, 10, 13

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ................................................................................... 9

*State of S.D. v,. Kansas City So. Indus., Inc.*,
    880 F.2d 40 (8th Cir. 1989) ...................................................................................... 2

*In re Suboxone (Buprenophine Hydrochloride and Naloxone) Antitrust Litig.*,
    622 F. Supp. 3d 22 (E.D. Pa. 2022) ............................................................................ 7

*TEC Cogeneration Inc. v. Florida Power & Light Co.*,
    76 F.3d 1560 (11th Cir. 1996) .................................................................................... 2

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) .............................................................................................. 14

*United Mine Workers v. Pennington*,
    381 U.S. 657 (1965) ...................................................................................... 1, 5, 7

## Rules / Statutes

17 CFR 240.10b .......................................................................................................... 14

28 U.S.C. § 1292(b) ...................................................................................................... 5

1

## **INTRODUCTION**

2        Defendant Elon Musk has advanced multiple, independent challenges to Plaintiffs'

3 purported scheme claim that, together, bar Plaintiffs from introducing any evidence or argument of

4 a scheme liability theory.  But Defendant's *Noerr-Pennington* argument seeks only to preclude

5 Plaintiffs from relying on protected litigation conduct as part of the scheme claim.  That argument

6 is entirely consistent with *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d

7 1240 (9th Cir. 1982), which in fact requires that the *Noerr-Pennington* portion of Defendant's

8 Motion *in Limine* No. 4 be granted.  To ensure clarity as to Defendant's argument, Defendant

9 explains in this supplemental brief the relationship between the separate arguments in Motion *in*

10 *Limine* No. 4 in the context of addressing the Court's inquiry regarding *Clipper.*

11        *First*, any scheme liability theory must carve out litigation conduct protected by the First

12 Amendment.  As Defendant explained at the pretrial conference, under the First Amendment and

13 the *Noerr-Pennington* doctrine, "litigation-protected conduct cannot *be part of* a scheme claim."  Tr.

14 of Feb. 17, 2026 Proceedings at 89:18–21 (emphasis added).  *Clipper* supports—rather than

15 undermines—Defendant's position that protected litigation activity must be carved out from any

16 scheme claim.  That is because *Clipper* merely applies the uncontroversial proposition that the

17 protected conduct remains immune, "either standing alone or *as part of a broader scheme* itself

18 violative of" the relevant law.  *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965)

19 (emphasis added).  Thus, in those circumstances in which the entire "scheme" consists of litigation-

20 protected conduct, the scheme itself will be barred by the *Noerr-Pennington* doctrine.  But, if the

21 scheme consists of other, non-protected conduct, then the *Noerr-Pennington* doctrine bars only that

22 portion of the "scheme" that implicates the protected litigation conduct.  In that instance, the Court

23 should "strip" the protected litigation conduct out of Plaintiffs' purported scheme claim.  *See* Def.'s

24 Pretrial Br., Dkt. No. 406, at 17.  This issue is not subject to reasonable dispute.  Indeed, until

25 recently, Plaintiffs agreed.  When Defendant raised this argument on summary judgment, Plaintiffs

26

27

28

Case No. 3:22-CV-05937-CRB
DEFENDANT ELON MUSK'S RESPONSE TO THE
COURT'S ORDER FOR FURTHER RESPONSE

did not oppose the motion.  Just as a court errs in failing to apply *Noerr-Pennington* at the summary judgment stage, the Court must abide by this black-letter law in framing the issues for the jury.[1]

If the Court remains uncertain as to whether the scheme may include protected litigation conduct—notwithstanding the clear articulation from the Supreme Court decades ago that protected activity may not be included as part of a scheme—the Court should certify this issue for interlocutory appeal.  *See* Dkt. No. 448.  And particularly because Plaintiffs did not dispute at the summary judgment stage that the *Noerr-Pennington* doctrine protects from liability any petitioning conduct, the Court must grant a continuance if it now holds otherwise after declining to reach this issue when raised at the motion to dismiss and summary judgment stages.  *See* Dkt. No. 446.

*Second*, and apart from *Noerr-Pennington*, Plaintiffs' "scheme" claim cannot rest on statements that the Court already has ruled were not alleged to be materially false or misleading.  As Defendant argued—and Plaintiffs did not dispute—true and not misleading statements cannot be the basis for liability under Section 10(b), regardless whether the claim is characterized as a Rule 10b-5(b) misrepresentations or omissions claim or a Rule 10b-5(a) scheme claim.  Dkt. Nos. 429, 449.  Once again, the Supreme Court requires as much.  *See Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 78 (2019) ("Dissemination of ***false or misleading statements*** with intent to defraud can fall within the scope of Rules 10b–5(a) and (c)." (emphasis added)).  Thus, entirely independent of the *Noerr-Pennington* doctrine, the Court also has an obligation to ensure that Plaintiffs do not rest any scheme theory of liability on statements the Court already has found were not alleged to be false or misleading.

---

[1]  *See, e.g.*, *Knology, Inc. v. Insight Commc'ns Co.*, 393 F.3d 656, 659 (6th Cir. 2004) (reversing grant of summary judgment for plaintiff because *Noerr-Pennington* barred all claims for damages arising out of legitimate petitioning); *In re Merck Mumps Vaccine Antitrust Litig.*, 2024 WL 4432076, at *9 (3d Cir. Oct. 7, 2024) (reversing in part order denying summary judgment because "*Noerr-Pennington* immunity shields Merck from liability for its alleged scheme"); *State of S.D. v,. Kansas City So. Indus., Inc.*, 880 F.2d 40, 52–53 (8th Cir. 1989) (reversing judgment of district court and holding "as a matter of law" that litigation activities were "protected by the *Noerr-Pennington* doctrine"); *TEC Cogeneration Inc. v. Florida Power & Light Co.*, 76 F.3d 1560, 1573 (11th Cir. 1996) (reversing district court's denial of summary judgment because alleged conduct was "constitutionally protected under the *Noerr/Pennington* doctrine of immunity").

1    *Finally*, and again independently, the Court should preclude Plaintiffs from presenting any

2    scheme liability theory at all both because of Plaintiffs' failure to plead its scheme claim with the

3    particularity required under Rule 9(b) and because Plaintiffs did not seek to certify a class based on

4    this amorphous "scheme."  Nor could Plaintiffs have met either of these prerequisites to trying a

5    scheme claim to the jury.  Plaintiffs failed to identify anything other than allegedly false or

6    misleading statements as a basis for liability until after the close of discovery.  Thus, at class

7    certification, the Court certified a class based on only the three surviving alleged misstatements,

8    expressly rejecting a proposed lead plaintiff who relied on the July 8 termination letter that both

9    Plaintiffs and the Court now characterize as part of the purported scheme claim.  If Plaintiffs are

10   permitted to assert a broader theory of liability and class-wide reliance, binding Supreme Court law

11   requires that class discovery and certification be reopened to allow Defendant to rebut the

12   presumption of reliance before Plaintiffs can prosecute their scheme liability claim at trial on a

13   class-wide basis.

14       In sum, Defendant has raised each of these arguments as separate grounds for precluding

15   evidence and argument on a scheme liability claim.  As Defendant stated in his pretrial brief,

16   "Plaintiffs' scheme claim, when stripped of [1] statements that were dismissed, [2] newly alleged

17   fraudulent conduct that Plaintiffs were aware of but did not plead as part of any scheme, and [3]

18   protected litigation conduct, amounts to nothing more than the May 13 tweet, the May 16 statements

19   at the "All In" conference, and the May 17 tweet—*i.e.*, the three misrepresentations at issue."  Dkt.

20   No. 406 at 17.  Together—and not simply as a result of the application of the *Noerr-Pennington*

21   doctrine—these arguments foreclose Plaintiffs' scheme claim.  But even if the Court disagrees with

22   certain aspects of Defendant's position and believes Plaintiffs may pursue some form of scheme

23   claim, the Court must ensure that such a theory does not sweep in protected litigation conduct.

24

25

26

27

28

**<u>ARGUMENT</u>**

**I.    UNDER THE *NOERR-PENNINGTON* DOCTRINE, PROTECTED LITIGATION CONDUCT MUST BE CARVED OUT FROM ANY SCHEME LIABILITY CLAIM**

**A.    *Clipper* Does Not Permit A Scheme To Encompass Protected Litigation Activity**

The Court's February 23, 2026 Order invites Defendant to address "why the Ninth Circuit's decision in <u>Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.</u>, 690 F.2d 1240 (9th Cir. 1982), does not foreclose" Defendant's *Noerr-Pennington* argument.  Dkt. No. 451 at 1.  The Court's Order states that Defendant is arguing that "the <u>Noerr-Pennington</u> doctrine bars Plaintiffs' [scheme liability] claim since it encompasses what he believes to be protected activity."  *Id.*

As an initial matter, Defendant's argument is not so broad.  Defendant is not contending that *Noerr-Pennington* bars Plaintiffs' scheme liability claim in its entirety because the purported scheme encompasses protected conduct.  Rather, Defendant's *Noerr-Pennington* argument fits squarely within the holding of *Clipper* in arguing that the protected conduct itself may not be a basis for liability, even as part of a scheme claim.  *See, e.g.*, Def.'s Mot. *in Limine* No. 4, Dkt. No. 342, at 6 ("*Finally*, Plaintiffs should also be precluded from offering evidence or argument at trial that Musk should be held liable *based upon conduct or statements arising from Musk's protected litigation conduct*." (emphasis added)); Def.'s Reply in Support of Mot. *in Limine* No. 4, Dkt. No. 399, at 3 ("*Third*, Plaintiffs' arguments that *Noerr-Pennington* does not immunize Musk's *petitioning conduct* are wrong." (emphasis added)); Def.'s Pretrial Br., Dkt. No. 406, at 9–12[2]

---

[2] Defendant's Pretrial Brief specifically goes through each alleged statement or activity Plaintiffs identified in opposition to Defendant's Motion *in Limine* No. 4 and identifies the reason why each one may not serve as a basis for scheme liability.  *Contrast, e.g.*, Dkt. No. 406 at 9–10 (for the first three bases identified in Plaintiffs' opposition, arguing that they encompass only the surviving alleged misrepresentations and alleged misrepresentations that were already dismissed, but not arguing *Noerr-Pennington*), *and id.* at 11 (for several bases identified, including "firing Bob Swan" and "hiring data scientists," arguing that these were not pled as bases for liability but rather as evidence of scienter, and not arguing *Noerr-Pennington*), *with, e.g., id.* at 10–12 (for the letters sent by Mr. Musk's lawyers, including termination letters, and for "asserting frivolous defenses and counterclaims in the Delaware Action," arguing that these are insulated by the *Noerr Pennington* doctrine in addition to being dismissed or not pled as a basis for liability but rather as evidence of scienter).

(addressing statements and conduct that Plaintiffs identified in opposition to MIL No. 4 as part of the scheme and identifying only the litigation conduct as immunized by *Noerr-Pennington*); Dkt. No. 406 at 15–16 ("Even if the Court had not dismissed Plaintiffs' claims *based on letters sent by Musk's lawyers leading up to and during litigation* (it did), and even if Plaintiffs had pleaded Musk's *litigation conduct and settlement discussions* constituted fraudulent conduct (they did not), Plaintiffs would still be barred by the *Noerr-Pennington* doctrine from pursuing those claims at trial." (emphasis added)); Def.'s Response to the Court's Invitation for Supp. Briefing on MIL No. 4, Dkt. No. 429, at 4 ("If Plaintiffs may now seek to re-insert the July 8 termination letter, subsequent termination letters, and core litigation conduct such as positions taken by Mr. Musk's lawyers during litigation, the Court must now address *Noerr-Pennington*.  As set forth above, the law is clear that *this conduct* is categorically immune from statutory liability." (emphasis added)); Def.'s Mot. for Certification Under 28 U.S.C. § 1292(b), Dkt. No. 448, at 5–6 (addressing the Court's indication that it would "allow Plaintiffs to present these [litigation conduct] issues to the jury as *part of* their scheme liability theory" (emphasis added)).

Defendant also clearly articulated this position at the pretrial conference, explaining that "litigation-protected conduct cannot *be part of* a scheme claim."  Tr. of Feb. 17, 2026 Proceedings at 89:18–21 (emphasis added).  Defendant reiterated that "the litigation conduct cannot be *part of* any scheme liability claim."  *Id.* at 90:3–4 (emphasis added).  Defendant did not argue with respect to the *Noerr-Pennington* doctrine that the entire scheme claim is immunized simply because it includes litigation conduct.  In this regard, Defendant's argument is entirely consistent with *Clipper*, which stands for the uncontroversial proposition that "when petitioning activity is but a part of a larger overall scheme to restrain trade, there is no *overall* immunity."  *Clipper*, 690 F.2d at 1263 (emphasis added); *see also* Court's Order at Dkt. No. 451.  Defendant has not taken a position to the contrary and, to the extent any confusion remains, appreciates the opportunity to clarify as much.

Instead, as set forth above, Defendant has argued that, under *Noerr-Pennington*, the litigation conduct itself is immunized from liability and cannot be *part of* any scheme claim.  *Clipper* itself supports that argument.  It explains that the *Noerr Pennington* doctrine—as made clear by the Supreme Court in *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965)—"provides

1  immunity only for the narrow petitioning activity." *Clipper*, 690 F.2d at 1265. *Clipper* does not

2  permit liability based on the protected conduct even if included as part of a broader scheme.

3      The Court's cited cases reinforce this distinction.  In *Alvarado v. Western Ranger*

4  *Association*, the court rejected a *Noerr-Pennington* argument based on *Clipper* because the plaintiff

5  was "not challenging Defendant's petitioning activity," holding that "[e]ven if part of Defendant's

6  actions may have involved petitioning conduct, that does not render Defendant's *overall* alleged

7  agreement or conspiracy of wage-fixing immune."  2023 WL 4534624, at *4 (D. Nev. Mar. 21,

8  2023) (quotations omitted).  Here, in contrast, Plaintiffs are challenging Defendant's petitioning

9  activity.  That activity is protected and cannot be part of the scheme claim—but it does not immunize

10 the *overall* scheme.  The same is true of *Databricks, Inc. v. Weisfield*, 2025 WL 3785324, at *1

11 (W.D. Wash. Mar. 14, 2025).  There, the court emphasized *Clipper*'s direction that "when the

12 petitioning activity is but part of a larger overall scheme to restrain trade, there is no *overall*

13 immunity."  2025 WL 3785324, at *8 (quoting *Clipper*, 690 F.2d at 1263–64) (emphasis added in

14 *Databricks*).  *Databricks*, in turn, cites *Philips North America, LLC v. Summit Imaging Inc.*, in

15 which a plaintiff challenged "not just" litigation activity but also the defendant's "entire course of

16 conduct."  2020 WL 6741966, at *4 (W.D. Wash. Nov. 16, 2020).  Relying on *Clipper*, the court

17 explained that "*Noerr-Pennington* provides Philips immunity from antitrust liability against

18 Summit's claims based on Philip's legitimate, non-sham litigation activity, that immunity does not

19 extend to Summit's other allegations of anticompetitive conduct."  *Id.*    The court thus

20 "DISMISSE[D] with prejudice Summit's antitrust claims under the *Noerr-Pennington* doctrine only

21 to the extent they are premised on Philip's litigation activity."  *Id.*[3]  That is precisely how the Court

22

23 [3] Cases outside this Circuit have relied on *Clipper* to make this very same distinction.  *See, e.g.*,
   *Grip-Pak, Inc. v. Illinois Tool Works, Inc.*, 651 F. Supp. 1482, 1498 (N.D. Ill. 1986) (explaining that
24 "[t]he cases relied on by plaintiffs simply stand for the unremarkable proposition that petitioning
   activity which is part of an overall illegal scheme cannot confer immunity on the defendant's other,
25 unprotected, activities"); *Abbott Lab'ys v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408, 429–30
   (D. Del. 2006) (citing *Clipper* and explaining that "Plaintiffs may not use litigation conduct to
26 support a claim of an overall scheme to monopolize if they cannot prove that the litigation was a
   sham," but that "because [plaintiffs'] other allegations unrelated to litigation survive this Motion,
27 (footnote continued)

28

should handle *Noerr-Pennington* here—it should dismiss the litigation activity as a basis for liability.

There can be no doubt that this distinction is the correct reading of *Clipper*. Any reading of *Clipper* to suggest that protected litigation conduct loses its protection if it is alleged to be part of a scheme would be impossible to square with the Supreme Court's clear instruction in *Pennington*: "Joint efforts to influence public officials do not violate the antitrust laws, even though intended to eliminate competition. Such conduct is not illegal, either standing alone or ***as part of a broader scheme*** itself violative of the Sherman Act." *Pennington*, 381 U.S. at 670 (emphasis added). As the Fifth Circuit has explained, *Clipper*'s "holding was that *Noerr-Pennington* 'provides immunity only for the narrow petitioning activity,' and that this immunity does not provide 'overall immunity' to other violations." *In re Burlington Northern, Inc.*, 822 F.2d 518, 526 (5th Cir. 1987). But *Clipper* "did not hold, and could not hold consistently with *Pennington*, that the overall scheme makes the otherwise protected petitioning a sham." *Id.* Indeed, even after *Clipper*, the Ninth Circuit has repeatedly invoked *Pennington*'s instruction that petitioning conduct is not illegal, even if the petitioning conduct is motivated by illegal purposes and even if it is alleged to be "part of a broader scheme." *See, e.g.*, *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 533–35 (9th Cir. 1991) ("In *Pennington*, the Supreme Court noted that genuine petitioning activities are 'not illegal, either standing alone *or as part of a broader scheme itself violative of the Sherman Act*.'" (emphasis in original)); *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 893–95 (9th Cir. 1988) (quoting *Pennington* and adding that "[a] contrary rule, according to the Court, could impede first amendment rights to petition the government"); *Empress LLC v. City & Cnty. of San Francisco*, 419 F.3d 1052, 1057 (9th Cir. 2005) (rejecting argument that because "activities constitute part of a conspiracy to exercise an unlawful delegation of power, they are not immunized under the sham

---

its overall scheme claim also survives based on those allegations"); *In re Suboxone (Buprenophine Hydrochloride and Naloxone) Antitrust Litig.*, 622 F. Supp. 3d 22, 77 (E.D. Pa. 2022) (citing *Clipper* and explaining that "[w]here certain conduct is immunized from antitrust liability, a court must still consider evidence of the remaining challenged conduct in the aggregate to see if it is sufficient to support antitrust liability").

1  exception to the *Noerr-Pennington* doctrine" and citing *Pennington* for the proposition that "illegal

2  purposes and motivations behind petitioning do not illegalize the petitioning conduct").

3        In short, the law is clear.  Protected petitioning activity may not be a basis for liability, even

4  if it is alleged to be part of a broader scheme.  At the same time, a scheme claim does not enjoy

5  overall immunity simply because it is alleged to include some protected litigation conduct.  Rather,

6  courts should dismiss the protected conduct and then examine whether the remaining conduct is

7  sufficient to establish an independent violation of the law.  That is precisely what Defendant has

8  urged the Court to do here.

9        **B.    Plaintiffs May Not Argue The Sham Exception At Trial**

10        The Ninth Circuit in *Clipper* does differ from this case in one important way:  The plaintiff

11  in *Clipper* had demonstrated a triable issue of fact on the question of sham litigation.  Here, by

12  contrast, Plaintiffs never even attempted to demonstrate a triable issue of fact.  Rather, Plaintiffs did

13  not oppose summary judgment based on *Noerr-Pennington* at all, never sufficiently pled any sham

14  exception, and have not included in the Joint Pretrial Order the sham exception as an issue to be

15  tried to the jury.

16        As the Ninth Circuit explained in *Clipper*, "[i]t is unquestionably true, as defendants assert,

17  that *Noerr-Pennington* confers antitrust immunity for conduct genuinely intended to influence

18  governmental action.  Whether something is a genuine effort to influence governmental action, or a

19  mere sham, is a question of fact.  The facts here show, however, that this conduct is not the type that

20  is entitled to immunity; it is not in fact conduct intended to influence governmental action." *Clipper*,

21  690 F.2d at 1253.  Thus, in that case, "Clipper, for the purposes of the summary judgment motion,

22  ha[d] sufficiently shown that defendants' protests were spurious, baseless, and prosecuted without

23  regard to their merit, intended only to delay competitive action, not to influence governmental

24  action." *Id.*

25        Here, by contrast, Plaintiffs did not oppose Defendant's motion for summary judgment based

26  on *Noerr-Pennington*.  *See* Dkt. No. 446. at 6.  Nor could Plaintiffs have asserted on summary

27  judgment that the sham exception applied because they never pled it.  The law is clear that "a

28  plaintiff seeking to establish the sham exception to *Noerr-Pennington*" must plead it "with

-8-

specificity." *Gamble v. Kaiser Foundation Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1028 (N.D. Cal. 2018). To avoid a chilling effect, "it is important that a plaintiff's complaint contain specific allegations demonstrating that the *Noerr-Pennington* protections do not apply." *Boone*, 841 F.2d at 894. "Conclusory allegations are insufficient to strip them of their *Noerr-Pennington* protection" because "our responsibilities under the first amendment in a case like this one require us to demand that a plaintiff's allegations be made with specificity." *Id.*

While Plaintiffs argue that they should be permitted to present the sham exception to the jury, they cannot cite anything in the First Amended Complaint that pleads the applicability of the exception—let alone with the required specificity.[4] Instead, Plaintiffs argue that "the Court and Jury will soon find out" Plaintiffs' evidence supporting the sham exception. Dkt. No. 449 at 7. That, of course, is not how a heightened pleading standard required to protect fundamental First Amendment rights is applied.

Indeed, the only case Plaintiffs cite for their argument is a case in which the court **twice** dismissed the plaintiff's claims under *Noerr-Pennington* because the plaintiff had not adequately alleged the sham exception. *See Rock River Commc'ns, Inc. v. Universal Music Group, Inc.*, 2:08-cv-0635 (C.D. Cal. 2014), Dkt. Nos. 25, 40. The court only allowed the claim to proceed once it was satisfied that the allegations in the plaintiff's revised complaint were "sufficient to satisfy the heightened pleadings standard that applies to 'sham' cases under the *Noerr-Pennington* doctrine." *Id.*, Dkt. No. 58.

The Court's ruling at the motion to dismiss stage confirms that Plaintiffs did not plead any sham litigation exception. At that time, Defendant moved to dismiss Plaintiffs' entire complaint based on *Noerr-Pennington* immunity. In doing so, Defendant did not in any way tailor its *Noerr-Pennington* arguments to a misstatement theory under Rule 10b-5(b). Dkt. No. 34 at 21–22 ("Even if the FAC did state a 10b-5 claim under the PSLRA's exacting standards—which it did not—the

---

[4] Notably, Plaintiffs have abandoned their argument that First Amendment protections, and the accompanying *Noerr-Pennington* immunity, somehow do not apply to Section 10(b) claims— perhaps recognizing the Ninth Circuit's clear guidance that *Noerr-Pennington* is a "generic rule of statutory construction, applicable to any statutory interpretation that could implicate rights protected by the Petition Clause." *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 931 (9th Cir. 2006).

1  action would still fail because it seeks to convert Mr. Musk's protected petitioning communications

2  about his legal dispute with Twitter and positions in the Delaware Action into securities fraud.  That

3  is not a viable theory as a matter of law and would undoubtedly chill market participants from

4  petitioning the judicial system for redress.").  Yet the Court concluded that it did not need to address

5  *Noerr-Pennington*'s application to the pre-suit letters, let alone the litigation itself, because it had

6  already held that "Plaintiffs have not adequately alleged falsity with respect to the letters."  Dkt. No.

7  48 at 39.  If the Court had not dismissed any litigation conduct that Plaintiffs conceivably pled, the

8  Court would have been required to address the sham exception at the pleading stage.  In doing so,

9  the Court would have had to apply a "heightened pleading standard" to determine whether Plaintiffs

10  adequately pled the sham exception.  *See Oregon Nat. Res. Council*, 944 F.2 at 533.  "This

11  heightened level of protection accorded petitioning activity is necessary to avoid 'a chilling effect

12  on the exercise of this fundamental First Amendment right.'"  *Id.* (quoting *Franchise Realty*

13  *Interstate Corp. v. San Francisco Local Joint Exec. Bd.*, 542 F.2d 1076, 1082 (9th Cir. 1076), *cert.*

14  *denied*, 430 U.S. 940 (1977)).  That the Court deemed it unnecessary to address Defendant's *Noerr-*

15  *Pennington* argument confirms that the First Amended Complaint did not plead any sham

16  exception—or, indeed, any basis for liability other than the alleged misstatements.

17      But Plaintiffs have an even bigger problem—one Defendant raised in their supplemental

18  brief (Dkt. No. 429 at 4), but that Plaintiffs entirely fail to address in their supplemental brief (*see*

19  *generally*, Dkt. No. 449).  Because Plaintiffs did not identify the sham exception as an issue for trial

20  in the Joint Pretrial Order the parties submitted, this issue may not be tried to the jury.  "Parties have

21  a duty to advance any and all theories in the pretrial order."  *Hartzell v. Marana Unified Sch. Dist.*,

22  130 F.4th 722, 735 (9th Cir.), *cert. denied*, 146 S. Ct. 298 (2025) (alterations adopted) (quoting *El-*

23  *Hakem v. BJY Inc.*, 415 F.3d 1068, 1077 (9th Cir. 2005)).  "Accordingly, a party may not offer

24  evidence or advance theories at the trial which are not included in the order or which contradict its

25  terms."  *Id.* (quoting *El-Hakem*, 415 F.3d at 1077).  Plaintiffs are therefore categorically prohibited

26  from advancing a sham exception theory at trial.

27

28

Case No. 3:22-CV-05937-CRB
DEFENDANT ELON MUSK'S RESPONSE TO THE
COURT'S ORDER FOR FURTHER RESPONSE

## II. WHOLLY APART FROM THE *NOERR-PENNINGTON* DOCTRINE, PLAINTIFFS CANNOT REST SCHEME LIABILITY ON STATEMENTS NOT PLED TO BE FALSE OR MISLEADING

That the *Noerr-Pennington* doctrine only carves out litigation conduct from any scheme claim—and does not preclude the theory as whole—does not mean, however, that any scheme claim here may be tried to the jury. Instead, as the Court recognized at the pretrial conference, Defendant separately argues in Motion *in Limine* No. 4 that a scheme claim may not be based on dismissed statements. *See* Tr. of Feb. 17, 2026 Proceedings at 74:19–25 (the Court articulating Defendant's argument based on the Court's decision in *PayPal*, which the Court explained "said that failure of proving that the statement is false thereby terminates any liability that you would have under 10b-5"); Dkt. No. 342 at 4–5 (Defendant's Motion *in Limine* making this argument).

At the pretrial conference, the Court posed a separate question—whether scheme liability may be based on making statements that are not false or misleading. *See* Tr. of Feb. 17, 2026 Proceedings at 97:17–99:22. The Court emphasized that if making statements that are not false or misleading "isn't a violation of the A provision" of Rule 10b-5, then Defendant is "right." *Id.* at 99:16–22. Defendant's brief, filed the next day, responded to that question. It pointed to the Supreme Court's holding in *Lorenzo* that the "[d]issemination of *false or misleading statements* with intent to defraud can fall within the scope of Rules 10b–5(a) and (c)." 587 U.S. at 78 (emphasis added). As a result, Defendant explained, that a true and not misleading statement cannot be the basis for liability under Section 10(b) at all. Dkt. No. 429 at 5–6. And Defendant explained, in response to the Court's specifically articulated concern, that no risk exists that an individual may artfully avoid liability for securities fraud by formulating intentionally misleading statements as non-actionable statements of opinion because if the statements are misleading, they are actionable under Rule 10b-5(b). *Id.* at 6–7.

Plaintiffs, in their supplemental brief, failed to devote a single sentence to the Court's question or this clear law. Plaintiffs abandon any argument that Mr. Musk may be liable under Rule 10b-5(a) for making statements that the Court has already determined were not alleged to be false or misleading. Plaintiffs do not cite a single case holding that issuing true and not misleading

1    statements can constitute securities fraud.  That is because it cannot; penalizing such statements

2    would run directly contrary to the First Amendment.

3        Here, the Court already considered the statements that Plaintiffs alleged to be false and

4    misleading.  It held that Plaintiffs had pled only three such misstatements.  Dkt. No. 48 at 39.

5    Plaintiffs cannot now pursue any claim under Section 10(b) based on statements they have not

6    alleged to be false or misleading.

7    **III.    PLAINTIFFS' FAILURE TO PROPERLY PLEAD, DISCLOSE, OR CERTIFY A SCHEME LIABILITY THEORY BARS SUCH A CLAIM IN ITS ENTIRETY**

8        While the *Noerr-Pennington* argument and dismissed statements argument address certain

9    aspects of Plaintiffs' amorphous scheme liability theory, Defendant has sought to preclude Plaintiffs

10   from presenting any scheme liability theory because Plaintiffs failed to plead any scheme claim with

11   the particularity required under Rule 9(b) and because Plaintiffs did not seek to certify a class based

12   on this wide-ranging "scheme."  Indeed, Plaintiffs never even disclosed any conduct—as required

13   to differentiate their scheme claim from a misstatement claim under Rule 10b-5(b)—until after the

14   close of discovery.  And, as Defendant separately has argued, the need for discovery to defeat the

15   presumption of reliance—which the Supreme Court requires a defendant be permitted to do "before

16   class certification," *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014)—at a

17   minimum would require a continuance before Plaintiffs could pursue any scheme claim.  These

18   deficiencies that pervade Plaintiffs' scheme theory also reveal the truth:  Plaintiffs never put the

19   Defendant or the Court on notice of any scheme claim until it was too late for them to pursue such

20   a theory.

21       **A.    Plaintiffs Failed To Plead Scheme Liability With Particularity**

22       Defendant did advance in Motion *in Limine* No. 4 an argument as to why the Court should

23   bar Plaintiffs from offering any evidence or argument on scheme liability: their failure to plead such

24   a claim with specificity.  Even now, Plaintiffs cannot point to anything more than fleeting references

25   in the First Amended Complaint to the word "scheme."  Defendant raised, and Plaintiffs do not

26   dispute, clear law that a scheme liability claim must be pled with particularity under Federal Rule

27   of Civil Procedure 9(b) and that doing so requires Plaintiffs to identify with particularity what

28

manipulative or deceptive acts were performed as part of the scheme.  *See* Dkt. No. 429 at 7–8 (Defendant's supplemental brief setting out this argument and law).  Instead, Plaintiffs rely on their generalized references to a "scheme" and argue that the Ninth Circuit has held such references are sufficient to plead a scheme claim in *In re Alphabet Sec. Litig.* 1 F.4th 687, 709 (9th Cir. 2021).  The Ninth Circuit did not so hold; rather, it held that the district court erred in *sua sponte* dismissing a scheme liability claim alleged against defendants who disseminated various statements, certain of which the court had determined were pled as false or misleading.  *Id.*  The Ninth Circuit did not purport to amend the heightened pleading standards required for fraud claims under the Federal Rules of Civil Procedure.  Nor did the Ninth Circuit hold that conduct that is not pled as a basis for liability at all may somehow be a basis for a scheme claim at trial.  The Ninth Circuit did not address the question of pleading standards at all.  Here, the Court has recognized that it must decide at this stage whether the "scheme" claim was properly pled.  Tr. of Feb. 17, 2026 Proceedings at 80:7–13; *see also* Dkt. No. 449 at 1 (Plaintiffs' Opposition recognizing this).  The law is clear that it was not.

### B.  Plaintiffs Failed To Disclose The Scheme Theory They Seek To Pursue Prior To The Close Of Discovery

In their supplemental brief, Plaintiffs attempt a slight-of-hand trick with the Court, suggesting that they timely disclosed the purported basis for their scheme claim because Defendant timely asked Plaintiffs to identify the purported conduct giving rise to their scheme during discovery.  Dkt. No. 449 at 2.  But Plaintiffs elide the critical fact:  They did not disclose to Defendant that their scheme encompassed any conduct outside of the dissemination of allegedly false statements until after discovery closed.  They concealed the breadth of their scheme theory during the entire discovery period, depriving Defendant of the ability to test and develop evidence in response.  If Plaintiffs intended to put on trial Defendant's litigation conduct, they were required to plead with particularity the sham exception to *Noerr-Pennington*, *infra* Section I.B, and disclose it during the course of discovery.  *See also Oregon Nat. Res. Council*, 944 F.2d at 536 (affirming dismissal under *Noerr-Pennington* and holding the sham exception must be pled with particularity: "the heightened pleading standard . . . would have no force if in order to satisfy it, a party could

simply recast disputed issues from the underlying litigation as 'misrepresentations' by the other party").  Plaintiffs did neither.

As Plaintiffs note in their Opposition, the *only* grounds for a purported "scheme" they disclosed during discovery was Defendant's dissemination of 31 allegedly false statements—many of which, including the July 8 Termination Letter, the Court dismissed as inactionable.  *Compare* Dkt. No. 48 at 39, *with* Dkt. No. 446-4, Resp. to Interrogatory No. 6.  And when Defendant propounded Interrogatory No. 14 asking Plaintiffs to "[s]tate all bases and facts that support Your contention that Defendant violated 17 CFR 240.10b," Plaintiffs stated:  "Plaintiffs refer Defendant to Plaintiffs' Supplemental Responses and Objections to Defendant's First Set of Interrogatories Nos. 6, 7, 8, 9, and 10" and also objected to the Interrogatory No. 14 as "*duplicative of Interrogatories 6, 7, 8, 9, and 10.*"  Dkt. No. 446-03.  The upshot is that, during discovery, Plaintiffs asserted that any basis for scheme liability consisted only of alleged misstatements.  It took an order from Judge Ryu to compel Plaintiffs to finally reveal what *conduct* they contended constituted their scheme, Dkt. No. 238 at 18–19, and they did not do so until discovery closed and summary judgment was just days away.   Plaintiffs identify five separate dates in their discovery argument, yet conveniently omit the most critical one: when they finally purported to disclose their scheme— August 12, 2025.

Next, Plaintiffs purport to argue "no harm, no foul," and contend that their dilatory response to Interrogatory No. 14 merely repeated allegations made in the FAC. Dkt. No. 449 at 3.  But, with the exception of the three alleged misstatements that survived the pleadings and the others that the Court dismissed, *all* of the conduct identified were allegations in support of Plaintiffs' scienter theory and not pled as fraudulent conduct giving rise to liability under Section 10(b).  However, as both the Ninth Circuit and the Supreme Court have made clear, falsity and scienter are separate inquiries that must be pled separately. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007) ("The PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation, ***and*** the facts evidencing scienter") (emphasis added); *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc*., 63 F.4th 747, 766 (9th Cir. 2023) ("The combined approach used in *Ronconi, In re Vantive, In re Daou*, and *In re Read-Rite Corp.* was abrogated by subsequent Supreme Court

decisions that treated falsity and scienter as separate requirements."). Defendant was not put on notice and did not have the opportunity to test or take discovery on Plaintiffs' new claim that his litigation positions and conduct were independent bases for fraud because Plaintiffs hid that theory from him until the eve of trial. More discovery is necessary because Plaintiffs are now pursuing a completely new theory.

### C.    Plaintiffs Did Not Certify A Scheme Class

Finally, Plaintiffs offer no response to Defendant's argument that they did not certify a class for their so-called scheme theory. They have none. Their briefing and the Court's class certification order speak for themselves. The Court only considered—and only certified—a class of sellers who relied on Defendant's three alleged misstatements—nothing else. Dkt. No. 106 at 1–2. As Plaintiffs' silence confirms, it is beyond dispute that the Court did not certify a class of sellers who sold in reliance on Mr. Musk's decision to terminate and subsequent litigation conduct—the Court removed a Class Representative because that is exactly what he did. *Id.* at 9–10. And Plaintiffs also have no rejoinder to Defendant's argument that class discovery and certification must be reopened to allow him to rebut the presumption of reliance before they can prosecute their scheme liability at trial on a class-wide basis. *Compare* Dkt. No. 429 at 10–12, *with* Dkt. No. 449. It is the Supreme Court's unambiguous mandate. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014) (defendant "must be afforded an opportunity before class certification to defeat the presumption").

Thus, at a minimum, and as set forth in Defendant's request for a continuance, Dkt. No. 446 at 12, if the Court permits a scheme claim to proceed to trial, it must grant a continuance to allow for discovery into class-wide reliance on the still-undefined "scheme."

### **CONCLUSION**

The Court should grant Defendant's Motion *in Limine* No. 4 or, in the alternative, grant a continuance to allow for discovery and a determination as to whether Plaintiffs can establish class-wide reliance for their scheme claim.

DATED:  February 25, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____*/s/ Ellyde R. Thompson*_____
    Alex Spiro
    Michael T. Lifrak
    Stephen A. Broome
    Ellyde R. Thompson
    Jesse A. Bernstein
    Alex Bergjans

*Attorneys for Defendant Elon Musk*

Case No. 3:22-CV-05937-CRB
DEFENDANT ELON MUSK'S RESPONSE TO THE
COURT'S ORDER FOR FURTHER RESPONSE

1

## CERTIFICATE OF SERVICE

2

    I hereby certify that the foregoing document was served on all counsel of record

3

electronically or by another manner authorized under FED. R. CIV. P. 5(b) on Wednesday, February

4

25, 2026.

5

                                QUINN EMANUEL URQUHART &
                                SULLIVAN, LLP

6

7

8

                         By _/s/ Alex Bergjans_____
                                Alex Spiro

9

                                Michael T. Lifrak

10

                                Stephen A. Broome
                                Ellyde R. Thompson

11

                                Jesse A. Bernstein
                                Alex Bergjans

12

13

                                *Attorneys for Defendant Elon Musk*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>ATTESTATION</u>

2

      Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this

3

document has been obtained from the other signatories herein.

4

5

6

                            By  */s/ Alex Bergjans*

7

                                   Alex Spiro

8

                                   Michael T. Lifrak
                                   Stephen A. Broome

9

                                   Ellyde R. Thompson
                                   Jesse A. Bernstein

10

                                   Alex Bergjans

11

                                   *Attorneys for Defendant Elon Musk*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:22-CV-05937-CRB
DEFENDANT ELON MUSK'S RESPONSE TO THE
COURT'S ORDER FOR FURTHER RESPONSE