QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Ellyde R. Thompson (*pro hac vice*)
ellydethompson@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
jessebernstein@quinnemanuel.com
296 Fifth Avenue
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendant Elon Musk*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | Case No. 3:22-cv-05937-CRB<br><br>**DEFENDANT'S REVISED PROPOSED JURY INSTRUCTIONS**<br><br>Judge:   Honorable Charles R. Breyer |

## TABLE OF CONTENTS

1   In light of the Court's February 26, 2026 Order at Dkt. No. 454 indicating that the Court will allow Plaintiffs to pursue a theory of "scheme" liability at trial, Defendant submits two additional proposed jury instructions—one preliminary instruction and one closing instruction—related to that claim pursuant to the reservation of rights in Defendant's proposed jury instructions, Dkt. 359 at 4 n.1.  Per the Court's Order at Dkt. No. 195, Defendant identifies departures from the model instructions in underline.  Defendant submits herein only these two additional instructions.  Defendant otherwise maintains his prior proposed instructions, Dkt. No. 359, his arguments in support of those instructions, Dkt. No. 366, and his objections to Plaintiffs' proposed instructions, Dkt. No. 366.

For the avoidance of any doubt, Defendant continues to object to Plaintiffs' purported scheme claim, including to its inclusion of litigation conduct protected by the First Amendment, its inclusion of statements that the Court has already dismissed because they were not alleged to be false or misleading, its inclusion of conduct that was not pleaded as a basis for liability anywhere in the First Amended Complaint, and because the scheme claim as a whole was not pleaded with the particularity required under Federal Rule of Civil Procedure 9(b) and therefore Defendant was not on notice of the claim or its contours.  Indeed, Defendant remains unaware precisely what manipulative or deceptive conduct Plaintiffs assert is part of their "scheme" claim.

# PRELIMINARY JURY INSTRUCTIONS

**Supplemental Preliminary Instruction Re Petitioning Activity Offered by Defendant**

<u>You may hear evidence about litigation conduct by Mr. Musk, including letters sent by Mr. Musk's counsel, Mr. Musk's July 8 termination of the Merger Agreement, and ensuing litigation. You are instructed that litigation conduct is protected by the First Amendment and you may not find liability based on Mr. Musk's litigation conduct.</u>

Source: *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1265 (9th Cir. 1982); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929, 935 (9th Cir. 2006).

Defendant respectfully requests that the Court provide a supplemental preliminary instruction regarding petitioning conduct, pursuant to the Court's February 26, 2026 Order indicating that "the Court will instruct the jury that they may not find scheme liability based on his petitioning conduct alone and that they must look at the entire course of his conduct for liability." Dkt. No. 454 at 3 n.3. Defendant requests that the Court so instruct the jury at the outset of trial in addition to in the concluding jury instructions, given that the jury will undoubtedly hear arguments from Plaintiffs' counsel about protected litigation conduct in the immediately following opening statements and throughout trial.

As set forth above, Defendant requests that the Court instruct the jury that protected litigation activity may not be the basis for liability at all. As Defendant previously explained, *Clipper* holds that a scheme claim is not barred ***overall*** simply because it encompasses protected litigation conduct. *See* Dkt. No. 453 at 4–8. *Clipper* makes clear that the Supreme Court's statement in *Pennington* that petitioning conduct "is not illegal, either standing alone or as part of a broader scheme itself violative of" the relevant law, *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965), "provides immunity only for the narrow petitioning activity, if done with the requisite intent to influence government action," *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1265 (9th Cir. 1982)—that is, the narrow petitioning conduct remains immune if it is not a sham. In *Clipper*, the Ninth Circuit had already explained in detail why there was a triable issue of fact on the question of sham litigation. *See Clipper*, 690 F.2d at 1250–57. Here, in contrast, as Defendant explained—and neither Plaintiffs nor the Court dispute—sham litigation is simply not a factual issue to be tried. *See* Dkt. No. 453 at 10. Plaintiffs did not identify this as

an issue for trial in the Joint Pretrial Order; "a party may not offer evidence or advance theories at trial which are not included in the order or which contradict its terms." *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 735 (9th Cir.), *cert. denied*, 146 S. Ct. 298 (2025) (quoting *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1077 (9th Cir. 2005)). Because Plaintiffs cannot advance a sham exception theory at trial, *Clipper*, consistent with *Pennington*, provides immunity for the petitioning activity. *Pennington*, 381 U.S. at 670; *Clipper*, 690 F.2d at 1265. The Court should thus instruct the jury that it may not consider Mr. Musk's petitioning activity as a basis for liability at all.

If, however, as the Court's Order at Dkt. No. 454 suggests, the Court will only instruct the jury that it may not find liability based on petitioning activity "alone," the Court should still give this instruction with that modification at the outset of trial. Defendant maintains his objection to the modification for the reasons stated above.

## CLOSING INSTRUCTIONS

**Proposed Closing Instruction Re Device, Scheme, or Artifice to Defraud Offered by Defendant**

Plaintiffs are also asserting a claim that Mr. Musk employed a device, scheme, or artifice to defraud in connection with the purchase or sale of a security.

To prove that a defendant employed a device, scheme, or artifice to defraud, a plaintiff must prove by a preponderance of the evidence all the elements of securities fraud as set forth in Instruction No. 5, Securities – Rule 10-b5.

Any conduct alleged to be a part of the device, scheme, or artifice to defraud must be undertaken with the purpose of defrauding the market in connection with the purchase or sale of securities.

No statement may be part of a device, scheme, or artifice to defraud unless that statement is materially false or misleading. Statements that are not materially false or misleading can never give rise to liability even if the statements are made with an intent to influence the market.

Litigation conduct is protected by the First Amendment and may not be considered as part of a device, scheme, or artifice to defraud.

Breach of contract does not constitute a device, scheme, or artifice to defraud.

The fact that an action was taken with a financial motive in mind does not demonstrate an intent to defraud.

A plaintiff must prove by a preponderance of the evidence that he or she justifiably relied on the alleged device, scheme, or artifice to defraud in deciding to engage in the sale of the security in question. This showing must be made for each individual plaintiff. A plaintiff may not intentionally close his or her eyes and refuse to investigate the circumstances or disregard known or obvious risks.

A plaintiff also must prove by a preponderance of the evidence that the alleged device, scheme, or artifice to defraud was the proximate cause of the plaintiff's economic loss, after removing the market's reaction to any other information that may have affected the price of the security. You must also remove the market's reaction to any protected litigation activity. To the extent that losses, if any, were caused solely by litigation conduct, you may not find liability.

Source: 17 C.F.R. § 240.10b-5; *Rabkin v. Lion Biotechnologies, Inc.*, 2018 WL 905862, at *16 (N.D. Cal. Feb. 15, 2018) ("To allege a claim for scheme liability, a plaintiff must allege the elements of a securities fraud claim."); *Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 78 (2019) ("[D]issemination of *false or misleading statements* with intent to defraud can fall within the scope of subsections (a) and (c) of Rule 10b–5[.]" (emphasis added)); *Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 902 (N.D. Cal. 2022) (Breyer, J.) ("PayPal correctly argues that this alleged scheme consists entirely of (and fails for the same reasons as) the misstatements analyzed above."); *In re Palo Alto Networks, Inc. Sec. Litig.*, 2025 WL 2410348, at *2 (N.D. Cal. Aug. 19, 2025) (Breyer, J) ("Plaintiffs cannot remedy their failure to plead falsity or scienter by repackaging their claims as 'scheme liability' claims under SEC Rules 10b–5(a) and (c)."); Tr. of Feb. 17, 2026 Proceedings at 74:19–25 (the Court stating regarding *PayPal*, "I think I said that failure of proving that the statement is false thereby terminates any liability that you would have under 10b–5"); *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965); *Clipper Exxpress v. Rocky*

*Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1265 (9th Cir. 1982); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935, 929 (9th Cir. 2006); *Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007) (affirming dismissal of 10b–5(c) claim) ("At most, the claim alleges a breach of contract. Such a breach, however, does not constitute federal securities fraud under § 10(b)." (citing *Gurary v. Winehouse*, 190 F.3d 37, 44 (2d Cir. 1999) ("The failure to carry out a promise made in connection with a securities transaction is normally a breach of contract."))); *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 692 (9th Cir. 2011) ("This principle that contract breach is not a sufficient predicate for securities fraud has been followed both by our circuit in *Foster* and by courts of other circuits." (citing cases)); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005 (9th Cir. 2009) ("If simple allegations of pecuniary motive were enough to establish scienter, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." (quotation and citation omitted)); *In re Harmonic Inc.*, 2002 WL 31974384, at *14 n.13 (N.D. Cal. Nov. 13, 2002), *aff'd in part and rev'd in part on other grounds*, *Knollenberg v. Harmonic, Inc.*, 152 Fed. Appx. 674 (9th Cir. 2005) ("Needless to say, pleading a 'scheme to defraud' with the particularity required under the PSLRA necessitates more than allegations that a company made true statements about its business in an attempt to 'distract the market.'"); Ninth Circuit Model Civil Jury Instruction 18.6; *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014) (holding that a defendant "must be afforded an opportunity before class certification to defeat the presumption").

Defendant respectfully reiterates his objection to Plaintiffs' purported scheme claim for all the reasons stated in Defendant's Motion *in Limine*, the accompanying motions and briefing, and above. However, to the extent the Court intends to allow the Plaintiffs to present this claim at trial, Defendant proposes an additional closing jury instruction addressing this claim. Defendant's proposed instruction is an accurate statement of law and required to inform the jury of the law applying to this claim.

First, Defendant's proposed instruction quotes directly from the relevant rule, Rule 10b-5(a), to describe the Plaintiffs' claim under that rule. Defendant's proposed instruction then sets out the burden of proof for the claim and that the claim requires "the elements of a securities fraud claim." *Rabkin v. Lion Biotechnologies, Inc.*, 2018 WL 905862, at *16 (N.D. Cal. Feb. 15, 2018) ("To allege a claim for scheme liability, a plaintiff must allege the elements of a securities fraud claim.") (cited Dkt. No. 372, Plaintiffs' Opposition to Defendant's Motion *in Limine* No. 4, at 5). Defendant's proposed instruction also quotes Rule 10b-5(a) to explain that the alleged scheme must be an alleged scheme to defraud the market in connection with the purchase or sale of securities.

Next, Defendant's proposed instruction sets out the controlling law that statements must be

false or misleading to give rise to liability under the securities laws. *See Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 78 (2019) ("[D]issemination of *false or misleading statements* with intent to defraud can fall within the scope of subsections (a) and (c) of Rule 10b–5[.]" (emphasis added)); *Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 902 (N.D. Cal. 2022) (Breyer, J.) ("PayPal correctly argues that this alleged scheme consists entirely of (and fails for the same reasons as) the misstatements analyzed above."); *In re Palo Alto Networks, Inc. Sec. Litig.*, 2025 WL 2410348, at *2 (N.D. Cal. Aug. 19, 2025) (Breyer, J) ("Plaintiffs cannot remedy their failure to plead falsity or scienter by repackaging their claims as 'scheme liability' claims under SEC Rules 10b–5(a) and (c)."); Tr. of Feb. 17, 2026 Proceedings at 74:19–25 (the Court stating regarding *PayPal*, "I think I said that failure of proving that the statement is false thereby terminates any liability that you would have under 10b–5"). Plaintiffs have not identified **any** case holding that a defendant may be liable for securities fraud for issuing true and not misleading statements. That is because the law is clear that such statements may not be a basis for liability under Section 10(b) and Rule 10b–5. That remains the case even if the true statements are made with the intent to influence the market. *See In re Harmonic Inc.*, 2002 WL 31974384, at *14 n.13 (N.D. Cal. Nov. 13, 2002), *aff'd in part and rev'd in part on other grounds*, *Knollenberg v. Harmonic, Inc.*, 152 Fed. Appx. 674 (9th Cir. 2005) ("Needless to say, pleading a 'scheme to defraud' with the particularity required under the PSLRA necessitates more than allegations that a company made true statements about its business in an attempt to 'distract the market.'").

Additionally, Defendant's proposed instruction explains that protected litigation conduct may not be part of the scheme claim, for the reasons set forth in Defendant's Motion *in Limine* No. 4, Dkt. No. 342; Defendant's Reply in Support of Motion *in Limine* No. 4, Dkt. No. 399; Defendant's Pretrial Brief, Dkt. No. 406; Defendant's Response to the Court's Invitation for Supplemental Briefing, Dkt. No. 429; Defendant's Motion for Certification Under 28 U.S.C. § 1292(b), Dkt. No. 448, and Defendant's Response to the Court's Order for Further Response, Dkt. No. 453.

Defendant's proposed instruction then sets out Ninth Circuit law that breach of contract does not constitute securities fraud. *See Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007)

(affirming dismissal of 10b–5(c) claim) ("At most, the claim alleges a breach of contract. Such a breach, however, does not constitute federal securities fraud under § 10(b)." (citing *Gurary v. Winehouse,* 190 F.3d 37, 44 (2d Cir. 1999) ("The failure to carry out a promise made in connection with a securities transaction is normally a breach of contract."))); *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 692 (9th Cir. 2011) ("This principle that contract breach is not a sufficient predicate for securities fraud has been followed both by our circuit in *Foster* and by courts of other circuits." (citing cases)). This is particularly important in this case, where Plaintiffs essentially seek to convert an alleged breach of contract and ensuing litigation related to that contract into a scheme to defraud.

Next, Defendant's proposed instruction sets out Ninth Circuit law that the purpose of the conduct must be to defraud, rather than for financial motives. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005 (9th Cir. 2009) ("If simple allegations of pecuniary motive were enough to establish scienter, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." (quotation and citation omitted)). This is critical in this case, where Plaintiffs have made clear they intend to establish scienter by establishing that Mr. Musk, a businessman, wanted to make a profit from the company he was acquiring. *See* Dkt. No. 371 at 1.

Defendant's proposed instruction then recites the model instruction for reliance. That is critical because Plaintiffs may not rely on a fraud-on-the-market theory of class-wide reliance for their scheme claim at trial. That is because, as Defendant argued, *see* Dkt. No. 429 at 9–12, and neither Plaintiffs nor the Court addressed, Defendant did not have an opportunity to rebut such a theory before class certification, as required by the Supreme Court. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014) (holding that a defendant "must be afforded an opportunity before class certification to defeat the presumption").

Instead, at class certification, Plaintiffs sought to establish predominance by invoking the presumption of reliance in *Basic Inc. v. Levinson*, 485 U.S. 224, 244–47 (1988), *exclusively* on the ground that the alleged misstatements were misleading and impacted the price of Twitter's securities. Dkt. No. 102 at 1 ("Plaintiffs have successfully invoked the fraud-on-the-market

premise by demonstrating (1) Musk's false Tweets were public, (2) Plaintiffs traded in the stock after Musk made those misrepresentations and before the truth was revealed, and (3) that Twitter stock traded in an efficient market."). Notably, Plaintiffs never asserted that they were pursuing a "scheme theory" or that the members of the class relied on any statements or conduct outside of the three alleged misrepresentations. The word "scheme" appears nowhere in the briefing or the Court's order certifying the class.

Consistent with Plaintiffs' proffered theory of *Basic* reliance, the Court's certification order identified only a misrepresentation theory of reliance based on the three alleged misstatements at issue. Dkt. No. 106 at 1 ("Lead Plaintiffs Steve Garrett, Nancy Price, John Garrett, and Brian Belgrave bring this securities class action against Defendant Elon Musk, alleging that Musk violated Section 10(b) of the Securities Exchange Act of 1934, as well as Rule 10b–5, by making multiple misstatements to artificially depress the price of Twitter stock."); *id.* at 2 (identifying only the three alleged misstatements); *id.* at 6–7 ("[Plaintiff's] theory is simply that Musk's statements were misleading—even to sophisticated investors and even in light of the Merger Agreement—and that his statements affected Twitter's stock price as a result."). In fact, it went further: It held that proposed lead Plaintiff Steve Garrett's claim was "atypical" of the class because "he sold his shares in July 2022 because Musk said that he was terminating the deal, and he ruled out any other reason for doing so." *Id.* at 9. According to the Court, Mr. Garrett's "identification of something other than the integrity of the market (and, of course, *other than Musk's allegedly misleading statements*) that caused him to sell Twitter stock 'severs' any causal chain linking his decision to Musk's statements and *rebuts the presumption that he relied on Musk's statements*." *Id.* at 9–10 (emphasis added). As the Court's order and analysis made clear, the only theory of class-wide reliance it certified related to the three alleged misstatements. After all, that is the only theory of reliance Plaintiffs asserted.

The Court's Order at Dkt. No. 454 does not address this issue. Instead, it takes the position that the fraud-on-the-market presumption has been applied to scheme liability in other cases. Dkt. No. 454 at 4–5. But Defendant's argument is that presumption here applies only to the misstatement-based claims, because that is all Plaintiffs presented and the Court certified at the

- 8 -

class certification stage. Thus, under controlling Supreme Court law, Plaintiffs may not assert a theory of class-wide reliance at trial that Defendant has not had the opportunity to rebut. Instead, Plaintiffs may only argue individual reliance at trial for their purported "scheme" claim.

Finally, Defendant's proposed instruction sets out the rule on loss causation relevant to the scheme claim and makes clear, consistent with the Court's Order at Dkt. No. 454, that the jury may not find an essential element for liability based solely on protected litigation conduct.

[*Signature blocks on following page*]

DATED: February 27, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   /s/ Ellyde R. Thompson
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on Friday, February 27, 2026.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  *Ellyde R. Thompson*
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*

## ATTESTATION

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories herein.

By *Alex Bergjans*
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*