1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Alex Spiro (*pro hac vice*)
2  alexspiro@quinnemanuel.com
3  Ellyde R. Thompson (*pro hac vice*)
   ellydethompson@quinnemanuel.com
4  Jesse A. Bernstein (*pro hac vice*)
   jessebernstein@quinnemanuel.com
5  295 Fifth Ave., New York, NY 10010
   Telephone:    (212) 849-7000
6  Facsimile:    (212) 849-7100

7
   Michael T. Lifrak (Bar No. 210846)
8  michaellifrak@quinnemanuel.com
   Stephen A. Broome (Bar No. 314605)
9  stephenbroome@quinnemanuel.com
   Alex Bergjans (Bar No. 302830)
10 alexbergjans@quinnemanuel.com
   865 S. Figueroa Street, 10th Floor
11 Los Angeles, California 90017
   Telephone:    (213) 443-3000
12 Facsimile:    (213) 443-3100

13
   *Attorneys for Defendant Elon Musk*
14

15                         UNITED STATES DISTRICT COURT

16                        NORTHERN DISTRICT OF CALIFORNIA

17 | GIUSEPPE PAMPENA, on behalf of    | CASE NO. 3:22-CV-05937-CRB
   | himself and all others similarly situated, |
18 |                                    | **DEFENDANT'S OFFER OF PROOF**
   |         Plaintiff,                 | **REGARDING TESTIMONY OF ALEX**
19 |                                    | **SPIRO**
   |    vs.                             |
20 |                                    | Hon. Judge Charles R. Breyer
   | ELON R. MUSK,                      |
21 |                                    |
   |         Defendant.                 |
22

23

24

25

26

27

28

**BACKGROUND**

Notwithstanding the Court's ruling on Plaintiffs' Motion in Limine No. 2, there is no legal, ethical, or practical reason why Defendant Elon Musk cannot call any properly disclosed percipient witness with relevant, non-privileged knowledge to testify in his defense. Alex Spiro is one such witness that Defendant seeks to call. The procedural posture that gives rise to this issue is the product not of any genuine evidentiary dispute, but of Plaintiffs' shifting and internally inconsistent positions regarding Mr. Spiro's role in this case. Plaintiffs themselves long insisted that Mr. Spiro possessed critical testimony relevant to this case. In the spring of 2025, Plaintiffs sought to depose Mr. Musk's counsel on the premise that Mr. Spiro had firsthand knowledge of communications and events surrounding Mr. Musk's acquisition of Twitter. Mr. Spiro agreed to sit for deposition on all four topics Plaintiffs identified as areas of inquiry.[1] Plaintiffs then moved to disqualify Mr. Spiro as lead trial counsel, contending that he was an indispensable witness whose testimony would be necessary for the jury to hear. Although the Court ultimately allowed Mr. Spiro to remain lead counsel while also serving as a witness, Defendant nonetheless agreed that Mr. Spiro would not take a jury-facing advocacy role based on Plaintiffs' representation that they intended to call him in their case-in-chief.

Having achieved the practical result they sought—removing Mr. Spiro as lead counsel given his stellar track record in the courtroom—Plaintiffs reversed course. They elected not to call him as a witness and now contend that he lacks relevant testimony altogether. That position is irreconcilable with their prior representations and reflects precisely the kind of litigation gamesmanship courts routinely reject. The Court's ruling on Plaintiffs' Motion in Limine No. 2 limited certain categories of testimony but did not preclude Mr. Spiro from testifying altogether. To the contrary, multiple topics remain squarely within the permissible scope of testimony. Indeed, before trial began, Plaintiffs expressly acknowledged as much. After the Court issued its rulings on the motions in limine, the parties conferred regarding their scope and meaning, and Plaintiffs represented their understanding that Mr. Spiro could testify about matters within his personal knowledge—including discussions between the parties and the factual contents

---

[1] In argument on Trial Day 6, Plaintiffs represented that they were "basically precluded from deposing [Mr. Spiro] except for four matters." Tr. 1495:24-1496:8. That was false. Plaintiffs only sought to depose Mr. Musk on four matters, and Mr. Spiro agreed to be deposed on all of those matters. Dkt. 225-01 at ¶ 2.

of public filings.  The Court agreed with this understanding and acknowledged such testimony from Mr. Spiro would be allowed.  Tr. 1503:1-1504:14.  That is the testimony Mr. Musk now seeks to elicit. Permitting such testimony is consistent with the Court's rulings, Plaintiffs' own prior representations, and the fundamental principle that a party may present relevant, admissible evidence from witnesses with percipient knowledge of disputed facts.

## ARGUMENT

**I.    MR. SPIRO'S TESTIMONY WILL BE LIMITED TO PERMISSIBLE TOPICS**

Defendant's Offer of Proof consists of the below evidence that he seeks to introduce through testimony by Alex Spiro, Mr. Musk's lead litigation counsel in the *Twitter v. Musk* litigation in Delaware.

1. **Renegotiation Discussions with Twitter** – On Trial Day 6, Plaintiffs called Martin Korman, Twitter's lawyer in the acquisition, and elicited testimony on discussions he had with Mr. Musk's team about settling the Delaware litigation by renegotiating the price of the deal.  Tr. 1406:2-1407:7.  Mr. Spiro served as Mr. Musk's lead attorney on the Delaware litigation and will testify to discussions he had with Twitter's counsel about a resolution to that case.  Consistent with Mr. Korman's testimony, these discussions occurred in September 2022, and sometimes only involved Mr. Spiro from Mr. Musk's side.  Therefore, Mr. Spiro has unique, non-privileged, relevant, and admissible testimony as to what was said in these discussions.

2. **May 6th Meeting** – Throughout trial, Plaintiffs have elicited testimony from witnesses and entered exhibits for the purpose of demonstrating what occurred at a meeting held on May 6, 2022 between Twitter and Mr. Musk's team.  Mr. Spiro was an attendee at this meeting in his capacity as an executive of X Holdings, Inc. Just like the other executives in attendance at the meeting, including Plaintiffs' witnesses Ned Segal and Parag Agrawal, Mr. Spiro should be permitted to share his recollection as to what topics were discussed and how those discussions unfolded.

3. **July 8th Termination Letter** – Plaintiffs have alleged that Mr. Musk engaged in a fraudulent scheme by sending a letter to Twitter on July 8, 2022 terminating the deal. Mr. Spiro was cc'd as litigation counsel on the letter and thus has personal knowledge of its contents. Defendant understands the limitations posed by the Court's ruling on Plaintiffs' Motion in Limine No. 2 and will not ask any questions to elicit information that implicates attorney-client privilege or the advice of counsel defense. Questions will be limited to the face of the document, much like Plaintiffs' questioning of Ms. Gadde (Twitter's in-counsel) on letters she received from Mr. Musk's team and Mr. Korman (Twitter's outside counsel) on letters he sent to Mr. Musk's team.

4. **Litigation** – On Trial Day 1, Plaintiffs elicited testimony from their class representative, Brian Belgrave, that Mr. Musk "didn't even put up a defense" in the Delaware litigation. Tr. 329:4-19. The Court suggested that the Parties resolve the issue raised by this unfounded assertion by entering into a stipulation that Plaintiffs would not argue in closing that "Mr. Musk settled or agreed to complete the purchase of Twitter because he thought he did not have a meritorious legal defense." Tr. 1325:15-19. Defendants reached out to Plaintiff to propose stipulating to the Court's suggested language. Plaintiffs flatly refused. As a result, Mr. Musk is entitled to rebut that false allegation by offering evidence that Mr. Musk did put up a legal defense. As lead litigation counsel, Mr. Spiro is best positioned to outline the public facts of the hard-fought nature of the litigation. Mr. Spiro will testify to the contents of public filings laying out each side's positions and the discovery that was undertaken. Specifically, Mr. Spiro has personal knowledge that Twitter did not move to dismiss Mr. Musk's countersuit and ultimately provided data for the 9,000 accounts Twitter used to calculate its bots and spam estimation for Q4 2021. He can also testify as to the general volume of discovery, including the quantity of depositions taken and documents produced by Twitter. Finally, Mr. Spiro can testify about data produced by Twitter in the

litigation and the report served on Twitter, containing the results of an independent analysis into the true prevalence of bots and spam on the platform. These facts were disclosed to Plaintiffs in the course of discovery in this case.

In sum, the above testimony does not implicate any privilege concerns and covers topics Plaintiffs have had the opportunity to discover. Defendant has never asserted privilege over any of these areas of inquiry. Mr. Spiro did not refuse to answer any questions on these topics in his deposition and Defendant has produced hundreds of documents that reflect the understanding that Mr. Spiro's communications with third parties are not privileged. Defendant does not intend to elicit any testimony from Mr. Spiro on Mr. Musk's Tweets, internal discussions with Mr. Musk's team, or anything implicating advice he gave to Mr. Musk. On the contrary, Defendant seeks to narrowly rebut evidence elicited from Plaintiffs on each of these topics. Indeed, Defendant does not intend to introduce any documents into evidence through Mr. Spiro. Defendant's examination of Mr. Spiro is only expected to last approximately 20 minutes due to its circumscribed nature.

## II.     MR. SPIRO'S TESTIMONY IS PROPER AND NECESSARY

Defendant Elon Musk should be permitted to elicit testimony from Alex Spiro because doing so is both procedurally fair and in parity with the record Plaintiffs have developed. Plaintiffs have already had the opportunity to examine Mr. Spiro on the precise subjects at issue, have themselves introduced testimony on those subjects through other witnesses, and now advance theories of liability that make Mr. Spiro's firsthand knowledge directly relevant. Moreover, any conceivable ethical concern regarding counsel testifying has been eliminated.

*First*, Plaintiffs cannot plausibly claim prejudice from Mr. Spiro's testimony when they already received precisely the discovery they demanded. During discovery, Plaintiffs insisted that Mr. Spiro possessed information they deemed "critical" and sought to depose him on four discrete subject areas. Mr. Spiro agreed to sit for deposition on each of those topics, and Plaintiffs examined him for 90 minutes before waiving the balance of their time. Dkt. 300 at 7. Having exercised their full opportunity to probe his knowledge during discovery, Plaintiffs cannot now claim surprise or unfairness if he testifies at trial. *Price v. Seydel*, 961 F.2d 1470, 1474 (finding abuse of discretion where party was precluded from calling witness disclosed on pretrial witness list that did not present a "surprise" to the opposing party).

  *Second*, Plaintiffs themselves opened the door to testimony on these subjects. At trial, Plaintiffs elicited testimony concerning the very same topics from multiple witnesses, including their class representative, Brian Belgrave, and Twitter's lawyers, Vijaya Gadde and Martin Korman. Having affirmatively introduced testimony addressing the relevant discussions, events, and filings, Plaintiffs cannot now prevent Defendant from presenting the testimony of another percipient witness with firsthand knowledge of those same matters. The evidentiary principle is straightforward: once a party introduces testimony on a subject, fairness requires that the opposing party be permitted to respond with its own evidence. *Bowoto v. Chevron Corp.*, 621 F.3d 1116, 1130 (9th Cir. 2010) ("It is widely recognized that a party who raises a subject in an opening statement 'opens the door' to admission of evidence on that same subject by the opposing party."); *United States v. Bailleaux*, 685 F.2d 1105, 1110 (9th Cir. 1982) (party who opens up a subject cannot object to evidence offered in rebuttal).

  *Third*, the relevance of Mr. Spiro's testimony has only increased as the theory of the case has evolved. When the parties litigated Plaintiffs' motion to quash and their motion to disqualify Mr. Spiro, Plaintiffs had not yet advanced the "scheme" theory that now features prominently in their case. In particular, Plaintiffs did not contend at that time that Mr. Musk could face liability for making truthful public statements or for engaging in protected litigation conduct. The Court has since permitted Plaintiffs to pursue arguments that effectively place Mr. Musk's litigation positions themselves at issue. Dkt. 342 (Defendant's Motion in Limine No. 4) at 2 (seeking to exclude Plaintiffs' "scheme liability" claims premised on litigation-related conduct, which fall within the protection of *Noerr-Pennington* doctrine); Dkt. 454 (Order denying Defendant's Motion in Limine No. 4) at 3 (reasoning that "*Noerr-Pennington* is no obstacle where, as here, petitioning activity is just a part of the overall scheme."). Under those circumstances, Mr. Musk must be permitted to present evidence demonstrating that those litigation claims were meritorious. Mr. Spiro, as lead litigation counsel directly involved in the relevant discussions with the other side and public filings, possesses firsthand knowledge that bears directly on that issue. Excluding such testimony would deprive the jury of critical context necessary to evaluate Plaintiffs' theory.

  *Finally*, any ethical concern arising from trial counsel serving as a witness has been entirely eliminated. Under California law, a lawyer may serve as an advocate in a trial in which he is likely to be a witness if "the lawyer has obtained informed written consent from the client." *Geringer v. Blue Rider*

*Fin.*, 94 Cal. App. 5th 573, 821 (2023) (quoting Cal. R. Prof. Conduct 3.7(c)).  That is exactly what occurred here.  Dkt. 225-01 ¶ 4.  In ordinary civil cases like this one, generalized concerns about counsel testifying in a case for their own client are insufficient to support the extreme remedy of disqualification or preventing counsel from being called at trial.  *Zhu v. Li*, 2023 WL 1111507 at *3-4 (N.D. Cal. Jan. 30, 2023) (denying motion to disqualify and allowing counsel to testify about "the events underlying this litigation, including the negotiation of the buyout and the preparation of the purchase and sale agreement"); *Upstream Holdings LLC v. Brekunitch*, 2023 WL 6890738, at *2 (C.D. Cal. Sept. 11, 2023) (denying motion to disqualify counsel "likely to be a central witness" in a patent trial).  Now that Mr. Spiro is no longer serving as trial counsel, the appropriate question is not whether his testimony is unique, but whether it is relevant.  There is no rule of evidence precluding Defendant from calling a percipient witness in his case simply because another individual could have given testimony on the same topic.

In short, Plaintiffs deposed Mr. Spiro on these topics, introduced testimony on them through their own witnesses, and now pursue liability theories that make his firsthand knowledge directly relevant.  Having insisted for months that Mr. Spiro's testimony was indispensable, Plaintiffs cannot now bar the jury from hearing it.  The Court should permit Mr. Spiro to testify accordingly.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court allow Mr. Spiro to testify about the foregoing topics.

DATED:  March 10, 2026                                QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Alex Bergjans*
Alex Bergjans
Alex Spiro
Stephen A. Broome
Ellyde R. Thompson
Michael T.  Lifrak
Jesse A.  Bernstein

*Attorneys for Defendant Elon Musk*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on this the 10th day of March, 2026.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Alex Bergjans
Alex Bergjans
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein

*Attorneys for Defendant Elon Musk*

**ATTESTATION**

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatory herein.


By */s/ Alex Bergjans*
Alex Bergjans
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein

*Attorneys for Defendant Elon Musk*