QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Ellyde R. Thompson (*pro hac vice*)
ellydethompson@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
jessebernstein@quinnemanuel.com
295 Fifth Ave., New York, NY 10010
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

*Attorneys for Defendant Elon Musk*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> ELON R. MUSK, <br><br> Defendant. | CASE NO. 3:22-CV-05937-CRB <br><br> **DEFENDANT ELON MUSK'S MOTION FOR JUDGMENT AS A MATTER OF LAW** <br><br> Judge: Hon. Charles R. Breyer |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 13, 2022, or as soon thereafter as this matter may be heard, in Courtroom 6 – 17th Floor of the United States Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Charles R. Breyer presiding, Defendant, through his counsel, will move, and hereby does move pursuant to Federal Rule of Civil Procedure 50(a) for judgment as a matter of law on the following grounds: (1) the evidence is insufficient as a matter of law to prove that the May 13, May 16, and May 17 statements were materially false or misleading or that Defendant employed a device, artifice, or scheme to defraud; (2) the evidence is insufficient as a matter of law to prove scienter; (3) the evidence is insufficient as a matter of law to prove reliance; (4) the evidence is insufficient as a matter of law to prove loss causation; (5) the evidence is insufficient as a matter of law to prove damages with reasonable certainty; (6) any claim for liability based on protected litigation conduct fail as a matter of law; and (7) Plaintiffs' scheme liability claim fails as a matter of law.

This motion is based upon this notice of motion and motion; the attached memorandum of points and authorities; all pleadings and papers on file in this action; such other evidence or arguments as may be presented to the Court; and such other matters of which this Court may take judicial notice.

## ISSUES TO BE DECIDED

1. Should the Court enter judgment as a matter of law in favor of Mr. Musk on Plaintiffs' 10b-5 claim because no reasonable jury could find that the May 13, 16, and 17 statements were materially false or misleading or that Mr. Musk employed a device, scheme, or artifice to defraud?

2. Should the Court enter judgment as a matter of law in favor of Mr. Musk on Plaintiffs' 10b-5 claim because no reasonable jury could find that Mr. Musk acted with scienter?

3. Should the Court enter judgment as a matter of law in favor of Mr. Musk on Plaintiffs' 10b-5 claim because no reasonable jury could find that Plaintiffs established reliance?

4.  Should the Court enter judgment as a matter of law in favor of Mr. Musk on Plaintiffs' 10b-5 claim because no reasonable jury could find Plaintiffs satisfied their burden to prove loss causation?

5.  Should the Court enter judgment as a matter of law in favor of Mr. Musk because Plaintiffs failed to prove damages with reasonable certainty?

6.  Should the Court enter judgment as a matter of law in favor of Mr. Musk to the extent Plaintiffs rest their claim on protected litigation conduct?

7.  Should the Court enter judgment as a matter of law in favor of Mr. Musk on Plaintiffs' scheme liability claim because that liability in this case cannot be based on a scheme to defraud?

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................................................1

LEGAL STANDARD .............................................................................................................2

ARGUMENT ..........................................................................................................................2

I.     NO REASONABLE JURY COULD FIND PLAINTIFFS PROVED THEIR
       CLAIM ........................................................................................................................2

       A.     No Reasonable Jury Could Find The May 13, 16, And 17 Statements
              Materially False Or Misleading Or That Mr. Musk Employed A Scheme To
              Defraud ..............................................................................................................3

       B.     Plaintiffs Offered No Legally Sufficient Evidence Of Scienter ........................5

       C.     The Record Is Insufficient To Establish Reliance .............................................6

       D.     No Reasonable Jury Could Find Plaintiffs Proved Loss Causation ...................9

       E.     This Court Should Grant Judgment As A Matter Of Law On Damages .............11

II.    PLAINTIFFS' CLAIMS BASED ON PROTECTED LITIGATION CONDUCT
       FAIL AS A MATTER OF LAW .................................................................................12

III.   PLAINTIFFS' SCHEME LIABILITY CLAIM FAILS AS A MATTER OF LAW ...........14

CONCLUSION .......................................................................................................................15

1

## TABLE OF AUTHORITIES

2

### Cases

3

4

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ................................................................. 15

5

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
  568 U.S. 455 (2013) ............................................................................ 7

6

7

*Baker v. SeaWorld Ent., Inc.*,
  423 F. Supp. 3d 878 (S.D. Cal. 2019) ............................................... 12

8

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ............................................................................ 8

9

10

*In re BofI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020) ............................................................. 10

11

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ............................................................... 3

12

13

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605, 615-16 (9th 2017) ......................................................... 4

14

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
  690 F.2d 1240 (9th Cir. 1982) ........................................................... 14

15

16

*Connecticut Ret. Plans & Tr. Funds v. Amgen Inc.*,
  660 F.3d 1170 (9th Cir. 2011) ............................................................. 9

17

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) ............................................................. 3

18

19

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) .................................................................... 10, 11

20

21

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) ............................................................................ 3

22

*Gamble v. Kaiser Foundation Health Plan, Inc.*,
  348 F. Supp. 3d 1003 (N.D. Cal. 2018) ....................................... 11, 13

23

24

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ....................................................... 10, 11

25

26

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ................................................................... 7, 8, 9

27

28

*In re Imperial Credit Indus., Inc. Sec. Litig.*,
    252 F. Supp. 2d 1005 (C.D. Cal. 2003) ................................................................. 12

*In Re JDS Uniphase Corp. Securities Litig.*,
    4:02-cv-1486-CW (N.D. Cal. Nov. 19, 2007), Dkt. No. 1874 ................................ 5

*Kang v. PayPal Holdings, Inc.*,
    620 F. Supp. 3d 884 (N.D. Cal. 2022) (Breyer, J.) ............................................... 15

*Lakeside-Scott v. Multnomah Cty.*,
    556 F.3d 797 (9th Cir. 2009) ................................................................................... 2

*Lloyd v. CVB Fin. Corp.*,
    811 F.3d 1200 (9th Cir. 2016) ................................................................................. 3

*Lorenzo v. SEC*,
    587 U.S. 71 (2019) ......................................................................................... 14, 15

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011) ................................................................................................. 6

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................. 3

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
    164 F. Supp. 3d 568 (S.D.N.Y. 2016) (cited Pls.' Opp. to Def's Mot. *in Limine*
    No. 4, Dkt. No. 372, ) ......................................................................................... 16

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
    730 F.3d 1111 (9th Cir. 2013) ......................................................................... 10, 12

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015) ........................................................................................... 4, 6

*In re Oracle Corp. Sec. Litig.*,
    627 F.3d 376 (9th Cir. 2010) ................................................................................. 9

*In re Oracle Sec. Litig.*,
    829 F. Supp. 1176 (N.D. Cal. 1993) .................................................................... 13

*In re Palo Alto Networks, Inc. Sec. Litig.*,
    2025 WL 2410348 (N.D. Cal. Aug. 19, 2025) (Breyer, J) .................................. 15

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) ................................................................................. 3

*Rabkin v. Lion Biotechnologies, Inc.*,
    2018 WL 905862 (N.D. Cal. Feb. 15, 2018) .......................................................... 3

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014) .................................................................................... 6

*In re REMEC Inc. Sec. Litig.*,
    702 F. Supp. 2d 1202 (S.D. Cal. 2010) ................................................................... 9

*SEC v. Rio Tinto plc*,
    41 F.4th 47, 54 (2d Cir. 2022) ............................................................................... 15

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ........................................................................... 11, 13

*In re Stac Electronics Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ................................................................................ 16

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
    552 U.S. 148 (2008) ................................................................................................ 7

*Theme Promotions, Inc. v. News Am. Marketing FSI*,
    546 F.3d 991 (9th Cir. 2008) ................................................................................ 13

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438, 449 (1976) ....................................................................................... 3

*United Mine Workers v. Pennington*,
    381 U.S. 657 (1965) .............................................................................................. 13

*In re Vivendi Universal, S.A. Securities Litig.*,
    1:02-c v-5571-PAE (S.D.N.Y. Mar. 26, 2010), Dkt. 1023-6 ................................. 5

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016) ................................................................................. 10

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .................................................................................. 6

## INTRODUCTION

Defendant Elon Musk respectfully files this memorandum in support of his motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a)(1).  No reasonable juror could find in favor of Plaintiffs on their Rule 10b-5 claim.

*First*, Plaintiffs have not introduced sufficient evidence from which a jury could find a materially false or misleading misrepresentation or a scheme to defraud.  As to the May 13 tweet, Plaintiffs have focused on the words "on hold," taken out of context—but they have not introduced any evidence that anyone in the market understood the tweet to have the meaning Plaintiffs suggest, or that any discrepancy between that and the true state of affairs was material.  To the contrary, Plaintiffs' evidence demonstrates that the tweet as written was true.  As to the May 16 statement— which is on its face a statement of opinion—Plaintiffs have introduced no evidence that Mr. Musk did not genuinely hold that opinion or even that his opinion lacked a basis.  Plaintiffs argue that the May 17 tweet was misleading "for the same reasons" as the other two statements—and thus it fails for the same reasons.  As to Plaintiffs' scheme liability claim, there is no evidence based on which a reasonable jury could conclude that Mr. Musk engaged in a device, scheme, or artifice to defraud.

Nor have Plaintiffs introduced sufficient evidence for any reasonable jury to find that Mr. Musk acted with scienter.  The evidence at trial has unequivocally demonstrated Mr. Musk's basis for his statements and that he believed them to be true.  The only evidence of scienter is that Mr. Musk, a businessman, wanted to make money from Twitter, a business, but that is insufficient to demonstrate scienter as a matter of law.

And no reasonable jury could conclude that Plaintiffs established the fraud-on-the-market presumption of class-wide reliance.  Mr. Musk's contractual rights under the Merger Agreement were publicly known since April 25, 2022, the fact that the deal was proceeding and not halted was known hours after the alleged misrepresentation in the May 13 tweet, and Mr. Musk's potential interest in a potential price renegotiation was publicly revealed on May 16 and 21.  In any event, Mr. Musk rebutted the presumption of reliance by showing that all of the bases for Plaintiffs' claims except for the May 13 tweet and July 8 termination notice (which is protected litigation conduct) had no statistically significant price reaction and that the market had sufficient information to

1  evaluate the statements at the time made.

2      Indeed, Plaintiffs have not adduced sufficient evidence of loss causation or damages as a

3  matter of law.  Plaintiffs' expert Dr. Tabak admitted that he had no opinion and had not considered

4  how Twitter's stock price would have moved had Mr. Musk tweeted what Plaintiffs allege to be the

5  truth on May 13.  He also admitted that any termination (protected litigation conduct) whether

6  fraudulent or not, would have had the same impact on Twitter's stock price and that the May 16 and

7  17 statements had no economic impact on the Twitter stock price.   Finally, Dr. Tabak failed to

8  separate the stock price movement caused by the alleged fraud from market or industry effects.

9      ***Second***, under settled law, protected litigation conduct may not be a basis for liability, such

10  that the Court must grant judgment in favor of Mr. Musk to the extent based on the July 8 termination

11  letter or any protected litigation conduct.

12      ***Finally***, Plaintiffs' scheme claim is legally deficient.  The maker of statements may not be

13  held liable under Rule 10b-5(a) or (c) purely based on making statements, absent something more.

14  Other circuits have explicitly reached this conclusion, and the Ninth Circuit has not held to the

15  contrary.  Nor can scheme liability be based on true and not misleading statements or statements

16  and conduct not pleaded with the particularity required by Federal Rule of Civil Procedure 9(b).

17      The Court should grant judgment as a matter of law in favor of Mr. Musk.

18  **<u>LEGAL STANDARD</u>**

19      Under Rule 50(a), when "a party has been fully heard on an issue during a jury trial and the

20  court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the

21  party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for

22  judgment as a matter of law against the party on a claim or defense that, under the controlling law,

23  can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1).

24  Judgment as a matter of law is required when a party fails to present a legally sufficient basis for a

25  jury to find in its favor.  *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 802 (9th Cir. 2009).

26  **<u>ARGUMENT</u>**

27  **I.    NO REASONABLE JURY COULD FIND PLAINTIFFS PROVED THEIR CLAIM**

28      The Court should enter judgment as a matter of law in favor of Mr. Musk on Plaintiffs' 10b-5

1   claim because Plaintiffs have not presented legally sufficient evidence to establish any of the

2   elements of a Rule 10b-5 claim.  "The elements of a private securities fraud action under Section

3   10(b) and Rule 10b-5 are: '(1) a material misrepresentation or omission by the defendant; (2)

4   scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a

5   security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss

6   causation.'"  *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206 (9th Cir. 2016) (quoting *Erica P. John

7   Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011)).  "To allege a claim for scheme liability, a

8   plaintiff must allege the elements of a securities fraud claim."  *Rabkin v. Lion Biotechnologies, Inc.*,

9   2018 WL 905862, at *16 (N.D. Cal. Feb. 15, 2018).

10      **A.      No Reasonable Jury Could Find The May 13, 16, And 17 Statements Materially
                  False Or Misleading Or That Mr. Musk Employed A Scheme To Defraud**

11          Rule 10b-5 prohibits "the making of untrue or misleading statements."  *Brody v. Transitional

12  Hosps. Corp.*, 280 F.3d 997, 1005 (9th Cir. 2002).  "[A] statement is misleading if it would give a

13  reasonable investor the impression of a state of affairs that differs in a material way from the one

14  that actually exists."  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1109 (9th Cir. 2010)  (internal

15  quotation omitted).  Thus, to prove that any of the three alleged misstatements is materially false or

16  misleading, Plaintiffs have the burden to prove that the difference between the actual state of affairs

17  and the alleged misrepresentation would have been significant to a reasonable investor.  *TSC Indus.,

18  Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F.

19  Supp. 2d 1248, 1259 (N.D. Cal. 2000); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th

20  Cir. 2017).  Plaintiffs have failed to do so.

21          On May 13, Mr. Musk tweeted:  "Twitter deal temporarily on hold pending details

22  supporting calculation that spam/fake accounts do indeed represent less than 5% of users."   Ex.

23  580.  Musk then added: "Still committed to acquisition." Ex. 580.  All the evidence at trial supports

24  that Mr. Musk's statement was true in all material respects.  No witness at trial has suggested that

25  Mr. Musk had already received the details about Twitter's spam calculation.  Instead, the evidence

26  at trial showed that Twitter was not able to provide details about the calculation at the May 6

27  meeting, and that Twitter followed up on May 12 by providing the exact same thing.  *Compare* Ex.

28  82 (May 6 talking points), *with* Ex. 572A (May 12 document).  Nor has any witness at trial suggested

1    that Mr. Musk was not entitled to any details.  Indeed, Twitter's own CEO, when asked if he

2    responded to the May 13 tweet by saying Mr. Musk was not entitled to those details, responded, "I

3    didn't believe that, because I thought we would productively share additional information to help

4    him understand and contextualize why our estimates were good and that the methodology

5    documents"—that Twitter had not yet provided—"would be sufficient detail."  Trial Tr. 1301:1-7

6    (Agrawal).  To the extent Plaintiffs' sole falsity argument is that work toward closing the deal was

7    not "on hold," the tweet does not say that, Mr. Musk repeatedly testified that it did not mean that,

8    no witness has testified that the market interpreted it to mean that, and there is no evidence that

9    whether the work on the deal was "temporarily on hold" or not was material to a reasonable investor.

10        On May 16, speaking at a podcast conference, Mr. Musk was asked: "What do you think it

11   is [*i.e.*, the number of bots]," "anecdotally?"  Ex. 126.  Musk responded:  "I think it's some number

12   that is probably at least four or five times [Twitter's estimate], . . . [my] estimate would be probably

13   20 percent."  *Id.*  He further explained that his answer was based on "a bunch of quite smart outside

14   firms [that] have done analysis of Twitter and looked at the . . . daily users," and from his own

15   experience on the platform.  *Id.*  Mr. Musk's statement is, on its face, a statement of opinion.  There

16   has been no evidence that Mr. Musk did not sincerely hold that belief.  And Mr. Musk disclosed the

17   basis for his opinion.  He has testified about it extensively.  That basis is in evidence.  Ex. 598.

18   There is no evidence suggesting that was not the basis for Mr. Musk's statement, nor that he

19   misrepresented it in his statements.  Mr. Musk's statement of opinion, absent any evidence that he

20   did not sincerely hold that opinion or that he misrepresented some embedded fact, cannot be a basis

21   for securities fraud liability as a matter of law.  *See Omnicare, Inc. v. Laborers Dist. Council Const.*

22   *Indus. Pension Fund*, 575 U.S. 175, 182–86 (2015); *City of Dearborn Heights Act 345 Police &*

23   *Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615–16 (9th 2017).  And, because the statement

24   produced no economic impact, as Plaintiffs' expert testified, no reasonable jury could conclude that

25   the statement was material in any respect.

26        Finally, on May 17, Mr. Musk reiterated the same two sentiments:  "20% fake/spam

27   accounts, while 4 times what Twitter claims, could be *much* higher.  My offer was based on

28   Twitter's SEC filings being accurate.  Yesterday, Twitter's CEO publicly refused to show proof of

-4-

DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

1   <5%.  This deal cannot move forward until he does."  Ex. 130.  Plaintiffs have argued that this

2   statement is "misleading for all the same reasons" as the first two statements.  Tr. 220:13-15

3   (Opening).  But, as set forth above, no reasonable jury could conclude that the May 13 or May 16

4   statements were materially false or misleading.  The May 17 statement fails for the same reasons.

5        As to Plaintiffs' claim that Mr. Musk employed "a device, scheme, or artifice to defraud,"

6   as required by Rule 10b-5(a), no reasonable jury could conclude such a scheme existed.  Plaintiffs'

7   theory of scheme liability seemingly relies on the allegation that Mr. Musk engaged in a

8   months-long, deliberate effort to drive down the price of Twitter's stock in order to renegotiate.  But

9   the testimony demonstrates that Mr. Musk and Twitter did not engage in any renegotiation efforts

10  prior to termination.  Tr. 1445:21–1446:12 (Korman).  The evidence of any attempt to settle the

11  Delaware litigation demonstrates that Mr. Musk turned down a renegotiated price.  Tr. 1666:24–

12  1667:6 (Spiro).  The Court should grant judgment for Mr. Musk on Plaintiffs' scheme liability claim.

13       **B.**    **Plaintiffs Offered No Legally Sufficient Evidence Of Scienter**

14       Nor could any reasonable jury find that Plaintiffs proved that Mr. Musk acted with scienter.

15       *First*, all the evidence adduced at trial indicates that Mr. Musk firmly believed the three

16  alleged misrepresentations were true at the time they were made.  Tr. 769:5–770:16 (Musk); 781:12–

17  20 (Musk); 792:3–7 (Musk); 797:2–798:1 (Musk).  Such evidence is fundamentally inconsistent

18  with a finding of scienter as a matter of law.  *See* Final Jury Instructions at 13, *In Re JDS Uniphase*

19  *Corp. Securities Litig.*, 4:02-cv-1486-CW (N.D. Cal. Nov. 19, 2007), Dkt. No. 1874 ("An honest or

20  good faith belief on the part of an Individual Defendant that a statement is true is inconsistent with

21  a finding that he acted with scienter in making that statement."); Charge to the Jury at 29, Instruction

22  No. 24, *In re Vivendi Universal, S.A. Securities Litig.*, 1:02-c v-5571-PAE (S.D.N.Y. Mar. 26,

23  2010), Dkt. 1023-6 ("Even if a statement turns out to be false or misleading, it is not fraudulent or

24  deceptive if the defendant had a good faith belief in the truth or accuracy of the statement at the time

25  he made the statement."); *see also Omnicare, Inc.*, 575 U.S. at 186 (holding allegations that sincerely

26  held belief turned out to be wrong do not establish securities fraud).

27       *Second*, Plaintiffs have not adduced sufficient evidence to establish that Mr. Musk knew that

28  his statements were false at the time they were made.  The Supreme Court has not approved the use

1    of recklessness to satisfy the scienter requirement.  *See Matrixx Initiatives, Inc. v. Siracusano*, 563

2    U.S. 27, 48 (2011) (reserving question whether recklessness suffices).  The appropriate standard is

3    thus actual knowledge, and there is no evidence that Mr. Musk knew any of his statements was false.

4         *Finally*, even applying a lower "deliberate recklessness" standard, no reasonable jury could

5    find Plaintiffs proved Mr. Musk acted with scienter.  Twitter's own executives testified that they

6    believed Mr. Musk was entitled to more details, had promised to provide them, and had not yet

7    provided them at the time of the May 13 and May 17 tweets.  Tr. 1160:5–13 (Segal); Tr. 1301:1–7

8    (Agrawal).  There is no evidence to the contrary.  Mr. Musk cannot have acted with scienter in

9    simply expressing the position shared by those on both sides of the transaction.

10        Nor, as set forth above, is there any evidence of intent to drive down the price of stock—the

11   intent Plaintiffs have identified in connection with the scheme liability claim—beyond counsel's

12   say-so.  While Plaintiffs plan to point to a supposed financial motive to mislead, that is not sufficient

13   to establish scienter for misrepresentations or scheme.  *See* Dkt. No. 48 at 29 (explaining that "'a

14   motive to commit fraud and opportunity to do so' is not enough" (quoting *Reese v. Malone*, 747

15   F.3d 557, 569 (9th Cir. 2014) (alteration adopted)); *Zucco Partners, LLC v. Digimarc Corp.*, 552

16   F.3d 981, 1005 (9th Cir. 2009) ("If simple allegations of pecuniary motive were enough to establish

17   scienter, virtually every company in the United States that experiences a downturn in stock price

18   could be forced to defend securities fraud actions." (quotation and citation omitted)).

19        And Plaintiffs cannot rely on Mr. Musk's supposed "capitulation" in the Delaware litigation

20   as evidence of scienter because—as the Court ruled in precluding Defendant from offering evidence

21   concerning that litigation—Mr. Musk believed in the merits of his case, had evidence to support his

22   case, and elected not to go to trial because of judicial bias.  Tr. 1653:16–21; 1658:1–18.

23        Plaintiffs thus have not offered evidence sufficient to establish scienter.

24   **C.    The Record Is Insufficient To Establish Reliance**

25        Judgment also should be granted to Musk because no reasonable jury could find that

26   Plaintiffs established the element of reliance.  To begin, Plaintiffs have certainly not shown

27   individual reliance.  *See Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 461 (2013)

28   ("The traditional (and most direct) way for a plaintiff to demonstrate reliance is by showing that he

was aware of a company's statement and engaged in a relevant transaction based on that specific misrepresentation." (alterations adopted and quotations omitted)).  Mr. Belgrave testified that he did not see the May 13 tweet until after he purchased Twitter stock; it is undisputed that he did not sell in reliance on that tweet when he saw it "five minutes" later.  Tr. 273:3–17 (Belgrave).  Ms. Price testified that she was not aware of the May 13 tweet in 2022.  Tr. 1365:22–1366:2 (Price).  And the Merger Agreement was public, so no reliance would have been justifiable.  Tr. 416:22–24 (Gadde).

Nor could a reasonable jury find Plaintiffs established the fraud-on-the-market presumption: "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014) ("*Halliburton II*").

*First*, as to much of the conduct that Plaintiffs assert gives rise to liability—including Mr. Musk's requests for information and the letters exchanged between his counsel and Twitter—no evidence shows the letters were public and thus no evidence exists that the market could have relied on them.  *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008) ("[The defendants'] deceptive acts were not communicated to the public . . . . [The plaintiff], as a result, cannot show reliance upon any of [the defendants]' actions except in an indirect chain that we find too remote for liability.").

*Second*, for the reasons discussed, *supra* at 4–5, Plaintiffs have not established that the alleged misstatements and fraudulent conduct were materially false—that the difference between the representations in the statements and the true state of affairs "significantly altered the total mix of information they took into account in deciding whether to buy or sell the [Twitter] security."  *TSC Indus., Inc.*, 426 U.S. at 449.  The May 13 tweet was true in all material respects.  The May 16 and 17 statements had no economic impact, as Plaintiffs' expert testified.  And as to the July 8 termination, Plaintiffs cannot assert that it contained false statements since the 10b-5 claim was previously dismissed by the Court.  The record is undisputed that Mr. Musk did in fact intend to terminate and ultimately closed because Twitter sued him for specific performance and he did not think that he would get a fair trial.  Tr. 406:4–23 (Gadde); 836:12–20 (Musk).

1      *Third*, at the very least, Plaintiffs cannot rely on the presumption of class-wide reliance for

2  the entire Class Period.  Fraud-on-the-market reliance is presumed only for the period of time

3  between when the "misrepresentations were made and when the truth was revealed." *Halliburton*

4  *II*, 573 U.S. at 267-68.  Any reliance based on the alleged misperception that the deal was literally

5  at a standstill was corrected by Mr. Musk's second tweet, issued before the market opened.  Ex. 580.

6  Plaintiff Belgrave admitted that he understood on May 13 that the deal had not halted.  Tr. 283:4–8

7  (Belgrave); 285:23–25 (Belgrave).  Moreover, both Twitter and Mr. Musk made public statements

8  and filings during the Class Period indicating that the deal was proceeding prior to termination.  Ex.

9  580; Ex. 758; Ex. 584; Ex. 346; Ex. 146.  Nor is there any dispute that the market knew of Mr.

10  Musk's rights under the Merger Agreement.  Tr. 273:14–22 (Belgrave); 286:20–23 (Belgrave); Ex.

11  36; Ex. 47; Ex. 62.  As to the purported scheme claim, Mr. Musk revealed to the market on May 16

12  that price renegotiation was possible and tweeted on May 21 that the price of the merger should

13  "absolutely" be renegotiated if Twitter's spam estimate was materially inaccurate.  Tr. 878:22–879:7

14  (Musk); Ex. 756.  And Twitter filed a lawsuit against Mr. Musk on July 12, 2022—just days after

15  termination—disputing that he had a basis to terminate the merger and thus providing the market

16  with sufficient information to determine the validity of his termination.  Tr. 1405:16–22 (Korman).

17  News of the status of the merger was publicly known throughout the Class Period and dissipated

18  any effect caused by the purported misstatements and alleged scheme.  *See Basic Inc. v. Levinson*,

19  485 U.S. 224, 248-49 (1988) (because "news of the merger discussions credibly entered the market

20  and dissipated the effects of the misstatements, those who traded Basic shares after the corrective

21  statements would have no direct or indirect connection with the fraud").

22      *Finally*, to the extent that Plaintiffs could establish the presumption, Mr. Musk has rebutted

23  it.  "*Basic* itself 'made clear that the presumption was just that, and could be rebutted by appropriate

24  evidence,' including evidence that the asserted misrepresentation (or its correction) did not affect

25  the market price of the defendant's stock." *Halliburton II*, 573 U.S. at 268.  Here, there is no

26  evidence of any statistically significant price response to any of the alleged misconduct at issue

27  except the May 13 tweet and July 8 termination.  The market was already aware of precisely what

28  Mr. Musk's rights were under the Merger Agreement on May 13, since the Merger Agreement and

1    associated SEC filings were publicly filed, Tr. 416:22–24 (Gadde); Ex. 36; Ex. 47; Ex. 62.  And

2    Plaintiffs' expert Dr. Tabak admitted that the market already knew on May 13 that Twitter had not

3    agreed to put the deal on hold (thus correcting any misimpression).  This information was all

4    incorporated into Twitter's stock price on May 13, such that the alleged falsehoods did not affect

5    the market price.  *Connecticut Ret. Plans & Tr. Funds v. Amgen Inc*., 660 F.3d 1170, 1173–74 (9th

6    Cir. 2011) (presumption rebutted by "showing that the market was already aware of the truth behind

7    the defendant's supposed falsehoods and thus that those falsehoods did not affect the market price").

8            **D.    No Reasonable Jury Could Find Plaintiffs Proved Loss Causation**

9            Nor have Plaintiffs adduced sufficient evidence from which any reasonable jury could find

10   that Mr. Musk's alleged misstatements and alleged scheme caused shareholders to suffer losses.

11           To start, Plaintiffs' expert Dr. Tabak testified that only two events had any economic impact

12   on Twitter's stock price:  the May 13 tweet and the July 8 termination.  Dr. Tabak conceded that

13   Mr. Musk's statements on May 16 and May 17 had no impact on Twitter's stock price.  He also

14   admitted that the remaining conduct alleged by Plaintiffs to constitute the so-called scheme did not

15   affect Twitter's price.  Accordingly, and at the threshold, Plaintiffs cannot establish loss causation

16   as to any conduct outside of the May 13 tweet and July 8 termination as a matter of law.  *See, e.g.*,

17   *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 391-95 (9th Cir. 2010) (affirming summary judgment

18   where plaintiffs had "not developed evidence" that "their losses were caused by the market's

19   reaction to Defendants' alleged fraud, as opposed to [other factors]"); *In re REMEC Inc. Sec. Litig.*,

20   702 F. Supp. 2d 1202, 1273-75 (S.D. Cal. 2010) (granting summary judgment on statements for

21   which plaintiff provided no admissible expert analysis linking them to a stock-price decline).

22           As to the May 13 tweet and July 8 termination, Plaintiffs had to prove that the allegedly false

23   statement—as opposed to some other, non-fraud factor—caused the stock price to become deflated.

24   *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-48 (2005) (holding plaintiff must "prove that

25   the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's

26   economic loss"); *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111,

27   1118 (9th Cir. 2013) ("The loss causation element, however, requires that [the plaintiff] also show

28   'proximate' or 'legal' cause.").  That is, Plaintiffs have to show "the difference between the stock

1    price after the false statement and what it *would have been* had the statement reflected the truth."

2    *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 417 (7th Cir. 2015) (emphasis in original);

3    *In re Vivendi, S.A. Sec. Litig.,* 838 F.3d 223, 258 (2d Cir. 2016) ("[T]he proper question for purposes

4    of our inquiry into price impact is not what might have happened had a company remained silent,

5    but what would have happened if it had spoken *truthfully*." (emphasis in original)).

6          Plaintiffs did not do so here.  When asked whether Twitter's stock price would have moved

7    any differently on May 13 had Mr. Musk tweeted what Plaintiffs allege was the *truth*, Plaintiffs'

8    expert had no opinion.  In fact, Dr. Tabak admitted that "my analysis is essentially on what if he had

9    said nothing so I'll be taking away the false stuff, not adding in something new."  Because Dr. Tabak

10   admitted that Plaintiffs cannot possibly meet that burden because he did not even bother to address

11   the relevant inquiry, Plaintiffs lack sufficient evidence to establish loss causation as a matter of law.

12   *See In re Vivendi,* 838 F.3d at 258; *Glickenhaus*, 787 F.3d at 417.

13         Nor did Plaintiffs adduce sufficient evidence to establish a corrective disclosure theory of

14   loss causation as to the May 13 tweet, which requires "a causal connection between the material

15   misrepresentation and the loss" with evidence beyond the fact that a stock was bought or sold at

16   inflated or deflated prices.  *Dura Pharms.*, 544 U.S. at 342.  The "causal connection" demands

17   evidence that the alleged fraud was later corrected and that the stock price responded accordingly.

18   *See In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020).  While Plaintiffs pursued

19   a "corrective disclosure" theory based on the October 4, 2022 letter that Mr. Musk intended to close

20   the merger on the original terms, Dkt. No. 31 ¶ 176; *see also id.* at ¶¶ 167–172, Plaintiffs offered no

21   evidence that the October 4 announcement corrected any alleged misstatement.  Dr. Tabak admitted

22   that he is not claiming that any information that came out was corrective at all.  Plaintiffs' evidence

23   is insufficient as a matter of law to establish loss causation.  *Dura Pharms.*, 544 U.S. at 342.

24         The same is true of the July 8 termination.  To start, the July 8 termination constitutes

25   protected litigation conduct and was dismissed.  Dkt. No. 48 at 26-28, 39; *Sosa*, 437 F.3d at 929

26   ("The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of 'the right of the

27   people . . . to petition the Government for a redress of grievances.'" (quotation omitted)); *Gamble*,

28   348 F. Supp. 3d at 1027 ("Litigants are immune from liability that arises out of their petitioning

1   activity, *i.e.*, the filing of a lawsuit, as well as conduct 'incidental to the prosecution of the suit.'").

2   Beyond that, however, Plaintiffs' expert admits that *any* termination—whether fraudulent or not—

3   on July 8 would have caused Twitter's stock to decline.   Again, Dr. Tabak only analyzed the

4   difference between the price of Twitter stock after the allegedly fraudulent termination and what it

5   would have been had Mr. Musk done nothing at all, which is the wrong inquiry.   Thus, Plaintiffs

6   cannot show any "difference between the stock price after the false statement and what it *would*

7   *have been* had the statement reflected the truth." *Glickenhaus*, 787 F.3d at 417.   And, crucially, the

8   termination letter is based in part on matters that Plaintiffs have never challenged.   Ex. 197.   The

9   independent basis for termination means that, as a matter of law, Plaintiffs cannot show any fraud

10  (as opposed to an unrelated termination) caused any loss.

11      Finally, Dr. Tabak did not conduct an event study to isolate any stock price decline caused

12  by the alleged fraud from declines caused by other market and industry factors on any day of the

13  Class Period.   Tr. 1914:2-7 (Tabak).   Because there are a "tangle of factors that affect" stock price,

14  "evidence that certain misrepresented risks are responsible for a loss must reasonably distinguish

15  the impact of those risks from other economic factors." *Nuveen*, 730 F.3d at 1123.   Thus, Plaintiffs

16  failed to provide sufficient evidence from which a jury could find the alleged fraud caused any loses.

17      **E.      This Court Should Grant Judgment As A Matter Of Law On Damages**

18      The Court should grant judgment for Mr. Musk based on insufficient evidence of damages.

19      *First*, to prove damages—as with loss causation—Plaintiffs are required to disaggregate the

20  stock price losses caused by the alleged fraud from any loss caused by other, unrelated

21  company-specific and market factors.   *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d

22  1005, 1014 (C.D. Cal. 2003) ("Damages in a securities fraud case are measured by the difference

23  between the price at which a stock sold and the price at which the stock would have sold absent the

24  alleged misrepresentations or omissions").   Dr. Tabak's analysis failed to differentiate between the

25  impact of the alleged fraud and the potential price response had Mr. Musk made what Plaintiffs

26  contend is a truthful statement about the status of the merger and his intentions.   Tr. 1914:2-7

27  (Tabak).   Plaintiffs thus failed to elicit sufficient evidence from which the jury could reasonably

28  calculate damages.

1    *Second*, Dr. Tabak failed to account for *any* market or industry effects in his damages model.

2    Courts typically require plaintiffs to present an "event study" that isolates stock price movement

3    attributable to alleged fraud from other confounding factors—like market and industry effects.

4    *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 899 (S.D. Cal. 2019) ("The use of an event study

5    is often necessary to provide an evidentiary basis for a reasonable jury to determine the existence of

6    loss causation and damages").  Dr. Tabak did not do so here.  Instead, Dr. Tabak took the raw stock

7    price drop on May 13 and 16, credited it all to the alleged misstatement, and then applied a constant

8    deflation percentage throughout the Class Period.  He conducted a similar approach following the

9    July 8 termination.  He did not isolate or remove price drops during the Class Period caused simply

10   by random movements in the stock market or market wide stock drops unrelated to the alleged fraud.

11   As a result, some investors who sold well after May 13 and 16 are credited with *more damages*

12   simply because the NASDAQ fell.  By including price declines attributable to other market and

13   industry factors in the damages calculation, Dr. Tabak has presented an opinion that is unreliable

14   and thus fails to establish damages as a matter of law.  *See In re Oracle Sec. Litig.,* 829 F. Supp.

15   1176, 1181 (N.D. Cal. 1993) (expert's analysis unreliable when it "fail[ed] to distinguish between

16   the fraud-related and non-fraud related influences on the stock's price behavior.").

## II.    PLAINTIFFS' CLAIMS BASED ON PROTECTED LITIGATION CONDUCT FAIL AS A MATTER OF LAW

19       The Court also should grant judgment as a matter of law to Mr. Musk on Plaintiffs' 10b-5

20   claim to the extent premised on protected litigation conduct.  The only basis for loss causation or

21   damages arising out of the purported scheme is the July 8 termination letter, which is protected

22   litigation conduct, and Mr. Musk's settling of the legitimate litigation cannot establish scienter.

23       Plaintiffs have presented a plethora of evidence of protected litigation conduct.  Plaintiffs'

24   first witness, Mr. Belgrave, falsely claimed that Mr. Musk "didn't even put up a defense," Trial Tr.

25   329:17—a claim later contradicted by Plaintiffs' second witness, Ms. Gadde, *id.* at 449:16-18.  As

26   the Court recognized, Defendant's cross-examination of Mr. Belgrave established that Mr. Belgrave

27   had no real basis for that assertion.  Tr. 1653:2–15.  Plaintiffs have introduced evidence of pre-suit

28   letters by lawyers, about Twitter's complaint in the Delaware litigation, about the litigation itself,

1    and about Mr. Musk's July 8 letter informing Twitter that he was terminating the merger agreement.

2    None of this evidence may serve as the basis for liability.

3        Rather, "[t]he essence of the *Noerr-Pennington* doctrine is that those who petition any

4    department of the government for redress are immune from statutory liability for their petitioning

5    conduct." *Theme Promotions, Inc. v. News Am. Marketing FSI*, 546 F.3d 991, 1006 (9th Cir. 2008).

6    In this regard, the *Noerr-Pennington* doctrine "stands for a generic rule of statutory construction,

7    applicable to any statutory interpretation that could implicate the rights protected by the Petition

8    Clause." *See Sosa*, 437 F.3d at 929.  Thus, "[l]itigants are immune from liability that arises out of

9    their petitioning activity, *i.e.*, the filing of a lawsuit, as well as conduct 'incidental to the prosecution

10   of the suit.'" *Gamble*, 348 F. Supp. 3d at 1027.

11       As the Supreme Court has held, such conduct "is not illegal, either standing alone or as part

12   of a broader scheme." *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965).  Although

13   the Ninth Circuit has stated "no *overall* immunity" exists simply because a scheme might encompass

14   protected litigation conduct, the litigation conduct itself remains protected unless the sham exception

15   applies. *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1263 (9th

16   Cir. 1982) (applying sham litigation exception).  Here, however, Plaintiffs have not alleged that the

17   litigation was a sham and did not even include the issue in the joint pre-trial order.  *See* Dkt. No. 31

18   (First Amended Complaint); Dkt. No. 358 at 2 (Joint Pre-Trial Order).  The litigation conduct thus

19   cannot be a basis for liability.

20       Despite this clear law, in advance of the trial, the Court determined that all litigation

21   conduct—anything that happened between May 13 and October 4—was admissible and could be a

22   basis for liability.  Even under the Court's framing, however, judgment must be granted in favor of

23   Mr. Musk because, as the Court stated at trial, the evidence "established in Mr. Musk's testimony

24   that he was aware of certain things in connection with the defense," that he "was given a report,"

25   that he "believe[d] [he] had a meritorious defense," and that "the only reason [he] went through with

26   the merger agreement is because [he] thought [he] would lose because – because the judge was

27   biased, not because [he] didn't have a defense to the action." Tr. 1653:16–21; 1658:1–18. Because

28   the Court foreclosed further testimony on the Delaware litigation in light of Defendant establishing

1    that Mr. Musk had a meritorious case, then Court must grant judgment in Mr. Musk's favor both

2    because this rule forecloses any scheme claim based on such conduct and because no reasonable

3    jury could find Plaintiffs proved scienter.

### III.    PLAINTIFFS' SCHEME LIABILITY CLAIM FAILS AS A MATTER OF LAW

5           Finally, the Court should grant judgment as a matter of law on the purported scheme claim.

6           To start, there can be no scheme liability as a matter of law because the only bases for

7    liability Plaintiffs have alleged are statements made by Mr. Musk.    While it is settled that

8    "dissemination of false or misleading statements with intent to defraud can fall within the scope of

9    subsections (a) and (c) of Rule 10b-5, as well as the relevant statutory provisions," *Lorenzo v. SEC*,

10   587 U.S. 71, 78 (2019), it is ***not*** established that someone who makes allegedly false or misleading

11   statements, and who could accordingly be liable under Rule 10b-5(b), may also be liable under Rules

12   10b-5(a) and (c) without any allegations of conduct beyond the alleged misrepresentations.    As the

13   Second Circuit has held, "misstatements and omissions alone are not enough for scheme liability,"

14   and "dissemination is one example of something extra that makes a violation a scheme."    *SEC v.*

15   *Rio Tinto plc*, 41 F.4th 47, 54 (2d Cir. 2022).    The Ninth Circuit has not held otherwise.    *Alphabet*,

16   which allowed a scheme claim to proceed based on alleged misrepresentations, also involved

17   individuals who ***disseminated*** rather than ***made*** the statements.    *In re Alphabet, Inc. Sec. Litig.*, 1

18   F.4th 687, 699, 709 (9th Cir. 2021).    Here, Mr. Musk is alleged to be the maker of the statements,

19   not the disseminator.    No law suggests that the maker of alleged misstatements can be held

20   separately liable under Rule 10b-5(a) or (c) merely for making statements without something more.

21   And Plaintiffs have not alleged anything more, nor have they introduced any evidence at trial.    The

22   Court should grant judgment as a matter of law on this claim for this reason alone.

23          Next, as Mr. Musk has argued, Plaintiffs' scheme liability claim is otherwise deficient as a

24   matter of law.    Scheme liability may not be based on true and not misleading statements.    *See*

25   *Lorenzo*, 587 U.S. at 78 ("[D]issemination of *false or misleading statements* with intent to defraud

26   can fall within the scope of subsections (a) and (c) of Rule 10b–5[.]" (emphasis added)); *Kang v.*

27   *PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 902 (N.D. Cal. 2022) (Breyer, J.) ("PayPal correctly

28   argues that this alleged scheme consists entirely of (and fails for the same reasons as) the

misstatements analyzed above."); *In re Palo Alto Networks, Inc. Sec. Litig.*, 2025 WL 2410348, at *2 (N.D. Cal. Aug. 19, 2025) (Breyer, J) ("Plaintiffs cannot remedy their failure to plead falsity or scienter by repackaging their claims as 'scheme liability' claims under SEC Rules 10b–5(a) and (c)."); Tr. of Feb. 17, 2026 Proceedings at 74:19–25 (the Court stating regarding *PayPal*, "I think I said that failure of proving that the statement is false thereby terminates any liability that you would have under 10b–5"). Plaintiffs have introduced evidence of a variety of statements by Mr. Musk that were either not alleged to be false or misleading at all, *see, e.g.*, Exs. 118, 129, 198, or were dismissed by the Court for that reason, *see, e.g.*, Exs. 114, 100, 197. Scheme liability based on those statements fails as a matter of law. Plaintiffs have also introduced evidence of the three surviving alleged misrepresentations, *see* Exs. 97, 126, 130. If misrepresentations alone may be the basis for scheme liability, such a "scheme" fails as a matter of law for the same reasons liability based on the misrepresentations fail.

Separately, a claim for scheme liability also may not be based on statements or conduct that were not pleaded with particularity under Federal Rule of Civil Procedure 9(b). *See In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996); *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 577 (S.D.N.Y. 2016) (cited Pls.' Opp. to Def's Mot. *in Limine* No. 4, Dkt. No. 372, at 4) ("[P]laintiffs must also state with particularity what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue."). Plaintiffs may have referenced a "scheme" in their complaint, but they did not allege with particularity anything that was part of that scheme. Yet they have introduced a wide-range of evidence of other tweets or protected litigation conduct. The claim therefore fails as a matter of law.

For all these reasons, Plaintiffs' scheme claim fails as a matter of law, and the Court should grant judgment in favor of Defendant.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court enter judgment as a matter of law pursuant to Rule 50(a) on all claims and in favor of all Defendant.

1

2    DATED:  March 13, 2026                    QUINN EMANUEL URQUHART &
                                              SULLIVAN, LLP

3

4                                             By _____*s/ Ellyde R. Thompson*_____

5                                                 Alex Spiro
                                                  Michael T. Lifrak
6                                                 Stephen A. Broome
                                                  Ellyde R. Thompson
7                                                 Jesse A. Bernstein
                                                  Alex Bergjans
8

9

10                                               *Attorneys for Defendant Elon Musk*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

1

## CERTIFICATE OF SERVICE

2        I hereby certify that the foregoing document was served on all counsel of record

3  electronically or by another manner authorized under FED. R. CIV. P. 5(b) on Friday, March 13,

4  2026.

5                                QUINN EMANUEL URQUHART &
                                 SULLIVAN, LLP
6

7

8                        By  /s/ Alex Bergjans
                              Alex Spiro
9                             Michael T. Lifrak
                              Stephen A. Broome
10                            Ellyde R. Thompson
                              Jesse A. Bernstein
11                            Alex Bergjans

12
                              *Attorneys for Defendant Elon Musk*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

**ATTESTATION**

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories herein.


By  /s/ Alex Bergjans
    Alex Spiro
    Michael T. Lifrak
    Stephen A. Broome
    Ellyde R. Thompson
    Jesse A. Bernstein
    Alex Bergjans

    *Attorneys for Defendant Elon Musk*