QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Ellyde R. Thompson (*pro hac vice*)
ellydethompson@quinnemanuel.com
Jesse A.  Bernstein (*pro hac vice*)
jessebernstein@quinnemanuel.com
295 Fifth Ave., New York, NY 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100

Michael T. Lifrak (Bar No.  210846)
michaellifrak@quinnemanuel.com
Stephen A. Broome (Bar No.  314605)
stephenbroome@quinnemanuel.com
Alex Bergjans (Bar No.  302830)
alexbergjans@quinnemanuel.com
865 S.  Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

*Attorneys for Defendant Elon Musk*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>          Plaintiff,<br><br>     vs.<br><br>ELON R. MUSK,<br><br>          Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**DEFENDANT ELON MUSK'S EXCEPTIONS TO THE COURT'S TENTATIVE JURY INSTRUCTIONS**<br><br>Judge:  Hon. Charles R. Breyer |

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ....................................................................................................1

Tentative Instruction Re: Securities—Purpose and Selected Definitions .............................2

Tentative Instruction Re: Securities—Rule 10b-5 Claim ....................................8

Tentative Instruction Re: Securities—Materiality ...................................................14

Tentative Instruction Re: Securities—Knowingly or Recklessly .......................................17

Tentative Instruction Re: Reliance ....................................................................20

Tentative Instruction Re: Securities—Causation ....................................................22

Tentative Instruction Re: Protected Litigation Conduct ....................................................26

Tentative Instruction Re: Damages ....................................................................28

Defendant's Requested Limiting Instruction Re: Breach of Contract ...............................31

Defendant's Requested Limiting Instruction Re: Unpled Statements................................32

Defendant's Requested Limiting Instruction Re: No Liability For Pre-Class Period
         Purchases Of Twitter Stock ........................................................................34

**Tentative Instruction Re: Securities—Purpose and Selected Definitions**

<u>**Defendant's Proposed Modifications:**</u>

Congress enacted the securities laws to protect the integrity of financial markets. The plaintiffs claim to have suffered a loss caused by defendant's <u>**alleged**</u> violation of ~~certain of these laws~~ Rule 10b-5 <u>**during the Class Period, May 13, 2022 to October 4, 2022.**</u>

There are terms concerning securities laws that have a specific legal meaning. The following definitions apply throughout these instructions, unless noted otherwise.

A security is an investment of money in a commercial, financial, or other business enterprise, with the expectation of profit or other gain produced by the efforts of others. Some common types of securities are stocks and options.

The buying and selling of securities are controlled by Securities Laws. Many of these laws are administered by the United States Securities and Exchange Commission (SEC).

A "10b-5 claim" is a claim brought under a federal statute, Section 10(b) of the Securities Exchange Act of 1934, which prohibits acts of ~~manipulation or deception~~ <u>**fraud**</u> in connection with the purchase or sale of a security and in violation of rules and regulations that the SEC has the duty and power to issue. A corresponding SEC Rule, Rule 10b-5, prohibits the knowing misrepresentation of material facts in connection with the purchase or sale of securities. A person who violates the securities laws, including Rule 10b-5, may be liable for damages caused by the violation.

An act, practice or scheme to defraud is <u>**conduct that has the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme to defraud.**</u> ~~intended to mislead investors including by artificially affecting market activity.~~

A misrepresentation is a statement of material fact that is false or misleading when it is made. ~~A statement may be misleading even if it is literally true if the context in which the statement was made caused the listener or reader to remain unaware of the actual state of affairs~~. A statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists. Words cannot be viewed in complete

isolation but must instead be read in light of all the  information then available to the market to decide if they conveyed a false or misleading impression.

~~An omission is a failure to disclose a material fact that needed to be disclosed to prevent other statements that were made from being misleading.~~

"In connection with" means that there was some relationship, or nexus, between the allegedly fraudulent conduct and the sale of the securities.  The defendant's conduct may be in connection with a purchase or sale of a security even if the defendant did not actually participate in any securities transaction.

An instrumentality of interstate commerce includes the postal mails, e-mails, telephone, telegraph, telefax, interstate highway system, internet and similar methods of communication, and travel from one state to another within the United States.

**<u>Argument In Support Of Defendant's Proposed Modifications:</u>**

At the threshold, Defendant maintains his objections to any jury instructions regarding scheme liability.  *See* Dkt. Nos. 342, 366, 399, 406, 429, 446, 448, 453, 503.

Defendant objects to the Court's Tentative Jury Instruction "Securities—Purpose and Selected Definitions" and respectfully requests that it give the above modified instruction. The Tentative Instruction, as currently framed, is not an "accurate statement of the law" that is appropriately tailored to the issues in the case.  *See, e.g.*, *United States v. Garza*, 980 F.2d 546, 553-54 (9th Cir. 1992) (jury instruction must be "accurate statement of the law," although "formulation or choice of language of the jury instructions is within the discretion of the district court").

To start, the instruction omits key facts about Plaintiffs' claim and risks confusing and misleading the jury.  For example, the Tentative Instruction does not identify ***when*** Mr. Musk is alleged to have violated Rule 10b-5 and thus does not properly instruct the jury as to what conduct is relevant for its deliberations.  The instruction is also impermissibly vague because it states that Defendant is alleged to have violated "certain of these laws" instead of identifying which law is at issue.  These risk of confusion and prejudice caused by these defects is particularly acute here since Plaintiffs have argued and presented evidence suggesting that Mr. Musk's pre-Class Period purchase

1  of Twitter stock and failure to disclose those purchases violated regulations and harmed investors.

2  Trial Tr. 206 ("He didn't file reports with the SEC about it. He kept it secret to keep all that extra

3  money in his own pocket."); *see also* Trial Tr. 349-351 (Gadde); Trial Tr. 538 (Birchall).  Such

4  conduct has never been a part of Plaintiffs' claims, Dkt. No. 48 at 2 n.1, and was excluded by the

5  Court in response to Defendant's Motion *in Limine* No. 1, Tr. of Feb. 17, 2026 Proceedings at 54–

6  55.  Yet the Court did not provide Defendant's requested limiting instruction.  *See* Dkt. Nos. 471 at

7  5, 474 at 11–12, 487 at 4–6.  Mr. Musk thus respectfully requests that the Court instruct the jury that

8  "The plaintiffs claim to have suffered a loss caused by defendant's alleged violation of Rule 10b-5

9  during the Class Period, May 13, 2022 to October 4, 2022," which accurately identifies the specific

10  law at issue and the Class Period.

11         To the extent the Court gives any instruction including scheme liability, Defendant further

12  object to the inclusion of the term "manipulation" because it is an inaccurate statement of the law

13  based on the facts of the case and thus prejudicial and misleading.  Plaintiffs have not adduced any

14  evidence that Defendant engaged in any "manipulative act" as defined by the Securities Exchange

15  Act. "'Manipulation,' the Supreme Court has recognized, 'is virtually a term of art when used in

16  connection with securities markets. The term refers generally to practices, such as wash sales,

17  matched orders, or rigged prices, that are intended to mislead investors by artificially affecting

18  market activity.'" *Desai v. Deutsche Bank Sec. Ltd*., 573 F.3d 931, 938–39 (9th Cir. 2009) (quoting

19  *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977)); *see also Patterson v. Jump Trading LLC*,

20  710 F. Supp. 3d 692, 716 (N.D. Cal. 2024) (same).  The conduct alleged here does not fall into any

21  of those categories.  There are no allegations or evidence that Defendant made any fictious sales,

22  *Commodity Futures Trading Comm'n v. Bao*, 2024 WL 5047476, at *7 (C.D. Cal. July 31, 2024)

23  (defining wash sale); purchased any securities with the knowledge that a similarly sized sale has

24  been or would be made, *Sec. & Exch. Comm'n v. Sripetch,* 2020 WL 6396927, at *6 (S.D. Cal. Nov.

25  2, 2020) (defining matched orders); or engaged in any other manipulative trading practices,

26  *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 158 (2008) (noting "'manipulative' is

27  a term of art" referring to trading practices).  The Court should excise from its instructions any

28  reference to the terms "manipulation," "manipulate," or "manipulative."

1      Defendant also objects to the Tentative Instruction's definition of "an act, practice or

2  scheme" as an inaccurate statement of the law.  Instead, Defendant proposes that the Court use the

3  Ninth Circuit's definition of scheme liability, which states that "to be liable as a primary violator of

4  § 10(b) for participation in a 'scheme to defraud,' the defendant must have engaged in conduct that

5  had the principal purpose and effect of creating a false appearance of fact in furtherance of the

6  scheme." *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other*

7  *grounds*, 519 F.3d 1041 (9th Cir. 2008); *see also In re Stem, Inc. Sec. Litig.*, 2025 WL 3675114, at

8  *12 (N.D. Cal. Dec. 17, 2025) (quoting *Simpson*, 452 F.3d at 1048).  Defendant's proposal simply

9  quotes from applicable, governing Ninth Circuit law cited in this District's most recent scheme case.

10  It is an accurate statement of the law and should be given.

11      On the other hand, the definition currently contained in the Tentative Instruction finds no

12  support in 10b-5's text or the caselaw.  Instead of applying the Ninth Circuit's definition of a

13  "scheme to defraud," the Tentative Instruction appears to borrow language from *Santa Fe*'s

14  description of "manipulation" and swaps out what the Supreme Court defines as manipulative

15  market conduct—"such as wash sales, matched orders, or rigged prices"—with "act, practice, or

16  scheme."  *Compare* 430 U.S. at 476 ("Manipulation' is virtually a term of art when used in

17  connection with securities markets. The term refers generally to practices, such as wash sales,

18  matched orders, or rigged prices, that are intended to mislead investors by artificially affecting

19  market activity.") *with*  Dkt. No. 505 at 13:21-22 ("An act, practice or scheme to defraud is any

20  conduct intended to mislead investors, including by artificially affecting market activity.").  The

21  instruction as written legally incorrect and erroneous.  As discussed above, this is not a market

22  manipulation case.  And furthermore, the definition is not only contrary to *Simpson*, it is inconsistent

23  with the text of 10b-5(a), which states that the so-called scheme must be to "***defraud***," not merely

24  mislead.  Thus, it impermissibly lowers Plaintiffs' burden.  Second, the definition instructs the jury

25  to find a scheme based only on the party's purported intent to mislead and not whether or not the

26  act did, in fact, mislead.  It conflates the act with scienter—a separate element—and allows the jury

27  to find Mr. Musk liable so long as Plaintiffs establish the requisite state of mind.  But the law requires

28

a deceptive act giving rise to scheme liability have both a fraudulent purpose and effect. *In re Stem, Inc. Sec. Litig.*, 2025 WL 3675114, at *12.

Finally, because it borrows language from a market manipulation case and not controlling scheme law, the Tentative Instruction improperly includes the term "by artificially affecting market activity." As discussed above, that term—which arises from claims based on manipulative conduct—applies only in cases in which a defendant's trading practices artificially impacted price, not any alleged activity occurring outside of the securities markets. *Stoneridge*, 552 U.S. at 158 (noting "'manipulative' is a term of art" referring to trading practices). Thus, given that the Court plans to instruct on scheme liability, it should instead properly state the law that "An act, practice or scheme to defraud is conduct that has the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme to defraud."

Defendant also objects to the instruction that "a statement may be misleading even if it is literally true if the context in which the statement was made caused the listener or reader to remain unaware of the actual state of affairs." This instruction relates to a price maintenance theory of securities fraud where a defendant's statement "confirms" what the market already believed to be the state of affairs thereby causing the audience to remain unaware of the truth. *E.g., FindWhat Inv. Grp. v. FindWhat.com,* 658 F.3d 1282, 1314 (11th Cir. 2011). But this is not a price maintenance case; Plaintiffs' loss causation expert admitted as much. Trial Tr. at 1882:16-1883:23. Accordingly, this aspect of the Tentative Instruction is not appropriately tailored to the theories at issue and should not be given.

Defendant further objects to the Tentative Instruction's statement that "an omission is a failure to disclose a material fact that needed to be disclosed to prevent other statements that were made from being misleading." Plaintiffs are pursuing a misrepresentation theory under Rule 10b-5(b), not an omissions theory. "Absent a duty to disclose, an omission does not give rise to a cause of action under § 10(b) and Rule 10b–5." *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co*., 845 F.3d 1268, 1278 (9th Cir. 2017). "An actionable omission claim arises only when disclosure is 'necessary ... to make the statements made, in light of the circumstances under which they were made, not misleading.'" *Id.* (quoting Rule 10b-5(b).). Mr. Musk was under

no duty to disclose at the time he made the alleged misstatements at issue and Plaintiffs have not identified any facts that Mr. Musk was obligated to disclose to make the statements not misleading separate and apart from the alleged misrepresentation itself.

1    **Tentative Instruction Re: Securities—Rule 10b-5 Claim**

2    <u>**Defendant's Proposed Modifications:**</u>

3    The plaintiffs allege that Elon Musk engaged in securities fraud in violation of the federal

4    securities laws <u>**during the Class Period, May 13, 2022 to October 4, 2022**</u>.  This is referred to as

5    "the plaintiffs' 10b-5 claim."

6    To succeed on this claim, the plaintiffs have the burden of proving each of the following five

7    elements by a preponderance of the evidence.

8    <u>First</u>, the defendant Elon Musk (a) employed a device, scheme, or artifice to defraud; or (b)

9    made an untrue statement of a material fact ~~or omitted a material fact necessary under the~~

10    ~~circumstances to keep the statements that were made from being misleading; or (c) engaged~~

11    ~~in an act, practice, or course of business which operated as a fraud or deceit upon any person,~~

12    ~~in connection with the sale of securities~~.

13    Plaintiffs allege that the following statements were materially false and misleading under

14    Rule 10b-5(b):

15    (1) A May 13, 2022 Tweet, "Twitter deal temporarily on hold pending details supporting

16    calculation that spam/fake accounts do indeed represent less than 5% of users."

17    (2) A May 16, 2022 statement ~~that "~~ <u>**regarding**</u> the prevalence of spam/fake accounts on

18    Twitter <u>**that is**</u> "<u>**I think it's some number that is**</u> probably at least four or five times" Twitter's 5%

19    representation and that "the lowest estimate would be probably 20 percent.  And this—and this is—

20    a bunch of quite smart outside firms have done analysis of Twitter and looked at the . . . daily users,

21    and their conclusion is also about—its about 20 percent."

22    (3)  A May 17, 2022 Tweet, "20% fake/spam accounts, while 4 times what Twitter claims,

23    could be *much* higher.  My offer was based on Twitter's SEC filings being accurate.  Yesterday,

24    Twitter's CEO publicly refused to show proof of <5%.  The deal cannot move forward until it does."

25    These three statements are the only ones that <u>**are alleged to be materially false or**</u>

26    <u>**misleading and the only ones that**</u> can form the basis for liability under Rule 10b-5(b).

27    Plaintiffs separately bring a claim under Rule 10b-5 (a) ~~and/or (c)~~ alleging that the defendant

28    engaged in a scheme to defraud Twitter investors by carrying out <u>**conduct that had the principal**</u>

**purpose and effect of creating a false appearance of fact in furtherance of the scheme to defraud**.

~~You have heard testimony regarding other statements or tweets made by the defendant. These statements must be treated differently under the context of plaintiffs' two claims. Under Rule 10b-5(b), you may only consider those separate statements in determining whether the three at-issue statements were false and misleading. Under Rule 10b-5(a) or (c), you may consider those separate statements in determining whether they were part of a larger scheme allegedly carried out by the defendant.~~

Second, defendant Elon Musk acted knowingly ~~or recklessly~~;

Third, defendant Elon Musk, used or caused the use of an instrumentality of interstate commerce, such as mail, telephone, internet, or any facility of a national securities exchange, in connection with the purchase or sale of securities, regardless of whether the instrumentality or facility itself was used to engage in the ~~manipulative or deceptive~~ **alleged fraudulent** acts, or to make an **alleged** untrue statement of material fact;

Fourth, Plaintiffs justifiably relied on the alleged untrue statements of material fact or ~~manipulative or deceptive~~ **alleged fraudulent** conduct; and

Fifth, defendant Elon Musk's ~~manipulative or deceptive acts or~~ **alleged material** misrepresentations **or fraudulent acts** caused the plaintiffs to suffer damages.

If you find that the plaintiffs have proved each of these elements for their claim or claims, your verdict should be for the plaintiffs on that claim or claims. If, on the other hand, you find that the plaintiffs have failed to prove any of these elements for their claim or claims, your verdict should be for the defendant on that claim or claims.

**Argument In Support Of Defendant's Proposed Modifications:**

At the threshold, Defendant maintains his objections to any jury instructions regarding scheme liability. *See* Dkt. Nos. 342, 366, 399, 406, 429, 446, 448, 453, 503.

1    Defendant otherwise respectfully requests that the Court make the above modifications to

2    the Court's Tentative Instruction.  Defendant's modifications tailor the instruction to the claims at

3    issue in this trial and provide a more accurate statement of law.

4    *First*, Defendant objects to the Tentative Instruction because it omits the relevant time period

5    and requests that the Court instruct the jury of the Class Period at issue.  This is particularly

6    important in light of the wealth of evidence Plaintiffs introduced at trial of conduct that pre-dates

7    the class period, including, notably, Plaintiffs' many references to Defendant's alleged failure to file

8    a disclosure with the SEC when he purchased Twitter securities on the open market.  That has never

9    been a part of Plaintiffs' claims, Dkt. No. 48 at 2 n.1, and was excluded by the Court in response to

10   Defendant's Motion *in Limine* No. 1, Tr. of Feb. 17, 2026 Proceedings at 54–55.  Plaintiffs

11   nevertheless introduced argument and testimony about the alleged failure to file SEC disclosures at

12   trial, and the Court did not provide Defendant's requested limiting instruction.  *See* Dkt. Nos. 471

13   at 5, 474 at 11–12, 487 at 4–6.  While that prejudice from allowing the jury to form impressions

14   based on this improper argument and testimony cannot be undone, it is critical that the Court's final

15   jury instructions make clear to the jury the scope of the claims they are to decide at the outset of the

16   instruction setting out those claims.

17   *Second*, the Court should omit any reference to an omissions theory of liability because

18   Plaintiffs are pursuing a misrepresentation theory under Rule 10b-5(b), not an omissions theory.

19   "Absent a duty to disclose, an omission does not give rise to a cause of action under § 10(b) and

20   Rule 10b–5."  *Retail Wholesale*, 845 F.3d at 1278.  Mr. Musk was under no duty to disclose at the

21   time he made the alleged misstatements at issue and Plaintiffs have not identified any facts that Mr.

22   Musk was obligated to disclose to make the statements not misleading separate and apart from the

23   alleged misrepresentation itself.

24   *Third*,  Defendant also objects to the Tentative Instruction's definition of "an act, practice or

25   scheme" as an inaccurate statement of the law.  Instead, Defendant proposes that the Court use the

26   Ninth Circuit's definition of scheme liability, which states that "to be liable as a primary violator of

27   § 10(b) for participation in a 'scheme to defraud,' the defendant must have engaged in conduct that

28   had the principal purpose and effect of creating a false appearance of fact in furtherance of the

1   scheme." *Simpson*, 452 F.3d at 1048; *In re Stem, Inc. Sec. Litig.*, 2025 WL 3675114, at *12 (quoting

2   *Simpson*, 452 F.3d at 1048).  Defendant's proposal simply quotes from applicable, governing Ninth

3   Circuit law cited in this District's most recent scheme case.  It is an accurate statement of the law

4   and should be given.

5       *Fourth*, Defendant objects to the Court's references to Rule 10b-5(c).  At the Pretrial

6   Conference, in response to Defendant's Motion *in Limine* No. 4 to exclude Plaintiffs' purported

7   scheme claim altogether, the Court explained that Rule 10b-5 "has three bases for liability,"

8   including a scheme under Rule 10b-5(a) and misstatements under Rule 10b-5(b), in addition to Rule

9   10b-5(c), which the Court stated is "irrelevant."  Tr. of Feb. 17, 2026 Proceedings at 64:23–65:4.

10  The Court reached that conclusion in part by relying on paragraph 10 of Plaintiffs' First Amended

11  Complaint, which refers to an alleged scheme, but makes no reference to anything under Rule 10b-

12  5(c).  The Court further explained that in this case, there are "***two*** bases for liability here," and that

13  "one is false statements," and "the other is a scheme . . . to commit a fraudulent act."  *Id.* at 33:1–

14  10.   Those two bases for liability that the Court articulated are Rule 10b-5(b), the alleged

15  misstatements, and Rule 10b-5(a), an alleged "device, scheme, or artifice to defraud."   While

16  Defendant maintains its objections to the Court's holding that Rule 10b-5(a) is at issue here, the

17  Court clearly articulated only ***two*** bases for liability, and the Court may not insert a third basis for

18  liability after evidence has closed.  Inserting that basis for liability into the jury instructions would

19  be inaccurate, improper, and prejudicial.

20      *Fifth*, Defendant requests that the Court slightly modify the description of the second alleged

21  misstatement, the May 16 remark at the All-In conference, to match the evidence of what Defendant

22  actually said.  *See* Tr. Ex. 126 at 3:07–3:43.  In particular, the evidence shows that Mr. Musk said

23  "I think" immediately before making the statement Plaintiffs allege was materially false or

24  misleading.  It is necessary to include those words because they carry great legal significance.  The

25  Supreme Court has held that using phrases like "I think" or "I believe" transforms statements of fact

26  into statements of opinion.  *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension*

27  *Fund*, 575 U.S. 175, 183–84 (2015) ("Just as she said, the CEO really did believe, when she made

28  the statement, that her company's TVs had the sharpest picture around.  And although a plaintiff

could later prove that opinion erroneous, the words 'I believe' themselves admitted that possibility, thus precluding liability for an untrue statement of fact.").  Presenting Mr. Musk's statement to the jury to determine whether it is materially false or misleading without including the first two words would be erroneous.

*Sixth*, to the extent the Court gives any instruction including scheme liability, Defendant requests that the Court adopt his proposed modifications to the description of the difference between the scope of the Rule 10b-5(b) claim, which is limited to the three alleged misrepresentations, and the Rule 10b-5(a) claim, which under the Court's previous rulings is not limited to those three statements.  The Court's formulation, which would instruct the jury that they could consider other statements to determine falsity, improperly invites the jury to determine falsity not based solely on whether the statements were true when made, but instead based on dozens of subsequent statements. That is both an incorrect statement of law and unduly confusing.  *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012) (under Rule 10b-5, a plaintiff must demonstrate "why the statements were false or misleading at the time they were made"); *Somerset Commc'ns Grp. v. Wall to Wall Advert., Inc.*, 2015 WL 5007680, at *3 (W.D. Wash. Aug. 20, 2015) ("In order to be actionable under the Federal Securities Act, the Ninth Circuit has held that representation must be false 'when made.'" (quoting *In re VeriFon Sec. Litig.*, 11 F.3d 865, 871 (9th Cir. 1993))); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002) ("To be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events.").  Instructing the jury that one claim is limited to three alleged misstatements and one is not is both legally correct and clear.

*Seventh*, to the extent the Court gives any instruction including scheme liability, Defendant further object to the inclusion of the term "manipulation" because it is an inaccurate statement of the law based on the facts of the case and thus prejudicial and misleading.  Plaintiffs have not adduced any evidence that Defendant engaged in any "manipulative act" as defined by the Securities Exchange Act, "a term of art when used in connection with securities markets" that "refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity.'" *Desai*, 573 F.3d at 938.  The conduct alleged

1   here does not fall into any of those categories. The Court should excise from its instructions any

2   reference to the terms "manipulation," "manipulate," or "manipulative."

3         *Eighth*, Defendant proposes modifying the articulation of element five, loss causation, to

4   mirror the order in which the misrepresentation claim and scheme claim are presented throughout

5   the instruction, with misrepresentations listed first, in order to avoid confusion. Defendant further

6   proposes adding the word "material," because that is a more accurate description of the loss

7   causation and damages requirements. *See, e.g.*, *Nuveen Mun. High Income Opportunity Fund v.*

8   *City of Alameda*, 730 F.3d 1111, 1119 (9th Cir. 2013) ("Loss causation is simply 'a causal

9   connection between the *material misrepresentation* and the loss.'" (emphasis added) (quoting *Dura*

10  *Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005))).

11        *Finally*, to the extent the Court gives any instruction including scheme liability, Defendant

12  proposes replacing the phrase "manipulative or deceptive acts" with "fraudulent acts" throughout

13  the instruction because, as set forth above, this case does not involve any alleged manipulative acts

14  as that term is used in securities law.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Tentative Instruction Re: Securities—Materiality**

**Defendant's Proposed Modifications:**

The plaintiffs must prove by a preponderance of the evidence that the defendant's misrepresentation was materially false or misleading.  Under Rule 10b-5(b), a factual representation concerning a security is material if there is a substantial likelihood a reasonable investor would consider the fact important in deciding whether to buy or sell that security.   A material misrepresentation gives a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists.

**A factual misrepresentation can be untrue but not material.  The absence of a stock price reaction to the correction of a misstated fact may be evidence that the fact is not material because immaterial facts and information, by definition, do not affect stock price in an efficient market.**

**A statement regarding a material fact is not rendered false or misleading when made merely because subsequent events prove it to have been erroneous.**

The plaintiffs must also prove by a preponderance of the evidence that the defendant's purported scheme was material.  Under Rule 10b-5(a) or (c), a scheme is material if there is a substantial likelihood a reasonable investor would consider the facts important in deciding whether to buy or sell that security. If the purported scheme is material, it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists.

You must decide whether something was material based on the circumstances as they existed at the time of the statement or duration of the scheme.


**Argument In Support Of Defendant's Proposed Modifications:**

At the threshold, Defendant maintains his objections to any jury instructions regarding scheme liability.  *See* Dkt. Nos. 342, 366, 399, 406, 429, 446, 448, 453, 503.

Defendant respectfully requests that the Court make the above, limited modifications to the Court's Tentative Instruction.  Defendant's modifications tailor the instruction to the claims at issue in this trial and provide a more accurate statement of law.

*First*, Defendant objects to the Tentative Instruction to the extent it fails to instruct the jury that a statement may be untrue but not material.  Other courts in this district have adopted this language for securities fraud class action jury instructions.  *See* Ex. 1, Closing Jury Instructions at 10, Instruction No. 8, In re Tesla Inc. Sec. Litig., 3:18-cv-4865-EMC (N.D. Cal. Feb. 1, 2023), Dkt. 655.  Defendant also requests that the court adopt the following language clarifying that, under the materiality analysis, a statement or subject matter's importance is not considered in a vacuum, but must be assessed in context with the reasonable investor's decision to buy or sell the security, and that the way the correction of the misstated fact would be viewed is part of this analysis.  *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1259 (N.D. Cal. 2000) ("[T]here must be a substantial likelihood that the disclosure of the omitted fact [or correction of the misstated fact] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." (alteration in original) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976))).  Defendant's proposed modifications also inform the jury of the "uncontroversial" proposition that "immaterial misrepresentations and omissions by definition do not affect stock prices in an efficient market."  *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 464 (2013) (alterations adopted).

This instruction is appropriately tailored to the case and supported by the evidence.  Defendant is thus entitled to it and the Court's failure to give it would be error.  *Stewart v. Ragland*, 934 F.2d 1033, 1042 (9th Cir. 1991) ("A defendant is entitled to an instruction concerning his theory of the case if it is supported by law and has some foundation in the evidence.").  Defendant intends to pursue the theory that the lack of price movement demonstrates that the alleged misstatements were not material.  The theory is legally sound and supported by the evidence.  As a result, the Court should adopt the corresponding instruction.  *Dang v. Cross*, 422 F.3d 800, 810–11 (9th Cir. 2005).

*Second*, Defendant requests that Court instruct the jury that a statement regarding a material fact may not be held false or misleading merely because subsequent events prove it to have been erroneous.  *See* 3B Kevin F. O'Malley, et al., Federal Jury Practice and Instructions- Civil §162:235 (6th ed. 2013); *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012) (under Rule 10b-5, a plaintiff must demonstrate "why the statements were false or misleading at the time they

were made"); *Somerset Commc'ns Grp. v. Wall to Wall Advert., Inc.*, 2015 WL 5007680, at *3 (W.D. Wash. Aug. 20, 2015) ("In order to be actionable under the Federal Securities Act, the Ninth Circuit has held that representation must be false 'when made.'" (quoting *In re VeriFon Sec. Litig.*, 11 F.3d 865, 871 (9th Cir. 1993))); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002) ("To be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events.").  This instruction is legally correct and particularly important here, where Plaintiffs have introduced evidence of numerous statements that post-date the three alleged misrepresentations and have argued to the jury that those statements are false.

1    **Tentative Instruction Re: Securities—Knowingly or Recklessly**

2    <u>**Defendant's Proposed Modifications:**</u>

3    <u>**The plaintiffs must prove by a preponderance of the evidence that the defendant acted**</u>

4    <u>**with the intent to defraud.**</u>

5    A defendant acts knowingly when he makes an untrue statement with the knowledge that the

6    statement was false or with <u>**deliberate**</u> reckless disregard for whether the statement was true.

7    A defendant acts ~~**recklessly**~~ <u>**with deliberate recklessness**</u> when he engages in highly

8    unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of

9    misleading investors, which is either known to the defendant or is so obvious that the defendant

10   must have been aware of it.  Mere recklessness or a motive to commit fraud and opportunity to do

11   so <u>**is not enough**</u>. ~~**provide some reasonable inference of intent, but are not sufficient to establish**~~

12   ~~**a strong inference of deliberate recklessness.**~~

13   <u>**It is not sufficient to show that a statement later turns out to be false or misleading. A**</u>

14   <u>**plaintiff must show that a defendant did not believe in the truth or accuracy of the statement**</u>

15   <u>**at the time it was made.**</u>

16

17   <u>**Argument In Support Of Defendant's Proposed Modifications:**</u>

18   *First*, Defendant maintains his objection to the inclusion of any form of recklessness as

19   satisfying the scienter requirements.  *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48

20   (2011) (reserving question whether recklessness suffices).

21   *Second*, Defendant objects to the Tentative Instruction because it fails to inform the jury that

22   scienter is not just about knowledge but is about the intent to defraud.  *See Ernst & Ernst v.*

23   *Hochfelder*, 425 U.S. 185, 193 (1976) (holding that the element of scienter is the "intent to deceive,

24   manipulate, or defraud").  Defendant requests that the Court modify its instruction to include this

25   foundational principle of securities law.

26   *Second*, to the extent the Court instructs the jury on reckless, Defendant respectfully requests

27   that the Court follow Ninth Circuit law and require the jury to assess whether Plaintiffs proved that

28   any materially false statement was made knowingly or with "deliberate recklessness."  The level of

"recklessness" the Ninth Circuit has found necessary to meet the "knowledge" or "scienter" requirement is not ordinary recklessness but rather it must be "deliberate recklessness." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999), *as amended* (Aug. 4, 1999) (scienter under the federal securities laws must "at a minimum" constitute "'deliberate recklessness'"), *superseded by statute on other grounds*; *Webb v. Solarcity Corp.*, 884 F.3d 844, 851 (9th Cir. 2018) ("Deliberate recklessness is an *extreme* departure from the standards of ordinary care[,] which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it." (emphasis in original) (internal quotation marks omitted)). Moreover, this language has been properly adopted in other securities fraud class action trials in this district. *See* Ex. 2, Final Jury Instructions at 12–13, *In re JDS Uniphase Securities Litig.*, 4:02-cv-1486-CW (N.D. Cal. Nov. 19, 2007), Dkt. No. 1874 (including "deliberate recklessness" standard). And this Court has recognized that "deliberate recklessness," at a minimum, is necessary, and that mere recklessness does not suffice. *See* Dkt. No. 48 at 29 ("To demonstrate scienter, the defendant must have contemporaneously made false or misleading statements either intentionally or with deliberate recklessness. Mere recklessness or a motive to commit fraud and opportunity to do so is not enough." (internal quotation marks and citations omitted)). The Court's Tentative Instruction properly explains that mere recklessness and a motive to commit fraud and opportunity to do so do not establish deliberate recklessness, but the instructions must first inform the jury that deliberate recklessness is what is required for that instruction to have any meaning.

*Third*, Defendant objects to the use of "inferences" in the Tentative Instruction and requests that the Court remove such references to inferences because such a framing causes unnecessary confusion and could lead the jury to believe it need not find that Plaintiffs proved scienter by a preponderance of the evidence but may simply rely on "inferences." That framework is taken from the pleading stage, where a plaintiff just has to establish a strong inference of scienter to get to discovery. *See, e.g.*, *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 619 (9th Cir. 2017) ("As such, facts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not sufficient to

establish a strong inference of deliberate recklessness." (alteration adopted and quotation omitted)). At trial, Plaintiffs need to establish this by a preponderance of the evidence—which is greater than the strong inference required at the pleading stage. The Supreme Court has clearly articulated this distinction: "A plaintiff alleging fraud in a § 10(b) action, we hold today, must plead facts rendering an inference of scienter *at least as likely as* any plausible opposing inference. At trial, she must then prove her case by a 'preponderance of the evidence.' Stated otherwise, she must demonstrate that it is *more likely* than not that the defendant acted with scienter." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 328–29 (2007) (emphasis in original). Defendant instead requests that the Court instruct the jury as to the standard it previously articulated: "Mere recklessness or a motive to commit fraud and opportunity to do so is not enough." Dkt. No. 48 at 29 (alteration adopted and quotation omitted).

     *Finally*, Defendant objects to the omission in the Tentative Instruction that, if the Defendant believed in the truth or accuracy of the statement at the time it was made but the statement later turns out to be false or misleading, that does not satisfy the requirement to prove scienter. This accurate statement of law is critical in this case, where Plaintiffs have made clear that they intend to use evidence from well after the statements were made to cast doubt on their accuracy. This requirement has been included in jury instructions in other securities class action trials in this District and in other districts. *See* Ex. 2, Final Jury Instructions at 13, *In Re JDS Uniphase Corp. Securities Litig.*, 4:02-cv-1486-CW (N.D. Cal. Nov. 19, 2007), Dkt. No. 1874 ("An honest or good faith belief on the part of an Individual Defendant that a statement is true is inconsistent with a finding that he acted with scienter in making that statement."); Ex. 3, Charge to the Jury at 29, Instruction No. 24, *In re Vivendi Universal, S.A. Securities Litig.*, 1:02-cv-05571-PAE-HBP (S.D.N.Y. Mar. 26, 2010), Dkt. 1023-6 ("Even if a statement turns out to be false or misleading, it is not fraudulent or deceptive if the defendant had a good faith belief in the truth or accuracy of the statement at the time he made the statement."); *see also Omnicare*, 575 U.S. at 186 (holding allegations that a sincerely held belief turned out to be wrong do not establish securities fraud). At minimum, Defendant requests that the Court adopt language similar to that given by the court in *JDS* or *Vivendi*.

**Tentative Instruction Re: Reliance**

__Defendant's Proposed Modifications:__

A plaintiff must prove by a preponderance of the evidence reliance on the alleged material misrepresentations and/or ~~manipulative or deceptive~~ __fraudulent__ acts, and that the plaintiff was justified in doing so.  A plaintiff may not intentionally close his or her eyes and refuse to investigate the circumstances or disregard known or obvious risks.

A plaintiff does not have to prove that he, she, or other members of the Class individually relied on the alleged misrepresentations and/or ~~manipulative or deceptive~~ __fraudulent__ acts in deciding to sell the securities in question if they prove by a preponderance of the evidence the requirements for invoking a presumption that they and the class relied on the integrity of the market price, otherwise known as the "fraud-on-the-market" presumption.

To invoke the fraud-on-the-market presumption, a plaintiff must prove by a preponderance of the evidence that:

(1) there was an active, open market for Twitter securities during the relevant time period. An "active, open market" means that there were a large number of traders, a high level of activity, and frequent trades, such that the price of the security immediately reflects all publicly available information;

(2) investors reasonably relied on that market as an accurate reflection of the current market value of the securities;

(3) the alleged misrepresentations and/or ~~manipulative or deceptive~~ __fraudulent__ acts were publicly known and material, meaning that a reasonable investor would have regarded what was not disclosed to them as having significantly altered the total mix of information they took into account in deciding whether to sell the Twitter security; and

(4) Plaintiff traded the stock between when the alleged material misrepresentations were made and when the truth was revealed.

A defendant may rebut the presumption that the plaintiffs relied on the integrity of the market price when selling Twitter securities by proving by a preponderance of the evidence the plaintiffs did not actually rely on the integrity of the market price when they sold Twitter securities.  In that

1  event, the plaintiffs must then prove that they justifiably relied directly on the misrepresentation

2  and/or ~~manipulative or deceptive~~ <u>fraudulent</u> acts.  A defendant may also rebut the presumption

3  that the plaintiffs relied on the market price when selling Twitter securities by proving by a

4  preponderance of the evidence that the misrepresentation and/or ~~manipulative or deceptive~~

5  <u>fraudulent</u> acts did not affect the market price of Twitter's stock.

6       The fraud-on-the-market presumption of reliance is limited to the time between when the

7  misrepresentation was made or when the ~~manipulative or deceptive~~ <u>fraudulent</u> acts occurred, and

8  when the truth was revealed.

9

10  <u>**Argument In Support Of Defendant's Proposed Modifications:**</u>

11       At the threshold, Defendant maintains his objections to any jury instructions regarding

12  scheme liability.  *See* Dkt. Nos. 342, 366, 399, 406, 429, 446, 448, 453, 503.

13       To the extent the Court will instruct the jury on scheme, for the reasons stated above,

14  Defendant objects to the inclusion of "manipulative" and respectfully requests that the Court adopt

15  the language "fraudulent acts" for the acts alleged to be part of the scheme.

16

17

18

19

20

21

22

23

24

25

26

27

28

**Tentative Instruction Re: Securities—Causation**

**Defendant's Proposed Modifications:**

The plaintiffs must prove by a preponderance of the evidence that the alleged manipulative or deceptive acts or material misrepresentations, as alleged in their Rule 10b-5 claims, were the **proximate** cause of their economic injury.

To establish economic injury or loss, the plaintiffs must prove that the alleged ~~manipulative or~~ material ~~deceptive~~ **fraudulent** acts or a misrepresentation artificially deflated the price of Twitter's securities. ~~To establish causation, the plaintiffs must prove that the alleged manipulative or deceptive acts or a misrepresentation played a substantial part in causing the injury or loss the plaintiffs suffered.~~

**A material misrepresentation or deceptive act is a proximate cause of a plaintiff's loss if it caused Twitter's stock price to be lower than it would be if the statement had reflected the truth, not what might have happened had the defendant remained silent. A plaintiff needs to isolate the extent to which a decline in stock price is due to the alleged material misrepresentation or fraudulent act from other factors or intervening events. In other words, a plaintiff must separate any stock-price reaction to the alleged materially false information from the market's reaction to other information affecting Twitter's securities prices.**

The plaintiffs need not prove that the alleged ~~manipulative or deceptive~~ **fraudulent** acts or a misrepresentation was the sole cause of the economic injuries, **but must provide evidence sufficient for you to attribute some rough proportion of losses to the allegedly misrepresented information or fraudulent act, as opposed to other factors for which a plaintiff cannot recover losses.**

**Argument In Support Of Defendant's Proposed Modifications:**

At the threshold, Defendant maintains his objections to any jury instructions regarding scheme liability. *See* Dkt. Nos. 342, 366, 399, 406, 429, 446, 448, 453, 503.

Defendant objects to the Court's Tentative Instruction and respectfully requests that the Court make the above, limited modifications to the Court's Tentative Instruction. Defendant's

1  modifications tailor the instruction to the claims at issue in this trial and provide a more accurate

2  statement of law.

3       *First*, Defendant's proposed modification adds the requirement that the alleged material

4  misrepresentation or deceptive act be the "proximate cause" of Plaintiffs' loss, not just a cause.  *See*

5  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342–48 (2005) (holding that law requires "that a

6  plaintiff prove that the defendant's misrepresentation (or other fraudulent conduct) proximately

7  caused the plaintiff's economic loss"); *Nuveen*, 730 F.3d at 1118 ("The loss causation element,

8  however, requires that [the plaintiff] also show 'proximate' or 'legal' cause.").

9       *Second*, Defendant's proposed instruction properly informs the jury that the amount of

10  deflation caused by a false statement is the difference between the stock price after the false

11  statement and what it would have been had the statement reflected the truth, not what might have

12  happened had the defendant remained silent.  This is an accurate statement of law.  *See In re Vivendi,*

13  *S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016) ("[T]he proper question for purposes of our inquiry

14  into price impact is not what might have happened had a company remained silent, but what would

15  have happened if it had spoken *truthfully*." (emphasis in original)).  This instruction is particularly

16  important in a sellers' class action, given Plaintiffs' position that they need not show a corrective

17  disclosure to establish causation.[1]  To prove loss causation, a plaintiff must do more than point to a

18  stock drop after an alleged misstatement, it must show some causal chain connecting the alleged

19  fraud and reaction.  Absent a corrective disclosure, the *Vivendi* but-for analysis is required.  Indeed,

20  the principal case on which Plaintiffs rely in support of their argument that no corrective disclosure

21  is required in a sellers' action, *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, expressly acknowledges

22  that to establish loss causation absent a corrective disclosure, a seller must show that "had the market

23  been fully informed of the" truth, "there would have been heightened market confidence that" the

24  merger would have completed and that stock "price would have more closely approached the Merger

25  price during the class period."  663 F. Supp. 3d 334, 376 (S.D.N.Y. 2023).  The Court should apply

_____

27  [1]  Defendant disagrees and objects to the Court's failure to include a corrective disclosure instruction
28  for the reasons set forth in his Memorandum In Support of His Disputed Jury Instructions.  *See* Dkt.
   No. 366 at 38-40.

1   the same rule here and instruct the jury accordingly.  To do otherwise would write-out 10b-5's

2   "proximate cause" requirement and impermissibly "render[] the concept of loss causation

3   meaningless by collapsing it into transaction causation" in violation of Ninth Circuit law.  *Nuveen*,

4   730 F.3d at 1121.  The proposed instruction is a correct statement of the law, tailored to the theories

5   of this case, and amply supported by the evidence; failure to give it would be error.  *Stewart*, 934

6   F.2d at 1042.

7          The rule correctly states securities law and protects vital First Amendment rights and

8   interests.  A person cannot be assessed civil liability and damages for the act of speaking, but only

9   for making materially untrue statements.  Permitting a jury to award damages based on a comparison

10  of stock price to silence, as opposed to a true statement, demands that the speaker be penalized for

11  making a statement at all and improperly chills market participants from making true statements to

12  inform shareholders of relevant information that may impact stock price.

13         *Third*, Defendant requests that the Court instruct the jury that Plaintiffs "must demonstrate

14  that an economic loss was caused by the defendant's misrepresentations, rather than some

15  intervening event."  *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016).  This is a correct

16  statement of well-established Ninth Circuit law.  To omit it would render the instruction incomplete

17  and an inaccurate statement of Plaintiffs' burden to establish this element.

18         *Fourth*, the Court should instruct the jury, consistent with well-settled law, that Plaintiffs

19  must separate the impact of the allegedly fraudulent statement from other non-fraud information.

20  *Nuveen*, 730 F.3d at 1123 ("[E]vidence that certain misrepresented risks are responsible for a loss

21  must reasonably distinguish the impact of those risks from other economic factors."); *In re REMEC*

22  *Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1273–74 (S.D. Cal. 2010) (failure "to separate the loss caused

23  by the disclosure of corrective information (new, negative, company-specific, revealing a prior

24  misrepresentation or omission) from loss caused by the disclosure of other company-specific

25  information" mandated exclusion of loss causation expert).  Such an instruction is not only an

26  accurate statement of the law—such that its omission would render the instruction incomplete and

27  incorrect—but critical here since the record established that the macroeconomic environment caused

28  a broad market downturn impacting other securities making it all the more important that the jury

DEFENDANT'S EXCEPTIONS TO THE COURT'S TENTATIVE JURY INSTRUCTIONS

1   award only losses attributable to the alleged fraud itself.  Defendant is entitled to this instruction

2   under the circumstances.  *Stewart*, 934 F.2d at 1042.

3        *Fifth,* for the reasons discussed above, *supra* p. 4, Defendant objects to the inclusion of the

4   term "manipulative" on the grounds that Plaintiffs have not brought a price manipulation claim.

5   Including the term manipulative would instruct the jury to find Defendant liable for acts not at issue

6   in this case and would be error.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S EXCEPTIONS TO THE COURT'S TENTATIVE JURY INSTRUCTIONS

**Tentative Instruction Re: Protected Litigation Conduct**

**Defendant's Proposed Modifications:**

The Constitution ensures the right of all persons to bring lawsuits to vindicate their rights. In connection with the constitutional right to petition and protection of the right to access the courts, the law protects conduct that is incidental or sufficiently related to attempts to vindicate rights in court.

You have heard testimony relating to litigation between Twitter and the defendant in Delaware. **In particular, you have heard evidence about the letters sent by Mr. Musk's counsel, Mr. Musk's July 8 termination of the Merger Agreement, and ensuing litigation.** Such petitioning conduct in litigation is not illegal, and you may not base liability on this conduct. ~~When evaluating the plaintiffs' claim that the defendant engaged in a scheme through manipulative or deceptive acts and/or misrepresentations, you may only premise liability based on the entire course of the defendant's conduct.~~ While petitioning conduct may be relevant in connection with issues you must decide, the fact of the petitioning itself cannot be considered by you in determining liability.


**Argument In Support Of Defendant's Proposed Modifications:**

Defendant objects to the Court's Tentative Instruction and respectfully requests that the Court adopt his proposed modifications to the Tentative Instruction regarding protected litigation conduct.

Defendant requests that the Court explain to the jury, who will not be familiar with the concept and contours of "petitioning conduct in litigation," what facts and evidence this instruction encompasses. It is well-settled that this doctrine encompasses both litigation conduct itself and pre-suit letters. As this Court explained at motion to dismiss stage, "Courts have previously held the following to be sufficiently related to petitioning activity: pre-suit demand letters; discovery communications; the refusal to enter into settlement negotiations." Dkt. No. 48 at 38 (citations omitted); *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 931–32 (9th Cir. 2006) ("In determining whether the burdened conduct falls under the protection of the Petition Clause, we must give

adequate 'breathing space' to the right of petition."); *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1082 (C.D. Cal. 2010) ("[I]n connection with the First Amendment's Petition Clause and protection of the right to access the courts, the Ninth Circuit recognizes a breathing space principle which extends immunity under the *Noerr-Pennington* doctrine to conduct which is incidental to petitioning activities, even if it is not itself petitioning activity."). In *EcoDisc Tech*, for example, the "communications at issue" "asserted DVDFLLC's rights under the License Agreement," *id.* and warned licensees that manufacturing "non-compliant DVD products could lead to **termination** of the" contract, *id.* at 1079 (emphasis added). The court concluded that "[t]his conduct can be accurately characterized as sufficiently related to litigation to fall within the scope of the *Noerr-Pennington* doctrine." *Id.* at 1082. So too here: the July 8 Letter (and all of the correspondence leading to it) asserted Mr. Musk's legal rights and articulated the consequences of Twitter's purported breaches in advance of litigation. It, along with the all of the legal correspondence with Twitter, is incidental to petitioning activities and protected conduct. *See Id.* at 1082. At minimum, the Court must explain the "breathing space" principle to the jury, as it is an accurate statement of the law with a foundation in evidence. *Stewart*, 934 F.2d at 1042.

Defendant maintains his argument that the *Noerr-Pennington* doctrine requires the Court to exclude protected litigation conduct as even a partial basis for liability. *See* Dkt. Nos. 342, 366, 399, 409, 429, 446, 448, 453, 503. Should the Court continue to permit the jury to base liability in part on petitioning conduct, Defendant requests that the Court omit the following sentence, which is unduly confusing: "When evaluating the plaintiffs' claim that the defendant engaged in a scheme through manipulative or deceptive acts and/or misrepresentations, you may only premise liability based on the entire course of the defendant's conduct." This sentence is entirely unnecessary; the rest of the instruction appropriately conveys to the jury what they can and cannot consider even under the Court's interpretation of *Noerr-Pennington*. If the Court wants to include the sentence, Defendant respectfully requests that the Court clarify the language slightly as follows: "When evaluating the plaintiffs' claim that the defendant engaged in a **fraudulent** scheme ~~through manipulative or deceptive acts and/or misrepresentations~~, you may only ~~premise~~ **find** liability based on the entire course of the defendant's conduct.

**Tentative Instruction Re: Damages**

**<u>Defendant's Proposed Modifications:</u>**

If you find for the plaintiffs on their Rule 10b-5 claim or claims, then you must consider and decide the amount of money damages, if any, to be awarded to the plaintiffs and the Class. You may award only actual damages in an amount that will reasonably and fairly compensate the plaintiffs and the Class for the economic losses they and the Class sustained.

**<u>Just because I am instructing you on how to measure damages does not mean that I have any opinion on whether or not the defendant should be found liable on the 10b-5 claim. That is for you to decide on the evidence presented and the rules of law I have given to you. I am instructing you on damages only so that you will have guidance should you determine that the plaintiff has proven an entitlement to recovery.</u>**

Actual damages are measured by the amount of deflation caused by a misrepresentation or ~~manipulative or deceptive~~ **fraudulent** acts on which you based your finding of 10b-5 liability. In other words, actual damages are measured by the difference between the price at which a stock sold and the price at which the stock would have sold had the statement ~~or manipulative~~ or **<u>alleged</u>** ~~deceptive~~ **fraudulent** acts reflected the true state of affairs. Actual damages are limited to losses caused by the alleged material misrepresentation ~~or manipulative~~ or ~~deceptive~~ **fraudulent** act and do not include losses caused by other events. **<u>Plaintiffs bear the burden of separating the alleged material misrepresentations or deceptive acts from any other factors, such as market and industry effects, that may have affected the price of Twitter securities.</u>**

You will be asked to determine the amount, if any, by which the prices for Twitter common stock and put options were artificially affected by any material misrepresentation or ~~manipulative or deceptive~~ **fraudulent** acts you may find for each day during the Class Period. You will also be asked to determine the appropriate level of implied volatility which should be used to calculate the effect of any material misrepresentation or ~~manipulative or deceptive~~ **fraudulent** acts you may find on Twitter options.

Your award must be based on evidence and not upon speculation, guesswork, or conjecture. The plaintiffs have the burden of proving damages by a preponderance of the evidence.

**<u>Argument In Support Of Defendant's Proposed Modifications:</u>**

At the threshold, Defendant maintains his objections to any jury instructions regarding scheme liability. *See* Dkt. Nos. 342, 366, 399, 406, 429, 446, 448, 453, 503.

Additionally, Defendant objects to the Court's Tentative Instruction and respectfully requests that the Court adopt his proposed modifications to the Court's tentative instruction regarding Damages.

*First,* Defendant requests that the Court inform the jury that the mere fact that it is receiving a damages instruction should not suggest that the Court believes that the Defendant should be found liable. There is a risk that instructing the jury on damages assumes that it should and will find liability, which is highly prejudicial to Defendant. This is an accurate and uncontroversial statement of the law, and it should be given.

*Second,* Defendant's proposed modification makes clear that "Plaintiffs bear the burden of separating out any share price decline caused by factors other than the alleged misrepresentations," which is consistent with both caselaw and recent securities fraud class action jury instructions in this Circuit and other courts. Ex. 1, Closing Jury Instructions at 17, Instruction No. 13, *In re Tesla Inc. Sec. Litig.*, 3:18-cv-4865-EMC (N.D. Cal. Feb. 1, 2023), Dkt. 655 ("Plaintiff also has the burden of separating out the price decline, if any, caused by factors, if any, other than the alleged misrepresentation."); Ex. 4, Final Jury Instructions at 37, Court's Instruction No. 33, *Hsingching Hsu v. Puma Biotechnology, Inc., et al.*, 8:15-cv-00865-DOC-SHK (C.D. Cal. Jan. 19, 2019), Dkt. No. 700 ("Plaintiffs also bear the burden of separating out the share price decline, if any, caused by factors other than the alleged misrepresentations or omissions."); *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014–15 (C.D. Cal. 2003) ("A proper measure of damages in the securities context thus requires elimination of that portion of the price decline or price difference which is unrelated to the alleged wrong."). While the Tentative Instruction properly informs the jury that "actual damages … do not include losses caused by other events," it neglects to inform the jury how it must separate out any "losses caused by other events." It is thus incomplete and inaccurate. The minor modification provides further clarification to the jury on how it must conduct that analysis in its deliberation so that it can render a correct and just damages verdict.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Third,* for the reasons discussed above, *supra* p. 4, Defendant objects to the inclusion of the term "manipulative" on the grounds that Plaintiffs have not brought a price manipulation claim. Including the term manipulative would instruct the jury to find Mr. Musk liable for acts not at issue in this case and would be error.

**Defendant's Requested Limiting Instruction Re: Breach of Contract**

**Defendant's Proposed Instruction:**

Plaintiffs have suggested that Mr. Musk breached certain contractual obligations. You are instructed that a breach of contract does not constitute a device, scheme, or artifice to defraud.

**Argument In Support Of Defendant's Requested Limiting Instruction:**

Defendant maintains his objections to any scheme instructions at all. *See* Dkt. Nos. 342, 366, 399, 409, 429, 446, 448, 453, 503. To the extent the Court gives any instruction on scheme liability, Defendant respectfully requests that the Court give the above limiting instruction regarding scheme liability, which is an accurate statement of law and necessary given the evidence and testimony introduced in this case, which sets out Ninth Circuit law that breach of contract does not constitute securities fraud. *See Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007) (affirming dismissal of 10b–5(c) claim) ("At most, the claim alleges a breach of contract. Such a breach, however, does not constitute federal securities fraud under § 10(b)." (citing *Gurary v. Winehouse*, 190 F.3d 37, 44 (2d Cir. 1999) ("The failure to carry out a promise made in connection with a securities transaction is normally a breach of contract."))); *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 692 (9th Cir. 2011) ("This principle that contract breach is not a sufficient predicate for securities fraud has been followed both by our circuit in *Foster* and by courts of other circuits." (citing cases)). Such a limiting instruction is particularly important in this case, in which Plaintiffs essentially seek to convert an alleged breach of contract and ensuing litigation related to that contract into a scheme to defraud and have introduced evidence relating to various claimed breaches of the Merger Agreement and related non-disclosure agreement that do not provide any basis for securities fraud liability. The Court must instruct the jury that this evidence may not be considered as giving rise to a claim for securities fraud under Rule 10b-5. *Stewart*, 934 F.2d at 1042 ("A defendant is entitled to an instruction concerning his theory of the case if it is supported by law and has some foundation in the evidence.").

**Defendant's Requested Limiting Instruction Re: Unpled Statements**

**Defendant's Requested Limiting Instruction:**

You have heard evidence about many statements by Mr. Musk. You are instructed that statements not alleged to be materially false or misleading may not be a basis for liability.

The plaintiffs have alleged three statements to be materially false or misleading:

(1) A May 13, 2022 Tweet, "Twitter deal temporarily on hold pending details supporting calculation that spam/fake accounts do indeed represent less than 5% of users."

(2) A May 16, 2022 statement, "I think it's some number that is probably at least four or five times that number. I'd say at – if you did sort of the – the lowest estimate would be probably 20 percent. And this – and this is – a bunch of quite smart outside firms have done analysis of Twitter and looked at the – the sort of daily – daily users, and their conclusion is also about – it's about 20 percent."

(3) A May 17, 2022 Tweet, "20% fake/spam accounts, while 4 times what Twitter claims, could be *much* higher. My offer was based on Twitter's SEC filings being accurate. Yesterday, Twitter's CEO publicly refused to show proof of <5%. The deal cannot move forward until it does."

Plaintiffs have not alleged any statements give rise to liability beyond these three statements.

**Argument In Support Of Defendant's Proposed Instruction:**

As the Court's instructions recognize, the jury has heard evidence of many other statements by Mr. Musk that are not alleged to be false or misleading or have been dismissed for that reason. The Court should instruct the jury that these statements may not be a basis for liability at all.

Indeed, during opening statements, Plaintiffs argued that a series of tweets—three of which were not mentioned in the First Amended Complaint at all—were "deceptive and dishonest."  Tr. 218-19.  During Mr. Musk's testimony, Plaintiffs admitted into evidence and questioned Mr. Musk about May 15, 2022 tweets, Tr. Ex. 118, that are not mentioned in the First Amended Complaint, let alone pleaded as a false and misleading statement or deceptive act.  Under Federal Rule of Civil Procedure 9(b), Plaintiffs were required to articulate exactly what they were alleging was

1  "manipulative or deceptive."  Plaintiffs cannot now present a case to the jury relying on allegations

2  that statements never referenced at all were false, misleading, or deceptive.

3      Plaintiffs seek to premise liability on dismissed statements—specifically, the July 8

4  termination letter.  Plaintiffs also questioned witnesses about whether tweets that were dismissed by

5  the Court are "false."  It is beyond dispute that the statements the Court rejected in the Motion to

6  Dismiss Order were dismissed as independently false or misleading statements.  *See* Tr. of Feb. 17,

7  2026 Proceedings at 66:1-2 ("I said the other statements are out and in terms of false statements,

8  these three are in.").  Moreover, statements that are not alleged to be materially false or misleading

9  cannot give rise to liability under the securities laws.  *See, e.g.*, *Lorenzo v. SEC*, 587 U.S. 71, 78

10  (2019) ("[D]issemination of *false or misleading statements* with intent to defraud can fall within the

11  scope of subsections (a) and (c) of Rule 10b–5[.]" (emphasis added)); Tr. of Feb. 17, 2026

12  Proceedings at 74:19-25 (the Court stating regarding *PayPal*, "I think I said that the failure of

13  proving that the statement is false thereby terminates any liability that you would have under 10b–

14  5").

15      Defendant repeatedly requested limiting instructions when Plaintiffs argued that unpled or

16  dismissed statements were independently false or misleading, but the Court did not provide those

17  instructions.  That prejudice cannot be cured.  Nonetheless, Defendant requests that the Court

18  instruct the jury at this point that such statements may not be considered as false or misleading and

19  may not be a basis for liability.  It would be error not to give it.  *E.g.*, *Merrick v. Paul Revere Life*

20  *Ins. Co.*, 500 F.3d 1007, 1017 (9th Cir. 2007) ("When evidence is admissible for a limited purpose,

21  the opponent is entitled to a limiting instruction admonishing the jury not to use the evidence for a

22  forbidden purpose."); *Stewart*, 934 F.2d at 1042.

23

24

25

26

27

28

1

**Defendant's Requested Limiting Instruction Re: No Liability For Pre-Class Period**

2

**Purchases Of Twitter Stock**

3

**Defendant's Requested Limiting Instruction:**

4

You have heard testimony about Mr. Musk's purchases of Twitter stock on the open market

5

between January and April 2022. Mr. Musk is not alleged to have committed any wrongdoing based

6

on his transactions on the open market and Plaintiffs' claim in this case is limited to the time period

7

from May 13 to October 4, 2022.

8

9

**Argument In Support Of Defendant's Proposed Instruction:**

10

The Court has already acknowledged in its motion to dismiss order (ECF No. 48 at fn. 1)

11

that Mr. Musk's alleged "secret" purchases of Twitter stock are not part of Plaintiffs' claim.  At the

12

pre-trial conference, the Court addressed Defendant's Motion *in Limine* No. 1 regarding this issue.

13

At the hearing, defense counsel expressed concern about "a line of questioning that suggests that

14

he's doing something wrong," to which the Court ruled clearly: "They can't do that. They can't do

15

that. Lawyers aren't going to do that."  Tr. of Feb. 17, 2026 Proceedings at 55:8-15.  By questioning

16

Mr. Musk about whether he made SEC disclosures about his purchases and about whether his failure

17

to do so was "an act of transparency," and then asking Mr. Musk about whether he saved himself

18

money and kept more money in his pocket by not disclosing the purchases, Plaintiffs' counsel

19

conveyed the impression that Mr. Musk did something wrong.  Defendant requested a limiting

20

instruction orally, as well as twice in writing, but the Court has not yet given such an instruction.

21

While that prejudice cannot be cured, Defendant requests that the Court give this as part of its final

22

instructions.  The failure to give it would be error.  *Merrick*, 500 F.3d at 1017 (vacating and

23

remanding for failure to give requested limiting instruction); *Stewart*, 934 F.2d at 1042.

24

25

26

*[Signature blocks on following page]*

27

28

1

2    DATED:  March 15, 2026                QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
3

4
                                   By  _____*Ellyde R. Thompson*_____
5                                        Alex Spiro
                                         Michael T. Lifrak
6                                        Stephen A. Broome
                                         Ellyde R. Thompson
7                                        Jesse A. Bernstein
                                         Alex Bergjans
8

9                                        *Attorneys for Defendant Elon Musk*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that the foregoing document was served on all counsel of record

3

electronically or by another manner authorized under FED. R. CIV. P. 5(b) on Sunday, March 15,

4

2026.

5

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

6

7

8

By /s/ Alex Bergjans
    Alex Spiro

9

    Michael T. Lifrak
    Stephen A. Broome

10

    Ellyde R. Thompson

11

    Jesse A. Bernstein
    Alex Bergjans

12

    *Attorneys for Defendant Elon Musk*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ATTESTATION

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories herein.

By _/s/ Alex Bergjans_
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*