**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
jcotchett@cpmlegal.com
Mark C. Molumphy (SBN 168009)
mmolumphy@cpmlegal.com
Tyson C. Redenbarger (SBN 294424)
tredenbarger@cpmlegal.com
Elle D. Lewis (SBN 238329)
elewis@cpmlegal.com
Gia Jung (SBN 340160)
gjung@cpmlegal.com
Caroline A. Yuen (SBN 354388)
cyuen@cpmlegal.com
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
fbottini@bottinilaw.com
Aaron P. Arnzen (SBN 218272)
aarnzen@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT MUSK'S MOTION TO PRECLUDE ARGUMENTS IN CLOSING** |

Defendant Elon Musk submits a mixed bag of *in limine* and mistrial motions, repackaged as a motion to preclude certain arguments during closing. ECF 517. Briefly put, Musk seeks to preclude Plaintiffs from making arguments based on reasonable inferences drawn from admitted evidence. He also seeks to re-litigate issues that this Court has repeatedly decided. His late-filed motion should be denied for the reasons set forth below.

### Musk's Reasons for Capitulating in the Delaware Litigation

Plaintiffs will abide by their decision not to argue that Musk capitulated in the Delaware litigation "because he didn't have a meritorious defense." Plaintiffs may make arguments, however, that he capitulated for reasons that are patently absurd, *i.e.*, that the Delaware Court of Chancery was biased against him because of the judge's *later* decisions in another case.

### Musk's Data Scientists and Their Conclusions

Plaintiffs will follow the Court's orders regarding evidence surrounding Musk's data scientists. To be clear though, nothing should preclude Plaintiffs from arguing that the only thing Musk (at least purportedly) had in hand from data scientists prior to May 23, 2022 was a highly suspect blog post from SparkToro, and that Musk did not mention SparkToro – or any other analyses - in his interrogatory responses in the Delaware Action. Tr. Ex. 218. Plaintiffs should also be permitted to make arguments based on Musk's SEC testimony in July 2022; specifically, when asked whether "[t]hese are numbers you're just kind of throwing out there as we have no idea what the number is? You have no particular basis to believe any of those numbers at the time you're saying that," Musk did not reference any specific analysis and instead responded it "is simply unknowable based on the lack of information provided to us." Tr. 799:24 – 800:25.

### Musk's Secret Purchases of Twitter Stock in 2022

Plaintiffs will argue that Musk's claim that he posted tweets during the class period to further his benevolent interest in transparency are undermined by the fact that he kept his early open-market purchases of Twitter stock secret. In other words, the secrecy of those purchases puts the lie to his later claim that he tweeted to disparage Twitter simply because he believes in

"truth and transparency." Tr. 665:17-21. The early purchases are also highly relevant because they show (1) Musk knew that his statements and actions were material to the market and had a direct impact on Twitter's stock price – the day Musk first announced his 9.1% stake in Twitter, the stock increased 27% (Tr. 676:18-20); and (2) he chose not to disclose his purchases earlier because it allowed him to buy at a lower price (*id.*). On the other hand, and consistent with this Court's *in limine* ruling, Plaintiffs do not intend to argue that Musk's purchases of Twitter stock, and his failure to file SEC forms on time, violated the law.

**Plaintiffs' Scheme Liability Allegations**

Musk's present motion reiterates his prior position on scheme. That position is inconsistent with the law and contrary to this Court's repeated rulings here. Plaintiffs should be permitted to make arguments establishing the full scope of Musk's scheme.

**Noerr-Pennington**

Plaintiffs will follow the Court's written order finding that where "petitioning activity is but a part of a larger overall scheme to restrain trade, there is no overall immunity." ECF 454 (quoting *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1263 (9th Cir. 1982)).

**Musk's Breach of the Merger Agreement**

Musk's breaches of the merger agreement (e.g., he repeatedly violated the agreement's non-disparagement clause) are relevant because if he was in breach, he could not claim that Twitter's failure to provide him with information was a valid basis to terminate the deal. Tr. Ex. 65, Section 8.1(d)(i). That said, Plaintiffs certainly do not intend to argue that Musk should be held liable for securities fraud because he violated the merger agreement.

**Musk's Missing Text Messages**

Musk admitted that he had a substantial gap in his text messages during the key period of this case, but claimed it was attributable to the "tempo" of his communications. Plaintiffs should be permitted to argue all reasonable inferences based on the evidence that the text messages

retrieved from his phone and produced by Musk here (and in the Delaware Action) are missing text messages from May 16 – 31, 2022.  Cf., *United States v. Molina*, 934 F.2d 1440, 1445 ("[T]he prosecution must have reasonable latitude to fashion closing arguments.  Inherent in this latitude is the freedom to argue reasonable inferences based on the evidence.") (internal citations omitted).

**Privacy Laws and Protocols**

Plaintiffs should be permitted to argue that privacy laws precluded Twitter from providing private data to Musk unless and until he demonstrated he would protect it – because that constraint is manifest in the law and the record evidence here.  The European Union's General Data Protection Regulation ("GDPR") provides that those who possess and process personal data must comply with several principles, including ensuring that proper security protocols are in place, that a valid legal basis exists to share or process the information, that data minimization is implemented, and that processors are transparent with accountholders about data usage.  *See* GDPR, Article 5: Principles Relating to Processing of Personal Data.

The evidence admitted at trial establishes that Twitter was protecting private information, as it was legally required to do under the GDPR and similar laws, when making decisions about sharing such information with Musk.  Indeed, correspondence from Martin Korman, Twitter's outside deal counsel, is entirely consistent with the law.  In a June 1, 2022 letter, for example, Mr. Korman requested that Musk and his team describe their protocols to protect private information so that Twitter could make sure he would treat information in a manner consistent with the law.  *See* Trial Exhibit 155, at 1 ("Twitter appreciates the statements in the May 31 Letter that Mr. Musk is willing to discuss protocols to ensure that Twitter is protected from damage or competitive harm and to avoid violating any privacy laws or Twitter's commitments to its users.").  Korman reasonably asked:

"2. What protocols will be put in place to protect the requested information:
   a. How the volume of information will be accessed and shared.

    b. The specific individuals that will be given access to the information or the results of any analyses of the information, including their affiliation and the role they will be playing.

    c. The steps proposed to be taken to prevent disclosure to or use of the information from being used to compete against Twitter in the event that the merger were not to be consummated.

    d. The measures proposed to be implemented to prevent the requested information from being used to compete against Twitter in the event that the merger were not to be consummated.

    e. The steps to be taken to protect any privacy rights of third parties in the requested data and prevent violations of laws protecting private information.

    f. The steps to be taken to avoid modifying, disrupting, or disabling any features or functionality of the requested data in the process of running any analyses on such data.

    g. The measures proposed to ensure that the requested data is not used for any illegal, unauthorized, or otherwise improper purposes."

*Id.* at 2; *see also* Trial Exhibit 172 (June 16, 2022 letter from M. Korman to Musk team: "Over the last few weeks, we and our teams have been working diligently together to understand the scope and details of the 'firehose' data requests and the ***appropriate protocols for protecting the data***.").

    The evidence would have been even more voluminous but for the fact that Plaintiffs (unlike the defense) studiously avoided eliciting trial testimony from attorneys about Musk's and Twitter's legal rights and obligations. Mindful of this constraint, Plaintiffs did not ask attorney witnesses about their detailed understanding of the legal constraints surrounding the transfer of private user data to Musk or his team.

The law and the evidence thus indisputably show that (1) Twitter was constrained in what it could share with Musk unless and until he demonstrated that he was willing, able, and fully prepared to protect the data when he received it, and (2) Twitter would have violated the law if it did not ensure that Musk, or even parts of its own business, did not have protocols in place to ensure these legal requirements were met before providing him with private data. ***Twitter's privacy policy had no impact on Twitter's obligations to ensure that Musk and his team had these protections in place***.

Accordingly, Plaintiffs should not be precluded from arguing that Twitter had privacy concerns, which are replete in the evidence.

### Musk's Decision to Refrain Calling his Deal Attorneys as Witnesses

The Court allowed the parties to call as trial witnesses the attorneys involved in Musk's acquisition of Twitter. Musk chose not to do so. Plaintiffs have the burden of proof at trial, but Musk chose to put on a defense case and the jury is permitted to assess what the defense does and does not entail. Plaintiffs should therefore be permitted to comment on the witnesses that Musk chose to call and those (including his deal attorneys) he chose not to call. Cf., *Roditi v. New River Invs. Inc.*, 2024 U.S. Dist. LEXIS 134736, *27 ("[C]ommenting on the Defendants' failure to produce evidence or call an expert witness does not impermissibly shift the burden of proof to the Defendants. The Ninth Circuit has held that in criminal cases the prosecution may comment on the failure of the defense to call expert witnesses.") (collecting authority).

### Sympathy; Sending a Message

Plaintiffs will follow the law and argue reasonable inferences drawn from the evidence admitted at trial.

### Reference to Quinn Emanuel Attorneys

The admitted evidence and testimony at trial – including evidence presented by Musk – make clear that Quinn Emanuel was heavily involved in Musk's Twitter acquisition. Undeterred, Musk engaged the same firm to defend him in this case. Plaintiffs should be permitted during

closing to point to relevant aspects of Quinn Emanuel's involvement in the deal, but will not suggest that the same deal lawyers are present at counsel table during this trial.

Dated: March 16, 2026

Respectfully submitted,

**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
Tyson C. Redenbarger (SBN 294424)
Elle D. Lewis (SBN 238329)
Gia Jung (SBN 340160)
Caroline A. Yuen (SBN 354388)

*/s/ Mark C. Molumphy*
    Mark C. Molumphy

San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
Aaron P. Arnzen (SBN 218272)

*/s/ Francis A. Bottini Jr.*
    Francis A. Bottini Jr.

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Mark Molumphy, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of March, 2026, at Burlingame, California.

*/s/ Mark Molumphy*
Mark Molumphy