QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Ellyde R. Thompson (*pro hac vice*)
ellydethompson@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
jessebernstein@quinnemanuel.com
295 Fifth Ave., New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendant Elon Musk*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**DEFENDANT ELON MUSK'S EXCEPTIONS TO THE COURT'S JURY INSTRUCTIONS**<br><br>Judge: Hon. Charles R. Breyer |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ 1

Introduction ........ 2

Objections To The Final Instruction Re: Duty Of Jury ........ 3

Objections To The Final Instruction Re: Data Privacy ........ 4

Objections To The Final Instruction Re: Securities—Purpose and Selected Definitions ........ 5

Objections To The Final Instruction Re: Securities—Rule 10b-5 Claim ........ 6

Objections To The Final Instruction Re: Securities—Materiality ........ 8

Objections To The Final Instruction Re: Securities—Knowingly or Recklessly ........ 10

Objections To The Final Instruction Re: Other Acts Of Defendant ........ 12

Objections To The Final Instruction Re: Securities—Causation ........ 14

Objection To The Final Instruction Re: Protected Litigation Conduct ........ 17

Objection To The Final Instruction Re: Damages ........ 19

Objections To The Court's Refusal To Provide Limiting Instruction Re: Breach Of Contract ........ 20

Objections To The Court's Refusal To Provide Limiting Instruction Re: Unpled Statements ........ 21

Objections To The Court's Refusal To Provide Limiting Instruction Re: No Liability For Pre-Class Period Purchases Of Twitter Stock ........ 23

**Introduction**

Defendant respectfully submits these exceptions to the Court's Jury Instructions, Dkt. No. 24. In addition to the specific objections below, Defendant reasserts and incorporates by reference all prior objections and suggestions filed with the Court regarding jury instructions, including his proposed curative and limiting instructions that the Court declined to give. *See* Dkt. Nos. 359, 366, 462, 471, 474, 514; *see also* Fed. R. Evid. 105 ("If the court admits evidence that is admissible against a party or for a purpose — but not against another party or for another purpose — the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly.").

**Objections To The Final Instruction Re: Duty Of Jury**

Defendant objects to the Court's new instruction: "This case, as you know, has received publicity. It is a reasonable assumption that your verdict, whatever it may be, will also be publicized. You are cautioned, however, that you should not consider this fact in determining what your verdict should be. That verdict must be based solely on the evidence you have heard and on the law as I have stated it." It is unnecessary, confusing, and unduly suggestive. It should not be read to the jury.

The instruction exacerbates and compounds the problem it purports to solve by drawing attention to the fact that the case has been publicized and that the jury's verdict is likely to be publicized as well. By doing so, the Court is inviting the jury to consider the public response to and—given Mr. Musk's polarizing reputation—possible disapproval of the verdict when deliberating. The instruction places at the front of the jury's mind that the verdict and, by extension, the individual jurors may be the subject of public interest and attention. Such an instruction incentivizes jurors to reach a verdict based not on the evidence and law, but one in line with perceived community sentiment toward Mr. Musk. It has the opposite effect of what the Court purportedly intends. It is counterproductive, has no basis in the law, and should not be given.

**Objections To The Final Instruction Re: Data Privacy**

Defendant objects to the Court's Data Privacy Instruction on the grounds that the Instruction "However, there are protocols on how this information may be disseminated or disclosed" improperly suggests that Mr. Musk had a burden to establish proper protocols before obtaining access to the data he requested. This instruction appears to be based on GDPR Article 5(1)(f), but Article 5(2) makes clear that the "controller" i.e., Twitter "shall be responsible for, and be able to demonstrate compliance with" all data processing requirements. That means that it was Twitter's—not Mr. Musk's—responsibility to create protocols for the disclosure of any data under the GDPR. The instruction as written is an inaccurate and misleading statement of the law and the parties' respective obligations.

Defendant also objects to the instruction that "the fact that the law may have permitted Twitter to disclose private information to the defendant does not affect informational rights under the merger agreement" as unnecessary, confusing, and an incorrect statement of the parties' rights and obligations under the Agreement. The Merger Agreement provides, in the relevant part, that Twitter is only[1] permitted to withhold information "related to the consummation of the" merger if "in the reasonable judgment of the Company" its disclosure would "violate applicable Law." Ex. 65 at 6.4. The fact that the law permitted Twitter to share this information does, in fact, affect the informational rights under the agreement. If the law—as the Court agrees—does not preclude Twitter from sharing the information with Mr. Musk, Twitter cannot withhold the information on that basis of any risk of violating applicable law. The instruction thus erroneously misconstrues and misinterprets the Merger Agreement. It misstates the rights and obligations of the parties and is legally erroneous.

---

[1] The Merger Agreement also provides that Twitter is permitted to withhold information if it would "cause significant competitive harm" or "jeopardize any attorney-client or other legal privilege." Ex. 65 at 6.4. Neither implicates privacy concerns.

**Objections To The Final Instruction Re: Securities—Purpose and Selected Definitions**

Defendant maintains his objections to any jury instructions regarding scheme liability. *See* Dkt. Nos. 342, 366, 399, 406, 429, 446, 448, 453, 503.

Defendant objects to the instruction that "a statement may be misleading even if it is literally true if the context in which the statement was made caused the listener or reader to remain unaware of the actual state of affairs." This instruction relates to a price maintenance theory of securities fraud where a defendant's statement "confirms" what the market already believed to be the state of affairs thereby causing the audience to remain unaware of the truth. *E.g., FindWhat Inv. Grp. v. FindWhat.com,* 658 F.3d 1282, 1314 (11th Cir. 2011). But this is not a price maintenance case; Plaintiffs' loss causation expert admitted as much. Trial Tr. at 1882:16-1883:23. Accordingly, this aspect of the Instruction is not appropriately tailored to the theories at issue and should not be given.

**Objections To The Final Instruction Re: Securities—Rule 10b-5 Claim**

At the threshold, Defendant maintains his objections to any jury instructions regarding scheme liability. *See* Dkt. Nos. 342, 366, 399, 406, 429, 446, 448, 453, 503.

Next, Defendant objects to the Court's references to Rule 10b-5(c). At the Pretrial Conference, in response to Defendant's Motion *in Limine* No. 4 to exclude Plaintiffs' purported scheme claim altogether, the Court explained that Rule 10b-5 "has three bases for liability," including a scheme under Rule 10b-5(a) and misstatements under Rule 10b-5(b), in addition to Rule 10b-5(c), which the Court stated is "irrelevant." Tr. of Feb. 17, 2026 Proceedings at 64:23–65:4. The Court reached that conclusion in part by relying on paragraph 10 of Plaintiffs' First Amended Complaint, which refers to an alleged scheme, but makes no reference to anything under Rule 10b-5(c). The Court further explained that in this case, there are "***two*** bases for liability here," and that "one is false statements," and "the other is a scheme . . . to commit a fraudulent act." *Id.* at 33:1–10. Those two bases for liability that the Court articulated are Rule 10b-5(b), the alleged misstatements, and Rule 10b-5(a), an alleged "device, scheme, or artifice to defraud." While Defendant maintains its objections to the Court's holding that Rule 10b-5(a) is at issue here, the Court clearly articulated only ***two*** bases for liability, and the Court may not insert a third basis for liability after evidence has closed. Inserting that basis for liability into the jury instructions would be inaccurate, improper, and prejudicial.

Defendant also objects to the Court's instruction: "You have heard testimony regarding other statements or tweets made by the defendant. These statements must be treated differently under the context of plaintiffs' two claims. Under Rule 10b-5(b), you may only consider those separate statements in determining whether the three at-issue statements were false and misleading. Under Rule 10b-5(a) or (c), you may consider those separate statements in determining whether they were part of a larger scheme allegedly carried out by the defendant." The Court's formulation improperly instructs the jury that they could consider other statements to determine falsity, improperly invites the jury to determine falsity not based solely on whether the statements were true when made, but instead based on dozens of subsequent statements. That is both an incorrect statement of law and unduly confusing. *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012) (under

Rule 10b-5, a plaintiff must demonstrate "why the statements were false or misleading at the time they were made"); *Somerset Commc'ns Grp. v. Wall to Wall Advert., Inc*., 2015 WL 5007680, at *3 (W.D. Wash. Aug. 20, 2015) ("In order to be actionable under the Federal Securities Act, the Ninth Circuit has held that representation must be false 'when made.'" (quoting *In re VeriFon Sec. Litig.,* 11 F.3d 865, 871 (9th Cir. 1993))); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002) ("To be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events."). This instruction is erroneous and should not be given.

**Objections To The Final Instruction Re: Securities—Materiality**

At the threshold, Defendant maintains his objections to any jury instructions regarding scheme liability. *See* Dkt. Nos. 342, 366, 399, 406, 429, 446, 448, 453, 503.

Defendant objects to the Court's Instruction because it fails to instruct the jury that a statement may be untrue but not material. Other courts in this district have adopted this language for securities fraud class action jury instructions. *See* Ex. 1, Closing Jury Instructions at 10, Instruction No. 8, *In re Tesla Inc. Sec. Litig.*, 3:18-cv-4865-EMC (N.D. Cal. Feb. 1, 2023), Dkt. 655. Defendant also objects to the Court's failure to include his proposed language that, under the materiality analysis, a statement or subject matter's importance is not considered in a vacuum, but must be assessed in context with the reasonable investor's decision to buy or sell the security, and that the way the correction of the misstated fact would be viewed is part of this analysis. *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1259 (N.D. Cal. 2000) ("[T]here must be a substantial likelihood that the disclosure of the omitted fact [or correction of the misstated fact] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." (alteration in original) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976))). Defendant's proposed modifications also inform the jury of the "uncontroversial" proposition that "immaterial misrepresentations and omissions by definition do not affect stock prices in an efficient market." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 464 (2013) (alterations adopted).

Defendant's proposed language was appropriately tailored to the case and supported by the evidence. The Court's failure to give it is error. *Stewart v. Ragland*, 934 F.2d 1033, 1042 (9th Cir. 1991) ("A defendant is entitled to an instruction concerning his theory of the case if it is supported by law and has some foundation in the evidence."). Defendant intends to pursue the theory that the lack of price movement demonstrates that the alleged misstatements were not material. The theory is legally sound and supported by the evidence and should have been adopted. *Dang v. Cross*, 422 F.3d 800, 810–11 (9th Cir. 2005).

Defendant also objects to the Court's instruction because it does not inform the jury that a statement regarding a material fact may not be held false or misleading merely because subsequent

events prove it to have been erroneous. *See* 3B Kevin F. O'Malley, et al., Federal Jury Practice and Instructions- Civil §162:235 (6th ed. 2013); *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012) (under Rule 10b-5, a plaintiff must demonstrate "why the statements were false or misleading at the time they were made"); *Somerset Commc'ns Grp. v. Wall to Wall Advert., Inc.*, 2015 WL 5007680, at *3 (W.D. Wash. Aug. 20, 2015) ("In order to be actionable under the Federal Securities Act, the Ninth Circuit has held that representation must be false 'when made.'" (quoting *In re VeriFon Sec. Litig.*, 11 F.3d 865, 871 (9th Cir. 1993))); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002) ("To be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events."). Defendant's previously proposed language is legally correct and particularly important here, where Plaintiffs have introduced evidence of numerous statements that post-date the three alleged misrepresentations and have argued to the jury that those statements are false.

**Objections To The Final Instruction Re: Securities—Knowingly or Recklessly**

*First*, Defendant maintains his objection to the inclusion of any form of recklessness as satisfying the scienter requirements. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011) (reserving question whether recklessness suffices).

*Second*, Defendant objects to the use of "inferences" in the Tentative Instruction and requests that the Court remove such references to inferences because such a framing causes unnecessary confusion and could lead the jury to believe it need not find that Plaintiffs proved scienter by a preponderance of the evidence but may simply rely on "inferences." That framework is taken from the pleading stage, where a plaintiff just has to establish a strong inference of scienter to get to discovery. *See, e.g.*, *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 619 (9th Cir. 2017) ("As such, facts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not sufficient to establish a strong inference of deliberate recklessness." (alteration adopted and quotation omitted)). At trial, Plaintiffs need to establish this by a preponderance of the evidence—which is greater than the strong inference required at the pleading stage. The Supreme Court has clearly articulated this distinction: "A plaintiff alleging fraud in a § 10(b) action, we hold today, must plead facts rendering an inference of scienter *at least as likely as* any plausible opposing inference. At trial, she must then prove her case by a 'preponderance of the evidence.' Stated otherwise, she must demonstrate that it is *more likely* than not that the defendant acted with scienter." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 328–29 (2007) (emphasis in original). The Court should instead have adopted the standard it previously articulated: "Mere recklessness or a motive to commit fraud and opportunity to do so is not enough." Dkt. No. 48 at 29 (alteration adopted and quotation omitted).

*Finally*, Defendant objects to the omission in the Court's Instruction that, if the Defendant believed in the truth or accuracy of the statement at the time it was made but the statement later turns out to be false or misleading, that does not satisfy the requirement to prove scienter. This accurate statement of law is critical in this case, where Plaintiffs have made clear that they intend to use evidence from well after the statements were made to cast doubt on their accuracy. This requirement has been included in jury instructions in other securities class action trials in this District

and in other districts. *See* Ex. 2, Final Jury Instructions at 13, *In Re JDS Uniphase Corp. Securities Litig*., 4:02-cv-1486-CW (N.D. Cal. Nov. 19, 2007), Dkt. No. 1874 ("An honest or good faith belief on the part of an Individual Defendant that a statement is true is inconsistent with a finding that he acted with scienter in making that statement."); Ex. 3, Charge to the Jury at 29, Instruction No. 24, *In re Vivendi Universal, S.A. Securities Litig.*, 1:02-cv-05571-PAE-HBP (S.D.N.Y. Mar. 26, 2010), Dkt. 1023-6 ("Even if a statement turns out to be false or misleading, it is not fraudulent or deceptive if the defendant had a good faith belief in the truth or accuracy of the statement at the time he made the statement."); *see also Omnicare*, 575 U.S. at 186 (holding allegations that a sincerely held belief turned out to be wrong do not establish securities fraud).

Instead of giving the proper instruction that makes clear the temporal element of the scienter element, the Court simply inserted the following underlined language: "A defendant acts knowingly at the time he makes an untrue statement…" The language is confusing. It is unclear what, exactly, the Court is trying to convey and the use of "at the time" does not appear meaningfully different from the word it replaced, "when." Moreover, it does not inform the jury that the relevant inquiry is whether the defendant knew he was engaged in fraud or acted with deliberate reckless disregard for the truth at the time of the alleged misstatement or fraudulent act. Defendant objects to this language and the Court's failure to give his proposed instruction.

**Objections To The Final Instruction Re: Other Acts Of Defendant**

Defendant objects to the Court's instruction "Other Acts of the Defendant" on the grounds that it prejudicially suggests—by borrowing the Rule 404(b)'s "Other Crimes, Wrongs, and Acts" language—that Mr. Musk engaged in misconduct prior to the Class Period. It does not cure, but rather draws attention to the prejudicial inferences invoked by Plaintiffs concerning Mr. Musk's pre-Class Period conduct. And it is counterproductive and exacerbates the prejudicial impact of the Court's erroneous decision to permit the Plaintiffs to adduce evidence suggesting that Mr. Musk acted improperly by purchasing Twitter stock before the Class Period in the first place. The Court should not give it at all.

As Defendant made clear in his Motion *in Limine* No. 1 to Exclude Improper Character Evidence, Dkt. 339, Plaintiffs cannot, and have not, established any basis for admission of pre-Class Period "other acts" by Mr. Musk. *See* Fed. R. Evid. 404(b).

*First*, as to "intent, motive, or plan," Plaintiffs' case theory is that Musk's intent, motive, and plan to commit securities fraud did not arise until after he signed the Merger Agreement, and after Tesla stock price experienced declines that caused Musk to want to get out of the deal. Trial Tr. 211-212 ("After signing the merger agreement …. he started to second-guess the entire thing …. Tesla stock price was tanking …. His hunt for this excuse kicks off on May 6th."). Thus, according to Plaintiffs' own theory and the evidence in the trial record, events prior to April 25, 2022 (the date the Merger Agreement was signed, Tr. Ex. 65) cannot possibly be relevant to Musk's alleged intent, motive, or plan to commit fraud. *Duran v. City of Maywood*, 221 F.3d 1127, 1132-33 (9th Cir. 2000) (to be admissible, "other acts" evidence "must be introduced to prove a material issue in the case").

*Second*, as to knowledge, Mr. Musk's pre-Class Period stock purchases similarly have no probative value. Plaintiffs have argued that Musk's decision not to publicly announce his purchases in early 2022 demonstrate his knowledge that doing so could impact the price of Twitter stock. ECF No. 369 at 3. Whether that is a correct proposition or not, it does not logically follow that Mr. Musk therefore had knowledge that tweets or other public statements with no substantive connection to his stock purchases could or would move the market. That is because the conduct of not announcing

stock purchases, on the one hand, and the conduct of making tweets and statements about a merger deal and information requests thereunder, on the other hand, are far too dissimilar to allow for any inferences regarding Musk's knowledge of possible market impact. Evidence of such stock purchases therefore does not have any permissible Rule 404(b) use and does not prove any "material issue in the case." *Duran*, 221 F.3d at 1132-33; *United States v. Bibo-Rodriguez*, 922 F.2d 1398, 1402 (9th Cir. 1991) ("Similarity, to the extent that it bears on the relevance of the subsequent act, is necessary to indicate knowledge and intent.").

Federal Rule of Evidence 403 also bars the admissibility of Mr. Musk's pre-Class Period stock purchases and alleged failure to disclose the same. Plaintiffs' repeated and improper trial tactic of suggesting Mr. Musk was violating securities laws by not disclosing stock purchases—a tactic Defendant clearly foresaw and moved *in limine* to preclude—only underscores the unfairly prejudicial nature of such evidence.

For the foregoing reasons, the Court should not issue the above instruction and should instead issue the limiting and curative instruction that Defendant has requested. *See* Dkt. No. 471 at 5 (Musk's proposed limiting and curative instruction: "You have heard testimony about Mr. Musk's purchases of Twitter stock on the open market between January and April 2022. Mr. Musk is not alleged to have committed securities fraud based on his transactions on the open market and Plaintiffs' claim in this case is limited to the time period from May 13 to October 4, 2022."); Dkt. No. 514 at 35 (similar).

**Objections To The Final Instruction Re: Securities—Causation**

At the threshold, Defendant maintains his objections to any jury instructions regarding scheme liability. *See* Dkt. Nos. 342, 366, 399, 406, 429, 446, 448, 453, 503.

*First*, the Court's new language "Put more simply, proof of loss causation requires demonstrating that the subject of the alleged fraudulent acts or a misrepresentation was the cause of the actual loss suffered" is confusing, incorrect, and appears to be lacking in legal support. The Court's statement that "the subject of the alleged fraudulent acts…was the cause of the actual loss suffered" is not the law. The proper inquiry is whether the alleged fraud—i.e., the misstatement—not its subject caused investors to suffer loss. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342–48 (2005) (holding that law requires "that a plaintiff prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss"). To broaden the loss causation inquiry to allow a plaintiff to recover damages caused by the "subject" of the alleged fraud would allow a plaintiff to recover for truthful statements so long as they were about the same subject matter as the fraud. Take, for example, a company accused of lying in its financial disclosures about its revenue. Under the Court's formulation, a plaintiff could recover if any news about the company's revenue—whether true or not—impacted stock price because it is the same subject matter as the alleged fraud. That is obviously incorrect, but is the implication of the Court's imprecise and apparently novel explanation of loss causation.

*Second*, Defendant objects to the Court's Instruction because it does not information the jury that, as a matter of law, the alleged material misrepresentation or deceptive act be the "proximate cause" of Plaintiffs' loss, not just a cause. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342–48 (2005) (holding that law requires "that a plaintiff prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss"); *Nuveen* ,730 F.3d at 1118 ("The loss causation element, however, requires that [the plaintiff] also show 'proximate' or 'legal' cause.").

*Third*, Defendant objects to the Court's Instruction because it does not inform the jury that the amount of deflation caused by a false statement is the difference between the stock price after the false statement and what it would have been had the statement reflected the truth, not what might

have happened had the defendant remained silent. Defendant's previously proposed language is an accurate statement of law. *See In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016) ("[T]he proper question for purposes of our inquiry into price impact is not what might have happened had a company remained silent, but what would have happened if it had spoken *truthfully*." (emphasis in original)). The need to give Defendant's previously proposed instruction is particularly important in a sellers' class action, given Plaintiffs' position that they need not show a corrective disclosure to establish causation. As a result, the Court's failure to give it is all the more harmful and erroneous. *Stewart*, 934 F.2d at 1042.

To prove loss causation, a plaintiff must do more than point to a stock drop after an alleged misstatement and instead must show some causal chain connecting the alleged fraud and reaction. Absent a corrective disclosure, the *Vivendi* but-for analysis is required. Indeed, the principal case on which Plaintiffs rely in support of their argument that no corrective disclosure is required in a sellers' action, *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, expressly acknowledges that to establish loss causation absent a corrective disclosure, a seller must show that "had the market been fully informed of the" truth, "there would have been heightened market confidence that" the merger would have completed and that stock "price would have more closely approached the Merger price during the class period." 663 F. Supp. 3d 334, 376 (S.D.N.Y. 2023). The Court should have applied the same rule here and instructed the jury accordingly. Instead, the Court's instruction writes out 10b-5's "proximate cause" requirement and impermissibly "render[] the concept of loss causation meaningless by collapsing it into transaction causation" in violation of Ninth Circuit law. *Nuveen*, 730 F.3d at 1121

In addition, the Court's instructions erroneously states securities law and fails to protect vital First Amendment rights and interests. A person cannot be assessed civil liability and damages for the act of speaking, but only for making materially untrue statements. Permitting a jury to award damages based on a comparison of stock price to silence, as opposed to a true statement, demands that the speaker be penalized for making a statement at all and improperly chills market participants from making true statements to inform shareholders of relevant information that may impact stock price. The language in Defendant's previously proposed instruction is a correct statement of the

law, tailored to the theories of this case, and amply supported by the evidence; the Court's failure to give it is error. *Stewart*, 934 F.2d at 1042.

*Fourth*, Defendant objects to the Court's Instruction because it does not instruct the jury that Plaintiffs "must demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016). This is a correct statement of well-established Ninth Circuit law. Omitting it renders the instruction incomplete and an inaccurate statement of Plaintiffs' burden to establish this element.

*Fifth*, Defendant objects to the Court's Instruction because it does not inform the jury that, consistent with well-settled law, Plaintiffs must separate the impact of the allegedly fraudulent statement from other non-fraud information. *Nuveen*, 730 F.3d at 1123 ("[E]vidence that certain misrepresented risks are responsible for a loss must reasonably distinguish the impact of those risks from other economic factors."); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1273–74 (S.D. Cal. 2010) (failure "to separate the loss caused by the disclosure of corrective information (new, negative, company-specific, revealing a prior misrepresentation or omission) from loss caused by the disclosure of other company-specific information" mandated exclusion of loss causation expert). Such an instruction is not only an accurate statement of the law—such that its omission renders the instruction incomplete and incorrect—but critical here since the record established that the macroeconomic environment caused a broad market downturn impacting other securities making it all the more important that the jury award only losses attributable to the alleged fraud itself. Defendant is entitled to this instruction under the circumstances. *Stewart*, 934 F.2d at 1042.

*Finally*, Defendant disagrees and objects to the Court's failure to include a corrective disclosure instruction for the reasons set forth in his Memorandum In Support of His Disputed Jury Instructions. *See* Dkt. No. 366 at 38-40.

**Objection To The Final Instruction Re: Protected Litigation Conduct**

Defendant objects to the Court's instruction because, under the *Noerr-Pennington* doctrine, the Court should have exclude protected litigation conduct entirely. *See* Dkt. Nos. 342, 366, 399, 409, 429, 446, 448, 453, 503.

Moreover, Defendant objects to the Court's final instruction because it erroneously considers the July 8 termination letter to fall outside of *Noerr-Pennington* protection. It is well-settled that this doctrine encompasses both litigation conduct itself and pre-suit letters. As this Court explained at motion to dismiss stage, "Courts have previously held the following to be sufficiently related to petitioning activity: pre-suit demand letters; discovery communications; the refusal to enter into settlement negotiations." Dkt. No. 48 at 38 (citations omitted); *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 931–32 (9th Cir. 2006) ("In determining whether the burdened conduct falls under the protection of the Petition Clause, we must give adequate 'breathing space' to the right of petition."); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) ("Conduct incidental to a lawsuit, including a pre-suit demand letter, falls within the protection of the *Noerr–Pennington* doctrine"); *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1082 (C.D. Cal. 2010) ("[I]n connection with the First Amendment's Petition Clause and protection of the right to access the courts, the Ninth Circuit recognizes a breathing space principle which extends immunity under the *Noerr-Pennington* doctrine to conduct which is incidental to petitioning activities, even if it is not itself petitioning activity.").

In *EcoDisc Tech*, for example, the "communications at issue" "asserted DVDFLLC's rights under the License Agreement," *id.* and warned licensees that manufacturing "non-compliant DVD products could lead to ***termination*** of the" contract, *id.* at 1079 (emphasis added). The court concluded that "[t]his conduct can be accurately characterized as sufficiently related to litigation to fall within the scope of the *Noerr-Pennington* doctrine." *Id.* at 1082. So too here: the July 8 Letter (and all of the correspondence leading to it) asserted Mr. Musk's legal rights and articulated the consequences of Twitter's purported breaches in advance of litigation. It, along with all of the legal correspondence with Twitter, is incidental to petitioning activities and protected conduct. *See id.* at 1082.

There is no law whatsoever suggesting that whether pre-suit litigation letters are litigation conduct turns on which party rushes to the courthouse first, as the Court suggested for the first time at the charging conference. Indeed, such a rule would be illogical and bad public policy because it would disincentivize parties from resolving any disputes before litigation because only the party who initiated a lawsuit could be protected by *Noerr-Pennington*. Nor does the Court's distinction make any sense in this case because Mr. Musk did file counterclaims against Twitter in the Delaware Action based on the same facts and arguments outlined in his termination letter. That Mr. Musk did not file an action for declaratory judgment before Twitter filed its own lawsuit does not render his pre-litigation letters any less incidental to the right to petition. This new rule—supported by no authority beyond the Court's apparent attempt to distinguish *EcoDisc Tech*, which clearly supports Defendant's position—that only the party that initiates litigation can be protected by *Noerr-Pennington* for activities conducted before the lawsuit is contrary to the law and plainly erroneous. Indeed, the manner in which the Court addressed this issue during the charging conference strongly indicates that the Court did not wish to reach the correct legal conclusion, but rather improperly sought to ensure that Plaintiffs could rely on the July 8 letter.

Defendant also objects to the Court's inclusion of the following sentence, which is unduly confusing: "When evaluating the plaintiffs' claim that the defendant engaged in a scheme through manipulative or deceptive acts and/or misrepresentations, you may only premise liability based on the entire course of the defendant's conduct." This sentence is entirely unnecessary and does not accurately state the law. Protected litigation conduct is immune from liability, "either standing alone or as part of a broader scheme itself violative of" the relevant law. *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965). It may not be considered, even as part of a broader course of conduct.

**Objection To The Final Instruction Re: Damages**

At the threshold, Defendant maintains his objections to any jury instructions regarding scheme liability. *See* Dkt. Nos. 342, 366, 399, 406, 429, 446, 448, 453, 503.

*First*, Defendant objects to the Court's Instruction because it does not inform the jury that the mere fact that it is receiving an instruction on damages does not suggest that the Court believes that the Defendant should be found liable. There is a risk that instructing the jury on damages assumes that it should and will find liability, which is highly prejudicial to Defendant. This is an accurate and uncontroversial statement of the law, and it should be given.

*Second*, Defendant objects to the Court's omission of language making clear that "Plaintiffs bear the burden of separating out any share price decline caused by factors other than the alleged misrepresentations," which is consistent with both caselaw and recent securities fraud class action jury instructions in this Circuit and other courts. Ex. 1, Closing Jury Instructions at 17, Instruction No. 13, *In re Tesla Inc. Sec. Litig.*, 3:18-cv-4865-EMC (N.D. Cal. Feb. 1, 2023), Dkt. 655 ("Plaintiff also has the burden of separating out the price decline, if any, caused by factors, if any, other than the alleged misrepresentation."); Ex. 4, Final Jury Instructions at 37, Court's Instruction No. 33, *Hsingching Hsu v. Puma Biotechnology, Inc., et al.*, 8:15-cv-00865-DOC-SHK (C.D. Cal. Jan. 19, 2019), Dkt. No. 700 ("Plaintiffs also bear the burden of separating out the share price decline, if any, caused by factors other than the alleged misrepresentations or omissions."); *In re Imperial Credit Indus., Inc. Sec. Litig*., 252 F. Supp. 2d 1005, 1014–15 (C.D. Cal. 2003) ("A proper measure of damages in the securities context thus requires elimination of that portion of the price decline or price difference which is unrelated to the alleged wrong."). The Court's Instruction neglects to inform the jury how it must separate out any "losses caused by other events." It is thus incomplete and inaccurate. The minor modification provides further clarification to the jury on how it must conduct that analysis in its deliberation so that it can render a correct and just damages verdict.

**Objections To The Court's Refusal To Provide Limiting Instruction Re: Breach Of Contract**

Defendant maintains his objections to any scheme instructions at all. *See* Dkt. Nos. 342, 366, 399, 409, 429, 446, 448, 453, 503. But because the Court has included scheme liability in this trial, Defendant objects to the Court's refusal to give the following proposed limiting instruction:

> Plaintiffs have suggested that Mr. Musk breached certain contractual obligations. You are instructed that a breach of contract does not constitute a device, scheme, or artifice to defraud.

This is an accurate statement of law and necessary given the evidence and testimony introduced in this case. This instruction sets out Ninth Circuit law that breach of contract does not constitute securities fraud. *See Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007) (affirming dismissal of 10b–5(c) claim) ("At most, the claim alleges a breach of contract. Such a breach, however, does not constitute federal securities fraud under § 10(b)." (citing *Gurary v. Winehouse,* 190 F.3d 37, 44 (2d Cir. 1999) ("The failure to carry out a promise made in connection with a securities transaction is normally a breach of contract."))); *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 692 (9th Cir. 2011) ("This principle that contract breach is not a sufficient predicate for securities fraud has been followed both by our circuit in *Foster* and by courts of other circuits." (citing cases)). Such a limiting instruction is particularly important in this case, in which Plaintiffs essentially seek to convert an alleged breach of contract and ensuing litigation related to that contract into a scheme to defraud and have introduced evidence relating to various claimed breaches of the Merger Agreement and related non-disclosure agreement that do not provide any basis for securities fraud liability. The Court's decision not to instruct the jury that this evidence may not be considered as giving rise to a claim for securities fraud under Rule 10b-5 is erroneous. *Stewart*, 934 F.2d at 1042 ("A defendant is entitled to an instruction concerning his theory of the case if it is supported by law and has some foundation in the evidence.").

**Objections To The Court's Refusal To Provide Limiting Instruction Re: Unpled Statements**

Defendant objects to the Court's refusal to give the following proposed limiting instruction:

> You have heard evidence about many statements by Mr. Musk. You are instructed that statements not alleged to be materially false or misleading may not be a basis for liability.
>
> The plaintiffs have alleged three statements to be materially false or misleading:
>
> (1) A May 13, 2022 Tweet, "Twitter deal temporarily on hold pending details supporting calculation that spam/fake accounts do indeed represent less than 5% of users."
>
> (2) A May 16, 2022 statement, "I think it's some number that is probably at least four or five times that number. I'd say at – if you did sort of the – the lowest estimate would be probably 20 percent. And this – and this is – a bunch of quite smart outside firms have done analysis of Twitter and looked at the – the sort of daily – daily users, and their conclusion is also about – it's about 20 percent."
>
> (3) A May 17, 2022 Tweet, "20% fake/spam accounts, while 4 times what Twitter claims, could be *much* higher. My offer was based on Twitter's SEC filings being accurate. Yesterday, Twitter's CEO publicly refused to show proof of <5%. The deal cannot move forward until it does."
>
> Plaintiffs have not alleged any statements give rise to liability beyond these three statements.

The jury has heard evidence of many other statements by Mr. Musk that are not alleged to be false or misleading or have been dismissed for that reason. The Court is required to instruct the jury that these statements may not be a basis for liability at all.

Indeed, during opening statements, Plaintiffs argued that a series of tweets—three of which were not mentioned in the First Amended Complaint at all—were "deceptive and dishonest." Tr. 218-19. During Mr. Musk's testimony, Plaintiffs admitted into evidence and questioned Mr. Musk about May 15, 2022 tweets, Tr. Ex. 118, that are not mentioned in the First Amended Complaint, let alone pleaded as a false and misleading statement or deceptive act. Under Federal Rule of Civil Procedure 9(b), Plaintiffs were required to articulate exactly what they were alleging was "manipulative or deceptive." Plaintiffs cannot now present a case to the jury relying on allegations that statements never referenced at all were false, misleading, or deceptive.

Plaintiffs seek to premise liability on dismissed statements—specifically, the July 8 termination letter. Plaintiffs also questioned witnesses about whether tweets that were dismissed by

the Court are "false." It is beyond dispute that the statements the Court rejected in the Motion to Dismiss Order were dismissed as independently false or misleading statements. *See* Tr. of Feb. 17, 2026 Proceedings at 66:1-2 ("I said the other statements are out and in terms of false statements, these three are in."). Moreover, statements that are not alleged to be materially false or misleading cannot give rise to liability under the securities laws. *See, e.g.*, *Lorenzo v. SEC*, 587 U.S. 71, 78 (2019) ("[D]issemination of *false or misleading statements* with intent to defraud can fall within the scope of subsections (a) and (c) of Rule 10b–5[.]" (emphasis added)); Tr. of Feb. 17, 2026 Proceedings at 74:19-25 (the Court stating regarding *PayPal*, "I think I said that the failure of proving that the statement is false thereby terminates any liability that you would have under 10b–5").

Defendant repeatedly requested limiting instructions when Plaintiffs argued that unpled or dismissed statements were independently false or misleading, but the Court did not provide those instructions. That prejudice cannot be cured. Defendant then requested that the Court at least instruct the jury during final instructions that such statements may not be considered as false or misleading and may not be a basis for liability. It is error not to give this requested instruction. *E.g., Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1017 (9th Cir. 2007) ("When evidence is admissible for a limited purpose, the opponent is entitled to a limiting instruction admonishing the jury not to use the evidence for a forbidden purpose."); *Stewart*, 934 F.2d at 1042.

**Objections To The Court's Refusal To Provide Limiting Instruction Re: No Liability For Pre-Class Period Purchases Of Twitter Stock**

Defendant objects to the Court's refusal to give the following proposed limiting instruction:

> You have heard testimony about Mr. Musk's purchases of Twitter stock on the open market between January and April 2022. Mr. Musk is not alleged to have committed any wrongdoing based on his transactions on the open market and Plaintiffs' claim in this case is limited to the time period from May 13 to October 4, 2022.

The Court acknowledged in its motion to dismiss order (Dkt. No. 48 at fn. 1) that Mr. Musk's alleged "secret" purchases of Twitter stock are not part of Plaintiffs' claim. At the pre-trial conference, the Court addressed Defendant's Motion *in Limine* No. 1 regarding this issue. At the hearing, defense counsel expressed concern about "a line of questioning that suggests that he's doing something wrong," to which the Court ruled clearly: "They can't do that. They can't do that. Lawyers aren't going to do that." Tr. of Feb. 17, 2026 Proceedings at 55:8-15. By questioning Mr. Musk about whether he made SEC disclosures about his purchases and about whether his failure to do so was "an act of transparency," and then asking Mr. Musk about whether he saved himself money and kept more money in his pocket by not disclosing the purchases, Plaintiffs' counsel conveyed the impression that Mr. Musk did something wrong. Defendant requested a limiting instruction orally, as well as twice in writing, during trial but the Court did not give such an instruction. While that prejudice cannot be cured, Defendant requested that the Court give this as part of its final instructions. The Court's continued decision not to do so is error. *Merrick*, 500 F.3d at 1017 (vacating and remanding for failure to give requested limiting instruction); *Stewart*, 934 F.2d at 1042.

[*Signature blocks on following page*]

DATED: March 16, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By *Ellyde R. Thompson*

Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on Monday, March 16, 2026.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Alex Bergjans*
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*

**ATTESTATION**

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories herein.

By */s/ Alex Bergjans*
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*