**quinn emanuel** trial lawyers | new york

295 5th Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7364**

WRITER'S EMAIL ADDRESS
**alexspiro@quinnemanuel.com**

March 26, 2026

Honorable Charles R. Breyer
Phillip Burton Federal Building
& United States Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

Re:    *Giuseppe Pampena v. Elon R. Musk*, 3:22-cv-5937-CRB

Dear Honorable Judge Breyer:

I am writing on behalf of my client Elon Musk to alert the Court to a serious issue with the verdict indicating that the jury's solemn process to find the truth based only on the faithful application of the law to the evidence—without favor, bias, or outside influence—was corrupted in this case. The jury used its verdict to mock Mr. Musk and the process, making a numerical joke—coloring and emphasizing in bright blue the number $4.20 in its damages verdict—to send a message and signal to my client. The jury's bizarre and highly questionable method of completing the form, this "joke" (which was no doubt intentional), was just the final example in a parade of issues and events that illustrated and confirmed that Mr. Musk was deprived his right to a fair trial adjudicated by an impartial jury dedicated to finding the truth.

Well before trial started, as this Court is aware, Plaintiffs' counsel sought to disqualify me as Mr. Musk's chosen lead trial lawyer by representing to the Court that I was a "critical first-hand witness in the case." Dkt. No. 296-18 at 1. Although the Court denied Plaintiffs' motion, it also indicated that I could be called as a witness at trial, Dkt. No. 320, maintaining the specter that I would have to serve as both advocate and witness. Leveraging the Court's order and its requirement that the parties agree to certain "guardrails" on my role as lead trial counsel, Plaintiffs' counsel weaponized the threat that I would be a witness to manufacture my de facto removal as trial counsel. Based on Plaintiffs' counsel's written representation that they intended to call me in their case, I chose to step back from a jury-facing role at trial because serving as both a witness and advocate under these circumstances risked prejudicing Mr. Musk and would be untenable. After confirming that I would not represent Mr. Musk at trial, Plaintiffs revealed that they did not intend to call me at all—meaning that their efforts to curtail my ability to defend Mr. Musk were nothing more than months of gamesmanship. Worse, they successfully limited my ability to testify in Mr. Musk's defense, preventing me from giving evidence defending his actions in the Delaware

**quinn emanuel urquhart & sullivan, llp**

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DUBAI | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEW YORK | PARIS | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

litigation against Twitter while simultaneously alleging that Mr. Musk's participation in that action was a fraud. Through their tactics, Plaintiffs deprived Mr. Musk of both his chosen counsel and the "critical first-hand" witness that could effectively testify in his defense.

Mr. Musk's right to an impartial and disinterested jury was also under dire threat in this case. Throughout this process, I remained concerned that Mr. Musk would be unable to seat an impartial jury given his notoriety and reputation in the District. The juror questionnaires further substantiated this fear. The answers revealed hostility to Mr. Musk that ran wide and deep in the venire. As the Court acknowledged, the prospective jurors in this District appeared to possess especially negative views of Mr. Musk. *See* Jury Selection Tr. at 142:11-12 ("[M]aybe if I went in a different part of the country, I might get a different panel."). And because so many jurors had antipathy toward Mr. Musk, the Court was unable to simply excuse those who expressed negative feelings towards him. Instead, it effectively imposed a higher bar to excuse jurors who had preexisting opinions and animosity toward Mr. Musk than it would for a typical defendant *because* the community's negative feelings toward him were so pervasive. Jury Selection Tr. at 142:5–17. But the law counsels the opposite: where biases are particularly strong and widespread, it is *more* important—not less—to ensure a fair and impartial jury. Yet, as a consequence of the widespread hostility toward Mr. Musk and the limited number of prospective jurors who expressed no opinions about him at all, even some in the venire who admitted to outright bias (including one prospective juror who wrote he could not be fair to Mr. Musk) were not excused for cause.

And as explained in Mr. Musk's motion for a mistrial, he did not have a fair trial once evidence opened. *See* Dkt. 487.[1] Among other issues, Plaintiffs' counsel repeatedly violated the Court's orders and inserted prejudicial and irrelevant questioning and evidence into the trial, including suggestions that Mr. Musk violated securities laws and engaged in misconduct through his purchase of Twitter stock on the open market—a claim not even at issue in this case.

These types of threats to the right to a fair trial are not what we come to expect under our modern system, yet they persisted in this case. But despite this hostile environment and a venire that openly expressed strong negative opinions toward him, Mr. Musk still prevailed on the core theory Plaintiffs presented at trial. Plaintiffs accused Mr. Musk of engaging in a multi-month fraudulent scheme to deliberately drive down Twitter's stock to force the company to renegotiate the merger. The jury unanimously rejected this "scheme liability" claim and found that Mr. Musk did not intentionally depress Twitter's share price. It also rejected Plaintiffs' claim that Mr. Musk's May 16 estimate of the true number of spam accounts on Twitter's platform was an actionable misstatement. The jury only found Mr. Musk liable for stating that the deal was

---

[1] After trial, Delaware Chancellor Kathaleen McCormick—who presided over the 2022 Delaware Action and is currently assigned to related shareholder actions against Mr. Musk—publicly endorsed a LinkedIn post by Plaintiffs' jury consultant celebrating the verdict as a victory over Mr. Musk and his law firm. Chancellor McCormick's LinkedIn account publicly "Support[ed]" the post by clicking an emoticon that displays a heart hovering over an outstretched hand. Facing a recusal motion filed by Mr. Musk, Chancellor McCormick has claimed that she did not click the "Support" button or did so accidentally, apparently suggesting that her endorsement was the product of some technical glitch.

"temporarily on hold" or would not move forward until he received more information from Twitter—communications about the timeline for closing the merger.

However, the jury revealed when completing its verdict that its decision to find liability in the first place was driven by a desire to send a message to Mr. Musk, rather than to faithfully apply the law.  When writing its damages verdict, the jury wrote each deflation number in black ink, except for August 9, 2022.  On that date, the jury colored in blue ink and larger font the number $4.20 to draw attention to it.  **Ex. A** at 2.  The bright blue number in a sea of black figures immediately jumps off the page, as was the apparent intent.  The jury's emphasis on the $4.20 number, which had no significance to its damages determination, but appears to be a mocking reference to a number previously associated with Mr. Musk, shows that the verdict was a mockery of justice: a commentary not on whether Mr. Musk committed securities fraud (he did not) but on the jury's views about Mr. Musk himself.

The inescapable conclusion from the face of the verdict form is that the jury felt it appropriate to use its verdict to send a message to Mr. Musk, instead of properly discharging its solemn duty to render a just verdict.  The purpose of a fair trial is for a jury to reach a verdict based on evidence without outside influence and noise.  This jury not only failed to avoid being influenced by the ongoing media environment and discourse about Mr. Musk, it sought to use its verdict to contribute to it.  And as a result, we are left with more questions and the need for further inquiry.

Mr. Musk came into this trial concerned that he could not have a fair trial decided by an impartial jury, that he would be deprived of the counsel of his choice, and that he could not present the full testimony of one of the key witnesses to his defense.  Unfortunately, and as evidenced by the record and expressed on the jury's verdict form, each of those fears were realized.  No reasonable and experienced person could have any faith in the fairness of this proceeding or its resulting verdict.

Respectfully Submitted,

Alex Spiro

3

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GIUSEPPE PAMPENA, et al.,

Plaintiffs,

v.

ELON MUSK,

Defendant.

Case No. 22-cv-05937-CRB

**VERDICT FORM**

United States District Court
Northern District of California

| | |
|---|---|
| July 13, 2022 | $__.__ 6.44 |
| July 14, 2022 | $__.__ 6.61 |
| July 15, 2022 | $__.__ 6.08 |
| July 18, 2022 | $__.__ 5.83 |
| July 19, 2022 | $__.__ 5.43 |
| July 20, 2022 | $__.__ 5.39 |
| July 21, 2022 | $__.__ 5.42 |
| July 22, 2022 | $__.__ 5.30 |
| July 25, 2022 | $__.__ 5.52 |
| July 26, 2022 | $__.__ 5.49 |
| July 27, 2022 | $__.__ 5.30 |
| July 28, 2022 | $__.__ 4.91 |
| July 29, 2022 | $__.__ 4.65 |
| August 1, 2022 | $__.__ 4.91 |
| August 2, 2022 | $__.__ 4.88 |
| August 3, 2022 | $__.__ 4.87 |
| August 4, 2022 | $__.__ 4.85 |
| August 5, 2022 | $__.__ 4.31 |
| August 8, 2022 | $__.__ 4.16 |
| August 9, 2022 | $__.__ 4.20 |
| August 10, 2022 | $__.__ 3.61 |
| August 11, 2022 | $__.__ 3.79 |
| August 12, 2022 | $__.__ 3.67 |
| August 15, 2022 | $__.__ 3.58 |
| August 16, 2022 | $__.__ 3.62 |
| August 17, 2022 | $__.__ 3.77 |
| August 18, 2022 | $__.__ 3.82 |

## C. **RETURN OF VERDICT**

Once the form is completed, the foreperson for the jury must sign and date it below:

Dated: 3-20-26      Signed: #1
                                                 Jury Foreperson

United States District Court
Northern District of California

12