**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
*jcotchett@cpmlegal.com*
Mark C. Molumphy (SBN 168009)
*mmolumphy@cpmlegal.com*
Tyson C. Redenbarger (SBN 294424)
*tredenbarger@cpmlegal.com*
Elle D. Lewis (SBN 238329)
*elewis@cpmlegal.com*
Gia Jung (SBN 340160)
*gjung@cpmlegal.com*
Caroline A. Yuen (SBN 354388)
*cyuen@cpmlegal.com*
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
*fbottini@bottinilaw.com*
Aaron P. Arnzen (SBN 218272)
*aarnzen@bottinilaw.com*
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> ELON R. MUSK, <br><br> Defendant. | Case No. 3:22-CV-05937-CRB <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DECERTIFY CLASS ACTION PURSUANT TO FED. R. CIV. P. 23(C)** <br><br> Date:  June 18, 2026 <br> Time:  10:00 am <br> Ctrm:  6, 17th Floor <br> Judge:  Hon. Charles R. Breyer |

**Table of Contents**

Page

STATEMENT OF ISSUES TO BE DECIDED ......................................................................... i

SUMMARY OF ARGUMENT ............................................................................................... i

RELEVANT FACTUAL BACKGROUND ............................................................................. 1

LEGAL STANDARD ............................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.      THERE IS NO LEGAL BASIS TO DECERTIFY A CLASS AFTER ENTRY OF A FINAL JUDGMENT EFFECTING A JURY VERDICT ............... 2

    II.    THE JURY'S VERDICT ESTABLISHES THE FRAUD-ON-THE-MARKET PRESUMPTION AND SUPPORTS CLASSWIDE APPLICATION ....................................................................................................... 4

        A.      The Fraud-on-the-Market Presumption Enables Class-wide Treatment of Reliance in Securities Fraud Cases ....................................... 4

        B.      The Trial Record and Damages Award Demonstrate That the Jury Applied the Fraud-on-the-Market Presumption ............................................ 5

        C.      The Evidence Presented at Trial is Entirely Consistent with an Efficient Market for Twitter's Securities ...................................................... 9

        D.      Because Musk's Speculation About the Bases for the Jury's Findings Are Unsupported, the Predominance Requirement of Rule 23(b) Remains Satisfied ........................................................................................ 11

        E.      All Class Certification Requirements Remain Satisfied ............................ 12

    III.   THERE ARE NO PROCEDURAL DUE PROCESS VIOLATIONS .................. 15

CONCLUSION...................................................................................................................... 16

## **Table of Authorities**

**Cases**                                                                                                                                                                   **Page(s)**

*Abdullah v. U.S. Sec. Assocs.*,
    731 F.3d 952 (9th Cir. 2013) ...................................................................................................11

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...................................................................................................11

*In re Apple iPod iTunes Antitrust Litig.*,
    2014 WL 6783763 (N.D. Cal. Nov. 25, 2014) ...........................................................3

*Arizona State Carpenters Pension Tr. Fund v. Miller*,
    938 F.2d 1038 (9th Cir. 1991) ...............................................................................2, 15

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ...................................................................................13

*Bally v. State Farm Life Ins. Co.*,
    2022 WL 594798 (N.D. Cal. Feb. 24, 2022) ................................................................2

*Barnes v. Am. Tobacco Co.*,
    161 F.3d 127 (3d Cir. 1998)........................................................................................3

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)........................................................................................4, 11, 12

*City of Miami Gen. Employees' & Sanitation Employees' Ret. Tr. v. RH, Inc.*,
    2018 WL 4931543 (N.D. Cal. Oct. 11, 2018)............................................................13

*In re Cooper Cos. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009) ..........................................................................12, 14

*Dickey v. Advanced Micro Devices, Inc.*,
    2019 WL 251488 (N.D. Cal. Jan. 17, 2019)..............................................................13

*Escott v. Barchris Constr. Corp.*,
    340 F.2d 731 (2d Cir. 1965)......................................................................................14

*Finjan Inc. v. Sophos, Inc.*,
    2016 WL 2988834 (N.D. Cal. May 24, 2016) ...........................................................15

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982).................................................................................................2, 3

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)......................................................................................14

*Halliburton Co. v. Erica P. John Fund, Inc.* (*Halliburton II*),
  573 U.S. 258 (2014) .................................................................................5, 9, 11, 12

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...............................................................................13

*Hatamian v. Advanced Micro Devices, Inc.*,
  2016 WL 1042502 (N.D. Cal. Mar. 16, 2016).......................................................12

*Hesse v. Air France*,
  1990 WL 58237 (9th Cir. 1990) ....................................................................... ii, 7

*Jin v. Shanghai Original, Inc.*,
  990 F.3d 251 (2d Cir. 2021)......................................................................................3

*Kennedy v. Tallant*,
  710 F.2d 711 (11th Cir. 1983) ...............................................................................14

*Kern v. Levolor Lorentzen, Inc.*,
  899 F.2d 772 (9th Cir. 1990) ....................................................................................8

*In re LendingClub Sec. Litig.*,
  282 F. Supp. 3d 1171 (N.D. Cal. 2017) ...........................................................12, 13

*Luna v. Marvell Tech. Grp., Ltd.*,
  2017 WL 4865559 (N.D. Cal. Oct. 27, 2017).........................................................13

*Magallon v. Robert Half Int'l, Inc.*,
  2024 WL 4182846 (D. Or. Sept. 13, 2024) ..............................................................1

*Marlo v. United Parcel Serv., Inc.*,
  639 F.3d 942 (9th Cir. 2011) ....................................................................................2

*McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*,
  501 F. Supp. 3d 965 (D. Or. 2020) ...........................................................................2

*Miller v. Thane Internat'l*,
  615 F.3d 1095 (9th Cir. 2010) ................................................................................15

*In re Namenda Indirect Purchaser Antitrust Litig.*,
  2022 WL 4298767 (S.D.N.Y. Sept. 19, 2022).........................................................4

*Niles By & Through Niles v. United States*,
  710 F.2d 1391 (9th Cir. 1983) ......................................................................... ii, 7

*In re NYSE Specialists Sec. Litig.*,
  260 F.R.D. 55 (S.D.N.Y. 2009) ..............................................................................14

*Perkin-Elmer Corp. v Computervision Corp.*,
  732 F2d 888 (Fed. Cir. 1984)........................................................................... ii, 7

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ...............................................................................................13

*In re Salomon Analyst Metromedia Litig.*,
    544 F.3d 474 (2d Cir. 2008)....................................................................................................2

*Sonneveldt v. Mazda Motor of Am., Inc.*,
    2023 WL 1812157 (C.D. Cal. Jan. 25, 2023) ........................................................................3

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ................................................................................................1

*Traver v. Meshriy*,
    627 F.2d 934 (9th Cir. 1980) ..................................................................................................8

*In re Twitter Inc. Sec. Litig.*,
    326 F.R.D. 619 (N.D. Cal. 2018)...........................................................................................13

*UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*,
    2008 WL 11515597 (N.D. Cal. Apr. 17, 2008) ................................................................ ii, 7, 8

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv.*
    *Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010) ...............................................................................................2, 3

*Weigele v. FedEx Ground Package Sys., Inc.*,
    267 F.R.D. 614 (S.D. Cal. 2010) ............................................................................................3

*Woe by Woe v. Cuomo*,
    729 F.2d 96 (2d Cir.1984)........................................................................................................3

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ................................................................................................2

**Other Authorities**

17 C.F.R. §240.10b-5...............................................................................................................13

Federal Rules of Civil Procedure:

    Rule 23 .............................................................................................................. *passim*

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should decertify the class in this case following a two-week trial, in which the jury returned a verdict for the Plaintiffs and the Class.

**SUMMARY OF ARGUMENT**

Plaintiffs, on behalf of the certified class, respectfully submit this opposition to Defendant Elon Musk's Motion to Decertify Class Action. ECF 571. Musk's motion must fail for two reasons. First, it is black letter law that an order granting class certification may only be altered or amended *before* final judgment. FRCP 23(c)(1)(C). Plaintiffs obtained judgment on April 3, 2026. ECF 577. Musk does not provide any legal authority to say otherwise. Musk's motion, therefore, should be rejected for this reason alone.

Second, Musk's grounds for decertification are based on the erroneous contention that the jury's general verdict does not indicate that Plaintiffs proved class-wide reliance through the fraud-on-the-market presumption and thus, decertification is required for reliance on an individualized basis. Musk's arguments are without merit and based on pure conjecture. Musk's starting point is to argue that the jury was permitted to find reliance on alternative theories, and since the jury returned a general verdict, it is impossible to conclude that the jury found that Plaintiffs proved the fraud-on-the-market presumption. ECF 571 at 4, 7, 11. This ignores the evidentiary record.

At trial, Plaintiffs presented evidence supporting the fraud-on-the-market theory of reliance, but did not elicit any testimony as to "actual reliance" by the Plaintiffs. Instead, Plaintiffs introduced substantial testimony to support a presumption of reliance based on the fraud-on-the-market theory. Tr. 229:14-19[1] (Opening) ("These investors . . . depended on the principle that the market reflected a fair price."); Tr. 277:2-7 (plaintiff Belgrave testifying that he relied on the accuracy of the market price for Twitter stock); Tr. 1368:2-5 (plaintiff Price testifying that Mr. Garrett was "riding the ups and downs of the stock market" generally, with no evidence that he traded on specific statements by Musk); Tr. 2219:12-14 (Closing) ("People have the right to rely upon the securities market, that when you open your mouth, you speak the truth, you have a basis

---

[1] "Tr. [page:line]," refers to the trial transcripts in this case. "Ex(s)." refers to the exhibits admitted during trial. ECF 551.

for what you say."). Indeed, Dr. Tabak, the only damages expert that gave testimony before the jury, dutifully explained the concept of market efficiency as it relates to reliance at trial:

> [I]f the market's efficient, if there's a false statement out there, then even if one individual didn't read that information, didn't hear about that information, they're relying on the price of the stock to reflect that information. So they don't have to have directly read a tweet, seen a news story, something like that; they can rely on that to affect [] the price that they pay, and therefore, they can be defrauded if the information is false.

Tr. 1810:21-1811:4. Thus, the only evidence the jury heard and therefore could have based their verdict on was the fraud-on-the-market theory. Given the record presented to the jury, there is no factual basis for Musk to speculate that the jury found reliance on any alternative theory.

Even if the jury's verdict is unclear on this point, case law is not—any alleged uncertainty in a general verdict must be resolved in the prevailing party's favor. *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 2008 WL 11515597, at *5 (N.D. Cal. Apr. 17, 2008) ("Any doubt in a general verdict in a civil case is resolved in favor of the prevailing party: 'Absent [special] interrogatories, the law presumes the existence of findings necessary to support the verdict the jury reached'") (quoting *Perkin-Elmer Corp. v Computervision Corp.*, 732 F2d 888, 893 (Fed. Cir. 1984)).

To support his argument that the Court cannot presume that the jury's general verdict rests on any particular theory, Musk cites two cases. Both are inapposite. *Niles v. United States* was a 1981 decision on a partial summary judgment motion in a tax refund action, where the IRS sought to segregate a lump sum jury verdict into component parts for the purposes of taxing the award. 520 F. Supp. 808, 812 (N.D. Cal. 1981), aff'd sub nom. *Niles By & Through Niles v. United States*, 710 F.2d 1391 (9th Cir. 1983). Meanwhile, *Hesse v. Air France* (an unpublished disposition) concerned a unique fact pattern where, subsequent to a jury verdict for the plaintiff in a cause of action that proceeded on both contract and tort theories, the law changed and was applied retroactively to effectively invalidate the tort theory of recovery. *Hesse v. Air France*, 1990 WL 58237 at *2 (9th Cir. 1990). Neither of these cases support the relief Musk requests here.

Musk further argues that Plaintiffs failed to establish one of the requirements to invoke the fraud-on-the-market doctrine, alleging that Plaintiffs did not prove at trial that Twitter's stock price

reacted "immediately" to Musk's false statements.  This argument holds no water.  Plaintiffs introduced extensive evidence that Twitter's stock reacted immediately to Musk's statements.  Plaintiffs' expert Dr. Tabak testified that on May 13, 2022, Twitter's stock price reacted immediately—within one or two minutes—to Musk's false statements that day.  Tr. 1826:2-8 ("Q. Dr. Tabak, how long did it take Twitter's stock price to react to Mr. Musk's tweet that day? A. It's basically instantaneous."); *see* also Tr. 1825:12-13 ("right as that tweet hits, the first minute or two, the stock price declines dramatically and then keeps going down").  A stock chart prepared by Dr. Tabak showing that instantaneous stock reaction was also admitted into evidence.  *See* Ex. 276.  Plaintiffs clearly satisfied their obligation at trial to introduce evidence of an efficient market and an "immediate" price reaction to Musk's false statements.  Musk's only basis for arguing that Plaintiffs failed to show market efficiency incorrectly conflates when the market initially responds to news and when such news is fully incorporated into the stock price.  Since Musk's arguments for decertification proceed on the erroneous premise that Plaintiffs failed to establish class-wide reliance via the fraud-on-the-market presumption, his motion must fail.

As a final Hail Mary, Musk audaciously argues that his procedural due process would be violated if the Court were to allow the case to proceed on a class-wide basis.  ECF 571 at 12.  Musk appears to ignore the fact that this case has already proceeded for years, through a full trial, was tried on a class-wide basis, a jury verdict was rendered, and judgment was entered on a class-wide basis.  Moreover, Musk makes no attempt to argue, beyond reasserting that class-wide reliance was not proven, how his due process rights were violated.  Musk's due process arguments must fail.

For the foregoing reasons, there is no basis to decertify the class and Musk's motion should be denied.

*   *   *

## RELEVANT FACTUAL BACKGROUND

On September 27, 2024, this Court certified the following class (ECF 106):

All persons and entities who sold the publicly traded stock or call options, or purchased the put options, of Twitter, Inc. during the period from May 13, 2022 through October 4, 2022, both dates inclusive, and who suffered damages by Defendant's alleged violations of § 10(b) and of the Exchange Act.

At trial, Plaintiffs established reliance by proving fraud-on-the-market. Dr. Tabak walked through, in detail, all of the factors weighing in favor of market efficiency, concluding that both Twitter stock and options traded in an efficient market. Tr. 1809:5-1810:10 ("I concluded that the market for Twitter stock showed very strong evidence of efficiency in terms of incorporating public information."); Tr. 1810:8-1836:2. Twitter's stock price movements also established market efficiency, as the price reacted immediately and strongly to Musk's May 13 tweet. Ex. 276. In addition, Plaintiffs also testified that they each relied on the integrity of the market. Tr. 276:18–277:7; Tr. 1368:2-5.

Musk presented no evidence to rebut market efficiency whatsoever. Indeed, Musk failed to call an expert witness, present lay testimony on the fraud-on-the-market theory, or rebut in any way class-wide reliance. Both parties then argued the fraud-on-the-market theory during closing. *See e.g.*, Tr. 2214:7-23 ("The plaintiffs also testified about their reliance on ***the market***" as opposed to individual reliance on the false statements) (emphasis added); Tr. 2272:10-13 (Musk's counsel argued fraud-on-the-market during closing). On the other hand, no evidence was presented to establish individual reliance.

Following two weeks of trial and nearly four days of deliberation, on March 20, 2026, the jury returned its verdict. ECF 538. On April 3, 2026, this Court entered judgment in favor of the Plaintiffs and the class. ECF 577.

## LEGAL STANDARD

Rule 23 "give[s] the district court broad discretion over certification of class actions." *Stearns v. Ticketmaster Corp*., 655 F.3d 1013, 1019 (9th Cir. 2011). An order granting class certification may be altered or amended before final judgment. FRCP 23(c)(1)(C).

The standard for decertification is the same as the standard for certification: the court must be satisfied that the Rule 23 prerequisites are met. *Magallon v. Robert Half Int'l, Inc.*, 2024 WL 4182846 at *1 (D. Or. Sept. 13, 2024) (citing *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011)). District courts retain the authority to amend or decertify a class when information not available or circumstances not anticipated at the time of certification show that modification or decertification is warranted, and the court may consider subsequent developments in the litigation in reevaluating the basis for certification. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010). "When reviewing a grant of class certification, we accord the district court noticeably more deference than when we review a denial of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1171 (9th Cir. 2010) (quoting *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008)) (internal quotation marks omitted).

However, decertification is a drastic step, not to be taken lightly. *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, 501 F. Supp. 3d 965, 980 (D. Or. 2020) ("decertification is a 'drastic step,' not to be taken lightly."). Therefore, a certification order will not typically be altered except for good cause. *See Bally v. State Farm Life Ins. Co.*, 2022 WL 594798, at *2 (N.D. Cal. Feb. 24, 2022) ("Because parties should be able to rely on a certification order, in the normal course of events it will not be altered except for good cause, such as discovery of new facts or changes in the parties or in the substantive or procedural law.") (internal quotations and citations omitted); *see also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (noting that a court can modify the class certification decision "in the light of subsequent developments in the litigation").

## ARGUMENT

### I. THERE IS NO LEGAL BASIS TO DECERTIFY A CLASS AFTER ENTRY OF A FINAL JUDGMENT EFFECTING A JURY VERDICT

An order granting class certification may only be altered or amended **before** entry of a final judgment. FRCP 23(c)(1)(C). Indeed, Musk's motion does not argue otherwise. ECF 571 at 4-5. Here, the Court entered judgment on April 3, 2026, giving effect to the jury's verdict following a ten-day trial. ECF 557. Musk does not dispute that judgment has been entered. As Musk's own cited authority states, a judgment is final when it ends the litigation on the merits and leaves only

the issue of execution of the judgment.  *See Arizona State Carpenters Pension Tr. Fund v. Miller,* 938 F.2d 1038, 1039–40 (9th Cir. 1991).  Those are the circumstances here.

Yet, ignoring the facts of this case, Musk asks the Court to decertify the class after the ten-day trial that resulted in a verdict for Plaintiffs and the class, and after entry of final judgment by the Court.  Musk cites no authority for the proposition that a Court may decertify a class *after* entry of final judgment.  Nor does Musk address the prejudice to class members that would result from a post-verdict, post-judgment decertification order.  In fact, Musk's only cited cases are fatal to his motion.  *Weigele v. FedEx Ground Package Sys., Inc.*, 267 F.R.D. 614, 617 (S.D. Cal. 2010) ("A district court's order respecting class certification is 'inherently tentative' ***prior to final judgment*** on the merits.") (emphasis added); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 n.16 (1982) (stating that a class certification order may be altered or amended "***before the decision on the merits***") (emphasis added) (citing to FRCP 23(c)(1)); *Jin v. Shanghai Original, Inc.,* 990 F.3d 251, 261 (2d Cir. 2021) ("district courts have the authority to *sua sponte* decertify a class if they find that the class no longer meets the requirements of Rule 23 at any time ***before*** final judgment is entered.") (emphasis added); *Sonneveldt v. Mazda Motor of Am., Inc.*, 2023 WL 1812157, at *3 (C.D. Cal. Jan. 25, 2023) ("Federal courts broadly agree that a trial court overseeing a class action retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class ***at any time before final judgment***.") (emphasis in original, internal quotation omitted).  None of Musk's cited cases involve decertifying a class after entry of judgment.  *See Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 131 (3d Cir. 1998) (district court decertified the class at summary judgment stage); *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 810 (9th Cir. 2010) (district court denied plaintiffs' motion for class certification).

Additionally, in considering a motion to decertify a class, a court may consider potential prejudice to class members in light of the stage of the litigation at which the motion is made.  *See e.g. In re Apple iPod iTunes Antitrust Litig.*, 2014 WL 6783763, at *6 (N.D. Cal. Nov. 25, 2014) (denying motion to decertify made "so soon before trial especially where no intervening events have led to changed circumstances." ); *see also Woe by Woe v. Cuomo*, 729 F.2d 96, 107 (2d

Cir.1984) ("We are...concerned about possible prejudice to members of a class who failed or were unable to take independent steps to protect their rights precisely because they were members of the class."); *In re Namenda Indirect Purchaser Antitrust Litig.*, 2022 WL 4298767, at *6 (S.D.N.Y. Sept. 19, 2022) ("When faced with a motion to decertify a previously-certified class, courts 'should also consider the stage of the litigation and whether an eve-of-trial decertification could adversely and unfairly prejudice class members who may be unable to protect their own interests.'").

Here, Musk did not even move to decertify on the eve of trial; Musk waited until after the jury returned a verdict and the Court entered judgment to allege that the class should be decertified. Even if Musk is not out of time, his serious delay is unjustified and unexplained. Musk's sole reason in support of decertification—Plaintiffs alleged failure to prove class-wide reliance at trial—must have occurred during trial. Inexplicably, Musk does not explain why he waited until after the conclusion of trial, and after the jury returned a verdict, to move to decertify the class, when the alleged reason to decertify apparently occurred at trial. Indeed, even after the jury returned its verdict, Musk made no indication that he intended to move to decertify the class when he wrote to the Court regarding the post-trial schedule (ECF 544), nor did he indicate as much in his response to Plaintiffs' proposed post-verdict procedures (ECF 549). Similarly, Musk does not argue that there was some intervening event post-judgment that explains his delayed motion. Musk cannot simply move to decertify now without addressing his delay in making the motion, the clear potential prejudice to class members, and how the Court's class certification order may be amended post-judgment despite the clear language of Rule 23. Musk's motion to decertify the class is untimely and lacking any authority in support and must fail for this reason alone.

## II.    THE JURY'S VERDICT ESTABLISHES THE FRAUD-ON-THE-MARKET PRESUMPTION AND SUPPORTS CLASSWIDE APPLICATION

### A.    The Fraud-on-the-Market Presumption Enables Class-wide Treatment of Reliance in Securities Fraud Cases

The fraud-on-the-market presumption creates a rebuttable presumption of reliance that enables class certification in securities fraud actions. *Basic Inc. v. Levinson*, 485 U.S. 224, 250 (1988). Without this presumption, it would be impractical to certify a class under Rule 23(b)(3) because individual reliance issues would overwhelm questions common to the class. The

presumption operates to establish that all class members relied on the defendant's misrepresentations as a result of the misrepresentations' effect on the market price, rather than requiring individualized proof of reliance for each class member.

The Supreme Court reaffirmed this principle in *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, holding that materiality is an objective question involving the significance of an omitted or misrepresented fact to a reasonable investor, and therefore can be proved through evidence common to the class. 568 U.S. 455, 467-468 (2013). The Court emphasized that the issue of whether the alleged misrepresentations and omissions are material or immaterial is identical for all investors composing the class. *Id*. at 459-460. This principle extends to reliance itself when the fraud-on-the-market presumption applies.

To invoke the fraud-on-the-market presumption, a plaintiff must prove that the alleged misrepresentation was publicly known, that it was material, that the stock traded in an efficient market, and that the plaintiff traded the stock between the time the misrepresentation was made and when the truth was revealed. *Halliburton Co. v. Erica P. John Fund, Inc*. (*Halliburton II*), 573 U.S. 258, 268 (2014). Here, the jury held Musk liable for his false statements on a class-wide basis. In his post-trial motion, Musk does not contest that his statements were material or that Plaintiffs traded Twitter stock between the time the misrepresentation was made and when the truth was revealed. Musk only challenges the element of whether Twitter stock traded in an efficient market. And as to this element, Musk does not contend that the jury was improperly instructed or that there was a lack of evidence presented to the jury demonstrating all the elements of the fraud-on-the-market theory. Instead, Musk simply contends that because a general verdict was returned by the jury, there is no way to know whether the jury determined that the fraud-on-the-market presumption of reliance was satisfied. That argument fails for the reasons below.

B.    **The Trial Record and Damages Award Demonstrate That the Jury Applied the Fraud-on-the-Market Presumption**

Musk erroneously claims that the jury's general verdict does not indicate which theory of reliance the jury's verdict is based on, and thus the verdict must be interpreted in his favor. Musk is wrong. This case was tried on a class-wide basis. Although the jury was instructed that reliance could be proven either through individual reliance or the fraud-on-the-market presumption,

Plaintiffs only presented class-wide proof of reliance. Plaintiffs did so primarily through the expert testimony of Dr. David Tabak regarding the existence of an efficient market for Twitter securities, market price movements, and the dissemination of the alleged misrepresentations. *See, e.g.*, Tr. 1824-25 and Ex. 276. The damages model presented to the jury was calculated using Dr. Tabak's event-study framework, which reflected the deflation in the stock price caused by the alleged fraud and the aggregate harm to all class members who sold shares at deflated prices.

Only two class representatives testified regarding their personal trading decisions, Mr. Belgrave and Ms. Price. Neither plaintiff testified that they actually relied on Musk's false statements, instead testifying that they relied on the integrity of the stock market and Twitter's stock price. Mr. Belgrave made clear that when he bought Twitter stock on May 13, he was not "aware that Mr. Musk had posted a tweet that day." Tr. 273:3-17. Mr. Belgrave also testified that instead of relying on the tweets when he sold, he relied on the integrity of the market: Q. "When you sold, did you believe that the market price for Twitter stock was fair and accurate and that time? A. Yeah. Q. Okay. And when you sold, did you also rely on that market price to be accurate? A. Oh, yeah." Tr. 277:2–7. Mr. Belgrave's testimony was thus fully consistent with the fraud-on-the-market theory. *See* Comment to Ninth Circuit Model Civil Instruction No. 18.7 ("That theory is based on the premise that when persons buy or sell publicly-traded shares, they rely on the marketplace to ensure the integrity of the price"). Ms. Price was not even aware of Musk's May 13th Tweet "back in 2022." Tr. 1365:22-1366:8.

As a result, there was no evidence of any individual reliance adduced at trial, and Musk fails to cite to any such evidence in his motion. Thus, the jury could not have premised its finding of reliance on anything but the fraud-on-the-market theory.

The jury also awarded damages consistent with Dr. Tabak's market-based framework, which calculated harm to all class members who sold shares at deflated prices during the class period. This damages award is logically incompatible with a finding of reliance limited to the named plaintiffs' personal trading decisions. The jury's determination of damages necessarily reflects its acceptance of the fraud-on-the-market theory.

Musk cites two cases in support of his argument to the contrary. Both cases can be

distinguished. In *Niles,* on a motion for partial summary judgment, the Court found that the IRS did not have the authority to unilaterally allocate a lump sum verdict where the apportionment could not be made with relative certainty. 520 F. Supp. at 814. Not only are the facts and procedural posture clearly distinguishable from the present case, but Musk's cited quotation from *Niles* is plainly dicta—the quote starts with "[f]or example"—and is clearly not intended to be read as establishing any rule regarding general verdicts at large. ECF 571 at 8.

Musk also cites an unpublished decision from the Ninth Circuit, *Hesse v. Air France*, to argue that where there are two theories supporting a claim and a general verdict is rendered, the court cannot "speculate" as to which theory the jury relied upon. ECF 571 at 7. However, *Hesse* involved a unique set of facts and a narrow holding that cannot be applied here. The case concerned a wrongful discharge action advancing both tort and contract theories of recovery. *Hesse*, 1990 WL 58237 at *1. After obtaining a general verdict in his favor, Hesse elected to have judgment entered on the tort claim. *Id.* However, the California Supreme Court subsequently limited recovery for wrongful discharge, and applied its decision retroactively, thus rendering one of the theories under which Hesse's claim was presented to the jury legally defective. *Id.* at *2. In its short, unpublished decision, the Court narrowly held that "because one of the theories under which recovery may have been granted is now legally defective, the very theory on which Hesse elected to have judgment entered, the general verdict cannot be upheld." *Id.* at *8.

Even if the jury's general verdict is uncertain (it is not), Musk's own cited cases state that any alleged uncertainty in a general verdict must be resolved in Plaintiffs' (not Musk's) favor. *See UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.,* 2008 WL 11515597 at *5 (N.D. Cal. Apr. 17, 2008) ("Any doubt in a general verdict in a civil case is resolved in favor of the prevailing party: 'Absent [special] interrogatories, the law presumes the existence of findings necessary to support the verdict the jury reached.'" (quoting *Perkin-Elmer Corp v Computervision Corp*, 732 F2d 888, 893 (Fed Cir 1984)). In *UniRam*, Judge Walker also noted that the argument that the general verdict was defective because it was unaccompanied by special interrogatories was "in essence, a claim that the jury's finding of misappropriation for at least one of UniRAM's trade secrets is unsupported by substantial evidence. In civil cases, a general verdict will be upheld if substantial evidence in

the record supports any theory submitted to the jury." *Id.* at *3. Here, the jury's verdict and damages award must therefore be reasonably interpreted as establishing the fraud-on-the-market presumption based on the trial record and the logical coherence between the liability verdict and damages calculations.

In the alternative, and to the extent that there is uncertainty as to which theory of reliance the jury adopted in this case, the court has the discretion to attribute the general verdict to the fraud-on-the-market theory. *See Traver v. Meshriy*, 627 F.2d 934, 938–39 (9th Cir. 1980) ("Where more than one theory of recovery has been submitted to the jury in a civil case…the reviewing court has discretion to construe a general verdict as attributable to another theory if it was supported by substantial evidence and was submitted to the jury free from error."); *see also Kern v. Levolor Lorentzen, Inc.*, 899 F.2d 772, 777 (9th Cir. 1990) (upholding general jury verdict as "an appropriate case for the exercise of discretion.  There was little potential for confusion.  Kern's counsel stressed the contractual bases for recovery in her closing argument.").  Therefore, to the extent necessary, the court should exercise its discretion to attribute the general verdict to the fraud-on-the-market presumption.

In determining whether to exercise its discretion and uphold a general verdict attributable to multiple theories, a court must consider the following factors: (1) the potential for confusion of the jury; (2) whether the losing party's defenses apply to the count upon which the verdict is being sustained, (3) the strength of the evidence supporting the count relied upon to sustain the verdict, and (4) the extent to which the same disputed issues of fact apply to the various legal theories. *Kern*, 899 F.2d at 777 (citing *Traver,* 627 F.2d at 938-39).  These factors are all present here.

First, there was no potential for jury confusion as to the theory of actual reliance compared to the fraud-on-the-market theory, since no evidence was presented to the jury to support any actual reliance, and Plaintiffs exclusively argued for application of the fraud-on-the-market doctrine during closing arguments. Tr. 2214.  Second, as to Musk's defenses, Musk never attempted to rebut the fraud-on-the-market theory.  He had retained an expert on the issue but then inexplicably not called his own expert to the stand.  Further, Musk never argued to the jury that the named plaintiffs actually relied on the false statements and instead argued during closing that Plaintiffs had not

proven the elements of the fraud-on-the-market doctrine. Tr. 2272 ("they can't show reliance on the market"). Third, the strength of the evidence strongly supports exercising the court's discretion. Again, all evidence at trial supported the fraud-on-the-market presumption of reliance, and no evidence was introduced regarding any actual reliance. Finally, the fourth factor supports the exception since there were no disputed issues of fact on the two theories of liability.

### C.    The Evidence Presented at Trial is Entirely Consistent with an Efficient Market for Twitter's Securities

Musk also attempts to argue that the evidence Plaintiffs presented at trial was inconsistent with an efficient market and therefore Plaintiffs could not have established the fraud-on-the-market presumption. ECF 571 at 8. According to Musk, "Plaintiffs presented expert testimony that the market did *not* immediately respond to the May 13 tweet." *Id.* That is simply incorrect. To the contrary, when asked how long it took for Twitter's stock price to react to Musk's May 13 tweet, Dr. Tabak explicitly testified that "[i]t's basically instantaneous" even clarifying that "we can't get any closer, but we can say instantaneously if we're measuring to the minute." Tr. 1826:4-8.

In an effort to distort this clear record and evidence, Musk conflates two issues—when Twitter's stock began to react to the false statement and when the market fully incorporated the new information from the false statement. Without citing any law or facts, Musk argues that a market is not efficient unless it immediately *starts* reacting to the new information and also immediately *finishes* incorporating the new information into the stock's price. That is not the law.

In *Halliburton II*, the Supreme Court explicitly rejected the notion that efficiency is a binary, yes-or-no question. 573 U.S. at 271-272. The Court recognized that the markets for some securities are more efficient than the markets for others, and even a single market can process different kinds of information more or less efficiently, depending on how widely the information is disseminated and how easily it is understood. *Id.* at 270. As the Court stated, "[t]he 'fundamental premise' underlying the [fraud-on-the-market] presumption is 'that an investor presumptively relies on a misrepresentation so long as it was reflected in the market price at the time of his transaction.'" *Id.* at 278 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) *(Halliburton I)*). This framework does not require that the market's incorporation of information is completed instantaneously; it requires only that the market quickly *begin* to react to material information.

Dr. Tabak's testimony is entirely consistent with this Supreme Court authority.  Dr. Tabak distinguished between when the market starts to incorporate the news from when the market finishes incorporating the news.  Tr. 1824:11-15.  In that context, Dr. Tabak testified that the market usually finishes incorporating new and material information into a stock's price within one or two trading days.

> Q. And in general, how long does it take news to get incorporated into a stock's price? A. Depends on whether you're asking when it starts and when it ends. For a stock that trades in an efficient market, it tend[s] to start very quickly; could be within minutes. When it ends, often within one trading day, often also two trading days, sometimes longer, because over the course of time, we get more new stories . . . But the idea for an efficient market is that we should see an immediate *initial* response to the news."

Tr. 1824:11-21 (emphasis added).

As Dr. Tabak testified, the market's initial reaction to Musk's false tweet did occur immediately.  *See* Tr. 1825:12-13 ("right as that tweet hits, the first minute or two, the stock price declines dramatically and then keeps going down").  A stock chart prepared by Dr. Tabak showing that instantaneous stock reaction was also admitted into evidence at trial.  *See* Ex. 276.

Courts have explicitly rejected the bright-line rule that Musk implicitly invokes.  In *Irving Firemen's Relief & Retirement Fund v. Uber Technologies, Inc.*, the court held that while a disclosure followed by an immediate drop is more likely to have caused the decline, there is no bright-line rule requiring an immediate market reaction.  998 F.3d 397, 407 (9th Cir. 2021) ("we have rejected a bright-line rule requiring an immediate market reaction because the market is subject to distortions that prevent the ideal of a free and open public market from occurring").

This jurisprudence reflects economic reality.  Complex information, particularly fraudulent information, may require time for market participants to process, analyze, and fully incorporate into pricing decisions.  The fact that Dr. Tabak testified to price declines occurring both on May 13 and on the very next trading day (May 16)[2] does not demonstrate market inefficiency; rather, it demonstrates the market's gradual but ultimately effective incorporation of the misrepresentation into the stock price.  The temporal pattern of price reactions that Dr. Tabak identified—declines on the day of the tweet and again the very next business day that Twitter's stock was traded—is entirely

---

[2]  Friday, May 13, 2022, and Monday, May 16, 2022, represent consecutive trading days.

consistent with an efficient market processing complex information over a reasonable timeframe.

As Musk concedes, the jury adopted Dr. Tabak's class damages calculations. ECF 571 at 8. Dr. Tabak's calculations were clearly based upon his opinion that Twitter stock price reacted instantaneously to Musk's false tweets, which is entirely consistent with his opinion that Twitter traded in an efficient market, which in turn supports the fraud-on-the-market presumption. Thus, it stands to reason that the jury found liability based upon the only evidence that was presented to them: evidence of class-wide reliance based on the fraud-on-the-market presumption.

### D.    Because Musk's Speculation About the Bases for the Jury's Findings Are Unsupported, the Predominance Requirement of Rule 23(b) Remains Satisfied

Musk challenges the predominance requirement of Rule 23(b)(3). Because his argument is premised exclusively on the erroneous contention that the jury may or may not have determined that the fraud-on-the-market theory was proven at trial, Musk's attack on predominance must fail. The Supreme Court reaffirmed the continuing viability of the fraud-on-the-market doctrine in *Halliburton II*, and held that where such doctrine is established, the predominance element of Rule 23(b)(3) is also satisfied: "*Basic* instead establishes that a plaintiff satisfies that [predominance] burden by proving the prerequisites for invoking the presumption—namely, publicity, materiality, market efficiency, and market timing." *Halliburton II*, 573 U.S. at 276. This is entirely consistent with the Supreme Court's observation that "[p]redominance is a test readily met in certain cases alleging … securities [claims]." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

The Ninth Circuit has similarly emphasized that where there are no relevant distinctions between class members on the core liability question, the inquiry is a common one rather than an individualized inquiry. *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 964 (9th Cir. 2013). Here, the jury's verdict indicates that the fraud-on-the-market presumption was proven, and thus the common question of whether Musk made material misrepresentations that affected the market price of Twitter securities predominates over any individualized issues. As stated above, Plaintiffs only presented the jury with fraud-on-the-market evidence, providing ample evidence for the jury to find that the presumption applied in accordance with the jury instructions. This common question was answered at trial through class-wide proof, and the jury's verdict reflects that common answer.

Musk's unsuccessful attempt at trial to demonstrate lack of price impact and that the Plaintiffs would have sold Twitter stock even if they had known the truth does not undermine the existence of predominance.  Tr. 282:4-283:8 (Belgrave); Tr. 1366:13-1371:7 (Price).  As the Supreme Court held in *Halliburton II* in rejecting defendant's attempt to reverse *Basic*: "That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate."  573 U.S. at 276.

For these reasons, the evidence at trial substantiated the continuing satisfaction of the predominance element of F.R.C.P. 23(b)(3).  Thus, Musk's motion to decertify should be denied.

Musk further argues that Plaintiffs cannot establish the superiority requirement under Rule 23(b)(3). Here, Musk argument is again exclusively premised on his baseless arguments that Plaintiffs failed to establish class-wide reliance, and therefore must be rejected for the same reasons.

## E.    All Class Certification Requirements Remain Satisfied

Though Musk's motion fails for timeliness and the reasons above, Plaintiffs address all class certification requirements here for sake of completeness.  As to numerosity, Plaintiffs introduced evidence that there were at least 764 million Twitter shares outstanding, and that over one thousand institutional investors owned Twitter stock, during the Class Period.  Tr. 1819-1820; Tr. 1822; Exs. 243, 246.  In the Ninth Circuit, numerosity is presumptively satisfied when the class contains at least forty members.  *See Hatamian v. Advanced Micro Devices, Inc.,* 2016 WL 1042502 at \*4 (N.D. Cal. Mar. 16, 2016); *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

Rule 23(a)(2) also requires the existence of "questions of law or fact common to the class." "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)."  *In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1179 (N.D. Cal. 2017).  The trial demonstrated that virtually all the questions of law or fact at issue are common between Plaintiffs and all others in the Class, including, for example: (i) whether Musk's May 13 deal-on-hold tweet contained material misrepresentations and omissions; (ii) whether Musk's May 16, 2022 statements that fake and spam accounts made up at least 20% of Twitter's users were false and misleading; (iii) whether Defendant's May 17, 2022 tweet that the number of fake accounts on Twitter could be "much higher" than 20% and that the deal "cannot move forward" were false and

misleading; (iv) whether the alleged misrepresentations and omissions were material and were made with scienter; and (v) whether Defendant's misrepresentations and omissions caused Class members' damages. *See e.g.*, 17 C.F.R. §240.10b-5. Evidence was adduced at trial to prove these common issues of fact and law. As a result, Rule 23(a)(2) is satisfied. *See In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 626 (N.D. Cal. 2018) (finding commonality satisfied where "'investors were [allegedly] defrauded by the same misleading statements over the same period of time, and suffered similar losses as a result'") (quoting *Luna v. Marvell Tech. Grp., Ltd.*, 2017 WL 4865559, at *2 (N.D. Cal. Oct. 27, 2017)).

Rule 23(a)(3) also requires a showing that "the claims or defenses of the representative parties are typical of the claims and defenses of the class." FRCP 23(a)(3). That standard is "permissive" and class members' claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). Typicality is "'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Dickey v. Advanced Micro Devices, Inc.*, 2019 WL 251488 at *4 (N.D. Cal. Jan. 17, 2019) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010)). The evidence at trial showed that, like the absent class members, Plaintiffs sold Twitter securities during the Class Period at artificially deflated prices. *See* Ex. 303; ECF 8-4, 8-5. Like the absent Class members, Plaintiffs are presumed—by virtue of their sale of Twitter stock in an efficient market—to have relied upon Musk's misrepresentations and omissions. *See Halliburton I*, 563 U.S. at 811.

Rule 23(a)(4) further requires plaintiffs to establish that "the representative parties will fairly and adequately protect the interests of the class." In order to determine "'whether a plaintiff will adequately serve the class, courts consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *City of Miami Gen. Employees' & Sanitation Employees' Ret. Tr. v. RH, Inc.*, 2018 WL 4931543 at *4 (N.D. Cal. Oct. 11, 2018) (quoting *LendingClub*, 282 F. Supp. 3d at 1182). As the trial demonstrated, none of the Plaintiffs are antagonistic to, or in conflict with, the interests of the absent Class members. Plaintiffs

sold Twitter securities during the Class Period and sustained losses from the same material misrepresentations and omissions as absent Class members.  At trial Plaintiffs also demonstrated their willingness and ability to take an active role in, and control of, the litigation to protect the interests of the absent Class members.  Plaintiffs were present for every day of the trial and presented evidence and testimony, resulting in an extremely favorable verdict for Plaintiffs and the Class.  Indeed, the jury awarded 100% of the damages sought by Plaintiffs.  There could be no better proof that Plaintiffs and their counsel fairly and adequately protected the interests of the class.  Thus, the prerequisite of Rule 23(a)(4) and the requirement of Rule 23(g) continue to be satisfied.

Finally, in addition to the predominance requirement, Rule 23(b)(3) also requires that the class action vehicle be superior to any other method of adjudication.  To determine whether a class action is superior, courts consider four factors: (i) class members' individual interests in controlling the prosecution of separate actions; (ii) whether other litigation has already commenced; (iii) the desirability of concentrating claims in one forum; and (iv) the difficulties likely to be encountered in managing a class action.  FRCP 23(b)(3).  Each of the factors enumerated in Rule 23(b)(3) weighs in favor of continued class certification in this case.  First, there is no indication that any member of the Class would attempt to prosecute these claims individually.  Given the prohibitive costs required for the prosecution of a complex securities fraud case, very few Class members could prosecute these claims on an individual basis, nor would it be economically prudent for them to do so.  *Green v. Wolf Corp.*, 406 F.2d 291, 296 (2d Cir. 1968).  In addition, the concentration of this litigation in one forum is desirable to avoid inconsistent adjudications.  As the trial demonstrated, this case presented no unusual difficulties in the management of the trial or notification of Class members.  Moreover, class action treatment promotes fairness and efficiency.  "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983); *see also Escott v. Barchris Constr. Corp.*, 340 F.2d 731, 733 (2d Cir. 1965).  For these reasons, "securities cases 'easily satisfy the superiority requirement of Rule 23.'" *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 80 (S.D.N.Y. 2009) (alterations in original); *see also Cooper*, 254 F.R.D. at 632 ("As the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 'like a glove.'").

Accordingly, the requirements for class certification remain satisfied, and there is no valid basis to decertify the class.

## III.    THERE ARE NO PROCEDURAL DUE PROCESS VIOLATIONS

In Musk's last ditch effort to decertify the class, Musk argues that his procedural due process rights would be violated if the Court were to "allow" this case to proceed on a class-wide basis, ignoring the fact that this case proceeded, a verdict rendered, and a judgment entered, all on a class-wide basis. ECF 571 at 12-13. Musk was afforded a ten-day trial before a jury, which carefully attended to the mountains of evidence put before it. As argued above, ample evidence was presented to the jury to support a fraud-on-the-market presumption, and just because Musk failed to rebut that presumption does not mean that Musk's procedural due process rights were violated.

Musk cites to a variety of cases that stand for nothing more than the proposition that "class certification [must] meet rigorous standards in securities cases." ECF 571 at 12, quoting *Miller v. Thane Internat'l*, 615 F.3d 1095 (9th Cir. 2010). That is true, but the fact is that such rigorous standards have been satisfied here.[3] ECF 106. Musk petitioned the Ninth Circuit for permission to appeal, which the Ninth Circuit denied by order dated January 24, 2025. Ninth Circuit Case No. 24-6249. Moreover, as discussed at length above, the evidence introduced at trial demonstrates that continued class certification of Plaintiffs' claims is warranted. Musk also cites *Finjan Inc. v. Sophos, Inc.*, 2016 WL 2988834 (N.D. Cal. May 24, 2016). ECF 571 at 13. However, that case concerned a patent infringement dispute that had nothing to do with class certification or any due process rights related to a general verdict in a 10b-5 case. *Finjan*, 2016 WL 2988834 at *1. The portion cited by Musk involved whether it would be appropriate to apply collateral estoppel of a judgment from a completely different case in Delaware to the claims in the California case, not whether a certified class in a 10b-5 case should be decertified following a fulsome jury trial based on an allegedly uncertain general verdict form. *Id.* at *19.

---

[3] *Miller* did not involve a motion to decertify. It involved an inapposite situation where the plaintiff had failed to establish an efficient market under the *Cammer* factors. *Miller*, 615 F.3d at 1103 ("There is no dispute that the Cammer test, which sets a high bar, is not met in this case."). The holding of the case had to do with loss causation, not class certification, with the Ninth Circuit determining that "the *Cammer* test is not appropriate for assessing loss causation." *Id.*

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that Defendant's motion to decertify class action pursuant to Fed. R. Civ. P. 23(C) be denied in its entirety.

Dated: May 15, 2026                          Respectfully submitted,

**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
Tyson C. Redenbarger (SBN 294424)
Elle D. Lewis (SBN 238329)
Gia Jung (SBN 340160)
Caroline A. Yuen (SBN 354388)

*/s/ Mark C. Molumphy*
    Mark C. Molumphy

San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
Aaron P. Arnzen (SBN 218272)

*/s/ Francis A. Bottini, Jr.*
    Francis A. Bottini, Jr.

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Lead Plaintiffs and the Class*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Mark C. Molumphy, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of May, 2026, at Burlingame, California.


        */s/ Mark C. Molumphy*
        Mark C. Molumphy