QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Ellyde R. Thompson (*pro hac vice*)
ellydethompson@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
Jessebernstein@quinnemanuel.com
295 Fifth Ave., New York, NY 10010
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

Michael T.  Lifrak (Bar No.  210846)
michaellifrak@quinnemanuel.com
Stephen A.  Broome (Bar No.  314605)
stephenbroome@quinnemanuel.com
Alex Bergjans (Bar No.  302830)
alexbergjans@quinnemanuel.com
865 S.  Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

*Attorneys for Defendant Elon Musk*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> ELON R. MUSK, <br><br> Defendant. | CASE NO. 3:22-CV-05937-CRB <br><br> **DEFENDANT ELON MUSK'S OPPOSITION TO PLAINTIFFS' MOTION FOR THE AWARD OF PREJUDGMENT INTEREST** <br><br> Date: June 18, 2026 <br> Time: 10:00 am <br> Courtroom: 6, 17th Floor <br> Judge:  Hon. Charles R. Breyer |

**REDACTED FOR PUBLIC FILING**

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ....................................................................................................1

ARGUMENT .............................................................................................................................2

I.     THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR PJI..................................2

    A.     The Degree of Personal Wrongdoing by Defendant Is Low .....................................3

    B.     PJI Is Not Necessary To Make Class Members Whole ..............................................5

    C.     Other Considerations of Fairness Weigh Against Awarding PJI ..............................6

II.    ANY PJI SHOULD BE CALCULATED USING THE DEFAULT TREASURY RATE ............................................................................................................................7

III.   ANY PJI SHOULD BE SIMPLE INTEREST OR COMPOUNDED ANNUALLY..........12

CONCLUSION ........................................................................................................................13

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR THE AWARD OF PREJUDGMENT INTEREST

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apack, Inc. v. Ko*,
2015 U.S. Dist. LEXIS 133491 (C.D. Cal. Sept. 28, 2015)................................................. 4, 9

*In re Apollo Group Inc. Sec. Litig.*,
No. 2:04-cv-2147, Dkt. 508 (D. Ariz. Jan. 30, 2008) ............................................................. 7

*Blanton v. Anzalone*,
813 F.2d 1574 (9th Cir. 1987)............................................................................................... 12

*Delis v. Sionix Corp.*,
2015 WL 12734006 (C.D. Cal. Sept. 29, 2015), *amended*, 2016 WL 6868289
(C.D. Cal. Nov. 18, 2016) ................................................................................................... 4, 9

*Erhart v. BofI Holding, Inc.*,
2023 WL 6382479 (S.D. Cal. Sept. 28, 2023) ...................................................................... 12

*F. v. Blue Shield of California*,
2016 WL 1059459 (N.D. Cal. Mar. 17, 2016) ...................................................................... 12

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
2019 WL 4295285 (C.D. Cal. Sept. 9, 2019)................................................ 2, 7, 10, 11, 12, 13

*Kerr v. Charles F. Vatterott & Co.*,
184 F.3d 938 (8th Cir. 1999).................................................................................................. 4

*Knapp v. Ernst & Whinney*,
90 F.3d 1431 (9th Cir. 1996)........................................................................................ 2, 5, 11

*Mission Produce, Inc. v. Da Vinci Carriers Inc.*,
2016 U.S. Dist. LEXIS 96838 (C.D. Cal. July 25, 2016) ..................................................... 4, 9

*Nelson v. EG & G Energy Measurements Grp., Inc.*,
37 F.3d 1384 (9th Cir. 1994)................................................................................................. 11

*Nelson v. Serwold*,
576 F.2d 1332 (9th Cir. 1978)................................................................................................. 3

*Nichols v. Unum Life Ins. Co. of Am.*,
287 F. Supp. 2d 1088 (N.D. Cal. 2003) .................................................................................. 4

*Osterneck v. Ernst & Whinney*,
489 U.S. 169 (1989) ............................................................................................................. 1, 2

*Santos v. Minnesota Life Ins. Co.*,
571 F. Supp. 3d 1120 (N.D. Cal. 2021) ................................................................................ 12

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR THE AWARD OF PREJUDGMENT INTEREST

*SEC. v. Gowrish*,
  2011 WL 2790482 (N.D. Cal. July 14, 2011), *aff'd*, 510 F. App'x 588 (9th Cir.
  2013).................................................................................................................... 8

*SEC v. Lee*,
  2015 WL 12751703 (C.D. Cal. Oct. 28, 2015) ................................................... 4

*SEC v. Nevatia*,
  2015 WL 6912006 (N.D. Cal. Oct. 19, 2015), *report and recommendation
  adopted*, 2015 WL 6871869 (N.D. Cal. Nov. 9, 2015)......................................... 8

*SEC. v. Olins*,
  762 F. Supp. 2d 1193 (N.D. Cal. 2011), *as amended* (Feb. 25, 2011)................... 8

*SEC v. Platforms Wireless Int'l Corp.*,
  617 F.3d 1072 (9th Cir. 2010)......................................................................... 4, 8

*SEC v. Rubin*,
  1993 WL 405428 (S.D.N.Y. Oct. 8, 1993) ...................................................... 4, 5

*SEC v. Sabrdaran*,
  252 F. Supp. 3d 866 (N.D. Cal. 2017) ............................................................. 1, 8

*SEC v. Wallace*,
  2017 WL 8230026 (C.D. Cal. May 8, 2017)........................................................ 4

*Termine ex rel. Termine v. William S. Hart Union High Sch. Dist.*,
  288 F. App'x 360 (9th Cir. 2008)....................................................................... 10

*Transbay Auto Serv., Inc. v. Chevron U.S.A., Inc.*,
  2013 WL 843036 (N.D. Cal. Mar. 6, 2013) ....................................................... 12

*Trs. of the Operating Eng'rs Pension Tr. v. Munson Plumbing, Inc.*,
  2011 WL 245732 (C.D. Cal. Jan. 21, 2011)....................................................... 13

*Trs. of S. California IBEW-NECA Pension Plan v. Electro Dynamic Servs., Inc.*,
  2008 WL 11338230 (C.D. Cal. Oct. 14, 2008) ................................................... 13

*Turrey v. Vervent, Inc.*,
  2024 WL 3251727 (S.D. Cal. June 18, 2024) ...................................................... 2

*Vernazza v. SEC*,
  327 F.3d 851 (9th Cir. 2003)................................................................................ 3

*In re Vivendi Universal, S.A. Sec. Litig.*,
  284 F.R.D. 144 (S.D.N.Y. 2012)......................................................... 1, 7, 12, 13

*W. Pac. Fisheries, Inc. v. SS President Grant*,
  730 F.2d 1280 (9th Cir. 1984)........................................................................ 1, 7, 9

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR THE AWARD OF PREJUDGMENT INTEREST

*Warfield v. Alaniz*,
    2007 WL 2051535 (D. Ariz. July 16, 2007) .............................................................................. 7

**Statutes**

26 U.S.C. § 6621 ......................................................................................................... 1, 8

28 U.S.C. § 1961 ............................................................................ 1, 8, 9, 11, 12, 13

29 U.S.C. § 1132 (g) ...................................................................................................... 13

**Other Authorities**

17 C.F.R. § 201.600(b)...................................................................................................7

Fed. R. Civ. P. 5(b)......................................................................................................... 14

Julian Kozlowski & Samuel Jordan-Wood, *The Many Interest Rates in 2022*, FED.
    RSRV. BANK OF ST. LOUIS: ON THE ECONOMY (Jan. 12, 2023),
    https://www.stlouisfed.org/on-the-economy/2023/jan/many-interest-rates-2022 .................. 10

## SUMMARY OF ARGUMENT

Plaintiffs acknowledge that an award of prejudgment interest ("PJI") is not automatic.  Mot. 1.  Rather, it may be awarded in the Court's discretion, guided by the considerations articulated by the Supreme Court in *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 176 (1989).  The *Osterneck* factors weigh against an award of PJI here.  The jury made no finding that Defendant willfully defrauded investors, it rejected Plaintiffs' scheme liability claim outright, and the evidence at trial confirmed Musk genuinely believed his May 13 and 17 tweets were true.  Musk did not profit from the alleged fraud—he closed the merger at the same $54.20 per share he agreed to pay before any challenged statement was made.  And this case involves a seller's class, so every member walked away with cash they could have reinvested the day they sold.  Plaintiff Belgrave admitted he bought Twitter shares precisely *because* the May 13 tweet dropped the price.  He recognized the risk that the deal might not close but hoped he could make a quick profit if it did.  Even after learning of the alleged fraud, Plaintiffs reinvested in Tesla—another company owned and operated by Musk—with Belgrave admitting he still "trusted" Musk with his money.  Under these circumstances the Court is justified in awarding no PJI at all.  *See Osterneck*, 489 U.S. at 176.

Should the Court nevertheless award PJI, the rate should be the post-judgment interest  rate set forth in 28 U.S.C. § 1961 (the "§ 1961 Rate").  Contrary to Plaintiffs' framing (Mot. 5), the § 1961 Rate is not merely "an appropriate starting point" from which the Court enjoys discretion to award something higher.  The Ninth Circuit has made clear that the § 1961 Rate is the presumptive rate and the Court may depart from it only if Plaintiffs produce "substantial evidence[] that the equities of the particular case require a different rate" and the Court makes a specific finding in their favor on this issue.  *W. Pac. Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984).  Plaintiffs offer no such evidence.  The higher rate Plaintiffs seek under 26 U.S.C. § 6621 (the "Tax Penalty Rate") is sometimes applied in SEC actions seeking disgorgement of profits obtained through fraud—where defendants "essentially obtain an unsecured loan" from investors, *SEC v. Sabrdaran*, 252 F. Supp. 3d 866, 904 (N.D. Cal. 2017)—but it has ***never*** been applied in a private securities action under Section 10(b).  *See In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 163 (S.D.N.Y. 2012).  Because Musk did not obtain any profits from class members,

the Tax Penalty Rate cannot be applied here.  What Plaintiffs seek is unprecedented.  What's more: the exact same arguments they advance in their motion were rejected in the last securities class action to return a plaintiff's verdict in this Circuit.  *Compare* Ex. 1[1] (*HsingChing Hsu v. Puma Biotechnology, Inc.*, Plaintiff's Motion for the Award of Prejudgment Interest) *with HsingChing Hsu v. Puma Biotechnology, Inc.*, 2019 WL 4295285, at *2 (C.D. Cal. Sept. 9, 2019).  The arguments failed then and fail now.

Finally, any PJI awarded should be simple, or at most compounded annually like the § 1961 Rate requires.  Plaintiffs cite no private securities class actions applying the daily compounding they seek and offer no persuasive justification why this case should create new precedent in their favor.

The Court should deny the motion.

**ARGUMENT**

**I.     THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR PJI**

Whether to award PJI at all is within the Court's discretion.  *Osterneck*, 489 U.S. at 176. Courts often award no PJI.  *See, e.g.*, *Knapp v. Ernst & Whinney*, 90 F.3d 1431, 1442 (9th Cir. 1996) (district court did not abuse discretion in securities fraud case when it "balanced the equities and determined that [PJI] was not in the interest of justice"); *Turrey v. Vervent, Inc.*, 2024 WL 3251727, at *1–2 (S.D. Cal. June 18, 2024) (declining to award PJI because it "is an element of compensation, not a penalty").

The parties agree that, in determining whether to award PJI, courts consider the following factors:  (1) whether PJI is necessary to compensate the plaintiff fully for his injuries; (2) the degree of wrongdoing on the part of the defendant; (3) the availability of alternative investment opportunities to the plaintiff; (4) whether the plaintiff delayed in bringing or prosecuting the action; and (5) other fundamental considerations of fairness.  *Osterneck*, 489 U.S. at 176; Mot. 2.  The balance of these factors weighs against an award of prejudgment interest here.

---

[1]  All "Ex." citations are to Exhibits to the Declaration of Alex Bergjans, filed concurrently herewith.

## A.    The Degree of Personal Wrongdoing by Defendant Is Low

This factor weighs decisively against an award of PJI.  The Ninth Circuit has held that PJI is properly denied in securities fraud cases where "the evidence point[s] to a state of mind less than a malicious intent to defraud investors."  *Knapp*, 90 F.3d at 1442.  That is the case here.  The Court instructed the jury that Plaintiffs could satisfy the scienter element by proving either that Musk acted "with the knowledge that the statement was false" *or* "with deliberate reckless disregard for whether the statement was true."  Dkt. 524 at 21.  The general verdict is therefore consistent with a finding of recklessness.  Dkt. 538, at 2, 4.  But recklessness is not the "willful intent to defraud" that supports an award of PJI.  *See Vernazza v. SEC*, 327 F.3d 851, 860 (9th Cir. 2003) ("In this Circuit, a violation of Exchange Act § 10(b) and Rule 10b–5 may be supported by 'knowing or reckless conduct,' without a showing of 'willful intent to defraud.'") (quoting *Nelson v. Serwold*, 576 F.2d 1332, 1337 (9th Cir. 1978)).  Critically, the jury rejected Plaintiffs' scheme liability claim—*i.e.*, their theory that Musk "engag[ed] in a scheme to defraud Twitter investors by carrying out fraudulent acts that had the principal purpose and effect of creating a false appearance of fact."  Dkt. 524, at 17–18; Dkt. 538 at 5.  The jury's rejection of the scheme claim strongly indicates that it found Defendant did *not* willfully defraud investors.

To the contrary, the statements on which the jury found Musk liable (his May 13 and 17 tweets) pertain to whether he had a legal right to delay the merger until Twitter produced additional information relating to its calculation of bots as a percentage of mDAU.  The trial record overwhelmingly showed that:  (a) Twitter agreed Musk had such rights, (b) Twitter told Musk it would produce the requested information, (c) the merger was delayed as a result of this process, and (d) Musk did not profit in any way from the statements or the delay.  Trial Tr. at 1281:16–1282:10, 1283:8–16;408:1–9.  The record also showed that Musk believed his statements to be true.  Dkt. 570 at 22–23.  Thus, even if Musk's May 13 and 17 tweets were actionable—and they are not for the reasons explained in Defendant's Rule 50(b) motion (Dkt. No. 570)—they hardly indicate a willful intent to defraud investors.  Plaintiffs agree—they continue to invest in Musk-owned companies to this day, and "trust" Musk with their money.  Trial Tr. at 327:16–24; *see also id.* at 292:24 ("I think in general he's an honest guy.").

Plaintiffs' SEC disgorgement cases (Mot. 3-5) are inapposite because they all share an important feature that is absent here: the defendants obtained and retained the fruits of their fraud.[2] *See e.g. SEC v. Wallace*, 2017 WL 8230026, at \*7 (C.D. Cal. May 8, 2017) (awarding prejudgment interest on defendant's "ill-gotten gains"); *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1099-100 (9th Cir. 2010) (similar); *SEC v. Lee*, 2015 WL 12751703, at \*7 (C.D. Cal. Oct. 28, 2015) (similar). Disgorgement exists to ensure "the wrongdoer should not be allowed to use the withheld benefits or retain interest earned on the funds during the time of the dispute." *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 946 (8th Cir. 1999) ("A common thread throughout the prejudgment interest cases is unjust enrichment"). It follows that if a defendant is found to have made illicit profits from violating the securities laws, PJI is necessary to deprive him of the full benefit of his fraud; not just the principal he wrongfully obtained, but the use of that money during the pendency of the case. That reasoning and remedy have no application here. The case involves a "seller's class," so Musk did not obtain any benefits at the expense of shareholders who chose to liquidate their investments. He never obtained a dollar of class members' proceeds.

*SEC v. Rubin* is instructive on this point. There, the court ordered insider-trading defendants to disgorge profits in an SEC enforcement action following a jury verdict on willful violations of Section 10(b), Rule 10b-5, and Section 17(a). 1993 WL 405428 (S.D.N.Y. Oct. 8, 1993). Yet the court declined to award PJI on portions of the disgorgement where the equities did not justify it: as to the tipper, "because there is no evidence he shared in these profits … or otherwise received value from them," and as to the tippee's customers' profits, "[b]ecause Rubin [the tippee] did not have the

---

[2] Similarly, the non-SEC cases Plaintiffs cite to support prejudgment interest includes those where the "[f]ailure to award prejudgment interest … would approve of an unjust enrichment," *Nichols v. Unum Life Ins. Co. of Am.*, 287 F. Supp. 2d 1088, 1095 (N.D. Cal. 2003), or involve defendants that held onto funds for which they were otherwise not entitled. *See Delis v. Sionix Corp.*, 2015 WL 12734006, at \*2-3 (C.D. Cal. Sept. 29, 2015), *amended*, 2016 WL 6868289 (C.D. Cal. Nov. 18, 2016) (granting default judgment, awarding recessionary damages, prejudgment interest and punitive damages); *Apack, Inc. v. Ko*, 2015 U.S. Dist. LEXIS 133491, at \*4 (C.D. Cal. Sept. 28, 2015) (granting default judgment, awarding plaintiff recessionary damages and prejudgment interest); *Mission Produce, Inc. v. Da Vinci Carriers Inc.*, 2016 U.S. Dist. LEXIS 96838, at \*7–8 (C.D. Cal. July 25, 2016) (granting default judgment, ordering payment of amount owed under contract and prejudgment interest).

use of the money." *Id.* at * 6.  If PJI is unavailable in a willful-fraud disgorgement case where the defendants neither shared in the proceeds nor had use of the funds, it is plainly unavailable here. Musk was not found to have committed willful fraud, he received no proceeds from class members, and he never had use of their money—they took it in cash the day they sold.

### B.    PJI Is Not Necessary To Make Class Members Whole

Full compensation under *Osterneck* means restoring Plaintiffs to the position they would have been in absent the fraud. The jury's out-of-pocket award attempts to do that by purporting to give each class member the difference between what they received and what they would have received at the but-for price.[3]  Awarding interest on top of that figure requires that an additional inference that Plaintiffs would have taken the incremental proceeds and put them to work at some predictable rate of return.  There is no evidentiary basis for that inference here.

This factor also disfavors an award of PJI because every class member received cash at the time of their sale and had immediate, unrestricted use of those proceeds.  Unlike the situation in a buyers' class—where investors' capital is tied up during the class period in a stock they would not have purchased but for the fraud—here, class members obtained cash the moment they sold and were able to invest the proceeds as they saw fit.  Indeed, after selling his Twitter shares in July 2022, Plaintiff Belgrave invested the proceeds in Tesla shares (another company owned by Musk).  Trial Tr. at 327:10–14.  That turned out to be a very profitable investment.  Stacking PJI on top of the jury's compensatory award would compound a windfall, not remedy an injury.  *See, e.g.*, *Knapp*, 90 F.3d at 1441-42 (affirming denial of prejudgment interest in securities fraud class action because of "the speculative nature of prejudgment interest in this case.").

---

3   Of course, the jury's damages verdict did no such thing because Plaintiffs did not provide the jury with the appropriate but-for price: "the price at which the stock would have sold had the statement or fraudulent acts reflected the true state of affairs." *Compare* Dkt. No. 524 at 27 *with* Trial Tr. at 1902:20–1903:9 (Tabak) (admitting he "just compar[ed] if Mr. Musk had said nothing versus what Mr. Musk said."). The damages verdict also improperly charged Defendant for declines in Twitter's stock price caused by market and industry effects, thereby overcompensating investors. The jury's verdict is unsupported by sufficient evidence as a matter of law, *see* Dkt. No. 570 at 10-14, and need not be further inflated by the unjust award of PJI.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR THE AWARD OF PREJUDGMENT INTEREST

**C.    Other Considerations of Fairness Weigh Against Awarding PJI**

Fairness considerations also weigh against awarding PJI.  Plaintiffs were active day-traders who kept themselves well-informed of the Twitter merger.  Trial Tr. at 280:8–25 (Belgrave), 1367:6–15 (Price).  They bought into Twitter only after the announcement that Musk was planning to buy it, with the hope that they could achieve "merger arbitrage"—*i.e.*, earn a quick profit over the course of a few months buying Twitter stock at the market price and selling it to Musk a few months later at the $54.20 merger price.  The fact that the market price was lower than the merger price in the months after Musk's announcement reflected the *risk* that the deal would not close.  Plaintiffs knowingly assumed that risk with the hope of making a profit.  Indeed, each Plaintiff bought Twitter shares *after* the May 13 tweet, at prices reflecting the very decline they now claim was fraudulent.  Trial Ex. 744.  Belgrave, for example, bought 15,000 shares across three transactions between May 13 and June 24, explaining: "Why don't I just buy them for 38 and cash them in at 54 when the deal goes through."  Trial Tr. at 290:22–291:3 (Belgrave).  His May 19 investment diary went further:  he "[j]ust need[ed] Elon to renegotiate a sales price at 44." *Id.* at 299:2–6.  Belgrave knew Musk had publicly waived due diligence before he made his first ever Twitter investment, *id.* at 286:16–23, knew Musk had floated a 25% price cut and might try to renegotiate the merger price, *id.* at 300:24–301:18, and conceded he "wasn't tricked" into buying or selling his shares. *Id.* at 301:24–302:24.  After selling, Belgrave used proceeds to buy Tesla stock—reinvesting in the very CEO he accused of defrauding him. *Id.* at 327:10–14.  Belgrave even conceded that he continued to invest in Tesla because he still "trusted" Defendant. *Id.*

Awarding years of interest to traders who positioned themselves to profit from the alleged fraud—and to plaintiffs who reinvested their proceeds from the sale of Twitter shares into another company owned and run by the alleged fraudster—is not equity.  It insures them against a risk they knowingly undertook, and thus results in a windfall.

Because the *Osterneck* factors weigh against an award, the Court should exercise its discretion and award no PJI.

## II.     ANY PJI SHOULD BE CALCULATED USING THE DEFAULT TREASURY RATE

As explained above, courts awarding PJI in the Ninth Circuit presumptively apply the § 1961 Rate, *W. Prac. Fisheries*, 730 F.2d at 1289, and in private securities class actions the Tax Rate is the only rate applied, *Puma Biotechnology*, 2019 WL 4295285, at *2 (awarding prejudgment interest at the  § 1961 Rate in a private securities fraud class action); Ex. 2, *In re Apollo Group Inc. Sec. Litig.*, No. 2:04-cv-2147, Dkt. 508 (D. Ariz. Jan. 30, 2008) (awarding prejudgment interest at the § 1961 Rate), *vacated on other grounds*, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008) (granting judgment for defendants as a matter of law)); *Warfield v. Alaniz*, 2007 WL 2051535, at *3 (D. Ariz. July 16, 2007) (applying § 1961 Rate in securities fraud case).  The Court may use a rate other than the § 1961 Rate only if it makes a specific finding, "on substantial evidence, that the equities of the particular case require a different rate." *W. Pac. Fisheries*, 730 F.2d  at 1289.  Plaintiffs offer no such evidence.

Tellingly, Plaintiffs cite no private securities case applying the Tax Penalty Rate for PJI. That is because the Tax Penalty Rate "***has never been used in a private federal securities action under Section 10(b).***"  *In re Vivendi*, 284 F.R.D. at 163 (rejecting Tax Penalty Rate in favor of § 1961 Rate) (emphasis added); *see Puma Biotechnology*, 2019 WL 4295285, at *2 (rejecting Tax Penalty Rate in favor of § 1961 Rate).  The *Vivendi* court explained that the Tax Penalty Rate is used "in SEC enforcement actions for disgorgement" but it is not appropriate in private securities fraud cases because it "is ***intentionally punitive*** to discourage taxpayers from using the government as an involuntary banker by deferring payment of taxes." *In re Vivendi*, 284 F.R.D. at 163 (emphasis added).  The Tax Penalty Rate thus has no application here because any PJI awarded must serve as "an element of compensation, ***not a penalty***." *W. Prac. Fisheries*, 730 F.2d at 1288 (emphasis added).  Even Plaintiffs concede that "[t]he purpose of [PJI] ***is not to punish*** Defendant or reward Class members." Mot. 2.  Plaintiffs' request for application of the Tax Penalty Rate should thus be denied.

The SEC enforcement cases Plaintiffs cite to support application of the Tax Penalty Rate are inapposite for similar reasons.  To start, the SEC has a longtime rule, codified at 17 C.F.R. § 201.600(b), adopting the Tax Penalty Rate for "prejudgment interest on orders of disgorgement in

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR THE AWARD OF PREJUDGMENT INTEREST

all administrative proceedings." *Platforms Wireless*, 617 F.3d at 1099; *see also SEC v. Nevatia*, 2015 WL 6912006 (N.D. Cal. Oct. 19, 2015), *report and recommendation adopted*, 2015 WL 6871869 (N.D. Cal. Nov. 9, 2015) ("The SEC has adopted the prejudgment interest rate set forth at 26 U.S.C. § 6621(a)(2), which by its terms governs underpayment of taxes."). In the SEC disgorgement cases Plaintiffs cite, the courts simply applied that rule. But it does not apply to private securities class actions, whose presumptive interest rate is the § 1961 Rate.

Plaintiffs offer no good reason for the Court to deviate from then § 1961 rate in favor of the Tax Penalty Rate here. As the Ninth Circuit explained in *Platforms Wireless*, the rationale for applying the Tax Penalty Rate in SEC disgorgement actions is that those defendants "unlawfully receive[] money from investors" which is "the rough equivalent of receiving an 'interest free loan.'" *Platforms Wireless*, 617 F.3d at 1099; *see also Sabrdaran*, 252 F. Supp. 3d at 904 ("[T]he defendant essentially obtains an unsecured loan [from investors] through his fraudulent scheme because he makes use of the profits obtained through the fraud."). In those cases, "[the proper measurement of the benefit of the 'loan' is the interest rate the defendants would have otherwise paid to finance their business operations with a comparable, ***unsecured loan***"—i.e., a risky and uncollateralized loan that comes with a very high rate of interest. *Platforms Wireless*, 617 F.3d at 1099 (emphasis added); *see also SEC. v. Gowrish*, 2011 WL 2790482, at *8-9 (N.D. Cal. July 14, 2011), *aff'd*, 510 F. App'x 588 (9th Cir. 2013) (same); *SEC. v. Olins*, 762 F. Supp. 2d 1193, 1198 (N.D. Cal. 2011), *as amended* (Feb. 25, 2011) (similar). The Tax Penalty Rate "is a reasonable proxy for the interest rate that would ordinarily be charged on an unsecured loan" and is thus appropriate in those circumstances. *Platforms Wireless*, 617 F.3d at 1099.

Defendant "borrowed" nothing, took nothing, and received nothing from class members so this reasoning simply does not apply. Plaintiffs claim that the alleged misrepresentations deflated the price of Twitter securities, but they concede that he did not buy a single share of stock during the Class Period. And he closed the Merger at the original $54.20 price, gaining nothing from his purported misconduct that must be disgorged or paid back at an unsecured interest rate. Moreover, the Ninth Circuit has squarely held, outside the SEC disgorgement context, that any PJI awarded should reflect "the income which the monetary damages would have earned, and that should be

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR THE AWARD OF PREJUDGMENT INTEREST

measured by interest on short-term, ***risk-free*** obligations." *W. Pac. Fisheries*, 730 F.2d at 1288 (emphasis added). The only "risk-free obligations" are Treasury bills and the interest rate on short term Treasury bills is precisely what the § 1961 Rate incorporates. *See* 28 U.S.C. § 1961(a) ("Such interest shall be calculated … at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve"). In short, Plaintiffs seek to apply a rate commensurate with a risky "unsecured loan," the Tax Penalty Rate, but the Ninth Circuit mandates the rate be commensurate with a "short-term, risk free obligation"—the § 1961 Rate.

The only non-SEC cases Plaintiffs cited as examples of a court applying a rate higher than the § 1961 Rate are plainly irrelevant and should be given no weight. None of these cases were class actions, two had nothing to do with securities claims, and all three involved uncontested default judgments. *Delis*, 2015 WL 12734006, at *2; *Apack*, 2015 U.S. Dist. LEXIS 133491, at *4 (breach of contract); *Mission Produce*, 2016 U.S. Dist. LEXIS 96838, at *7-8 (breach of contract). In the breach of contract cases, the courts either provided no explanation for setting a higher interest rate, *Apack,* 2015 U.S. Dist. LEXIS 133491, at *4, or did so to deter a frequently defaulting defendant, *Mission Produce*, 2016 U.S. Dist. LEXIS 96838, at **7-8. And in *Delis*, the sole securities case, the court set higher rates because the plaintiff had "provided sufficient evidence that" its investment in a "convertible note" with a set rate of eight percent interest per year would have earned that rate, *Delis*, 2015 WL 12734006, at *2. There is no such evidence or certainty here. As discussed above, the Class Representatives were day traders who invested in highly volatile securities—like Tesla—and can hardly argue that they would have received a high rate from "risk-free obligations" with any certainty. *W. Pac. Fisheries*, 730 F.2d at 1288. It would be pure speculation to assume that, but for the alleged fraud, Plaintiffs would have earned more than the § 1961 Rate on their purported losses.

Plaintiffs also argue that the Tax Penalty Rate is "substantially lower than the interest rate Musk pays on the loans he secured to finance the Twitter buyout." Mot. at 7. But the rate Defendant negotiated to finance an extraordinary and highly-leveraged transaction—one of the largest public-company acquisitions in history, sold to an individual no less—obviously has no bearing on compensating class members. There is no law even suggesting that the interest rate a defendant

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR THE AWARD OF PREJUDGMENT INTEREST

pays for its business loans has any relevance to the PJI analysis—the only case Plaintiffs cite imposed the prime rate where the court made "an interest adjustment of attorneys' fees to compensate for delay in payment" and bears no similarity to the facts of this case. *Termine ex rel. Termine v. William S. Hart Union High Sch. Dist.*, 288 F. App'x 360, 363 (9th Cir. 2008). And other courts have not even considered it as a factor even plaintiffs expressly raise it. *Compare* Ex. 1 at 9 (*Puma Biotechnology* PJI Motion) (arguing the Tax Penalty Rate is "substantially lower than the interest rate Puma pays on its own loans.") *with Puma Biotechnology*, 2019 WL 4295285, at *2 (imposing the § 1961 rate). Moreover, Defendant did not borrow anything from Plaintiffs and there is no evidence suggesting that they could command similar interest rates to those that banks charged Defendant for lending him billions of dollars to take Twitter private.

Just as irrelevant is Plaintiffs' argument that the Tax Penalty Rate should be used because the § 1961 Rate "reflects the fact that short-term Treasury rates were kept historically low in the wake of the 2008 financial crisis." Mot. at 6. Plaintiffs cite two cases for this proposition, which were decided in 2010 and 2011—when interest rates were ***actually affected by*** the 2008 financial crisis. Plaintiffs offer no explanation for why, almost twenty years later, the § 1961 Rate would still be affected by the 2008 financial crisis. Nor could they since it is common knowledge that the Treasury Rate was far higher in the fourth quarter of 2022 than it was during the financial crisis. *See* Julian Kozlowski & Samuel Jordan-Wood, *The Many Interest Rates in 2022*, Fed. Rsrv. Bank of St. Louis: On the Economy (Jan. 12, 2023), https://www.stlouisfed.org/on-the-economy/2023/jan/many-interest-rates-2022. Plaintiffs' themselves argued at trial that Defendant was motivated to engage in a scheme to commit fraud in response to the stock market correction in May 2022 that was attributed to a jump in interest rates and fears they rise even higher (which they did). Trial Tr. 211:10-17 (Plaintiffs' Opening); *e.g.,* Anna Hirtenstein & Hardika Singh, *Dow Falls as Inflation Worries Weigh on Markets*, The Wall Street Journal (May 12, 2022 6:25 PM) https://www.wsj.com/finance/stocks/global-stocks-markets-dow-update-05-12-2022-11652341141 (market fell on May 12, 2022 "driven by worries that the Federal Reserve will hamper growth in its effort to bring inflation under control."). And Plaintiffs do not explain why courts continue to

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR THE AWARD OF PREJUDGMENT INTEREST

presumptively apply the § 1961 Rate if there is a judicial consensus that the rate remains "historically low" even twenty years later.

Indeed, in *Puma Biotechnology* the court rejected ***the exact same argument*** when advanced by the prevailing plaintiffs in a securities fraud class action arising from alleged misstatements made in 2015, when the Treasury Rate was at ***0.26 percent***. *Compare* Ex. 1 at 7, 10 (*Puma Biotechnology* PJI Motion) *with Puma Biotechnology*, 2019 WL 4295285, at *2. In 2015, the prospect that the § 1961 Rate was actually impacted by the financial crisis years earlier made more sense (unlike here); but the court still held that "the post-judgment interest rate under 28 U.S.C. § 1961(a) is the more appropriate rate for prejudgment interest" because the "equities of the particular case" did not require a different rate. 2019 WL 4295285, at *2.

Plaintiffs' contention that the Tax Penalty Rate "is conservative, as it is significantly ***less*** than what class members would have received on investments in the stock market over the past four years" (Mot. 1, 8), is similarly meritless and speculative. That argument—which was also rejected when made word-for-word in *Puma Biotechnology*, *compare* Ex. 1 (*Puma Biotechnology* PJI Motion) at 1 *with Puma Biotechnology*, 2019 WL 4295285, at *2—might have legs if Plaintiffs supported it with evidence that Plaintiffs and class members would have invested their Twitter share proceeds in index funds or similar investments that tracked the stock market as a whole, but the record is to the contrary. Plaintiffs were day traders who made big, risky bets on single stocks, *see e.g.*, Ex. 3, Garret Dep. at 70:25-71:4 ███████████ ██████████████████████████████ ██████████████████████████ and offer no evidence how other, absent class members invested. Their assertion that they would have earned more than both the § 1961 Rate and the Tax Penalty Rate on the amounts at issue is thus entirely speculative and an improper basis for an award of PJI. *Knapp*, 90 F.3d at 1441. It is equally possible that Plaintiffs and class members would have invested their proceeds in stocks that ***declined***. For this reason, the Ninth Circuit holds that the § 1961 Rate is a more principled estimate of what class members could have earned on their cash proceeds. *Nelson v. EG & G Energy Measurements Grp., Inc.*, 37 F.3d

1384, 1392 (9th Cir. 1994) (explaining that the § 1961 Rate "reasonably reflects the conservative investment income the plaintiffs would have been able to have earned").

"[I]n light of this circuit's strong policy in favor of the Treasury bill rate, any departure from it must be accompanied by reasoned and substantial justification." *Transbay Auto Serv., Inc. v. Chevron U.S.A., Inc.*, 2013 WL 843036, at *10 (N.D. Cal. Mar. 6, 2013); *see also Blanton v. Anzalone*, 813 F.2d 1574, 1576 (9th Cir. 1987) (remanding with instruction to apply § 1961). Plaintiffs' reliance on inapposite disgorgement cases, unfounded and simply inaccurate claims about the impact of the 2008 financial crisis on Q4 2022 interest rates, and rank speculation about their and absent class member's potential returns on purported losses "failed to demonstrate substantial equities sufficient to overcome the strong presumption against departing from the Treasury bill rate." *See Transbay Auto Serv.* 2013 WL 843036, at *10. The same arguments that failed in *Puma Biotechnology* fail here too. *See* 2019 WL 4295285, at *2.

The weight of authority in this Circuit—unbroken and unanimous in private securities class actions, *e.g.*, *Puma Biotechnology*, 2019 WL 4295285, at *2; *see also In re Vivendi*, 284 F.R.D. at 163—rejects applying the Tax Penalty Rate to PJI. *See e.g., Erhart v. BofI Holding, Inc.*, 2023 WL 6382479, at *9 (S.D. Cal. Sept. 28, 2023) (finding itself "unpersuaded that § 6621's large corporate underpayment rate should apply" where plaintiff did "not demonstrate the equities justify using § 6621's rate."); *Santos v. Minnesota Life Ins. Co.*, 571 F. Supp. 3d 1120, 1133 (N.D. Cal. 2021) ("The default rate applies where there is insufficient evidence to convince the court that the equities of this particular case require a different rate."), *judgment entered*, 2021 WL 5371416 (N.D. Cal. Nov. 15, 2021); *F. v. Blue Shield of California*, 2016 WL 1059459, at *5 (N.D. Cal. Mar. 17, 2016) (awarding the Treasury rate where "Plaintiffs have not met the 'substantial evidence' standard for increasing the amount of prejudgment interest above the statutory default rate."). Plaintiffs offer no reason for this Court to be the outlier.

## III.   ANY PJI SHOULD BE SIMPLE INTEREST OR COMPOUNDED ANNUALLY

If Plaintiffs are awarded PJI at all, it should be simple interest. They offer no explanation for why they should be entitled to anything more. At most, interest should be compounded annually, which is what the courts awarded in the key cases on which Plaintiffs rely, and what § 1961

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR THE AWARD OF PREJUDGMENT INTEREST

explicitly provides. *See, e.g.*, *Puma Biotechnology, Inc.*, 2019 WL 4295285, at *2 ("[T]he Treasury Bill rate should be compounded annually as the statute provides"); *In re Vivendi*, 284 F.R.D. at 163; 28 U.S.C. § 1961(b) ("Interest shall be … compounded annually.").

The Court should reject Plaintiffs' demand for daily compounding.  They cite no private securities class action awarding daily compounding; none appear to exist.  In fact, the only case they cite for daily compounding is yet another uncontested default judgment, this time involving claims for unpaid benefits under ERISA.  *See* Mot. at 10 (citing *Trs. of the Operating Eng'rs Pension Tr. v. Munson Plumbing, Inc.*, 2011 WL 245732, at *4 (C.D. Cal. Jan. 21, 2011)).  That case has no relevance here either because ERISA, unlike the PSLRA, expressly provides that PJI be calculated with daily compounding interest.  *See e.g., Trs. of S. California IBEW-NECA Pension Plan v. Electro Dynamic Servs., Inc.*, 2008 WL 11338230, at *4 (C.D. Cal. Oct. 14, 2008) (citing 29 U.S.C. § 1132 (g)).  Plaintiffs are not entitled to and have no basis to demand daily compounding here.

## CONCLUSION

The Motion should be denied.  In the alternative, any award of PJI should be limited to simple interest at the § 1961 Rate.

DATED:  May 15, 2026                    QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP


                                        By _____ */s/ Stephen A. Broome* _____
                                            Alex Spiro
                                            Michael T. Lifrak
                                            Stephen A. Broome
                                            Ellyde R. Thompson
                                            Jesse A. Bernstein
                                            Alex Bergjans


                                        *Attorneys for Defendant Elon Musk*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on Friday, May 15, 2026.

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By /s/ Stephen A. Broome
   Alex Spiro
   Michael T. Lifrak
   Stephen A. Broome
   Ellyde R. Thompson
   Jesse A. Bernstein
   Alex Bergjans

   *Attorneys for Defendant Elon Musk*

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR THE AWARD OF PREJUDGMENT INTEREST

**ATTESTATION**

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories herein.

By /s/ Alex Bergjans
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR THE AWARD OF PREJUDGMENT INTEREST