QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Ellyde R. Thompson (*pro hac vice*)
ellydethompson@quinnemanuel.com
Jesse A. Bernstein (*pro hac vice*)
jessebernstein@quinnemanuel.com
295 Fifth Ave., New York, NY 10010
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

*Attorneys for Defendant Elon Musk*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF CLASS NOTICE OF VERDICT AND CLAIMS ADMINISTRATION PROCEDURE**<br><br>Date: June 18, 2026<br>Time: 10:00 am<br>Courtroom: 6, 17th Floor<br>Judge: Hon. Charles R. Breyer |

**REDACTED FOR PUBLIC FILING**

Case No. 3:22-CV-05937-CRB

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ........................................................................................ iv

ARGUMENT .............................................................................................................1

I.     PLAINTIFFS' PROPOSAL UNLAWFULLY PREVENTS DEFENDANT FROM CHALLENGING INDIVIDUAL RELIANCE IN A PHASE II OF THIS ACTION ...........1

     A.     Defendant Is Entitled To Rebut The Presumption Of Reliance For Each Individual Class Member ...............................................................................1

     B.     Defendant Is Entitled To Reasonable Discovery To Rebut The Presumption ...........2

     C.     Phase II Discovery Is Likely To Have A Significant Impact On The Judgment .....................................................................................................6

II.     PLAINTIFFS' PROPOSAL FOR IDENTIFYING AND CALCULATING DAMAGES IS IMPROPER...........................................................................................8

III.     PLAINTIFFS' PROPOSED CLAIM PROCESS IS DEFICIENT ...................................10

     A.     The Claims Administrator's "Validation Process" Is Insufficient ..........................10

     B.     The Notice Of Verdict Is Inaccurate, Incomplete, And Misleading .......................13

     C.     The Court Should Not Permit Late Filed Claims.......................................................13

     D.     The Proposed Schedule Does Not Allow Sufficient Time For Defendant To Evaluate And Challenge Claims Individual Claims...............................................14

IV.     THE COURT SHOULD APPOINT A SPECIAL MASTER TO CONDUCT PHASE II...........................................................................................................14

V.     THE COURT SHOULD NOT ORDER DEFENDANT TO PAY COSTS NOW ..............15

CONCLUSION .........................................................................................................15

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF CLAIMS ADMINISTRATION PROCEDURE

## TABLE OF AUTHORITIES

**Page**

### Cases

*In re Apollo Group, Inc. Sec. Litig.*
No. CV 04-2147-PHX-AT (D. Ariz. Dec. 19, 2011) ................................................................. 9

*Arenson v. Broadcom Corp.*,
2004 WL 3253646 (C.D. Cal. Dec. 6, 2004) ........................................................................... 9

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .......................................................................... 1, 2, 3, 4, 6, 7

*Carter v. Anderson Merchandisers, LP*,
2010 WL 144067 (C.D. Cal. Jan. 7, 2010).............................................................................. 13

*In re eSpeed Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005)................................................................................................ 9

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015)................................................................................................. 3, 4

*Gruber v. Gilbertson*,
647 F. Supp. 3d 100 (S.D.N.Y. 2022). .................................................................................. 10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ...................................................................................... 1, 3, 4, 7, 12

*Hill v. Tribune Co.*,
2005 WL 3299144 (N.D. Ill. Oct. 13, 2005)........................................................................... 8

*Hoffmann–La Roche Inc. v. Sperling*,
493 U.S. 165 (1989) .............................................................................................................. 13

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
2019 WL 4295285 (C.D. Cal. Sept. 9, 2019)................................................................... 2, 8, 9

*Hsu v. Puma Biotechnology, Inc.*,
2021 WL 2644100 (C.D. Cal. June 11, 2021)........................................................................... 5

*Hunt v. Enzo Biochem, Inc.*,
530 F. Supp. 2d 580 (S.D.N.Y. 2008)...................................................................................... 8

*Jaffe v. Household Int'l Inc.*,
2009 WL 9157892 (N.D.Ill. Jan. 30, 2009) ................................................................ 2, 3, 4, 6, 9

*Jaroslawicz v. Engelhard Corp.*,
724 F. Supp. 294 (D.N.J. 1989) .............................................................................................. 1

Case No. 3:22-CV-05937-CRB

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF CLAIMS ADMINISTRATION PROCEDURE

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
  2005 WL 3801463 (N.D. Ill. Apr. 18, 2005) ............................................................ 3

*Lawrence Jaffe Pension Plan v. Household Int'l, Inc.*,
  756 F. Supp. 2d 928 (N.D. Ill. 2010) ................................................................... 10

*Malone v. U.S. Postal Serv.*,
  833 F.2d 128 (9th Cir. 1987) ................................................................................ 5

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ............................................................................................ 3

*On the House Syndication, Inc. v. Fed. Exp. Corp.*,
  203 F.R.D. 452 (S.D. Cal. 2001) .......................................................................... 3

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) .......................................................................................... 15

*In re Scott Paper Co. Sec. Litig.*,
  142 F.R.D. 611 (E.D. Pa. 1992) .......................................................................... 6

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ............................................................................................ 3

*United States v. Tafollo-Cardenas*,
  897 F.2d 976 (9th Cir. 1990) ............................................................................. 11

*In re Vivendi Universal, S.A. Sec. Litig.*,
  284 F.R.D. 144 (S.D.N.Y. 2012)............................................... 3, 4, 6, 8, 13, 14, 15

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011)...................................................... 2, 4, 6, 10

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................................ 3

## Statutes and Rules

15 U.S.C. 78bb(a)................................................................................................ 10

Fed. R. Civ. P. 16 ................................................................................................ 5

Fed. R. Civ. P. 23 ................................................................................................ 3

Fed. R. Civ. P. 53 .............................................................................................. 14

Fed. R. Evid. 803(6)........................................................................................... 11

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF CLAIMS ADMINISTRATION
PROCEDURE

**SUMMARY OF ARGUMENT**

It is beyond dispute that a jury verdict on class-wide issues does not resolve the question of liability in a private securities class action under Rule 10b-5. The Supreme Court has long held, and reaffirmed, that after a plaintiff establishes the class-wide fraud-on-the-market presumption of reliance, a defendant must be permitted to attempt to rebut the presumption of class members on an individual basis. *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014) ("*Halliburton II*") ("*Basic* does afford defendants an opportunity to rebut the presumption of reliance with respect to an individual plaintiff by showing that he did not rely on the integrity of the market price in trading stock."); *see also Jaroslawicz v. Engelhard Corp.*, 724 F. Supp. 294, 301 (D.N.J. 1989) ("[The court] must allow defendants to rebut the claimed reliance of each and every class member."). Doing so requires a second, post-trial phase ("Phase II") with discovery and separate jury trials as necessary. *Jaffe v. Household Int'l Inc.,* 2009 WL 9157892 (N.D.Ill. Jan. 30, 2009) ("The rebuttal of the presumption of reliance on an individual basis under *Basic* raises fact questions as to **which discovery and a jury trial are required**.") (emphasis added).

But Plaintiffs' Proposed Notice of Verdict and Claims Administration Procedure pretend that these requirements do not exist. They have repackaged a process from settlement classes that ignores Defendant Elon Musk's rights to challenge the individual reliance of the class members. They fail to accurately inform class members that their claims may be subject to challenge, discovery, and further adjudication. And they propose a schedule and process that gives Defendant only ***thirty days*** to analyze, identify, and raise with the Court potential claims for challenge—both on reliance and damages issues—from the more than ***170,000*** potential class members who will be sent notice. Dkt. 576-03, ¶ 25 (explaining that notice "will be directly mailed to 171,578 individuals and entities"). Their proposed process is abjectly unreasonable on its face and contrary to law. The Court should reject it.

Plaintiffs' arguments that Defendant has somehow forfeited his right to rebut the presumption on an individualized basis by failing to seek this process before trial are illogical and meritless. There is no requirement that it be raised in any pretrial order, *In re Vivendi Universal,*

*S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 586 (S.D.N.Y. 2011), and it is well recognized that the time to make this request and seek this discovery is post-trial, *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 2005 WL 3801463, at *4 (N.D. Ill. Apr. 18, 2005).  Nor is there any merit to their contention that Defendant should be precluded from a Phase II because he will be unable to rebut the presumption as to individual class members.  The Court found that he already has, Dkt. No. 106 at 9 (holding Defendant rebutted the presumption as to proposed Class Representative Steve Garrett), and there is good reason to believe he will be able to as to a number of large financial institutions who were involved with—and knew the true state of affairs regarding—the Twitter Merger.  *See* Exs. 1-2.[1]

Instead of adopting Plaintiffs' defective and unfair proposal, the Court should adopt a fair process in line with how other courts have administered Phase II in securities class actions.  It should allow Defendant sufficient time—120 days—to evaluate and identify claims for challenge and appoint a special master to oversee Phase II, including reasonable discovery and the adjudication of any disputed claim.  *See In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 155 (S.D.N.Y. 2012) (ordering Phase II discovery process and appointment of a special master).

This is not the only serious flaw with Plaintiffs' proposed Notice and Claims Administration Process that must be remedied.  Plaintiffs' propose that damages be calculated using the First-In-First-Out ("FIFO") method of matching Class Period transactions even though courts "have generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases," *In re Vivendi*, 284 F.R.D. at 160, because it improperly results in windfall profits for plaintiffs, *HsingChing Hsu v. Puma Biotechnology, Inc.*, 2019 WL 4295285, at *5 (C.D. Cal. Sept. 9, 2019).  This case is no different.  The Court should reject this proposal and require damages to be calculated using the Last-In-First-Out ("LIFO") method, consistent with the majority approach.

The Court should also correct other defects in Plaintiffs' proposal before notice is issued.  Plaintiffs ask the Court to adopt a claims administration process that does not require claimants to

---

[1]  All "Ex." citations are to Exhibits to the Declaration of Alex Bergjans, filed concurrently herewith.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF CLAIMS ADMINISTRATION PROCEDURE

produce documentary proof that they even made the trades for which they seek damages and contemplates distributing funds without reviewing each and every claim submitted. It is axiomatic that any claim for damages be substantiated by admissible evidence; that should be required here. The Court should also reject Plaintiffs' proposal that class members be permitted to submit claims in perpetuity. An open-ended claims process like the one Plaintiffs' seek is "simply absurd." *In re Vivendi*, 284 F.R.D. at 160. Finally, it is premature to order Defendant to pay the cost of the claims process—the Court can only do so after liability has been "conclusively determined," i.e. after the resolution of Defendant's pending Rule 50 and 59 motions. *Id.* at 155. And if Defendant will be required to cover the cost of the process, the Court should order the proposed Claims Administrator to present a budget and fee schedule and permit oversight to keep costs under control.

The Court should only approve a Notice and Claims Administration Process that comports with *Basic*, the Seventh Amendment, and due process. Plaintiffs' proposal does not come close. The Court should reject it, adopt Defendant's proposed process, and appoint a special master to administer Phase II in accordance with the law.

## ARGUMENT

### I.     PLAINTIFFS' PROPOSAL UNLAWFULLY PREVENTS DEFENDANT FROM CHALLENGING INDIVIDUAL RELIANCE IN A PHASE II OF THIS ACTION

At the outset, the Court must reject Plaintiffs' Proposed Claims Administration Procedure because it fails to account for Defendant's right to challenge each purported claimant and rebut the presumption of reliance on an individual basis.  Plaintiffs have purportedly identified more than 170,000 potential claimants, yet they propose giving Defendant only thirty days to evaluate and challenge those claims before the Court approves the distribution of funds.  The proposal gives such short shrift to Defendant's rights to rebut the presumption that it renders them a nullity.

### A.     Defendant Is Entitled To Rebut The Presumption Of Reliance For Each Individual Class Member

A trial on class-wide liability issues is not the end of the inquiry to establish liability in a securities fraud class action.  The Court is required, post-verdict, to afford Defendant the opportunity to challenge whether each individual claimant seeking damages relied on the integrity of Twitter's market price or the alleged misrepresentations when they bought and sold securities during the Class Period.  *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988); *see also Jaroslawicz v. Engelhard Corp.*, 724 F. Supp. 294, 301 (D.N.J. 1989) ("[The court] must allow defendants to rebut the claimed reliance of each and every class member. Otherwise proof of [lead plaintiffs'] own 'non-rebuttable' reliance will become conclusive as to all other class members. This result would let a 'scheme of investor's insurance' into securities law through the back door.").

As the Supreme Court has repeatedly held, the fraud-on-the-market presumption of class-wide reliance is just that, a presumption—and one that can be rebutted both class-wide and individually.  *Basic*, 485 U.S. at 248–49; *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014) ("*Basic* does afford defendants an opportunity to rebut the presumption of reliance with respect to an individual plaintiff by showing that he did not rely on the integrity of the market price in trading stock.").  Even after a jury has returned a verdict finding that the presumption applies and has not been rebutted class-wide—a verdict the jury in this case did not render, *see* Dkt. Nos. 538 and 571—a defendant is entitled to test and rebut the presumption as to individual claimants "who would have divested themselves of their [Twitter] shares without relying on the integrity of the

1                                                                          Case No. 3:22-CV-05937-CRB

market," i.e., those who did not believe the May 13 tweet but "sold [their] shares nevertheless because of other unrelated concerns." *Basic*, 485 U.S. at 249.

This is not controversial and should not be disputed. "[C]ourts in securities fraud actions have consistently recognized that issues of individual reliance can and should be addressed after a class-wide trial, through separate jury trials if necessary." *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 584–85 (S.D.N.Y. 2011) (collecting cases), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016). Plaintiffs' own authority—attached as Exhibit 1 to counsel's declaration—recognizes that "[t]he rebuttal of the presumption of reliance on an individual basis under *Basic* raises fact questions as to which discovery and a jury trial are required." *Jaffe v. Household Int'l Inc.,* 2009 WL 9157892 (N.D.Ill. Jan. 30, 2009) (cited at Dkt. No. 567-1 at 12). And even the principle case upon which they rely, *HsingChing Hsu. v. Puma Biotechnology, Inc.*, recognized that "the verdict doesn't settle the question of whether [d]efendants may rebut the presumption as to absent class members. And [d]efendants have a right to challenge reliance on an individualized basis." 2019 WL 11637311, at *1 (C.D. Cal. May 22, 2019).

There is not "a single case in which a court in a securities fraud class action has precluded a defendant from contesting issues of individualized reliance after a class-wide trial on liability issues, where issues of individual reliance were not litigated as part of the class-wide trial and where the defendant asserted an intent to challenge individual reliance issues after the class-wide trial." *In re Vivendi*, 765 F. Supp. 2d at 586, n. 64.[2] By limiting Defendant to a mere thirty days to identify and challenge the individual reliance of more than ***170,000 potential class members*** and proposing a post-verdict process that does not contemplate discovery, adjudicating reliance issues, or separate jury trials as necessary, Plaintiffs demand that this case be the first. The law prohibits such a process.

**B.    Defendant Is Entitled To Reasonable Discovery To Rebut The Presumption**

As Plaintiffs' own cited authority holds, "[t]he rebuttal of the presumption of reliance on an individual basis under *Basic* raises fact questions as to which ***discovery*** and a jury trial are ***required***."

---

[2]  Plaintiffs do not dispute that Defendant repeatedly asserted an intent to challenge individual reliance issues after the class-wide trial. For good reason, Defendant did. *See e.g.*, Dkt. Nos. 544, 549, 559; Ex. 4 at 21 (objecting to "request for the identity of unnamed class members").

*Household,* 2009 WL 9157892 (emphasis added). Such a requirement makes perfect sense. A defendant is entitled to rebut the presumption on an individual basis after the class-wide trial, *see Basic*, 485 U.S. at 248-49; *Halliburton II*, 573 U.S. at 276, and such a right would be illusory if a defendant could not take the necessary discovery to do so. Rule 23 does not prevent a defendant from "litigat[ing] its statutory defenses on individual claims," *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 367 (2011), or bar it from litigating "defenses peculiar to some individual class members" at a later stage of the litigation, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016). And due process requires that a litigant be given "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Of course, the most meaningful time to mount a challenge to the individual reliance of absent class members is after the trial on class-wide liability. *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 2005 WL 3801463, at *4 (N.D. Ill. Apr. 18, 2005) ("[T]he most efficient and expeditious manner of managing [securities class action] litigation is to delay discovery into individualized issues until after class-wide liability has been determined."); *see also On the House Syndication, Inc. v. Fed. Exp. Corp.*, 203 F.R.D. 452, 458 (S.D. Cal. 2001) ("[T]he most appropriate time to gather any necessary information from individual class members is generally after a determination of liability and before payment of individual claims."). That is why, in both *Vivendi* and *Household*, defendants were permitted to conduct reasonable discovery into absent class members as part of the Phase II challenge of individual reliance after the initial trial on class-wide liability. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 431 (7th Cir. 2015) (explaining that defendant was given 120 days to conduct written, deposition, and document discovery in Phase II); *In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 155 (S.D.N.Y. 2012) (ordering Phase II discovery process and appointment of a special master). The same should happen here.

Plaintiffs' arguments that "there is no statutory right to post-trial discovery" and that Defendant was required to preserve the ability to conduct Phase II discovery during the class phase of this action are unavailing. That the PSLRA and Exchange Act do not expressly provide for a second phase of discovery after the initial trial on class-wide liability is irrelevant. Neither statute expressly permits the fraud-on-the-market exception to begin with. It is a judicial invention; there

3

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF CLAIMS ADMINISTRATION PROCEDURE

is "no statutory right" to class-wide reliance either. *Basic*, 485 U.S. at 257 (White, J., dissenting in part) ("Congress has not passed on the fraud-on-the-market theory the Court embraces today."). But when affirming the viability of the presumption, the Supreme Court mandated that a defendant be permitted to rebut reliance of individual plaintiffs, *id.* at 248-49; *Halliburton II*, 573 U.S. at 276, and courts have held that discovery is "required" to do so. *Household,* 2009 WL 9157892.

Plaintiffs' attempt to distinguish *Household* and *Vivendi* by arguing that the defendants in *Household* sought absent class member discovery before the trial, and that the *Vivendi* "defendants actually took pre-trial discovery of unnamed class members" which the court "explicitly held it could be used in post-trial proceedings." Mot. at 12. But in neither case did the courts hold that affirmatively seeking absent class member discovery in an earlier phase was a prerequisite to obtaining it in Phase II. The *Household* court simply noted that Plaintiffs' successful resistance of absent class member discovery precluded them from later arguing that "the upcoming 'common issue' trial will end all inquiry on the subject of reliance;" it did not hold that discovery "required" under *Basic* could not be conducted if defendant did not seek it sooner. *Household,* 2009 WL 9157892; Dkt. No. 567-1 at 13.

In *Vivendi* (cited in Mot. at 12), the court expressly held that although it "did not issue a formal order before trial clarifying that issues of individual reliance were reserved for after the class trial, the absence of such an order is not dispositive." *In re Vivendi*, 765 F. Supp. 2d at 586. As in *Vivendi*, Plaintiffs do not deny they "were on notice that individual reliance issues might require resolution in separate proceedings after the class trial." *Id.* Afterall, that is the standard procedure. *Id.* at 586, n. 64. And, as in *Household*, the *Vivendi* court did not hold that the defendant was required to preserve the right to Phase II discovery before the resolution of the trial on class-wide liability. Moreover, in both *Household* and *Vivendi*, the courts permitted the defendants to propound new discovery on the absent class members they opted to challenge after those members made their initial claims. *Glickenhaus*, 787 F.3d at 431; *In re Vivendi*, 284 F.R.D. at 155. A defendant's entitlement to and the scope of Phase II discovery is not conditioned on it seeking that discovery before the initial trial.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF CLAIMS ADMINISTRATION PROCEDURE

It is illogical to suggest that Defendant was required to request Phase II discovery and propose a schedule to conduct it before trial. By its text, Rule 16 contemplates setting a schedule for matters that must be conducted before trial, not after it. Fed. R. Civ. P. 16. The Rule exists to "enable[] trial courts to take steps to improve the efficiency of trials," *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 133 (9th Cir. 1987), not post-trial administration. Notably, neither the original scheduling order nor the pretrial order contemplate a claims administration process at all. *See* Dkt. Nos. 55, 358. Thus, by Plaintiffs' logic, they have waived their ability to conduct a claims administration process. Of course, they did not and Defendant did not waive his right to conduct Phase II either. Neither issue was raised previously because the appropriate time to bring these issues to the Court's attention is post-verdict.

Plaintiffs' reliance on *Hsu v. Puma Biotechnology, Inc.*, 2021 WL 2644100, at *2 (C.D. Cal. June 11, 2021) (cited at Mot. at 12) is similarly misplaced. There, the defendants submitted a proposed pre-trial order stating that "all discovery is complete" in the action, thus necessitating that the order be amended under Rule 16. *Id.* at *1.[3] Defendant made no such representation here. Moreover, in *Puma*, the defendant waited two years after the jury verdict to seek discovery and was at risk of being unable to satisfy judgment—suggesting that the request was a delay tactic. *Id.* at *2–4. Defendants also sought to propound the exact same discovery requests on all 4,455 claimants—undercutting any claim that the discovery was reasonable—and had already "subjected the largest claimants to discovery." *Id.* at 3. None of these facts are present here. Unlike in *Puma*, the court has already entered judgment and Defendant is promptly raising these issues; this is not a tactic to delay but a request for a sufficient process that protects Defendant's due process rights to rebut the presumption. Defendant has not yet "subjected the largest" claimants to discovery either; only the Class Representatives. Nor is there any reasonable risk that Defendant will be unable to satisfy a judgment. And while Defendant reserves all rights to challenge each class member's reliance, he recognizes that it would be impractical and uneconomical to do so. He anticipates

---

[3]  Under the circumstances, a Rule 16 motion for leave to conduct discovery is unnecessary here but Defendant will promptly file one should the Court order him to do so.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF CLAIMS ADMINISTRATION PROCEDURE

seeking more tailored discovery of certain claimants whose transaction size, sophistication, trading records and process—including those who use automated or algorithmic trading formulas, *see e.g.*, *In re Scott Paper Co. Sec. Litig.*, 142 F.R.D. 611, 617 (E.D. Pa. 1992) (recognizing presumption may not apply to trades made automatically)—identify them as candidates for a successful challenge.  Of course, he cannot identify who those class members are until they submit claims.[4]

As in *Vivendi* and *Household*, the Court should adopt a claims process and schedule overseen by a special master, *infra* pp. 14-15, that allows Defendant a sufficient opportunity to identify potential claimants whose individual reliance he will challenge and conduct reasonable discovery to provide him with a meaningful opportunity to mount that challenge.

C.    **Phase II Discovery Is Likely To Have A Significant Impact On The Judgment**

In a last ditch effort to strip Defendant of his right and ability to rebut the presumption of reliance for individual class members, Plaintiffs argue that "[p]ost-trial discovery would also be of little value" and "would [not] rebut the presumption of reliance found by the jury."  Mot. at 14.  But the record in this case already establishes that there is substantial likelihood that Defendant **will** be able to rebut the presumption as to a significant number of class members.  As the Supreme Court explained, Defendant need only show, for instance, that a claimant "believed that [Defendant's] statements were false … but sold his shares nevertheless because of unrelated concerns," *Basic*, 485 U.S. at 249, and there are ample opportunities to do so with even modest discovery.

The Court need not look beyond the proposed Class Representatives and its own Class Certification Order to reach this conclusion.  Plaintiffs sought to certify four Class Representatives—Brian Belgrave, John Garrett, Nancy Price, and Steve Garrett.  The Court declined to certify Steve Garrett as a class representative, finding that Defendant rebutted the presumption of reliance as to him because he "sold his shares in July 2022 because Musk said that he was terminating the deal, and ruled out any other reason for doing so."  Dkt. No. 106 at 9.  Mr. Garrett's

---

[4]    For that reason Plaintiffs' argument that Defendant "had the ability to identify other Twitter shareholders" but failed to seek discovery from them is meritless.  It makes little sense and would have been a waste of the parties' and Court's resources for him to seek discovery of potential claimants before they submitted claims.  Particularly since Plaintiffs repeatedly objected to his discovery requests relating to the knowledge of absent class members.  *E.g.*, Dkt. Nos. 138; 175.

"specific identification of something other than the integrity of the market (and, of course, other than Musk's allegedly misleading statements) that caused him to sell Twitter's stock 'sever[ed]' any causal chain linking his decision to Musk's statements and rebut[ted] the presumption…" *Id.* at 9–10 (citing *Basic*, 485 U.S. at 248). Defendant made this showing after conducting limited discovery; he requested Mr. Garrett's trading records and communications about his trades and took a three hour deposition. Bergjans Decl. ¶ 2. And the Court's order disproves Plaintiffs' specious argument that the verdict established that "everyone who sold Twitter stock at the market price relied on that price" and the integrity of the market. Mot. at 14. The Court found that Mr. Garrett did not. Assuming a similar rate among all class members—fair since counsel presumably chose Mr. Garrett from a pool of candidates after vetting him to ensure typicality—it is not unreasonable to conclude that he could rebut the presumption as to at least a quarter of the potential claimants.

Goldman Sachs is another illustrative example. Goldman was Twitter's lead banker during the merger and privy to the true state of affairs behind the scenes—and thus knew the tweets were allegedly inaccurate. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 1. ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮. Ex. 3, Silverstein Dep. at 59:6-8; Ex. 2. Yet, during the Class Period, Goldman sold more than four million shares of Twitter stock. Dkt. No. 99-6 at 42. The presumption would not apply to those sales. *Halliburton II*, 573 U.S. at 269 (if an investor "sold the stock even had he been aware that the stock's price was tainted by fraud, then the presumption of reliance would not apply").

Twitter's other lead banker, JP Morgan, also sold nearly four million shares during the Class Period. Dkt. No. 99-6 at 42. Several financial institutions involved in the Merger sold millions of Twitter's shares during the Class Period. Discovery into these transactions and potential claimants is likely to glean evidence showing that despite having knowledge of the true state of affairs, they "sold [their] shares nevertheless because of unrelated concerns." *Basic*, 485 U.S. at 249.

That is unsurprising because Plaintiffs themselves acknowledged at trial that many in the market knew that Defendant had waived due diligence and did not put the merger "on hold." Trial Tr. at 1908:24–1909:2. They also conceded there were a number of "unrelated" events that caused

Twitter's stock to decline during the Class Period.  The most notable—and reason the presumption was rebutted as to Mr. Garrett—was Defendant's termination of the Merger Agreement on July 8, *id.* at 1844:24–1845:11, which the jury found was not fraudulent.  Dkt. No. 538.  Twitter's stock also fell on the release of a whistleblower's report about cybersecurity practices, another event Plaintiffs admitted was unrelated to the fraud.  Trial Tr. at 1844:24–1845:11.  Reasonable discovery of claimants who made sales after those events is likely to identify class members who neither relied on the integrity of the market or the alleged misrepresentations and who—like Mr. Garrett—have no cognizable claim.  Defendant is entitled to sufficient time to identify those claimants and challenge their claims.  Plaintiffs' proposal for a 30-day review period would make this impossible.

The law is clear that shareholders against whom the presumption is rebutted are not entitled to damages.  Defendant does not object to Plaintiffs' proposal in order to "discourage Class members from collecting damages caused by the fraud," Mot. at 14, but rather to ensure—consistent with the law and his due process rights—that only those with a claim can collect.  The Court should reject Plaintiffs' proposal and implement a reasonable process that allows him to do so.

## II.    PLAINTIFFS' PROPOSAL FOR IDENTIFYING AND CALCULATING DAMAGES IS IMPROPER

Defendant also objects to Plaintiffs' proposal for calculating individual damages as improper in two principle respects.

***First***, LIFO and not FIFO is the appropriate method for matching Class Period transactions.  Despite Plaintiffs' suggestions to the contrary, the majority of courts "have generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases."  *In re Vivendi*, 284 F.R.D. at 160; *Puma Biotechnology, Inc.*, 2019 WL 4295285, at *5 ("The Court finds that LIFO is the more appropriate method for matching shares sold during the class period because LIFO accounts for profits resulting from class period sales."); *Hill v. Tribune Co.*, 2005 WL 3299144, at *2 (N.D. Ill. Oct. 13, 2005) ("The current majority view … is that securities fraud losses should be calculated using LIFO."); *Hunt v. Enzo Biochem, Inc.,* 530 F. Supp. 2d 580, 590 n.70 (S.D.N.Y. 2008) (recognizing at dismissal stage that "[c]ourts prefer the last-in first-out method of accounting" when "calculating losses in securities fraud cases"); *Arenson v. Broadcom Corp.*, 2004 WL 3253646, at

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF CLAIMS ADMINISTRATION PROCEDURE

*1 (C.D. Cal. Dec. 6, 2004) ("A number of courts have spoken clearly on this issue, treating it as a pure question of law and finding the FIFO methodology improper."); *In re eSpeed Inc. Sec. Litig.,* 232 F.R.D. 95, 101 (S.D.N.Y. 2005) ("courts have preferred LIFO and have 'generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases'"). The reason is simple: "Courts prefer LIFO because FIFO often ignores necessary offsets" and thus leads to windfall profits for Plaintiffs. *Puma*, 2019 WL 4295285, at *5.

This case is no different. Assume an investor owned one share of Twitter stock before the Class Period (when there was no deflation), bought one share on May 16 when the price was deflated by $7.69, and then sold one share on May 17 when the price was deflated by $7.26. Dkt. No. 538 at 6. Using LIFO, the investor suffered no damages because he bought the share at a greater discount (in absolute terms) than he sold it at and thus profited by forty-three cents.[5] But under FIFO, that investor would collect $7.69 in damages even though he purchased a share after the alleged fraud and thus benefitted from the deflation. He would end up with a windfall. LIFO should be applied.

The cases Plaintiffs cite do not dictate a contrary result. To start, most are in the context of settlement classes where damages are distributed to class members from a fixed pot of money and the defendant has no interest in how those funds are distributed among class members. *See e.g, In re Apollo Group, Inc. Sec. Litig.* No. CV 04-2147-PHX-AT (D. Ariz. Dec. 19, 2011) (distributing damages from a fixed settlement amount of $145,000,000). In those cases, there is little concern about windfalls at the defendant's expense because the extent of his liability is capped at the settlement amount. The only persons harmed from the award of unjust profits are fellow class members. Here, by contrast, FIFO would be used to calculate the total quantum of damages and any unjust windfall would unfairly come out of Defendant's pocket. The only two contested claims administration cases Plaintiffs cite are inapposite. In *Household*, the court recognized that LIFO is the "more accurate reflection of plaintiff's damages" but adopted FIFO only after applying

---

[5]  Plaintiffs indicate that for claimants who made purchases during the Class Period, they will net out the difference between the deflation when the stock was purchased and when the stock was sold to calculate damages. Mot. at 8. In other words, if an investor bought on May 13 when the stock was deflated $6.17 and sold on May 16 when it was deflated $7.69, his damages would be $1.52 not $7.69. Defendant agrees that such netting is required.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF CLAIMS ADMINISTRATION PROCEDURE

additional offsets that reduced any potential windfall profits. *Lawrence Jaffe Pension Plan v. Household Int'l, Inc.,* 756 F. Supp. 2d 928, 937 (N.D. Ill. 2010). Plaintiffs propose no similar offsets or adjustments here. In *Gruber v. Gilbertson*, the class period began when the securities at issue first traded publicly—so there were no pre-Class Period transactions at issue, eliminating the concern illustrated above—and other defendants had settled and agreed to distribute funds using FIFO, so adopting LIFO for some but not other members "would likely lead to an unnecessary degree of administrative complexity." 647 F. Supp. 3d 100, 120 (S.D.N.Y. 2022). Those considerations do not exist here, so the Court has no reason to deviate from the majority approach.

***Second***, Plaintiffs argue that class members who did not make any purchases during the Class Period need not present records of when they bought their shares because "holding of Twitter shares … is sufficient." Mot. at 8, fn. 5. But class members can only recover "actual damages," 15 U.S.C. 78bb(a), and the date and price of the original purchase is relevant to calculate damages too. Any calculation of damages must require a claimant to submit records evidencing their purchase of Twitter stock, so that price can be considered in the calculation of damages.

## III.   PLAINTIFFS' PROPOSED CLAIM PROCESS IS DEFICIENT

Although Defendant does not object to the appointment of Epiq as Claims Administrator, Plaintiffs' proposal is otherwise flawed in serious respects. It appears that Epiq and Plaintiffs have taken an off-the-shelf settlement distribution process—where the total liability is set and claims are unlikely to be contested—and have slapped on a new label (even forgetting to replace the old label in the Proposed Notice of Verdict, *see* Dkt. No. 567-4 at 3 ("Who is Included in the ***Settlement***?")). But *Basic*, the Seventh Amendment, and due process require a more rigorous and involved procedure that accounts for Defendant's rights to challenge and adjudicate individual claimants.

### A.   The Claims Administrator's "Validation Process" Is Insufficient

***First***, Epiq claims that part of its role is to "validate" the claims submitted by class members. But no claim is valid until Defendant has had the opportunity to challenge both individual reliance and damages with an adjudication by the Court or "through separate jury trials if necessary." *In re Vivendi*, 765 F. Supp. 2d at 584–85. Epiq would in effect be charged with making factual and legal determinations that are the province of the Court or jury. That is plainly improper. Any order

appointing Epiq should make clear that its "validation" is only preliminary and subject to Defendant's right to challenge any particular claim with the Court or through the Special Master process proposed *infra* pp. 14-15.

***Second***, Plaintiffs' proposed Proof of Claim Form and "validation" process is deficient because they do not require claimants to submit records of their trades and transactions of Twitter securities as a condition to be eligible to receive damages.  In their motion, Plaintiffs suggest that such documentation is optional and should only be submitted "where available."  Mot. at 10.  The proposed Notice and Proof of Claim use similar loose language, informing claimants that "[c]opies of documents evidencing your transactions in Twitter stock and options ***should*** be attached to your Claim Form" and that the "[f]ailure to provide suitable documentation ***could*** delay verification of your Claim Form or result in rejection of your Claim Form."  Dkt. 567-3 at 29-30.  Such documentation is essential and no claim can be processed without it.  Worse, the Azari Declaration suggests that Epiq will not even review all documentation submitted to confirm the accuracy of a claimant's transaction information but will rather "flag a sampling of electronic filers in order to request … specific purchases and sales and holdings selected by Epiq to be documented with confirmation slips or other transaction-specific supporting documentation."  Dkt. 567-3 at ¶ 58.

It should go without saying that all claimants must be required to submit all transaction records necessary to confirm that they purchased and sold the specific Twitter securities giving rise to their purported damages.  Claimants are seeking to hold Defendant liable for damages and must prove those damages with admissible evidence, i.e., records sufficient to satisfy Federal Rule of Evidence 803(6).  Those records must include either: (1) trade confirmation slips or (2) bank or broker statements that document the specific transactions at issue, including dates of all purchases and sales, along with the stock price to confirm that the transaction was actually made.  Absent admissible records substantiating the trades, a claimant's declaration—without cross-examination—that he or she made a certain trade four years ago is hearsay and cannot substantiate any claim for damages.  *See e.g., United States v. Tafollo-Cardenas*, 897 F.2d 976, 980 (9th Cir. 1990) ("A statement is not hearsay if the declarant testifies at trial subject to cross examination and the statement was given under oath subject to the penalty of perjury at a trial, hearing or other

11

proceeding, or in a deposition.").  Moreover, Epiq must be required to review all transaction records submitted—not just a "sampling"—and may only "validate" claims supported by those records.

*Third*, the proposed claims process does not adequately verify the identities of those submitting claims to ensure that the claimants are, in fact, the persons who made the trades and are potentially eligible for damages.  The Court should require claimants to submit government issued-identification (a photocopy of a driver's license would suffice) to validate their identity.

*Fourth*, Defendant is entitled to know—in order to test individual reliance—whether an investor knew or believed what Plaintiffs alleged was the truth when she sold Twitter stock or whether knowledge of the alleged truth would have impacted her investment decisions. *See Halliburton II*, 573 U.S. at 269 (if an investor would have "sold the stock even had he been aware that the stock's price was tainted by fraud, then the presumption of reliance would not apply").  Accordingly, the Proof of Claim Form should include interrogatories that ask each claimant: (1) "Why did you make the transactions identified on your claim form?;" (2) "What information did you rely upon in making the transactions identified on your claim form?;" (3) "At the time of your transactions, did you understand that the Twitter Merger Agreement did not entitle Musk to put the Merger on hold?;" (4) "If you knew at the time of your transactions that the Twitter Merger Agreement did not entitle Musk to put the Merger on hold, would that have impacted your decision to make those transactions?;" (5) "At the time of your transactions, did you understand that Musk and his team were continuing to work on the Merger?;" and (6) "If you knew at the time of your transactions that Musk and his team were continuing to work on the Merger, would that have impacted your decision to make those transactions?"  These initial interrogatories—Defendant may request more as necessary in Phase II—will assist in identifying which claimants to challenge pursuant to *Basic* and streamline the subsequent discovery process.

*Fifth*, in addition to the contemplated monthly reports (Dkt. 567-3 at ¶ 66), Epiq should be required to provide the parties with "read only" access to the submitted claims and database (along with all supporting documentation) to allow Defendant to identify claims he may challenge prior to the conclusion of the "validation" process.  Given the volume of potential claims, this will promote a more efficient challenge process and allow Defendant to identify potential flaws in the

12                                Case No. 3:22-CV-05937-CRB

administration process in real time so that they can be corrected at the outset and avoid any lengthy remedial process after the administration process is complete.

### B.    The Notice Of Verdict Is Inaccurate, Incomplete, And Misleading

Defendant also objects to the Notice and Claim Form as incomplete and misleading. "Plaintiffs must provide notice to class members that is 'timely, accurate, and informative.'" *Carter v. Anderson Merchandisers, LP*, 2010 WL 144067, at \*10 (C.D. Cal. Jan. 7, 2010) (quoting *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 172 (1989)).  The proposed Notice and Claim Forms do not accurately inform class members that Defendant has the right to challenge each of their claims individually to rebut the presumption of reliance, that claimants may be subject to discovery (including document requests and a deposition), and that their claims may ultimately be adjudicated by the Court or a jury trial if necessary.  Claimants should be fully informed that the process may not end after they submit their Proof of Claim.  The Notice also fails to disclose that Defendant will have access to class members' Claim Forms and supporting documentation and will retain the right to challenge their submissions separate and apart from any Phase II reliance process. Any notice should fully and accurately inform class members of these facts.

### C.    The Court Should Not Permit Late Filed Claims

Defendant also objects to Plaintiffs' proposal that class members be permitted to file claims after the four month deadline and to treat those untimely claims "as accepted." Mot. at 6.  Plaintiffs propose that class members be allowed to file claims "for so long as the judgment remains valid and enforceable," effectively in perpetuity. *Id.*  As the *Vivendi* court held when presented with a similar proposal—allowing class members to submit claims up to twenty years after the initial deadline— such an open-ended claims process is "simply absurd."  *In re Vivendi*, 284 F.R.D. at 160.  Only claims submitted by the deadline should be processed and considered for payment. *Id.*  Plaintiffs' analogy to settlement funds is inapt.  Again, in those cases class members are making claims from a fixed fund—the size of the judgment is certain, the defendant is not prejudiced by dilatory claims, post-judgment interest is not running, and there is no further litigation required.  Keeping the deadline open "for so long as the judgment remains valid and enforceable" will unnecessarily interfere with both the claims administration process and Phase II and needlessly increase costs

13

(which Plaintiffs seek to charge Defendant). The proposed four months "should be sufficient for Class Members to receive notice, collect their paperwork, and submit the appropriate information to file their claims." *See id.* at 160-161.

### D.    The Proposed Schedule Does Not Allow Sufficient Time For Defendant To Evaluate And Challenge Claims Individual Claims

Finally, Defendant objects to Plaintiffs' proposed deadline giving Defendant only thirty days after Epiq files its claims report to file with the Court "any issues concerning claims and basis." Mot. at 2. To start, Plaintiffs' proposal entirely ignores Defendant's right to rebut the presumption for the individual claimants and to conduct reasonable discovery to do so. Thirty days is plainly insufficient to propound and obtain responses to the discovery and brief individual reliance issues. Setting that aside, Plaintiffs have sent notice to more than ***170,000*** potential class members. It is unreasonable and frankly absurd to suggest that Defendant would be able to review the "validated" claims in such a compressed time frame, let alone identify objections and other issues and brief them for the Court. Even if individual reliance was not at issue and Defendant was merely auditing the claims and damages calculations to confirm that claimants presented sufficient information to establish they were entitled to damages and the accuracy of the proposed distribution, thirty days is far too short a time. At a minimum, given the volume of potential claims, the Court should allow Defendant 120 days to review the claims, meet and confer with Plaintiffs, and file a proposed process for individual-reliance discovery for class members he intends to challenge and raise any issues with the calculation and recommended distribution of damages.

## IV.    THE COURT SHOULD APPOINT A SPECIAL MASTER TO CONDUCT PHASE II

Given the volume of potential claims, the individual issues of reliance that still need to be adjudicated, and the likelihood of other challenges and issues relating to damages, the Court should appoint an independent, neutral special master with no prior association with this action to oversee Phase II and any disputes concerning claims administration and distribution. Rule 53(a)(1) of the Federal Rules of Civil Procedure permits a special master to hold trial proceedings and or make fact recommendations on issues to be decided without a jury if there is an exceptional circumstance.

Special masters have been appointed to oversee Phase II in other securities class actions following a verdict on class-wide issues, *In re Vivendi*, 284 F.R.D. at 155, and one should be appointed here.

Defendant proposes that 120 days after Epiq issues its claim report, the parties file with the Special Master a proposed Phase II management plan that identifies (1) the claimants Defendant intends to challenge on issues of individual reliance, (2) proposed discovery and a discovery schedule, (3) any dispute over damages recommended to other claimants, and (4) a schedule for briefing so that the Special Master can determine whether Defendant has raised a material issue of fact whether he can rebut the presumption as to any claimants. *See In re Vivendi*, 284 F.R.D. at 155 (appointing a special master to determine "whether Vivendi can rebut that claimant's presumption of reliance"). From there, if any such material issues of fact exist, the Special Master or Court can conduct jury trials as necessary as to the reliance of those specific claimants.

## V.    THE COURT SHOULD NOT ORDER DEFENDANT TO PAY COSTS NOW

The Court should not order Defendant to pay the costs of the notice and claims process. While the Court has discretion to order a defendant to pay for class notification after it has been determined to be liable on the merits, it can only do so after liability has been "conclusively determined." *See In re Vivendi*, 284 F.R.D. at 161 (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 359 (1978)). Defendant's post-trial motions for judgment as a matter of law and a new trial remain pending. His liability has not yet been "conclusively determined" and it is premature to order costs unless and until those motions are denied. In any event, if Defendant will be required to pay the cost of the claims administration process, the Court should order Epiq to submit a budget and monthly invoices to Defendant and permit him oversight to control the costs of the process contemporaneously. Epiq has not presented any rates or estimated costs to this point; the financial impact is a black box. Defendant's proposed process would limit overruns, mitigate any overcharging, and lower the risk of litigation regarding the cost of the process when it is completed.

### CONCLUSION

The Court should deny the motion and proposed Class Administration plan and enter an order consistent with Defendant's proposal for a Phase II and appoint a special master to oversee it.

DATED:  May 15, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  _____*/s/ Alex Bergjans*_____
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans


*Attorneys for Defendant Elon Musk*

Case No. 3:22-CV-05937-CRB

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF CLAIMS ADMINISTRATION PROCEDURE

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on Friday, May 15, 2026.

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By _/s/ Alex Bergjans_
     Alex Spiro
     Michael T. Lifrak
     Stephen A. Broome
     Ellyde R. Thompson
     Jesse A. Bernstein
     Alex Bergjans

_Attorneys for Defendant Elon Musk_

17                              Case No. 3:22-CV-05937-CRB

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF CLAIMS ADMINISTRATION
PROCEDURE

## ATTESTATION

Pursuant to Civil L.R. 5-1, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatories herein.

By /s/ Alex Bergjans
Alex Spiro
Michael T. Lifrak
Stephen A. Broome
Ellyde R. Thompson
Jesse A. Bernstein
Alex Bergjans

*Attorneys for Defendant Elon Musk*

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF CLAIMS ADMINISTRATION PROCEDURE