**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
*jcotchett@cpmlegal.com*
Mark C. Molumphy (SBN 168009)
*mmolumphy@cpmlegal.com*
Tyson C. Redenbarger (SBN 294424)
*tredenbarger@cpmlegal.com*
Elle D. Lewis (SBN 238329)
*elewis@cpmlegal.com*
Gia Jung (SBN 340160)
*gjung@cpmlegal.com*
Caroline A. Yuen (SBN 354388)
*cyuen@cpmlegal.com*
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
*fbottini@bottinilaw.com*
Aaron P. Arnzen (SBN 218272)
*aarnzen@bottinilaw.com*
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**LEAD PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR THE AWARD OF PREJUDGMENT INTEREST**<br><br>Date:    June 18, 2026<br>Time:    10:00 a.m.<br>Ctrm:    6, 17th Floor<br>Judge:   Hon. Charles R. Breyer |

Case No: 3:22-CV-05937-CRB
LEAD PLAINTIFFS' REPLY ISO MOTION FOR THE AWARD OF PREJUDGMENT INTEREST

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ................................................................................................ iii

ARGUMENT ..........................................................................................................................1

I.     MUSK'S ARGUMENT AGAINST PREJUDGMENT INTEREST IS
       CONTRARY TO THE FACTS AND UNPERSUASIVE .....................................................1

       A.     Musk's Personal Wrongdoing Was Egregious ...........................................................1

       B.     SEC Disgorgement Cases Are Instructive and Particularly Favor a
              Prejudgment Interest Award Here ...............................................................................2

       C.     Pre-Judgment Interest is Necessary to Make Class Members Whole.......................3

       D.     The Lack of Delay Weighs in Favor of Awarding Prejudgment Interest ................4

       E.     Other Considerations Weigh in Favor of Awarding Prejudgment Interest..............4

II.    THE COURT SHOULD AWARD PREJUDGMENT INTEREST AT THE § 6621
       RATE .............................................................................................................................5

       A.     Courts Weigh the Equities to Determine the Appropriate Prejudgment
              Interest Rate, and the Equities Here Support the § 6621 Rate................................5

       B.     Musk's Arguments for a Lower Rate Are Unpersuasive.........................................6

       C.     Prejudgment Interest Should Be Compounded At Least Quarterly........................8

CONCLUSION.......................................................................................................................8

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*In re Apollo Grp. Inc. Sec. Litig.*
   2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ...............................................................................7

*Hsu v. Puma Biotechnology, Inc.*
   2019 WL 4295285 (C.D. Cal. Sept. 9, 2019) ..............................................................................5

*Knapp v. Ernst & Whinney*
   90 F.3d 1431 (9th Cir. 1996) ...............................................................................................1, 7

*Liu v. SEC*
   591 U.S. 71 (2020).................................................................................................................3

*Nguyen v. Endologix, Inc.*
   962 F.3d 405 (9th Cir. 2020) .................................................................................................2

*Osterneck v. Ernst & Whinney*
   489 U.S. (1989)..................................................................................................................1, 4

*State Farm Mut. Auto. Ins. Co. v. Campbell*
   538 U.S. 408 (2003)..........................................................................................................3, 6

*United States v. Seley*
   957 F.2d 717 (9th Cir. 1992) .................................................................................................2

*In re Vivendi Universal, S.A.*
   284 F.R.D. 144 (S.D.N.Y. 2012) ...........................................................................................5

**Statutes**

22 U.S.C. § 6621 ................................................................................................................ *passim*

26 U.S.C. §6622(a) ..................................................................................................................8

28 U.S.C. § 1961......................................................................................................................5

ERISA ......................................................................................................................................7

**Other Authorities**

17 CFR § 201.600....................................................................................................................8

## **SUMMARY OF ARGUMENT**

In his opposition to Plaintiffs' motion for prejudgment interest ("PJI"), Musk advances scattershot arguments in an unsuccessful effort to avoid PJI at the rate set forth in 26 U.S.C. § 6621(a)(2). Musk appears to concede that PJI is appropriate if it is necessary to compensate the class for its injuries, Musk's wrongdoing was significant, the class had other investment opportunities, Plaintiffs did not delay in bringing their action, and other fairness considerations favor PJI. Each of these conditions exist, as established through voluminous and persuasive evidence. Musk attempts to re-imagine the record to support his assertions that the factors disfavor PJI, but the overwhelming evidence supporting the jury's verdict that Musk committed securities fraud also supports a PJI award.

Musk makes much of the fact that the § 6621 rate has not been awarded in a private securities class action, but that is undoubtedly because there are an exceptionally small number of trial verdicts in private securities class actions in the entire country. And the cases that Musk cites in his opposition make clear that the Court may award the § 6621 rate when the equities support doing so. The equities here favor PJI at the higher rate.

For these reasons, as elaborated below, the Court should award PJI at the § 6621 rate, to be compounded daily, or at least quarterly.

* * *

**ARGUMENT**

## I. MUSK'S ARGUMENT AGAINST PREJUDGMENT INTEREST IS CONTRARY TO THE FACTS AND UNPERSUASIVE

Musk agrees that the Court should assess several factors in determining whether to award prejudgment interest ("PJI"). ECF 576 at 2. These factors include "(1) whether PJI is necessary to compensate the plaintiff fully for his injuries; (2) the degree of wrongdoing on the part of the defendant; (3) the availability of alternative investment opportunities to the plaintiff; (4) whether the plaintiff delayed in bringing or prosecuting the action; and (5) other fundamental considerations of fairness." *Id.* (citing *Osterneck v. Ernst & Whinney*, 489 U.S. at 169, 176 (1989)).[1] All of these factors weigh in Plaintiffs' favor, and Musk's argument to the contrary should be rejected.

### A. Musk's Personal Wrongdoing Was Egregious

Musk first argues that "the degree of [his] personal wrongdoing is low." ECF 576 at 3. The record strongly supports the opposite conclusion, which is no surprise given the jury's finding that Musk defrauded investors. Musk began the saga leading to this trial by deciding that he wanted to buy Twitter for himself. This desire evolved into a so-called "Jiu Jitsu" strategy which led to Musk's waiver of due diligence, a seller-friendly merger agreement, and immense pressure on Twitter to accept his offer. The result: Musk entered into a deal that he proposed, he drafted, and he signed. But just weeks later, he suddenly changed his mind. Musk wanted a different deal, one where he paid investors less money for their company. So he mounted a public spectacle to attack the reputation of Twitter's management team, disparage the company, threaten Twitter's board and executive management with "World War III until the end of time," and try to renegotiate or escape the deal. And he did all of this with full knowledge that his statements and actions had

---

[1] Despite citing these factors, Musk pushes for an analysis that begins and ends with state of mind, imagining a rule that unambiguously states that PJI should be denied unless "the evidence points to a state of mind less than a malicious intent to defraud investors. ECF 576 at 3. But in the case he cites, *Knapp v. Ernst & Whinney*, 90 F.3d 1431 (9th Cir. 1996), the Ninth Circuit made clear that PJI was properly denied due to a combination of circumstances, including that (1) the investment at issue was "exceptionally speculative," and (2) PJI was unnecessary to compensate victims where plaintiffs would receive more from settling defendants than they would through the verdict against the trial defendant who was challenging PJI. *Id.* at 1441-42. Such circumstances that disfavor prejudgment interest are not present here.

an outsized impact on Twitter's stock price.  When Twitter's share price plunged—an obvious consequence of his actions—the company's market capitalization plummeted by billions of dollars, and investors like Brian Belgrave, John Garrett, and Nancy Price suffered financial losses. Worse still—as the jury found—Musk did all of this with scienter.  *See* ECF 573 at 12-18.

Musk's attempt to avoid this evidence is far from compelling.  He argues that the jury may have only found deliberate recklessness to support its scienter finding.  But even if that were true, deliberate recklessness represents an egregiously culpable state of mind.

> Deliberate recklessness is more than mere recklessness or a motive to commit fraud. It is instead an ***extreme departure from the standards of ordinary care***, which presents a danger of misleading buyers or sellers that is ***either known to the defendant or is so obvious that the actor must have been aware of it***.

*Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) (cleaned up, internal citations and quotations omitted, emphasis added).  Musk's opposition also argues that he believed his statements were true, citing his own trial testimony.  ECF 576 at 3:23-24.  The jury, however, had every reason to discredit and/or reject Musk's testimony, including his outright refusal to answer question after question that he didn't like during his direct examination.

Musk also points out that he was not found liable for carrying out a fraudulent scheme. That, too, is cold comfort.  The fact is, the jury found that Musk made false, misleading, and fraudulent statements to the investing public, which is wrongful conduct in its own right.  In all likelihood, the jury's decision to hold Musk liable only for the May 13 and May 17 tweets, and not for the scheme, merely reflects lenity or compromise.  *Cf.*, *United States v. Seley*, 957 F.2d 717, 723 (9th Cir. 1992) ("The jury may have acquitted for reasons of lenity or compromise, but this did not invalidate the convictions they did reach.").

**B.**    **SEC Disgorgement Cases Are Instructive and Particularly Favor a Prejudgment Interest Award Here**

Federal courts regularly award PJI in SEC injunctive actions, including those cited in Plaintiffs' opening brief.  ECF 565 at 3-4.  Musk argues that those cases are "inapposite" because defendants there "obtained and retained the fruits of their fraud."  ECF 576 at 4.  Musk misses the forest for the trees.  It is true that SEC cases are different than private securities actions, but in a way that clearly demonstrates how readily federal courts award PJI.

Musk concedes, as he must, that PJI is compensatory (*e.g.*, ECF 576 at 2, 5, 7, 9, 10), but then ignores the fact that ***compensatory relief mostly focuses on the victim, and not on the wrongdoer***.  As the Supreme Court has noted, "compensatory and punitive damages…serve different purposes.  Compensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.  By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (internal citations, quotations omitted, emphasis added).

This is important because, even though SEC disgorgement cases are not easily categorized as compensatory, courts regularly award PJI.  More specifically, wronged investors do not necessarily receive the disgorgement or PJI ordered against defendants in SEC cases; these payments often go to the U.S. Treasury.  *See generally Liu v. SEC*, 591 U.S. 71, 85 (2020) (noting that courts "have occasionally awarded disgorgement…by ordering the proceeds of fraud to be deposited in Treasury funds instead of disbursing them to victims.").  In other words, courts in SEC cases are willing to award PJI—which constitutes compensatory relief—even where the proceeds do not ultimately go to victims.  The upshot: courts grant PJI even when its compensatory purpose creates a far trickier fit than this case.  Given that, this Court should easily find it appropriate to compensate actual victims of Musk's fraud who received less than they should have when they sold Twitter stock during the class period.

C.    Pre-Judgment Interest is Necessary to Make Class Members Whole

Musk's argument that PJI is not needed to make the class whole sweeps aside the fundamental point of this entire seller case.  Nobody disputes that class members received funds when they sold Twitter stock.  Rather, the parties hotly disputed the amount of deflation in Twitter's stock, *i.e.*, the ***difference*** between (1) the price at which the stock actually traded after Musk's tweets, and (2) the price at which the stock would have traded absent those tweets.  It is therefore odd that Musk argues that his victims could have earned interest on the deflated sales price they obtained when they sold their stock.  PJI, according to Musk, should not be awarded "because every class member received cash at the time of their sale and had immediate,

unrestricted use of those proceeds." ECF 576 at 5; *see also id.* ("here, class members obtained cash the moment they sold and were able to invest the proceeds as they saw fit"). This is nonsense. As Musk knows, Plaintiffs seek PJI on the amount of deflation Musk caused, not on the money they obtained when they sold. *See* ECF 538 (verdict sets forth as damages "the amount of artificial deflation per share of Twitter stock"). Musk's argument that PJI is not necessary to make class members whole completely ignores the basis for damages in this case and should be soundly rejected.

### D.     The Lack of Delay Weighs in Favor of Awarding Prejudgment Interest

Musk briefly acknowledges that one of the factors that the Supreme Court highlighted in deciding to award PJI was whether the plaintiff delayed in bringing or prosecuting the action, but Musk entirely fails to substantively address this factor. ECF 576 at 2 (citing *Osterneck*, 489 U.S. at 176). That is likely because it weighs in favor of PJI, as Plaintiffs filed their case just a few weeks after Musk's October 4, 2022, capitulation in the Delaware merger litigation.

### E.     Other Considerations Weigh in Favor of Awarding Prejudgment Interest

Musk also argues that there are other considerations that disfavor PJI. In so doing, he fixates on the details surrounding trades by Plaintiffs Brian Belgrave and John Garrett. ECF 576 at 6. Specifically, Musk portrays Mr. Belgrave's trades as "merger arbitrage" and cherry-picks deposition testimony—not introduced at trial—to characterize Mr. Garrett as a "gambler." *Id.* These are extremely unfair portrayals of a small business owner who is diligent in managing his stock market investments (Belgrave) and an elderly couple who live on a very modest Canadian pension and were trying to economically participate in what they believed to be Twitter's future alongside Musk (Garrett and Price). Trial Tr. 270-72; Trial Tr. 1357. This fixation tracks Musk's pattern of ignoring the fact that Plaintiffs brought this as a class action, invoked the fraud-on-the-market presumption, proved the there was an efficient market for Twitter securities, and seek PJI for the benefit of the entire class. ECF 573 at 18-21. The jury decided that all class members (including, but certainly not limited to, Mr. Belgrave, Ms. Price, and Mr. Garrett), who sold Twitter stock and transacted in certain options during the class period received a deflated price due to Musk's false statements. *See* ECF 538.

Musk also leans into the fact that Mr. Belgrave invested in Tesla, "reinvesting in the very CEO he accused of defrauding him," and still "trusted" Musk. ECF 576 at 6. To be clear, Plaintiffs are not attempting to hold Musk accountable for any misconduct (which some would argue is quite substantial) aside from the two false statements for which the jury found him liable, and whether Belgrave invested in Tesla has nothing to do with whether PJI is appropriate. Based on the foregoing, the Court should award PJI to Plaintiffs. *See*, *e.g.*, *Hsu v. Puma Biotechnology, Inc.*, 2019 WL 4295285, at *3 (C.D. Cal. Sept. 9, 2019) (awarding prejudgment interest following securities trial verdict); *In re Vivendi Universal, S.A.*, 284 F.R.D. 144, 162 (S.D.N.Y. 2012) (same).

## II.   THE COURT SHOULD AWARD PREJUDGMENT INTEREST AT THE § 6621 RATE

Musk argues that the Court should apply a lower interest rate than the one set forth in 22 U.S.C. § 6621. His argument fails for several reasons.

### A.   Courts Weigh the Equities to Determine the Appropriate Prejudgment Interest Rate, and the Equities Here Support the § 6621 Rate

Musk suggests there is a steadfast rule in private securities cases mandating the use of the lower PJI rate set forth in 28 U.S.C. § 1961. ECF 576 at 7 (asserting that the § 6621 rate "has no application here because any PJI awarded must serve as an element of compensation, not a penalty") (citation, internal quotation omitted). This is simply untrue—caselaw, including the cases cited in Musk's opposition, are clear that the higher § 6621 may be awarded where plaintiffs make a proper showing. *E.g.*, *Puma Biotechnology*, 2019 WL 4295285, at *2 (quoting *Western Pac. Fisheries*, 730 F.2d 1280, 1289 (9th Cir. 1984): the § 1961(a) rate is "appropriate for fixing the rate for pre-judgment interest in cases where the award of prejudgment interest is left to the discretion of the trial court unless the judge finds on substantial evidence…the equities of the particular case require a different rate") (cleaned up).

The equities here require the § 6621 rate. The jury found that Musk defrauded the market and deflated Twitter's stock price for every day of the Class Period; investors who sold Twitter were invested in the stock of large capitalization company with billions of dollars in annual revenue, with expectations of commensurate risks and rewards (but certainly not the risk that Musk was committing fraud); class members were deprived of the full value of their stock and were

unable to fully participate in the market's overall rise during the intervening 3.5 years; as one of the world's richest persons, the higher rate would not put a dent in Musk's overall financial condition; the class includes John Garrett and Nancy Price (and presumably many like them) who live on a tight income and modest retirement accounts and would have greatly benefited from receiving the full value of their Twitter shares, as opposed to the deflated value due to Musk's fraud; and this is a sole defendant case, so the class has no other defendants from whom they can recover.

**B.    Musk's Arguments for a Lower Rate Are Unpersuasive**

In order to "nickel and dime" class members, Musk advances several arguments that supposedly weigh against the higher rate. None hold water. For example, Musk argues that SEC enforcement cases applying the § 6621 rate are inapposite because the agency "has a longtime rule" that applies the higher rate "on orders of disgorgement in all administrative proceedings." ECF 576 at 7-8. But federal courts presiding over civil injunctive actions have never been bound by the agency's rule in administrative proceedings, and the federal courts in SEC civil actions were surely aware that they could only apply the higher rate if they found, "on substantial evidence…the equities of the particular case require a different rate." *W. Pac. Fisheries*, 730 F.2d at 1289.

Musk also argues that courts in SEC cases applied the higher rate because defendants had unlawfully received money from investors by and through their fraud, whereas Musk received no money directly from his victims here. ECF 576 at 8 ("Defendant 'borrowed' nothing, took nothing, and received nothing from class members so this reasoning simply does not apply."). This argument lacks merit for the same reason discussed above, *i.e.*, prejudgment interest is compensatory in nature and therefore focuses on the victims and making them whole; the fraudster's behavior is fully considered when determining other (*i.e.*, punitive) aspects of a judgment. *State Farm*, 538 U.S. at 416. Simply put, the question driving the decision over which rate to apply is what will make victims whole, not whether Musk received money directly from class members.

Musk also asserts that the higher PJI rate has never been applied in a private securities case. This oversells the point. Musk's brief cites no fewer than five cases in claiming that the "weight

of authority in this Circuit—unbroken and unanimous in private securities class actions [two case citations]—rejects applying the Tax Penalty Rate to PJI. [3 additional case citations]." ECF 576 at 12. What is not apparent without checking Musk's citations, though, is that three of the five cases he cites are not securities cases at all. *Id.* (*Erhart v. BofI Holding, Inc.*, concerns whistleblower/wrongful termination allegations, and *Santos v. Minnesota Life Ins. Co.* and *F. v. Blue Shield of California* are ERISA cases). What's more, only one of the two securities cases Musk cites for this assertion is from this Circuit. The real reason there is not a robust history of granting the higher PJI rate in private securities actions is that there are vanishingly few verdicts awarding damages in the past few decades in the entire country, and fewer still in the Ninth Circuit. *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) ("securities class actions rarely proceed to trial"). Be that as it may, Plaintiffs' opening brief cited many private, civil, non-securities cases in which the higher rate was applied (ECF 565, *passim*), and Musk offers no reason why victims of other legal violations should receive the § 6621 rate but investors in private securities actions should not. Such disparate treatment would be completely unjustified.

Musk further asserts that, had his victims received the amount of deflation caused by his fraud, they could have lost that money by investing it. ECF 576 at 11 ("It is equally possible that Plaintiffs and class members would have invested their proceeds in stocks that declined."). The Ninth Circuit rejected such an argument in *Knapp v. Ernst & Whinney*, 90 F.3d 1431, 1441 (9th Cir. 1996). There, the district court denied PJI and pointed out that the investment at issue was speculative. The Ninth Circuit disagreed and expressed "doubts about this reasoning." *Id.* at 1441 (if the class "had invested in a basket of securities as risky as ATV, the class as a whole would expect to receive from their investments a rate of return higher than the risk-free rate prevailing during the class period."). The same is true here—an investment in an index fund tracking the overall stock market would have resulted in a total compounded return of 93.18% since the end of the class period. *See* ECF 565 at 6.

In sum, awarding PJI at the § 6621 rate, which constitutes conservative relative stock market returns over the relevant period, is consistent with the equities and will further the interests

of making class members whole and remedying the damage done by Defendant's fraud.

### C.    Prejudgment Interest Should Be Compounded At Least Quarterly

In their opening brief, Plaintiffs advocated for prejudgment interest to be compounded daily.  ECF 565 at 9-10.  Section 6621's accompanying statute expressly calls for daily compounding. "In computing the amount of any interest required to be paid under this title…such interest and such amount shall be compounded daily." 26 U.S.C. §6622(a).  Musk argues that § 1969 provides for annual compounding, which should be applied here.  As shown at trial (*see supra*), the equities do not support the application of the § 1969 rate and instead favor applying the § 6621 rate.

Plaintiffs continue to believe daily compounding is appropriate for that reason.  However, in the event the Court determines that daily compounding is not warranted, Plaintiffs believe that at least quarterly compounding is appropriate.  Indeed, in SEC administrative proceedings, which are instructive here for the reasons discussed above, PJI on disgorged sums is "computed [under] 26 U.S.C. 6621(a)(2), and shall be compounded quarterly."  17 CFR § 201.600; *see also*, *e.g.*, Molumphy Reply Decl., filed concurrently herewith, Ex. 7 at 4-5 (calculation, including quarterly compounding of prejudgment interest, in *SEC v. Platforms Wireless Int'l Corp.*, which the Ninth Circuit approved at 617 F.3d 1072, 1099 (9th Cir. 2010)).

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court award prejudgment interest in accordance with the rate set by 26 U.S.C. §6621(a)(2), compounded at least quarterly from October 4, 2022, through the date of entry of the final judgment.

Dated: May 28, 2026                             Respectfully submitted,

                                                **COTCHETT, PITRE & MCCARTHY, LLP**
                                                Joseph W. Cotchett (SBN 36324)
                                                Mark C. Molumphy (SBN 168009)
                                                Tyson C. Redenbarger (SBN 294424)
                                                Elle D. Lewis (SBN 238329)
                                                Gia Jung (SBN 340160)
                                                Caroline A. Yuen (SBN 354388)

                                                */s/ Mark C. Molumphy*
                                                Mark C. Molumphy

San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
Aaron P. Arnzen (SBN 218272)

*/s/ Aaron P. Arnzen*
　　Aaron P. Arnzen

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Mark C. Molumphy, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28th day of May, 2026, at Burlingame, California.

*/s/ Mark C. Molumphy*
　　Mark C. Molumphy