**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
*jcotchett@cpmlegal.com*
Mark C. Molumphy (SBN 168009)
*mmolumphy@cpmlegal.com*
Tyson C. Redenbarger (SBN 294424)
*tredenbarger@cpmlegal.com*
Elle D. Lewis (SBN 238329)
*elewis@cpmlegal.com*
Gia Jung (SBN 340160)
*gjung@cpmlegal.com*
Caroline A. Yuen (SBN 354388)
*cyuen@cpmlegal.com*
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
*fbottini@bottinilaw.com*
Aaron P. Arnzen (SBN 218272)
*aarnzen@bottinilaw.com*
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GIUSEPPE PAMPENA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK,<br><br>Defendant. | CASE NO. 3:22-CV-05937-CRB<br><br>**LEAD PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR APPROVAL OF CLASS NOTICE OF VERDICT AND CLAIMS ADMINISTRATION PROCEDURE**<br><br>Date:  June 18, 2026<br>Time:  10:00 am<br>Ctrm:  6, 17th Floor<br>Judge:  Hon. Charles R. Breyer |

Case No: 3:22-CV-05937-CRB

# **TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ..................................................................................................i

ARGUMENT ........................................................................................................................1

I.    MUSK HAS NOT BEEN "PREVENTED" FROM CHALLENGING RELIANCE...........1

    A.    Musk Had Ample Opportunity to Contest Reliance Before and At Trial.................1

    B.    Musk Has No Right to Challenge Reliance Through Post-Trial Discovery.............2

    C.    Post-Trial Discovery is Not Justified By Musk's Speculation that Class Members Did Not Rely on His Fraud .....................................................................................4

II.   PLAINTIFFS' PROPOSED DAMAGES PLAN IS APPROPRIATE.................................5

III.  PLAINTIFFS' PROPOSED CLAIM PROCESS IS APPROPRIATE...............................6

    A.    The Proposed Process to Review and Verify Claims is Proper...............................6

    B.    The Proposed Notice and Claim Forms Are Accurate and Complete ......................7

    C.    Plaintiffs Proposed a Date Certain to Accept Late Claims .....................................8

    D.    The Proposed Schedule Provides Ample Time for Challenges ...............................9

IV.   THERE IS NO NEED FOR A SPECIAL MASTER .........................................................10

V.    THE COURT SHOULD ORDER MUSK TO PAY COSTS NOW...................................10

CONCLUSION...................................................................................................................10

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)...............................................................................................1

*Basic, Inc. v. Levison*,
   485 U.S. 224 (1988)..........................................................................................1, 2, 4

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) .................................................................................3

*Burlington N. R. Co. v. Dep't of Revenue of State of Wash.*,
   934 F.2d 1064 (9th Cir. 1991) .............................................................................10

*Gruber v. Gilbertson*,
   647 F. Supp. 3d 100 (S.D.N.Y. 2022)............................................................1, 2, 3, 5

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014)...........................................................................................1, 2

*Hoffmann-La Roche, Inc. v. Sperling*,
   493 U.S. 165 (1989)............................................................................................. i

*Hsu v. Puma Biotechnology, Inc.*,
   2021 WL 2644100 (C.D. Cal. June 11, 2021) .................................................. i, 2, 5

*Jaroslawicz v. Engelhard Corp.*,
   724 F. Supp. 294 (D.N.J. 1989) .............................................................................4

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
   2005 WL 3801463 (N.D. Ill. Apr. 18, 2005) ........................................................2, 3

*Mathews v. Eldridge*,
   424 U.S. 319 (1976)...............................................................................................3

*Morrissey v. Brewer*,
   408 U.S. 471 (1972)...............................................................................................3

*Norton v. LVNV Funding, LLC*,
   2022 WL 562831 (N.D. Cal. Feb. 24, 2022) ...........................................................8

*Pierce Cty. Hotel Emps. & Rest Emps. Health Tr. v. Elks Lodge B.P.O.E., No. 1450*,
   827 F.2d 1324 (9th Cir. 1997) ...............................................................................3

*Rodriguez v. Google LLC*,
   2022 WL 17905108 (N.D. Cal., Feb. 8, 2021) ......................................................10

*Vasquez v. Leprino Foods Co.*,
    2023 WL 1868973 (E.D. Cal. Feb. 9, 2023) ............................................................................3

*In re Vivendi Universal, S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y 2011) ...............................................................................2, 3

*In re Worldcom, Inc. Sec. Litig.*,
    2005 WL 517331 (S.D.N.Y. Mar. 4, 2005) ............................................................................4

**Other Authorities**

Federal Rules of Civil Procedure:

    Rule 23 ............................................................................................................. i, ii, 3

    Rule 53(a)(1) ....................................................................................................10

## SUMMARY OF ARGUMENT

Defendant Elon Musk's goal is to delay and reduce the financial implications of the jury's verdict that he violated the federal securities laws. To that end, after taking voluminous fact discovery, challenging Plaintiffs' experts and offering his own, moving for summary judgment, taking this case to trial, calling a number of his own witnesses, and resting well before his time expired, Musk now asserts that he is "entitled" to conduct a brand new, "Phase II" of the litigation, including post-trial discovery against 170,000 individual class members to suss out the extent to which each relied on the integrity of the market for Twitter stock, followed by individual jury trials. That's not how class actions (nor our justice system more broadly) work.

Musk had every opportunity to rebut reliance through discovery, motion practice, and ultimately at trial. And in the proposed claims process, Musk will have the opportunity to challenge individual class members who submit claims. However, Musk has no due process right to conduct "reliance" discovery after trial to try to support his challenges, particularly where he never even mentioned, let alone preserved, that right at any time before trial. *Hsu v. Puma Biotechnology, Inc.*, 2021 WL 2644100, at *3-4 (C.D. Cal. June 11, 2021) (rejecting post-trial discovery to challenge individual reliance). Indeed, Musk fails to cite a single statute, case or order of the Court that conveys such a right, and the primary case he relies on, decided outside this Circuit, was later limited by the same district court that decided it. Musk offers no serious response to *Puma* or its reasoning, and his sweeping "Phase II" proposal—which will extend the claims schedule by months if not years—runs counter to the very purposes of Rule 23, as well as the Court's broad authority to manage class proceedings efficiently and in a manner that does not render class actions unworkable. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ("The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact.").

Musk also wants to rewrite Plaintiffs' proposed notice and claims procedures to dilute the result of the trial and deter class members from filing claims with threats of impending document requests, interrogatories, depositions and jury trials. And he wants a damages formula slanted in every respect to benefit him and reduce the recovery of class members who were harmed by his fraud. However, Plaintiffs' proposed forms, designed with the assistance of an experienced claims

administrator, Epiq, are fair, accurate, and consistent with the law.  The notice clearly explains the jury's verdict and the requirements for class members to submit claims.  The claims form requires standard information to confirm a class member has a valid claim and to calculate damages based on the jury's verdict.

A fundamental goal of Rule 23 is to "protect class members and fairly conduct the action." Fed. R. Civ. P. 23(d)(1)(B).  Here, Musk's proposed alterations to the notice and claims schedule, including post-trial discovery against thousands of class members, are designed to discourage claims, delay the claims process, and reduce the class members' recovery.  They should be rejected, and the notice and claims administration procedure proposed by Plaintiffs should be approved by the Court, allowing class members to recover for the harm caused by Musk's fraud as expeditiously as possible.

*     *     *

**ARGUMENT**

## I.    MUSK HAS NOT BEEN "PREVENTED" FROM CHALLENGING RELIANCE

### A.    Musk Had Ample Opportunity to Contest Reliance Before and At Trial

While caselaw preserves a defendant's right to rebut the fraud-on-the-market presumption, that right is not unlimited. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014) ("Halliburton II"). This is particularly true given that Musk has had every opportunity to contest reliance through discovery, motion practice, and ultimately at trial.

Prior to trial, Musk filed multiple briefs contesting reliance. *See* ECF 99 (opposition to class certification); and 255 (Musk's motion for summary judgment). And at trial, both sides' reliance arguments necessarily culminated before the jury—Plaintiffs Brian Belgrave and Nancy Price testified about their reliance on the integrity of the market; Plaintiffs' expert gave a detailed explanation of the factors he considered in finding an efficient market; Plaintiffs advanced the fraud on the market presumption in opening statement and closing argument; and Musk crossed Plaintiffs' witnesses, had the opportunity to put on his own witnesses, and argued against reliance during his closing. Tr. 229:14-191 (Plaintiffs' opening); Tr. 277:2-7 (Mr. Belgrave); Tr. 1368:2-5 (Ms. Price); Tr. 1810:21-1811:4 (Dr. Tabak); Tr. 2219:12-14 (Plaintiffs' closing); Tr. 2271:24-13 (Musk's closing). Based on this evidence and argument, the jury returned a verdict that incorporates class-wide liability based on an efficient market and the fraud on the market presumption. *See* ECF 573 at 18-21 (JMOL opposition).

Trial was certainly the appropriate time for Musk to attempt to rebut classwide reliance. *Basic, Inc. v. Levison*, 485 U.S. 224, 249 fn. 29 (1988) ("Proof of that sort is a matter for trial, throughout which the District Court retains the authority to amend the certification order as may be appropriate); *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 481, (2013) (if plaintiffs fails to prove materiality at trial, "the fraud-on-the-market presumption of classwide reliance will collapse…the class members' claims will have failed on their merits, thus bringing the litigation to a close."); *Gruber v. Gilbertson*, 647 F. Supp. 3d 100, 124 (S.D.N.Y. 2022) (defendant cannot "years into this action and long past not just the close of discovery but trial itself, demand additional individualized discovery of absent class members in order to better substantiate

arguments rejected at the class certification stage in order to disprove elements already proved against him on a classwide basis at trial.")

### B.    Musk Has No Right to Challenge Reliance Through Post-Trial Discovery

Musk claims he is "entitled" to post-trial discovery to challenge claims of reliance, but fails to cite a single statute, case, or order by this Court recognizing such a right.  In fact, discovery has only been permitted in extremely limited situations where, <u>pre-trial</u>, the parties expressly contemplated, raised and preserved the right to conduct such discovery <u>post-trial</u>.  Absent such unique circumstances, <u>post-trial discovery has uniformly been rejected</u>.  *Compare Puma*, 2021 WL 2644100 at *2-4 (rejecting post-trial discovery that had not been stayed or preserved pre-trial, and holding that *Basic* and *Halliburton II* did not provide a right to challenge reliance through post-trial discovery) and *Gruber*, 647 F. Supp. 3d at 125-126 (S.D.N.Y. 2022) (rejecting post-trial discovery) with *Household*, 2005 WL 3801463 at *4 (post-trial discovery only allowed after defendants explicitly preserved the right and plaintiffs agreed to such discovery) and *Vivendi*, 765 F. Supp. 2d at 585 fn. 63 (same).[1]

Musk fails to cite *Gruber*, nor seriously distinguish *Puma*, the only precedent-setting case in this Circuit, suggesting discovery was only rejected there because the defendant waited too long and sought too broad a scope.  But Musk's request fails for the same reasons.  *Puma*, 2021 WL 2644100 at *3 ("Defendants could have taken discovery on the issue of reliance during the fact discovery period").  Indeed, in *Puma*, discovery was denied even though the defendant had raised, and the final pre-trial order reflected, an opportunity to request post-trial discovery.  Here, Musk never once raised, much less preserved, any intent to conduct post-trial discovery, and there is no pre-trial order permitting post-trial discovery.  Distinguishing the same cases cited by Musk on this very basis, the *Puma* court added: "When rebutting the presumption of reliance under the fraud-on-the-market theory, the only question to be asked of the representative plaintiff is whether the plaintiff would have bought stock at the same price, had it known of the alleged fraud. ***This question is exactly what the jury has already answered***." *Puma*, 2021 WL 2644100 at *4 (citing *Basic*, 485

---

[1] In *Gruber*, decided in the same district as *Vivendi*, the court rejected post-trial discovery and distinguished *Vivendi* and *Household* on their unique facts.  *Gruber*, 647 F. Supp. 3d at fn 16.

U.S. at 248-49; emphasis added).

Musk could have requested discovery from unnamed plaintiffs during discovery—including from the list of the twenty top sellers of Twitter stock, which Musk's expert prepared—or attempted to call additional investors to the stand at trial to challenge the fraud on the market presumption. ECF 99-6 at 42. But Musk failed to take such discovery, preserve his right to do so later, and failed to rebut the presumption of reliance at trial. *See Pierce Cty. Hotel Emps. & Rest Emps. Health Tr. v. Elks Lodge B.P.O.E., No. 1450*, 827 F.2d 1324, 1328-29 (9th Cir. 1997) ("Issues not preserved in the pretrial order are eliminated from the action."); *see e.g., Household,* 2005 WL 3801463 at *4 (preserving the right to take post-trial discovery); *Vivendi.,* 765 F. Supp. 2d at 585 n.63 (same); *Gruber*, 647 F. Supp. 3d at 125 (post-trial discovery denied, in part, because "defendant had the opportunity at trial to rebut the presumption of reliance," but failed.)

Nor does Plaintiffs' proposal present any due process issues, as Musk had every opportunity to rebut reliance at trial or preserve his right to post-trial discovery. *See Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976) ("The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.") (citing *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-172 (1951) (Frankfurter, J., concurring)); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("due process is flexible and calls for such procedural protections as the particular situation demands"); *Blackie v. Barrack*, 524 F.2d 891, 907 n. 22 (9th Cir. 1975) ("A defendant does not have unlimited rights to discovery against unnamed class members"); *Vasquez v. Leprino Foods Co.*, 2023 WL 1868973, at *11 (E.D. Cal. Feb. 9, 2023) ("[D]enying Defendants from calling every member of the class to rebut Plaintiffs' on-call claim will not violate Leprino's due process rights … Such a right would obliterate the use of representative evidence and defy the class action device's purpose to save the resources of both the courts and the parties (citation omitted). Indeed, "Rule 23 would be near to useless if defendants who lose at trial as to common questions could then indefinitely prolong litigation by seeking to relitigate those questions as to each absent class member." *Gruber*, 647 F. Supp. 3d at 125.

Lacking cases on point, Musk cites *Jaroslawicz v. Engelhard Corp.*, 724 F. Supp. 294 (D.N.J. 1989), decided on entirely different circumstances. In addressing pre-trial whether the jury

could award a "lump sum," the court ruled that plaintiff-specific issues of direct reliance **under New Jersey law** prevented an aggregate damages award. *Id.* at n. 11. That unique circumstance does not arise here, as the jury reached a per-share verdict solely applying federal law and Musk did not rebut the presumption of reliance. *See In re Worldcom, Inc. Sec. Litig.*, 2005 WL 517331 at *5 (S.D.N.Y. Mar. 4, 2005) ("Because the Lead Plaintiff has not brought state law claims, and because the likelihood of any effective rebuttal to the presumption of reliance is, in this case, speculative and remote, the concerns in *Jaroslawicz* do not apply here").

### C. Post-Trial Discovery is Not Justified By Musk's Speculation that Class Members Did Not Rely on His Fraud

Musk does not dispute that post-trial "reliance" discovery on tens of thousands of absent class members, followed by individual trials, will substantially delay the case and waste resources. Instead, Musk claims his requests *might* allow him to identify some subset of absent class members who did not rely on his fraud. ECF 557 at 8. The immense burden of such discovery is not justified.

Musk cites Goldman Sachs as an example, suggesting the firm engaged in illegal insider trading in Twitter stock because certain M&A employees commented via email on Musk's 2022 tweets in real time, and the bank sold Twitter stock during the class period. *See* ECF 577 at 8. But these emails do not prove that Goldman Sachs as an entity or its stock traders (1) believed that Musk's statements were false, (2) "consequently believed that [Twitter's] stock was artificially underpriced," and (3) sold their "shares nevertheless because of other unrelated concerns." *Basic*, 485 U.S. at 249. Musk also ignores Goldman Sachs' policy against insider trading, which "wall[s] off" employees and implements "information barriers" to prevent such conduct. *See* Molumphy Reply Decl., Ex. 4, at p. 23; Ex. 5 at p. 9. The claim that two emails among M&A employees—which were not introduced at trial—rebut reliance for Goldman Sachs borders on the absurd. Similarly, Musk offers no evidence suggesting that JPMorgan, Twitter's other banker, engaged in insider trading or that related discovery is *likely* to "glean evidence" that Musk could use to rebut the presumption. ECF 577 at 7; *see Basic* at 249. Finally, while Musk points out that Steve Garrett was not appointed to serve as a lead plaintiff because he did not mention at deposition that he relied on the market price for Twitter stock (ECF 106 at 9-10), Garrett never disclaimed reliance on Twitter's market price and his stated reason for selling (he saw news of Musk's July 8, 2022

termination letter) is consistent with relying on the integrity of the market. The Court understandably took these nuances into account when certifying the class, but it is fair to apply the presumption that absent class members relied on Twitter's market price given the evidence presented at trial.

## II. PLAINTIFFS' PROPOSED DAMAGES PLAN IS APPROPRIATE

Musk only takes issue with a few aspects of Plaintiffs' proposed plan to calculate damages. First, Musk argues that LIFO should be used instead of FIFO to calculate damages because FIFO *might,* in some hypothetical instances, result in a *possible* "windfall" for class members. To support his claim, Musk provides a simple, cherry-picked, and incomplete hypothetical example. ECF 577 at 9. But even Musk's incomplete hypothetical shows that FIFO can return lower damages than LIFO. For example, Musk's hypothetical investor has two shares, but Musk calculates gains by having the investor sell only one of his shares on a day when the prices favor his position. What happens when the investor sells that second share? Depending on when he sells the second share, total damages using LIFO are *higher* than the damages using FIFO on those two transactions. *See* Molumphy Reply Decl., Ex. 6. Musk fails to show a categorical windfall from FIFO.

Musk also does not dispute that numerous other courts have applied FIFO to class-wide distribution, nor that FIFO is a widely accepted accounting practice in many instances, including in securities cases. *See* Molumphy Reply Decl., ¶ 5 (listing 96 cases in which courts in the Ninth Circuit have approved the use of FIFO); *see also* ECF 567-2, Tabak Decl. ("FIFO is indeed a valid and widely accepted method for matching purchases and sales of a security."). Ultimately, this issue is subject to the Court's discretion, and Musk has failed to cite any authority precluding the Court from approving FIFO instead of LIFO. *See Puma*, 2019 WL 4295285, at *5; *Gruber*, 647 F. Supp. 3d at 119 (court exercised discretion and approved use of FIFO.)

Musk also wrongly suggests that Plaintiffs proposed no offsets or adjustments. ECF 577 at 10. Plaintiffs propose that the claims administrator remove any gains made on trades executed during the class period, thus offsetting any potential windfalls. *See* ECF 567-3 at ECF p. 28. (damages per share shall "equal the deflation on the disposition date *less* the deflation on the acquisition date.") (emphasis added).

Lastly, Musk complains that class members will not have to submit records concerning shares acquired *before* the class period. But in those transactions, the date of the original purchase is irrelevant to calculating damages. ECF 577 at 10. "[A]s there was no deflation at the time of acquisition, the deflation upon disposition represents the full damage." ECF 567-3 at ECF p. 28.

## III.  PLAINTIFFS' PROPOSED CLAIM PROCESS IS APPROPRIATE

Musk does not object to appointing Epiq to serve as Claims Administrator (ECF 577 at 10), but contends that its proposed claims process is "deficient" because it utilizes notice and review procedures commonly used in other securities class actions. Instead, Musk asks for special procedures designed to deter Class members from filing claims, including threats to subject absent class members to litigation, discovery, and even jury trials, along with the expense of hiring counsel. The Court should reject Musk's transparent intimidation tactics.

### A.  The Proposed Process to Review and Verify Claims is Proper

Musk objects to the extent Epiq is tasked with "validating" claims, and asks the Court to resolve any challenges. Plaintiffs agree. The process described in Plaintiffs' motion, which has been approved by federal courts in connection with hundreds of securities class action claims administrations throughout the country, explicitly gives the Court ultimate authority to consider and resolve any challenges on validity. ECF 567 at 12.

The term "validate," as used by Epiq, does not mean that Epiq is adjudicating factual or legal issues. *See, e.g.*, Azari Decl., ECF 567-3, ¶¶67-68 (describing processes used to "validate or reject" Claim Forms). Rather, Epiq will simply confirm that the information provided on the Claim Form is supported in order to determine whether the claimant sold eligible securities during the Class Period. Epiq then uses the information on the Court-approved Claim Form to calculate the claimant's recognized loss pursuant to the Plan of Allocation approved by the Court.

Musk's other objections to the validation process—that it does not require sufficient proof, verify the identities of claimants, or include interrogatories "to test individual reliance"—are also unsupported. The claims process does require proof and verification, and Epiq's processors will confirm that the submitted information demonstrates a valid claim, including: (1) the claimant traded in the eligible Twitter securities during the Class Period; (2) documentation supports the

transaction information entered on the Claim Form; (3) the claimant did not have any additional trades not reflected on the Claim Form; (4) the name of the claimant matches the information on the documentation, or that additional documentation was provided to support any name changes; and (5) that the beneficial owner identified on the trade documentation—or a valid representative— is the person who signed the Claim Form. Epiq's processors also confirm that the claim calculates to the recognized loss under the Plan of Allocation approved by the Court and is submitted only once. *See e.g.*, ECF 567-3, ¶¶51-52.

For claims submitted by paper Claim Form and online, documentation is required and reviewed. *Id*. ¶¶ 51-53. For electronic claims submitted by or on behalf of large custodial banks, brokerage firms, hedge funds, retirement funds, and similar institutions—which often submit hundreds or thousands of claims encompassing hundreds of thousands of transactions in one "submission"—there should be a presumption of data accuracy given that these entities are subject to regulatory books and records requirements. *See e.g.*, 17 CFR §240.17a-3. Requiring individual document review for each transaction would be inefficient, and the burden of requiring full documentation may deter entities from filing claims at all. Epiq will conduct an additional sampling of electronic submissions (ECF 567-3, ¶58) as a data integrity review, selecting transactions from claims across various submitted files and requiring documentation for those transactions. Unless able to confirm those transactions, and additional documentation is not provided, the entire submission is denied in full.

All of these practices are designed to <u>prevent improper claims from being filed</u>. Musk's demand for additional information, like driver's licenses and responses to interrogatories, would impose significant barriers to legitimate claims. Similarly, Musk's request for "real time" access to Epiq's claims database to "identify potential flaws" so that they can be corrected is a solution without a problem. The process already contemplates real time access to the parties, as well as monthly reports, allowing the parties contemporaneous information as Epiq processes claims.

### B. The Proposed Notice and Claim Forms Are Accurate and Complete

Musk claims the proposed Notice and Claim Forms are "incomplete" and "misleading" because they don't inform class members that, by submitting claims, they may be subject to Musk's

threatened litigation against them, including future document requests, depositions, and even individual jury trials. ECF 577 at 13. As noted above, since Musk is not entitled to conduct post-trial discovery against class members, let alone jury trials, there is no reason to add such references here. Indeed, Musk's proposed language indicating his intent to litigate against any class member who submits a claim—which sounds eerily similar to litigation threats made to Twitter's executives who refused to terminate the deal—smacks of rank intimidation aimed at discouraging claims rather than providing informative notice.

Consistent with established practice, the proposed Notice and Claim Forms, attached as Exhibits 1 and 2 to the Cam Azari Declaration (ECF 567-3), adequately inform class members of the verdict and claims process. The Claim Form requests information regarding the claimants' identification, relevant holdings and transactions in Twitter stock or options, and supporting documentation, under penalty of perjury, consistent with what is requested in similarly situated claims processes. ECF 567-3 at ¶ 46. And, to the extent Musk is truly concerned that class members understand the claims process, and that future requests may be made for additional information, the Claim Form explicitly notes that claims are still subject to review, verification, and possible requests for additional information, and that they are submitting to the Court's jurisdiction. Adding language that Musk reserves the right to litigate against any claimant, including depositions and trial, is unnecessary and obviously designed to dissuade participation.

### C.    Plaintiffs Proposed a Date Certain to Accept Late Claims

Based on the Claims Administrator's unique experience in securities class actions, where it commonly receives a significant number of otherwise valid claims after the submission deadline (ECF 567-3 at ¶ 65), Plaintiffs requested that such late claims be allowed if valid. The reasons are manifest, including the anticipated presence of class members living abroad or serving overseas (who may be slow to receive the Notice and Claim Form) and, given the unique circumstances of a securities class action, the inclusion of nominee holders or brokers (who may not promptly forward the Notice and Claim Form to Class members or delay in providing contact information to Epiq). Courts routinely approve late, but otherwise valid claims. *See e.g.*, *Norton v. LVNV Funding, LLC*, 2022 WL 562831, at *6 (N.D. Cal. Feb. 24, 2022) ("A district court has discretion to allow late

claims to a settlement fund.") (*quoting Lemus v. H & R Block Enters., LLC*, 2013 WL 3831866, at *2 (N.D. Cal. July 23, 2013) (*citing In re Valdez*, 289 F. App'x 204, 206 (9th Cir. 2008)).

However, Musk objects to late claims based on his mistaken belief that, because Plaintiffs want to keep the deadline open "in perpetuity," it will delay the claims administration process. ECF 577 at 13. Plaintiffs do <u>not</u> seek an open-ended deadline. Rather, consistent with the practice commonly utilized in securities settlements, Plaintiffs proposed to permit otherwise valid claims to be accepted until the Claims Administrator files its final claims report with the Court. ECF 567 at 1, 6 ("in conjunction with the filing of the final claims report, the Claims Administrator will identify all valid claims that were filed after the claims deadline and treat those claims as accepted"). This is a date certain which will occur <u>months before</u> any challenges are resolved and the claims administration process is completed, and thus, will not delay the claims administration process.

**D.     The Proposed Schedule Provides Ample Time for Challenges**

Musk asserts that Plaintiffs' proposed schedule to challenge claims, including a detailed validation and claims reporting process by the Claims Administrator, is "unreasonable." Instead, Musk proposes an alternative challenge schedule without any deadline. In fact, Musk claims that he initially needs at least 120 days—four months—just to review the claims, and some unspecified additional amount of time thereafter to conduct "individual-reliance discovery" on class members, followed by an additional unspecified period to "challenge and raise any issues" with class members, presumably through trials conducted by the Court. Musk's schedule would push any challenge process out months, if not years. The Court should reject such unnecessary delay.

Under the proposed schedule, Musk will have far more than 30 days to review claims. As detailed by the Claims Administrator, beginning 60 days after publication of the notice, the Claims Administrator will provide the parties with a summary case profile identifying the name and address of each claimant and the preliminary status of the damages calculation for each claim. ECF 567-3 at ¶ 66. The Claims Administrator will also provide an updated summary case profile to the parties on a monthly basis until the claims report is finalized. *Id.*, ¶ 67. At the end of this process, the Claims Administrator will provide a final claims report identifying each valid and rejected claim, including the total damages suffered by the claimant (*id.*, ¶ 67-68), and by that point, both Parties

will have had extensive information about the claimants and the same ability to review individual claims before making any challenges.  Additional time would be delay for delay's sake.

## IV.    THERE IS NO NEED FOR A SPECIAL MASTER

Musk asks the Court to appoint a special master under Rule 53(a)(1) to oversee a sprawling "Phase II" of this action.  ECF 577 at 14-15.  But since Musk failed to establish a basis for "Phase II" in the first place, there is no need for a special master.  Musk also failed to carry his burden under Rule 53(a)(1).  While unstated, Musk seems to suggest there is an "exceptional condition" warranting a special master under Rule 53(a)(1)(B)(i).  But Musk never even identifies the allegedly exceptional condition (other than his proposed Phase II), let alone explains why that now requires this Court to step aside.  This omission is fatal to his request.  The Ninth Circuit holds that reference to a special master "shall be the exception and not the rule" and shall be "made only upon a showing that some exceptional condition requires it"—a standard which the Ninth Circuit "strictly applies." *Burlington N. R. Co. v. Dep't of Revenue of State of Wash.*, 934 F.2d 1064, 1071 (9th Cir. 1991); *see also*, *Rodriguez v. Google LLC*, 2022 WL 17905108 (N.D. Cal., Feb. 8, 2021) (J. Seeborg) (denying request for special master where party failed to provide "argument or evidence" that issue could not be addressed by district court).

## V.    THE COURT SHOULD ORDER MUSK TO PAY COSTS NOW

Musk acknowledges the Court's discretion to order a defendant to pay for class notification after it has been found liable.  *See* ECF 567 at 14-5 (listing cases).  However, citing *Vivendi*, 284 F.R.D. at 161, Musk asks the Court to defer its decision until the post-trial motions for judgment as a matter of law and a new trial are resolved.  ECF 577 at 15.  Plaintiffs do not object to that timing.  However, the Court should reject Musk's additional request for "oversight" of Epiq and "control" over "the costs of the process."  *Id.*  Giving Musk "oversight" or "control" over notice provided by a court-appointed administrator would be like having the fox guard the henhouse.

## CONCLUSION

For the reasons stated above, the Court should appoint Epiq as the Claims Administrator, approve the proposed Notice and Claim Forms, and direct that the proposed notice and claim administration processes be implemented.

Dated: May 28, 2026

**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
Tyson C. Redenbarger (SBN 294424)
Elle D. Lewis (SBN 238329)
Gia Jung (SBN 340160)
Caroline A. Yuen (SBN 354388)

*/s/ Mark C. Molumphy*
    Mark C. Molumphy

San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
Aaron P. Arnzen (SBN 218272)

*/s/ Francis A. Bottini Jr.*
    Francis A. Bottini Jr.

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001

*Lead Counsel for Plaintiffs and the Class*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Mark C. Molumphy, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28th day of May, 2026, at Burlingame, California.

*/s/ Mark C. Molumphy*
Mark C. Molumphy